Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net
              smurray@wpdn.net

Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2023 MAY -3  PM 3: 54

MARGARET BOTKINS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

|  |  |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants. <br><br> Defendants. | Civil Action No. _Z3CV79-JWS_ |

## COMPLAINT FOR BREACH OF CONTRACT, ANTICIPATORY REPUDIATION OF CONTRACT, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, *ALTER EGO* LIABILITY, ENTERPRISE LIABILITY, AND LOST PROFITS AND MONEY DAMAGES

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain, through its counsel, Patrick J. Murphy and Scott C. Murray of Williams, Porter, Day & Neville, P.C., and for its Complaint for breach of contract, anticipatory repudiation of contract, intentional interference with contractual relations, *alter ego* liability, enterprise liability, lost profits and money damages ("Complaint") against Defendants MineOne Wyoming Data Center LLC, MineOne Partners LLC, Terra Crypto, Inc., Bit Origin, Ltd, SonicHash LLC; and JOHN DOE Defendants 1-20, hereby asserts and claims as follows.

## I.       INTRODUCTION

In July 2021, Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB") set out with ambitious plans to develop and operate one of the largest Bitcoin mines in the United States. This required securing a heavy load of consistent low-priced electrical power, the most critical input to running a successful Bitcoin mining operation. Recent legislation and a newly enacted power tariff, combined with Plaintiff's Wyoming roots and desire to create local jobs, drew Plaintiff to Wyoming. In September 2021, Plaintiff participated in a competitive Request for Proposal ("RFP") from Black Hills Energy ("BHE") for electrical power located around Cheyenne, Wyoming. Plaintiff's months of entrepreneurial hard work paid off—its submission came out on top, ahead of some of the largest Bitcoin companies in the world.

Over the ensuing eight months, Plaintiff negotiated a Power Purchase Agreement (PPA) with BHE, put multiple land parcels under contract (one of which required an economic development proposal for Cheyenne LEADS) across two sites, initiated site plans for those parcels, identified key project resources, and worked to secure financing to complete a development project of this magnitude. Eventually, in June 2022, Plaintiff entered into a written agreement ("AGREEMENT") with Defendant MineOne Wyoming Data Center, LLC ("MineOne Wyoming")

2

to execute on the development opportunity, which included building and operating two Bitcoin mining facilities: North Range and Campstool, both in Laramie County, Wyoming.

Defendant MineOne Wyoming desired to own the development opportunities and pioneering work performed to date by Plaintiff BCB. Defendant MineOne Wyoming recognized value in, and desired to retain, Plaintiff's services to develop and operate the two facilities based upon Plaintiff's local relationships (including that with BHE), its expertise in the specific PPA deal structure, and the progress to date on the developments. As such, the parties struck an agreement in which Defendant MineOne Wyoming would finance and own the developments, and Plaintiff would provide services over two distinct phases of the project: the implementation phase ("Phase 1") and the operating phase ("Phase 2").

Defendant MineOne Wyoming was unwilling to pay upfront for Plaintiff's prior work to develop the opportunity. Defendant MineOne Wyoming instead proposed, and Plaintiff agreed, that payment for Plaintiff's work performed up to that point to develop and provide the opportunity to MineOne Wyoming would be spread out over the operating phase (Phase 2) after the implementation phase (Phase 1) was complete. Plaintiff also agreed to a below market rate for the implementation phase (Phase 1) in consideration of consultancy services provided by Defendant and with MineOne Wyoming's promise of the additional funds being incorporated into and spread out over the operating phase (Phase 2).

In June 2022, Defendant MineOne Wyoming purchased the land for the North Range facility. From June 2022 to December 2022, Plaintiff worked diligently on the North Range facility to perform its Phase 1 implementation obligations required by the AGREEMENT despite numerous setbacks and delays on the project caused by third parties not within the control of Plaintiff. The third-party setbacks and delays were primarily driven by failures and errors of two companies: CEGEN Green Energy Ltd ("CEGEN"), a Canadian-based company, and Shermco Industries, Inc.

("Shermco"), a Texas-based company. Defendants selected and contracted with both CEGEN and Shermco. CEGEN and Shermco were responsible for all aspects of Phase 1 construction and delivering the North Range facility, namely, all engineering, site work, data center construction, and construction management.

However, despite all of Plaintiff's hard work and performance, in December 2022, Defendants sent Huaili ("Wiley") Zhang and his team, unannounced, to North Range and began encroaching on Plaintiff and its ability to perform its duties. Over the course of December 2022 to March 2023, Defendants sent additional personnel to North Range and conducted a subversive and sophisticated takeover. Defendants' personnel taking over the site were foreign nationals and out of state temporary workers, not the local hires Plaintiff had been employing and planning to hire as Phase 2 ramped-up.

Defendants made statements to Plaintiff they were there to "take control" and replace Plaintiff as operators in Phase 2 of the project at North Range. Defendants took actions to direct and control on-site work and continuously sought to interfere with Plaintiff's contractual obligations.

Despite the statements and actions by the Defendants' on-site personnel, Plaintiff continued to perform its contractual obligations, and it did so without being paid. Plaintiff also completed the due diligence and development work required to effectuate the opportunity for Defendants to purchase the Campstool parcel, including obtaining approvals from the municipality and business park association, such that Defendants could close on the land purchase and proceed with Phase 1 at Campstool.

On March 7, 2023 – just as the challenging implementation phase (Phase 1) at North Range was completing and the profitable operating phase (Phase 2) was about to begin – Defendants informed Plaintiff that Plaintiff would not be allowed to perform Plaintiff's originally agreed-upon

Phase 2 services as site operator at North Range, and that Plaintiff would be given a much-reduced scope of work for much-reduced compensation. On March 9, 2023, with eight foreign nationals now on the site directing Defendants' own team of temporary workers, Defendants told Plaintiffs their plan was to take control of the site, and that Defendants' leadership had made the decision.

On March 13, 2023, Defendants emailed Plaintiff with a proposed amendment to their original AGREEMENT that further detailed, documented, and confirmed the March 7, 2023 phone call and March 9, 2023 on-site actions and discussions. The proposed amendment also indicated Plaintiff would not be allowed to perform the implementation (Phase 1) and operation (Phase 2) of the Campstool site, even though Plaintiff had developed that opportunity over the course of the preceding one and a half years and received all approvals required for the Defendants to execute on that site. Further, the proposed amendment tied the remaining money owed by Defendants to Plaintiff for the implementation (Phase 1) at North Range to the Plaintiff signing the proposed amendment, even though Plaintiff had earned and invoiced Defendant MineOne Wyoming for some of those funds.

Defendants have never said that Plaintiff has breached its AGREEMENT with MineOne Wyoming and, indeed, Plaintiff has not breached its AGREEMENT with MineOne Wyoming.

Ultimately, Plaintiff deferred an upfront payment for all of its work creating the development opportunities, and accepted a below market rate for the implementation phase (Phase 1) at both the North Range site and Campstool site, because Plaintiff would make its money for that prior work during the operating phase (Phase 2) at both North Range and Campstool. Defendant MineOne Wyoming, and some or all of the other Defendants and JOHN DOE Defendants, due to no fault of the Plaintiff, have now denied the Plaintiff the ability to operate the North Range facility (Phase 2), and implement and operate the Campstool facility (Phases 1 and 2), and prevented the Plaintiff from being paid for the prior work Plaintiff has earned and to

which it is contractually entitled. Further, Defendants, by not allowing Plaintiff to operate the facilities, have denied Plaintiff the payments for the actual operating of the facilities. Lastly, Defendants have denied the Plaintiff from being the operator of the largest Bitcoin mining operation in Wyoming, (an opportunity Plaintiff created) which will have an impact on Plaintiff's fundraising and development of future opportunities in kind (as Plaintiff now has no other sites under management or operations to demonstrate its credibility and success with which to generate more business income and opportunities).

## II.    PARTIES, JURISDICTION AND VENUE

1.      Plaintiff BCB Cheyenne LLC ("BCB") is a Wyoming limited liability company formed and filed in the State of Wyoming and authorized to do business in Wyoming.

2.      Plaintiff BCB has three members:  Michael Murphy, Emory Patterson IV, and Neil Phippen.

3.      Michael Murphy lived in Casper, Wyoming until he went to the University of Notre Dame in 2000; currently, Mr. Murphy is a resident of Colorado.

4.      Emory Patterson, IV is a resident of Illinois.

5.      Neil Phippen is a resident of Colorado.

6.      The three Members of BCB formed BCB in 2021 for the express purpose of developing and operating Bitcoin mining facilities at two then-undeveloped sites near Cheyenne, Wyoming.  BCB then entered into the subject contracts with two of the Defendants – MineOne Wyoming Data Center, LLC and Terra Crypto, Inc. – to effectuate Plaintiff's Bitcoin mining venture at both sites.

7.      Defendant MineOne Wyoming Data Center LLC ("MineOne Wyoming") is a Delaware limited liability company formed and filed with the Delaware Secretary of State's office on May 22, 2022.  Erick Rengifo is the managing member of MineOne Wyoming.  On information

and belief, Eric Rengifo is a resident of either New Jersey or New York. BCB does not presently know if there are other Members of MineOne Wyoming, but, on information and belief, none of its Members are Wyoming residents. On June 16, 2022, one week after MineOne Wyoming Data Center LLC, a Delaware limited liability company, entered into its June 9, 2022 contract with Plaintiff BCB, MineOne Wyoming Data Center LLC applied for a Certificate of Authority from the Wyoming Secretary of State to transact business in the State of Wyoming. A Certificate of Authority was issued to MineOne Wyoming Data Center LLC on June 16, 2022.

