Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, ) ) ) ) Plaintiff, ) ) v. ) ) MINEONE WYOMING DATA CENTER, ) LLC, a Delaware limited liability company; ) MINEONE PARTNERS LLC, a Delaware ) limited liability company; TERRA CRYPTO ) INC., a Delaware corporation; BIT ORIGIN, ) LTD, a Cayman Island Company; ) SONICHASH LLC, a Delaware limited ) liability company; and JOHN DOES 1-20, ) related persons and companies who control ) or direct some or all of the named Defendants, ) ) Defendants. ) | Civil No. 23-CV-79 |

## JOINT REPORT OF MEETING
## and
## PROPOSED JOINT DISCOVERY AND CASE MANAGEMENT PLAN

_____

1. **State where and when the conference among the parties required by Rule 26(f) of the Federal Rules of Civil Procedure was held, and identify the counsel for each party or any unrepresented *pro se* individual who attended. The name of the participant, address, bar number (where applicable), telephone and fax numbers, and email addresses must be provided.**

The conference was held via phone conference on August 4, 2023, with the following counsel in attendance:

Counsel for Plaintiffs:
Patrick Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott Street, Suite 400
Casper, Wyoming 82601
307.265.0700
pmurphy@wpdn.net
smurray@wpdn.net

Counsel for Defendants:

Sean M. Larson, WSB No. 7-5112
Kari Hartman, WSB No. 8-6507
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82001
slarson@hkwyolaw.com
khartman@hkwyolaw.com

and

Paula Colbath, Pro Hac Vice
Sarah Levitan Perry, Pro Hac Vice
LOEB & LOEB LLP
345 Park Avenue
NewYork, NY 10154
pcolbath@loeb.com
sperry@loeb.com

2. **List the cases related to this one that are pending in any state or federal court with the case number and court, and state how they are related.**

   None.

3.   **Briefly describe what this case is about.**

   A.   Plaintiff's Description of the Case:

   In early March 2023, after Plaintiff BCB had performed – and was still performing – its contractual obligations with Defendant MineOne Wyoming Data Center LLC ("MineOne Wyoming") on the North Range and Campstool sites in Laramie County, Wyoming, Defendants wrongfully pulled the rug from underneath BCB's feet.  Defendants, acting as *alter egos* for each other, anticipatorily repudiated and materially breached the BCB/MineOne DEVELOPMENT, HOSTING & SERVICE AGREEMENT ("AGREEMENT") when Defendants chose not to honor their obligation under the AGREEMENT, and when, Defendants brought in their own team and workers to perform BCB's work and contractual obligations without BCB's consent, and when, Defendants constructively and effectively removed BCB from the North Range facility without cause, and they would not allow BCB to perform BCB's remaining contractual obligations for both the North Range and Campstool sites and facilities, all to BCB's injury and loss. Plaintiff BCB was thus excused from further performing its contractual obligations because of the material breaches of Defendants.  Make no mistake: this was a sophisticated and subversive takeover by Defendants.  Further, Defendants' proposed amendment to the AGREEMENT tied the remaining money owed by Defendants to Plaintiff for the implementation (Phase 1) at North Range to the Plaintiff signing the proposed amendment, even though Plaintiff had earned and invoiced Defendant MineOne Wyoming for some of these funds.

   Upon information and belief, Defendants have been mining Bitcoin at North Range since late March 2023, and at least seven (7) of the ten (10) data centers have been fully operational since May 2023 at North Range.  Upon information and belief, all ten (10) data centers have been fully operational for several months making North Range the largest Bitcoin mine in Wyoming. To be sure, Defendants are making money hand over fist at North Range due, in large measure, to what Plaintiff BCB secured and obtained for Defendants and Plaintiff BCB's performance for Defendants.

   Photographs of the ten data centers at North Range are displayed below.  The first picture is an aerial photograph of the ten data centers, and the second photograph is a picture of the bitcoin mining machines inside one of the data centers. Defendants have no less than ten thousand (10,000) bitcoin mining machines working in these North Range data centers.





