IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

BCB CHEYENNE, LLC, a Wyoming limited liability company doing business as Bison Blockchain,

Plaintiff,

vs.

MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS, LLC, a Delaware limited liability company; TERRA CRYPTO, INC., a Delaware corporation; BIT ORIGIN, Ltd, a Cayman Island company; SONICHASH, LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named defendants,

Defendants.

DOCKET NO. 23-CV-079-J

Cheyenne, Wyoming
August 30, 2023
9:03 a.m.

---

**TRANSCRIPT OF HEARING PROCEEDINGS**
**INITIAL PRETRIAL CONFERENCE**

**BEFORE THE HONORABLE ALAN B. JOHNSON**
**UNITED STATES DISTRICT JUDGE**

***JANET DAVIS, RDR, FCRR, CRR***
***Federal Official Court Reporter***
***2120 Capitol Avenue, Room 2226, Cheyenne, WY 82001***
***307.433.2154 * jbd.davis@gmail.com***

*Proceedings reported by realtime stenographic reporter; transcript produced with Computer-Aided Transcription.*

APPEARANCES:

For the Plaintiff: WILLIAMS PORTER DAY & NEVILLE PC
BY: PATRICK J. MURPHY
SCOTT C. MURRAY
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602

For the Defendants: HATHAWAY & KUNZ LLP
BY: SEAN M. LARSON
KARI HARTMAN
2515 Warren Avenue, Suite 500
Cheyenne, WY 82001

LOEB & LOEB
BY: PAULA COLBATH
345 Park Avenue
New York, NY 10154

(Proceedings commenced 9:03 a.m., August 30, 2023.)

THE COURT: Thank you. Please be seated everyone.

The matter before the Court this morning is a case that is captioned BCB, Cheyenne, LLC, doing business as Bison Blockchain, a Wyoming limited liability company, against MineOne Wyoming Data Center, a limited liability company; MineOne Partners, and another limited liability company in Delaware, Terra Crypto, Inc., a Delaware corporation; Bit Origin, Ltd, a Cayman Islands company; SonicHash, LLC, a Delaware limited liability company; and John Does 1 through 20 and related persons and companies who control or direct some or all of the named defendants.

This matter comes before the Court under Civil Docket 23-CV-00079.

I see on my screen at this time Patrick Murphy, Scott Murray; and representing the defendants in this matter is Paula Colbath of Loeb & Loeb, a limited partnership; Kari Hartman, local counsel for the defendants, and Sean Larson.

Mr. Larson, who will be speaking for the defendants in this matter?

I'm assuming, Ms. -- Ms. Colbath, perhaps you are.

MS. COLBATH: We're not permitted to unmute.

Can you hear me now?

MR. LARSON: There we go.

MS. COLBATH: We were not permitted to unmute, Your

Honor.

Good morning. Happy to be before you today.

Depending on what the issues are, I think Mr. Larson will probably take the lead, but I'm available to supplement as necessary.

THE COURT: Thank you.

MR. LARSON: Thank you, Your Honor.

THE COURT: Pat Murphy, are you the main speaker this morning?

MR. MURPHY: I should be the only speaker, unless I mess up and Scott needs to bail me out.

THE COURT: All right. Fair enough.

I want to tell you that I have a 9:30 hearing this morning that's going to involve, I think, maybe attempted Zoom connections with Africa and Australia that's coming up, so I'm going to be treating you with short shrift and sticking you with what I think is a fair order on pretrial conference and saying little.

I am aware initially in this matter that there are alleged jurisdictional issues, and I say "alleged" because I'm not sure that any of that would pan out. I've looked at the comment notes to Rule 7.1 and note that generally declarations should be sufficient to handle those kinds of issues.

As I understand it, one of the issues in this matter is Mr. Desrochers, who is alleged to be a citizen of -- a

resident of Colorado and that his location does not destroy diversity -- apparently, a mistake was made when this case was filed with an allegation done by another person that Desrochers resided in Texas, which he did, but allegedly moved as a result of COVID to his mother's place or some other place in Fort Collins, Colorado.

There's also an issue concerning service and whether it was accomplished against Bit Origin, Ltd, and whether or not there's been a waiver of service effected under the law by a failure to assert that -- that defense or that concern.

