Sean Larson, Wyo. Bar #7-5112
Kari Hartman, Wyo. Bar #8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
307-634-7723
307-634-0985 (Fax)
slarson@hkwyolaw.com
khartman@hkwyolaw.com

Paula K. Colbath, Esq. (Pro Hac Vice)
Sarah Levitan Perry, Esq. (Pro Hac Vice)
LOEB & LOEB LLC
345 Park Avenue
New York, NY  10154
212-407-4905
212-407-4990 (Fax)

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

|  |  |  |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 23CV-79-SWS |
| v. | ) ) | |
| MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ANSWER, DEFENSES, AND AMENDED COUNTERCLAIMS OF DEFENDANTS MINEONE WYOMING DATA CENTER LLC, MINEONE PARTNERS, LLC, TERRA CRYPTO INC., BIT ORIGIN LTD, SONICHASH LLC

Defendants MINEONE WYOMING DATA CENTER LLC ("MineOne Wyoming Data Center"), MINEONE PARTNERS LLC, TERRA CRYPTO INC., BIT ORIGIN LTD., and SONICHASH LLC (<u>sic</u>) (collectively, the "Defendants"), by their attorneys Hathaway & Kunz, LLP and Loeb & Loeb LLP, hereby answer and respond to the Complaint filed by Plaintiff BCB CHEYENNE LLC ("Plaintiff" or "BCB") for Breach of Contract, Anticipatory Repudiation of Contract, Intentional Interference with Contractual Relation, *Alter Ego* Liability, Enterprise Liability, and Lost Profits and Money Damages, dated May 3, 2023 (the "Complaint") as follows:

## I.    INTRODUCTION [1]

Defendants aver that the unnumbered paragraphs in the INTRODUCTION section of the Complaint constitute Plaintiff's characterization of the nature and facts of the action.  The INTRODUCTION Section contains many vague and ambiguous statements and frequently and generically (including throughout the Complaint) refers to "Defendants" collectively without particularizing and identifying which Defendant(s) Plaintiff is referring to making it difficult to properly respond to numerous allegations.  Notwithstanding, the foregoing Defendants respond to the <u>INTRODUCTION</u> as follows:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first, third, fourth and twelfth unnumbered paragraphs and the first sentence of the second paragraph of the section headed "INTRODUCTION".

Defendants deny the allegations of the second sentence of unnumbered paragraph 2 of the "INTRODUCTION" and respectfully refer the Court to the Amendment to the Development, Hosting and Services Agreement (the "Amendment") for its full and complete terms in context.

---

[1] Defendants include headings from Plaintiff's Complaint for ease of reference.

Defendants admit the allegations in the first sentence of unnumbered paragraph five of the section headed "INTRODUCTION", and deny the remaining allegations in unnumbered paragraph five of the "INTRODUCTION".

Defendants deny the allegations in unnumbered paragraphs six, seven, eight, nine and eleven of the section headed "INTRODUCTION".

Defendants deny the allegations in unnumbered paragraph ten of the section headed "INTRODUCTION" and admit that the parties communicated with each other orally and in writing, and respectfully refer the Court to the written communications for their full and complete terms in context.

## II.      PARTIES, JURISDICTION AND VENUE

1.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1. To the extent any response is required, Defendants deny the same.

2.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2. To the extent any response is required, Defendants deny the same.

3.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3. To the extent any response is required, Defendants deny the same.

4.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4. To the extent any response is required, Defendants deny the same.

5.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5. To the extent any response is required, Defendants deny the same.

6.      Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, to the extent required Defendants deny the same, and deny the allegations relating to the "subject contracts" and respectfully refer the Court to the Development, Hosting and Services Agreement effective as of June 9, 2022, between MineOne Wyoming Data

Center and BCB (the "DHS Agreement") and the proposed Amendment for their full and complete terms in context.

7.      Deny the allegations in Paragraph 7.

8.      Admit the allegations in Paragraph 8.

9.      Admit the allegations in the first sentence of Paragraph 9, and respectfully refer the Court to the subject Agreement for its full and complete terms in context.

10.     Admit the allegations in Paragraph 10 in the first two sentences of Paragraph 10, deny the allegations in the third and last sentence of Paragraph 10, and respectfully refer the Court to the Service Framework Agreement for its full and complete terms in context.

11.     Admit the allegations in the first sentence of Paragraph 11 and that none of Sonic Hash's members are Wyoming residents, and deny the remaining allegations in Paragraph 11.

12.     Deny the allegations in Paragraph 12.

13.     Admit the allegations in the first sentence of Paragraph 13, and respectfully refer the Court to the contracts referred to therein for their full and complete terms in context.

14.     Deny the allegations in Paragraph 14.

15.     Paragraph 15 respectfully refers to 28 U.S.C §1332(a)(1) which speaks for itself. Defendants deny any interpretation contrary to the plain language and meaning of the contents of the subject statutory section.  To the extent the allegations in paragraph 15 call for conclusions of law, no response is required, however Defendants deny same.

16.     Paragraph 16 respectfully refers to 28 U.S.C §1332(a) which speaks for itself. Defendants deny any interpretation contrary to the plain language and meaning of the contents of the subject statutory section.  To the extent the allegations in paragraph 16 call for conclusions of law, no response is required, however Defendants deny same.

17.     The allegations in Paragraph 17 call for conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny same.

18.     The allegations in Paragraph 18 call for conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny same.

19.     The allegations in Paragraph 19 call for conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny same.

20.     Deny the allegations in Paragraph 20, and respectfully refer the Court to the pleadings and papers filed in Wyoming Chancery Court, Docket No. CM2023-0000006 for the full and complete pleadings and papers in context and respectfully refer the Court to Chancery Court Rule 3(a) for its full and complete terms in context, as the rule speaks for itself and the allegations call for legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny same.

21.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

### III.     FACTS COMMON TO ALL CLAIMS

22.     Admit the allegations in Paragraph 22.

23.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23. To the extent any response is required, Defendants deny the same.

24.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and respectfully refer the Court to the referenced Power Purchase Agreement for its full and complete terms in context. To the extent any response is required, Defendants deny the same.

25.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and respectfully refer the Court to the referenced Power Purchase

Agreement for its full and complete terms in context. To the extent any response is required, Defendants deny the same.

26.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26. To the extent any response is required, Defendants deny the same.

27.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27. To the extent any response is required, Defendants deny the same.

28.    Deny the allegations in Paragraph 28.

29.    Deny the allegations in Paragraph 29.

30.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 30, to the extent any response is required Defendants deny the same, and deny the remainder of the allegations in Paragraph 30.

31.    Deny the allegations in Paragraph 31, except lack knowledge or information as to the truth of the allegations in the second sentence of Paragraph 31, to the extent any response is required, Defendants deny the same.

