Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net
           smurray@wpdn.net

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company,

    Plaintiff,

v.

MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants.

    Defendants.

)))))))))))))))))))))))))

Civil Action No. 23-CV-79-ABJ

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, ANTICIPATORY REPUDIATION OF CONTRACT, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, *ALTER EGO* LIABILITY, ENTERPRISE LIABILITY, AND LOST PROFITS AND MONEY DAMAGES

---

**COMES NOW** Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain, through its counsel, Patrick J. Murphy and Scott C. Murray of Williams, Porter, Day & Neville, P.C., and for its first amended Complaint for breach of contract, anticipatory repudiation of contract, intentional interference with contractual relations, *alter ego* liability, enterprise liability, lost profits and money damages ("First Amended Complaint") against Defendants MineOne Wyoming Data Center LLC ("MineOne Wyoming"), MineOne Partners LLC ("MineOne Partners"), Terra Crypto, Inc. ("Terra"), Bit Origin, Ltd ("Bit Origin"), SonicHash LLC ("SonicHash," together with MineOne Wyoming, MineOne Partners, Terra, and Bit Origin, "MOTBO"), BitMain Technologies Holding Company ("Bitmain Holding"), Bitmain Technologies Georgia Limited ("Bitmain Georgia," together with Bitmain Holding, "Bitmain"), and JOHN DOE Defendants 1-18, hereby asserts and claims as follows.

## I.     INTRODUCTION

In July 2021, Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB") set out with ambitious plans to develop and operate one of the largest Bitcoin mines in the United States. This required securing a heavy load of consistent low-priced electrical power, the most critical input to running a successful Bitcoin mining operation. Recent legislation and a newly enacted power tariff, combined with Plaintiff's Wyoming roots and desire to create local jobs, drew Plaintiff to Wyoming. In September 2021, Plaintiff participated in a competitive Request for Proposal ("RFP") from Black Hills Energy ("BHE") for electrical power located around Cheyenne, Wyoming. Plaintiff's months of entrepreneurial hard work paid off—its submission came out on top, ahead of some of the largest Bitcoin companies in the world.

Over the ensuing eight months, Plaintiff negotiated a Power Purchase Agreement (PPA) with BHE, put multiple land parcels under contract (one of which required an economic development proposal for Cheyenne LEADS) across two sites, initiated site plans for those parcels,

identified key project resources, and worked to secure financing to complete a development project of this magnitude.

On June 9, 2022, Plaintiff entered into the **Development, Hosting & Services Agreement** ("DHS Agreement") and Side Letter with Defendant MineOne Wyoming to execute on the development opportunity, which included building and operating two Bitcoin mining facilities: North Range and Campstool, both in Laramie County, Wyoming.  On the same day, Defendant MineOne Wyoming required that Plaintiff enter into the **Consultancy Services Agreement** ("CS Agreement") with Defendant Terra, whereby Defendant Terra would provide consulting services (based on its experience and expertise building and operating other Bitcoin mining facilities) to Plaintiff to assist with the project.

Defendant MineOne Wyoming desired to own the development opportunities and pioneering work performed to date by Plaintiff BCB. Defendant MineOne Wyoming recognized value in, and desired to retain, Plaintiff's services to develop and operate the two facilities based upon Plaintiff's local relationships (including that with BHE), its expertise in the specific PPA deal structure, and the progress to date on the developments. As such, the parties struck an agreement in which Defendant MineOne Wyoming would finance and own the developments, and Plaintiff would provide services over two distinct phases of the project: the implementation phase ("Phase 1") and the operating phase ("Phase 2").

Defendant MineOne Wyoming was unwilling to pay upfront for Plaintiff's prior work to develop the opportunity.  Instead, Defendant MineOne Wyoming desired, and Plaintiff agreed, that payment for Plaintiff's work performed up to that point to develop and provide the opportunity to MineOne Wyoming would be spread out over the operating phase (Phase 2) after the implementation phase (Phase 1) was complete. Plaintiff also agreed to a below market rate for the implementation phase (Phase 1) in return for consultancy services provided by Defendant Terra

and with Defendant MineOne Wyoming's contractual promise of the additional funds being incorporated into and spread out over the operating phase (Phase 2), where Plaintiff would host and operate Defendants MOTBO's self-owned bitcoin mining computers at the facilities.

In June 2022, Defendant MineOne Wyoming purchased the land for the North Range facility. From June 2022 to December 2022, Plaintiff worked diligently on the North Range facility to perform its Phase 1 implementation obligations required by the DHS AGREEMENT despite numerous setbacks and delays on the project caused by third parties not within the control of Plaintiff. The third-party setbacks and delays were primarily driven by failures and errors of two companies: CEGEN Green Energy Ltd ("CEGEN"), a Canadian-based company, and Shermco Industries, Inc. ("Shermco"), a Texas-based company. Defendants selected and contracted with both CEGEN and Shermco. CEGEN and Shermco were responsible for all aspects of Phase 1 construction and delivering the North Range facility, namely, all engineering, site work, data center construction, and construction management.

However, despite all of Plaintiff's hard work and performance, in December 2022, Defendants sent Huaili ("Wiley") Zhang and his team, unannounced, to North Range and began encroaching on Plaintiff and its ability to perform its duties.

At the same time, executives of Defendants MOTBO told Plaintiff they were now working with Defendant Bitmain. Defendant Bitmain's bitcoin spin off company, Bitdeer, lost the Black Hills Energy Request For Proposal (RFP) to BCB's founding members (Michael Murphy, Emory Patterson, and Neil Phippen). Defendant Bitmain is the largest bitcoin mining hardware manufacturing company in the world. Defendant Bitmain began imposing its will. Defendants MOTBO began advocating for Defendant Bitmain's interests. Defendant Bitmain wanted to change the site plans for Campstool from an "air-cooled facility" to a "hydro facility" (to host Bitmain's hydro miners). Defendants MOTBO informed Plaintiff the North Range site would now

be a "hosted site" to host Defendant Bitmain's bitcoin mining computers, not a "self-mining site" for Defendants MOTBO's bitcoin mining computers, as previously planned.

In January 2023, Defendant MineOne Wyoming and Defendant Bitmain Georgia signed the **Service Framework Agreement** ("SF AGREEMENT") between themselves – without involving Plaintiff — providing for Defendant MineOne Wyoming to host thousands of Defendant Bitmain's bitcoin mining computers at North Range. The (redacted version) SF AGREEMENT IS attached hereto, marked as "**Exhibit A**," and incorporated herein by reference. In February 2023, Defendants shipped thousands of bitcoin mining computers to Cheyenne and in March installed the bitcoin mining computers at the North Range facility.

Between December 2022 to March 2023, Defendants sent additional personnel to North Range and conducted a subversive and sophisticated takeover.  Defendants' personnel taking over the site were Chinese foreign nationals and out of state temporary workers, not the local hires Plaintiff had been employing and planning to hire as Phase 2 ramped-up. Defendants made statements to Plaintiff they were there to "take control" and replace Plaintiff as operators in Phase 2 of the project at North Range. Defendants took actions to direct and control on-site work and continuously sought to interfere and override Plaintiff's contractual obligations.

Despite the statements and actions by the Defendants' on-site personnel, Plaintiff continued to perform its contractual obligations, and it did so without being paid. Plaintiff also completed the due diligence and development work required to effectuate the opportunity for Defendants to purchase the Campstool parcel, including obtaining approvals from the municipality and business park association, such that Defendants could close on the land purchase and proceed with Phase 1 at Campstool.

On March 3, 2023 – just as the challenging implementation phase (Phase 1) at North Range was completing and the profitable operating phase (Phase 2) was about to begin – Defendants

MOTBO informed Plaintiff that Defendant Bitmain didn't want Plaintiff to be the site manager and operator. On March 7, 2023, Defendants MOTBO said Defendant Bitmain "want you [Plaintiff] out. Completely." Defendants informed Plaintiff that Defendants wanted to "end" or "change" the DHS AGREEMENT — that Defendants now wanted a new contract or an amendment to the original DHS AGREEMENT to reduce Plaintiff to a "minimal role" where "basically you [Plaintiff] don't do anything." Defendants MOTBO informed Plaintiff that "Wiley [Mr. Zhang] and his team" – including Defendant Bitmain's representatives – would be the site managers and operators going forward and that Mr. Zhang and his team would "replace BCB's [Plaintiff's] team." Defendants MOTBO informed Plaintiff that Plaintiff would not be allowed to perform Plaintiff's contractual Phase 2 services as site operator at North Range, and that Plaintiff "should not worry" (even though Plaintiff was going to be given a greatly reduced scope of work for greatly reduced compensation). On March 9, 2023, with eight foreign nationals at North Range working for Defendants – and directing Defendants' team of temporary workers — Defendants told Plaintiffs their plan was to take control of the site, and that Defendants' leadership had made the decision.

On March 13, 2023, Defendants emailed Plaintiff with a proposed amendment to the original DHS AGREEMENT that further detailed, documented, and confirmed the March 7, 2023 phone call and March 9, 2023 on-site actions and discussions. The proposed amendment also indicated Plaintiff would not be allowed to perform the implementation (Phase 1) and operation (Phase 2) of the Campstool site, even though Plaintiff had developed that opportunity over the course of the preceding one and a half years and received all approvals required for Defendants MOTBO to execute on that site. Further, the proposed amendment tied the remaining money owed by Defendant MineOne Wyoming to Plaintiff for the implementation (Phase 1) at North Range to

the Plaintiff signing the proposed amendment, even though Plaintiff had earned and invoiced Defendant MineOne Wyoming for a majority of those funds.

At no time prior to Defendants filing their 7/3/23 *Answer and Counterclaims* did Defendants MOTBO ever say – or even suggest – that  Plaintiff breached its DHS AGREEMENT with MineOne Wyoming and, indeed, Plaintiff has not breached its DHS AGREEMENT with MineOne Wyoming.  Rather, Defendants MOTBO indicated that several of Defendant MineOne Wyoming's other contractors breached their respective agreements with Defendant MineOne Wyoming and that Defendants MOTBO wanted Plaintiff's assistance to help Defendants MOTBO recover damages from those other parties.

Ultimately, Plaintiff deferred upfront compensation for all of its work creating the development opportunities, including its work and efforts in securing the PPA with BHE, and accepted a below market rate for the implementation phase (Phase 1) at both the North Range site and Campstool site, because Plaintiff would make its money for that prior work during the operating phase (Phase 2) at both North Range and Campstool.  Defendants, due to no fault of the Plaintiff, have now denied the Plaintiff the following:

- Plaintiff's contractual right to complete the Phase 1 implementation of the first 45MW of power at the North Range site and to be paid for these services (the majority of which have already been rendered and are unpaid by Defendant MineOne Wyoming);

- Plaintiff's contractual right to operate the Phase 2 hosting of the first 45MW of power at the North Range site, and to be paid for these services (including bonuses);

- Plaintiff's contractual right to participate in the Phase 1 implementation of the first 30MW of power at the Campstool site;

- Plaintiff's contractual right to operate the Phase 2 hosting of the first 30MW of power at the Campstool site, and to be paid for these services (including bonuses);

- The ability to participate in Phase 1 and Phase 2 of the anticipated, expected, and planned power expansions at both North Range and Campstool (which Defendants have represented and/or taken actions to begin implementing after removing Plaintiff from the project). Plaintiff laid the groundwork for these expansions with Black Hills Energy, and later Defendants MOTBO, before and during the term of the DHS AGREEMENT. Defendants have the opportunity to execute on these power expansions only because of the work and relationship of Plaintiff. Had Defendants not wrongfully removed Plaintiff from the project, Plaintiff would have capitalized on the value of the power expansions (either on its own, with Defendants, and/or with another third party).

