# DECLARATION OF AILAN LIU

**KHALE J. LENHART, #7-4693**
**TYSON R. WOODFORD, #8-6650**
Hirst Applegate, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
klenhart@hirstapplegate.com
twoodford@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company, | } } } } | |
| Plaintiff, | } } } | |
| vs. | } } } | Civil No. 23-CV-79J |
| MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD., a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | } } } } } } } } } } } } } } } } } } } | |
| Defendants. | } } | |

# DECLARATION OF AILAN LIU IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT AGAINST DEFENDANT BITMAIN TECHNOLOGIES GEORGIA LIMITED

I, AILAN LIU, declare and state as follows:

1.      I am an attorney at law licensed to practice in California.  I have worked at the law firm of Keesal, Young & Logan, a California professional corporation ("KYL"), from 2006 to the present, primarily in its Long Beach, California office, where I specialize in corporate and real estate transactional matters and provide general corporate counseling to clients regarding the formation of business entities, commercial transactions and other corporate matters. I was born in China and received my B.A. degree at Shanghai Institute of Foreign Trade. Before coming to the U.S. to pursue my law degree, I taught business and international trade at a business school in China. I submit this declaration in support of Bitmain Technologies Georgia Limited's Motion to Set Aside Entry of Default. I have personal knowledge of the facts set forth below and, if called upon to testify as a witness, could testify competently thereto.

2.      KYL is corporate counsel for Bitmain Technologies Georgia Limited, a Georgia corporation ("Bitmain Georgia"). On or about July 22, 2021, I incorporated Bitmain Georgia in the State of Georgia by filing the Articles of Incorporation as the Incorporator.

3.      On or about July 26, 2021, I resigned from the "Incorporator" role of Bitmain Georgia, and Ran Cheng was appointed as the sole director of Bitmain Georgia. A true and correct copy of said document is attached hereto as **Exhibit A-1**. Mr. Cheng, as the sole director of Bitmain Georgia, completed setting up the initial organizational matters for Bitmain Georgia, including electing the officers of Bitmain Georgia. Mr. Cheng was elected to serve as Bitmain Georgia's Chief Executive Officer, Chief Financial Officer, and Secretary for Bitmain Georgia at its incorporation. A true and correct copy of said document is attached hereto as **Exhibit A-2**.

4.      I am not, and have never been, an officer of Bitmain Georgia. However, I am informed that the State of Arkansas included my name under the list of "Officers" for Bitmain Georgia while I was the incorporator even though the incorporator is not actually an officer.

5.      For the past three years, with respect to Bitmain Georgia, my primary role has been: (a) filing or causing to be filed documents with the secretary of state offices at various states upon Bitmain Georgia's request, which filings include, (i) registering Bitmain Georgia to be qualified

to transact business in various states; (ii) signing the state registration filing instrument as the "authorized person", "authorized representative", or "incorporator/organizer", as such titles are named and dictated by the applicable state on its filing form; and (iii) filing or causing to be filed the annual report with the state where Bitmain Georgia is required to do so; (b) serving as the agent for service of process for Bitmain Georgia's affiliates in the state of California; (c) serving as the primary point of contact for the registered agent of Bitmain Georgia when it is served with legal service of process and/or sent with any notices; (d) forwarding Bitmain Georgia the legal papers or other notices received by me or forwarded to me; and (e) drafting legal documents primarily related to the corporate matters per Bitmain Georgia's request. I have never served as a corporate executive of Bitmain Georgia, nor have I ever held any position in Bitmain Georgia. As far as I know, no one else at KYL has ever served as an executive officer or has held any position in Bitmain Georgia.

6.      My standard practice in acting as the primary point of contact for the registered agent of Bitmain Georgia when Bitmain Georgia or its affiliates is served with legal service of process is that after I receive an email notification from the agent for service of process, I download the documents and email the documents to Bitmain Georgia. I have received numerous legal papers from the registered agent, and there has never been an issue before where I did not timely forward them to Bitmain Georgia.

7.      On November 20, 2023 at 6:34 PM PT, I received an email from Ms. Xiaojue (Polly) Hou of the legal department of one of Bitmain Georgia's affiliates, attaching a copy of Plaintiff's First Amended Complaint for Breach of Contract, Anticipatory Repudiation of Contract, Intentional Interference with Contractual Relationship, *Alter Ego* Liability, Enterprise Liability, and Lost Profits and Money Damages ("First Amended Complaint") in the *BCB Cheyenne LLC v. MineOne Wyoming Data Center LLC, et al*. action, with a ECF filing stamp of "Case 1:23-cv-00079-ABJ, Document 50, Filed 09/30/23." Ms. Hou asked me to check whether I and/or Keesal, Young & Logan had received notice of the case as described in the attachment. A true and correct

copy of said email is attached here to as **Exhibit B**, a portion of which has been redated because it contains privileged information concerning an unrelated legal matter.

       8.      On November 20, 2023 at 6:38 PM PT, I forwarded Ms. Hou's email with the First Amended Complaint to my assistant, Casey Thomas, and asked her to investigate whether Keesal, Young & Logan had been provided notice of service of process from Cogency Global, Inc., Bitmain Georgia's registered agent for service of process in Georgia (the "Agent"). As I said in that email, I did not recall having seen the First Amended Complaint or anything related to it before November 20, 2023. A true and correct copy of said email is attached hereto as **Exhibit C**, a portion of which has been redacted because it contains privileged information concerning an unrelated legal matter.

       9.      On the morning of November 21, 2023, I received an email from Ms. Thomas, stating that she found the First Amended Complaint online and it was served on Bitmain Georgia on October 25, 2023. Ms. Thomas further reported that the Agent informed her that the First Amended Complaint had been sent to me the same day it was served. A true and correct copy of said email is attached hereto as **Exhibit D**, a portion of which has been redacted because it contains privileged information concerning an unrelated legal matter.

      10.     On the morning of November 21, 2023, I searched my work emails that I had received on October 25, 2023. I discovered that on October 25, 2023 at 12:47 PM PT, the Agent had emailed me a link to download the Summons and First Amended Complaint, and I was the sole recipient of the Agent's October 25, 2023 email. A true and correct copy of said email is attached hereto as **Exhibit E**.

      11.     I then searched my "Downloads" folder on my work computer and located a copy of the Summons in a Civil Action to "Bitmain Technologies Georgia Limited, through its Registered Agent: Cogency Global Inc., 900 Old Rosewell Lakes Parkway, Suite 310, Atlanta, GA 30076" and a copy of First Amended Complaint (the "Summons and First Amended Complaint"). The metadata reflected that I had downloaded the Summons and First Amended Complaint on October 25, 2023 at 3:19 PM PT.

12.     I have no recollection of ever seeing either the October 25, 2023 email from the Agent or a copy of the Summons and the First Amended Complaint prior to November 21, 2023. I also have searched my "Sent" emails and have not located an email where I sent the Summons or the First Amended Complaint to Bitmain Georgia.  I inadvertently did not send the Summons or First Amended Complaint to Bitmain Georgia.

13.     On November 21, 2023, Ms. Thomas sent me a copy of the docket from PACER for the *BCB Cheyenne LLC v. MineOne Wyoming Data Center LLC, et al.* action. I discovered that the Clerk had entered default against Bitmain Georgia on November 17, 2023.

14.     Soon after on the same morning on November 21, 2023, the Tuesday before Thanksgiving, I called Plaintiff's attorney Patrick Murphy at his office line and was transferred to his voicemail. I left a voicemail to the effect that I was calling regarding a Bitmain-related case, that I would like to speak with him, and asked him to return my call. I left my cell phone number as I was working remotely that day. About an hour later, having not received a call back from Mr. Murphy, I called his office again and spoke with his staff and asked how I could reach Mr. Murphy about a case related to Bitmain or if I could speak with someone else with the firm who was working on the case. I was advised by his staff that Mr. Murphy was on vacation and would not be in the office until the following Monday, November 27, 2023. I asked for an email address for Mr. Murphy.

15.     On November 21, 2023 at 12:34 PM PT, having not heard back from Mr. Murphy, I sent him an email and expressed our desire for Plaintiff to voluntarily set aside the default entered against Bitmain Georgia by stipulation and to allow Bitmain Georgia to respond to the First Amended Complaint. A true and correct copy of said email is attached hereto as **Exhibit F**.

16.     On November 22, 2023 at 8:04 AM PT, Mr. Murphy replied to my email requesting to schedule a call with me.

17.     On November 22, 2023, at approximately 9:00 AM PT, Mr. Murphy and I spoke on the phone. On the call, I said that Cogency Global Inc. was the registered agent for service of process for Bitmain Georgia in the State of Georgia and that Cogency Global Inc. had been served

with Plaintiff's Summons and First Amended Complaint on October 25, 2023 and that Cogency Global Inc. had emailed those papers to me on October 25, 2023 for me to forward them to Bitmain Georgia, but I had failed to forward the papers to Bitmain Georgia. I told him that I did not know how I had no recollection of seeing that email and that it may have gone to a different folder when it came in. I believe that when I was talking to him, I was still trying to put pieces together and figure out how I could not recall seeing that email, and thought there might have been a mix up in my emails or it might have been held up in our firm's spam folder when it came in. After the call with Mr. Murphy, at his request, I sent him that same day, at 2:22 PM PT, a timeline of the events that transpired with respect to the service of process on Bitmain Georgia.  A true and correct copy of said email is attached hereto as **Exhibit G**.

