Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
        smurray@wpdn.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company,                          . | ) ) ) ) | |
|      Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) | |
|      Defendants. | ) | |

## AFFIDAVIT OF PATRICK J. MURPHY

COMES NOW Patrick J. Murphy and on his oath states as follows:

1.      I am Patrick J. Murphy, age 69, and I am competent to provide the testimony in this

Affidavit.

1

2.  I am lead counsel for Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB"). Michael Murphy, my oldest son, is one of the members of BCB.  Another son, Sean Murphy, was the BCB Site Administrator of the North Range bitcoin mining facility in January – early March 2023.

3.  I am presenting this Affidavit in opposition to Defendant Bitmain Technologies Georgia Limited's ("Bitmain Georgia") December 13, 2023 Motion to Set Aside the Clerk's Entry of Default.

4.  At my request, the Clerk entered default against Bitmain Georgia on Friday, November 17, 2023.  The Clerk entered default because Bitmain Georgia was lawfully and effectively served with the First Amended Complaint and Summons on October 25, 2023 and, thereafter, Bitmain Georgia needed to file its answer or responsive pleading by November 15, 2023. Like the Plaintiff's counsel in *Fluor Daniel (NPOSR), Inc. v. Seward*, 956 P.2d 1131, 1133 (Wyo. 1998), I moved for entry of default very soon thereafter.

5.  The Clerk entered default against Bitmain Georgia on Friday, November 17, 2023. That weekend, I flew to Phoenix to be with my wife for Thanksgiving week.

6.  What follows are my interactions with Ms. Ailan Liu on November 21, 22, 23 and 24, 2023 concerning this default.  What concerned me then – and what concerns me even more now – are Ms. Liu's conflicting stories to me of what happened, and my unanswered questions of what she did, or, rather, what she did not do with the First Amended Complaint and Summons once she "downloaded" it on October 25, 2023.  Having been a practicing Wyoming litigation lawyer for forty-four (44) years, I am familiar with the standard of care a reasonably diligent lawyer exercises when he or she receives service of a complaint and summons where, as here, the client (Bitmain Georgia) is relying on that counsel (Ailan Liu) to provide the client with any lawsuit filings.  Ms. Liu acted with neglect, but she did not act with anything approaching "excusable neglect."

7.  As Ms. Liu states in her *Declaration* (Doc. 82-1, page 6 of 65, ¶ 15), Ms. Liu sent me an e-mail on ***November 21, 2023*** informing me, "We are US counsel for Bitmain Technologies Georgia Limited ("Bitmain"). She then said: "We ***just learned today*** about the subject matter case that was filed against our client by your client BCB Cheyenne LLC." (emphasis added).  Ms. Liu further informed me, "We are writing to see if your client is willing to voluntarily set aside the default and to stipulate to allow Bitmain to respond." (Doc. 82-1, page 49 of 65).  Yet, in Ms. Liu's November 22, 2023 e-mail to me, she wrote that, "It was brought to my attention on ***11/20/2023*** [not on November 21, 2023] that the Amended Complaint was filed against Bitmain."  This date discrepancy made me wonder:  When and how did Ms. Liu actually learn of this lawsuit?

8.  I e-mailed back to Ms. Liu early Wednesday morning, November 22, 2023 at 8:04 AM.  (Doc. 82-1, page 57 of 65).  It was the day before Thanksgiving I e-mailed Ms. Liu.

Good Morning Ailan –

Are you able to visit soon?  I am.  What time would work best for me to call your cell phone?

\s\ Pat Murphy
(307) 262-2872 (cell)

9.  We then spoke sometime in the next few hours.  In that phone call, Ms. Liu told me her lawfirm is "national counsel" for Bitmain Technologies Georgia Limited.  (Doc. 82-1, page 54 of 65).  In that phone call, Ms. Liu also told me each of the following things:

1.  Cogency Global, Inc. is the registered agent for service of process for Bitmain Georgia in the State of Georgia;

2.  "Usually Cogency Global, Inc. sends complaints and summonses to [our] Firm" as the United States (National) contact and agent for Bitmain Georgia;

3.  Cogency Global, Inc. was served with Plaintiff BCB Cheyenne LLC's First Amended Complaint and Summons on October 25, 2023;

4.  Cogency Global, Inc. sent an e-mail to [our] Firm on October 25, 2023 with the First Amended Complaint and Summons attached to it;

5. That October 25 e-mail from Cogency Global, Inc. was "not received" (by you or your Firm).

6. That October 25 e-mail from Cogency Global, Inc. did not go to your e-mail inbox;

7. That October 25 e-mail from Cogency Global, Inc. instead went to a "different folder;"

8. Someone with your Firm later discovered that October 25 e-mail from Cogency Global, Inc. in your lawfirm "system" [but you did not say "when, or what day, "what system," "what folder," or by whom it was discovered at your lawfirm, or what alerted someone at your lawfirm to look for it.