8.      On information and belief, MineOne Wyoming sought authority with the Wyoming Secretary of State to do business in Wyoming, and MineOne Wyoming received permission to do business in the State of Wyoming.

9.      MineOne Wyoming was formed and filed in May 2022 for the express purpose of acquiring, developing, owning, operating, and hosting Bitcoin mining facilities at two then-undeveloped sites near Cheyenne, Wyoming. MineOne Wyoming entered into the subject written AGREEMENT, or contract, with BCB in June 2022 to effectuate its Bitcoin mining venture with BCB at the North Range Business Park in Cheyenne, Wyoming ("North Range") and in the Campstool Addition in Cheyenne, Wyoming ("Campstool").

10.     Defendant MineOne Partners LLC ("MineOne Partners") is a Delaware limited liability company formed and filed with the Delaware Secretary of State's office on October 13, 2021. The identities of MineOne Parterners' members is not currently known to Plaintiff, but, on information and belief, none of MineOne Partners' members are residents of Wyoming. MineOne Partners paid for most, if not all, of the site development, including engineering fees, municipal approval fees, and materials and labor at the North Range and Campstool sites. Further, in MineOne Wyoming's SERVICE FRAMEWORK AGREEMENT with its client, BitMain Technologies, all payments by BitMain to MineOne Wyoming are to be made to the bank account of MineOne

Partners.  On information and belief, this is likely due to Defendant MineOne Wyoming not having a bank account, which would be a clear indication of Defendants co-mingling interests and funds on the project.

11.      Defendant SonicHash LLC ("SonicHash") is a Delaware limited liability company. SonicHash has purchased and owns 4,250 high performance Bitcoin miners, 2,490 of which have been delivered to North Range for deployment. The identities of SonicHash's members are not currently known to Plaintiff, but, on information and belief, none of SonicHash's members are Wyoming residents.

12.      Defendant Bit Origin Ltd ("Bit Origin") is a self-claimed holding company believed to be incorporated in the Cayman Islands in January 2018.  It claims it has no material operations of its own.  Bit Origin owns 100% of SonicHash.  Bit Origin claims it has no participation of management in the operation of MineOne Wyoming, however, Defendant Bit Origin and Defendant MineOne Partners (with and through a complex web of offshore companies) share or have shared numerous key decision makers and company operators including Haku Du, Iris Li, and Dr. Jiaming Li.  Further, Bit Origin has several shareholders and decision makers on-site, including Huaili ("Wiley") Zhang and Dr. Jiaming Li.  When BCB and MineOne Wyoming signed their **DEVELOPMENT, HOSTING & SERVICES AGREEMENT** ("AGREEMENT") on or about June 9, 2022, Bit Origin issued press releases saying *it* was the entity that was doing the Cheyenne Bitcoin project.  On information and belief, Plaintiff believes and asserts that Bit Origin had been operating in China for many years before reverse merging into a public company in the United States (ticker: BTOG).

13.      Defendant Terra Crypto, Inc. is a Delaware corporation.  BCB contracted with Terra Crypto, Inc. ("Terra Crypto") with respect to the subject Bitcoin mining developments.

Terra Crypto purchased the North Range land from MineOne Wyoming, and thus owns that Wyoming property.

14.     Each and all of the Defendants, and the JOHN DOE Defendants, are related companies and individuals who control, direct and/or dictate how Defendants MineOne Wyoming and Terra Crypto act and manage their agreements with Plaintiff BCB.  The extent and level of the Defendants' control and direction over MineOne Wyoming and Terra Crypto is so pervasive that each of the Defendants' acts and omissions are imputed to each and all of the Defendants, and each Defendant is an *alter ego* of the other Defendants, and each Defendant is jointly, severally and vicariously liable for the breaches of each of the Defendants. Defendants are *alter egos* of each other. Through their actions, Defendants have lost or forfeited their corporate separateness.

15.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship.

16.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.000), exclusive of interest and costs in conformity with the provisions of 28 U.S.C. § 1332(a).

17.     This Court has *in personam* jurisdiction over the Plaintiff and all Defendants.  All of these Parties are doing business in Wyoming (primarily at the North Range site, and the Defendants are planning to develop the Campstool site without Plaintiff's involvement).  All Parties have the requisite minimum contacts with Wyoming to establish this Court's *in personam* jurisdiction over them pursuant to WYO. STAT. § 5-1-107 and the Due Process Clause of the United States Constitution.  All of them have purposefully availed themselves of doing business in Wyoming.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts and omissions giving rise to Plaintiff's claims occurred in

Wyoming. Additionally, pursuant to 28 U.S.C. § 1391(c)(3), venue is proper for foreign Defendants as "a defendant not resident in the United States may be sued in any judicial district..."

19.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Parties' two Bitcoin mining sites are located in Laramie County, Wyoming; all of the Bitcoin "miners" are in Laramie, County, Wyoming; representatives of Plaintiff BCB, Defendant MineOne Wyoming, and Defendant Terra Crypto and representatives of the other Defendants have often met and worked at the North Range mining site during the course of its construction from October 12, 2022 – March 13, 2023; and, on information and belief, Terra Crypto purchased the North Range land from MineOne Wyoming. Additionally, pursuant to 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district..."

20.     On March 15, 2023, Plaintiff filed suit against four of the named Defendants, as well as against to other related companies. Plaintiff filed its suit in the Wyoming Chancery Court. *See* BCB Cheyenne LLC v. MineOne Wyoming Data Center, LLC et al., Docket No. CH 2023-0000006, In the Chancery Court, State of Wyoming. Plaintiff achieved service of process on three of the Defendants in that Chancery Court Suit: MineOne Wyoming Data Center, LLC; SonicHash, LLC; and Bit Origin, Ltd. Plaintiff has not achieved service on the other three named Defendants in that Chancery Court Suit: Terra Crypto, Inc.; MineOne Cloud Computing 1 LP; and MineOne Partners Limited. On May 2, 2023 – the answer date for Defendants MineOne Wyoming Data Center, LLC and SonicHash, LLC – those two defendants filed an *Objection to Proceeding in Chancery Court* ("*Objection to Chancery Court*") and *Limited Entry of Appearance* of their Wyoming Counsel, Sean Larsen. Copes of these pleadings are attached hereto, marked as "**Exhibit A**," and incorporated herein by reference. The thrust of their *Objection to Chancery Court* is that they have the absolute right ot opt-out of Wyoming Chancery Court pursuant to Rule 3(a) of Wyoming Rules of Civil Procedure for the Chancery Court, which state in relevant part as follows:

(a) *Original Filing in Chancery Court.* A civil action is commenced in the chancery court when service is completed upon all defendants, pursuant to Rule 4. A civil action is "brought" for statute of limitations purposes upon filing the initial pleading in chancery court. *If any party files an objection to having the matter proceed in chancery court on or before the date its first pleading is due, the chancery court shall enter its order dismissing the case without prejudice.* An objection to proceeding in chancery court is waived if not brought within the time periods in this rule. A dismissal of a case in chancery court is subject to W.S. § 1-3-118. Notwithstanding any objection brought under this rule, the chancery court may enforce a valid contract designating the chancery court as the forum to resolve disputes meeting the eligibility requirements of W.S. § 5-13-115.

*See* WY R CHAN CT RCP Rule 3 (emphasis added).

21.     Because Defendants have the absolute right to opt-out of the Wyoming Chancery Court, Plaintiff believes Chancery Court Judge Steven Sharp must, and will, dismiss Plaintiff's Chancery Court suit without prejudice any time within the next few days. Plaintiff has no biavle objection or defense to Defendants' *Objection to Chancery Court*; consequently, Plaintiffs' Chancery Court suite will soon be dismissed. Anticipating the imminent dismissal of the Chancery Court suit, Plaintiff now files this suit in the Wyoming Federal District Court.

### III.     FACTS COMMON TO ALL CLAIMS

22.     Defendant MineOne Wyoming Data Center LLC, a Delaware limited liability company, ("MineOne Wyoming" or "MineOne") is in the business of acquiring, developing, owning, operating, and hosting of digital asset mining facilities (Bitcoin mining).

23.     Plaintiff BCB Cheyenne LLC, a Wyoming limited liability company, ("BCB") is in the business of securing power opportunities, land entitlement, development, and providing operation, maintenance, and hosting of digital mining services through its use of certain software, infrastructure, and utilities required for the mining of digital assets.

24.     Before BCB entered into its AGREEMENT with MineOne on June 9, 2022, BCB had already won a highly competitive bidding process with Black Hills Energy ("BHE") against some of the largest transnational Bitcoin mining companies in the world (including YZY Capital, a Chinese company represented in Wyoming by Hathaway and Kunz, LLP).  As the winner of that

bidding process, BCB then negotiated and signed a Power Purchase Agreement ("PPA") with BHE.