Because of the extent and level of control three of the Defendants had over MineOne Wyoming and Terra Crypto Inc. was so pervasive and sweeping, each of the Defendants' acts and omissions are imputed to each and all of the Defendants, each Defendant is an *alter ego* of the other Defendants, and each Defendant is jointly, severally and vicariously liable for the breach of each of the

Defendants. Defendants are *alter egos* of each other.

Defendants materially breached the AGREEMENT when they constructively and anticipatorily repudiated the AGREEMENT when Plaintiff had committed no breach of the AGREEMENT, thereby eliminating Plaintiff's reasonable, justified and expected benefits of their AGREEMENT. Defendants have seized total command and control of both bitcoin mining sites, despite their agreement and promise that Plaintiff would be the host and operator of both sites. Plaintiff has suffered no less than $22,000,000 in compensatory damages, including its reasonable attorney fees and expert fees and costs, from Defendants' breach of the written AGREEMENT, breach of their implied covenant of good faith and fair dealing, intentional interference with contractual relations, *alter ego* liability, and enterprise liability.

Defendants have filed two Counterclaims against Plaintiff: the First Counterclaim for alleged breach of contract for compensatory damages of "no less than $40,000,000," and the Second Counterclaim for Defendants' attorney fees and costs. The First Counterclaim is infirm for many reasons, not the least of which is that Plaintiff never materially breached its AGREEMENT. Defendants claim that Plaintiff's "naïveté" caused delays with the commencement of mining activities beyond the October 31, 2022 date for the Build and Implementation Phase [Phase 1], and that the North Range site was not operational and mining bitcoin until late March 2023. Defendants seek to blame Plaintiff and two of Defendant MineOne Wyoming's contractors — CEGEN and Shermco — for these delays. But the blame for these delays lies with Shermco and CEGEN — MineOne Wyoming's contractors, not Plaintiff. Plaintiff's relevant contractual obligations in Section 6.2 of the AGREEMENT are limited to "All other reasonable related activities ***within its control*** to enable MineOne and other users of the Facilities to conduct digital currency mining activities in a proper and timely manner to ensure that the CFCO occurs not later than October 31, 2022")(emphasis added). The delays this project experienced were caused by Defendants' contractors, not by Plaintiff. The delays were not caused by activities "within Plaintiff's control." Moreover, even if any of the delays were caused by Plaintiff, which they were not, Black Hills Energy was unable to, per Section 2.2 of its Blockchain Interruptible Service Agreement with MineOne Wyoming, "install and maintain, in approved standards of construction, all facilities on [Black Hills Energy's] side of the Point of Delivery which are necessary for the proper delivery of electrical power from [Black Hills Energy's] North Range substation to the Point of Delivery" until February 22, 2023, even though Black Hills Energy was contractually obligated to do so by November 10, 2022. Consequently, Black Hills Energy's inability to install all of its facilities was an intervening, efficient, and important cause of any delay in any mining at North Range before late December 2022, and for full mining operations before February 22, 2023.

Three of the Defendants – Bit Origin, Ltd., SonicHash LLC, and MineOne Partners, LLC – have no contract or contractual relationship with Plaintiff BCB. These three Defendants are not in privity of contract with Plaintiff BCB. Consequently, these three Defendants have no viable claim for breach of contract (First Counterclaim) or attorney fees (Second Counterclaim) as a matter of law. Defendant Terra Crypto, Inc. has its own CONSULTANCY SERVICES AGREEMENT with Plaintiff BCB.