And there's also an allegation that defendant has -- a defendant LLC has principal members who are Wyoming residents.

All of that needs to be sorted out, and I assume it could be sorted out very quickly.

Plaintiffs are resisting defendants' request for three months in order to play around with that issue. We all know that the obligation exists under new amended Rule 7.1 to provide those declarations forthwith, concerning the LLCs anyway, the members' places of residence.

I'm not going to grant three months in order to sort that out. I don't see great damage or loss of opportunity to conduct meaningful discovery in this case while we work on the jurisdiction. I assume that those issues, with cooperation between counsel, can be explored very quickly with depositions or affidavits or whatever needs to be filed. I'm not trying to

dictate what should be -- should be done in that regard.

I think the defense is entitled to explore in a reasonable way those particular areas that represent a concern, and while regular discovery in this matter may go ahead and proceed -- it will be available if we lose jurisdiction. It seems to me whatever happens can be used wherever the case may land, back in state court or some other location.

That's all I'm going to say about that.

I want to advise everybody that you can consent to trial before the magistrate judge. And we have a super magistrate judge here. Kelly Rankin is our Chief Magistrate Judge. That request has to be made 60 days prior to trial in this matter if everybody consents, and there's a lot of people to consent. And what I'm seeing at this point in the submissions is that nobody is very interested in consenting to anything at this point. I hope that changes.

The parties have provided a lengthy and thorough Rule 26(f) record of their conference, which the Court appreciates, and the parties have yet to comply with self-executing routine discovery exchange. That will be done on or before September 15, 2023. We just split the difference, ladies and gentlemen.

The parties have exchanged names of individuals likely to have discoverable information as well as pertinent exhibits in this case. This case does involve allegations of breach of contract, actually two contracts, and as to each of those

contracts, it is alleged that there is tortious conduct that has occurred, bad faith conduct on the part of the defendants. There's also alleged wrongful interference by third parties in the contractual relationships that existed in this matter to the detriment of the plaintiffs, and there is a counterclaim that has been filed in this case.

All of these things are alleging substantial damages. I think plaintiffs are claiming upwards of $22 million, and defendants are claiming upwards of $40 million. It is a "can you top this" sort of relationship.

Interestingly, the main contract with MineOne in Wyoming is one that spread out the payment to another phase of the contract on their part so that they didn't have much skin in the game going into this, while all of the skin appears to have been with BCB Cheyenne's involvement and investment in this case.

I can foresee that this is a case that is going to involve a fair amount of electronically stored information. I hope that counsel at this point have acted to instruct all of their clients -- and I note that BCB is a conglomerate or an LLC made up of other LLCs in this case, ultimately down to real people at some point, and there are going to be notice of calls. And I hope everyone has instructed their clients to preserve their records because I think Magistrate Judge Rankin is probably going to have to sort out some sort of

proportionality order in this -- in this case with regard to the electronic discovery.

I think we've addressed limited liability companies as parties in this matter and the disclosure statements. Seems to me affidavits may be filed, and, as I indicated, interrogatories or depositions may be used as we go forward in this case.

I've given you until September 30th of this year to list any new parties or join any new parties, and, same date, September 30th, to amend pleadings. All of the parties indicated to me that they felt that the pleadings were in pretty good shape. I think the defendants maybe had some ideas of changes that they wished to dress up their pleadings in this case.

The plaintiffs have given us a date for their expert witnesses.

Mr. Murphy, what do you expect in terms of expert witnesses in this case? What kinds of experts are you planning on calling?

MR. MURPHY: Certainly, Your Honor. Good morning.

A bitcoin expert to, really, inform the Court about bitcoin and the industry and the situation and certainly to speak on the plaintiff's damages. That's the primary expert here.

The other thing I would mention is that because the

defendants' counterclaimed for $40 million, it sure seems to me they have the burden of persuasion on that, and they should have to designate their experts simultaneously with the plaintiff designating its experts.

THE COURT: Well, I'm not going to require them to do that, but I will require them to designate their experts in this matter on or before April 15 of 2024. There's no reason to delay this matter for six months while plaintiff tries to figure out what kind of expert they're going to call in this matter.