32.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and further aver that Plaintiff does not define the terms "difficult, challenging and very competitive" and/or "a price needed to conduct business" making the allegations vague and ambiguous. To the extent any response is required, Defendants deny the same.

33.    Deny the allegations in Paragraph 33.

34.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34. To the extent any response is required, Defendants deny the same.

35.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35. To the extent any response is required, Defendants deny the same.

36.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36. To the extent any response is required, Defendants deny the same.

37.     Deny the allegations in Paragraph 37, and respectfully refer the Court to the "shared drive" referred to therein for its full and complete contents and terms in context. To the extent any response is required, Defendants deny the same.

38.     Admit the allegations in Paragraph 38, and respectfully refer the Court to the "exchanged information" referred to therein for its full and complete contents in context.

39.     Admit the allegations in Paragraph 39.

40.     Deny the allegations in Paragraph 40 and respectfully refer the Court to the referenced "options" for their full and complete terms in context.

41.     Admit the allegations in Paragraph 41.

42.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42. To the extent any response is required, Defendants deny the same.

43.     Deny the allegations in Paragraph 43, and respectfully refer the Court to the referenced "due diligence documents relating to its assets" for their full and complete terms in context and further aver that the term "actuate on the opportunity" is not defined and is vague and ambiguous, thus Defendants lack knowledge of information sufficient to form a belief as to the truth of the allegation relating to same. To the extent any response is required, Defendants deny the same.

44.     Deny the allegations in Paragraph 44, and respectfully refer the Court to the "formal agreement documents" referred to therein for their full and complete terms in context.

45. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45. To the extent any response is required, Defendants deny the same.

46. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46. To the extent any response is required, Defendants deny the same.

47. Deny the allegations in Paragraph 47, except admit that meetings took place between Plaintiff and MineOne Wyoming.

48. Deny the allegations in Paragraph 48, and respectfully refer the Court to the referenced email for its full and complete terms in context.

49. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49. To the extent any response is required, Defendants deny the same.

50. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50. To the extent any response is required, Defendants deny the same.

51. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, to the extent any response is required, Defendants deny the same, except admit MineOne purchased the property located at 635 Logistics Drive, Cheyenne, WY and respectfully refer the Court to the referenced Agreement for its full and complete terms in context.

52. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52. To the extent any response is required, Defendants deny the same.

53. Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, as the term "Side Letter" is not defined, to the extent any response is required, Defendants deny the same, and deny the remaining allegations and respectfully refer the Court to the referenced Development and Hosting Agreement and Consulting Services Agreement for their respective full and complete terms in context.

54.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54. To the extent any response is required, Defendants deny the same.

55.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55. To the extent any response is required, Defendants deny the same.

56.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56. To the extent any response is required, Defendants deny the same.

57.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and respectfully refer the Court to the "notice" and email for their full and complete terms in context. To the extent any response is required, Defendants deny the same.

58.   Deny the allegations in Paragraph 58, and respectfully refer the Court to the referenced "detailed comparison of all Mining Container Options" for their full and complete terms in context.

59.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, to the extent any response is required, Defendants deny the same, except admit that MineOne entered into a contract with Shermco and respectfully refer to the Court to the referenced contract, and further aver that such contract was entered into only after Plaintiff recommended Shermco to Defendants and represented that Shermco had the necessary experience, knowledge, and technical expertise for the project.

60.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60. To the extent any response is required, Defendants deny the same.

61.   Deny the allegations in Paragraph 61, and respectfully refer the Court to the referenced agreement for its full and complete terms in context, and further aver that such agreement was entered into only after Plaintiff recommended CEGEN to MineOne Wyoming Data

Center and represented that CEGEN had the necessary experience, knowledge and technical expertise for the project.

62.    Admit the allegations in Paragraph 62.

63.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63. To the extent any response is required, Defendants deny the same.

64.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64. To the extent any response is required, Defendants deny the same.

65.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65. To the extent any response is required, Defendants deny the same.

66.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66. To the extent any response is required, Defendants deny the same.

67.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67. To the extent any response is required, Defendants deny the same.

68.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68. To the extent any response is required, Defendants deny the same.

69.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69. To the extent any response is required, Defendants deny the same.

70.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70. To the extent any response is required, Defendants deny the same.

71.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71. To the extent any response is required, Defendants deny the same.

72.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72. To the extent any response is required, Defendants deny the same.

73.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73. To the extent any response is required, Defendants deny the same.

74.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and respectfully refer the Court to the referenced "concerning email" and "report from Microsofts' National Security Team" for their full and complete terms in context. To the extent any response is required, Defendants deny the same.

75.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75. To the extent any response is required, Defendants deny the same.

76.     Deny the allegations in Paragraph 76, except lack knowledge or information as to the truth of the allegations concerning BCB's knowledge of visitors and/or their purpose for visiting.

77.     Deny the allegations in Paragraph 77, except admit various discussions took place between BCB and MineOne concerning delays and expected cost overruns, and respectfully refer the Court to the "proposed Amendment" for its full and complete terms in context.

78.     Admit the allegations in Paragraph 78.

79.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79. To the extent any response is required, Defendants deny the same.

80.     Deny the allegations in Paragraph 80, and respectfully refer the Court to the "amendment" and "labor agreement" for their full and complete terms in context.

81.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81. To the extent any response is required, Defendants deny the same.

82.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82. To the extent any response is required, Defendants deny the same.

83.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83, and respectfully refer the Court to the November 14, 2022 referenced email for it full and complete terms in context. To the extent any response is required, Defendants deny the same.

84.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84. To the extent any response is required, Defendants deny the same.

85.     Deny the allegations in Paragraph 85.

86.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86. To the extent any response is required, Defendants deny the same.

87.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87. To the extent any response is required, Defendants deny the same.

88.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88. To the extent any response is required, Defendants deny the same.

89.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, to the extent any response is required, Defendants deny the same, except deny that Defendants did not have any responsibility, obligation, and/or right to ensure proper site operations and management.

90.     Deny the allegations in Paragraph 90.

91.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and further aver that Plaintiff did not define the terms "severe weather" or "impacted construction" and such terms are vague and ambiguous. To the extent any response is required, Defendants deny the same.

92.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 relating to "new record low temperature", and deny the remainder of the allegations in Paragraph 92. To the extent any response is required, Defendants deny the same.

93.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, and respectfully refer the Court to the referenced Development and Hosting Agreement for its full and complete terms in context. To the extent any response is required, Defendants deny the same.

94.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94. To the extent any response is required, Defendants deny the same.

95.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95. To the extent any response is required, Defendants deny the same.

96.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96. To the extent any response is required, Defendants deny the same.