- The ability to operate the largest Bitcoin mining operation in Wyoming (an opportunity Plaintiff created), which will have an impact on Plaintiff's fundraising and development of future opportunities in kind (as Plaintiff having sites under management and/or operations demonstrate to the industry its credibility and success with which Plaintiff would use to generate more business income and opportunities).

## II.    PARTIES, JURISDICTION AND VENUE

1.     Plaintiff BCB Cheyenne LLC ("BCB") is a Wyoming limited liability company formed and filed in the State of Wyoming and authorized to do business in Wyoming.

2.     Plaintiff BCB has seven members:  Michael Murphy, Emory Patterson IV, Neil Phippen, BCB Ventures LLC, CMV Global, LLC, Bayview Capital Investments, LLC, and Bryce Fincham.  Michael Murphy lived in Casper, Wyoming until he went to the University of Notre

Dame in 2000; currently, and for the last thirteen years, Mr. Murphy is a resident and citizen of Colorado.

3.     Emory Patterson IV is a resident and citizen of Illinois.

4.     Neil Phippen is a resident and citizen of Colorado.

5.     The three members of BCB Ventures LLC are Michael Murphy (Colorado), Neil Phippen (Colorado), and Emory Patterson IV (Illinois).

6.     The only two members of Bayview Capital Investments, LLC, a Wyoming limited liability company, are James Quid and Jessica Quid, both of whom are Illinois residents and citizens.

7.     There are multiple members of CMV Global, LLC, each of whom are domiciled in states completely diverse from Defendants' members' domiciles. *See* Doc. 42.

8.     Bryce Fincham is a resident and citizen of Ohio.

9.     The three Members of BCB – Michael Murphy, Emory Patterson IV, and Neil Phippen – formed BCB in 2021 for the express purpose of developing and operating Bitcoin mining facilities at two then-undeveloped sites near Cheyenne, Wyoming.  BCB then entered into the subject contracts with two of the Defendants – MineOne Wyoming Data Center, LLC and Terra Crypto, Inc. – to effectuate Plaintiff's Bitcoin mining venture at both sites.

10.    Defendant MineOne Wyoming Data Center LLC ("MineOne Wyoming") is a Delaware limited liability company formed and filed with the Delaware Secretary of State's office on May 22, 2022.  Erick Rengifo is the managing member of MineOne Wyoming.  On information and belief, Eric Rengifo is a resident of either New Jersey or New York.  BCB does not presently know if there are other Members of MineOne Wyoming, but, on information and belief, none of its Members are Wyoming residents. On June 16, 2022, one week after MineOne Wyoming Data Center LLC, a Delaware limited liability company, entered into its June 9, 2022 contract with

Plaintiff BCB, MineOne Wyoming Data Center LLC applied for a Certificate of Authority from the Wyoming Secretary of State to transact business in the State of Wyoming. A Certificate of Authority was issued to MineOne Wyoming Data Center LLC on June 16, 2022.

11.     On information and belief, MineOne Wyoming sought authority with the Wyoming Secretary of State to do business in Wyoming, and MineOne Wyoming received permission to do business in the State of Wyoming.

12.     MineOne Wyoming was formed and filed in May 2022 for the express purpose of acquiring, developing, owning, operating, and hosting Bitcoin mining facilities at two then-undeveloped sites near Cheyenne, Wyoming.  MineOne Wyoming entered into the subject DHS AGREEMENT with BCB in June 2022 to effectuate its Bitcoin mining venture with BCB at the North Range Business Park in Cheyenne, Wyoming ("North Range") and in the Campstool Addition in Cheyenne, Wyoming ("Campstool").

13.     Defendant MineOne Partners LLC ("MineOne Partners") is a Delaware limited liability company formed and filed with the Delaware Secretary of State's office on October 13, 2021.  The identity of MineOne Partner's sole member is Jiaming Li, an individual residing in China.  MineOne Partners paid for most, if not all, of the site development, including engineering fees, municipal approval fees, and materials and labor at the North Range and Campstool sites.  Further, in MineOne Wyoming's SF AGREEMENT with Defendant Bitmain Georgia, all payments by Bitmain Georgia to MineOne Wyoming are to be made to the bank account of MineOne Partners.  On information and belief, this is likely due to Defendant MineOne Wyoming not having a bank account, which would be a clear indication of Defendants MOTBO commingling interests and funds on the project and one of many examples of Defendants MOTBO being alter egos of each other.

14.     Defendant SonicHash LLC ("SonicHash") is a Delaware limited liability company. On information and belief, SonicHash has purchased and owns 4,250 high performance Bitcoin miners, 2,490 of which have been delivered to North Range for deployment. SonicHash's sole member is Bit Origin Ltd, a Defendant in this action.

15.     Defendant Bit Origin Ltd ("Bit Origin") is a publicly traded corporation incorporated in the Cayman Islands with its principal place of business in New York. Bit Origin claims it has no material operations of its own.  Bit Origin owns 100% of SonicHash.  Bit Origin claims it has no participation in management or the operation of MineOne Wyoming, however, Defendant Bit Origin, Defendant MineOne Partners and Defendant Terra (with and through a complex web of offshore companies) share or have shared numerous key decision makers, shareholders, and company operators including Haku Du, Iris Li, Dr. Jiaming Li and Dr. Erick Rengifo.  Further, Bit Origin has several shareholders and decision makers on-site, including Huaili ("Wiley") Zhang and Dr. Jiaming Li.  When Plaintiff BCB and Defendant MineOne Wyoming signed their **DEVELOPMENT, HOSTING & SERVICES AGREEMENT** ("DHS AGREEMENT") on June 9, 2022, Bit Origin issued press releases saying *it* was the entity that was doing the Cheyenne Bitcoin project.  On information and belief, Plaintiff believes and asserts that Bit Origin had been operating in China for many years before reverse merging into a public company in the United States (ticker: BTOG).

16.     Defendant Terra Crypto, Inc. ("Terra") is a Delaware corporation with its principal place of business in New York. Defendant MineOne Wyoming required that Plaintiff BCB enter into a **CONSULTING SERVICES AGREEMENT** ("CS AGREEMENT") on June 9, 2022 with Defendant Terra with respect to the subject Bitcoin mining developments because (a) Plaintiff BCB represented to Defendant MineOne Wyoming that it had not built and/or operated a Bitcoin mining facility before and (b) Terra had experience and expertise building and operating other Bitcoin

mining facilities.  Defendant Terra eventually purchased the North Range parcel (635 Logistics Dr) from Defendant MineOne Wyoming in September 2023, and on information and belief, still owns that Wyoming property.  On information and belief, Defendant MineOne Wyoming has not paid Defendant Terra any amounts for rent for Defendant MineOne Wyoming's occupancy and use of the North Range parcel, further indicating these entities are alter egos of each other. Defendants MineOne Wyoming, MineOne Partners, Terra, Bit Origin, and SonicHash are collectively referred to as "MOTBO."

17.     On information and belief, Defendant BitMain Technologies Holding Company ("BitMain Holding") is a company with its headquarters in Beijing China, its principal place of business in Hong Kong, and its registered office in the Cayman islands.

18.     Bitmain Technologies Georgia Limited ("Bitmain Georgia") is a Georgia corporation with its principal place of business in Roswell, Georgia.  Defendant BitMain Holding and Defendant Bitmain Georgia are collectively referred to as "Bitmain."

19.     Each and all of the MOTBO Defendants, and the JOHN DOE Defendants, are related companies and individuals who control, direct and/or dictate how Defendants MineOne Wyoming and Terra act and manage their agreements with Plaintiff BCB.  The extent and level of the MOTBO Defendants' control and direction over MineOne Wyoming and Terra is so pervasive that each of the MOTBO Defendants' acts and omissions are imputed to each and all of the MOTBO Defendants, and each MOTBO Defendant is an *alter ego* of the other MOTBO Defendants, and each MOTBO Defendant is jointly, severally and vicariously liable for the breaches of each of the MOTBO Defendants. MOTBO Defendants are *alter egos* of each other. Through their actions, the MOTBO Defendants have lost or forfeited their corporate separateness.

20.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship.

21.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.000), exclusive of interest and costs in conformity with the provisions of 28 U.S.C. § 1332(a).

22.     This Court has *in personam* jurisdiction over the Plaintiff and all Defendants.  All of these are doing business in Wyoming (with the Defendants now operating and further expanding the North Range site, and developing the Campstool site, without Plaintiff's involvement).  All Parties have the requisite minimum contacts with Wyoming to establish this Court's *in personam* jurisdiction over them pursuant to WYO. STAT. § 5-1-107 and the Due Process Clause of the United States Constitution.  All of them have purposefully availed themselves of doing business in Wyoming.

23.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts and omissions giving rise to Plaintiff's claims occurred in Wyoming.  Additionally, pursuant to 28 U.S.C. § 1391(c)(3), venue is proper for foreign Defendants as "a defendant not resident in the United States may be sued in any judicial district…"

24.     Venue in this district is further proper pursuant to 28 U.S.C. § 1391(b)(2) because the Parties' two Bitcoin mining sites are located in Laramie County, Wyoming; all of the Bitcoin mining computers are in Laramie, County, Wyoming; representatives of Plaintiff BCB, Defendant MineOne Wyoming and Defendant Terra and representatives of the other Defendants have often met and worked at the North Range site during the course of its construction from October 12, 2022 – March 13, 2023; MineOne Wyoming purchased the North Range parcel, which it later sold to Terra; and MineOne Wyoming purchased the Campstool parcel.  Additionally, pursuant to 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district…"

25.     On March 15, 2023, Plaintiff filed suit against four of the named Defendants, as well as against other related companies. Plaintiff filed its suit in the Wyoming Chancery Court. *See BCB Cheyenne LLC v. MineOne Wyoming Data Center, LLC et al.,* Docket No. CH 2023-0000006, In the Chancery Court, State of Wyoming. Plaintiff achieved service of process on three of the Defendants in that Chancery Court suit: MineOne Wyoming Data Center, LLC; SonicHash, LLC; and Bit Origin, Ltd.  Plaintiff did not achieve service on the other three named Defendants in that Chancery Court suit: Terra Crypto, Inc.; MineOne Cloud Computing 1 LP; and MineOne Partners Limited. On May 2, 2023 – the answer date for Defendants MineOne Wyoming Data Center, LLC and SonicHash, LLC – those two defendants filed an *Objection to Proceeding in Chancery Court* ("*Objection to Chancery Court*") and *Limited Entry of Appearance* of their Wyoming Counsel, Sean Larson. The thrust of their *Objection to Chancery Court* is that they have the absolute right to opt-out of Wyoming Chancery Court pursuant to Rule 3(a) of Wyoming Rules of Civil Procedure for the Chancery Court, which state in relevant part as follows:

> (a) *Original Filing in Chancery Court*. A civil action is commenced in the chancery court when service is completed upon all defendants, pursuant to Rule 4. A civil action is "brought" for statute of limitations purposes upon filing the initial pleading in chancery court. ***If any party files an objection to having the matter proceed in chancery court on or before the date its first pleading is due, the chancery court <u>shall</u> enter its order dismissing the case without prejudice.*** An objection to proceeding in chancery court is waived if not brought within the time periods in this rule. A dismissal of a case in chancery court is subject to W.S. § 1-3-118. Notwithstanding any objection brought under this rule, the chancery court may enforce a valid contract designating the chancery court as the forum to resolve disputes meeting the eligibility requirements of W.S. § 5-13-115.