18.     On November 23, 2023, at 8:08 PM PT, Mr. Murphy emailed me with a list of 17 questions. A true and correct copy of said email is attached hereto as **Exhibit H**.

19.     On November 24, 2023, at 2:22 PM PT, I responded to Mr. Murphy's email advising him that we were working on the information he had requested. I stated that I would respond to him on November 27, 2023. A true and correct copy of said email is attached hereto as **Exhibit I**. That was my last communication with Mr. Murphy.

20.     While I have no recollection before November 21, 2023 of ever seeing the email sent by the Agent on October 25, 2023, or the Summons and First Amended Complaint downloaded to my work computer, I acknowledge that it was my professional responsibility to review legal documents such as those forwarded to me by the Agent and to forward such documents to Bitmain Georgia accordingly.  Due to my mistake and inadvertence, I never provided

the Summons and First Amended Complaint to anyone at Bitmain Georgia, and never communicated with anyone at Bitmain Georgia regarding the case, prior to November 21, 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of December 2023, at Long Beach, California.

AILAN LIU

# **<u>EXHIBIT A-1</u>**

## BITMAIN TECHNOLOGIES GEORGIA LIMITED
## ORGANIZATIONAL ACTION BY SOLE INCORPORATOR

The undersigned, being the sole incorporator named in the Certificate of Incorporation of Bitmain Technologies Georgia Limited, a Georgia profit corporation (the "*Corporation*"), acting by written consent without a meeting pursuant to Section 14-2-205 of the Georgia Corporations Code, does hereby consent to the adoption of the following resolutions:

### Election of Directors

RESOLVED, that Ran Cheng (the "*Director*") is hereby elected to be the Director of the Corporation to serve until her successor is duly elected and qualified or until her earlier resignation or removal.

RESOLVED FURTHER, that the Director shall complete the organization of the Corporation.

### Resignation of Incorporator

RESOLVED FURTHER, that the undersigned, being the sole incorporator, having elected the Director of the Corporation, does hereby resign.

IN WITNESS WHEREOF, I have duly executed this Organizational Action effective as of July 26, 2021.

_____
Ailan Liu, Incorporator

The undersigned, being elected the Director of the Corporation does hereby acknowledge and accept the resignation of above-referenced incorporator of the Corporation and hereby accepts the appointment as a Director of the Corporation.

Effective as of July 26, 2021.

_____
Ran Cheng, Director

# **EXHIBIT A-2**

**WRITTEN CONSENT OF THE SOLE DIRECTOR**
**OF**
**BITMAIN TECHNOLOGIES GEORGIA LIMITED**
**(a Georgia corporation)**

The undersigned, being the sole director (the "*Sole Director*") of Bitmain Technologies Georgia Limited, a Georgia profit corporation (the "*Corporation*"), acting by written consent without a meeting pursuant to Section 14-2-205 of Georgia Corporations Code, does hereby consent to the adoption of the following resolutions effective as of July 26, 2021, and direct that a copy of such resolutions be filed in the minute book of the Corporation.

## ORGANIZATIONAL MATTERS

**WHEREAS**, the Sole Director deems it advisable and in the best interests of the Shareholders and the Corporation to authorize, approve and confirm the following organizational matters in connection with the organization of the Corporation as necessary.

**NOW THEREFORE, BE IT RESOLVED**, that the Certificate of Incorporation of the Corporation in the form filed in the office of the Georgia Secretary of State on July 23, 2021, and any actions taken by the incorporator of the Corporation in connection therewith, are hereby adopted and approved.

**RESOLVED**, that the following person is hereby elected to serve in the following capacities until such officer's removal or resignation, or until such officer's successor is duly qualified and elected:

Ran Cheng – Chief Executive Officer; Chief Financial Officer; Secretary

**RESOLVED**, that each of the officers of the Corporation is authorized and directed to take such actions and to execute such documents as may be necessary or appropriate to affect the purposes of these resolutions;

**RESOLVED**, that the bylaws in the form presented to the Sole Director (the "*Bylaws*") attached hereto as Exhibit A and incorporated herein by reference, are hereby adopted and approved as the Bylaws of the Corporation until amended or repealed in accordance with applicable law.

**RESOLVED,** that the Secretary of the Corporation is authorized and directed to execute a certificate of the adoption of said Bylaws and to enter said Bylaws in the minute book of the Corporation, and to see that said Bylaws is kept at the principle executive or business office of the Corporation.

**RESOLVED**, that the form of stock certificate, a specimen of which is attached hereto as Exhibit B, hereby is approved and adopted as the form of certificate to evidence shares of common stock of the Corporation;

1

KYL4824-1968-6388.1

**RESOLVED**, that the form of corporate seal imprinted on <u>Exhibit C</u> is adopted as the form of corporate seal of the Corporation;

**RESOLVED**, that Sole Director hereby authorizes and directs that stock certificate No. 1 shall be issued to the sole shareholder representing the specified numbers as indicated hereunder, and that such shares, when issued pursuant to this resolution, shall be validly issued, fully paid and non-assessable shares of common stock of the Corporation:

| Certificate No. | Name of Shareholder | Number of Shares |
|---|---|---|
| 1 | Bitmain Delaware Holding Company, Inc. | 500 |

**RESOLVED,** that it is the judgment of Sole Director that the shareholder has contributed fair consideration for the initial issuance of the Corporation's common stock;

**RESOLVED**, that the fiscal year of the Corporation shall end on December 31 of each year.

**RESOLVED**, that each of the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to open and maintain one or more bank accounts for the Corporation, at such banks as each such officer may determine, and that in connection therewith each such officer may executed and deliver on behalf of the Corporation such forms of banking resolutions as such banks may request and each such officer may approve, which resolutions, when executed by such officer or officers and inserted in the minute book of the Corporation, shall be deemed to be duly adopted resolutions of Sole Director of the Corporation, with the same full force and effect as if such resolutions had been set forth herein in their entirety;

**RESOLVED**, that the officers of the Corporation be, and each of them hereby is, authorized to take all such further action, as any such officer may deem necessary, proper, convenient or desirable in order to carry out each of the foregoing resolutions and fully to effectuate the purposes and intents thereof, and that all actions taken by the officers of the Corporation to date, in connection with the foregoing resolutions, or otherwise, are hereby in all respects confirmed, ratified and approved;

**RESOLVED,** that an executed copy of this Written Consent shall be filed with the minutes of the proceedings of Sole Director

**FURTHER RESOLVED,** that this Written Consent may be executed, via facsimile or any other electronic means, including but limited to DocuSign and AdobeSign, in one or more counterparts, each of which such counterparts when so executed shall be deemed an original and all of which taken together shall constitute but one and the same instrument.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the undersigned has executed this Written Consent effective as of the first date above written.

SOLE DIRECTOR:

程然

Ran CHENG

## **EXHIBIT A**

Bylaws

**BYLAWS**
**BITMAIN TECHNOLOGIES GEORGIA LIMITED**
**(a Georgia profit corporation)**

## ARTICLE 1
## OFFICES

1.1     Registered Office.  The address of the registered office of Bitmain Technologies Georgia Limited, a Georgia profit corporation (hereinafter the "***Corporation***") in the State of Georgia shall be at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA  30076.

1.2     Other Offices.  The Corporation may have offices at such other places, either within or without the State of Georgia, as the Board of Directors (the "***Board of Directors***" or "***Board***") may from time to time determine or as the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

2.1     Place of Meetings.  All meetings of the stockholders shall be held at the office of the Corporation or at such other places as may be fixed from time to time by the Board of Directors, either within or without the State of Georgia, and stated in the notice of the meeting or in a duly executed waiver of notice of the meeting, or the Board may in its sole discretion, determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication.

2.2     Annual Meetings.  Annual meetings of stockholders, commencing with the year 2022, shall be held at the time and place, if any, to be selected by the Board of Directors.  If the day is a legal holiday, then the meeting shall be held on the next following business day.  At the meeting, the stockholders shall elect a Board of Directors and transact such other business as may properly be brought before the meeting.

2.3     Notice of Annual Meeting.  Notice of the annual meeting stating the place, if any, date, and hour of the meeting shall be given in accordance with Section 2.4 of this Article to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.

2.4     Manner of Giving Notice; Affidavit of Notice.  If mailed, notice to stockholders shall be deemed given when deposited in the United States mail, postage prepaid, directed to the stockholder at his/her/its address as it appears on the records of the Corporation.  Without limiting the manner by which notice may otherwise be given effectively to stockholders, any notice to stockholders may be given by electronic transmission in the manner provided in the Georgia Corporations Code.  An affidavit of the secretary or an assistant secretary or of the transfer agent of the Corporation that the notice has been given shall, in the absence of fraud, be prima facie evidence of the facts stated in such affidavit.

2.5     Voting List.  The officer who has charge of the stock ledger of the Corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete

list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during the whole time of the meeting as in the manner provided by law.

2.6     Special Meetings.  Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute or by the Articles of Incorporation, may be called by the chairperson of the Board, the chief executive officer or the president and shall be called by the chief executive officer, the president or secretary at the request in writing of a majority of the Board of Directors, or by the holders of ten percent or more of the outstanding shares of stock of the Corporation.  Such request shall state the purpose or purposes of the proposed meeting.