9. You told me "This was just a mix up in our lawfirm e-mail system;" and that Bitmain Georgia, your client, was not trying to stall or delay answering BCB's First Amended Complaint.

10. You said that you recently asked someone at Cogency Global, Inc. to "re-send you" its October 25 e-mail, which they did and that you received it in your inbox.

*Id.*

10.     Now, in her December 12, 2023 *Declaration*, Ms. Liu has a different story than

what she told me in our phone call on Wednesday, November 22, 2023.  ***Now*** Ms. Liu declares:

17. On November 22, 2023, at approximately 9:00 AM PT, Mr. Murphy and I spoke on the phone. On the call, I said that Cogency Global Inc. was the registered agent for service of process for Bitmain Georgia in the State of Georgia and that Cogency Global Inc. had been served with Plaintiff's Summons and First Amended Complaint on October 25, 2023 and that Cogency Global Inc. had emailed those papers to me on October 25, 2023 for me to forward them to Bitmain Georgia, but I had failed to forward the papers to Bitmain Georgia. I told him that I did not know how I had no recollection of seeing that email and that it may have gone to a different folder when it came in. I believe that when I was talking to him, I was still trying to put pieces together and figure out how I could not recall seeing that email, and thought that there might have been a mix up in my emails or it might have been held up in our firm's spam folder when it came in.

(Doc. 82-1, page 6 of 65 ¶ 17).

11.     Later that same afternoon, November 22, 2023, Ms. Liu wrote the following e-mail to me.  She wrote:  "I *missed* that particular email inadvertently."  (Doc. 92-1, page 51 of 65)(emphasis added).  Ms. Liu did not "miss" that Cogency Global October 25 e-mail on October 25, 2023:  Ms. Liu "downloaded" the Summons and FAC in that e-mail after 3:19 PM PT on October 25, 2023

> Dear Mr. Murphy:
>
> Thanks for the call this morning regarding the subject matter.  As what I described on the call, the agent for service of process for Bitmain Technologies Georgia Limited ("Bitmain") provided us (me) an email with the link to the summons and complaint on October 25, 2023.  *I missed that particular email inadvertently.*

(Doc. 82-1, page 51 of 65) (emphasis added).

But now, in her 12/12/23 *Declaration*, Ms. Liu changes her story again.  Now she admits she *did not* miss that particular  [October 25, 2023] e-mail  [from Cogency Global, Inc. with the First Amended Complaint and Summons].  *Now* Ms. Liu says she *". . downloaded the Summons and First Amended Complaint on October 25, 2023 at 3:19 PM PT."*  (Doc. 82-1, page 5 of 65, ¶11) (emphasis added).

It is not possible, on the one hand, for Ms. Liu to say she *"missed"* that e-mail inadvertently," and, on the other hand, to now acknowledge she "*downloaded* the Summons and First Amended Complaint [from that Cogency Global, Inc. e-mail] on October 25, 2023 at 3:19 PM PT."  When Ms. Liu "downloaded" the Summons and First Amended Complaint on October 25, 2023 from Cogency Global, Inc's e-mail, she had to have seen the Summons and First Amended Complaint.

12.  It is also not possible for Ms. Liu to truthfully tell me, in her Wednesday afternoon, November 22, 2023 e-mail to me, that she "*missed* that particular email inadvertently," where, as here, *she found* that subject e-mail in her October 25, 2023 inbox when she went looking for it on

Thursday morning, November 21, 2023, the ***day before*** Ms. Liu e-mailed me, and ***when she***

***"downloaded" the First Amended Complaint and Summons back on October 25, 2023***.  Here is

Ms. Liu's *Declaration* testimony on this point.

> 10.    On the morning of November 21, 2023, I searched my work emails[1] that I had received on October 25, 2023. I discovered that on October 25, 2023 at 12:47 PM PT, the Agent had emailed me a link to download the Summons and First Amended Complaint, and I was the sole recipient[2] of the Agent's October 25, 2023 email. A true and correct copy of said email is attached hereto as ***Exhibit E***.