25.     The PPA required that BHE would make available – through a special energy tariff (the Blockchain Interruptible Service Tariff (the "BCIS Tariff")) – consistent and long-term electricity needed to operate future mining facilities at the North Range Business Park ("North Range") and the Campstool Business Park ("Campstool") located in/near Cheyenne, Wyoming.

26.     BHE still had additional capacity represented in their RFP process that BCB planned to further pursue with additional site expansion upon successful completion of Phase 2 at the North Range Site and the Campstool Site.

27.     The North Range site alone represented the largest Bitcoin mine in Wyoming. The North Range site and Campstool combined represented one of the largest Bitcoin mines in the United States.

28.     Defendants' business requires large amounts of electrical power, and needed the electricity contractually promised to BCB by BHE to energize and operate the North Range and Campstool Sites.

29.     Without BCB's contract with BHE to provide large scale industrial electricity to BCB Cheyenne, none of the Defendants had access to, or contracts for, large scale electricity needed to power and operate either the North Range or Campstool sites.

30.     Before Defendants ever came to Wyoming, BCB worked to develop relationships and obtain the land contracts, entitlements, easements, and other approvals to operate mining facilities for the North Range and Campstool sites. Defendants did not have or possess any property rights, reputational standing, or have any relationships with BHE, other companies, the City of Cheyenne, Laramie County, or the State of Wyoming needed to build and operate a large scale Bitcoin mine in Wyoming.

31.     Defendants needed the land, property rights, easements, and the large-scale electrical power that BCB had acquired through its work, business operations, and business relationships. The large-scale power Defendants needed to operate their business in Wyoming at a competitive market price was available only from BHE under the BCIS Tariff at substations in the North Range and Campstool Business Parks.

32.     The electrical power Defendants need to operate large scale Bitcoin mines is difficult, challenging, and very competitive to acquire at a price needed to conduct business.

33.     BCB acquired the right to power from BHE through a negotiated PPA that allowed Defendants to conduct business in Wyoming. Without BCB, Defendants would not have been able to come to Wyoming and operate their large scale Bitcoin mining business.

34.     On November 2, 2021, BCB submitted an economic development proposal to Cheyenne LEADS for the purchase of the property at 635 Logistics Drive (the "North Range Parcel").

35.     On December 6, 2021, BCB submitted an updated economic development proposal to Cheyenne LEADS for purchase of the North Range Parcel and to show its intent to bring jobs and benefit to the local community.

36.     Over the course of the next six months, BCB met with the City of Cheyenne, the Wyoming Mayor's Office, Cheyenne Chamber of Commerce, University of Wyoming faculty, and Laramie County Community College faculty in an effort to raise community awareness for the project and develop pipelines to local hiring initiatives once Phase 2 began. BCB's intention from the beginning was to hire local employees, and committed to LEADS this would not be a situation where foreign nationals or out-of-state workers would take local jobs. In all, BCB estimated it would create 40+ temporary construction jobs for Phase 1 and had hoped to hire 12-15 local full time jobs during Phase 2.

37.     On March 9, 2022, BCB provided Defendants with access to a shared drive created for the purpose of document management as the parties evaluated the opportunity.

38.     Over the next several months, BCB and Defendants exchanged information and discussions about the opportunity.

39.     On March 26, 2022, Dr. Jiaming Li advised BCB that Defendants knew what was required to build Bitcoin mining sites as they have facilities in Georgia (31MW), Pennsylvania (30MW), Ohio (50MW), and Ontario (25MW with an extension to 100MW). Defendants requested BCB propose exactly what BCB is looking for in a partnership.

40.     On March 28, 2022, as requested by Defendants, BCB presented two options for Defendants to consider: (a) a joint venture or (b) a buyout.

41.     On April 7, 2022, Defendants and BCB met in Cheyenne, Wyoming for a site visit to the North Range site and the Campstool site.

42.     On April 29, 2022, Defendants sent BCB due diligence documents relating to its assets to be able to actuate on the opportunity.

43.     On May 3, 2022, BCB provided Defendants with preliminary budgets for the North Range and Campstool sites for review and feedback. BCB expressed its willingness to work with Defendants in the new partnership by providing a project implementation fee lower than the amounts paid to the implementers of Defendants' 31MW Georgia deal.

44.     On May 4, 2022, Defendants presented formal agreement documents to BCB. The documents included a Development Hosting Services Agreement between MineOne Wyoming and BCB and, additionally, a Consultancy Services Agreement between Terra Crypto, Inc. and BCB.

45.     On May 13, 2022, Defendants provided BCB with proof of funds to cover the anticipated budgets for the North Range and Campstool opportunities.

46.     On May 15, 2022, BCB members Michael Murphy and Emory Patterson traveled to Rapid City, South Dakota to meet with the BHE team in person to discuss and advocate for the assignment of the PPA agreement from BCB to MineOne Wyoming as would be required in the emerging partnership.

47.     On June 2nd, 2022, BCB had a meeting with Defendants at 10:30 am to finalize contract terms and conditions between MineOne Wyoming, BCB, and Terra Crypto.

48.     On June 2nd, 2022, Erick Rengifo sent an email titled "Last Documents for Agreement" and expressed intent to sign the following day.

49.     On June 8, 2022, BCB provided BHE with an "Entity Obligations" document outlining MineOne's and Terra Crypto's roles and responsibilities for Phase 1 and Phase 2 of the project. It clearly states that BCB would be the host and operator. This document was created based on the language in the agreements.

50.     Also on June 8, 2022, Betsey Hale, the CEO of Cheyenne LEADS, sent an email asking about the connection between MineOne and Bit Origin.

51.     On June 9, 2022, MineOne and Cheyenne LEADS signed the Agreement for Purchase and Sale of Real Estate for 635 Logistics Drive. This agreement was based on BCB's Agreement for Purchase and Sale of Real Estate for 635 Logistics Drive that it had previously negotiated with Cheyenne LEADS. BCB assisted the parties in going under contract.

52.     On June 9th, 2022, BCB sent notice to BHE that MineOne and BCB had reached an agreement and would be ready for BCB to assign the PPA to MineOne the following day.

53.     On the same day, MineOne and BCB signed (1) the Development and Hosting Agreement ("AGREEMENT") and (2) the Side Letter. Terra Crypto and BCB signed the Consultancy Services Agreement.

54.     Also on June 9, 2022, BHE and BCB signed a document assigning the PPA (with several modifications) from BCB to MineOne.

55.     On June 13, 2022, BCB received official approval (Approved Site Plan & Certificate of Review) from Laramie County Department of Planning and Development for the North Range development to move forward.

56.     On June 16, 2022, BHE notified BCB that MineOne had violated its PPA by issuing a public press release without approval of both parties.  Not only that, but the press release indicated that Bit Origin had secured the PPA in Cheyenne, Wyoming.  The press release did not mention MineOne.  This raised questions from BHE since it had signed a PPA with MineOne (not Bit Origin).

57.     On June 17, 2022, BCB provided MineOne with notice from BHE that BHE was concerned with Bit Origin's involvement and requested an immediate meeting to control the damage. On the same day, Dr. Jiaming Li responded to this concern from his 'China Xiangtai Food Co' email address and downplayed the severity of the violation.  China Xiangtai Food Co later changed its name to Bit Origin Limited.

58.     On June 18, 2022, BCB provided MineOne with a detailed comparison of all Mining Container options, including options proposed by Defendants, and the associated costs. BCB made it clear that, as the site operator, it would not own these assets at the end of the day, so it was critical the final decision be made by MineOne.  Defendants evaluated the options over the next month.

59.     On June 22, 2022, Shermco and BCB met to discuss the scope of work Shermco would propose after evaluating the project. MineOne later entered into a contract with Shermco.

60.     On July 7, 2022, BCB received pre-approval for a Temporary Use Permit (TUP) for a parcel of state land in proximity to the BHE substation at the Campstool Addition.

61.     On July 25, 2022, MineOne signed an agreement with CEGEN whereby CEGEN would provide all the modular data centers for North Range. All of the modular data centers were to be delivered, installed, and operational by the end of November 2022.

62.     On July 15, 2022, MineOne went under contract with YZY Capital for the purchase of Lot 1 Block 4, Campstool Addition 4th Filing. This was to be the site for the Campstool Bitcoin mine.

63.     On August 3, 2022, BCB participated in a pre-application planning and development meeting with the City of Cheyenne for the Campstool parcel.

64.     On August 4, 2022, the Wyoming Board of Land Commissioners approved BCB's Temporary Use Permit for three acres of land to the north of the Campstool Parcel.

65.     On August 18th, 2022, BCB received official site plan approval from the Laramie County Department of Planning and Development for North Range.

66.     On September 20, 2022, Plaintiff BCB hired Steven Randall, an exceptionally qualified individual, to serve as Site Operator and Manager for the project. Mr. Randall's job duties were primarily focused on Phase 2 work, but he also actively engaged with the company during Phase 1, contributing his extensive bitcoin mining knowledge and expertise. Mr. Randall was informed of BCB's plan to hire locally, and he supported this initiative. In furtherance of this plan, job postings were published seeking local applicants to join the team and work under Mr. Randall's leadership and operational management.