Even if Plaintiff was the first to materially breach the AGREEMENT, which it did not, the Parties' limitation of liability clause in their AGREEMENT limits Plaintiff's maximum liability (if it has any legal liability to Defendants, which it does not), to $135,000 in compensatory damages, including its attorney fees. *See* AGREEMENT, Article VIII, Limitations on Liability and Indemnification at ¶ 2 ("Overall Limitation of Liability. Except as expressly set forth herinabove, including the provisions in Article VII to MineOne Damages and BCBC Damages, in no event shall a Party and its affiliates be liable, alone or in the aggregate, for any breach or series of breaches under this Agreement to the other Party for any damages, claims, demands, suits, causes of action, losses, costs, expenses and/or liabilities in excess of an amount equal to: (a) with respect to BCBC, thirty percent (30%) of the amounts received and retained by BCBC from MineOne under Article IV (if any) . . . ."). Having received $450,000 from MineOne Wyoming, BCB's maximum liability to Defendants is 30% of $450,000, or $135,000. The Parties' AGREEMENT is controlled by Delaware substantive law, and Delaware law enforces such a contractual limitation of liability. *See, e.g., Ecommerce Industries, Inc. v. MWA Intelligence, Inc.,* 2013 WL 5621678 (decided October 4, 2013) at *45 ("Under Delaware law, limitation on liability clauses that preclude various types of damages, such as consequential damages, are typically enforceable . . . . With respect to limitations on contractual liability, freedom of contract would suggest that parties to a contract should be entitled to draft agreements so as to avoid certain of the duties and liabilities that are normally part of a contractual relationship.").

B.      Defendants' Description of the Case:

Defendant MineOne Wyoming Data Center LLC ("MineOne") entered into negotiations for Plaintiff BCB Cheyenne LLC ("Plaintiff") to assist MineOne in building out and operating Bitcoin mining facilities in Wyoming. Plaintiff had induced MineOne to negotiate a lucrative contract with Plaintiff by posturing as an experienced and community-focused crypto developer, something that would be critical to the expedient and successful launch of MineOne's operations. Plaintiff misled MineOne.

Indeed, from the outset of the relationship, MineOne was clear with Plaintiff: it

was important for MineOne to start its mining operations as soon as possible. Plaintiff executed a Development, Hosting and Services Agreement ("DHS Agreement") with MineOne, accepted the role of Project Manager for the buildout of MineOne's facilities, and promised it would: (i) complete the buildout of MineOne's facilities no later than by October 2022; (ii) secure competitive electricity pricing for the facilities; and (iii) hire and manage qualified and well-connected miners and other employees on MineOne's behalf.  Yet, Plaintiffs proved unable to keep the development of MineOne's mining sites on track, failed to obtain the promised pricing for electricity and employed inexperienced individuals, all in breach of the DHS Agreement.  MineOne made numerous attempts to assist Plaintiff in successfully accomplishing its objectives under the DHS Agreement, but Plaintiff continually rebuffed those efforts and ultimately ceased all performance pursuant to the DHS Agreement.

Plaintiff preemptively commenced this lawsuit blaming Defendants and third parties for the collapse of the relationship, asserting various claims for breach of contract and breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations and asserting alter ego liability. Defendants have filed counterclaims for breach of contract and for its legal fees pursuant to the DHS Agreement and seeks over $40,000,000 in damages.

4. **Specify the allegations providing the basis for federal jurisdiction.**

Plaintiff maintains that this Court has jurisdiction based on 28 U.S.C. §1332(a)(1) because the suit is between citizens of a state and citizens of another state or a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

None of the Plaintiff's seven (7) members were (or are) domiciled in Delaware, New York, Texas, Wyoming, the British Virgin Islands, the Cayman Islands, China, or Singapore when this suit was filed on May 3, 2023.  None of Plaintiff BCB Cheyenne LLC's four (4) individual members were (or are) domiciled in any state where any of the Defendants, or Defendants' members, are (or were) domiciled, incorporated or had their principal place of business.  Three members of Plaintiff BCB Cheyenne LLC are themselves limited liability companies:  1) CMV Global, LLC; 2) Bayview Capital Investments, LLC[1]; and 3) BCB Ventures LLC.  None of those three LLC members of BCB Cheyenne LLC have any member who was (or is) domiciled in any state or country where any of the Defendants, or Defendants' members, are domiciled, were incorporated, or have their principal place of business.  *See* Plaintiff's 8/21/23 Amended and Second Supplemental Corporate Disclosure Statement.  [Doc. 42].