I'd look for all discovery to end in this case, that is, including depositions of the expert witness or witnesses, on August 7th of 2024, and would look for dispositive motions, I think summary judgment motions, on September 6th of 2024. I'm trying to build in as much time as the Court can claw away from you to give me some hope of understanding something about bitcoin mining and the ins and outs of that activity, and, if necessary, we can schedule a hearing, and this would allow that hearing to go forth as well.

Responses on the 20th of September, and replies on the 27th of September of 2024.

Other pretrial motions, motions to strike under *Daubert, Kaumo*, and related cases would be filed on the same dates.

A joint final pretrial memorandum I'd look for by

November 8th of 2024, and on that date would receive any motions in limine.

By the way, the Court will not consider motions to strike expert witnesses disguised as motions in limine and will not rule on them if they're not brought in a timely way. I'm not going to hold them.

Responses to motions in limine on November 22nd, 2024; replies on December 2nd, 2024; final pretrial conference on January 10th, 2025, at 9:30 in the morning. Unless more time is required, one hour will be allotted.

And we look to a nonjury trial for two weeks beginning at 1:30 -- actually, it can begin at 9:30 on January 27, 2025. And we can take as much time at that point for any robing -- you know, any discussion as to trial rules and that sort of thing.

The parties have been discussing mediation. That has -- those discussions have fallen apart. They've wanted to examine early mediation in this matter and perhaps -- and I agree with the defense in this matter -- that once some early discovery has taken place and early interrogatories are exchanged and answered, we can resolve the jurisdictional issues that may be brought before the Court by way of motion and response when that is ready to go. We may, I think, be able to proceed with mediation if the parties wish to.

They're all open to using Chief Magistrate Judge

Rankin or other qualified individuals, and there are any number of them in Wyoming, and, of course, we have JAMS, I think located down in Denver, Colorado. Our former Chief Judge Downes is a member of JAMS, and -- although I think he has moved to Indiana last April. Mr. Murphy keeps track of him.

MR. MURPHY: I do.

THE COURT: All right. He hasn't called recently, so I don't know what his present situation is.

Now, Mr. Murphy, I realize that this case is not moving fast enough for you. Anything you wish to say or object to in that regard?

MR. MURPHY: Just a couple of things, Your Honor. You had indicated just a moment ago that the jurisdictional issues need to be resolved.

Candidly, there are no issues. There are no jurisdictional issues. The plaintiff has put on more than a prima facie case -- they have even done it by affidavit -- that there's complete diversity. The defendants say, Oh, there's a clear discrepancy. There is no discrepancy. There's complete diversity.

The affidavits of James Quid and Tim Desrochers correctly and adequately explain the only two misunderstandings that Jim Quid had. He first believed that Desrochers lived in Texas in 2023, when, in fact, Desrochers had moved to Fort Collins, Colorado, at his sister's house. And Desrochers

himself said the only reason he listed his Bayview Capital, LLC, as a Wyoming domicile is because that's where he formed that LLC, was in Wyoming. But its only two members, James Quid and his wife Jessica, have always lived in Illinois.

So with all due respect to the defendants' allegation that there's some clear discrepancy, there is no discrepancy, and we -- and I'm wondering if we're going to be spending $50,000 of time on a fishing expedition on a dry hole where there's nothing there.

I know what the defendants want to try to do. They want -- they're hoping if they depose all of these 20 members of one of the LLCs that is a member of BCB Cheyenne, gosh, maybe they will find someone that's actually a resident of one of the states they're domiciled in, which would eliminate the Court's federal -- complete diversity and subject matter jurisdiction.

They can't point to a single thing. They haven't produced any countervailing affidavit or proof. This is truly a fishing expedition, and I think they want to extend it as far as they can. And that's a concern of mine.

My other -- it is more of a question; it is not a concern -- is I think Your Honor had indicated the defendants' experts would be due April 15th of 2024, but I never heard you say when the plaintiff would designate its experts. That could be my bad hearing.

THE COURT: You gave us a date of February 28th.

MR. MURPHY: Okay.

Okay. Thank you. So I anticipate fights with these opposing parties as to the extent of this so-called jurisdictional discovery, especially where it is not warranted. I just think we're going to be back in front of Your Honor on this issue. I really do.