97.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, to the extent any response is required, Defendants deny the same, except admit MineOne continued to have discussions to improve the success and outcomes of its Wyoming Bitcoin mining operations, including helping Plaintiff comply with its obligations and considering issues such as water quality, site plans, and the effectiveness of (among others) hydro mining.

98.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98. To the extent any response is required, Defendants deny the same.

99.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99. To the extent any response is required, Defendants deny the same.

100.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100. To the extent any response is required, Defendants deny the same.

101.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101. To the extent any response is required, Defendants deny the same.

102.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102. To the extent any response is required, Defendants deny the same.

103.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, and respectfully refer the Court to the "updated Master Schedule" and "Master Procurement document" for their full and complete terms in context. To the extent any response is required, Defendants deny the same.

104.     Admit the allegations in the first sentence in Paragraph 104, except deny the remaining allegations of Paragraph 104, and respectfully refer the Court to the operative agreements and communications for the full and complete description of Plaintiff's duties, responsibilities, promises and representations as to milestones and deadlines for Phase 1 of the project.

105.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105. To the extent any response is required, Defendants deny the same.

106.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106. To the extent any response is required, Defendants deny the same.

107.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107. To the extent any response is required, Defendants deny the same.

108.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108. To the extent any response is required, Defendants deny the same.

109.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109. To the extent any response is required, Defendants deny the same.

110.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110. To the extent any response is required, Defendants deny the same.

111.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111. To the extent any response is required, Defendants deny the same.

112.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112. To the extent any response is required, Defendants deny the same.

113.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113. To the extent any response is required, Defendants deny the same.

114.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114. To the extent any response is required, Defendants deny the same.

115.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115. To the extent any response is required, Defendants deny the same.

116.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116. To the extent any response is required, Defendants deny the same.

117.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117, and respectfully refer the Court to the referenced Service Framework Agreement for its full and complete terms in context. To the extent any response is required, Defendants deny the same.

118.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118. To the extent any response is required, Defendants deny the same.

119.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119. To the extent any response is required, Defendants deny the same.

120.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120. To the extent any response is required, Defendants deny the same.

121.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121. To the extent any response is required, Defendants deny the same.

122.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122. To the extent any response is required, Defendants deny the same.

123.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123. To the extent any response is required, Defendants deny the same.

124.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124. To the extent any response is required, Defendants deny the same.

125.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125. To the extent any response is required, Defendants deny the same.

126.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126. To the extent any response is required, Defendants deny the same, except admit and further aver that the project faced delay and runaway costs as a result of Plaintiff's inexperience, breaches, omissions, wrongful conduct and ultimate abandonment of its contractual promises, responsibilities, and duties.

127.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127, and respectfully refer the Court to the "notice from the Campstool Architectural Review Committee" and the "approved plans" for their full and complete terms in context. To the extent any response is required, Defendants deny the same.

128.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, except admit there were numerous meetings and phone calls and due diligence regarding electrical responsibilities in the data centers. To the extent any response is required, Defendants deny the same.

129.    Deny the allegations in Paragraph 129, and respectfully refer the Court to the referenced redacted Service Framework Agreement with attachments for its full and complete terms in context.

130.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130. To the extent any response is required, Defendants deny the same.

131.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131. To the extent any response is required, Defendants deny the same.

132.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132. To the extent any response is required, Defendants deny the same.

133.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133. To the extent any response is required, Defendants deny the same.

134.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134. To the extent any response is required, Defendants deny the same.

135.    Admit the allegations in Paragraph 135 that Dr. Jiaming visited the North Range site and deny the remaining allegations.

136.    Deny the allegations in Paragraph 136, and respectfully refer the Court to the referenced Form F-3A for its full and complete terms in context, and admit that Dr. Jiaming Li resigned from MineOne Partners as an executive but holds a non-executive position.

137.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137. To the extent any response is required, Defendants deny the same.

138.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138. To the extent any response is required, Defendants deny the same.

139.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139. To the extent any response is required, Defendants deny the same.

140.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140. To the extent any response is required, Defendants deny the same.

141.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141, to the extent any response is required, Defendants deny the same, except admit the allegations in the last sentence of Paragraph 141.

142.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142. To the extent any response is required, Defendants deny the same.

143.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143. To the extent any response is required, Defendants deny the same.

144.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144. To the extent any response is required, Defendants deny the same.

145.    Admit the allegations in Paragraph 145, except deny that on February 15, 2023, Dr. Jiaming Li, individually, was directing Mr. Zhang.

146.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146. To the extent any response is required, Defendants deny the same.

147.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147. To the extent any response is required, Defendants deny the same.

148.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148. To the extent any response is required, Defendants deny the same.

149.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149. To the extent any response is required, Defendants deny the same.

150.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150. To the extent any response is required, Defendants deny the same.

151.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151. To the extent any response is required, Defendants deny the same.

152.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152. To the extent any response is required, Defendants deny the same.

153.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153. To the extent any response is required, Defendants deny the same, except admit that at times in 2023, Application-Specific Integrated Circuit Miners ("ASICS") were delivered to Cheyenne, WY.

154.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154. To the extent any response is required, Defendants deny the same, except admit and further aver that because of significant, unacceptable, and highly prejudicial project delays and cost overruns and the reasons for same, additional knowledgeable and competent staff was brought to the mining project.

155.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155. To the extent any response is required, Defendants deny the same.

156.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156. To the extent any response is required, Defendants deny the same.

157.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157. To the extent any response is required, Defendants deny the same.

158.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158. To the extent any response is required, Defendants deny the same.

159.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159. To the extent any response is required, Defendants deny the same.

160.    Deny the allegations in Paragraph 160, except further aver that emails were sent at various times to schedule meetings and respectfully refer the Court to the referenced emails for their full and complete terms in context, and admit that the March 1 email was not responded to.

161.    Deny the allegations in Paragraph 161, except admit that emails were sent at various times to schedule meetings and respectfully refer the Court to the referenced emails for their full and complete terms in context, and admit that the March 2 email was not responded to.

162.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162, to the extent any response is required, Defendants deny the same, except admit that there were various closing dates and closing documents, including an extension document, relating to the closing of the Campstool Parcel.

163.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163. To the extent any response is required, Defendants deny the same, and further aver that requests were made for concrete dates when the site would be operational and productive.

164.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164. To the extent any response is required, Defendants deny the same.

165.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165. To the extent any response is required, Defendants deny the same.

166.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166, and respectfully refer the Court to the referenced email for its full and complete terms in context and admit that meetings were proposed and/or held with BCB at various points in time. To the extent any response is required, Defendants deny the same.

167.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167, as BCB does not specify to whom the estimate and progress payment invoice for services was provided and respectfully refer the Court to said documents for their full and complete terms in context. To the extent any response is required, Defendants deny the same.