*See* WY R CHAN CT RCP Rule 3 (emphasis added).

26.     Because Defendants have the absolute right to opt-out of the Wyoming Chancery Court, Plaintiff believes Chancery Court Judge Steven Sharp must, and would, dismiss Plaintiff's Chancery Court suit without prejudice. Plaintiff had no viable objection or defense to Defendants' *Objection to Chancery Court*; consequently, the Chancery Court suit was  dismissed.  Anticipating

the imminent dismissal of the Chancery Court suit, Plaintiff filed this suit in the Wyoming Federal District Court on May 3, 2023.

### III.    FACTS COMMON TO ALL CLAIMS

27.    Defendant MineOne Wyoming, a Delaware limited liability company, is in the business of acquiring, developing, owning, operating, and hosting digital asset mining facilities (Bitcoin mining).

28.    Plaintiff BCB, a Wyoming limited liability company, is in the business of securing power opportunities, land entitlement, development, and providing operation, maintenance, and hosting of digital mining services through its use of certain software, infrastructure, and utilities required for the mining of digital assets.

29.    Before BCB entered into its DHS AGREEMENT with MineOne Wyoming on June 9, 2022, BCB had already won a highly competitive bidding process with Black Hills Energy ("BHE") against some of the largest transnational Bitcoin mining companies in the world (including YZY Capital, a Chinese company represented in Wyoming by Hathaway and Kunz, LLP).  As the winner of that bidding process, BCB then negotiated and signed a valuable Power Purchase Agreement ("PPA") with BHE effective February 22, 2022.

30.    The PPA required that BHE would make available – through a special energy tariff (the Blockchain Interruptible Service Tariff (the "BCIS Tariff")) – consistent and long-term electricity needed to operate future mining facilities at the North Range Business Park ("North Range") and the Campstool Business Park ("Campstool") located in/near Cheyenne, Wyoming.

31.    BHE still had additional capacity represented in their RFP process that BCB planned to further pursue with additional site expansions upon successful completion of Phase 2 at the North Range Site and the Campstool Site.

32.     At the time, the North Range site alone represented the largest Bitcoin mine in Wyoming.  The North Range site and Campstool combined represented one of the largest Bitcoin mines in the United States.

33.     Defendants' business requires large amounts of electrical power, and needed the electricity contractually promised to BCB by BHE to energize and operate the North Range and Campstool Sites.

34.     Without BCB's contract with BHE to provide large scale industrial electricity to BCB, none of the Defendants had access to, or contracts for, large scale electricity needed to power and operate either the North Range or Campstool sites.

35.     Before Defendants ever came to Wyoming, BCB worked to develop relationships and obtain the land contracts, entitlements, easements, and other approvals to operate mining facilities for the North Range and Campstool sites. Defendants did not have or possess any property rights, reputational standing, or have any relationships with BHE, other companies, the City of Cheyenne, Laramie County, or the State of Wyoming needed to build and operate a large scale Bitcoin mine in Wyoming.

36.     Defendants needed the land, property rights, easements, and the large-scale electrical power that BCB had acquired through its work, business operations, and business relationships. The large-scale power Defendants needed to operate their business in Wyoming at a competitive market price was available only from BHE under the BCIS Tariff at substations in the North Range and Campstool Business Parks.

37.     The electrical power Defendants need to operate large scale Bitcoin mines is difficult, challenging, and very competitive to acquire at a price needed to conduct business.

38.     BCB acquired the right to power from BHE through a negotiated PPA that allowed Defendants to conduct business in Wyoming. Without BCB, Defendants would not have been able to come to Wyoming and operate their large scale Bitcoin mining business.

39.     On November 2, 2021, BCB submitted an economic development proposal to Cheyenne LEADS for the purchase of the property at 635 Logistics Drive (the "North Range Parcel").

40.     On December 6, 2021, BCB submitted an updated economic development proposal to Cheyenne LEADS for purchase of the North Range Parcel and to show its intent to bring jobs and benefit to the local community.

41.     Over the course of the next six months, BCB met with the City of Cheyenne, the Cheyenne Mayor's Office, Cheyenne Chamber of Commerce, University of Wyoming faculty, and Laramie County Community College faculty to raise community awareness for the project and develop pipelines to local hiring initiatives once Phase 2 began. BCB's intention from the beginning was to hire local employees, and committed to Cheyenne LEADS this would not be a situation where foreign nationals or out-of-state workers would take local jobs. In all, BCB estimated it would create 40+ temporary construction jobs for Phase 1 and had hoped to hire 12-15 local full time jobs during Phase 2.

42.     On March 9, 2022, BCB provided Defendants MOTBO with access to a shared drive created for the purpose of document management as the parties evaluated the opportunity.

43.     Over the next several months, BCB and Defendants MOTBO exchanged information and had discussions about the opportunity.

44.     On March 26, 2022, Dr. Jiaming Li advised BCB that Defendants MOTBO knew what was required to build Bitcoin mining sites as they have facilities in Georgia (31MW),

Pennsylvania (30MW), Ohio (50MW), and Ontario (25MW with an extension to 100MW). Defendants requested BCB propose exactly what BCB is looking for in a partnership.

45.     On March 28, 2022, as requested by Defendants MOTBO, BCB presented two options for Defendants MOTBO to consider: (a) a joint venture or (b) a buyout. Importantly, Defendants MOTBO would choose over the following two months to retain BCB's services and **<u>not</u>** do a buyout.  If Defendants MOTBO had chosen to do a buyout – and had paid BCB for all of BCB's hard work to date to win the RFP and develop the valuable and highly profitable bitcoin mining project at North Range and Campstool – Defendants MOTBO would have been able to choose the site operator for the North Range site and Campstool site at any time in the future. However, Defendants MOTBO chose to contract with BCB under the DHS AGREEMENT, thus (a) making contractual commitments to BCB (under the terms of the DHS AGREEMENT) for BCB to be the site operator at the North Range site and Campstool site and (b) relinquishing Defendants MOTBO's contractual ability to choose a new site operator (including themselves) for the North Range site and Campstool site in the future.

46.     On April 7, 2022, Defendants MOTBO and BCB met in Cheyenne, Wyoming for a site visit to the North Range site and the Campstool site.

47.     On April 29, 2022, Defendants MOTBO sent BCB due diligence documents showing that Defendants had the requisite assets to fully develop the bitcoin mining projects. Defendants MOTBO represented to Plaintiff and BHE that Defendants MOTBO had their own bitcoin mining computers and Defendants MOTBO would be using their own bitcoin mining computers to "self mine" bitcoin (and not other parties' bitcoin mining computers) to mine bitcoin. Subsequent formal agreements were structured and executed, including the reassignment of the PPA between BCB and BHE to Defendant MineOne Wyoming, based on Defendants MOTBO representing it would be using its own bitcoin mining computers to mine bitcoin at the two sites.

The parties agreed  BCB — and BCB alone – would be providing the service of hosting, managing, and operating the bitcoin mining computers at North Range and Campstool.  On May 3, 2022, BCB provided Defendants with preliminary budgets for the North Range and Campstool sites for review and feedback. BCB expressed its willingness to work with Defendants in the new partnership by providing a project implementation fee lower than the amounts paid to the implementers of Defendants MOTBO's 31MW Georgia deal.

48.     On May 4, 2022, Defendants presented formal agreement documents to Plaintiff. The documents included a Development Hosting Services Agreement (the "DHS AGREEMENT") between MineOne Wyoming and BCB and, additionally, a Consultancy Services Agreement (the "CS AGREEMENT") between Terra and BCB.

49.     On May 13, 2022, Defendants MOTBO provided Plaintiff with proof of bitcoin mining computers and proof of funds to cover the anticipated budgets for the North Range and Campstool opportunities. Plaintiff then shared this information with BHE, along with Defendants' desire for Plaintiff's ongoing contractual participation in Phase 1 implementation and Phase 2 operations, all of which were important considerations in BHE's willingness and decision to assign the PPA from Plaintiff to Defendant MineOne Wyoming.

50.     On May 15, 2022, BCB members Michael Murphy and Emory Patterson traveled to Rapid City, South Dakota to meet with the BHE team in person to discuss and advocate for the assignment of the PPA agreement from BCB to MineOne Wyoming as would be required in the emerging partnership.

51.     On June 2nd, 2022, BCB had a meeting with Defendants at 10:30 am to finalize contract terms and conditions between MineOne Wyoming, BCB, and Terra.

52.     On June 2nd, 2022, Erick Rengifo sent an email titled "Last Documents for Agreement" and expressed intent to sign the following day.

19

53.     On June 8, 2022, BCB provided BHE with an "Entity Obligations" document outlining MineOne Wyoming's and Terra's roles and responsibilities for Phase 1 and Phase 2 of the project.  It clearly states that BCB would be the host and operator.  This document was created based on the language in the agreements.

54.     Also on June 8, 2022, Betsey Hale, the CEO of Cheyenne LEADS, sent an email asking about the connection between MineOne Wyoming and Bit Origin.

55.     On June 9, 2022, MineOne Wyoming and Cheyenne LEADS signed the Agreement for Purchase and Sale of Real Estate for 635 Logistics Drive. This agreement was based on BCB's Agreement for Purchase and Sale of Real Estate for 635 Logistics Drive that it had previously negotiated with Cheyenne LEADS.  BCB assisted the parties in going under contract.

56.     On June 9th, 2022, BCB sent notice to BHE that MineOne Wyoming and BCB had reached an agreement and would be ready for BCB to assign the PPA to MineOne Wyoming the following day.

57.     On the same day, Plaintiff BCB and Defendant MineOne Wyoming signed (1) the DHS AGREEMENT and (2) the Side Letter.  And Plaintiff BCB and Defendant Terra signed the CS AGREEMENT.

58.     Also on June 9, 2022, BHE and BCB signed a document assigning the PPA (with several important modifications BCB had negotiated into the PPA on behalf of Defendant MineOne Wyoming) from BCB to MineOne Wyoming.

59.     On June 13, 2022, BCB received official approval (Approved Site Plan & Certificate of Review) from the Laramie County Department of Planning and Development for the North Range development to move forward.

60.     On June 16, 2022, BHE notified BCB that MineOne Wyoming had violated its PPA with BHE by issuing a public press release without approval of both parties.  Not only that, but the

press release indicated that Bit Origin had secured the PPA in Cheyenne, Wyoming.  The press release did not mention MineOne Wyoming.  This raised questions from BHE since it had signed a PPA with MineOne Wyoming (not Bit Origin).   It also demonstrates how the MOTBO Defendants are alter egos of one another.

61.    On June 17, 2022, BCB provided MineOne Wyoming with notice from BHE that BHE was concerned with Bit Origin's involvement and requested an immediate meeting to control the damage. On the same day, Dr. Jiaming Li responded to this concern from his 'China Xiangtai Food Co' email address and downplayed the severity of the violation.  China Xiangtai Food Co later changed its name to Bit Origin Limited.

62.    On June 18, 2022, BCB provided Defendants MOTBO with a detailed comparison of all Mining Container options, including options proposed by Defendants MOTBO, and the associated costs. BCB made it clear that, as the site operator, it would not own these assets at the end of the day, so it was critical the final decision be made by MineOne Wyoming.  Defendants MOTBO evaluated the options over the next month.