2.7     Notice of Special Meetings.  Notice of a special meeting stating the place, if any, date, and hour of the meeting and the purpose or purposes for which the meeting is called, shall be given in accordance with Section 2.4 of this Article 2 not less than ten (10) nor more than sixty (60) days before the date of the meeting, to each stockholder entitled to vote at such meeting.  Business transacted at any special meeting of the stockholders shall be limited to the purposes stated in the notice.

2.8     Quorum.  The holders of a majority of the stock issued and outstanding and entitled to vote at meetings of the stockholders, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business, except as otherwise provided by statute or by the Articles of Incorporation.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote at such meeting, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.9     Order of Business.  At each meeting of the stockholders, one of the following persons, in the order in which they are listed (and in the absence of the first, the next, and so on), shall serve as chairperson of the meeting: chairperson of the Board, chief executive officer, president, vice presidents (in the order of their seniority if more than one), and secretary.  The order of business at each such meeting shall be as determined by the chairperson of the meeting. The chairperson of the meeting shall have the right and authority to prescribe such rules, regulations, and procedures and to do all such acts and things as are necessary or desirable for the proper conduct of the meeting, including, without limitation, the establishment of procedures for the maintenance of order and safety, limitations on the time allotted to questions or comments on the affairs of the Corporation, restrictions on entry to such meeting after the time prescribed for the commencement thereof, and the opening and closing of the voting polls.

2.10    Majority Vote.  When a quorum is present at any meeting, the vote of the holders of a majority of the stock having voting power present in person or represented by proxy shall

decide any question brought before such meeting, unless the question is one upon which, by express provision of the statutes or of the Articles of Incorporation, a different vote is required, in which case such express provision shall govern and control the decision of such question.

2.11    Method of Voting.  Unless otherwise provided in the Articles of Incorporation, each stockholder shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of the capital stock having voting power held by such stockholder, but no proxy shall be voted on after three (3) years from its date, unless the proxy provides for a longer period.

2.12    Action by Stockholders Without Meeting.  Unless otherwise restricted by the Articles of Incorporation or these bylaws, any action required or permitted to be taken at any annual or special meeting of the stockholders may be taken without a meeting, without notice and without a prior vote, if a consent or consents in writing or in accordance with the Georgia Corporations Code, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Georgia, its principal place of business or an officer or agent of the Corporation or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to a Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

2.13    Presence at Meetings.  If authorized by the Board of Directors in its sole discretion, and subject to such guidelines and procedures as the Board of Directors may adopt, stockholders and proxyholders not physically present at the meeting of stockholders may by means of remote communication (1) participate in a meeting of stockholders and (2) be deemed present in person and vote at a meeting of stockholders whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (i) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (ii) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (iii) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such vote or other action shall be maintained by the Corporation.

## ARTICLE 3
## DIRECTORS

3.1    General Powers.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by law or by the Articles of Incorporation of the Corporation or by these Bylaws directed or required to be exercised or done by the stockholders.

3.2     Number of Directors.  The Board of Directors of the Corporation shall be one or more members, the number thereof to be determined from time to time by resolution of the Board of Directors. The number of directors constituting the initial Board of Directors shall be one (1) and shall remain such number unless and until changed by resolution of the Board of Directors aforesaid.

3.3     Election, Qualification, and Term of Office of Directors.  Directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting. Directors need not be stockholders unless so required by the Articles of Incorporation or these Bylaws, which may prescribe other qualifications for directors.  Each director, including a director elected to fill a vacancy, shall hold office until his successor is elected and qualified or until his earlier resignation or removal.

3.4     Notification of Nominations.  Subject to the rights of the holders of any class or series of stock having a preference over the common stock as to dividends or upon liquidation, nominations for the election of directors may be made by the Board of Directors or by any stockholder entitled to vote for the election of directors.

3.5     Regular Meetings.  Regular meetings of the Board of Directors may be held without notice at such times and at such places as shall from time to time be determined by the Board.

3.6     Special Meetings.  Special meetings of the Board of Directors may be called by the chairperson of the Board, the chief executive officer or the president, and shall be called by the chief executive officer, the president or the secretary on the written request of two (2) directors unless the Board of Directors consists of only one (1) director, in which case special meetings shall be called by the chief executive officer, the president or the secretary on the written request of the sole director.

3.7     Quorum, Majority Vote.  At all meetings of the Board of Directors, a majority of the entire Board of Directors shall constitute a quorum for the transaction of business and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the Articles of Incorporation.  If a quorum shall not be present at any meeting of the Board of Directors, the directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

3.8     Action Without Meeting.   Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee of the Board of Directors may be taken without a meeting, if all members of the Board or committee, as the case may be, consent to such action in writing, or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of the proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.  Such consent shall have the same force and effect as a unanimous vote at a meeting, and may be stated as such in any document or instrument filed with the Secretary of State of Georgia.

3.9     Telephone and Other Meetings.  Unless otherwise restricted by the Articles of Incorporation or these Bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

3.10     Notice of Meetings.  Notice of regular meetings of the Board of Directors or of any adjourned meeting of the Board of Directors need not be given.  Notice of each special meeting of the Board shall be mailed to each director, addressed to such director at such director's residence or usual place of business, at least two (2) days before the day on which the meeting is to be held or shall be sent to such director at such place by telegraph or be given personally or by telephone, not later than the day before the meeting is to be held, but notice need not be given to any director who shall, either before or after the meeting, submit a signed waiver of such notice or who shall attend such meeting without protesting, prior to or at its commencement, the lack of notice to such director.  Every such notice shall state the time and place but need not state the purpose of the meeting.

3.11     Rules and Regulations.  The Board of Directors may adopt such rules and regulations not inconsistent with the provisions of law, the Articles of Incorporation of the Corporation, or these Bylaws for the conduct of its meetings and management of the affairs of the Corporation as the Board may deem proper.

3.12     Resignations.  Any director of the Corporation may at any time resign by giving notice in writing or by electronic transmission to the Board of Directors, the chairperson of the Board, the chief executive officer, the president, or the secretary of the Corporation.  Such resignation shall take effect at the time specified in such notice or, if the time be not specified, upon receipt of such notice; and, unless otherwise specified in such notice, the acceptance of such resignation shall not be necessary to make it effective.

3.13     Removal of Directors.  Unless otherwise restricted by statute, by the Articles of Incorporation, or by these Bylaws, any director or the entire Board of Directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.

3.14     Vacancies.  Subject to the rights of the holders of any class or series of stock having a preference over the common stock of the Corporation as to dividends or upon liquidation, any vacancies on the Board of Directors resulting from death, resignation, removal, or other cause shall only be filled by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum of the Board of Directors, or by a sole remaining director, and newly created directorships resulting from any increase in the number of directors shall be filled by the Board of Directors, or if not so filled, by the stockholders at the next annual meeting of the stockholders or at a special meeting called for that purpose in accordance with Section 2.6 of Article 2 of these Bylaws.  Any director elected in accordance with the preceding sentence of this Section shall hold office for the remainder of the full term of the class of directors in which the new directorship was created or the vacancy occurred and until such successor shall have been elected and qualified.

KYL4825-1826-0980.1

3.15    Compensation of Directors.   Unless otherwise restricted by the Articles of Incorporation or these Bylaws, the stockholders shall have the authority to fix the compensation of directors.  The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director.  No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation for such service. Members of special or standing committees may be allowed like compensation for attending committee meetings.

## ARTICLE 4
## EXECUTIVE AND OTHER COMMITTEES

4.1    Executive Committee.   The Board of Directors may, by resolution adopted by a majority of the entire Board, designate annually one or more of its members to constitute members or alternate members of an executive committee, which committee shall have and may exercise, between meetings of the Board, all the powers and authority of the Board in the management of the business and affairs of the Corporation, including, if such committee is so empowered and authorized by resolution adopted by a majority of the entire Board, the power and authority to declare a dividend and to authorize the issuance of stock, and may authorize the seal of the Corporation to be affixed to all papers which may require it, except that the executive committee shall not have such power or authority with reference to:

(a)    amending the Articles of Incorporation of the Corporation;

(b)    adopting an agreement of merger or consolidation involving the Corporation;

(c)    recommending to the stockholders the sale, lease or exchange of all or substantially all of the property and assets of the Corporation;

(d)    recommending to the stockholders a dissolution of the Corporation or a revocation of a dissolution;

(e)    adopting, amending, or repealing any Bylaw;

(f)    filling vacancies on the Board or on any committee of the Board, including the executive committee;

(g)    amending or repealing any resolution of the Board which by its terms may be amended or repealed only by the Board.

4.2    Other Committees.   The Board of Directors may, by resolution adopted by a majority of the entire Board, designate from among its members one or more other committees, each of which shall, except as otherwise prescribed by law, have such authority of the Board as may be specified in the resolution of the Board designating such committee.  A majority of all the members of such committee may determine its action and fix the time and place of its meetings, unless the Board shall otherwise provide.  The Board shall have the power at any time

to change the membership of, to increase or decrease the membership of, to fill all vacancies in, and to discharge any such committee, or any member of any such committee, either with or without cause.