> 11.    I then searched my "Downloads" folder on my work computer and located a copy of the Summons in a Civil Action to "Bitmain Technologies Georgia Limited, through its Registered Agent: Cogency Global Inc., 900 Old Rosewell Lakes Parkway, Suite 310, Atlanta, GA 30076" and a copy of First Amended Complaint (the "Summons and First Amended Complaint"). The metadata reflected that I had downloaded the Summons and First Amended Complaint on October 25, 2023 at 3:19 PM PT.

*See Declaration of Ailan Liu* at Page 4, ¶¶10-11. (Doc. 82-1, page 5 of 65).

This is what Ms. Liu's own investigation  -- on Thursday morning, November 21, 2023 –

revealed to her.  *Id.*   Yet, the next day, Ms. Liu wrote to me saying she "***missed*** that particular

email inadvertently."  In fact, Ms. Liu never "missed" that e-mail.  She saw it on October 25, 2023,

and she "downloaded" the Summons and First Amended Complaint from that e-mail at 3:19 PM

that same day.  Yet, knowing, on November 21, 2023, that she downloaded from that e-mail back

on October 25, 2023, Ms. Liu misrepresented to me on November 22, 2023, that she "missed" that

e-mail.  She misrepresented to me, when we spoke on November 22, 2023 that:  (1) the October

---

[1] Unread e-mails often appear in a different font color than 'read' e-mails. Once the recipient clicks on an e-mail, the font color changes.  Ms. Liu likely knows whether she found a 'read' or 'unread' e-mail when she searched her October 25, 2023 e-mails on November 21, 2023, but Ms. Liu does not tell us whether she found a 'read' or 'unread' e-mail on her November 21, 2023 search of her work e-mails.

[2] Clearly, the subject e-mail from Cogency Global never went to a Keesal, Young & Logan spam filter; it was received by Ms. Liu and it did go to a "different folder."

25 e-mail from Cogency Global, Inc. was "not received" (by you or your Firm); (2) the October 25 e-mail from Cogency Global, Inc. did not go to your e-mail inbox; (3) the October 25 e-mail from Cogency Global, Inc. instead went to a "different folder;" and (4) "This was just a mix up in our law firm e-mail system."

13.    As an international trade and business teacher, and as national  counsel for Bitmain Georgia, and who now concedes that "it was my professional responsibility to review legal documents such as those forwarded to me by the Agent and to forward such documents to Bitmain Georgia accordingly," (Doc. 82-1, page 7 of 65, ¶ 20), Ms. Liu would have seen-and-appreciated the clarity and significance of Cogency Global, Inc.'s October 25, 2023 e-mail, a copy of which is reproduced on the next page  (Doc. 82-1, page 46 of 65).

**Liu, Ailan**

| | |
|---|---|
| From: | sop@cogencyglobal.com |
| Sent: | Wednesday, October 25, 2023 12:47 PM |
| To: | Liu, Ailan |
| Subject: | Service of Process for Entity: BITMAIN TECHNOLOGIES GEORGIA LIMITED |

 COGENCYGLOBAL

## NOTICE OF SERVICE OF PROCESS

**Entity Served:** BITMAIN TECHNOLOGIES GEORGIA LIMITED
**Received in:** Georgia

Cogency Global Inc. has received the enclosed document on behalf of the above named entity. As the appointed registered agent or agent for service of process for the entity, we are forwarding the document to you. By clicking the **"Retrieve Document"** button you acknowledge the receipt of this service of process on behalf of the entity listed.

| | |
|---|---|
| Client Group: | KEESAL YOUNG |
| SOP Number: | 1207248 |
| Document Type: | Summons & Complaint |
| Date of Service: | 10/25/2023 |
| Service Method: | Personal |
| Court: | In the United States District Court, District of Wyoming |
| Document Caption: | BCB Cheyenne LLC vs Mineone Wyoming Data Center LLC, et al. Including: BITMAIN TECHNOLOGIES GEORGIA LIMITED |
| Case Number: | 23-CV-079-ABJ |
| Original to Follow: | No |
| Delivery Method: | Email |

## Click Here to Retrieve Document

## Important Reminders

1

14.     In blue capital letters, the e-mail says:

NOTICE OF SERVICE OF PROCESS

In slightly smaller capital letters, the "Entity Served" is BITMAIN TECHNOLOGIES GEORGIA LIMITED.