67.     On September 27, 2022, BHE provided historical pricing data to BCB for MineOne.

68.     On September 28, 2022, BCB began facilitation of Terra Crypto Inc.'s purchase of the North Range parcel from MineOne.

69.     On September 28, 2022, BCB received notice from McCluskey & Associates (the fan supplier for CEGEN's modular data centers) that the fans for the modular data centers would

not be on site until late January [2023]. CEGEN had told MineOne that if MineOne paid the deposit on time for these fans, which MineOne did, the fans would arrive on time for the modular data centers to be ready by the end of November [2022].

70.　　On September 28, 2022, BCB achieved a Certificate of Review for the Campstool Parcel site plan.

71.　　On October 6, 2022, the Wyoming Board of Land Commissioners approved BCB's Special Use Lease on two acres directly north of the Campstool Parcel.

72.　　On October 12, 2022, BCB and vendors officially broke ground at North Range.

73.　　On October 27, 2022, BCB coordinated a scope of work for a theoretical noise impact assessment for the Campstool Parcel with ENA2 (via CEGEN).

74.　　On November 7, 2022, BCB received a concerning email from Betsey Hale, CEO of Cheyenne LEADS.  The email contained a report from Microsoft's National Security team, which had already been sent to the United States Government, which recommended additional research and due diligence on Bit Origin (which it identified as a "Chinese private sector company") due to its Chinese national owners and operators, and the proximity of the North Range site to Microsoft's adjacent campus and the F.E. Warren Air Force base.

75.　　On November 9, 2022, BCB again requested fixed/stable power pricing and urged BHE to present a block for purchase to MineOne.

76.　　On November 14, 2022, Huaili "Wiley" Zhang and an accomplice arrived, unannounced, to the North Range site. Upon arrival, they demanded access to the site. BCB was not aware they were coming to North Range or the purpose of their visit.

77.　　On November 16, 2022, BCB and Defendants discussed CEGEN's delays and expected cost overruns. BCB, at the direction of Defendants, proceeded to structure a proposed amendment for MineOne and CEGEN that would (1) set guaranteed maximum prices for

assembly, install, and electrical labor to construct the modular data centers; (2) set guaranteed maximum prices for shipping costs and equipment rentals; (3) tie MineOne's payments to CEGEN to CEGEN's performance in achieving key milestones; (4) provide a schedule for the completion of modular data centers that CEGEN would be held accountable to; and (5) provide a payment schedule for electrical supplies needed for CEGEN to achieve the key milestone dates.

78.     On November 29, 2022, BCB suggested to MineOne that MineOne consider renting a warehouse so that some of the laborers could work indoors when the weather was too poor for outdoor work. This would help speed up assembly of certain components, such as shelving and rain hoods for the data centers. MineOne liked this idea and directed BCB to find a warehouse space. BCB found a warehouse space and MineOne rented it.

79.     On November 29, BCB achieved a Revised Certificate of Review for the Campstool Parcel site plan.

80.     On December 15, 2022, MineOne and CEGEN signed (1) an amendment to their original agreement from July, and (2) a labor agreement. These agreements provided a road map for the parties to continue moving forward on the project.

81.     On December 15, 2022, Michael Murphy drove to Cheyenne to assist in the unloading of used mining equipment sent from one of Defendants' other facilities. North Range was nowhere near ready for energization, and BCB was not expecting the mining equipment to arrive at this point in the project; however, BCB quickly procured storage and security equipment to be ready when the mining equipment arrived on site.

82.     On December 17, 2022, Mr. Zhang and his translator, Ziyao Shao, arrived unannounced to North Range with Cho "Jack" Zhu, two workers from Georgia (Scott and Braden Caffee), and a worker from Jamaica (Chris Wilson). Mr. Zhang informed BCB – through translation – they were at North Range to oversee construction and help expedite Phase 1.

83.     Mr. Zhang indicated he was a close friend and business confidant of Mr. Lucas Wang, the CEO and Chairman of Bit Origin, and he came to the site "to help." He did not say he was working for MineOne Wyoming or identify any other company he was working for. His statements corroborated the November 14, 2022 email saying Mr. Zhang was overseeing "operations in the Indiana site" and "Mr. Wang sent him."

84.     Mr. Zhang told BCB he would be at North Range until it was energized and Phase 2 began.

85.     Defendants' intentions remained hidden for now as Mr. Zhang – at the direction of Mr. Wang – slowly inserted himself and his team into the operations and project management at North Range. Defendants and their operatives began to use a strategy aimed at discrediting BCB and taking over the management, operations, and money tied to the Phase 2 payouts from BCB.

86.     Mr. Zhang told BCB that Mr. Zhu was the site manager for Bit Origin's site in Indiana. At the time, BCB thought it was strange Defendants were bringing in a site manager from another site when it was BCB's contractual obligation, and right, to conduct Phase 2 operations at North Range.

87.     BCB was unaware at the time that Mr. Zhu had been brought to the site in an effort to undermine Mr. Randall's expertise as the site operator and manager, and initiate a plan to insert MineOne and Bit Origin in Phase 2 obligations that fell under Mr. Randall's role as the site manager at North Range for BCB.

88.     Mr. Zhang informed BCB that Scott, Braden, and Chris had worked together at Defendants' site in Georgia, and were being brought to the site to expedite Phase 1 construction. Scott told BCB he had helped operate Defendants' Georgia site.

89.     BCB was now concerned as to the nature of MineOne's true intentions, bringing six individuals to the site – three from China, two from Georgia and one from Jamaica – who

described themselves as site managers and operators at other Bitcoin mining sites. Site operations and management was not Defendants' contractual obligation, right or responsibility—these were BCB's Phase 2 contractual obligations.

90.    The financial payments tied to Phase 2 were the culmination of a tremendous amount of hard work and time by BCB to develop the project and implement Phase 1.

91.    On December 19, 2022 severe weather impacted construction at North Range.

92.    On December 21, 2022 a new record low temperature was recorded in Cheyenne. While Wyoming's winter condition caused delays, major delays were happening due to CEGEN's failures to procure needed construction materials, build functioning buildings, and perform on its contractual obligations.

93.    On December 22, 2022, BCB began work on the operations and maintenance budget ("Phase 2 Budget") as required by the Development and Hosting Agreement.   Neither MineOne nor Terra Crypto asked BCB to work on the Phase 2 Budget.  BCB continued work on the Phase 2 Budget over the remainder of December 2022, and throughout January 2023 and February 2023.

94.    By December 24, 2022, it became evident Mr. Zhang had come to North Range to direct BCB and assume a project management leadership role when he demanded BCB and everyone working at North Range work on Christmas. Mr. Zhang, through his translator, Mr. Shao, told Mr. Patterson that he needs to learn more about the Chinese work ethic. Mr. Zhang then demanded Mr. Randall travel in from Arizona immediately the next day to meet with him, or that BCB fire Mr. Randall as the site operator and manager. BCB communicated such demands were unreasonable to ask on such short notice of Mr. Randall and the construction teams. Construction work continued at North Range with haste on December 26, 2022.

95.     On or around December 27, 2022, Mr. Zhang continued to insert himself, Mr. Zhu, Mr. Shao, Scott, Braden, and Chris into operational, management, and construction work at North Range. Mr. Zhang hired temporary, unskilled laborers to assemble basic building parts (racks and filter hoods) at North Range.

96.     On December 30, 2022, Steve Randall returned to North Range to assess progress and plans for his upcoming role to be the site operator for BCB.

97.     On December 30, 2022, Defendants requested additional information about the water quality at Campstool. Defendants were discussing plans with a new potential partner — Bitmain, the largest Bitcoin mining and equipment manufacturing company in the world — and MineOne indicated it was now considering changing the site plans for Campstool at Bitmain's request. Defendants expressed to BCB that Bitmain wanted to do the newest (and most unproven) type of Bitcoin mining (Hydro Mining) at Campstool.

98.     On December 31, 2022 Mr. Randall was ordered into an interview by Mr. Zhang and Mr. Zhu to assess Mr. Randall's skills and ability to perform as the site operator. It was a test—and a trap. Mr. Zhang and Mr. Zhu insulted and degraded Mr. Randall.

99.     These attacks were all part of Defendants' plan: To insert themselves as the site operators, and they discredited and tried to remove Mr. Randall as BCB's site operator.

100.    On January 4, 2023, BCB hired Sean Murphy for a two-month contract to be the Site Administrator. Sean Murphy lives locally in Cheyenne and is active in the local community and State Legislature. Sean Murphy's primary role was to do everything in his power to help expedite Phase 1 including project client support, scheduling, reporting, documentation, government relations, and to be on-call for any ad-hoc requests or high priority tasks or projects.

101.    CEGEN only had one team member, Chad Dalziel, on site at North Range directing and desperately trying to manage all of CEGEN's contractual obligations and sub-contractors.

102.    After Sean Murphy's arrival, and by January 9, 2023, BCB instituted a daily Foreman's meeting at 8:30 am to help Shermco manage construction, and a daily procurement call at 4:30 pm to help CEGEN and Shermco manage their material procurement. These daily meetings were in addition to the 6 am calls BCB had been having with Defendants three times a week (for the last five months), and the multiple daily engineering calls required to advance progress at North Range. Often, BCB team members were working 12-15 hour days doing their work and pushing CEGEN and Shermco. BCB deployed a wide sweeping accountability campaign with CEGEN and Shermco and continued to do everything it could to advance and complete Phase 1 despite CEGEN and Shermco's errors, failures, and lack of contractual performance.