Defendants are mistaken when they suggest one of Bayview Capital Investments, LLC's

---

[1] Bayview Capital Investments, LLC first became a member of BCB Cheyenne LLC on May 6, 2023 – three days after Plaintiff filed this suit.  *See* James Quid Affidavit at ¶ 5 ("Bayview Capital Investments, LLC is, and has been, a member of Plaintiff BCB Cheyenne LLC since May 6, 2023"). [Doc. 42-1].

members, James Quid, may be a Wyoming citizen, and CMV Global, LLC's member, Tim Desrochers, may be a Texas citizen. Plaintiff and Plaintiff's LLC members have no Wyoming or Texas citizens. While James Quid earlier believed that Tim Desrochers – a member of CMV Global LLC – was domiciled in Texas in May 2023, he, in fact, was not. At all relevant times, Mr. Desrochers was (and is) domiciled in Colorado and James Quid and his wife are (and were) domiciled in Illinois. *See* Plaintiff's 8/21/23 Amended and Second Supplemental Corporate Statement; *and see* the Affidavits of Tim Desrochers and James Quid attached thereto [Doc. 42]. Consequently, there is complete diversity of citizenship and this Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1).

But, solely because of James Quid's earlier mistaken belief that Tim Derochers was domiciled in Texas in May 2023, Defendants now say (below) they "will be requesting a 3-month period to conduct jurisdictional discovery in light of this clear discrepancy in order to ensure this Court has proper subject matter jurisdiction." There is no discrepancy. Tim Desrochers was domiciled in Colorado after leaving Texas in March 2020 (as Covid was breaking out). *See* Tim Desrochers' Affidavit at ¶ 4 ("I haven't lived in Texas since the Covid-19 pandemic took hold in March 2020. I have not considered Texas my home, or domicile, since March, 2020"); *Id.* at ¶ 5 ("In March 2020, when the lease for my apartment in Texas expired, I moved from my Texas apartment to my sister's house in Colorado. . . . I consider my sister's house in Colorado to be my domicile. I confirm that my sister's house [at 7426 Matheson Drive in Fort Collins] in Colorado was my domicile on May 3, 2023 when this suit was filed") [Doc. 42-1]. No time, effort or expense should be spent on "jurisdictional discovery" where, as here, the facts clearly demonstrate that no one on the Plaintiff's side is domiciled in any state or foreign country where any of Defendants' members are domiciled, incorporated, or have their principal place of business. Plaintiff objects to ***any*** jurisdictional discovery, as all of it is futile and wasted time and expense.

Defendants' request for jurisdictional discovery is just another stall tactic. Defendants seek to maintain the status quo and their (now) complete control of Wyoming's largest Bitcoin mine. Defendants have frozen Plaintiff out while Defendants expand their operations and make millions of dollars at the North Range Bitcoin mine. Without Plaintiff, the Defendants would never have had access to the North Range opportunity, let alone be immensely profiting as they are now from the opportunity that Plaintiff brought and nurtured for Defendants.