THE COURT: Well, if they believe that Mr. Quid and Mr. Desrochers are lying, I suppose they can take a deposition. But it is really kind of -- I think it is really limited to people who are directly involved with that particular issue. Maybe they can have an investigator down in Texas find out that Mr. Desrochers was collecting his mail down in Texas, hadn't changed his driver's license down there, owned a piece of property down there, left his wife in Texas in the house.

MR. MURPHY: Well, he's not married.

THE COURT: All right. That solves that problem.

MR. MURPHY: Thank you, Judge. What they had asked for in the joint pretrial report is they just wanted to dispose unspecified members of members, and that's the fishing expedition. So thank you for your clarification on that.

I don't think I had anything else, really, other than argument on the diversity -- or the jurisdictional discovery.

THE COURT: Well, it is a lot of money that both sides are asking in this case, and I assume it will receive full

attention.

I was interested that all of this involved building structures on the ground for this -- these mining operations. There was a picture that was in the submission, the Rule 26(f) submission in this matter, that showed that. I don't know exactly what these are, but I know they take up a hell of a lot of power, in fact, some of them as much electricity that the entire city of Cheyenne may require for its load, which is a sensitive issue.

And, as I understand it, your client, Mr. Murphy, was able to receive a special position with regard to the power supplier which was key to their position in the contractual agreements that followed.

We will learn more.

Mr. Larson.

MR. LARSON: Thank you, Your Honor.

Unless Ms. Colbath has further clarification needed on an issue or to bring up an issue that hasn't been raised, I can't think of anything further.

I would agree on the jurisdictional and, as this Court knows, trying to make sure we're not wasting anybody's time and money on a federal case in the event there's diversity that falls through. As you know from prior cases, the Tenth Circuit is willing to take a look at that issue and essentially void the entire case. So what we're trying to do is figure out the

variations, hopefully from multiple individuals involved, about domicile. And so we do appreciate you allowing discovery on the issue.

And to the extent we have issues on the scope of that discovery, we will work through it with Magistrate Judge Rankin. And it would be helpful that -- if the parties are on the same page. But diversity is a crucial issue, as neither party would want to get a judgment and have the Tenth Circuit say, Well, so-and-so lived in the state, and for that reason there wasn't jurisdiction for any of this to have gone on.

So, Your Honor, I do appreciate it. I understand that you have an upcoming conference which is supposed to start here shortly, so with that, thank you and appreciate the Court sorting through the issues in a situation where the parties can't agree or haven't been able to agree on a whole lot so far and draw a line in the sand in the coming days.

Thank you.

THE COURT: Well, next to water in Wyoming, money is something we fight over.

Ms. Colbath, nice to meet you.

MS. COLBATH: Thank you, Your Honor. You -- as you said at the outset, you're giving us short shrift today, but it is clear from your knowledge and going through the scheduling that you have taken time to understand the positions of the parties, where we are and what needs to be done. And our

clients are grateful for that.

THE COURT: Well, I look forward to seeing you in Wyoming some day.

MS. COLBATH: I'm hoping to be out there this winter for some skiing, so maybe we can schedule a conference at a convenient time.

THE COURT: Well, good. We will do it. We can do it.

MS. COLBATH: Looking forward to it. Thank you so much, Your Honor.

THE COURT: You bet.

We'll stand in recess, then, and we will be sending out an order to all of you very shortly.

MR. MURPHY: Thank you, Your Honor.

MS. COLBATH: Thank you again.

MR. LARSON: Thank you.

(Proceedings concluded 9:32 a.m., August 30, 2023.)

**C E R T I F I C A T E**

I, JANET DAVIS, Federal Official Court Reporter for the United States District Court for the District of Wyoming, a Registered Diplomate Reporter, Federal Certified Realtime Reporter, and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the foregoing proceedings contained herein on the aforementioned subject on the date herein set forth and that the foregoing pages constitute a full, true and correct transcript.

Dated this 5th day of September, 2023.

/s/ Janet Davis

_______________________________

*JANET DAVIS, RDR, FCRR, CRR*
*Federal Official Court Reporter*