168.    Deny the allegations in Paragraph 168, except admit that the GoogleMeet teleconference was held with BCB and Drs. Rengifo and Jiaming Li where numerous topics were discussed, including the operation of the North Range site and BCB's ongoing responsibilities given its failure to perform and lack of knowledge and experience regarding construction and operation of a Bitcoin mining project.

169.    Deny the allegations in Paragraph 169, but admit Dr. Jiaming Li visited North Range and drove a BMW M5, and lack knowledge and information to form a belief as to the truth of the allegations relating to BMW costs.

170.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170. To the extent any response is required, Defendants deny the same.

171.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171. To the extent any response is required, Defendants deny the same.

172.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172. To the extent any response is required, Defendants deny the same.

173.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173. To the extent any response is required, Defendants deny the same.

174.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174. To the extent any response is required, Defendants deny the same.

175.    Deny the allegations in Paragraph 175, except admit Dr. Jiaming Li met with Mr. Randall, and respectfully refer the Court to the referenced email for its full and complete terms in context.

176.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, and respectfully refer the Court to the email and invoice for their full and complete terms in context, and admit possible payment terms were discussed. To the extent any response is required, Defendants deny the same.

177.    Deny the allegations in Paragraph 177 as to a $45,000 payment being promised on Monday, March 13, 2023, and respectfully refer the Court to the referenced email and proposed amendment of the Development and Hosting Agreement for their full and complete terms in context.

178.    Deny the allegations in Paragraph 178, and respectfully refer the Court to the referenced Exhibit B for its full and complete terms in context.

179.    Deny the allegations in Paragraph 179.

180.    Deny the allegations in Paragraph 180.

181.    Deny the allegations in Paragraph 181, and respectfully refer the Court to the referenced Exhibit C for its full and complete terms in context.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT AGAINST MINEONE WYOMING, INCLUDING ANTICIPATORY REPUDIATION OF CONTRACT

182.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-181 above as if fully set forth herein.

183.    Admit the allegations in Paragraph 183.

184.    Deny the allegations in Paragraph 184, and further aver that Plaintiff did not deliver to promised consideration.

185.    Deny the allegations in Paragraph 185.

186.    Deny the allegations in Paragraph 186.

187.    Deny the allegations in Paragraph 187.

188.    Deny the allegations in Paragraph 188.

189.    Deny the allegations in Paragraph 189.

## SECOND CLAIM FOR RELIEF

### BREACH IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST MINEONE WYOMING

190.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-189 above as if fully set forth herein.

191.    The allegations in Paragraph 191 do not require a response as they constitute conclusions of law.  To the extent a response is required, they are denied.

192.    Deny the allegations in Paragraph 192.

193.    The allegations in Paragraph 193 do not require a response as they constitute conclusions of law.  To the extent a response is required, they are denied.

194.    Deny the allegations in Paragraph 194.

195.    Deny the allegations in Paragraph 195.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT AGAINST TERRA CRYPTO, INC.

196.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-195 above as if fully set forth herein.

197.    Admit the allegations in Paragraph 197.

198.    Deny the allegations in Paragraph 198.

199.    Deny the allegations in Paragraph 199.

200.    Deny the allegations in Paragraph 200.

201.    Deny the allegations in Paragraph 201.

202.    Deny the allegations in Paragraph 202.

203.    Deny the allegations in Paragraph 203.

## FOURTH CLAIM FOR RELIEF

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST TERRA CRYPTO

204.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-203 above as if fully set forth herein.

205.    The allegations in Paragraph 205 do not require a response as they constitute conclusions of law.  To the extent a response is required, they are denied.

206.    Deny the allegations in Paragraph 206.

207.    The allegations in Paragraph 207 do not require a response as they constitute conclusions of law.  To the extent a response is required, they are denied.

208.    Deny the allegations in Paragraph 208.

209.    Deny the allegations in Paragraph 209.

## FIFTH CLAIM FOR RELIEF

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANTS BIT ORIGIN LTD., MINEONE PARTNERS LLC, AND SONICHASH LLC

210.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-209 above as if fully set forth herein.

211.    Admit the allegations in Paragraph 211.

212.    Deny the allegations in Paragraph 212.

213.    Deny the allegations in Paragraph 213.

214.    Deny the allegations in Paragraph 214.

## SIXTH CLAIM FOR RELIEF

### AGAINST ALL DEFENDANTS: *ALTER EGO* AND ENTERPRISE LIABILITY FOR THE BREACHES AND TORTS OF ALL DEFENDANTS

215.    Defendants incorporate by reference their responses to the allegations contained in the INTRODUCTION and paragraphs 1-214 above as if fully set forth herein.

216.    Deny the allegations in Paragraph 216.

217.    Deny the allegations in Paragraph 217.

218.    Deny the allegations in Paragraph 218 and further aver there are no individuals identified in Paragraph 212.

219.    Deny the allegations in Paragraph 219.

220.    Deny the allegations in Paragraph 220 and its footnote.

221.    Deny the allegations in Paragraph 221.

222.    Deny the allegations in Paragraph 222.

### AFFIRMATIVE DEFENSES AND GENERAL DENIAL

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendants set forth the

following affirmative and other defenses, and do so on information and belief as to the actions of others.  By alleging the separate and additional defenses set forth below, Defendants, and each of them, are in no way conceding or agreeing that they have the burden of proof or persuasion on any of these issues.

### FIRST AFFIRMATIVE DEFENSE
### (AMBIGUOUS, IMPERTINENT AND SCANDALOUS ALLEGATIONS)

1.       Plaintiff Complaint fails to comply with the pleading requirements of R. Civ. P. 8(a), 10(b) and 12, in that many paragraphs are redundant, immaterial, impertinent, overbroad, vague, ambiguous, contain undefined terms and contain scandalous terms.

### SECOND AFFIRMATIVE DEFENSE
### (WAIVER)

2.       Plaintiff's claims are barred by the doctrine of waiver.

### THIRD AFFIRMATIVE DEFENSE
### (PAYMENT)

3.       Plaintiff's    claims    are    barred    by    the    doctrine    of    payment.

### FOURTH AFFIRMATIVE DEFENSE
### (SETOFF AND RECOUPMENT)

4.       Plaintiff's claims are barred by the doctrines of setoff and recoupment.

### FIFTH AFFIRMATIVE DEFENSE
### (LACK OF JURISDICTION)

5.       Plaintiff's claims are barred by a lack of personal and/or subject matter jurisdiction.

### SIXTH AFFIRMATIVE DEFENSE
### (IMPROPER AND INCONVENIENT VENUE)

6.       As to all claims for relief, Defendants allege that this district is an inconvenient and/or improper venue.

## SEVENTH AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

7.       Plaintiff's Complaint, and each cause of action purportedly asserted therein, is barred (in whole or in part) because it fails to state a claim upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE
### (MATERIAL BREACH OF CONTRACT BY PLAINTIFF)

8.       Plaintiff's claims, which are premised (at least in part) on alleged breaches of contract by Defendants, are barred, in whole or in part, because Plaintiff materially breached the terms of the DHS Agreement and other contracts, thereby excusing performance by Defendants.