63.    On June 22, 2022, Shermco and BCB met to discuss the scope of work Shermco would propose after evaluating the project. Defendant MineOne Wyoming later entered into a Consulting Management Master Service Agreement with Shermco for professional engineering services on July 25, 2022, an Electrical Install Agreement (Purchase Order SIQ-17819-22) on October 26, 2022, and a Construction Management Agreement (Purchase Order SIQ-11754-22) on October 26, 2022.

64.    On July 7, 2022, BCB received pre-approval for a Temporary Use Permit (TUP) for a parcel of state land in proximity to the BHE substation at the Campstool Addition.

65.    On July 25, 2022, MineOne Wyoming signed a Simplified Purchase Order Agreement effective July 21, 20022 with CEGEN whereby CEGEN would provide all the modular

data centers for the North Range site. All of the modular data centers were to be delivered, installed, and operational by the end of October 2022.

66.     On July 15, 2022, MineOne Wyoming went under contract with YZY Capital for the purchase of Lot 1 Block 4, Campstool Addition 4th Filing.  This was to be the site for the Campstool Bitcoin mine.

67.     On August 3, 2022, BCB participated in a pre-application planning and development meeting with the City of Cheyenne for the Campstool parcel.

68.     On August 4, 2022, the Wyoming Board of Land Commissioners approved BCB's Temporary Use Permit for three acres of land to the north of the Campstool Parcel.

69.     On August 18th, 2022, BCB received official site plan approval from the Laramie County Department of Planning and Development for North Range.

70.     On September 20, 2022, Plaintiff BCB hired Steven Randall, an exceptionally qualified individual, to serve as Site Manager and Operator for the project. Mr. Randall's job duties were primarily focused on Phase 2 work, but he also actively engaged with the company during Phase 1, contributing his extensive bitcoin mining knowledge and expertise. Mr. Randall was informed of BCB's plan to hire locally, and he supported this initiative. In furtherance of this plan, job postings were published seeking local applicants to join the team and work under Mr. Randall's leadership and operational management.

71.     On September 27, 2022, BHE provided historical pricing data to BCB for MineOne Wyoming.

72.     On September 28, 2022, BCB began facilitation of Defendant Terra's purchase of the North Range parcel from MineOne Wyoming.

73.     On September 28, 2022, BCB received notice from McCluskey & Associates (the fan supplier for CEGEN's modular data centers) that the fans for the modular data centers would

not be on site until late January [2023]. CEGEN had earlier told MineOne Wyoming that if MineOne Wyoming paid the deposit on time for these fans, which MineOne Wyoming did, the fans would arrive on time for the modular data centers to be ready by the end of November [2022].

74.     On September 28, 2022, BCB achieved a Certificate of Review for the Campstool Parcel site plan.

75.     On October 6, 2022, the Wyoming Board of Land Commissioners approved BCB's Special Use Lease on two acres directly north of the Campstool Parcel.

76.     On October 12, 2022, BCB and vendors officially broke ground at North Range.

77.     On October 27, 2022, BCB coordinated a scope of work for a theoretical noise impact assessment for the Campstool Parcel with ENA2 (via CEGEN).

78.     On November 7, 2022, BCB received a concerning email from Betsey Hale, CEO of Cheyenne LEADS.  The email contained a report from Microsoft's National Security team, which had already been sent to the United States Government, which recommended additional research and due diligence on Bit Origin (which it identified as a "Chinese private sector company") due to its Chinese national owners and operators, and the proximity of the North Range site to Microsoft's adjacent campus and the F.E. Warren Air Force base.

79.     On November 9, 2022, BCB again requested fixed/stable power pricing and urged BHE to present a block for purchase to MineOne Wyoming.

80.     On November 14, 2022, Huaili "Wiley" Zhang and an accomplice arrived, unannounced, to the North Range site. Upon arrival, they demanded access to the site. BCB was not informed by Defendants MOTBO that Mr. Zhang and his accomplice were coming to the North Range site nor the purpose of their visit.

81.     On November 16, 2022, BCB and Defendants MOTBO discussed CEGEN's delays and expected cost overruns. BCB, at the direction of Defendants MOTBO, proceeded to structure

a proposed amendment for MineOne Wyoming and CEGEN that would (1) set guaranteed maximum prices for assembly, install, and electrical labor to construct the modular data centers; (2) set guaranteed maximum prices for shipping costs and equipment rentals; (3) tie MineOne Wyoming's payments to CEGEN to CEGEN's performance in achieving key milestones; (4) provide a schedule for the completion of modular data centers that CEGEN would be held accountable to; and (5) provide a payment schedule for electrical supplies needed for CEGEN to achieve the key milestone dates.

82.    On November 29, 2022, BCB suggested to Defendants MOTBO that MOTBO consider renting a warehouse so that some of the laborers could work indoors when the weather was too poor for outdoor work.  This would help speed up assembly of certain components, such as shelving and rain hoods for the data centers. Defendants MOTBO liked this idea and directed BCB to find a warehouse space.  BCB found a warehouse space and Defendant MineOne Wyoming rented it.

83.    On November 29, 2022 BCB achieved a Revised Certificate of Review for the Campstool Parcel site plan.

84.    Unbeknownst to Plaintiff BCB at this time, Defendants MOTBO and Defendant Bitmain had begun conspiring and negotiating a deal between themselves that involved taking over the site operations from Plaintiff BCB. On information and belief, Compliance Status Documents (*e.g.,* project approval documents, power purchase agreement(s), and land title documents) were provided to Defendant Bitmain by Defendants MOTBO on or before December 6, 2022.  On December 14, 2022 Haku Du sent an email saying "Please send me Steve's resume, the planning of operations Crew…we have serious discussions with Bitmain and we need to make sure the service standard can meet their expectations and our expectations." This was the first mention of Bitmain to Plaintiff. The following day Dr. Jiaming Li sent an email referencing Bitmain whereby

Bitmain would only agree to using its software (AntSentry) at North Range. Jiaming Li noted, "our operations team will explain details when they are on site."

85.     On December 15, 2022, MineOne Wyoming and CEGEN signed (1) an amendment to their original agreement from July, (the First Amendment to the Simplified Purchase Order), and (2) a Subcontractor Labor and Material Contract Agreement, both effective December 5, 2022. These agreements provided a road map for the parties to continue moving forward on the project.

86.     On December 15, 2022, Michael Murphy drove to Cheyenne to assist in the unloading of used mining equipment sent from one of Defendants MOTBO's other facilities. North Range was nowhere near ready for energization, and BCB was not expecting the mining equipment to arrive at this point in the project; however, BCB quickly procured storage and security equipment to be ready when the mining equipment arrived on site.

87.     On December 17, 2022, Mr. Zhang and his translator, Ziyao Shao, arrived unannounced to North Range with Cho "Jack" Zhu, two workers from Georgia (Scott and Braden Caffee), and a worker from Jamaica (Chris Wilson).  Mr. Zhang informed BCB – through translation – they were at North Range to oversee construction and help expedite Phase 1.

88.     Mr. Zhang indicated he was a close friend and business confidant of Mr. Lucas Wang, the CEO and Chairman of Bit Origin, and he came to the site "to help." He did not say he was working for MineOne Wyoming or identify any other company he was working for. His statements corroborated the November 14, 2022 email saying Mr. Zhang was overseeing "operations in the Indiana site" and "Mr. Wang sent him."

89.     Mr. Zhang told BCB he would be at North Range until it was energized and Phase 2 began.

90.     Defendants' intentions remained hidden for now as Mr. Zhang inserted himself and his team into the operations and project management at North Range. Defendants and their

operatives began to use a strategy aimed at discrediting BCB and taking over the management, operations, and money tied to the Phase 2 payouts to BCB under the DHS AGREEMENT.

91.     Mr. Zhang told BCB that Mr. Zhu was the site manager for Defendant Bit Origin's site in Indiana. At the time, BCB thought it was strange Defendants were bringing in a site manager from another site when it was BCB's contractual obligation, and right, to conduct Phase 2 operations at North Range under the DHS AGREEMENT.

92.     BCB was unaware at the time that Mr. Zhu had been brought to the site in an effort to undermine Mr. Randall's expertise as the site operator and manager, and initiate a plan to insert Defendants MOTBO into Phase 2 roles and obligations that fell under Mr. Randall's role as the site manager at North Range for BCB.

93.     Mr. Zhang informed BCB that Scott, Braden, and Chris had worked together at Defendants MOTBO's site in Georgia, and were being brought to the site to expedite Phase 1 construction. Scott told BCB he had helped operate Defendants MOTBO's Georgia site.

94.     BCB was now concerned as to the nature of MineOne Wyoming's true intentions, bringing six individuals to the site – three from China, two from Georgia and one from Jamaica – who described themselves as site managers and operators at other Bitcoin mining sites. Site operations and management were not Defendants MOTBO's contractual obligation, right or responsibility — these were BCB's Phase 2 contractual obligations under the DHS AGREEMENT.

95.     The financial payments tied to Phase 2 were the culmination of a tremendous amount of hard work and time by BCB to develop the project and implement Phase 1.

96.     On December 19, 2022 severe weather impacted construction at North Range.

97.     On December 21, 2022 a new record low temperature was recorded in Cheyenne. While Wyoming's winter condition caused delays, major delays were happening due to CEGEN's

failures to procure needed construction materials, build functioning buildings, and perform on its contractual obligations.

98.     On December 22, 2022, BCB began work on the operations and maintenance budget ("Phase 2 Budget") as required by the DHS AGREEMENT.   Neither Defendant MineOne Wyoming nor Defendant Terra asked BCB to work on the Phase 2 Budget.  BCB continued work on the Phase 2 Budget over the remainder of December 2022, and throughout January 2023 and February 2023.

99.     By December 24, 2022, it became evident Mr. Zhang had come to North Range to direct BCB and assume a project management leadership role when he demanded BCB and everyone working at North Range work on Christmas. Mr. Zhang, through his translator, Mr. Shao, told Mr. Patterson that he needs to learn more about the Chinese work ethic. Mr. Zhang then demanded Mr. Randall travel in from Arizona immediately the next day to meet with him, or that BCB fire Mr. Randall as the site operator and manager. BCB communicated such demands were unreasonable to ask on such short notice of Mr. Randall and the construction teams. Construction work continued at North Range with haste on December 26, 2022.

100.     On or around December 27, 2022, Mr. Zhang continued to insert himself, Mr. Zhu, Mr. Shao, Scott, Braden, and Chris into operational, management, and construction work at North Range. Mr. Zhang hired temporary, unskilled laborers to assemble basic building parts (racks and filter hoods) at North Range.

101.     On December 30, 2022, Steve Randall returned to North Range to assess progress and plans for his upcoming role to be the site operator for BCB.

102.     On December 30, 2022, Defendants requested additional information about the water quality at Campstool.  Haku Du sent an email saying "We have been discussing with Bitmain on the cooperation for Phase II Campstool Project." Defendants now indicated it was considering

changing the site plans for Campstool at Bitmain's direction.  Defendants expressed to BCB that Bitmain wanted to do the newest type of Bitcoin mining (Hydro Mining) at Campstool similar to Bitmain's mining site in Washington state. Plaintiff started receiving information requests from Haku Du regarding Bitmain and their increasing interests and influence on operations at North Range and site design changes for Campstool. Defendants MOTBO started acting in an obsequious manner to Defendant Bitmain.

103.    Defendants MOTBO also, and importantly, did not make any indication at this time to BCB it was working with Defendant Bitmain to have Defendants MOTBO assume operations at North Range and remove BCB.

104.    On December 31, 2022 Mr. Randall was ordered into an interview by Mr. Zhang and Mr. Zhu to assess Mr. Randall's skills and ability to perform as the site operator. It was a test — and a trap. Mr. Zhang and Mr. Zhu insulted and degraded Mr. Randall.