4.3    Procedure; Meetings; Quorum.  Regular meetings of the executive committee or any other committee of the Board of Directors, of which no notice shall be necessary, may be held at such times and places as shall be fixed by resolution adopted by a majority of the members of such committee.  Special meetings of the executive committee or any other committee of the Board shall be called at the request of any member of such committee.  Notice of each special meeting of the executive committee or any other committee of the Board shall be sent by mail, telegraph, or telephone, or be delivered personally to each member of such committee not later than the day before the day on which the meeting is to be held, but notice need not be given to any member who shall, either before or after the meeting, submit a signed waiver of such notice or who shall attend such meeting without protesting, prior to or at its commencement, the lack of such notice to such member.  Any special meeting of the executive committee or any other committee of the Board shall be a legal meeting without any notice of such meeting having been given, if all the members of such committee shall be present at such meeting.  Notice of any adjourned meeting of any committee of the Board need not be given. The executive committee or any other committee of the Board may adopt such rules and regulations not inconsistent with the provisions of law, the Articles of Incorporation of the Corporation, or these Bylaws for the conduct of its meetings as the executive committee or any other committee of the Board may deem proper.  A majority of the executive committee or any other committee of the Board shall constitute a quorum for the transaction of business at any meeting, and the vote of a majority of the members of such committee present at any meeting at which a quorum is present shall be the act of such committee.  In the absence or disqualification of a member, the remaining members, whether or not a quorum, may fill a vacancy.  The executive committee or any other committee of the Board of Directors shall keep written minutes of its proceedings, a copy of which is to be filed with the secretary of the Corporation, and shall report on such proceedings to the Board.

## ARTICLE 5
## NOTICES

5.1    Method.  Whenever, under the provisions of the statutes or of the Articles of Incorporation or of these Bylaws, notice is required to be given to any director or stockholder, it shall not be construed to mean personal notice, but such notice may be given in writing, by mail, electronic mail, overnight delivery, facsimile or any other manner, addressed to such director or stockholder, at his/her mailing address, electronic mail address, or facsimile number as it appears on the records of the Corporation, with postage on such notice prepaid (as applicable), and such notice shall be deemed to be given at the time when the same shall be deposited in the United States mail if sent by mail or when received if sent by electronic mail, overnight delivery, or facsimile.

5.2    Waiver.  Whenever any notice is required to be given under the provisions of the statutes or of the Articles of Incorporation or of these Bylaws, a written waiver of such notice, signed by the person or persons entitled to said notice or waiver by electronic transmission by

such person, whether before or after the time stated in such waiver, shall be deemed equivalent to notice.

# ARTICLE 6
## OFFICERS

6.1     Election, Qualification.  The officers of the Corporation shall be chosen by the Board of Directors and shall include a Chief Executive Officer, Chief Financial Officer and Secretary. The Board of Directors may also choose a chairperson of the Board, a chief operating officer, president, one or more vice presidents, a treasurer, one or more assistant secretaries and assistant treasurers and such other officers and agents as it shall deem necessary.  Any number of offices may be held by the same person, unless the Articles of Incorporation or these Bylaws otherwise provide.

6.2     Salary.  The salaries of all officers and agents of the Corporation shall be fixed by the Board of Directors.

6.3     Term, Removal.  Each officer shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal.  Any officer elected or appointed by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors.  Any vacancy occurring in any office of the Corporation shall be filled by the Board of Directors.

6.4     Resignation.   Subject at all times to the right of removal as provided in Section 6.3 of this Article 6 and to the provisions of any employment agreement, any officer may resign at any time by giving notice to the Board of Directors, the chief executive officer, the president, or the secretary of the Corporation.  Any such resignation shall take effect at the date of receipt of such notice or at any later date specified provided that the chief executive officer or president or, in the event of the resignation of the chief executive officer or the president, the Board of Directors may designate an effective date for such resignation which is earlier than the date specified in such notice but which is not earlier than the date of receipt of such notice; and, unless otherwise specified in such notice, the acceptance of such resignation shall not be necessary to make it effective.

6.5     Vacancies.  A vacancy in any office because of death, resignation, removal, or any other cause may be filled for the unexpired portion of the term in the manner prescribed in these Bylaws for election to such office.

6.6     Chairperson of the Board.  The chairperson of the Board, if there be such an officer, shall preside at all meetings of the stockholders and the Board of Directors and shall perform all duties incident to the office of chairperson of the Board and as from time to time may be assigned to him or her by the Board of Directors.  Except as otherwise provided by resolution of the Board of Directors, the chairperson of the Board shall be ex-officio a member of all committees of the Board of Directors.   In the absence of the chief executive officer, the chairperson of the Board shall be the chief executive officer of the Corporation.

KYL4825-1826-0980.1

6.7     <u>Chief Executive Officer</u>.  The chief executive officer, if there be such an officer, shall, subject to the provisions of these Bylaws and to the direction and supervision of the Board of Directors, (i) have general and active management of the affairs of the Corporation and have general supervision of its officers, agents and employees; (ii) in the absence of the chairperson of the Board, preside at all meetings of the stockholders and the Board of Directors; (iii) have primary responsibility for the implementation of the policies adopted from time to time by the Board of Directors; and (iv) perform those other duties incident to the office of chief executive officer and as from time to time may be assigned to him or her by the Board of Directors.

6.8     <u>President</u>.  The president, if there be such an officer, shall, subject to the provisions of these bylaws and to the direction and supervision of the Board of Directors, perform all duties incident to the office of president and as from time to time may be assigned to him or her by the Board of Directors.  At the request of the chief executive officer or in the absence of the chief executive officer and the chairperson of the Board, in the event of their inability or refusal to act, the president shall perform the duties of the chief executive officer, and when so acting shall have all the powers and be subject to all restrictions of the chief executive officer.

6.9     <u>Chief Financial Officer</u>.  The chief financial officer, if there be such an officer, shall, subject to the provisions of these Bylaws and to the direction and supervision of the Board of Directors and the chief executive officer, manage the financial affairs of the Corporation and perform those other duties incident to the office of chief financial officer and as from time to time may be assigned to him or her by the Board of Directors or the chief executive officer.  If there is no chief financial officer, these duties shall be performed by the treasurer or such other person designated by the Board of Directors to perform such duties.

6.10    <u>Vice Presidents</u>.  The vice president, if there be such an officer (or if there is more than one, then each vice president), shall perform such duties as from time to time may be assigned to him or her by the Board of Directors, the chief executive officer or the president.  In the absence of the chief executive officer, the president and the chairman of the Board or, in the event of their inability or refusal to act, the vice president, if there be such an officer (or in the event there be more than one vice president, the vice presidents in the order designated by the directors, or, in the absence of any designation, then in the order of their election), shall perform the duties of the president and, when so acting, shall have all the powers of and be subject to all the restrictions upon the president.  The vice presidents shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

6.11    <u>Secretary</u>.  The secretary shall attend all meetings of the Board of Directors and all meetings of the stockholders and record all the proceedings of the meetings of the Corporation and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required.  The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors, chief executive officer, or president, under whose supervision he/she shall be.  The Secretary shall have custody of the corporate seal of the Corporation and he, or an assistant secretary, shall have authority to affix the same to any instrument requiring it and when so affixed, it may be attested by the Secretary's signature or by the signature of such assistant secretary.  The Board of

Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

## ARTICLE 7
## INDEMNIFICATION OF DIRECTORS,
## OFFICERS, EMPLOYEES, AND AGENTS

7.1     Indemnification.     The Corporation shall provide indemnification of (and advancement of expenses to) its directors and officers, subject only to limits created by applicable Georgia law (statutory or non-statutory), with respect to actions for breach of duty to the Corporation, its stockholders, and others.  To the fullest extent permitted by applicable law, the Corporation is also authorized to provide indemnification of (and advancement of expenses to) its agents (and any other persons to which Georgia law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors, or otherwise, in excess of the indemnification and advancement otherwise permitted by the Georgia Corporations Code, subject only to limits created by applicable Georgia law (statutory or non-statutory), with respect to actions for breach of duty to the Corporation, its stockholders, and others.  Any repeal or modification of any of the foregoing provisions of this section shall not adversely affect any right or protection of a director, officer, agent, or other person existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director, officer, or agent occurring prior to, such repeal or modification.

7.2     Indemnification Not Exclusive.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which any person seeking indemnification may be entitled under any law, agreement, vote of stockholders or disinterested directors, or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such a person.

7.3     Insurance.  The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee, or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against liability under the provisions of this Article.

7.4     Definitions of Certain Terms.  For purposes of this Article, references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, employees, or agents, so that any person who is or was a director, officer, employee, or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, shall stand in the same position under the provisions of this

Article with respect to the resulting or surviving corporation as such person would have with respect to such constituent corporation if its separate existence had continued.

For purposes of this Article, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; references to "serving at the request of the Corporation" shall include any service as a director, officer, employee, or agent of the Corporation which imposes duties on, or involves services by, such director, officer, employee, or agent with respect to an employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article.

7.5     Liability of Directors.   Notwithstanding any provision of the Articles of Incorporation or any other provision in these Bylaws, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, or (iii) for any transaction from which the director derived an improper personal benefit.   No amendment to or repeal of this section shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

# ARTICLE 8
# CERTIFICATES OF STOCK

8.1     Certificates.   Every holder of stock in the Corporation shall be entitled to have a certificate, signed by, or in the name of the Corporation by, the chairman of the Board of Directors, or the chief executive officer, president or a vice president and the chief financial officer, treasurer or an assistant treasurer, or the secretary or an assistant secretary of the Corporation, certifying the number of shares owned by him in the Corporation.