Then, in the big blue box below, it says:

CLICK HERE TO RETRIEVE DOCUMENT

*Id.*                                                                      .

15.     Ms. Liu "click[ed] here" to download the Summons and First Amended Complaint on Monday afternoon, October 25, 2023.  *Id.*

16.     Again, in her November 22, 2023 e-mail to me, Ms. Liu says:

It was brought to my attention on 11/20/23 that the Amended Complaint was filed against Bitman.   We made an inquiry to Cogency Global immediately and obtained a copy of the Summons and Complaint on 11/21/23.  (Doc. 82-1, page 51 of 65).

17.     While that may be true, it is equally true that it was first brought to Ms. Liu's attention on ***October 25, 2023 at 3:19 PM PT*** (the same day the First Amended Complaint was served). There was no need for Ms. Liu or anyone in her California lawfirm to "make inquiry to Cogency Global immediately [to] obtain a copy of the Summons and Complaint."  Ms. Liu ***had*** that 10/25/23 e-mail, with the Summons and First Amended Complaint, on her own inbox from and after October 25, 2023 at 12:47 PM PT, and she could - - and likely did - - access it there on November 21, 2023.

18.     I was concerned with the differing stories I was hearing from Ms. Liu.  So, on Thanksgiving night, November 23, 2023 at 8:08 PM, I wrote an e-mail to Ms. Liu.  I told Ms. Liu her November 22, 2023 e-mail "engendered more questions than I imagined I would have."  (Doc. 82-1, page 60 of 65).  I told Ms. Liu, "I am concerned about the inconsistencies between what you

shared with me on the phone yesterday morning, and what I am now seeing in your e-mail yesterday afternoon." *Id.* I then wrote about twenty-five (25) questions to Ms. Liu - - numbered 1-17 - - where I asked Ms. Liu these questions.

1. Our research shows that Cogency Global, Inc. is the registered agent for service of process for four Bitmain entities operating in at least seven states; is this true?

2. For how long has your California lawfirm been national counsel for various Bitmain entities?

3. Are you the lead counsel for your Firm for the Bitmain entities with whom Cogency Global, Inc. sends summonses and complaints and/or other legal papers?

4. For how many years have you been the person at your lawfirm to whom Cogency Global, Inc. sends legal papers served on (a) various Bitmain entities, and (b) Bitmain Georgia?

5. Did your client, Bitmain Georgia, earlier authorize you to receive any legal papers served on Bitmain Georgia from Cogency Global, Inc., and thereafter distribute and/or communicate those legal papers to the appropriate people at Bitmain?

6. Did you receive Cogency Global, Inc.'s October 25 e-mail in your Ailan Liu computer inbox on October 25, 2023?

7. What is your e-mail address to which Cogency Global, Inc. sent its October 25, 2023 e-mail to you (and at which you received it)?

8. Have you confirmed that you received Cogency Global, Inc.'s October 25 e-mail in your inbox, and that its October 25, 2023 e-mail has remained, and been visible, in your inbox ever since?

9. Did you see Cogency Global, Inc.'s October 25 e-mail on October 25? If not, why did you not see it any time on October 25?

10. Did you "read" Cogency Global's, Inc.'s October 25 e-mail on October 25? If not, why did you not read it at any time on October 25?

11. Do you read all of the e-mails that come to your inbox every day? If not, why don't you read all the e-mails that come to your inbox every day?

12. Did Cogency Global, Inc. copy anyone else (besides you) with its October 25 e-mail? If so, "who else" did they copy with its October 25, 2023 e-

mail?

13.     Would you please forward Cogency Global, Inc.'s October 25 e-mail to me (so I can read it)?

14.     Did you read, or re-read, any of your October 25 e-mails on October 26?  If so, was Cogency Global, Inc.'s October 25 e-mail one of the e-mails you re-read on October 26?

15.     Were you in your office most of the day on October 25, 2023?  Were you tracking and reading your e-mails that came to your inbox that day?  Same questions for October 26 and 27, please.

16.     Do you receive all your work e-mails on both your office computer, your mobile phone, your tablet, or any other device?

17.      What was the very first moment you heard, or learned, that a lawsuit had been filed or served against Bitmain Georgia?  What day did you first learn of it?  How, or in what way, did you first hear or learn of it?  "Who" is the person who first notified you, or alerted you, to BCB's lawsuit against Bitmain Georgia?  Which company or lawfirm does that person work for?