103.    BCB pushed Shermco to develop an accurate and updated Master Schedule for the project (as it was Shermco's contractual responsibility as the construction managers), and BCB created a Master Procurement document for all Parties to help address and manage CEGEN and Shermco's failures and delays getting construction material to the site necessary for construction.

104.    Defendants started making requests for specialized summary and detailed project management and schedule reports wanting exact dates from BCB when Phase 1 would be complete. BCB reminded MineOne that the contractual responsibilities – and the exact dates it was seeking for Phase 1 completion – were with CEGEN, CEGEN's subcontractors, and Shermco, as these companies were the electricians, engineers, and construction management that MineOne had contracted with to complete Phase 1. BCB's obligations were not Phase 1 construction, they were Phase 2 operations and management of the site.

105.    BCB continued to do everything it could to deliver Phase 1 and began ramping up additional electrical crews (CTW and Automation Electronic) to cover how poorly CEGEN (and their electrical subcontractor, Master Controls) were performing on their contractual duties to deliver 10 fully functional data centers.

106.    BCB reminded Defendants it was not contractually responsible for CEGEN and Shermco, nor was BCB licensed engineers or electricians able to do the work Defendants had contracted with CEGEN, CEGEN's subcontractors, and Shermco to complete for Phase 1.

107.    On January 10, 2023 Mr. Randall returned from Arizona to North Range. Mr. Randall's job duties for BCB were to be a site manager and operator for North Range during Phase 2, but in an effort to do everything BCB could do to advance the project, Mr. Randall assumed other Phase 1 obligations to advance to Phase 2.

108.    Mr. Randall also appreciated the opportunity before him—to be the site manager of a large Bitcoin mine. Such a position would put him in a rare and highly sought after position as a Bitcoin miner operating the largest Bitcoin Mine in Wyoming, and one of the largest Bitcoin mines in the country. Such a position was both prestigious and would create valuable professional experience and credibility both he and BCB could leverage to generate other large opportunities in the industry.

109.    On January 11, 2023, a winter storm hit Cheyenne. Severe weather continued to make work inside and outside the data centers slow and challenging.

110.    CEGEN's continued inability to procure required materials from vendors - and send the required building and electrical materials from their headquarters in Canada to North Range - continued to compound problems and delays.

111.    On January 12, 2023, Mr. Shao acknowledged Shermco was the construction manager and the responsible party for all project management delays involving North Range engineering and construction management. Mr. Shao also communicated the delays from material procurement from CEGEN to his superior, Mr. Zhang.

112.    Mr. Zhang rarely came to North Range during the first three weeks of January. When he did come to the site, he was visibly angry, loud, obnoxious, and demanded to know from BCB when Phase 1 would be complete despite factors outside of BCB's control.

113.    On January 13, 2023, BCB achieved approval of the EPR for the Campstool Parcel.

114.    On January 17, 2023 Mr. Patterson and Mr. Randall conducted an interview with Dennis Grant. Mr. Grant had been inquiring about working for BCB for several months. Mr. Grant was local, qualified, and eager for the opportunity to be involved in a large Bitcoin mine.

115.    On January 18, 2023 extreme snow and wind conditions slowed construction progress at North Range.

116.    On January 18, 2023, BCB achieved permits for the Campstool Parcel.

117.    On information and belief, on or around January 19, 2023, MineOne Wyoming executed the SERVICE FRAMEWORK AGREEMENT with Bitmain Technologies, the largest Bitcoin manufacturing company in the world (headquartered in China).

118.    On January 20, 2023, Mr. Zhang and Mr. Zhu pulled Mr. Randall into a meeting at the end of the day. Mr. Zhang and Mr. Zhu bombarded Mr. Randall for over an hour with probing questions, concerns, and insults about his credentials and experience to implement North Range's networking and guide completion of Phase 1.

119.    Throughout January and early February, Mr. Zhang demanded that BCB fire Mr. Randall. Mr. Zhang's reasoning for BCB to fire Mr. Randall was never material, just that Mr. Zhang thought Mr. Randall was doing things the "wrong way" and that Mr. Zhang could do it better "his way."

120.    On January 24, 2023, Sean Murphy reported to BCB that Mr. Shao, Scott, Braden, and Chris were continuing to make it difficult for him to do his job.

121.    On January 24, 2023, Sean Murphy reported to BCB that Darcy McIntosh from CEGEN had stopped attending procurement meetings.

122.    On January 24, 2023 Sean Murphy was notified by Mr. Shao that Defendants were bringing in "an electrical person" who worked at a Bitcoin mine in the area. Sean Murphy asked who it was. Mr. Shao didn't know but said this electrical person was on the way to North Range. Shortly thereafter, Joey Dawell, the President at Crypto Knight Hosting, arrived at North Range.

123.    The meeting with Joey Darwell was awkward. Mr. Darwell represented BCB's largest competitor and was now on North Range and being taken on a personal site tour by Mr. Zhang and Mr. Shao irrespective of the fact that Mr. Darwell had not established an NDA with BCB. Sean Murphy notified BCB.

124.    On January 26, 2023 CEGEN, CTW, and Master Controls did not attend the Foreman's meeting.

125.    On January 26, 2023 severe weather alerts for high wind warning stalled construction progress. Interstates were shut down the following day.

126.    With the project facing delays and runaway costs, BCB welcomed Mr. Zhang to coordinate a meeting as soon as possible to learn about this new electrical and construction company, Systems-MEC. A meeting was scheduled between Tony Simpson, the CEO of Systems MEC, and BCB, for January 29, 2023.

127.    On January 27, 2023 BCB received notice from the Campstool Architectural Review Committee that the application submitted on behalf of MineOne had received "full approval." This cleared the remaining due diligence items for the project as designed in the approved plans. The final step to move forward with Campstool was for MineOne to close on the land.

128.    From January 29 through February 2, 2023, BCB and Defendants engaged in a series of intense negotiations, meetings, phone calls, and due diligence with Systems-MEC to explore engaging Systems-MEC to take over all the electrical responsibilities in the data centers that CEGEN had failed to deliver.

129.    On January 30, 2023, BCB received a heavily redacted version of the SERVICE FRAMEWORK AGREEMENT that included the FORM OF SERVICE ORDER (dated March 10, 2023) for the service (hosting) of 9,800 S19XP ASIC computers (top of the line Bitcoin miners). The FORM OF SERVICE ORDER designated Mine One Wyoming as the "Service Provider," while indicating MineOne Partners was the receiving entity for wire transfers (payments) for Mine One Wyoming as the Service Provider.

130.    On February 1, 2023, Mr. Simpson, the CEO of Systems-MEC, showed BCB that Mr. Shao had sent the Procurement List to Mr. Darwell and shared other sensitive information. Mr. Simpson said Mr. Darwell had expressed he had been meeting regularly with Mr. Zhang and Mr. Simpson with the intent that Crypto Knight and Mr. Zhang become the site operators at Campstool.

131.    Without approval or notice to BCB, Mr. Zhang brought Lee Filer, Crypto Knight's Site Director, to North Range on two occasions.

132.    By finding and bringing in Systems MEC, Mr. Zhang had found a new path to try to remove BCB and insert himself as the site operator—now, at Campstool.

133.    BCB informed Mr. Simpson that BCB was under contract to be the site operator at Campstool. BCB explained it had been over a year and half of work and part of an extensive RFP process that led to BCB's contract with MineOne to be the Campstool site operator.

134.    BCB became concerned Mr. Zhang was working with Defendants to undermine and remove BCB from Phase 1 and Phase 2 at Campstool, and it became further apparent Mr. Zhang was actively working to subvert BCB's contractual obligations.

135.    On February 3, 2023, Dr. Jiaming Li visited the North Range site for several hours to tour the site and direct MineOne's on-site personnel. Dr. Jiaming Li came to Cheyenne to meet with Mr. Simpson for dinner to discuss contract details for Systems MEC to replace CEGEN as the electrical contractors (without BCB present). Dr. Jiaming Li departed the next day with Mr. Zhang to California "for other business."

136.    According to Bit Origin's Form F-3/A, Dr. Jiaming Li is the President of Bit Origin. Dr. Jiaming Li resigned from MineOne Partners before joining Bit Origin.

137.    On February 6, 2023 Systems-MEC arrived at North Range with a team of more than 40 workers, primarily electricians. Systems-MEC is a Wyoming-based business headquartered in Rock Springs, Wyoming.

138.    On February 8 and February 14, 2023, Sean Murphy reported to BCB partners that strong management boundaries needed to be enforced with Defendants.  Sean Murphy observed Defendants' workers (Mr. Shao, Scott, and Chris) interfering with BCB obligations and Systems-MEC workers.

139.    BCB continued spending significant time and resources working to address MineOne's new plans for Campstool. Believing it was still Dr. Jimaing Li and Ms. Haku Du's intent that BCB be the site operator at Campstool – and seeking to do everything in BCB's control to help MineOne – BCB engaged and met with Bitmain engineers, facilitated water analysis testing, and did everything MineOne requested to investigate and explore changing plans at Campstool.