Defendants agree that four of the five Defendants were legally and properly served with the Complaint and Summons, but they now contend that Defendant Bit Origin, Ltd was not legally or effectively served. Thus, Defendants now contend that "the Court lacks jurisdiction over [Bit Origin, Ltd.] on that basis as well." But Bit Origin, Ltd. has **waived** any service of process and insufficient service of process defenses under Rule 12(h), Fed.R.Civ.P. Bit Origin, Ltd. did not assert or raise these Rule 12(b)(4) and 12(b)(5) defenses in its July 3, 2023 Answer or in a pre-Answer motion; thus, Bit Origin, Ltd. waived these defenses. *See PPEX, LLC v. Buttonhead, Inc.,* 2021 WL 7210650 at *3 (decided July 13, 2021) (D. Wyo. 2021, Freudenthal, J.), *quoting FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174-75 (10th Cir. 1992) ("A defect in the district court's jurisdiction over a party is a personal defense which may be asserted or waived

by a party. Objections to personal jurisdiction and service of process must be asserted in the answer or in a pre-answer motion. Fed. R. Civ. P. 12(b). If a party fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses").

Moreover, when Bit Origin, Ltd. filed its Counterclaim (for "no less than $40,000,000.00") against Plaintiff, Bit Origin, Ltd. further waived any Rule 12(b)(4) and 12(b)(5) defenses it may have had.

5. **Name the parties who disagree with the plaintiff's jurisdictional allegations and state their reasons for disagreement.**

   Defendants do not agree that this court has jurisdiction because there is not complete diversity. Several of defendant LLCs have members with Texas citizenship and Plaintiff revealed that it has a member with Texas citizenship as well. Additionally, one of the members of one of Defendants has its principal place of business in Wyoming and Plaintiff's corporate disclosure statement revealed that one of its members has Wyoming citizenship. Since the filing of the corporate disclosure statement, Plaintiff has changed its position on the citizenship of these members. Thus, Defendants will be requesting a 3-month period to conduct jurisdictional discovery in light of this clear discrepancy in order to ensure this Court has proper subject matter jurisdiction. Plaintiff has also failed to serve defendant BitOrigin Ltd. and thus, the court lacks jurisdiction over that defendant on that basis as well.

6. **Discuss whether or not the case is complex. If the parties believe that the case is complex, explain why and be prepared to address this issue, including scheduling and case management considerations in particular, during the Initial Pretrial Conference.**

   The Parties believe that this case is non-complex.

7. **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

   At this time, the parties do not anticipate adding any specific parties. However, each side maintains that discovery could very well lead the parties to discover new entities or individuals who may need to be joined.

8. **List anticipated interventions.**

   No interventions are anticipated.

9. **Describe class-action issues, if any.**

Not applicable.

10. **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe specifically the arrangements that have been made to complete the disclosures.**

No party has yet served its Rule 26 Initial Disclosures.

Plaintiff believes that all parties should serve their Rule 26 Initial Disclosures on August 31, 2023.

Defendants believe that all parties should serve their Rule 26 Initial Disclosures on September 29, 2023.

11. **Describe the proposed agreed discovery plan, including:**

    a. **Responses to all the matters raised in Rule 26(f).**

    - <u>LLC Parties</u>: The Parties dispute whether diversity jurisdiction is present here. See above discussion.

    - <u>Venue</u>: The Parties agree that venue in the District of Wyoming is proper.

    - <u>Service of Process</u>: The Parties agree that service of process is proper on four (4) of the five (5) Defendants. The parties dispute whether Defendant Bit Origin Ltd. has been legally served. Defendants contend that Bit Origin, Ltd. has not waived service of process. Plaintiff contends that, by not filing any pre-Answer motion to dismiss for service of process or insufficiency of service of process, and by filing an Answer to Plaintiff's Complaint but not raising any affirmative defense with respect to service of process or insufficient service of process, Bit Origin, Ltd. has waived any service of process defect.

    - <u>Consent to Magistrate Judge</u>: Neither party consents at this time, but the Parties will further consider this potential.

    - <u>Potential Fact Depositions</u>: Plaintiff anticipates taking the depositions of, among others, Erik Rengifo, Jiaming Li, Huali "Wiley" Zhang, Iris Li, Lucas Wang, Haku Du, representatives from from Black Hills Energy, Shermco's Mark Aldrich, Clint Downey and Tony Genoff, CEGEN's Jim Stewart, Chad Dalziel, and CEO Steve Morgan, Tony Simpson and Kenny

McPherson from Systems Mechanical, Thomas and Tasha Coe from Iron Creek, Matt Kaufman from Hathaway and Kunz, and likely several others after reviewing Defendants' written discovery responses and deposing Defendants' Rule 30(b)(6) designee(s).