## NINTH AFFIRMATIVE DEFENSE
### (NO CAUSATION)

9.       Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, were not proximately or legally caused by, or were not the result of, any action or omission of Defendants.

## TENTH AFFIRMATIVE DEFENSE
### (INTERVENING AND SUPERCEDING CAUSES – PLAINTIFF)

10.      Plaintiff's claims are barred, in whole or in part, because the alleged damages suffered by Plaintiff, if any, were the result of one or more intervening or superceding actions taken by Plaintiff, including Plaintiff's failures to meet deadlines and milestones, which undermined the mining project's operations and completion.

## ELEVENTH AFFIRMATIVE DEFENSE
### (LACHES)

11.      Plaintiff is barred from relief in this action under the doctrine of laches.

## TWELFTH AFFIRMATIVE DEFENSE
### (ESTOPPEL)

12.      Plaintiff is barred from relief in this action under the doctrine of estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (ACQUIESCENCE)

13.     Plaintiff is barred from relief in this action under the doctrine of acquiescence.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (FAILURE TO MITIGATE DAMAGES)

14.     Plaintiff's claims are barred, in whole or in part, by its failure to mitigate its damages.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (INTERVENING AND SUPERCEDING CAUSES – THIRD PARTIES)

15.     Plaintiff's claims are barred, in whole or in part, because the alleged damages suffered by Plaintiff, if any, were the result of one or more intervening or superceding causes, or caused by the acts and failures to act of persons and/or entities other than Defendants.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (FRUSTRATION)

16.     Plaintiff's claims are barred, in whole or in part by the doctrine of frustration.

## SEVENTEENTH DEFENSE
### (BAD FAITH)

17.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's conduct, actions, and inaction amount to and constitute bad faith.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

18.     Plaintiff's Complaint, and any claims purportedly asserted therein, fails because Plaintiff is barred from any and all recovery by virtue of Plaintiff's unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE
### (UNJUST ENRICHMENT)

19.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unjust enrichment as Plaintiff has already been paid for more work and services than it is entitled to.

Accordingly, Plaintiff's recovery should be barred, or at the very least, diminished under this equitable doctrine.

## TWENTIETH AFFIRMATIVE DEFENSE
### (LACK OF STANDING)

20.     Plaintiff lacks standing to maintain this action as, upon information and belief, Plaintiff purports to be a Wyoming limited liability corporation, but is a shell organization and vehicle for its members (Michael Murphy, Emory Patterson IV, and Neil Phippen) to purportedly conduct business and operate as a business in the digital currency mining space.  Plaintiff is the alter ego of one or more of its members, and Plaintiff does not have standing to maintain this action.

## RESERVATION OF RIGHTS

Defendants state that they currently have insufficient knowledge or information on which to form a belief as to whether they, or any one of them, may have additional, as-yet unstated defenses available. Defendants reserve the right to assert additional defenses in the event discovery or further investigation demonstrates or indicates that any such defense is appropriate or applicable.

## DEFENDANTS' FIRST COUNTERCLAIM

### (Breach of Contract Against Plaintiff BCB Cheyenne LLC)

### FACTUAL BACKGROUND

1.     Bitcoin mining is a complex computational and technological process of validating Bitcoin transactions over the Bitcoin network.  It is the process of verifying transactions on the Bitcoin blockchain by solving complex mathematical puzzles, for which miners are rewarded with new Bitcoin. It involves the process of validating the information in a blockchain block by generating a cryptographic solution that matches specific criteria.  When a correct solution is reached, a reward in the form of Bitcoin and fees for the work done is given to the miner who

reached the solution first. The individuals involved in the crypto mining business are called miners and, because reaching the correct solution first is essential, speed in establishing facilities is essential to success.

2.       The reason the Bitcoin process and activity is called mining is, because just like with any other form of natural resources, there is a finite number of Bitcoins available.

3.       The job of a Bitcoin miner is to secure the network and process Bitcoin transactions. As noted above, the miner is required to solve a computational problem chaining together blocks of transactions. Bitcoin mining is a highly competitive and expensive business.

4.       Powerful computers, using lots of electricity, are needed to mine for Bitcoin.

5.       The crypto mining facilities at issue in this action were ASIC mining facilities. ASIC is short for application-specific integrated circuit, which is a type of computer hardware which is designed only for mining crypto currencies.

6.       ASIC facilities were launched in approximately 2012 and have the power to be 200 times more powerful than the basic graphics processing unit ("GPU") miner to verify transactions on a blockchain network and earn crypto currency reward. GPUs are no longer commercially attractive to many parties and investors.

7.       ASIC mining rigs are very expensive and involve significant power consumption and electricity costs.

8.       On or about June 9, 2022, Plaintiff and MineOne Wyoming Data Center entered into the DHS Agreement.

9.       Prior to entering into the DHS Agreement, Plaintiff BCB represented to Defendants that it was a community-focused crypto developer and in the business of providing operation, maintenance, and hosting of digital currency mining services through (among other things) its use

of certain infrastructure and utilities (i.e., ASICS and large electrical power consumption) required for the mining of digital currency (i.e., Bitcoin).  BCB promised that it would be the local operator of the facilities at the center of this action and those facilities would be the "most efficient blockchain data center" in Wyoming.

10.     At the time BCB and MineOne Wyoming Data Center began their business discussions in early 2022, MineOne Wyoming Data Center emphasized to BCB that it was important for MineOne Wyoming Data Center to start its mining operations as soon as possible. Dates in August 2022 were discussed and agreed to.  This meant having the mining facility and operations ready to energize with the sites' power provider and to start crypto mining operations by August 2022.

11.     To energize the sites and begin crypto mining operations, Plaintiff BCB needed to have completed two important things:

a.     Construction of the physical facilities, including Modular Data Centers ready to go live and host the miners; and

b.     The hiring of competent and experienced miners.

12.     To complete the construction of the crypto mining facilities there were two components under the DHS Agreement, namely: funding for the mining equipment and construction, which was the responsibility of MineOne Wyoming Data Center, and the construction buildout which was to be fully managed by Plaintiff BCB, as Project Manager.

13.     Under the DHS Agreement, Plaintiff BCB had the duty, responsibility, and obligation to have the mining facilities completed (i.e., "up and running") as soon as possible (and no later than the end of October 2022).  Plaintiff BCB originally represented and agreed it could do so by August 2022.