105.    These attacks were all part of Defendants' hidden plan: To elevate and insert themselves as the site operators, and to do so, Defendants knew they needed to discredit  and remove Mr. Randall as BCB's site manager and operator.

106.    On January 4, 2023, BCB hired Sean Murphy for a two-month contract to serve as the Site Administrator. Sean Murphy lives locally in Cheyenne and is active in the local community and State Legislature. Sean Murphy's primary role was to do everything in his power to help expedite Phase 1 including project client support, scheduling, reporting, documentation, government relations, and to be on-call for any ad-hoc requests or high priority tasks or projects.

107.    CEGEN only had one team member, Chad Dalziel, on site at North Range directing and desperately trying to manage all of CEGEN's contractual obligations and sub-contractors.

108.    After Sean Murphy's arrival, and by January 9, 2023, BCB instituted a daily Foreman's meeting at 8:30 am to help Shermco manage construction, and a daily procurement call

at 4:30 pm to help CEGEN and Shermco manage their material procurement. These daily meetings were in addition to the 6:00 am calls BCB had been having with Defendants MOTBO three times a week (for the last five months), and the multiple daily engineering calls required to advance progress at North Range. Often, BCB team members were working 12-15 hour days doing their work and pushing CEGEN and Shermco to fulfill their contractual obligations to Defendants MOTBO. BCB deployed a wide sweeping accountability campaign with CEGEN and Shermco and continued to do everything it could to advance and complete Phase 1 despite CEGEN and Shermco's errors, failures, and lack of contractual performance.

109.    BCB pushed Shermco to develop an accurate and updated Master Schedule for the project (as it was Shermco's contractual responsibility as the construction managers to do under its Construction Management Agreement (Purchase Order SIQ-11754-22) with Defendant MineOne Wyoming), and BCB created a Master Procurement document for all Parties to help address and manage CEGEN and Shermco's failures and delays getting construction material to the site necessary for construction.

110.    Defendants MOTBO started making requests for specialized summary and detailed project management and schedule reports wanting exact dates from BCB when Phase 1 would be complete. BCB reminded Defendants MOTBO that the contractual responsibilities – and the exact dates it was seeking for Phase 1 completion – were with CEGEN, CEGEN's subcontractors, and Shermco, as these companies were the data center provider, electricians, engineers, and construction management that Defendant MineOne Wyoming had contracted with to complete Phase 1.

111.    BCB continued to do everything it could to deliver Phase 1 and began ramping up additional electrical crews (CTW and Automation Electronic) to cover how poorly CEGEN (and

their electrical subcontractor, Master Controls) were performing on their contractual duties to deliver 10 fully functional data centers.

112.    BCB reminded Defendants MOTBO that BCB was not contractually responsible for CEGEN and/or Shermco, nor was BCB licensed engineers or electricians able to do the work Defendant MineOne Wyoming had contracted with CEGEN, CEGEN's subcontractors, and Shermco to complete for Phase 1.

113.    On January 10, 2023 Mr. Randall returned from Arizona to the North Range site. Mr. Randall's job duties for BCB were to be a site manager and operator for North Range during Phase 2, but in an effort to do everything BCB could do to advance the project, Mr. Randall assumed other Phase 1 obligations to advance to Phase 2.

114.    Mr. Randall also appreciated the opportunity before him—to be the site manager of a large Bitcoin mine. Such a position would put him in a rare and highly sought after position as a Bitcoin miner operating the largest Bitcoin Mine in Wyoming, and one of the largest Bitcoin mines in the country. Such a position was both prestigious and would create valuable professional experience and credibility both he and BCB could leverage to lead site expansions at North Range and Campstool as well as generate other large opportunities in the industry.

115.    On January 11, 2023, a winter storm hit Cheyenne. Severe weather continued to make work inside and outside the data centers slow and challenging.

116.    CEGEN's continued inability to procure required materials from vendors - and send the required building and electrical materials from their headquarters in Canada to North Range - continued to compound problems and delays.

117.    On January 12, 2023, Mr. Shao acknowledged Shermco was the construction manager and the responsible party for all project management delays involving North Range

engineering and construction management. Mr. Shao also communicated the delays from material procurement from CEGEN to his superior, Mr. Zhang.

118.    Mr. Zhang rarely came to North Range during the first three weeks of January. When he did come to the site, he was visibly angry, loud, obnoxious, and demanded to know from BCB when Phase 1 would be complete despite factors outside of BCB's control. Mr. Zhang's campaign to discredit Mr. Randall was not gaining the traction he had hoped it would.

119.    On January 13, 2023, BCB achieved approval of the EPR for the Campstool Parcel.

120.    On January 17, 2023 Mr. Patterson and Mr. Randall conducted an interview with Dennis Grant. Mr. Grant had been inquiring about working for BCB for several months. Mr. Grant was local, qualified, and eager for the opportunity to be involved in a large Bitcoin mine.

121.    On January 18, 2023 extreme snow and wind conditions slowed construction progress at North Range.

122.    On January 18, 2023, BCB achieved permits for the Campstool Parcel.

123.    On January 18, 2023, Plaintiff received an email from Haku Du saying, "We can roughly get $2 m deposit from Bitmain by the end of Jan and this money can be then paid to BHE as security fund."

124.    On information and belief, on or around January 19, 2023, Defendants MOTBO and Bitmain executed the SERVICE FRAMEWORK AGREEMENT ("SF AGREEMENT"). Defendants executed the SF AGREEMENT without any involvement or disclosure to Plaintiff about an agreement between Defendants involving Phase 2 operations at North Range or anticipated involvement in Phase 1 implementation and Phase 2 operations at Campstool (which Plaintiff was contracted to perform under the DHS AGREEMENT with Defendant MineOne Wyoming).

125.    On January 20, 2023, Mr. Zhang and Mr. Zhu pulled Mr. Randall into a meeting at the end of the day.  Mr. Zhang and Mr. Zhu bombarded Mr. Randall for over an hour with probing

questions, concerns, and insults about his credentials and experience to implement North Range's networking and guide completion of Phase 1.

126.    Throughout January and early February, Mr. Zhang demanded that BCB fire Mr. Randall. Mr. Zhang's reasoning for BCB to fire Mr. Randall was never material, just that Mr. Zhang thought Mr. Randall was doing things the "wrong way" and that Mr. Zhang could do it better "his way."

127.    On January 24, 2023, Sean Murphy reported to BCB that Mr. Shao, Scott, Braden, and Chris were continuing to make it difficult for him to do his job.

128.    On January 24, 2023, Sean Murphy reported to BCB that Darcy McIntosh from CEGEN had stopped attending daily procurement meetings.

129.    On January 24, 2023, Sean Murphy was notified by Mr. Shao that Defendants were bringing in "an electrical person" who worked at a Bitcoin mine in the area. Sean Murphy asked who it was. Mr. Shao didn't know but said this electrical person was on the way to the North Range site. Shortly thereafter, Joey Dawell, the President at Crypto Knight Hosting, arrived at North Range.

130.    Mr. Darwell represents BCB's largest local competitor – Crypto Knight – and was now on North Range and being taken on a personal site tour by Mr. Zhang and Mr. Shao irrespective of the fact that Mr. Darwell had not established a Non-Disclosure Agreement (NDA) with BCB or Defendants. Joey Darwell was awkward, uneasy and oddly exuberant. He spoke about "everyone working together" for "the good of the industry."   Sean Murphy notified BCB leadership.

131.    On January 26, 2023 CEGEN, CTW, and Master Controls did not attend the daily Foreman's meeting.

132.    On January 26, 2023 severe weather alerts for high wind warning stalled construction progress. Interstates were shut down the following day.

133.    With the project facing delays and increasing costs, driven by CEGEN and Shermco failing to perform their contractual duties for Defendant MineOne Wyoming,  BCB welcomed Mr. Zhang to coordinate a meeting as soon as possible to learn about Crypto Knight's  electrical and construction company, Systems-MEC.  A meeting was scheduled between Tony Simpson, the CEO of Systems MEC, and BCB, for January 29, 2023.  At the meeting, Mr. Simpson told BCB he would often drive by the North Range site and thought that his team could do a much better job.

134.    BCB learned that Crypto Knight wanted to be paid a large referral fee for bringing in its electrical contractors, Systems MEC, to finish the work at North Range. Joey Darwell told Sean Murphy that Crypto Knight had bid (and lost) in the RFP with Black Hills (just as BitDeer and YZY Capital also lost the RFP to BCB). Crypto Knight coveted the BHE available power at Campstool that BCB had won in the RFP and assigned to MineOne Wyoming.

135.    On January 27, 2023 BCB received notice from the Campstool Architectural Review Committee that the application submitted on behalf of MineOne Wyoming had received "full approval."  This cleared the remaining due diligence items for the project as designed in the approved plans. The final step to move forward with Campstool was for MineOne to close on the land.

136.    From January 29 through February 2, 2023, BCB and Defendants MOTBO engaged in a series of intense negotiations, meetings, phone calls, and due diligence with Systems-MEC to explore engaging Systems-MEC to take over all the electrical responsibilities in the data centers that CEGEN had failed to deliver, and possibly, the site electrical and construction management that Shermco failed to deliver.

137.    On January 30, 2023, BCB received a heavily redacted version of the SF AGREEMENT between Defendant Bitmain and Defendant MineOne Wyoming that included the FORM OF SERVICE ORDER (dated March 10, 2023) for the service (hosting and operations) of 9,800 S19XP bitcoin mining computers with estimated delivery no later than February 25, 2023. The FORM OF SERVICE ORDER designated Defendant MineOne Wyoming as the "Service Provider," while indicating Defendant MineOne Partners was the receiving entity for wire transfers (payments) for Defendant MineOne Wyoming as the Service Provider. As the Service Provider, under the terms of the SF AGREEMENT, Defendant MineOne Wyoming had wrongfully and tortiously been hired by Defendant Bitmain to operate the North Range site for Phase 2.

138.    On February 1, 2023, Mr. Simpson, the CEO of Systems-MEC, showed BCB that Mr. Shao had sent the Procurement List to Mr. Darwell and shared other sensitive information. Mr. Simpson said Mr. Darwell had expressed he had been meeting regularly with Mr. Zhang and Mr. Simpson with the intent that Crypto Knight and Mr. Zhang become the site operators at Campstool.

139.    Without approval or notice to BCB, Mr. Zhang brought Lee Filer, Crypto Knight's Site Director, to North Range on two occasions.

140.    By bringing in Systems-MEC, Mr. Zhang had found a way to cure CEGEN and Shermco's failures, finish the project as soon as possible (irregardless of System-MEC's exorbitantly inflated costs) while at the same time furthering his plan to remove Plaintiff BCB and insert himself as the site manager and operator for Defendants at North Range and Campstool.

141.    Defendants MOTBO indicated they were introduced to Crypto Knight through a mutual connection – Crypto Knight's primary client, who on information and belief, is a Chinese company – but Crypto Knight insisted it was an individual, a Canadian. A complex and interrelated web of Chinese individuals, companies, and relationships became evermore apparent.

142.    BCB informed Mr. Simpson that BCB was under contract to be the site operator and manager at both North Range and Campstool. BCB explained it had been over a year and half of work and part of an extensive RFP process that led to BCB's contract with MineOne Wyoming to be the Campstool site operator.

143.    BCB became concerned Mr. Zhang was working with Defendants to undermine and remove BCB from Phase 1 and Phase 2 at Campstool, and it became further apparent Mr. Zhang was actively working to subvert BCB's contractual obligations.