8.2     Facsimile Signatures.   Any of or all the signatures on the certificate may be facsimile.   In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent, or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent, or registrar at the date of issue.

8.3     Lost, Stolen or Destroyed Certificates.   The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates previously issued by the Corporation alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen, or destroyed.   When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance of such new certificate or certificates, require the owner of such lost, stolen, or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require

and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen, or destroyed.

8.4     Transfers of Stock.  Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment, or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled to such certificate, cancel the old certificate and record the transaction upon its books.

8.5     Fixing Record Date.  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment of any meeting of stockholders, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights, or to exercise any rights in respect of any change, conversion, or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting, nor more than sixty (60) days prior to any other action.   A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided that the Board of Directors may fix a new record date for the adjourned meeting.

8.6     Registered Stockholders.  The Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and to hold liable for calls and assessments a person registered on its books as the owner of shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice of such claim or interest, except as otherwise provided by the laws of Georgia.

## ARTICLE 9
## AFFILIATED TRANSACTIONS

9.1     Validity.  Except as otherwise provided for in the Articles of Incorporation and except as otherwise provided in these Bylaws, if Section 9.2 is satisfied, no contract or transaction between the Corporation and any of its directors, officers, or security holders, or any corporation, partnership, association, or other organization in which any of such directors, officers, or security holders are directly or indirectly financially interested, shall be void or voidable solely because of this relationship, or solely because of the presence of the director, officer, or security holder at the meeting authorizing the contract or transaction, or solely because of his or their participation in the authorization of such contract or transaction or vote at the meeting for authorization of such contract or transaction, whether or not such participation or vote was necessary for the authorization of such contract or transaction.

9.2     Disclosure, Approval; Fairness.  Section 9.1 shall apply only if:

12

(a)     the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known:

(i)     to the Board of Directors (or committee of the Board of Directors) and it nevertheless in good faith authorizes or ratifies the contract or transaction by a majority of the directors present, each such interested director to be counted in determining whether a quorum is present but not in calculating the majority necessary to carry the vote; or

(ii)     to the stockholders and they nevertheless authorize or ratify the contract or transaction by a majority of the shares present at a meeting considering such contract or transaction, each such interested person (stockholder) to be counted in determining whether a quorum is present and for voting purposes; or

(b)     the contract or transaction is fair to the Corporation as of the time it is authorized or ratified by the Board of Directors (or committee of the Board of Directors) or the stockholders.

9.3     <u>Nonexclusive</u>.  This provision shall not be construed to invalidate a contract or transaction that would be valid in the absence of this provision.

## ARTICLE 10
## GENERAL PROVISIONS

10.1     <u>Dividends</u>.  Dividends upon the capital stock of the Corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Directors at any regular or special meeting, pursuant to law.  Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the Articles of Incorporation.

10.2     <u>Reserves</u>.  Before payment of any dividend, there may be set aside out of any funds of the Corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the directors shall think conducive to the interest of the Corporation, and the directors may modify or abolish any such reserve in the manner in which it was created.

10.3     <u>Annual Statement</u>.  The Board of Directors shall present at each annual meeting, and at any special meeting of the stockholders when called for by vote of the stockholders, a full and clear statement of the business and condition of the Corporation.

10.4     <u>Checks</u>.  All checks or demands for money and notes of the Corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

10.5     <u>Fiscal Year</u>.  The fiscal year of the Corporation shall be fixed by resolution of the Board of Directors.

10.6   <u>Seal</u>.  The Board of Directors may adopt a corporate seal having inscribed on such seal the name of the Corporation, the year of its organization, and the words "Corporate Seal, Georgia."  The seal may be used by causing it or a facsimile of it to be impressed or affixed or reproduced or otherwise, as may be prescribed by law or custom or by the Board of Directors.

## ARTICLE 11
## <u>AMENDMENTS</u>

11.1   <u>Amendments</u>.   These Bylaws may be altered, amended, or repealed or new Bylaws may be adopted by a majority of the entire Board of Directors, at any meeting of the Board of Directors if notice of such alteration, amendment, repeal, or adoption of new Bylaws be contained in the notice of such meeting.  The stockholders of the Corporation shall have the power to adopt, amend, or repeal any provisions of the Bylaws only to the extent and in the manner provided in the Articles of Incorporation of the Corporation.

## ARTICLE 12
## <u>ADVISORY COMMITTEES</u>

12.1   <u>Advisory Committees</u>.  The Board of Directors may, in its discretion, establish one or more technical, strategic or scientific advisory committees and appoint one or more persons as members of such advisory committees to serve in such capacity at the pleasure of the Board.  Each member of an advisory committee shall be entitled to receive such amounts as may be fixed from time to time by the Board of Directors as compensation for attending committee meetings and may be reimbursed for all reasonable expenses in attending and returning from any committee meeting.   No advisory committee may set policy or be part of the corporate governance of the Corporation, and no advisory committee member may be responsible for the implementation of strategies or, in his or her capacity as a member of such committee, be involved in the management of the Corporation.  Subject to the foregoing restrictions, the Board may adopt a charter or other governing documents of any advisory Board.

KYL4825-1826-0980.1

## **EXHIBIT B**

Specimen of the Stock Certificate



INCORPORATED UNDER THE LAWS

OF THE STATE OF GEORGIA

JULY 23, 2021

*No.* ___ **1**

*Share(s)* ___

# BITMAIN TECHNOLOGIES GEORGIA LIMITED

Authorized Capital Stock: 1,000 Common Shares

## This Certifies that

*holder of* _____ *is the record* _____ *Shares*

*transferable only on the books of the Corporation by the holder hereof in person or by Attorney*

*upon surrender of this Certificate properly endorsed or assigned.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly*

*authorized officers and its Corporate Seal to be hereunto affixed*

*this* _____ *day* _____ *of* _____ *A. D.* _____

_____
Secretary

_____
President

**<u>EXHIBIT C</u>**

Specimen of the Corporate Seal



# **EXHIBIT B**

**Liu, Ailan**

| | |
|---|---|
| **From:** | 侯晓珏Polly HOU <xiaojue.hou@bitmain.com> |
| **Sent:** | Monday, November 20, 2023 6:34 PM |
| **To:** | Liu, Ailan |
| **Cc:** | Legal.SSC; Legal Support; Julie Qi; 汪怡安yian.wang |
| **Subject:** | Re: Notice of Service of Process |
| **Attachments:** | 2023-09-30 - Doc. 50 - First Amended Complaint.pdf |

Dear Ailan,

Recently our colleague received the attached case notice from the United States District Court for the district of Wyoming and Bitmain Technologies Georgia Limited was listed as one of the defendants.

Please check whether your company has received the case notice as stated above and accepted the same.

Your early reply will be highly appreciated. Thank you.


Polly Hou 侯晓珏
BITMAIN Legal Department 比特大陆法务部

汪怡安 yian.wang <yian.wang@bitmain.com> 于 2023 年 11 月 21 日周二 09:13 写道：
Hi Polly,

亮哥从美国矿场方 Mineone 处收到附件中的起诉状，是 Mineone 的一家合作方与 Mineone 的纠纷，但将几家比特的主体列为了共同被告。请帮忙尽快跟秘书公司确认我们是否收到了法院的通知，以及是否接受了 service。谢谢！


Best regards,

Yian



**<u>EXHIBIT C</u>**

**Liu, Ailan**

| | |
|---|---|
| **From:** | Liu, Ailan |
| **Sent:** | Monday, November 20, 2023 6:38 PM |
| **To:** | Thomas, Casey |
| **Subject:** | FW: Notice of Service of Process - 8577-1 |
| **Attachments:** | 2023-09-30 - Doc. 50 - First Amended Complaint.pdf |

Tomorrow, can you please look into this to find out if we have been provided a notice of service of process from Cogency Global. I don't recall having seen this or something related to this.

Thanks,

Ailan

..................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong. This e-mail contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message. Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document. Unauthorized use of this information in any manner is prohibited.

**From:** 侯晓珏Polly HOU <xiaojue.hou@bitmain.com>
**Sent:** Monday, November 20, 2023 6:34 PM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Legal.SSC <legal.ssc@bitmain.com>; Legal Support <legal.support@bitmain.com>; Julie Qi <julie.qi@bitmain.com>; 汪怡安yian.wang <yian.wang@bitmain.com>
**Subject:** Re: Notice of Service of Process

Dear Ailan,

Recently our colleague received the attached case notice from the United States District Court for the district of Wyoming and Bitmain Technologies Georgia Limited was listed as one of the defendants.

Please check whether your company has received the case notice as stated above and accepted the same.

Your early reply will be highly appreciated. Thank you.

Polly Hou 侯晓珏
BITMAIN Legal Department 比特大陆法务部

汪怡安yian.wang <yian.wang@bitmain.com> 于2023年11月21日周二 09:13写道：

**Hi Polly,**

亮哥从美国矿场方**Mineone**处收到附件中的起诉状，是**Mineone**的一家合作方与**Mineone**的纠纷，但将几家比特的主体列为了共同被告。请帮忙尽快跟秘书公司确认我们是否收到了法院的通知，以及是否接受了**service**。谢谢！

Best regards,

Yian



# **EXHIBIT D**

**Liu, Ailan**

| | |
|---|---|
| **From:** | Thomas, Casey |
| **Sent:** | Tuesday, November 21, 2023 9:23 AM |
| **To:** | Liu, Ailan |
| **Subject:** | RE: Notice of Service of Process - 8577-1 |
| **Attachments:** | Bitmain%20Technologies.pdf |

I found it online on and it was served on 10/25.