(Doc. 82-1, Page 62 of 65).

I ended my Thanksgiving evening e-mail with this candid sentence:

I know you say that you missed Cogency Global's October 25 e-mail (with the First Amended Complaint and Summons) "through [your] inadvertency," but my questions above are aimed at discerning the underlying facts of that perceived inadvertency, or whether it was due to some neglect or "excusable" neglect.

*Id.*

19.     Ms. Liu never answered my e-mail questions.  Instead, twelve days later, I received

the following e-mail from LA lawyer Marc Feinstein, who I do not know and have never spoken

with.

Pat-

O'Melveny & Myers LLP will be lead counsel for Bitmain in this action. Please direct all communications regarding the action to my O'Melveny colleagues Will Pao, Kate Stutz, and Kaitie Farrell (cc'd) and me. Bitmain will also be retaining local counsel. We do not view your long list of deposition-like questions as necessary or appropriate. Once we have had an opportunity to complete our review of the facts, we will communicate with you further to see whether your client will

stipulate to relief from default in lieu of the need for Bitmain to file a formal motion. Regards.

(Doc. 82-4, Page 5 of 11).

Then, eight days later, after meet-and-confer letters between Khale Lenhart and me, Bitmain Georgia filed a Motion to Set Aside the Entry of Default.  (Doc. 81).

20.     In addition to the inconsistencies and mis-statements Ms. Liu provided me, here are relevant facts she has never provided: *Why* did Ms. Liu not send or forward Cogency Global's October 25, 2023 e-mail to her client, Bitmain Georgia, after downloading it?  Was she sick?  Was there a death in her family?  Was there some family emergency that diverted her attention from her "downloaded" Summons and First Amended Complaint on October 25, 2023?  On October 26 or 27, 2023? Was there some emergency at her law office?  Was there some other "unfortunate situation in which a reasonably prudent person might have exhibited the same behavior under similar circumstances?[3] Did Ms. Liu have some "personal or psychological problem" that precluded her from getting the Summons and First Amended Complaint to Bitmain Georgia from

---

[3]  Citing well-known case law, Justice Kate Fox aptly observed as follows:

Under W.R.C.P. 55(c), an entry of default may be set aside for "good cause." "Good cause for setting aside an entry of default, pursuant to [W.R.C.P.] 55(c), is to be found in the justifications for relief from a final judgment articulated in [W.R.C.P.] 60(b)." *In re HLL*, ¶ 34, 372 P.3d at 192 (quoting *Fluor Daniel, Inc. v. Seward*, 956 P.2d 1131, 1134 (Wyo. 1998)); *see also In re ARW*, 2015 WY 25, ¶ 18, 343 P.3d at 412. W.R.C.P. 60(b)(1) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding for [among other things] . . . excusable neglect." ***"[D]emonstrating excusable neglect is not a light burden, because that standard is intended to address certain unavoidable crises in life, such as genuine emergencies like death, sickness, or other unfortunate situations in which a reasonably prudent person might have exhibited the same behavior under similar circumstances*.**" *In re HLL*, ¶ 35, 372 P.3d at 192 (citing *RDG Oil & Gas, LLC v. Jayne Morton Living Tr.*, 2014 WY 102, ¶ 14, 331 P.3d 1199, 1202 (Wyo. 2014))

*Matter of EMM v. State*, 414 P.3d 1157, 1159 (Wyo. 2018)(emphasis added).

October 25 – November 15, 2023?  Did Ms. Liu read the Summons on October 25, 2023?  Did

Ms. Liu read the First Amended Complaint on October 25, 2023?  What did Ms. Liu think when

she read the First Amended Complaint?  Did she consider sending it to her contact, Polly Hau, in

the Bitmain legal department in China? (Doc. 82-1, Page 38 of 65).  Did she forget to send it to

Ms. Hau?  Did she calendar it as a "to do" task?  Did she print the Summons and First Amended

Complaint?  Did she create a new file for this *BCB v. Bitmain Georgia* case?  What did she do

with it? [4]

---

[4]  In *Hochhalter v. Great Western Enterprises, Inc*. 708 P.2d 666, 669-670 (Wyo. 1985), Justice
Rose correctly cited United States Supreme Court case law on the question of whether "the neglect
of the attorney [Ailan Liu] is to be treated as the neglect of the party."  It is.