140.    Mr. Randall has been a Bitcoin miner since 2012, and operated multiple sites consuming over 13MWs of electrical power. By now, MineOne, Bit Origin, and Mr. Zhang had come to know Mr. Randall was a more experienced Bitcoin miner and site operator than anyone at Defendants, including Mr. Zhang.

141.    Mr. Zhang now realized he could not disparage or insult Mr. Randall out of his position at BCB. In fact, Mr. Randall knew far more than anyone at MineOne about all three types of Bitcoin mining (air cooled, immersion, and hydro). Each type of Bitcoin mining is specialized and involves highly complex processes and knowledge to architect and deploy.

142.    After weeks of meeting about changing the site plans for Campstool to accommodate hydro mining, a conference call with Bitmain's engineer was held on February 13, 2023.

143.    On February 13, 2023, Mr. Patterson wrote to BCB team members, "here we go again. Wiley (Mr. Zhang) telling us how to build and what we already know." This statement captured what had been going on for months: Mr. Zhang interfering with BCB's obligations and Mr. Zhang trying to assert himself as the site operator for North Range, and now, Campstool.

144.    After the February 13, 2023 engineering call with Bitmain's engineer, Mr. Zhang's attitude toward Mr. Randall changed. Mr. Zhang realized his earlier plan to insult and disparage Mr. Randall – as a means to remove Mr. Randall from North Range — was defeated. Mr. Zhang and Defendants would need to formulate a new plan.

145.    On February 15, 2023, Dr. Jiaming Li returned to the North Range site. Dr. Jimaing Li was directing Mr. Zhang. Dr. Jiaming Li brought with him an investor he introduced to Sean Murphy as "Daisy."

146.    On February 20, 2023, CEGEN's only worker and representative at North Range, Chad Dalziel, left the site. Beyond this, CEGEN's involvement was reduced to material shipments and procurement.

147.    On February 22, 2023, the temperature on the site reached -4F (and -20F with wind chill). Systems-MEC continued working through blizzard conditions.

148.    On February 23, 2023, Mr. Zhang arrived unannounced at North Range with a new team. Sean Murphy told BCB leadership, "I just let in Wiley (Mr. Zhang) and a new group." Through translation, Mr. Zhang identified the new individuals by their Anglicized names, Jason and Eason. Along with Mr. Zhu – the site operator from Indiana – the new individuals and Mr. Zhang went straight to Mr. Randall's office, testing him about networking design. After Mr. Randall passed their test, everyone left satisfied in a friendly way.

149.    On Friday, February 24, 2023, Mr. Zhang invited Mr. Randall to his AirBnb at 210 E Pershing Blvd for dinner and drinks. Mr. Zhang explained (through Mr. Shao's translation) 'BCB did not know what they were doing,' and deployed a new approach with Mr. Randall–now complimenting Mr. Randall about his impressive tenure and credibility as a Bitcoin miner.

150.    After the dinner, Mr. Zhang later followed up with Mr. Randall and said he (now) had "full confidence" in Mr. Randall operating North Range, but lacked confidence in BCB.

151.    Mr. Zhang deployed a 'divide and conquer' strategy, and wanted Mr. Randall to believe Mr. Randall was 'an elite like us' and a 'part of the family' as a fellow long-time Bitcoin miner.

152.    Mr. Zhang knew if he was unable to unseat Mr. Randall from North Range through insults, he would need to bring Mr. Randall to his side (and away from BCB).

153.    From February 25, 2023 through March 1, 2023, many semi-trucks filled with pallets of thousands of ASICs (i.e., expensive computers that process data to earn Bitcoin) arrived

in Cheyenne. Mr. Randall and Sean Murphy coordinated logistics and arrival with Defendants to deliver and secure the ASICs.

154.    On February 25, 2023, two new individuals arrived to watch the miners be unloaded. The individuals arrived with Mr. Zhang and identified themselves as Henry and Mark. At this point, there were now eight Chinese nationals coming to North Range saying they were a part of the project. When Mr. Randall asked the new individuals if they were from Bit Origin, they confirmed that they were.

155.    On February 27, 2023, Mr. Zhang – through translation – informed Mr. Randall that Henry had come to the site to do the networking portion of the project. This was concerning and unusual, given that MineOne had already signed a contract with BCM Site Services to provide networking services.

156.    At about the same time, conflict began to arise over which management software would be used at North Range. MineOne had already contracted for BCM to install Foreman software, but now, with the new individuals present, Mr. Zhang made it clear he wanted to change the software to Bitmain's software, AntSentry. Mr. Zhang, and the individuals he was directing, pushed to change plans and vendor service agreements that had been agreed upon and confirmed for months.

157.    On February 27, 2023 Mr. Randall went to Mr. Zhang's AirBnb for dinner and drinks for a second time. Mr. Zhang asked Mr. Randall probing questions about income and payments from BCB, and conveyed to Mr. Randall that he would be taken care of financially if he was a part of the Defendants' team (and not with BCB).

158.    On February 28, 2023, BCB confirmed MineOne's desire and direction to provide notice to Shermco to cease all construction management, engineering, site electrical, and other site work. BCB provided notice to Shermco this same day.

159.    On March 1, 2023, there were blizzard conditions at North Range. Highways were closed. Systems-MEC and BCB continued working at North Range to the common Phase 1 goal of energizing North Range and commencing Bitcoin mining.

160.    On March 1, 2023, BCB sent an email to Drs. Rengifo and Li to schedule a meeting to discuss a draft of the Phase 2 Budget. BCB did not receive a response.

161.    On March 2, 2023, BCB sent another email to Drs. Rengifo and Li asking to schedule a meeting to discuss a draft of the Phase 2 Budget. Again, BCB did not receive a response.

162.    The Campstool Parcel was scheduled to close on March 2, 2023. BCB consistently communicated this closing date and the relevant closing information to MineOne in the weeks leading up to the planned closing. However, when the time came for MineOne to wire the required funds for closing on time, MineOne did not wire the funds. Instead, MineOne provided minimal communication and left many of the affected parties in the deal (Seller, Seller's agent, Title Company) confused as to what MineOne's intentions were. Eventually, MineOne sent an email to BCB on the closing date indicating it would buy the land but it would require an extension until March 17, 2022.   MineOne also indicated that if it were to proceed with the Campstool development, it would be treated independently from North Range.  BCB negotiated an extension with the Seller and sent the paperwork to MineOne for signing.  MineOne did not sign by the deadline.  MineOne did sign the extension the following day, March 3, 2023.

163.    On March 3, 2023, Systems-MEC convened a site safety orientation and project status meeting for all members of BCB and MineOne at North Range. By the end of the meeting, Mr Zhang was insulting BCB and Systems-MEC, and demanding both companies "give him a date" the site will be energized. Kenny McPherson, the Sr. VP of Operations for Systems-MEC, was so offended by Mr. Zhang's conduct and what he was saying, that Mr. McPherson got up from the meeting and briefly stepped in the other room.

164.    At the end of the orientation meeting, Mr. Zhang stormed out of the meeting hollering demands and directives as if he was a dictator leading the entire project.

165.    Following the orientation meeting, Mr. Zhang directed all of the workers under his authority — now, more than 10 – to begin moving ASIC computers from the warehouse into the data centers. BCB and Systems advised Mr. Zhang to be patient and do things in the proper order to save time and be safe. By now, Mr. Zhang had no intention or desire to listen to BCB or Systems-MEC's advice or directives. Mr. Zhang was acting as the site manager for 'racking and stacking' the ASIC computers–something BCB had planned for, and was just about to hire its third local full-time team member (Melody Cheere) and other local temporary workers to assist with.

166.    On March 3, 2023, BCB inquired on its regularly scheduled weekly calls with the MineOne team about a time to schedule a meeting to discuss the draft of the Phase 2 Budget.  The MineOne team did not provide a time to discuss the Phase 2 Budget.  However, Dr. Rengifo sent an email in which he stated "...Bitmain [is] completely opposed to you being the Host. It is clear that you do not know the business and no one wants to have issues during operations." He then proposed a meeting time for March 6, 2023 to meet with the BCB team.

167.    On March 6, 2023, BCB provided an estimate of the hosting fee deposit (which was to be paid by MineOne to BCB starting with the commencement of commercial operations).  BCB also submitted a $90,000.00 progress payment invoice for services BCB rendered over the prior two months. This $90,000.00 is within the approved Phase 1 Budget.

168.    On March 7, 2023, BCB met with Dr. Rengifo and Dr. Jiaming Li (as Dr. Rengifo had requested on March 3, 2023) via a GoogleMeet teleconference. Dr. Rengifo informed BCB that MineOne is replacing BCB as operator of the North Range site with Wiley's (Mr. Zhang's) [BitOrigin/MineOne] team.  Dr. Rengifo then explained the much-reduced scope of work for BCB (which would include only coordinating power pricing with BHE, local public relations, and

33

limited accounting services) and BCB's much-reduced compensation package. Despite receiving this news, BCB continued to diligently work on the project.

169.    On March 7, 2023, Dr. Jimaing Li returned to North Range. He arrived in a brand new BMW M5 that appeared to have been purchased the same day in Denver based on the temporary license plate tags.  A new BMW M5 costs more than $120,000.