Defendants anticipate taking the depositions of Plaintiff, Michael Murphy, Emory Patterson IV, Neil Phippen, Bryce Fincham, Guangzhao Zhu, Steven Randall, members of CMV Global LLC, members of Bayview Capital Investments LLC, members of BCB Ventures LLC, Black Hills Energy, Shermco, CEGEN, Bitmain and lawyers at Williams, Porter, Day & Neville P.C., including Patrick Murphy and Ryan Ford, who provided legal advice to one or more of the defendants. Defendants reserve the right to add additional deponents if discovery reveals additional potential deponents.

- <u>Depositions</u>: The Parties agree that it may be appropriate for some depositions to be taken via Zoom video conference. The Parties anticipate no issues regarding the number and costs of depositions in this case.

- <u>Potential Dispositive Motions</u>: The Parties anticipate that dispositive motions may be filed in this case.

- <u>Proposed Trial Date/Length</u>: The Parties all agree the trial should last ten trial days. Plaintiff proposes that the trial begin on or about June 17, 2024. Defendants believe the trial should begin not before November 11, 2024.

The Parties' additional positions are described in the responses in Paragraphs 11 through 23 hereof.

**b.   When and to whom the plaintiff anticipates it may send interrogatories.**

Plaintiff anticipates sending interrogatories and requests for production of documents to each Defendant on or about September 6, 2023.

**c.   When and to whom the defendant anticipates it may send interrogatories.**

Defendants anticipate serving interrogatories and requests for production of documents to Plaintiff on or about October 27, 2023.

**d.   Of whom and by when the plaintiff anticipates taking oral depositions.**

Plaintiffs anticipate taking the following depositions: among others, Erik Rengifo, Jiaming Li, Huali "Wiley" Zhang, Iris Li, Lucas Wang, Haku Du, representatives from Black Hills Energy, Shermco's Mark Aldrich, Clint Downey and Tony Genoff, CEGEN's Jim Stewart, Chad Dalziel, and CEO Steve Morgan, Tony Simpson and Kenny McPherson from Systems Mechanical, Thomas and Tasha Coe from Iron Creek, Matt Kaufman from Hathaway and Kunz, and likely several others after reviewing Defendants' written discovery responses and deposing Defendants' Rule 30(b)(6) designee(s). Plaintiff anticipates that depositions will commence in November, 2023 and be completed by January 31, 2024.

e. **Of whom and by when the defendant anticipates taking oral depositions.**

Defendants anticipate taking the depositions of Plaintiff, Michael Murphy, Emory Patterson IV, Neil Phippen, Bryce Fincham, Guangzhao Zhu, Steven Randall, members of CMV Global LLC, members of Bayview Capital Investments LLC, members of BCB Ventures LLC, Black Hills Energy, Shermco, CEGEN, Bitmain and lawyers at Williams, Porter, Day & Neville P.C., including Patrick Murphy and Ryan Ford, who provided legal advice to one or more of the defendants. Defendants reserve the right to add additional deponents if discovery reveals additional potential deponents. Defendants propose that all fact depositions be completed by June 28, 2024.

f. (i) **Specify the date experts for the plaintiff (or party with the burden of proof on an issue) will be designated and their reports provided to the opposing party.**

Plaintiff anticipates designating expert witnesses by February 28, 2024.

(ii) **Specify the date experts for defendant will be designated and their reports provided to the opposing party.**

Defendants anticipate designating their expert witnesses by August 30, 2024.

g. **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion dates. See Rule 26(a)(2)(B) (expert report).**

      Plaintiff anticipates deposing any expert designated by Defendants and to do so within a reasonable time following the designations. Plaintiff believes these expert depositions should be completed by April 25, 2024.