14. Indeed, Plaintiff BCB acknowledged and agreed to an initial August 2022 completion deadline (and subsequently to an October 2022 deadline) for completion of the facilities. By way of example only, on April 23, 2022, Michael Murphy ("Murphy"), a member of Plaintiff, stated in an email the following:

KEY MILESTONE DATES:

7/22 - CBP 22.5MW operational
7/29 - NRBP 22.5MW operational
8/22 - CBP 7.5MW (30MW total) and NRBP 22.5MW (45MW total) operational

15. Since power consumption is high for a Bitcoin facility, low-cost electricity rates are very important. At all times and in all discussions with Plaintiff BCB, Defendant MineOne Wyoming Data Center was clear that the electricity price secured by BCB for the project needed to be at or below 5 cents per KWh.

16. MineOne Wyoming Data Center had several virtual meetings with Murphy where Murphy explained to MineOne Wyoming Data Center that the desired electricity price (i.e., at or below 5 cents per KWh) was something Plaintiff BCB could absolutely achieve by a set of strategies that Plaintiff BCB described as a mixture of block and spot purchases with the utility he knew well.

17. Murphy wrote several emails to MineOne Wyoming Data Center explaining Plaintiff's process to get the required electricity price. By way of example only, in Murphy's email from April 2, 2022, Murphy stated as follows:

Also, to address your concern about the pricing structure in the PPA [Power Purchase Agreement], we shared the same concern as we were negotiating the agreement. The way we were able to get comfortable with this is our contractual ability to work with the Utility's power purchasing team to buy blocks of power in advance. By purchasing large blocks of power in advance (for example, 6-12 months at a time), we would be able to fix our price at the agreed-upon floor price and eliminate our exposure to short-term price spikes (like the one in Feb 2021 that you respectfully referenced). Put differently, our power agreement requires active participation to ensure a fixed price, whereas most power agreements (probably like

yours in GA and PA) simply allow for a price ceiling without requiring any work on your end.  This odd structure is one of the main factors that allowed us to win the RFP and beat out all of the other companies vying for the power.

18.     Moreover, at an in-person meeting with Drs. Jiaming Li and Erick Rengifo (who were visiting the Wyoming mining facilities for the first time), Murphy assured MineOne Wyoming Data Center that he and BCB had solid, strong relationships with Black Hills Energy (the Wyoming subsidiary of Black Hills Corp., a South Dakota based public utility provider), and that Plaintiff was very confident that Plaintiff would be able to deliver to MineOne Wyoming Data Center the required maximum price of approximately 5 cents per KWh for electricity.

19.     Murphy, on behalf of BCB, also stated on more than one occasion that the facilities would be completed on time (initially by August, then by October)  and that in addition to BCB being on premises at all times, the facilities were going to need additional active on-site management and numerous employees, and that Plaintiff had the ability to hire the necessary and qualified miners and others that were needed at the sites to perform tasks.  BCB assured Defendants that all individuals and entities hired or recommended by BCB had prior and extensive experience in the crypto mining area.

20.     Under the DHS Agreement, for BCB to fulfill its contractual obligations it was expected and necessary for BCB's principals to be physically present at the facilities to ensure orderly and timely process, implementation and operation of the project and its buildout.

21.     Plaintiff's numerous statements about its prior experience and capabilities to build and operate a crypto mining facility of this size was the major reason for MineOne Wyoming Data Center entering into the DHS Agreement with Plaintiff (and its members).

22.     MineOne Wyoming Data Center relied on Plaintiff to contract for the electricity at the promised cost level and hire the necessary and experienced miners, subcontractors, and others to perform the necessary mining activities at a high, competitive level.

23.     Plaintiff (and its members) claimed to have deep positive connections with subcontractors and local employees, all of whom had highly technical crypto mining expertise, skills, and experience so that BCB could readily hire and/or engage them and successfully fulfill its contractual obligations and other commitments under the DHS Agreement.

24.     MineOne Wyoming Data Center relied on Plaintiff BCB to recommend contractors to assist with the building and operation of the facility and BCB vouched for the experience, capability, and quality of all contractors, employees, and independent contractors engaged at the project before they were retained and/or hired by Defendants or others.

25.     On numerous occasions, Plaintiff emphasized that its members were "local" boys who were well known in Wyoming, especially the Cheyenne area, and had the connections, know-how, and expertise to make the facility successful for Defendants.

26.     Soon after the DHS Agreement was entered into, MineOne Wyoming Data Center began to learn that Plaintiff did not have the connections, experience, technical expertise, and know-how needed to build, manage and/or operate a digital crypto currency facility of this size, complexity, and sophistication, and that it had represented and touted to MineOne Wyoming Data Center.

27.     Plaintiff failed to secure the promised electric rates and ultimately walked off the project (and hastily filed this and a prior lawsuit).

28.     As a result, Defendants were required to deal with, and negotiate directly with, Black Hills Electric and the project's subcontractors, such as CEGEN and Shermco, who had been highly recommended to MineOne Wyoming Data Center by BCB.

29.     Plaintiff BCB consistently showed its lack of experience, skills, and expertise in the area of crypto mining and construction as time went on.

30.     When confronted with delays and difficulties of its own making, Plaintiff BCB had no desire to attempt to remedy the issues as Project Manager of Phase 1 of the project.   For example, BCB reacted slowly to the problems that it was confronting.   Two of its main recommended subcontractors/providers were not at the required standard of quality and performance for a project of this magnitude, complexity, and sophistication.   It was paralyzed to take appropriate action.

31.     BCB was not able to find the needed work crews and employees to perform the necessary work on the project. Instead, BCB resorted to hiring inexperienced people who caused delays and had no familiarity with the tasks at hand for a digital crypto currency facility of this size and complexity.

32.     Despite BCB's delays, inexperience, and lack of knowledge to handle the project requirements and scope, MineOne Wyoming Data Center continued to assist BCB in any way it could, even sending staff to help salvage the project and to make the project successful.

33.     BCB refused to respond to emails requesting information so the project could continue moving forward.

34.     BCB's actions caused significant delays, disruptions, and damage to MineOne Wyoming Data Center's ability to make the facilities operational.

35.     Specifically, pursuant to the DHS Agreement (Article I, §6.2), BCB (among other things) was obligated to do all of the following:

BCB shall be and is hereby appointed as the project manager for the Facilities and shall be responsible for the following during the Build & Implementation Phase ("***BCBC Phase 1 Obligations***"):

(a)     Supporting and managing the land acquisition for the Facilities by MineOne (including all local Wyoming legal and other required support).

(b)     Obtaining all permits and licenses, including construction permits for buildings and the Facilities' electric infrastructure, environmental licenses and permits, operations permits and licenses (including legal and other) required or recommended to comply with applicable law and regulation.