144.    On February 3, 2023, Dr. Jiaming Li visited the North Range site for several hours to tour the site and direct Defendants MOTBO's on-site personnel. Dr. Jiaming Li came to Cheyenne to meet with Mr. Simpson for dinner to discuss contract details for Systems-MEC to replace CEGEN as the electrical contractor (without BCB present). Dr. Jiaming Li departed the next day with Mr. Zhang to California "for other business."

145.    According to Bit Origin's Form F-3/A, Dr. Jiaming Li is the President of Bit Origin. Dr. Jiaming Li resigned from MineOne Partners before joining Bit Origin.

146.    On February 6, 2023 Systems-MEC arrived at North Range with a team of more than 40 contract and temporary workers, primarily electricians living in Texas.

147.    On February 7, 2023, Emory Patterson sent an email confirming "SysMEC came by recommendation of CrypoKnight who SysMEC has completed mining facilities for and MineOne was introduced to through a trusted source via Bitmain." Defendants, CryptoKnight, and likely, SysMEC were now all working together behind BCB's back to subvert BCB's operational role even though BCB was the contracted site operator under the DHS AGREEMENT for North Range and Campstool.

148.    On February 8 and February 14, 2023, Sean Murphy reported to BCB partners that strong management boundaries needed to be enforced with Defendants MOTBO.  Sean Murphy

observed  Defendants MOTBO's workers (Mr. Shao, Scott, and Chris) interfering with BCB obligations and Systems-MEC workers.

149.    Despite Defendants MOTBO working behind the scenes to undermine BCB's roles and contractual obligations, and continually trying to discredit Mr. Randall, BCB continued spending significant time and resources working to address Defendants' new plans for Campstool. BCB engaged and met with Defendant Bitmain engineers, facilitated water analysis testing, and did everything Defendants requested to investigate and explore changing plans at Campstool. BCB continued doing everything in BCB's control to perform its obligations under the DHS AGREEMENT.

150.    Mr. Randall has been mining Bitcoin since 2012, and operated multiple sites consuming over 13MWs of electrical power. By now, Defendants MOTBO had come to know Mr. Randall was a qualified and experienced Bitcoin miner and site operator equal to or greater than anyone of the Defendants MOTBO, including Mr. Zhang.

151.    Mr. Zhang now realized he could not disparage or insult Mr. Randall out of his position at BCB. In fact, Mr. Randall knew far more than anyone at Defendants MOTBO about all three types of Bitcoin mining (air cooled, immersion, and hydro). Each type of Bitcoin mining is specialized and involves highly complex processes and knowledge to architect and deploy.

152.    After weeks of meeting about changing the site plans for Campstool to accommodate hydro mining, a conference call with Defendant Bitmain's engineer was held on February 13, 2023.

153.    On February 13, 2023, Mr. Patterson wrote to BCB team members, "here we go again. Wiley (Mr. Zhang) telling us how to build and what we already know." This statement captured what had been going on for months: Mr. Zhang and Bitmain interfering with BCB's

contractual obligations and Mr. Zhang and Bitmain working to insert themselves as the site operators for North Range and Campstool.

154.    After the February 13, 2023 engineering call with Bitmain's engineer, Mr. Zhang's attitude toward Mr. Randall changed. Defendants MOTBO realized their plan to insult and disparage Mr. Randall – as a means to remove Mr. Randall from North Range — was defeated. Mr. Zhang and Defendants would need to formulate a new plan.

155.    Soon thereafter, on February 15, 2023, Dr. Jiaming Li returned to the North Range site. Dr. Jiaming Li was directing Mr. Zhang. Dr. Jiaming Li brought with him an investor he introduced to Sean Murphy as "Daisy."

156.    On February 20, 2023, CEGEN's only worker and representative at North Range, Chad Dalziel, left the site. Beyond this, CEGEN reduced its involvement to material shipments and procurement despite its ongoing contractual obligations to deliver the fully completed data centers ready for energization.

157.    On February 22, 2023, the temperature on the site reached -4F (and -20F with wind chill). Systems-MEC continued working through blizzard conditions.

158.    On February 23, 2023, Mr. Zhang arrived unannounced at North Range with a new team. Sean Murphy told BCB leadership, "I just let in Wiley (Mr. Zhang) and a new group." Through translation, Mr. Zhang identified the new individuals by their Anglicized names, Jason and Eason. Along with Mr. Zhu – the site operator from Indiana – the new individuals and Mr. Zhang went straight to Mr. Randall's office, testing him about networking design. After Mr. Randall passed their test, everyone left satisfied in a seemingly friendly way.

159.    On February 24, 2023, Sean Murphy reported more details about the new Chinese nationals who had arrived at the North Range site. Sean Murphy messaged BCB's leadership saying, "the two new faces are from Bitmain." Sean Murphy indicated he had learned from Mr.

Shao (the translator) that one of the new Bitmain representatives on the site (Eeza or "Eason") claimed he had been the site manager for Defendant Bitmain's 400MW site in China.

160.    On Friday, February 24, 2023, Mr. Zhang invited Mr. Randall to his AirBnb at 210 E Pershing Blvd. for dinner and drinks. Mr. Zhang explained (through Mr. Shao's translation) 'BCB did not know what they were doing,' and deployed a new approach with Mr. Randall – now complimenting Mr. Randall about his impressive tenure and credibility as a Bitcoin miner.

161.    After the dinner, Mr. Zhang later followed up with Mr. Randall and said he (now) had "full confidence" in Mr. Randall operating the North Range site but lacked confidence in BCB.

162.    Mr. Zhang now deployed a 'divide and conquer' strategy, and wanted Mr. Randall to believe Mr. Randall was 'an elite like us' and a 'part of the family' as a fellow long-time Bitcoin miner.

163.    Mr. Zhang knew if he was unable to unseat Mr. Randall from the North Range project through insults, he would need to bring Mr. Randall to his side (and away from BCB).

164.    From February 25, 2023 through March 1, 2023, BCB coordinated and executed logistics and warehousing for the arrival of 9,800 S19XP bitcoin mining computers from Defendant Bitmain. The 9,800 S19XP bitcoin mining computers arrived in semi trucks and were delivered to a warehouse in Cheyenne (which BCB had coordinated for Defendants). All of the 9,800 bitcoin mining computers had come from Bitmain (in China), to Texas, and were then shipped on pallets in semi trucks to Cheyenne, Wyoming.

165.    On February 25, 2023, two new individuals arrived to watch the bitcoin mining computers be unloaded from the trucks into the warehouse. The individuals arrived with Mr. Zhang and identified themselves as Henry and Mark. At this point, there were now eight Chinese nationals in Cheyenne representing Defendants saying they were a part of the project.

166.    On February 27, 2023, Mr. Zhang – through translation – informed Mr. Randall that Henry had come to the site to do the networking portion of the project. This was concerning and unusual, given that Defendant MineOne Wyoming had already signed a contract with BCM Site Services to provide networking services.

167.    At about the same time, conflict began to arise over which bitcoin mining computer management software would be used at the North Range site. Defendant MineOne Wyoming had already contracted for BCM Site Services to install Foreman software, but now, with the new individuals present, Mr. Zhang made it clear he wanted to change the software to Defendant Bitmain's software, AntSentry. Mr. Zhang, and the individuals he was directing, pushed to change plans and vendor service agreements that had been agreed upon and confirmed for months.

168.    On February 27, 2023, Mr. Randall went to Mr. Zhang's AirBnb for dinner and drinks for a second time. Mr. Zhang asked Mr. Randall probing questions about income and payments from BCB, and conveyed to Mr. Randall that he would be taken care of financially if he was a part of the Defendants' team (and not with BCB).

169.    On February 28, 2023, BCB confirmed MineOne Wyoming's desire and direction to provide notice to Shermco to cease all construction management, engineering, site electrical, and other site work. BCB provided notice to Shermco this same day.

170.    On March 1, 2023, there were blizzard conditions at North Range. Highways were closed. Systems-MEC and BCB continued working at North Range to the common Phase 1 goal of energizing North Range and commencing Bitcoin mining.

171.    On March 1, 2023, BCB sent an email to Drs. Rengifo and Li to schedule a meeting to discuss a draft of the Phase 2 Budget. BCB did not receive a response.

172.    On March 2, 2023, BCB sent another email to Drs. Rengifo and Li asking to schedule a meeting to discuss a draft of the Phase 2 Budget. Again, BCB did not receive a response.

173.    The Campstool Parcel was scheduled to close on March 2, 2023.  BCB consistently communicated this closing date and the relevant closing information to Defendants MOTBO in the weeks leading up to the planned closing. However, when the time came for Defendants MOTBO to wire the required funds for closing on time, Defendants MOTBO did not wire the funds. Instead, Defendants MOTBO provided minimal communication and left many of the affected parties in the deal (Seller, Seller's agent, Title Company) confused as to what Defendants MOTBO's intentions were. Eventually, Defendants MOTBO sent an email to BCB on the closing date indicating it would buy the land but it would require an extension until March 17, 2022. Defendants MOTBO also indicated that if it were to proceed with the Campstool development, it would be treated independently from North Range.  BCB negotiated an extension with the Seller and sent the paperwork to MineOne Wyoming for signing.  MineOne Wyoming did not sign by the deadline.  MineOne Wyoming did sign the extension the following day, March 3, 2023.

174.    On March 3, 2023, Systems-MEC convened a site safety orientation and project status meeting for all members of BCB and Defendants at North Range. By the end of the meeting, Mr Zhang was insulting BCB and Systems-MEC, and demanding both companies "give him a date" the site will be energized. Kenny McPherson, the Sr. VP of Operations for Systems-MEC, was so offended by Mr. Zhang's conduct and what he was saying, that Mr. McPherson got up from the meeting and briefly stepped in the other room.

175.    At the end of the orientation meeting, Mr. Zhang stormed out of the meeting hollering demands and directives as if he was a dictator leading the entire project.

176.    Following the orientation meeting, Mr. Zhang directed all of the workers under his authority — now, more than 10 – to begin moving Defendants Bitmain's bitcoin mining computers from a nearby parked UHaul truck and from the Cheyenne warehouse into the North Range data centers.  BCB and Systems-MEC advised Mr. Zhang to be patient and do things in the

proper order to save time and be safe. By now, Mr. Zhang had no intention or desire to listen to BCB or Systems-MEC's advice or directives. Mr. Zhang was acting as the site manager for 'racking and stacking' the bitcoin mining computers – something BCB had planned for, and was just about to hire its third local full-time team member (Melody Cheere) and other local temporary workers to assist with.

177.    On March 3, 2023, BCB again inquired on its regularly scheduled weekly calls with the MineOne team about a time to schedule a meeting to discuss the draft of the Phase 2 Budget. The MineOne team did not provide a time to discuss the Phase 2 Budget.  However, Dr. Rengifo sent an email in which he stated "...Bitmain [is] completely opposed to you being the Host. It is clear that you do not know the business and no one wants to have issues during operations." He then proposed a meeting time for March 6, 2023 to meet with the BCB team.

178.    On March 6, 2023, BCB provided an estimate of the hosting fee deposit (which was to be paid by MineOne Wyoming to BCB starting with the commencement of commercial operations) as required under the DHS Agreement.  BCB also submitted a $90,000.00 progress payment invoice for services BCB rendered over the prior two months. This $90,000.00 is within the approved Phase 1 Budget.