They said it was sent out the same day.  I am having them resend it to you—to make sure they have your email correct and they sent it to the correct place.

But, I have also attached it.   Will saved to 8577-1.

Later, after I get the Breakers docs organized, I will go through the Service of process to make sure we got them all. (for all entities)

---

**From:** Liu, Ailan <ailan.liu@kyl.com>
**Sent:** Monday, November 20, 2023 6:38 PM
**To:** Thomas, Casey <casey.thomas@kyl.com>
**Subject:** FW: Notice of Service of Process - 8577-1

Tomorrow, can you please look into this to find out if we have been provided a notice of service of process from Cogency Global. I don't recall having seen this or something related to this.

Thanks,

Ailan


.......................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

---

**From:** 侯晓珏Polly HOU <xiaojue.hou@bitmain.com>
**Sent:** Monday, November 20, 2023 6:34 PM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Legal.SSC <legal.ssc@bitmain.com>; Legal Support <legal.support@bitmain.com>; Julie Qi <julie.qi@bitmain.com>; 汪怡安yian.wang <yian.wang@bitmain.com>
**Subject:** Re: Notice of Service of Process

Dear Ailan,

Recently our colleague received the attached case notice from the United States District Court for the district of Wyoming and Bitmain Technologies Georgia Limited was listed as one of the defendants.

Please check whether your company has received the case notice as stated above and accepted the same.

Your early reply will be highly appreciated. Thank you.


Polly Hou 侯晓珏
BITMAIN Legal Department 比特大陆法务部

汪怡安yian.wang <yian.wang@bitmain.com> 于2023年11月21日周二 09:13写道：

Hi Polly,

亮哥从美国矿场方Mineone处收到附件中的起诉状，是Mineone的一家合作方与Mineone的纠纷，但将几家比特的主体列为了共同被告。请帮忙尽快跟秘书公司确认我们是否收到了法院的通知，以及是否接受了service。谢谢！


Best regards,

Yian



# **<u>EXHIBIT E</u>**

**Liu, Ailan**

---

| | |
|---|---|
| **From:** | sop@cogencyglobal.com |
| **Sent:** | Wednesday, October 25, 2023 12:47 PM |
| **To:** | Liu, Ailan |
| **Subject:** | Service of Process for Entity: BITMAIN TECHNOLOGIES GEORGIA LIMITED |



## NOTICE OF SERVICE OF PROCESS

**Entity Served:** BITMAIN TECHNOLOGIES GEORGIA LIMITED
**Received in:** Georgia

Cogency Global Inc. has received the enclosed document on behalf of the above named entity. As the appointed registered agent or agent for service of process for the entity, we are forwarding the document to you. By clicking the **"Retrieve Document"** button you acknowledge the receipt of this service of process on behalf of the entity listed.

| | |
|---|---|
| **Client Group:** | KEESAL YOUNG |
| **SOP Number:** | 1207248 |
| **Document Type:** | Summons & Complaint |
| **Date of Service:** | 10/25/2023 |
| **Service Method:** | Personal |
| **Court:** | In the United States District Court, District of Wyoming |
| **Document Caption:** | BCB Cheyenne LLC vs Mineone Wyoming Data Center LLC, et al. Including: BITMAIN TECHNOLOGIES GEORGIA LIMITED |
| **Case Number:** | 23-CV-079-ABJ |
| **Original to Follow:** | No |
| **Delivery Method:** | Email |

## Click Here to Retrieve Document

## Important Reminders

The above link is valid until 11/1/2023 at 11:59pm EST. The document is also available for viewing at www.entitycentral.com. If you have any questions or concerns, please contact us at sop@cogencyglobal.com or 866-621-3524.

The original of this document will not follow, except if the service of process contains a check or is oversized. If you wish to receive the original document, please contact us within 7 days.

*This notice and, if applicable, document link (together, the "Notice") is being sent to, and is intended for, the contact designated in Cogency Global Inc.'s records to receive service of process. We are not responsible for any loss, injury, claim, liability, or damage arising from your use of or reliance on the information contained within the Notice, including, but not limited to, any error or omission in the information contained within the Notice or from any subsequent transmission or third-party access to the Notice. This Notice should be reviewed by your legal and/or tax advisors, and questions concerning whether or how to respond to any document received by us on your entity's behalf should be directed to them. The information contained in the transmittal portion of the Notice is solely for informational purposes, is not a substitute for legal or tax advice, and cannot be relied on to provide complete information.*

**<u>EXHIBIT F</u>**

**Liu, Ailan**

| | |
|---|---|
| **From:** | Liu, Ailan |
| **Sent:** | Tuesday, November 21, 2023 12:34 PM |
| **To:** | pmurphy@wpdn.net |
| **Cc:** | Giffin, John; smurray@wpdn.net |
| **Subject:** | Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited |

Dear Mr. Murphy:

We are US counsel for Bitmain Technologies Georgia Limited ("Bitmain"). We just learned today about the subject matter case that was filed against our client by your client BCB Cheyenne LLC. Based on what we can see from the court docket of this case, a default judgement has been entered against Bitmain. We are writing to see if your client is willing to voluntarily set aside the default and to stipulate to allow Bitmain to respond.

I also left a voice mail to your office to the similar effect, you can disregard that. I was told that you would not be back to the office until next Monday, but I am looking forward to your response at your earliest convenience.

Best regards,

Ailan


........................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong. This e-mail contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message. Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document. Unauthorized use of this information in any manner is prohibited.

# **<u>EXHIBIT G</u>**

**Liu, Ailan**

---

| | |
|---|---|
| **From:** | Liu, Ailan |
| **Sent:** | Wednesday, November 22, 2023 2:22 PM |
| **To:** | Patrick Murphy |
| **Cc:** | Giffin, John; Scott C. Murray |
| **Subject:** | RE: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited |

Dear Mr. Murphy:

Thanks for the call this morning regarding the subject matter.  As what I described on the call, the agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an email with the link to the summons and complaint on October 25, 2023.  I missed that particular email inadvertently.  It was brought to my attention on 11/20/2023 that the amended complaint was filed against Bitmain.  We made inquiry to Cogency Global immediately and obtained a copy of the Summons and Complaint on 11/21/2023.  That is when I reached out to you to seek a stipulation to allow Bitmain to respond.  Bitmain being late to respond was completely due to the inadvertency on my part, without any intention by our client or us to delay to respond.  Had I not missed the email, Bitmain would have taken necessary steps in this action. In that case, we would have requested an extension for us to arrange a local counsel to respond on behalf of Bitmain.

I appreciate your consideration of a stipulation to voluntarily set aside the default and allow our client to respond.

Best regards,

Ailan

....................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

**From:** Patrick Murphy <pmurphy@wpdn.net>
**Sent:** Wednesday, November 22, 2023 8:04 AM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Giffin, John <John.Giffin@kyl.com>; Scott C. Murray <smurray@wpdn.net>
**Subject:** Re: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited

Good morning, Ailan —.

Are you able to visit soon?  I am.  What time would work best for me to call your cell phone?

Pat Murphy
(307) 262-2872 (cell)

On Nov 21, 2023, at 1:34 PM, Liu, Ailan <ailan.liu@kyl.com> wrote:


Dear Mr. Murphy:

We are US counsel for Bitmain Technologies Georgia Limited ("Bitmain"). We just learned today about
the subject matter case that was filed against our client by your client BCB Cheyenne LLC.  Based on
what we can see from the court docket of this case, a default judgement has been entered against
Bitmain.  We are writing to see if your client is willing to voluntarily set aside the default and to stipulate
to allow Bitmain to respond.

I also left a voice mail to your office to the similar effect, you can disregard that.  I was told that you
would not be back to the office until next Monday, but I am looking forward to your response at your
earliest convenience.

Best regards,

Ailan

..................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential
and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or
any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing
in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized
use of this information in any manner is prohibited.

This email has been scanned for spam and viruses. Click here to report this email as spam.

# **<u>EXHIBIT H</u>**

**Liu, Ailan**

| | |
|---|---|
| **From:** | Patrick Murphy <pmurphy@wpdn.net> |
| **Sent:** | Thursday, November 23, 2023 8:08 PM |
| **To:** | Liu, Ailan |
| **Cc:** | Patrick Murphy; Scott C. Murray |
| **Subject:** | Re: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited |

Dear Ms. Liu:

Thank you for our call yesterday morning and for your follow-up e-mail below. As I told you on the phone, I want to better understand exactly what happened that your client, Bitmain Technologies Georgia Limited, did not timely answer BCB's First Amended Complaint on the November 15 deadline for doing so. I will be visiting with my client representatives tomorrow, and I am trying to anticipate their questions to me (when I tell them you want BCB Cheyenne LLC to voluntarily stipulate to lift the November 17 Entry of Default).

I also shared with you yesterday morning that I might have some follow-up questions after receiving your afternoon e-mail. Indeed, your e-mail engendered more questions than I imagined I would have.

I am concerned about the inconsistencies between what you shared with me on the phone yesterday morning, and what I am now seeing in your e-mail yesterday afternoon.