> Professor Moore disagrees with the courts who have granted relief due to the attorney's
> "gross" negligence:
>
> "* * * To hold, however, that as a general proposition the litigant is not responsible for his
> attorney's conduct of the case would be destructive of the entire  pattern of sanctions set
> forth in the Rules, and of course in the teeth of the decision in *Link* [infra]." 7 Moore
> Federal Practice ¶ 60.27[2] n. 45.
>
> Professor Moore observes that the Supreme Court in *Link v. Wabash Railroad
> Company*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734, reh. denied 371 U.S. 873, 83 S.Ct.
> 115, 9 L.Ed.2d 112 (1962), made it plain that the neglect of the attorney is to be treated as
> the neglect of the party.

> In *Link v. Wabash Railroad Company*, Justice Harlan stated:

> "There is certainly no merit to the contention that dismissal of petitioner's claim because
> of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner
> voluntarily chose this attorney as his representative in the action, and he cannot now avoid
> the consequences of the acts or omissions of this freely selected agent. Any other notion
> would be wholly inconsistent with our system of representative litigation, in which each
> party is deemed bound by the acts of his lawyer-agent and is considered to have `notice of
> all facts, notice of which can be charged upon the attorney.' [Citation.]" 370 U.S. at 633-
> 634, 82 S.Ct. at 1390.

> Although the question of the granting of relief under Rule 60(b)(6) was not directly before
> the court in *Link*, we find the above statement to be applicable to Rule 60(b)(6) cases as
> well. We hold that a litigant is not necessarily entitled to relief under Rule 60(b)(6) solely
> because his counsel was grossly negligent. To hold otherwise would be inconsistent with

21.     Even as recently as her 12/12/23 *Declaration*, Ms. Liu never answers any of these relevant questions.   These are the questions (and answers) that highlight Ms. Liu's gross negligence, neglect, and dereliction of duty, not her mere "inadvertence" or "procedural oversight." Tenth Circuit cases instruct us that, "In analyzing excusable neglect, the Court must consider all relevant circumstances surrounding the party's omission." *B.V. Reomie Automateriaal vs. IDE Invest and Real Estate*, *LLC*, 2022 WL 16901968, at *3 (November 11, 2022)(Skavdahl, Chief Judge), *quoting Doran L. Off. v. Stonehouse Rentals, Inc.,* 678 F. App'x 733, 736 (10th Cir. 2017)(unpublished)(quoting *Pioneer Inv. Servs. Co.,* 507 U.S. at 395).

22.     Instead, in her *Declaration*, Ms. Liu says, "I have no recollection of ever seeing either the October 25, 2023 e-mail from the Agent or a copy of the Summons and First Amended Complaint prior to November 21, 2023."  (Doc. 82-1, Page 6 of 65).

23.     Ms. Liu's admissions and concessions in her *Declaration* demonstrate her neglect, her dereliction of duty, and her gross negligence.  They demonstrate that what Ms. Liu did – and did not do – does not approach "excusable neglect."  It does not involve "genuine emergencies like death, sickness or other unfortunate situations in which a reasonably prudent person might have exhibited the same behavior under similar circumstances." *Matter of EMM,* 414 P.3d at 1157. No attorney or person acting reasonably would act as Ms. Liu acted here. Her subsequent inconsistent statements and misrepresentations of what happened, and when she did things, only highlight her culpable conduct and neglect.

---

holding each party "bound by the acts of his lawyer-agent." In view of this holding and the failure of appellants to produce sufficient evidence as to attorney Grossenbach's alleged **personal problems or psychological disorders,** we hold that the trial court did not abuse its discretion in refusing to grant relief under Rule 60(b).

*Hochhalter v. Great Western Enterprises, Inc*. 708 P.2d at 669-70. (emphasis added).

24.     In her *Declaration*, Ms. Liu **admits** these things:

a.     Her California lawfirm is corporate counsel for Bitmain Georgia; (¶2).

b.     She incorporated Bitmain Georgia in Georgia as its "Incorporator" (¶2).

c.     For the past three years, "with respect to Bitmain Georgia," her "primary role"
has been:

(i)   "Serving as agent for service of process[5] for Bitmain Georgia's affiliates
in the state of California;" (¶5).

(ii)  "Serving as the primary point of contact for the registered agent of
Bitmain Georgia when it is served." (¶5).