170.    By March 9, 2023, Mr. Zhang was in full command directing his team of Chinese nationals (Mr. Zhu, Mr. Shoa, Henry, Mark, Jason, and Eason), one worker from Georgia (Scott), one worker from Jamaica (Chris), and 10 temporary workers, most of whom were out of state workers traveling through Cheyenne looking for work.

171.    Mr. Zhang's approach was hasty and uncoordinated. He thought he was saving time loading the data centers with ASICs, but because the networking cables hadn't been finished, his approach was actually costing more time and money, not less. Systems-MEC leadership told BCB that Mr. Zhang's approach was costing at least one, maybe two, days of working time for the Systems-MEC crews in four data centers.

172.    All of this greatly concerned BCB. BCB had hired local team members to "rack and stack" the ASICs and was a day away from hiring another full-time local team member. BCB had a stack of applications from local individuals interested in working for BCB. Now, with Mr. Zhang and Defendants taking over operations, BCB and its team members were left in a challenging situation.

173.    After Sean Murphy recorded the assembly line of Defendants' foreign and out of state workers loading the data centers, Mr. Shao asked Sean Murphy not to film them without asking their permission. Sean Murphy asked if the assembly line of workers were working for MineOne. What followed was a conversation between Sean Murphy and Mr. Zhang (with Mr.

Shao translating) whereby Mr. Zhang explained Mark is going to be the official site manager. He said Mark and Henry were going to "be in charge of the site."

174.    Mr. Zhang went on to explain that Mark, Henry, Chris and Scott were going to "find another six individuals to be in charge of and operate the site," and that Mr. Zhang would "work on different sites" after the construction was finished. At first, Mr. Zhang told Sean Murphy "the company" had made this decision, but when Sean Murphy pressed further, Mr. Zhang explained and confirmed the "leading team" had made this decision, and confirmed individual names.

175.    On the night of March 9, 2023, MineOne made its move on Mr. Randall. Dr. Jimaing Li invited Mr. Randall to dinner at his AirBnb at 2005 Coffee St. Cheyenne, WY 82007. Over dinner and drinks, Dr. Jimaing Li explained "the opportunity" that Defendants wanted to offer Mr. Randall to join them. The following day, Dr. Jimaing Li sent Mr. Randall an email and document explaining "the opportunity" for Mr. Randall to invest $1.5 million or $2.5 million in MineOne and a commission payout for the number of mining rigs sold by Mr. Randall.

176.    On March 10, 2023, BCB sent MineOne another email requesting payment of its $90,000.00 invoice for services previously rendered.  BCB had planned to discuss payment for this invoice on its regularly scheduled call with MineOne that day, but MineOne canceled shortly before the meeting was scheduled to begin. Ms. Du told Michael Murphy to discuss payment with Dr. Jimaing Li in-person at the North Range facility.  Michael Murphy then traveled to Cheyenne that day to meet with Dr. Jiaming Li.  Dr. Jiaming Li promised that MineOne would pay $45,000.00 of the $90,000.00 invoice on Monday, March 13, 2023.

177.    On Monday, March 13, 2023, BCB met with Ms. Du and Dr. Jiaming Li on a regularly scheduled call.  BCB asked Dr. Jiaming Li about the $45,000.00 payment that Dr. Jimaing Li promised would be made on Monday, March 13, 2023. Dr. Jiaming Li said he would

have a response later that day.  Several hours later, Dr. Jiaming Li sent an email to BCB that included a proposed amendment to the Development and Hosting Agreement that indicated, among other things and in simplified form, the following:

    a.   BCB would not be allowed to operate the North Range site and would not receive the agreed-upon consideration tied to those services.

    b.   BCB would not be allowed to implement or operate the Campstool site and would not receive the agreed-upon consideration tied to those services.

    c.   BCB would no longer have its Right of First Refusal or buy-out in the event another entity purchases the development.

    d.   In return for a much-reduced compensation package, BCB would be expected to perform a much-reduced scope of work including tracking daily power prices, providing any PR services reasonably required by MineOne, and helping MineOne maintain good relationships with local authorities and regulators.

    e.   BCB could earn additional compensation by (1) assisting MineOne's attorneys in MineOne's claims against third parties, and (2) assisting MineOne secure tax reductions or tax exemptions.

    f.   In order for BCB to now receive payment for the $90,000.00 BCB had invoiced on March 6, 2023, for services already provided, and which Dr. Jiaming Li had earlier promised to pay $45,000.00 towards on March 13, 2023, BCB would now need to sign the proposed amendment (to receive $40,000.00) and then deliver the site to full operational completion (to receive the remaining $50,000.00).

178.    Dr. Jiaming Li's 3/13/23 email and attached proposed amendment are attached hereto, marked "**Exhibit B**," and incorporated by reference herein.

179.    Despite receiving this news on March 13, 2023, BCB continued to work diligently towards the Phase 1 completion goal of energizing North Range and commencing Bitcoin mining operations.

180.    All of the acts, omissions, and conduct described in paragraphs 22 - 179 above constitute an unjustified material breach, or material breaches, of the AGREEMENT.

181.    On March 15, 2023, BCB sent an email to Dr. Rengifo and Dr. Jiaming Li explaining that MineOne had breached the AGREEMENT (*see* Michael Murphy's 3/15/23 email to Dr. Rengifo and Dr. Jiaming Li, attached hereto, marked "**Exhibit C**," and incorporated by reference herein).

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT AGAINST MINEONE WYOMING, INCLUDING ANTICIPATORY REPUDIATION OF CONTRACT

182.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

183.    Plaintiff BCB and Defendant MineOne Wyoming entered into a valid and enforceable written contract, the DEVELOPMENT, HOSTING & SERVICES AGREEMENT ("AGREEMENT") on or about June 9, 2022.

184.    Sufficient and mutual consideration supports the AGREEMENT.

185.    Plaintiff BCB substantially performed its obligations under the AGREEMENT without breaching the AGREEMENT.

186.    Defendant MineOne Wyoming failed and/or chose not to honor or meet its obligations in the AGREEMENT, which unjustified actions constitute a material breach, or material breaches, of the AGREEMENT.

187.    Defendant MineOne Wyoming anticipatorily repudiated and/or materially breached the AGREEMENT with Plaintiff BCB when it chose not to honor its obligation under the AGREEMENT, when, at Bit Origin's direction, it brought in its own MineOne Wyoming team and workers to perform BCB's work and contractual obligations without BCB Cheyenne's consent, and when, at Bit Origin's direction, MineOne Wyoming constructively and effectively removed BCB from the North Range facility without cause, and, at Bit Origin's direction, it would not allow BCB to perform BCB's remaining contractual obligations for both the North Range and Campstool sites and/or facilities, all to BCB's injury and loss, generally described in the Paragraph 189 below.

188.    Plaintiff BCB is excused from further performing its contractual obligations because of the material breaches of Defendant MineOne Wyoming.

189.    As and from MineOne Wyoming's anticipatory repudiation and material breach of its AGREEMENT with BCB, BCB has suffered, and will suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and Campstool facilities is now not possible; 2) past contractual payments for work performed and/or earned by BCB, but not paid by MineOne Wyoming; 3) loss of future revenues, bonuses, and profits from BCB's future anticipated performance of the AGREEMENT, including BCB's anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its AGREEMENT with BCB.

## SECOND CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST MINEONE WYOMING.

190.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

191.    By law, there is implied in the AGREEMENT the duty of good faith and fair dealing by both BCB and MineOne Wyoming.

192.    BCB complied with, and honored, its implied covenant of good faith and fair dealing to MineOne Wyoming in all substantial ways.

193.    MineOne Wyoming's implied covenant of good faith and fair dealing includes but is not limited to, (a) faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; and (b) its obligation to not commit any act that would injure the rights of the other party, BCB, to receive the benefit of its AGREEMENT during the performance of the AGREEMENT.

194.    MineOne Wyoming's actions above deprived BCB of BCB's reasonable and justified expectations in the AGREEMENT, and the benefits BCB was to receive as its bargained-for exchange and, individually and collectively, they constitute material breaches of MineOne Wyoming's implied covenant of good faith and fair dealing to BCB.

195.    As and from MineOne Wyoming's material breach of the implied covenant of good faith and fair dealing to BCB, BCB has suffered, and will suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and Campstool facilities is now not possible; 2) past contractual payments for work performed and/or earned by BCB, but not paid by MineOne Wyoming; 3) loss of future revenues, bonuses, and profits from BCB's future anticipated

performance of the AGREEMENT, including BCB's anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its AGREEMENT with BCB, including its breach of the implied covenant of good faith and fair dealing.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT AGAINST TERRA CRYPTO, INC.

196.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

197.    Terra Crypto, Inc. purchased the North Range land from MineOne Wyoming.

198.    Plaintiff BCB and Defendant Terra Crypto, Inc. ("Terra Crypto") entered into a valid and enforceable written contract, the CONSULTANCY SERVICES AGREEMENT ("SERVICES AGREEMENT").

199.    Plaintiff BCB substantially performed its obligations under the SERVICES AGREEMENT, without breaching the SERVICES AGREEMENT.

200.    Defendant Terra Crypto failed and/or chose not to honor or meet its obligations under the SERVICES AGREEMENT, which constitute a material breach, or material breaches, of the SERVICES AGREEMENT.