**h.**    **List expert depositions the defendants (or opposing party) anticipates taking and their anticipated completion dates. See Rule 26(a)(2)(B) (expert report).**

      Defendants will depose any expert designated by Plaintiff and will complete such depositions by September 27, 2024.

**i.**    **Indicate whether the parties have conferred with their clients regarding obligations concerning electronically stored information. Also identify limitations on discovery of electronically stored information, as contemplated by Federal Rule of Civil Procedure 26(b)(2)(B) and the Local Rules of this Court.**

      The Parties have discussed the applicability of electronically stored information in this case and have discussed the same with their clients.

      Plaintiff acknowledges that the preservation and production of electronically stored information ("ESI") shall be governed by Federal Rules of Civil Procedure, and thereby be limited to information that is proportionally relevant to the disputed issues in the case and that is reasonably accessible by the Parties in the ordinary course of their business. At this time, it is too early in discovery to determine the scope of any particular ESI searches that may be appropriate for this case, and therefore, too early in discovery to confer on matters relating to disclosure and production of ESI.

**j.**    **Discuss the scope and limits of planned discovery. Identify how the parties will ensure that anticipated discovery will be proportional to the needs of the case, and address each of those considerations set forth in Rule 26(b) regarding the scope of discovery in general.**

      The Parties anticipate that if disputes arise concerning the relevance or proportionality of requested discovery, they will be able to meaningfully confer and will endeavor to resolve most, if not all, such disputes. The Parties understand they are to informally contact Magistrate Judge Kelly Rankin before they ever file any formal motion to compel discovery or motion for protective order.

12. **If the parties have not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

    The parties disagree on the appropriate schedule for this case, as set forth above and in paragraph 14.

13. **Specify the discovery beyond initial disclosures that has been undertaken to date.**

    No discovery has yet been undertaken by any party.

14. **State the date the parties believe planned discovery can reasonably be completed.**

    Plaintiff believes fact witness discovery can be completed by February 28, 2024, and that depositions of expert witnesses will occur following the respective designations. Plaintiff believes all discovery can be completed by April 30, 2024.

    Defendants believe that, given the complex nature of the business at issue in the case, the significant damages at issue and the large number of deponents identified by the Parties, fact discovery can reasonably be completed by June 28, 2024, with all fact discovery completed by September 27, 2024.

15. **Describe the possibilities for a prompt settlement or resolution of the case that were discussed during your Rule 26(f) meeting.**

    The parties discussed the status of settlement discussions during the 26(f) conference.

    Plaintiff advised defense counsel that Plaintiff is prepared to mediate the case with either Magistrate Judge Rankin or another mutually acceptable mediator at any time.

    Defendants responded that, at this point, resolution is not imminent nor likely in the near future and that some discovery needs to be conducted before additional discussion of settlement.

16. **Describe what each party has done or agreed to do to bring about a prompt resolution.**

    Plaintiff's Position:  Plaintiff accepted Defendants' May 3, 2023 offer to mediate, but Plaintiff conditioned, or linked, its willingness to mediate in early June 2023 with Defendants agreeing to accept service of process on the five Defendants ("If you or Sean [Larson] will accept service for all five (5) of your clients – and not force BCB to go to the trouble and expense of serving them (again) – [Plaintiff] will agree to an early

mediation in the June 1-10 window . . . . We could do any mediation in Cheyenne perhaps at your good office").