(c)     Supporting and managing the execution of the power purchase arrangements by MineOne.

(d)     All other reasonable related activities within its control to enable MineOne and other users of the Facilities to conduct digital currency mining activities in a proper and timely manner to ensure that CFCO occurs not later than 31 October 2022.

(e)     Ensuring that all improvements are developed in accordance with the approved construction and engineering documents and all employees, contractors, or Subcontractors (if any) (as provided for below) carry standard general liability and workman's compensation insurance.

(f)     Project management and services to support MineOne Wyoming Data Center responsibilities as specified in the Budget as and when the same fall due.

36.     Given Plaintiff BCB's total inability to properly and timely perform its Phase 1 obligations under the DHS Agreement, it was clear that Plaintiff BCB does not have the ability, experience, and technical expertise to complete its Phase 2 obligations, which include (among other things) the following:

Phase 2 Obligations. BCBC shall be responsible for the following during the Operation & Maintenance Phase (the "***BCBC Phase 2 Obligations***" and together with BCBC Phase 1 Obligations, "***BCBC Obligations***"):

(a)     Hosting MineOne's digital currency mining Facilities.

(b)     Management of daily operations of the Facilities, including all budgeted

maintenance and basic engineering (to include power management, ensuring internal loss of power and scheduled and unscheduled outage is minimized, that all facilities work properly, provide basic status checks on miners and plan and implement regular maintenance of Facilities and Miners in accordance with sound operating procedure) and other support to ensure the Miners are capable of operating at full nameplate capacity.

(c)   Full time security of the Facilities, including maintaining and monitoring CCTV and security cameras that can be accessed remotely by MineOne and Terra.

(d)   Contracting all insurance coverage to ensure a safe work environment for its employees and Subcontractors (if any) in compliance with occupational health and safety regulations.

(e)   Repairing (if possible) and exchanging damaged Miners after consultation with MineOne and Terra.

(f)   Maintaining records of all transactions and events in the Facilities including all scheduled and unscheduled outages and curtailments.

(g)   Preparing the Budget with Terra in consultation with MineOne.

(h)   Hiring personnel or Subcontractors needed to ensure that MineOne's operations are always conducted properly and efficiently.

(i)   Providing Terra with all information in relation to the Facilities, the Miners, the Containers and operations generally as and when requested.

(j)   Supplying information to Terra regarding any potential problems in terms of services, operations or any potential action that can affect the Miners.

(k)   Tracking daily all costs and expenses for the Power Supply and evaluate and secure lower price supply and coordinate with Terra to ensure the Power Supply tariff and fees paid are the most favorable and cost-efficient.

(l)   Providing any other operational activities reasonably required by MineOne in consultation with BCBC and/or Terra.

(m)   Payment of all operation and maintenance costs ("***O&M Costs***") specified in the Budget as and when the same fall due.

37.   MineOne Wyoming Data Center repeats and realleges the allegations set forth Paragraphs 1 through 36 above as if fully set forth herein.

38.     MineOne Wyoming Data Center and Plaintiff BCB are parties to the valid and binding DHS Agreement.

39.     MineOne Wyoming Data Center has complied with all of its obligations under the DHS Agreement.

40.     BCB breached its obligations under the DHS Agreement.  BCB gave no notice to Defendants before stopping work on the project and facilities and did not cooperate in an orderly transition of the work, including the status of work and vendors.  Instead, BCB walked off the job, refused to communicate with Defendants, and ran to the courthouse with no default or other notice to Defendants.

41.     BCB does not have (among other things) the necessary digital crypto currency/Bitcoin experience, sophisticated computer and other technical know-how and expertise to properly perform and complete its obligations under Phase 1 (which it abandoned) or Phase II.

42.     MineOne Wyoming Data Center is excused from further performing its contractual obligations under the DHS Agreement because of the material breaches of BCB.

43.     As and from BCB's anticipatory repudiation and material breach of the DHS Agreement with MineOne Wyoming Data Center, MineOne Wyoming Data Center has suffered, and will continue to suffer in the future damage to MineOne Wyoming Data Center's reputation in the Bitcoin mining industry and significant monetary damages at the subject facilities in Wyoming.

44.     By reason of the foregoing breaches of contract and anticipatory repudiation of the contract, Plaintiff BCB is liable to MineOne Wyoming Data Center for monetary damages on its First Counterclaim in an amount to be determined at trial, which amount is no less than $40,000,000, together with interest incurred.

**DEFENDANTS' SECOND COUNTERCLAIM**
**(Legal Fees Pursuant to Contract)**

Defendants, as for their Second Counterclaim against BCB allege as follows:

**FACTUAL BACKGROUND**

1.      On or about May 3, 2023, BCB filed its instant Complaint against Defendants in the Federal District Court of Wyoming in the above-captioned matter.

2.      Prior to Plaintiff's May 3, 2023 filing, Plaintiff filed a separate action and Complaint against Defendants in the Wyoming Chancery Court. Plaintiff's Chancery Court Complaint has been dismissed and Defendants are the prevailing parties therein.

3.      Plaintiff's current claims stem, in part, from an agreement between MineOne Wyoming Data Center and Plaintiff to build and operate two Bitcoin mining facilities in Wyoming.

4.      Defendants' Second Counterclaim arises out of the DHS Agreement. Accordingly, Defendants' Second Counterclaim may be compulsory under Rule 13 of the Federal Rules of Civil Procedure.

5.      Plaintiff BCB alleges in its Complaint that this Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship amongst the parties and because the amount in controversy exceeds $75,000.

6.      Plaintiff BCB alleges in its Complaint that MineOne Wyoming Data Center has purposefully availed itself of Wyoming through its efforts at the Bitcoin mining facilities, thus granting this Court personal jurisdiction over MineOne Wyoming Data Center.  The same efforts by MineOne Wyoming Data Center and Plaintiff at those facilities are involved in this Second Counterclaim.

7.     Venue for MineOne Wyoming Data Center's Counterclaims is proper in this district pursuant to 28 U.S.C. § 1391, should the Court determine that this venue is proper and not inconvenient.

8.     On June 9, 2022, MineOne Wyoming Data Center and Plaintiff entered into the DHS Agreement, pursuant to which Plaintiff was to provide "certain project management and operation and maintenance services" at two digital currency mining facilities that MineOne Wyoming Data Center planned to develop and build and have fully operational by August 2022, and October 2022 at the latest.

9.     Of relevance to the Second Counterclaim, Paragraph 18 of Article X of the DHS Agreement provides that:

> [i]n the event of any arbitration, litigation or other dispute between the parties in connection with the interpretation, performance or enforcement of this Agreement, the prevailing party…shall be entitled… to be reimbursed by the non-prevailing Party for all costs and expenses…including, without limitation, arbitration fees, court costs, expert witness fees, investigation costs and attorneys' fees and disbursements, incurred therein by such prevailing party….