179.    On March 7, 2023, BCB met with Dr. Rengifo and Dr. Jiaming Li (as Dr. Rengifo had requested on March 3, 2023) via a GoogleMeet teleconference. Dr. Rengifo informed BCB that MineOne was replacing BCB as operator of the North Range site with Wiley's [Mr. Zhang's] team [*i.e.,* Defendants MOTBO's team]. Dr Rengifo said, "He [referring to a Bitmain executive or co-founder] doesn't want you to be the host and the manager." Dr. Rengifo went further to say, "the only thing you should do is make sure the electricity pricing…minimal things we expect." "Basically, you don't do anything." He said   Defendant Bitmain "want you [Plaintiff] out. Completely." Defendants informed Plaintiff that Defendants wanted to "end" or "change" the DHS

AGREEMENT — that Defendants now wanted a new contract or an amendment to the original DHS AGREEMENT to reduce Plaintiff to a "minimal role" and to "replace BCB's team."  Drs. Rengifo and Li then explained the much-reduced scope of work for BCB (which would include only coordinating power pricing with BHE, local public relations, and limited accounting services) and BCB's much-reduced compensation package, contingent upon BCB attaining certain power pricing with BHE, a requirement never included in the DHS AGREEMENT, nor something BCB or even BHE could/would guarantee. Despite receiving this news and being informed in this way, BCB continued to diligently work on the project.

180.    On March 7, 2023, Dr. Jiaming Li returned to North Range.  Despite him saying that a lack of funds prevented Defendants MOTBO from paying BCB's March 6, 2023 invoice, he arrived in a brand new BMW M5 that appeared to have been purchased the same day in Denver based on the temporary license plate tags.  A new BMW M5 costs more than $120,000.

181.    By March 9, 2023, Mr. Zhang was in full command directing his team of Chinese nationals (Mr. Zhu, Mr. Shoa, Henry, Mark, Jason, and Eason), one worker from Georgia (Scott), one worker from Jamaica (Chris), and 10 temporary workers, most of whom were out of state workers traveling through Cheyenne looking for work.

182.    Mr. Zhang's approach was hasty and uncoordinated. He thought he was saving time loading the data centers with the bitcoin mining computers, but because the networking cables hadn't been finished, his approach was actually costing more time and money, not less. Systems-MEC leadership told BCB that Mr. Zhang's approach was costing at least one, maybe two, days of working time for the Systems-MEC crews in four data centers.

183.    All of this greatly concerned BCB. BCB had hired local team members to "rack and stack" the bitcoin mining computers and was a day away from hiring another full-time local team member.  BCB had a stack of applications from local individuals interested in working for

BCB.  Now, with Mr. Zhang and Defendants taking over operations, BCB and its team members were left in a challenging situation.

184.    After Sean Murphy recorded the assembly line of Defendants' foreign and out of state workers loading the data centers, Mr. Shao asked Sean Murphy not to film them without asking their permission. Sean Murphy asked if the assembly line of workers were working for MineOne. What followed was a conversation between Sean Murphy and Mr. Zhang (with Mr. Shao translating) whereby Mr. Zhang explained Mark is going to be the official site manager. He said Mark and Henry were going to "be in charge of the site."

185.    Mr. Zhang went on to explain that Mark, Henry, Chris and Scott were going to "find another six individuals to be in charge of and operate the site," and that Mr. Zhang would "work on different sites" after the construction was finished. At first, Mr. Zhang told Sean Murphy "the company" had made this decision, but when Sean Murphy pressed further, Mr. Zhang explained and confirmed the "leading team" had made this decision, and confirmed individual names.

186.    On the night of March 9, 2023, Defendants made their move on Mr. Randall. Dr. Jiaming Li invited Mr. Randall to dinner at his AirBnb at 2005 Coffee St. Cheyenne, WY 82007. Over dinner and drinks, now, for the third time, Dr. Jiaming Li explained "the opportunity" that Defendants wanted to offer Mr. Randall to join Defendants.

187.    The following day, March 10, 2023, Dr. Jiaming Li sent Mr. Randall an email and document (the "Investment and Cooperation Opportunity") for Mr. Randall to invest $1.5 million or $2.5 million in MineOne Wyoming and a commission payout for the number of bitcoin mining computers sold by Mr. Randall.

188.    On March 10, 2023, BCB sent Defendants MOTBO another email requesting payment of its $90,000.00 invoice for services previously rendered.  BCB had planned to discuss

payment for this invoice on its regularly scheduled call with Defendants MOTBO that day, but Defendants MOTBO canceled shortly before the meeting was scheduled to begin.  Ms. Du told Michael Murphy to discuss payment with Dr. Jimaing Li in-person at the North Range facility. Michael Murphy then traveled from Denver to Cheyenne that day to meet with Dr. Jiaming Li. Dr. Jiaming Li promised Michael Murphy that Defendants MOTBO would pay $45,000.00 of the $90,000.00 invoice on Monday, March 13, 2023.

189.    On Monday, March 13, 2023, BCB met with Ms. Du and Dr. Jiaming Li on a regularly scheduled call.  BCB asked Dr. Jimaing Li about the $45,000.00 payment that Dr. Jimaing Li promised would be made on Monday, March 13, 2023.  Dr. Jiaming Li said he would have a response later that day.  Several hours later, Dr. Jiaming Li sent an email to BCB that included a proposed "amendment" to the DHS AGREEMENT that indicated, among other things and in simplified form, the following:

   a.    BCB would not be allowed to operate the North Range site and would not receive the agreed-upon consideration tied to those services.

   b.    BCB would not be allowed to implement or operate the Campstool site and would not receive the agreed-upon consideration tied to those services.

   c.    BCB would no longer have its Right of First Refusal or buy-out in the event another entity purchases the development.

   d.    In return for a much-reduced compensation package, BCB would be expected to perform a much-reduced scope of work including tracking daily power prices, providing any PR services reasonably required by MineOne, and helping MineOne maintain good relationships with local authorities and regulators.

e.   BCB could earn additional compensation by (1) assisting MineOne's attorneys in MineOne's claims against third parties, and (2) assisting MineOne secure tax reductions or tax exemptions.

f.   In order for BCB to now receive payment for the $90,000.00 BCB had invoiced on March 6, 2023, for services already provided, and which Dr. Jiaming Li had earlier promised to pay $45,000.00 towards on March 13, 2023, BCB would now need to sign the proposed amendment (to receive $40,000.00) and then deliver the site to full operational completion (to receive the remaining $50,000.00).

190.   Dr. Jiaming Li's 3/13/23 email and attached proposed amendment are attached hereto, marked "**Exhibit B**," and incorporated by reference herein.

191.   Despite receiving this news on March 13, 2023, BCB continued to work diligently towards the Phase 1 completion goal of energizing North Range and commencing Bitcoin mining operations.

192.   All of the acts, omissions, and conduct described in paragraphs 27 - 191 above constitute an unjustified material breach, or material breaches, of the DHS AGREEMENT. On March 15, 2023, BCB sent an email to Dr. Rengifo and Dr. Jiaming Li explaining that MineOne Wyoming had breached the DHS AGREEMENT (*see* Michael Murphy's 3/15/23 email to Dr. Rengifo and Dr. Jiaming Li, attached hereto, marked "**Exhibit C**," and incorporated by reference herein).

193.   All of the acts, omissions, and conduct described in paragraphs 27 - 192 above constitute intentional interference with contractual relations by Defendants, by and through, but not limited to, Defendants' SF AGREEMENT ( *see* "**EXHIBIT A**").


**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT AGAINST MINEONE WYOMING,
INCLUDING ANTICIPATORY REPUDIATION OF CONTRACT**

194.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

195.    Plaintiff BCB and Defendant MineOne Wyoming entered into a valid and enforceable written contract, the **DEVELOPMENT, HOSTING & SERVICES AGREEMENT** ("DHS AGREEMENT") on or about June 9, 2022.

196.    Sufficient and mutual consideration supports the DHS AGREEMENT.

197.    Plaintiff BCB substantially performed its obligations under the DHS AGREEMENT without breaching the DHS AGREEMENT.

198.    Defendant MineOne Wyoming failed and/or chose not to honor or meet its obligations in the DHS AGREEMENT, which unjustified actions constitute a material breach, or material breaches, of the DHS AGREEMENT.

199.    Defendant MineOne Wyoming anticipatorily repudiated and/or materially breached the DHS AGREEMENT with Plaintiff BCB when it chose not to honor its obligation under the DHS AGREEMENT, when, at Bit Origin's direction, it brought in its own MineOne Wyoming team and workers to perform BCB's work and contractual obligations without BCB Cheyenne's consent, and when, at Bit Origin's direction, MineOne Wyoming constructively and effectively removed BCB from the North Range facility without cause, and, at Bit Origin's direction, it would not allow BCB to perform BCB's remaining contractual obligations for both the North Range and Campstool sites and/or facilities, all to BCB's injury and loss, generally described in the Paragraph 201 below.

200.    Plaintiff BCB is excused from further performing its contractual obligations because of the material breaches of Defendant MineOne Wyoming.

201.    As and from MineOne Wyoming's anticipatory repudiation and material breach of its DHS AGREEMENT with BCB, BCB has suffered, and will suffer in the future:

a.  North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

b.  North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

c.  Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

f.  Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including

incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.   Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and credibility provides – damages BCB reputation, standing, and future industry opportunities; and

h.   BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its DHS AGREEMENT with BCB.

## SECOND CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST MINEONE WYOMING.

202.   Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

203.    By law, there is implied in the DHS AGREEMENT the duty of good faith and fair dealing by both BCB and MineOne Wyoming.

204.    BCB complied with, and honored, its implied covenant of good faith and fair dealing to MineOne Wyoming in all substantial ways.

205.    MineOne Wyoming's implied covenant of good faith and fair dealing includes but is not limited to, (a) faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; and (b) its obligation to not commit any act that would injure the rights of the other party, BCB, to receive the benefit of its DHS AGREEMENT during the performance of the DHS AGREEMENT.

206.    MineOne Wyoming's actions above deprived BCB of BCB's reasonable and justified expectations in the DHS AGREEMENT, and the benefits BCB was to receive as its bargained-for exchange and, individually and collectively, they constitute material breaches of MineOne Wyoming's implied covenant of good faith and fair dealing to BCB.

207.    As and from MineOne Wyoming's material breach of the implied covenant of good faith and fair dealing to BCB, BCB has suffered, and will suffer in the future:

    a.  North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

    b.  North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

    c.  Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

f.  Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.  Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and

credibility provides – damages BCB reputation, standing, and future industry opportunities; and

h.  BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its DHS AGREEMENT with BCB, including its breach of the implied covenant of good faith and fair dealing.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT AGAINST TERRA

208.   Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

209.   Terra purchased the North Range land from MineOne Wyoming.

210.   Plaintiff BCB and Defendant Terra entered into a valid and enforceable written contract, the CONSULTANCY SERVICES AGREEMENT ("CS AGREEMENT").

211.   Plaintiff BCB substantially performed its obligations under the CS AGREEMENT, without breaching the CS AGREEMENT.

212.   Defendant Terra failed and/or chose not to honor or meet its obligations under the CS AGREEMENT, which constitute a material breach, or material breaches, of the CS AGREEMENT.

213.   Defendant Terra failed and refused to provide the consulting services to BCB that BCB contracted to receive from Terra.

214.   Plaintiff BCB is excused from performing its contractual obligations in the CS AGREEMENT because of the material breach(es) of Defendant Terra.