On the phone, you told me that your lawfirm is "national counsel" for Bitmain Technologies Georgia Limited ("Bitmain Georgia"). Your firm, you said, is the United States "contact" for Bitmain Georgia. You also told me that:

1. Cogency Global, Inc. is the registered agent for service of process for Bitmain Georgia in the State of Georgia;

2. "Usually Cogency Global, Inc. sends complaints and summonses to your Firm" as the United States (National) contact and agent for Bitmain Georgia;

3. Cogency Global, Inc. was served with Plaintiff BCB Cheyenne LLC's First Amended Complaint and Summons on October 25, 2023;

4. Cogency Global, Inc. sent an e-mail to your Firm on October 25, 2023 with the First Amended Complaint and Summons attached to it;

5. That October 25 e-mail from Cogency Global, Inc. was "not received" [by you or your Firm].

6. That October 25 e-mail from Cogency Global, Inc. did not go to your e-mail inbox;

7. That October 25 e-mail from Cogency Global, Inc. instead went to a "different folder;" and

8. Someone with your Firm later discovered that October 25 e-mail from Cogency Global, Inc. in your lawfirm "system" [but you did not say "when, or what day, "what system," "what folder," or by whom it was discovered at your lawfirm, or what alerted someone at your lawfirm to look for it.

9. You told me "this was just a mix up in our lawfirm e-mail system;" and that Bitmain Georgia, your client, was not trying to stall or delay answering BCB's First Amended Complaint.

10. You said that you recently asked someone at Cogency Global, Inc. to "re-send you" its October 25 e-mail, which they

did, and that you received it in your inbox.  You also volunteered that you were mistaken when you wrote to me that there had been a "default judgment" against Bitmain Georgia.  We both agreed that the Clerk of the District Court entered "default" against Bitmain Georgia, but not "default judgment."

11.  Finally, you told me that your Firm had not yet retained local counsel in Wyoming to represent Bitmain Georgia.  You wanted my client to voluntarily stipulate to lift or set aside the default for no money or other consideration, and you asked for additional time to retain local counsel in Wyoming and work your way through the First Amended Complaint.

But then, yesterday afternoon, you wrote to me saying:

1.  "The agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an e-mail with the link to the summons and complaint on October 25, 2023;"

2.  "[You] missed that e-mail inadvertently;"

3.  "It was brought to [your] attention on 11/20/23 that the amended complaint was filed against against Bitmain [your client];"

4.  "We [you?] made inquiry to Cogency Global immediately and obtained a copy of the Summons and Complaint on 11/21/23;" and

5.  "That is when I reached out to you to seek a stipulation to allow Bitmain to respond." You say that, "Bitmain being late to respond was completely due to the inadvertence on my part, without any intention by our client to or us to delay to respond."

So here are the questions your call and subsequent e-mail raise for me, Ms. Liu:

1.  Our research shows that Cogency Global, Inc. is the registered agent for service of process for four Bitmain entities operating in at least seven states; is this true?

2.  For how long has your California lawfirm been national counsel for various Bitmain entities?

3.  Are you the lead counsel for your Firm for the Bitmain entities with whom Cogency Global, Inc. sends summonses and complaints and/or other legal papers?

4.  For how many years have you been the person at your lawfirm to whom Cogency Global, Inc. sends legal papers served on (a) various Bitmain entities, and (b) Bitmain Georgia?

5.  Did your client, Bitmain Georgia, earlier authorize you to receive any legal papers served on Bitmain Georgia from Cogency Global, Inc., and thereafter distribute and/or communicate those legal papers to the appropriate people at Bitmain?

6.  Did you receive Cogency Global, Inc.'s October 25 e-mail in your Ailan Liu computer inbox on October 25, 2023?

7.  What is your e-mail address to which Cogency Global, Inc. sent its October 25, 2023 e-mail to you (and at which you received it)?

8.  Have you confirmed that you received Cogency Global, Inc.'s October 25 e-mail in your inbox, and that its October 25, 2023 e-mail has remained, and been visible, in your inbox ever since?

9.  Did you see Cogency Global, Inc.'s October 25 e-mail on October 25?  If not, why did you not see it any time on

October 25?

10.  Did you "read" Cogency Global's, Inc.'s October 25 e-mail on October 25?  If not, why did you not read it at any time on October 25?

11.  Do you read all of the e-mails that come to your inbox every day?  If not, why don't you read all the e-mails that come to your inbox every day?

12.  Did Cogency Global, Inc. copy anyone else (besides you) with its October 25 e-mail?  If so, "who else" did they copy with its October 25, 2023 e-mail?

13.  Would you please forward Cogency Global, Inc.'s October 25 e-mail to me (so I can read it)?

14.  Did you read, or re-read, any of your October 25 e-mails on October 26?  If so, was Cogency Global, Inc.'s October 25 e-mail one of the e-mails you re-read on October 26?

15.  Were you in your office most of the day on October 25, 2023?  Were you tracking and reading your e-mails that came to your inbox that day?  Same questions for October 26 and 27, please.

16.  Do you receive all your work e-mails on both your office computer, your mobile phone, your tablet, or any other device?

17.  What was the very first moment you heard, or learned, that a lawsuit had been filed or served against Bitmain Georgia?  What day did you first learn of it?  How, or in what way, did you first hear or learn of it?  "Who" is the person who first notified you, or alerted you, to BCB's lawsuit against Bitmain Georgia?  Which company or lawfirm does that person work for?

Thank you, in advance, for answering these questions for me, Ms. Liu.  I want to discuss your answers with my client representatives this Friday when I raise with my client representatives your request that BCB voluntarily stipulate to lift, or set aside, this Default for no consideration.  I know you say that you missed Cogency Global's October 25 e-mail (with the First Amended Complaint and Summons) "through [your] inadvertency," but my questions above are aimed at discerning the underlying facts of that perceived inadvertency, or whether it was due to some neglect or "excusable" neglect.

Thank you.

Pat Murphy
Counsel for Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain
(307) 262-2872 (cell)


On Nov 22, 2023, at 3:22 PM, Liu, Ailan <ailan.liu@kyl.com> wrote:


Dear Mr. Murphy:

Thanks for the call this morning regarding the subject matter.  As what I described on the call, the agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an email with the link to the summons and complaint on October 25, 2023.  I missed that particular email inadvertently.  It was brought to my attention on 11/20/2023 that the amended complaint was filed against Bitmain.  We made inquiry to Cogency Global

immediately and obtained a copy of the Summons and Complaint on 11/21/2023. That is when I reached out to you to seek a stipulation to allow Bitmain to respond.  Bitmain being late to respond was completely due to the inadvertency on my part, without any intention by our client or us to delay to respond.  Had I not missed the email, Bitmain would have taken necessary steps in this action. In that case, we would have requested an extension for us to arrange a local counsel to respond on behalf of Bitmain.

I appreciate your consideration of a stipulation to voluntarily set aside the default and allow our client to respond.

Best regards,

Ailan

........................................................................................................................

**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

**From:** Patrick Murphy <pmurphy@wpdn.net>
**Sent:** Wednesday, November 22, 2023 8:04 AM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Giffin, John <John.Giffin@kyl.com>; Scott C. Murray <smurray@wpdn.net>
**Subject:** Re: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited

Good morning, Ailan —.

Are you able to visit soon?  I am.  What time would work best for me to call your cell phone?

Pat Murphy
(307) 262-2872 (cell)

On Nov 21, 2023, at 1:34 PM, Liu, Ailan <ailan.liu@kyl.com> wrote:

Dear Mr. Murphy:

We are US counsel for Bitmain Technologies Georgia Limited ("Bitmain"). We just learned today about the subject matter case that was filed against our client by your client BCB Cheyenne LLC.  Based on what we can see from the court docket of this case, a default judgement has been entered against Bitmain.  We are writing to see if your

4

client is willing to voluntarily set aside the default and to stipulate to allow Bitmain to respond.

I also left a voice mail to your office to the similar effect, you can disregard that.  I was told that you would not be back to the office until next Monday, but I am looking forward to your response at your earliest convenience.

Best regards,

Ailan

........................................................................................................................

**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

This email has been scanned for spam and viruses. Click here to report this email as spam.

This email has been scanned for spam and viruses. Click here to report this email as spam.

# EXHIBIT I

**Liu, Ailan**

| | |
|---|---|
| **From:** | Liu, Ailan |
| **Sent:** | Friday, November 24, 2023 2:23 PM |
| **To:** | Patrick Murphy |
| **Cc:** | Scott C. Murray; Giffin, John |
| **Subject:** | RE: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited |

Dear Mr. Murphy:

Thank you for your inquiries in your email sent to me last night.  We are gathering the information to the extent we can provide to respond, and will get back to you on Monday 11/27. Thank you for your cooperation in this matter, which is much appreciated.

Best regards,

Ailan

..........................................................................................................................
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

**From:** Patrick Murphy <pmurphy@wpdn.net>
**Sent:** Thursday, November 23, 2023 8:08 PM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Patrick Murphy <pmurphy@wpdn.net>; Scott C. Murray <smurray@wpdn.net>
**Subject:** Re: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited

Dear Ms. Liu:

Thank you for our call yesterday morning and for your follow-up e-mail below.  As I told you on the phone, I want to better understand exactly what happened that your client, Bitmain Technologies Georgia Limited, did not timely answer BCB's First Amended Complaint on the November 15 deadline for doing so.  I will be visiting with my client representatives tomorrow, and I am trying to anticipate their questions to me (when I tell them you want BCB Cheyenne LLC to voluntarily stipulate to lift the November 17 Entry of Default).