(iii) "Forwarding Bitmain Georgia the legal papers or other notices received
by me or forwarded to me;" (*Id*.) and

(iv)  "Drafting legal documents primarily related to the corporate matters per
Bitmain Georgia's requests." (*Id*.).

d.     Her "standard practice" is to "download the documents and e-mail the
documents to Bitmain Georgia." (¶6).

e.     She "acknowledges that it was my professional responsibility to *review*
legal documents such as those forwarded to me by her Agent and *to forward*
such documents to Bitmain Georgia accordingly." (¶20).

f.     ". . . I never provided the Summons and First Amended Complaint to
anyone at Bitmain Georgia, and never communicated with anyone at
Bitmain Georgia regarding [this] case prior to November 21, 2023." (¶20).

---

[5]  Consequently, Ms. Liu knows how important it is that she forward any Summons and
Complaint to her Bitmain Georgia contact, Ms. Hau, in the Bitmain legal department in China.

g.   She learned that the "First Amended Complaint had been sent to me the same day it was served [10/25/23];" (¶9).

h.   She ". . . downloaded the Summons and the First Amended Complaint on October 25, 2023 at 3:19 PM PT." (¶11); and

i.   She ". . . did not send the Summons or First Amended Complaint to Bitmain Georgia." (¶12) (emphasis added).

25.   Ms. Liu offers no explanation for why she did not send Cogency Global's October 25, 2023 e-mail to Bitmain Georgia.  She offers no explanation of what she was doing on October 25 or 26, 2023, or thereafter, for anyone to conclude that she was acting reasonably.  She acted unreasonably.  She acted with neglect, but not with "excusable" neglect.  *See IDE Invest, supra* at *7 ("The Court finds IDE's conduct neglectful and careless, but not excusable.")(Skavdahl, Chief Judge).  A party must allege specific facts to show excusable neglect.  *Quigley vs. Rosenthal*, 327 F.3d 1232, 1238 (10th Cir. 2005).  Ms. Liu and Bitmain Georgia have not done this. "[F]ault in the delay remains a very important factor – perhaps the most important single factor – in determining whether any neglect is excusable." *United States vs. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004). Excusable neglect does not exist simply because counsel disregarded the deadline because of a heavy caseload. *Ghamrawi v. Case & Associates Properties, Inc.*, 116 Fed. App'x 206, 210 (10th Cir. 2004); *Almond vs. Unified School District #501,* No. 07-4064, 2008 WL 1773863, at *4 (D. Kan. April 16, 2008).  And missing a deadline because of a tactical decision does not constitute excusable neglect.  *Lewis vs. Herman's Excavating, Inc.*, 200 F.R.D. 657, 660 (D.Kan. 2001). Generally, a defendant's conduct is considered culpable if he has defaulted willfully "***or has no excuse for the default.***" *Viking Insurance Company of Wisconsin vs. Sumner*, 2016 WL 10672361, at *2, (Skavdahl, J.); citing *United States vs. Timbers Preserve, Routt County, Colorado*, 999 F.2d 452, 454 (10th Cir. 1993) (emphasis added).  Bitmain Georgia has no excuse for this default.  And,

as Judge Scott Skavdahl correctly observed in *Viking Insurance,* "the Court could enter default judgment based upon the culpability of the default alone." *Viking Insurance at \*4, citing Hunt vs. Ford Motor Co.*, 65 F.3d 178, \*4 (10th Cir. 1995)(table decision).

26.     To my knowledge, Bitmain Georgia has not registered with the Wyoming Secretary of State's Office to do business in the State of Wyoming. This violates Wyoming law. Pursuant to Wyo. Stat. Ann. § 17-16-1502:

> A foreign corporation which transacts business in this state without a certificate of authority shall be liable to this state, for the years or parts thereof during which it transacted business in this state without a certificate of authority, in an amount equal to all fees and license taxes, plus interest of eighteen percent (18%), which would have been imposed by law upon such corporation had it duly applied for and received a certificate of authority to transact business in this state as required by this act and thereafter filed all reports required by law, and in addition shall be liable for a penalty in the amount of five thousand dollars ($5,000.00), reasonable audit expenses and reasonable attorney fees.

This failure to comply with Wyoming law is another example of the lack of controls Bitmain Georgia and its corporate counsel, Ailan Liu, have employed while reaping the financial benefit of placing approximately 9,500 miners at the North Range bitcoin mining site.