201.    Defendant Terra Crypto failed and refused to provide the consulting services to BCB that BCB contracted to receive from Terra Crypto.

202.    Plaintiff BCB is excused from performing its contractual obligations in the SERVICES AGREEMENT because of the material breach(es) of Defendant Terra Crypto.

203.    Separate and apart from its breaches in Paragraphs 22 - 195 above, on information and belief, Defendant Terra Crypto also caused Defendant MineOne Wyoming to anticipatorily repudiate and/or materially breach MineOne Wyoming's AGREEMENT with Plaintiff BCB, as a result of which BCB has suffered, and will suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and Campstool facilities is now not possible; 2)  past contractual payments for work performed and/or earned by BCB, but not paid by MineOne Wyoming; 3) loss of future revenues, bonuses, and profits from BCB's future anticipated performance of the AGREEMENT, including BCB's anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its AGREEMENT with BCB.

## FOURTH CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST TERRA CRYPTO

204.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

205.    By law, there is implied in the SERVICES AGREEMENT the duty of good faith and fair dealing by both BCB and Terra Crypto.

206.   BCB complied with, and honored, its implied covenant of good faith and fair dealing to Terra Crypto in all substantial ways.

207.   Terra Crypto's implied covenant of good faith and fair dealing includes but is not limited to, (a) faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; and (b) its obligation to not commit any act that would injure the rights of the other party, BCB, to receive the benefit of the SERVICES AGREEMENT and the AGREEMENT during the performance of the SERVICES AGREEMENT.

208.   Terra Crypto's actions above deprived BCB of BCB's reasonable and justified expectations in the SERVICES AGREEMENT and the AGREEMENT, and the benefits BCB was to receive as its bargained-for exchange and, individually and collectively, they constitute material breaches of Terra Crypto's implied covenant of good faith and fair dealing to BCB.

209.   As and from Terra Crypto's material breach of the implied covenant of good faith and fair dealing to BCB, BCB has suffered, and will suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and Campstool facilities is now not possible; 2) past contractual payments for work performed and/or by BCB, but not paid by MineOne Wyoming; 3) loss of future revenues, bonuses, and profits from BCB's future anticipated performance of the AGREEMENT, including BCB's anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, and attorney fees are caused by Terra Crypto's

material breach(es) of its SERVICES AGREEMENT with BCB, including its breach of the implied

covenant of good faith and fair dealing, as well as its breach of its express SERVICES AGREEMENT.

## FIFTH CLAIM FOR RELIEF

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANTS BIT ORIGIN LTD, MINEONE PARTNERS LLC, AND SONICHASH LLC

210.    Plaintiff BCB hereby incorporates by reference all the allegations contained above

as though fully set forth herein.

211.    Plaintiff BCB does not have any contracts with Defendants Bit Origin, MineOne

Partners, or SonicHash.

212.    Defendant Bit Origin, MineOne Partners, and SonicHash each knew of Plaintiff's

valid AGREEMENT with MineOne Wyoming and valid SERVICES AGREEMENT with Terra Crypto.

213.    Each of these Defendants - Bit Origin, MineOne Partners, and SonicHash –

committed intentional, improper and unjustified acts that were significant factors in causing

MineOne Wyoming to breach its AGREEMENT with BCB, and in causing Terra Crypto to breach

its SERVICES AGREEMENT with BCB.

214.    As and from the wrongful and intentional interference with a) BCB's lawful

AGREEMENT with MineOne Wyoming, and b) BCB's lawful SERVICES AGREEMENT with Terra

Crypto, Defendants Bit Origin, MineOne Partners, and SonicHash have each caused BCB to suffer,

and suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the

inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State

of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and

Campstool facilities is now not possible; 2)  past contractual payments for work performed and/or

earned by BCB, but not paid by MineOne Wyoming;  3) loss of future revenues, bonuses, and

profits from  BCB's  future  anticipated  performance  of  the  AGREEMENT,  including  BCB's

anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its AGREEMENT with BCB, which anticipatory repudiation and/or material breach(es) were caused and/or driven by these other four Defendants.

**SIXTH CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS:**
***ALTER EGO* AND ENTERPRISE LIABILITY FOR THE BREACHES AND TORTS OF ALL DEFENDANTS**

215.     Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

216.     All of the named Defendants, as well as the JOHN DOE Defendants (both the individuals named above in this Complaint, as well as the companies they work for but which have not yet been identified by BCB) are closely affiliated and/or sister companies, entities, and individuals, each of which companies and individuals are engaged in a unitary commercial endeavor, namely, mining Bitcoin at the North Range and Campstool sites near Cheyenne, Wyoming, and they are jointly and severally liable for the acts, omissions, breaches, and torts of all the other Defendants.

217.     On information and belief, each and all of the individuals listed above - Lucas Wang, Huali "Wiley" Zhang, Ziyao Shao, Cho "Jack" Zhu, Mark, Henry, Eason, Jason, Scott Caffee, Branden Caffee, and Chris Wilson - were acting for, and within the scope of their employment and/or agency with, each and all of the named Defendants at all times.

218.    Each of the individuals identified in Paragraph 212 above acted with apparent authority toward BCB at all times, and such that BCB reasonably believed they were the agents of each and all the named Defendants, and that their words and actions were made during the course and scope of their agency with each Defendant and are imputed to and binding on all Defendants.

219.    As related to entities, and as persons and entities committed to, and pursuing, this unitary commercial endeavor, the acts, omissions, torts, and breaches of each and all of the persons and Defendants identified above are imputed to each and all of the Defendants, thus making each and all of the Defendants jointly, severally, and vicariously liable for the acts, omissions, breaches, and torts of the other Defendants.

220.    On information and belief, each of the above named Defendants, as well as the JOHN DOE Defendants, are so commingled, and have such a common ownership that equity requires they be treated as a single-entity, or as a single enterprise[1] for all purposes herein.

221.    Each and all of the Defendants have, through their words and conduct, forfeited their corporate separateness. Defendants and their agents are so co-mingled that they have not maintained their corporate separateness, at least as to Plaintiff. Each of the Defendants are the *alter egos* of the other Defendants. Each of the Defendants is jointly, severally, and vicariously liable for all of Plaintiff's damages.

222.    On information and belief, each of the individuals named in Paragraphs 216 – 217 above, and each of the named Defendants, exercised such direction over, supervision of, and

---

[1] As stated by the Supreme Court of Pennsylvania:

> What we call "enterprise liability" throughout this opinion elsewhere is referred to variously as "single-entity," "affiliate," "horizontal," or "identity liability" – and the "enterprise" term we prefer is also complicated by multiple recognized meanings.

*Mortimer v. McCool,* 255 A.3d 261, 289, n. 4 (Pa. 2021).

control of MineOne Wyoming and Terra Crypto that, in law and/or equity, they should be treated as a single-entity and be subject to liability to the Plaintiff for all of Plaintiff's past and future damages, which breaches and torts have each caused BCB to suffer, and suffer in the future: 1) the damage to BCB's reputation in the Bitcoin mining industry, as the inability to now inform others that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost, and BCB's ability to market its [lost] operations of the North Range and Campstool facilities is now not possible; 2) past contractual payments for work performed and/or earned by BCB, but not paid by MineOne Wyoming;  3) loss of future revenues, bonuses, and profits from BCB's future anticipated performance of the AGREEMENT, including BCB's anticipated (but now lost) future revenues, bonuses, and profits from BCB's operation of both the North Range and Campstool facilities, which revenues, profits, bonuses, and lost opportunities will be proven at trial, but in no event less than $22,000,000.00; and 4) BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the AGREEMENT, in such amounts as will be proven at trial, all of which injuries, losses, damages, lost profits, and attorney fees are caused by MineOne Wyoming's and all Defendants' anticipatory repudiation and/or material breach(es) of MineOne Wyoming's AGREEMENT with BCB which, in turn, were caused by all Defendants' acts committed during their engagement and performance of their single-entity or common enterprise and closely-related, sister companies.

WHEREFORE, Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain prays for the following relief:

A.    That judgment be entered in favor of Plaintiff and against all five Defendants, jointly and severally, in an amount to be proven at trial, but for no less than $22,000,000.00;

B.    That Plaintiff is entitled to pre-judgment and post-judgment interest at the legal

rates;

C.    That Plaintiff recover all of its attorney fees and costs against all Defendants;

D.    That Defendants be enjoined from making or publishing any defamatory

statements, in the public domain, about Plaintiff or its members; and

E.    For such other and further relief as the Court deems just and proper.

DATED this 3rd day of May, 2023.


                              BCB CHEYENNE LLC d/b/a/ BISON
                              BLOCKCHAIN,
                              Plaintiff


                              /s/ Patrick J. Murphy
                              Patrick J. Murphy, WSB No. 5-1779
                              Scott C. Murray, WSB No. 7-4896
                              Williams, Porter, Day & Neville, P.C.
                              159 N Wolcott St., Suite 400
                              Casper, WY 82601
                              Ph: (307) 265-0700
                              pmurphy@wpdn.net
                              smurray@wpdn.net

                              *Attorneys for Plaintiff BCB Cheyenne LLC d/b/a*
                              *Bison Blockchain*