Two weeks later, Paula Colbath revoked Defendants' offer to mediate with her May 17, 2023 email to Patrick Murphy:

> You had an opportunity to mediate with my clients, but you chose instead to rush to file a second complaint in Federal District Court, before your first complaint was even formally dismissed. Your multiple pending lawsuits show us clearly that you are not serious about attempting to mediate/resolve the parties' various disputes (my clients too have claims against your client). If you were serious about mediating, you wouldn't have precipitously filed a second action before your first one was dismissed. My clients have seen nothing in your actions to date indicating that you are serious about mediating and have prioritized it. My clients will not proceed on multiple tracks. If you are serious about mediating, please discontinue (without prejudice) your Federal District Court complaint. This will save you all the expenses of serving the parties. If your concern is, we will attempt to file a complaint against your client, an appropriate agreement can be put in place to address that.
>
> I remain hopeful that we can all work together to select an experienced mediator and get to work trying to resolve our clients' respective differences without litigation. The ball is in your court.

Plaintiff was (and is) unwilling to dismiss this lawsuit without prejudice just so the Parties can mediate. Instead, Plaintiff believes the Parties can mediate while this case is pending. Cases mediate every day where litigation is pending. Indeed, the pressure of pending litigation often facilitates a compromise settlement. *For its part, Plaintiff agrees to mediate with Defendants in Cheyenne, Wyoming or Denver, Colorado whenever Defendants and their counsel want to mediate*.

Defendants' Position:

Defendants will consider the possibility of mediation after the parties have exchanged initial disclosures and conducted some written discovery.

17. **From the attorneys' discussions with the client(s), state the alternative dispute resolution techniques that may be reasonably suitable.**

The Parties agree that mediation with either Magistrate Judge Rankin or with another mutually acceptable mediator is appropriate following exchange of Rule 26 Initial Disclosures and some written discovery.

18. **State whether a jury demand has been made and if it was made on time.**

    No jury demand has been made by anyone.  The BCB/MineOne AGREEMENT has a clause that no party will request a jury and no party has requested a jury.

19. **Specify the number of hours it is expected that it will take to present the evidence in this case.**

    It is expected that trial will take two weeks, or ten trial days.

20. **List pending motions that could be ruled on at the Initial Pretrial Conference.**

    There are no pending motions.

21. **List other pending motions, if any.**

    There are no pending motions except that Plaintiff's Application for Entry of Default against Bit Origin [Doc. No. 19] has not been ruled upon.  Plaintiff concedes the Court should not enter Default against Bit Origin, Ltd. [Doc. 25] ("Consequently, Plaintiff agrees that default should not now be entered against Defendant Bit Origin").

22. **Indicate other matters peculiar or unique to this case, including discovery, that deserve the special attention of the Court at the Initial Pretrial Conference.**

    The Parties do not believe that there are any peculiar or unique matters deserving of the Court's attention at the Initial Pretrial Conference.  This case is governed by the substantive law of Delaware, as this is what the Parties agreed to in their AGREEMENT.

23. **Indicate whether the parties anticipate any amendments to the pleadings.**

    Plaintiff does not anticipate any amendments to the pleadings.

    Defendants plan to amend their Counterclaims to add additional facts supporting the legal theory for recovery under its counterclaims through alter ego liability. Plaintiff opposes any such amendment.

24. **List the names, bar numbers, addresses, email addresses, and telephone numbers for all counsel. List the names, addresses, email addresses and telephone numbers for all parties and unrepresented *pro se* litigants.**

    There are no pro se litigants.

Counsel for Plaintiff:
Patrick Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott Street, Suite 400
Casper, Wyoming 82601
307.265.0700
pmurphy@wpdn.net
smurray@wpdn.net

Counsel for Defendants:

Sean M. Larson, WSB No. 7-5112
Kari Hartman, WSB No. 8-6507
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82001
slarson@hkwyolaw.com
khartman@hkwyolaw.com

and

Paula Colbath, Pro Hac Vice
Sarah Levitan Perry, Pro Hac Vice
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com
sperry@loeb.com

/s/ Patrick J. Murphy                          August 21, 2023
Counsel for Plaintiff                          Date


/s/ Sean Larson                                August 15, 2023
Counsel for Defendants                         Date