10.    The parties' dispute first arose when the mining facilities were not close to being operational in August 2022 (as promised by BCB), and MineOne Wyoming Data Center learned that Plaintiff had breached the DHS Agreement by failing to fulfill all of its duties and responsibilities thereunder and that Plaintiff (and its members) did not have the necessary and promised experience, knowledge, and technical expertise to oversee and manage the building and/or operation of a digital currency mining facility, as they were required to do under the DHS Agreement.

11.    When MineOne Wyoming Data Center brought its concerns to Plaintiff about Plaintiff BCB's inability to perform and successfully complete and operate the Bitcoin mining facilities, Plaintiff BCB responded defensively claiming that it could complete the project on time,

outside forces were causing the delay, and it would expedite completion so the mining operations could commence as soon as possible, but in no event later than October 2022.

12.     Ultimately, MineOne Wyoming Data Center was forced to retain counsel in connection with Plaintiff's breaches of contract and misconduct under the DHS Agreement and MineOne Wyoming Data Center's legal fees have continued to mount.

13.     MineOne Wyoming Data Center's legal fees and costs have further increased now that Plaintiff commenced a second action in a bad faith effort to beat MineOne Wyoming Data Center to the courthouse.

14.     Defendants repeat and reallege the allegations set forth above in the First and Second Counterclaims as if fully set forth herein.

15.     MineOne Wyoming Data Center and Plaintiff BCB are parties to the valid and binding DHS Agreement.

16.     The DHS Agreement contains a prevailing party provision which entitles MineOne Wyoming Data Center to recoup its legal fees and associated costs in the event it prevails in litigation.

17.     MineOne Wyoming Data Center has complied with all of its obligations under the DHS Agreement.

18.     Plaintiff's claims in this litigation lack any merit and Plaintiff BCB will not prevail. Plaintiff BCB's Chancery Court action has been dismissed and MineOne Wyoming Data Center is the prevailing party in that action and is thus entitled to all of its reasonable legal fees, disbursements and costs.

19.     MineOne Wyoming Data Center has been forced to retain legal counsel and incur significant legal costs to investigate Plaintiff BCB's claims and to defend itself against Plaintiff's unmeritorious allegations and claims.

20.     By reason of the foregoing, Plaintiff BCB is liable to Defendants, including MineOne Wyoming Data Center, in an amount to be determined at trial, together with interest incurred in connection with its enforcement of the terms of the DHS Agreement.

## DEFENDANTS' THIRD COUNTERCLAIM
(Alter Ego Liability)

Defendants, as for their Third Counterclaim against BCB allege as follows:

1.     Upon information and belief, Plaintiff BCB's members Michael Murphy, Emory Patterson, IV, Neil Phippen, BCB Ventures, LLC, CMV Global, LLC, Bryce Fincham, and Bayview Capital Investments, LLC are alter egos of Plaintiff BCB.

2.     Upon information and belief, the individual members of Plaintiff BCB influenced and governed Plaintiff BCB in such a manner that there is a unity of interest and ownership in Plaintiff BCB, and the separateness of each member and Plaintiff BCB has ceased to exist.

3.     Upon information and belief, BCB Ventures LLC has identical members to Plaintiff BCB, including Michael Murphy, Neil Phippen, and Emory Patterson, IV.

4.     Upon information and belief, the entity members were utilized as an instrumentality or conduit for a single venture, the development and operation of two Bitcoin mining sites in Cheyenne, Wyoming.

5.     Adherence to the fiction of the separate existence of the LLC under these circumstances would promote injustice or sanction a fraud.

6.      By reason of the foregoing, the members of Plaintiff BCB are liable to Defendants for damages related to Counterclaim One and Two, in an amount to be determined at trial, together with interest incurred in connection with its enforcement of the terms of the DHS Agreement.

**WHEREFORE**, Defendants, including MineOne Wyoming Data Center, request that this Court grant judgment against Plaintiff BCB for monetary damages of $40,000,000, the costs of defending this suit, any prior suits, and any legal fees, costs, and disbursements associated therewith, in an amount to be determined at trial, together with interest, and disregard the separate existence of Plaintiff BCB, holding its alter egos liable for the monetary damages, costs, and fees, and granting such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request:

a.      That the Court enter judgment against the Plaintiff dismissing Plaintiff's action in its entirety and with prejudice; and

b.      That Plaintiff take nothing by way of its Complaint; and

c.      That Defendants, on their First Counterclaim, be awarded monetary damages in an amount to be determined by the Court, but in no event less than $40,000,000; and

d.      That Defendants, on their Second Counterclaim, be awarded the costs of defending this suit, the Chancery Court suit, and MineOne Wyoming Data Center's investigation into all claims made by BCB Wyoming LLC, including reasonable attorneys' fees and other disbursements pursuant to the operative contracts and law;

e.      That the Court disregard the separate existence of Plaintiff BCB and hold each of its members individually liable for the damages resulting from the First and Second Counterclaims, including monetary damages in an amount to be determined by the Court and costs, attorneys'

fees, and other disbursements pursuant to the operative contracts and law, together with interest; and

      f.      For such other and further relief as the Court deems just and proper.

Dated: September 29, 2023

               HATHAWAY & KUNZ, LLP

By: _____

Sean Larson, Esq.
HATHAWAY & KUNZ, LLP
2515 Warren Ave
Cheyenne, WY 82003
Telephone:  (307) 634-7723
Fax:  (307) 634-0985
slarson@hkwyolaw.com

LOEB & LOEB LLC

By: _____

Paula K. Colbath, Esq. (Pro Hac Vice
Forthcoming)
Sarah Levitan Perry, Esq. (Pro Hac Vice Forth
coming)
345 Park Avenue
New York, NY  10154
Telephone: 212-407-4905
Fax: 212-407-4990

*Attorneys for Defendants*

*MINEONE WYOMING DATA CENTER LLC, a
Delaware limited liability company;
MINEONE PARTNERS LLC, a Delaware
limited liability company; TERRA CRYPTO
INC., a Delaware corporation; BIT ORGIN,
LTD, a Cayman Island Company;*

*SONICHASH LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants.*

## CERTIFICATE OF SERVICE

This is to certify that on the 29th day of September 2023, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Patrick J. Murphy | [ x ] CM/ECF |
| Scott C. Murray | [ x ] U.S. Mail |
| Williams, Porter, Day & Neville, P.C. | [   ] Fax: |
| 159 N. Wolcott., Suite 400 | [   ] E-mail: |
| Casper, WY 82601 | |

Hathaway & Kunz, LLP