215.    Separate and apart from its breaches in Paragraphs 27 - 214 above, on information and belief, Defendant Terra also caused Defendant MineOne Wyoming to anticipatorily repudiate and/or materially breach MineOne Wyoming's DHS AGREEMENT with Plaintiff BCB, as a result of which BCB has suffered, and will suffer in the future:

a.  North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

b.  North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

c.  Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

f.   Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.   Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and credibility provides – damages BCB reputation, standing, and future industry opportunities;

h.   BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by Terra's material breach(es) of its CS AGREEMENT with BCB.

## FOURTH CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST TERRA

216.   Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

217.   By law, there is implied in the CS AGREEMENT the duty of good faith and fair dealing by both BCB and Terra.

218.   BCB complied with, and honored, its implied covenant of good faith and fair dealing to Terra in all substantial ways.

219.   Terra's implied covenant of good faith and fair dealing includes but is not limited to, (a) faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; and (b) its obligation to not commit any act that would injure the rights of the other party, BCB, to receive the benefit of the CS AGREEMENT and the DHS AGREEMENT during the performance of the CS AGREEMENT.

220.   Terra's actions above deprived BCB of BCB's reasonable and justified expectations in the CS AGREEMENT and the DHS AGREEMENT, and the benefits BCB was to receive as its bargained-for exchange and, individually and collectively, they constitute material breaches of Terra's implied covenant of good faith and fair dealing to BCB.

221.   As and from Terra's material breach of the implied covenant of good faith and fair dealing to BCB,  BCB has suffered, and will suffer in the future:

   a.   North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

   b.   North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

   c.   Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

f.  Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.  Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and

credibility provides – damages BCB reputation, standing, and future industry opportunities;

h.   BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by Terra's material breach(es) of its CS AGREEMENT with BCB, including its breach of the implied covenant of good faith and fair dealing.

## FIFTH CLAIM FOR RELIEF

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANTS BIT ORIGIN LTD,  MINEONE PARTNERS LLC, SONICHASH LLC,  BITMAIN TECHNOLOGIES HOLDING COMPANY, AND BITMAIN TECHNOLOGIES GEORGIA LIMITED**

222.   Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

223.   Plaintiff BCB does not have any contracts with Defendants Bit Origin, MineOne Partners, SonicHash or Bitmain.

224.   Defendant Bit Origin, MineOne Partners,  SonicHash, and Bitmain each knew of Plaintiff's valid DHS AGREEMENT with MineOne Wyoming and valid CS AGREEMENT with Terra.

225.   Each of these Defendants - Bit Origin, MineOne Partners, SonicHash and Bitmain – committed intentional, improper and unjustified acts that were significant factors in causing MineOne Wyoming to breach its DHS AGREEMENT with BCB, and in causing Terra to breach its CS AGREEMENT with BCB.

226.   As and from the wrongful and intentional interference with a) BCB's lawful DHS AGREEMENT with MineOne Wyoming, and b) BCB's lawful CS AGREEMENT with Terra,

Defendants Bit Origin, MineOne Partners,  SonicHash, Bitmain Holding, and Bitmain Georgia have each caused BCB to suffer, and suffer in the future:

    a.  North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

    b.  North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

    c.  Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

    d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

    e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

    f.  Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including

incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.  Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and credibility provides – damages BCB reputation, standing, and future industry opportunities;

h.  BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by caused by MineOne Wyoming's anticipatory repudiation and/or material breach(es) of its DHS AGREEMENT with BCB, which anticipatory repudiation and/or material breach(es) were caused and/or driven by these other six Defendants.

## SIXTH CLAIM FOR RELIEF

**AGAINST DEFENDANTS MINEONE WYOMING DATA CENTER LLC, TERRA CRYPTO INC, BIT ORIGIN LTD,  MINEONE PARTNERS LLC, AND SONICHASH LLC: ALTER EGO AND ENTERPRISE LIABILITY FOR THE BREACHES AND TORTS OF MINEONE WYOMING, TERRA, BIT ORIGIN, MINEONE PARTNERS AND SONICHASH**

227.    Plaintiff BCB hereby incorporates by reference all the allegations contained above as though fully set forth herein.

228.    All of the MOTBO Defendants, as well as the JOHN DOE Defendants (both the individuals named above in this Complaint, as well as the companies they work for but which have not yet been identified by BCB) are closely affiliated and/or sister companies, entities, and individuals, each of which companies and individuals are engaged in a unitary commercial endeavor, namely, mining Bitcoin at the North Range and Campstool sites near Cheyenne, Wyoming, and they are jointly and severally liable for the acts, omissions, breaches, and torts of all the other MOTBO Defendants.

229.    On information and belief, each and all of the individuals listed above, including but not limited to - Jiaming Li, Erick Rengifo, Haku Du, Lucas Wang, Huali "Wiley" Zhang, Jinghai Jiang, Xia Wang, Xiaping Cao, Ziyao "Z" Shao, Cho "Jack" Zhu, Iris Li, Mark, Henry, Scott Caffee, Branden Caffee, and Christopher Wilson - were acting for, and within the scope of their employment and/or agency with, each and all of the MOTBO Defendants at all times.

230.    Each of the individuals identified in the Paragraph directly above acted with apparent authority toward BCB at all times, and such that BCB reasonably believed they were the agents of each and all the MOTBO Defendants, and that their words and actions were made during the course and scope of their agency with each MOTBO Defendant and are imputed to and binding on all MOTBO Defendants.

231.    As related to entities, and as persons and entities committed to, and pursuing, this unitary commercial endeavor, the acts, omissions, torts, and breaches of each and all of the persons and MOTBO Defendants identified above are imputed to each and all of the MOTBO Defendants, thus making each and all of the MOTBO Defendants jointly, severally, and vicariously liable for the acts, omissions, breaches, and torts of the other MOTBO Defendants.

232.    On information and belief, each of the above named MOTBO Defendants, as well as the JOHN DOE Defendants, are so commingled, and have such a common ownership or control and/or authority structure and/or co-mingled financial interests that equity requires they be treated as a single-entity, or as a single enterprise[1] for all purposes herein.

233.    Each and all of the MOTBO Defendants have, through their words and conduct, forfeited their corporate separateness. MOTBO Defendants and their agents are so co-mingled that they have not maintained their corporate separateness, at least as to Plaintiff. Each of the MOTBO Defendants are the *alter egos* of the other MOTBO Defendants. Each of the MOTBO Defendants is jointly, severally, and vicariously liable for all of Plaintiff's damages.

234.    On information and belief, each of the individuals named in paragraphs above, and each of the named MOTBO Defendants, exercised such direction over, supervision of, authority over, management of, and control of MineOne Wyoming and Terra that, in law and/or equity, they should be treated as a single-entity and be subject to liability to the Plaintiff for all of Plaintiff's past and future damages, which breaches and torts have each caused BCB to suffer, and suffer in the future:

        a.    North Range 45MW Phase 1 (Build and Implementation) damages based on the remaining unpaid Implementation Fee (the majority of which has been earned and invoiced, but not paid);

---

[1] As stated by the Supreme Court of Pennsylvania:

> What we call "enterprise liability" throughout this opinion elsewhere is referred to variously as "single-entity," "affiliate," "horizontal," or "identity liability" – and the "enterprise" term we prefer is also complicated by multiple recognized meanings.

*Mortimer v. McCool,* 255 A.3d 261, 289, n. 4 (Pa. 2021).

b.  North Range 45MW Phase 2 (Operation and Maintenance) damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 45MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

c.  Campstool 30MW Phase 1 damages based on the remaining unpaid Implementation Fee;

d.  Campstool 30MW Phase 2 damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the 30MW of power, net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT;

e.  Anticipated and expected North Range and Campstool Phase 1 Expansion damages based on the estimated Implementation Fees of expansions at those sites (estimated at +25MW for North Range and +30MW for Campstool) that Defendants are executing on (and have indicated they plan to execute on), as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and which Plaintiff would have executed on if Defendants did not execute on);

f.  Anticipated and expected North Range and Campstool Phase 2 Expansion damages based on the net present value of the budgeted amount of Hosting Fees (including incentives) related to the expansion power (estimated at +25MW for North Range and +30MW for Campstool) net of costs and consulting fees corresponding to the remaining term of the DHS AGREEMENT, as said expansion opportunities are available to Defendants solely due to the work and relationships of Plaintiff (and

which Plaintiff would have executed on if Defendants did not execute on), together with items a-e above which will be proven at trial to be no less than $38,000,000.00;

g.  Damage to BCB's reputation in the Bitcoin mining industry, as the inability to inform and market to current and/or prospective clients and/or investors that BCB is operating the largest Bitcoin mining facility in the State of Wyoming is now lost. BCB's inability to market its [lost] operations and management of the North Range and Campstool facilities – and capitalize on the opportunities such marketing and credibility provides – damages BCB reputation, standing, and future industry opportunities;

h.  BCB's attorney fees, costs and expenses of this lawsuit, pursuant to Article X, ¶ 18 ('prevailing party') of the DHS AGREEMENT, in such amounts as will be proven at trial; all of which injuries, losses, damages, lost profits, any accrued pre-judgement and/or post-judgement interest, and attorney fees are caused by MineOne Wyoming's and the other MOTBO Defendants' anticipatory repudiation and/or material breach(es) of MineOne Wyoming's DHS AGREEMENT with BCB which, in turn, were caused by all MOTBO Defendants' acts committed during their engagement and performance of their single-entity or common enterprise and closely-related, sister companies.

**WHEREFORE**, Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain prays for the following relief:

A.  That judgment be entered in favor of Plaintiff and against all seven Defendants, jointly and severally, in an amount to be proven at trial, but for no less than $38,000,000.00;

B.      That Plaintiff is entitled to pre-judgment and post-judgment interest at the legal

rates;

C.      That Plaintiff recover all of its attorney fees and costs against all Defendants;

D.      That Defendants be enjoined from making or publishing any defamatory

statements, in the public domain, about Plaintiff or its members; and

E.      For such other and further relief as the Court deems just and proper.

**DATED** this 30th day of September, 2023.


                                        BCB CHEYENNE LLC d/b/a/ BISON
                                        BLOCKCHAIN,
                                        Plaintiff


                                        /s/ Patrick J. Murphy
                                        Patrick J. Murphy, WSB No. 5-1779
                                        Scott C. Murray, WSB No. 7-4896
                                        Williams, Porter, Day & Neville, P.C.
                                        159 N Wolcott St., Suite 400
                                        Casper, WY 82601
                                        Ph: (307) 265-0700
                                        pmurphy@wpdn.net
                                        smurray@wpdn.net

                                        *Attorneys for Plaintiff BCB Cheyenne LLC d/b/a
                                        Bison Blockchain*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a true and correct copy of ***Plaintiff's First Amended Complaint*** was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 30th day of September, 2023.

Sean M. Larson, WSB No. 7-5112     ☐ U.S. Mail (Postage Prepaid)
Kari Ann Hartman, WSB No 8-6507.    ☐ Fax
HATHAWAY & KUNZ, LLP          ☐ Overnight Delivery
P.O. Box 1208                  ☐ Hand Delivery
Cheyenne, WY 82001          ☒ CM/ECF Email
slarson@hkwyolaw.com
khartman@hkwyolaw.com


Paula Colbath, *Pro Hac Vice*        ☐ U.S. Mail (Postage Prepaid)
Sarah Levitan Perry, *Pro Hac Vice*    ☐ Fax
LOEB & LOEB LLP              ☐ Overnight Delivery
345 Park Avenue               ☐ Hand Delivery
New York, NY 10154         ☒ CM/ECF Email
pcolbath@loeb.com
sperry@loeb.com

/s/ Patrick J. Murphy
Patrick J. Murphy