I also shared with you yesterday morning that I might have some follow-up questions after receiving your afternoon e-mail.  Indeed, your e-mail engendered more questions than I imagined I would have.

I am concerned about the inconsistencies between what you shared with me on the phone yesterday morning, and what I am now seeing in your e-mail yesterday afternoon.

On the phone, you told me that your lawfirm is "national counsel" for Bitmain Technologies Georgia Limited ("Bitmain

1

Georgia"). Your firm, you said, is the United States "contact" for Bitmain Georgia. You also told me that:

1. Cogency Global, Inc. is the registered agent for service of process for Bitmain Georgia in the State of Georgia;

2. "Usually Cogency Global, Inc. sends complaints and summonses to your Firm" as the United States (National) contact and agent for Bitmain Georgia;

3. Cogency Global, Inc. was served with Plaintiff BCB Cheyenne LLC's First Amended Complaint and Summons on October 25, 2023;

4. Cogency Global, Inc. sent an e-mail to your Firm on October 25, 2023 with the First Amended Complaint and Summons attached to it;

5. That October 25 e-mail from Cogency Global, Inc. was "not received" [by you or your Firm].

6. That October 25 e-mail from Cogency Global, Inc. did not go to your e-mail inbox;

7. That October 25 e-mail from Cogency Global, Inc. instead went to a "different folder;" and

8. Someone with your Firm later discovered that October 25 e-mail from Cogency Global, Inc. in your lawfirm "system" [but you did not say "when, or what day, "what system," "what folder," or by whom it was discovered at your lawfirm, or what alerted someone at your lawfirm to look for it.

9. You told me "this was just a mix up in our lawfirm e-mail system;" and that Bitmain Georgia, your client, was not trying to stall or delay answering BCB's First Amended Complaint.

10. You said that you recently asked someone at Cogency Global, Inc. to "re-send you" its October 25 e-mail, which they did, and that you received it in your inbox. You also volunteered that you were mistaken when you wrote to me that there had been a "default judgment" against Bitmain Georgia. We both agreed that the Clerk of the District Court entered "default" against Bitmain Georgia, but not "default judgment."

11. Finally, you told me that your Firm had not yet retained local counsel in Wyoming to represent Bitmain Georgia. You wanted my client to voluntarily stipulate to lift or set aside the default for no money or other consideration, and you asked for additional time to retain local counsel in Wyoming and work your way through the First Amended Complaint.

But then, yesterday afternoon, you wrote to me saying:

1. "The agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an e-mail with the link to the summons and complaint on October 25, 2023;"

2. "[You] missed that e-mail inadvertently;"

3. "It was brought to [your] attention on 11/20/23 that the amended complaint was filed against against Bitmain [your client];"

4. "We [you?] made inquiry to Cogency Global immediately and obtained a copy of the Summons and Complaint on 11/21/23;" and

5. "That is when I reached out to you to seek a stipulation to allow Bitmain to respond." You say that, "Bitmain being late to respond was completely due to the inadvertence on my part, without any intention by our client to or us to delay to respond."

So here are the questions your call and subsequent e-mail raise for me, Ms. Liu:

1.  Our research shows that Cogency Global, Inc. is the registered agent for service of process for four Bitmain entities operating in at least seven states; is this true?

2.  For how long has your California lawfirm been national counsel for various Bitmain entities?

3.  Are you the lead counsel for your Firm for the Bitmain entities with whom Cogency Global, Inc. sends summonses and complaints and/or other legal papers?

4.  For how many years have you been the person at your lawfirm to whom Cogency Global, Inc. sends legal papers served on (a) various Bitmain entities, and (b) Bitmain Georgia?

5.  Did your client, Bitmain Georgia, earlier authorize you to receive any legal papers served on Bitmain Georgia from Cogency Global, Inc., and thereafter distribute and/or communicate those legal papers to the appropriate people at Bitmain?

6.  Did you receive Cogency Global, Inc.'s October 25 e-mail in your Ailan Liu computer inbox on October 25, 2023?

7.  What is your e-mail address to which Cogency Global, Inc. sent its October 25, 2023 e-mail to you (and at which you received it)?

8.  Have you confirmed that you received Cogency Global, Inc.'s October 25 e-mail in your inbox, and that its October 25, 2023 e-mail has remained, and been visible, in your inbox ever since?

9.  Did you see Cogency Global, Inc.'s October 25 e-mail on October 25?  If not, why did you not see it any time on October 25?

10.  Did you "read" Cogency Global's, Inc.'s October 25 e-mail on October 25?  If not, why did you not read it at any time on October 25?

11.  Do you read all of the e-mails that come to your inbox every day?  If not, why don't you read all the e-mails that come to your inbox every day?

12.  Did Cogency Global, Inc. copy anyone else (besides you) with its October 25 e-mail?  If so, "who else" did they copy with its October 25, 2023 e-mail?

13.  Would you please forward Cogency Global, Inc.'s October 25 e-mail to me (so I can read it)?

14.  Did you read, or re-read, any of your October 25 e-mails on October 26?  If so, was Cogency Global, Inc.'s October 25 e-mail one of the e-mails you re-read on October 26?

15.  Were you in your office most of the day on October 25, 2023?  Were you tracking and reading your e-mails that came to your inbox that day?  Same questions for October 26 and 27, please.

16.  Do you receive all your work e-mails on both your office computer, your mobile phone, your tablet, or any other device?

17.  What was the very first moment you heard, or learned, that a lawsuit had been filed or served against Bitmain Georgia?  What day did you first learn of it?  How, or in what way, did you first hear or learn of it?  "Who" is the person who first notified you, or alerted you, to BCB's lawsuit against Bitmain Georgia?  Which company or lawfirm does that

person work for?

Thank you, in advance, for answering these questions for me, Ms. Liu.  I want to discuss your answers with my client representatives this Friday when I raise with my client representatives your request that BCB voluntarily stipulate to lift, or set aside, this Default for no consideration.  I know you say that you missed Cogency Global's October 25 e-mail (with the First Amended Complaint and Summons) "through [your] inadvertency," but my questions above are aimed at discerning the underlying facts of that perceived inadvertency, or whether it was due to some neglect or "excusable" neglect.

Thank you.

Pat Murphy
Counsel for Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain
(307) 262-2872 (cell)

> On Nov 22, 2023, at 3:22 PM, Liu, Ailan <ailan.liu@kyl.com> wrote:
>
> Dear Mr. Murphy:
>
> Thanks for the call this morning regarding the subject matter.  As what I described on the call, the agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an email with the link to the summons and complaint on October 25, 2023.  I missed that particular email inadvertently.  It was brought to my attention on 11/20/2023 that the amended complaint was filed against Bitmain.  We made inquiry to Cogency Global immediately and obtained a copy of the Summons and Complaint on 11/21/2023. That is when I reached out to you to seek a stipulation to allow Bitmain to respond.  Bitmain being late to respond was completely due to the inadvertency on my part, without any intention by our client or us to delay to respond.  Had I not missed the email, Bitmain would have taken necessary steps in this action. In that case, we would have requested an extension for us to arrange a local counsel to respond on behalf of Bitmain.
>
> I appreciate your consideration of a stipulation to voluntarily set aside the default and allow our client to respond.
>
> Best regards,
>
> Ailan
>
> ........................................................................................................................
> **Ailan Liu**
> **Keesal, Young & Logan**
> 400 Oceangate, Long Beach, CA 90802
> 562.436.2000 (office) | 714.552.6578 (cell)
> ailan.liu@kyl.com | www.kyl.com
>
> KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

**From:** Patrick Murphy <pmurphy@wpdn.net>
**Sent:** Wednesday, November 22, 2023 8:04 AM
**To:** Liu, Ailan <ailan.liu@kyl.com>
**Cc:** Giffin, John <John.Giffin@kyl.com>; Scott C. Murray <smurray@wpdn.net>
**Subject:** Re: Civil Action No. 23-CV-79-ABJ - Bitmain Technologies Georgia Limited

Good morning, Ailan —.

Are you able to visit soon?  I am.  What time would work best for me to call your cell phone?

Pat Murphy
(307) 262-2872 (cell)


On Nov 21, 2023, at 1:34 PM, Liu, Ailan <ailan.liu@kyl.com> wrote:


Dear Mr. Murphy:

We are US counsel for Bitmain Technologies Georgia Limited ("Bitmain"). We just learned today about the subject matter case that was filed against our client by your client BCB Cheyenne LLC.  Based on what we can see from the court docket of this case, a default judgement has been entered against Bitmain.  We are writing to see if your client is willing to voluntarily set aside the default and to stipulate to allow Bitmain to respond.

I also left a voice mail to your office to the similar effect, you can disregard that.  I was told that you would not be back to the office until next Monday, but I am looking forward to your response at your earliest convenience.

Best regards,

Ailan

............................................................................................................
....
**Ailan Liu**
**Keesal, Young & Logan**
400 Oceangate, Long Beach, CA 90802
562.436.2000 (office) | 714.552.6578 (cell)
ailan.liu@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

This email has been scanned for spam and viruses. Click here to report this email as spam.

This email has been scanned for spam and viruses. Click here to report this email as spam.