27.     Bitmain Georgia, as the largest manufacturer of crypto mining machines in the world, exerted significant pressure on MineOne. The following quotations from a March 7, 2023 recorded phone call with Dr. Jaiming Li and Dr. Erick Rengifo (of MineOne Wyoming), and Michael Murphy and Emory Patterson with BCB, demonstrate how Bitmain Georgia exerted that pressure here:

> 0:46:   Erick Rengifo: "Jiaming, myself, and all the team has been discussing with these guys [Bitmain], because they have the power. So they -- these guys [Bitmain] are the power guys."

> 4:48:   Erick Rengifo: "The thing is that there are other conditions, for example, that we have with -- with Bitmain is that we need to provide them electricity 98% of the time."

> 13:28:  Jiaming Li: "Emory just asked if this [replacing BCB with Wiley for site

operations] is MineOne's desire, and the -- the answer is no."

33:10:    Erick Rengifo: "Well, indeed -- indeed Bitmain is -- is the main -- is the
          main partner there [at the Campstool site]. Now, they -- they can do that.
          And they can do everything, because what they want is they wanted to have
          their own MDCs. They want to have everything. They have everything, we
          want to do everything. Okay."

28.    Additionally, Bitmain Georgia was aware of the contractual relationship between

MineOne and BCB:

9:01:    Erick Rengifo: "What these guys [Bitmain] want to do is basically you [Plaintiff
         BCB] out completely. And -- and we explained Saturday and Sunday was with them
         [Bitmain] explaining, guys, we cannot do that. We [MineOne] have an agreement
         [with Plaintiff BCB]. But these guys [Bitmain] are -- are -- are tough guys. You
         know, I would say no, no, no, but no. I would say no."

*Id.*

29.    Finally, Bitmain Georgia acted to disrupt and/or interfere with the contractual

relationship between BCB and MineOne:

0:32:    Erick Rengifo - "Our major client [Bitmain]-- our major partner here [Bitmain] is -
         - is -- he doesn't want you [Plaintiff BCB] to be the -- the -- the host and the
         manager."

1:00:    Erick Rengifo: "I go directly to the point. So what they [Bitmain] want is Wiley
         and team to do the hosting and management, the -- the real activities of hosting and
         management. And they told us, okay, you [MineOne] deal with BCB as you want
         as part of the payment structure, we [Bitmain] don't care, but we [Bitmain] want
         Wiley and team to do that. And why Wiley and team? Well, these guys are well
         known, so Wiley's well known. He has Indiana working with him and he has
         worked with these guys [Bitmain] before, so his reputation's extremely high. And -
         - and he knows how to manage these facilities."

1:31:    Erick Rengifo: "...that was the kind of agreement so we [MineOne/Terra/BitOrigin]
         are negotiating it still [with Bitmain].... So Wiley is going to be in charge, Wiley
         and team is going to be in charge of everything that is operations, you know, the --
         the miners, the -- everything that is related to operation. Everything."

3:04:    Erick Rengifo: "They [Bitmain] told us, okay, you know what? As soon as Wiley
         is in charge of the -- of the hosting and management, we're [Bitmain] okay."

6:52:    Emory Patterson: "So this decision [to replace BCB with Wiley for site operations]
         is coming from pressure from like Bit Origin and Bitmain?" Erick Rengifo:

"They're the clients. Yes." Mr. Patterson: "Okay." Erick Rengifo: "So basically the ones [Bitmain] that are gonna operate with us, they are telling us they don't want you to be the operators [of the site]."

14:57:  Jiaming Li: "There are two things [that factored into the decision to replace BCB with Wiley for site operations]. One is the Bitmain's relationship with -- with Wiley's team in China, back to China. They have managed 300,000 miners for Bitmain back to there. So that's why. And Wiley and Jack, they -- they had a very good relationship with them."

34:26:  Jiaming Li: "That's why, you know, we were trying to secure -- still to secure that [Campstool] project with Bitmain and to use their container and miners so that they can, you know, get participated with -- with investments as well."

*Id.*

FURTHER AFFIANT SAYETH NOT.

_____
Patrick J. Murphy


## VERIFICATION

I, Patrick J. Murphy, do hereby certify that I am the Affiant named herein; that I have read and signed the foregoing Affidavit and that the contents contained therein are true to the best of my knowledge and belief.

_____
Patrick J. Murphy

STATE OF WYOMING          )
                          ) ss.
COUNTY OF NATRONA         )

SUBSCRIBED AND SWORN TO before me this 21ˢᵀ day of December 2023, by Patrick J. Murphy.

WITNESS my hand and official seal.



_____
Notary Public