# EXHIBIT 1



**WILLIAMS, PORTER, DAY & NEVILLE P.C.**
*Wyoming's Law Firm*

Patrick J. Murphy
Physical: 159 N. Wolcott St. Suite 400
Casper, WY 82601
Phone: 307-265-0700

Mailing: PO Box 10700
Casper, WY 82602
pmurphy@wpdn.net

January 24, 2024

**VIA E-MAIL ONLY**

Paula Colbath
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com

Sean M. Larson
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82001
slarson@hkwyolaw.com

Re:   Plaintiff BCB's First Discovery Meet-and-Confer Letter Concerning Defendants' Improper and Deficient Discovery Production

Dear Paula:

I sent you a meet and conferral (*see Memorandum*, attached) last week concerning your clients' lack of any production of documents relating to Bitmain (*i.e.*, RFP #2, #3, #4). I am including my Memorandum with this letter that explains the lack of production and provides examples of important documents we know your clients have and are withholding from us.

Unbelievably, I still have not received a complete and unredacted Service Framework Agreement – though you said in your 12/20/23 Request For Production Discovery Responses that you would be providing it. I have asked multiple times and received no response. In fact, I have not received a single document or communication between your clients and Bitmain. I explain this in my *Memorandum* last week.

In light of your lack of meaningful production, we are not going to be able to depose Erick Rengifo – a key witness in this case – on February 9, 2024. Your lack of production has made it impossible for us to meaningful prepare for such an important deposition, including assembling key deposition exhibits (that we know exist, but don't yet have). I will let you know when we would like to reschedule Erick Rengifo's deposition.

I would appreciate receiving your replies to this – my first meet and confer letter, and last week's Memorandum – no later than next Wednesday, January 31, 2024.


WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick J. Murphy's 1/19/24 Meet-and-Confer Letter
Re: Second Meet and Conferral Letter Regarding Discovery Production
To: S. Larson and P. Colbath

If I have not heard from you by that date, or, you have not produced what I have requested in these meet and confer letters and Memorandum, I will ask John Condor and Judge Rankin to schedule an informal discovery conference as quickly as the Court can.

Thank you, Paula and Sean.

Very truly yours,

Patrick J. Murphy

## Memorandum: Plaintiff's First Meet and Conferral Letter

**Re: Initial Meet and Confer on BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN'S (Request for Production #2, #3, and #4)**

**REQUEST NO. 2:** Please produce the full, complete, and unredacted SERVICE FRAMEWORK AGREEMENT between MineOne Wyoming Data Center LLC and BITMAIN TECHNOLOGIES GEORGIA LIMITED.

**RESPONSE NO. 2:** Defendant objects to this Request to the extent that it seeks documents that are already in Plaintiffs' possession, custody or control, are publicly available, or are more easily accessible from some other source. Defendant further objects to this Request to the extent it seeks commercially sensitive or confidential information without the entry of a suitable protective order in this case.
Subject to and without waiving any of its objections, Defendant will produce its contract with Bitmain Technologies Georgia, to the extent any such document exists, upon the entry of a suitable protective order in this case.

There is a Stipulated Protective Order. Magistrate Judge Rankin entered the Stipulated Protective Order on December 6, 2023 (ECF 74). Although Defendants provided about 7,000 documents in their 12/20/23 Discovery Responses, remarkably, our review indicates no less than half (and potentially as many as two-thirds) of the produced documents are *duplicates*. Was this done by your clients to artificially inflate the total document/page count of production to give the appearance of meaningful production?

Importantly here, you did not produce the complete, unredacted, and signed *Service Framework Agreement* ("*SF Agreement*") that you said you would produce upon entry of a "suitable protective order." Your responses to BCB's requests for production were made on December 20, 2023, two weeks after Judge Rankin entered the Court's Protective Order. Consequently, there is no reason for your clients to not produce this highly relevant *SF Agreement* to BCB on December 20, 2023.

BCB and its counsel already have a heavily redacted copy of the *SF Agreement* (Exhibit B, attached). BCB attached that heavily redacted copy of the *SF Agreement* to its Amended Complaint (ECF 50, Exhibit A) and Response and Opposition to Bitmain Georgia's Motion to Set Aside Default. In Sean Murphy's 12/21/23 *Declaration* (ECF 95-2, paras. 85-99), Mr. Murphy identifies very suspicious irregularities with the *SF Agreement*. So, all of us know the *SF Agreement* exists (see 12/12/23 Declaration of Yiliang Guo at para 4, "Bitmain Georgia and MineOne Wyoming Data Center LLC ("MineOne") entered into a Service Framework Agreement (the "Agreement"), dated March 10, 2023" (ECF 82-3). Your clients should have provided the signed, complete, and unredacted *SF Agreement* to BCB on December 20, 2023, but for reasons only you and/or your clients know, it was not produced.

The *SF Agreement* is some of the very best evidence of Bitmain's intentional interference with BCB's *Development, Hosting & Services Agreement* ("*DHS Agreement*") with Defendant MineOne Wyoming. In fact, it proves – beyond peradventure of doubt – Bitmain's intentional interference with contractual relations. It also proves your clients' breach of contract with BCB.

**REQUEST NO. 3:** Please produce the document referenced in Appendix I of the SF AGREEMENT called the "Information of Data Center Facility" submitted on January 19, 2023 with the reference number of BHMS2023002-01 ("the Corresponding Memo").

**RESPONSE NO. 3:** Defendant objects to this Request on the grounds that it is vague and ambiguous insofar as "SF Agreement" is not defined. Defendant further objects to this Request to the extent that it seeks documents that are already in Plaintiffs' possession, custody or control, are publicly available, or are more easily accessible from some other source. Defendant further objects to this Request to the extent it seeks commercially sensitive or confidential information without the entry of a suitable protective order in this case.

Subject to and without waiving any of its objections, Defendant will produce Appendix I to its contract with Bitmain Technologies Georgia, to the extent any such document exists, upon the entry of a suitable protective order in this case.

The "*SF Agreement*" is defined in RFA #205 on page 114 of Plaintiff's First Combined Discovery Request to MineOne Wyoming Data Center (as well as in Plaintiff's First Amended Complaint, and other documents). There is no vagueness or ambiguity as to what the *SF Agreement* refers to. In fact, it is obvious. It refers to the Service Framework Agreement. Magistrate Judge Rankin entered the Stipulated Protective Order on December 6, 2023 (ECF 74).

Appendix I — and all other appendices, exhibits, addenda, extensions and/or updates that exist — that were incorporated with and into or a part of the *SF Agreement* are to be produced under this request in full and complete unredacted form.

**REQUEST NO. 4:** Please produce each and every document, contract, e-mail, or other communication (including text messages, WeChat, WhatsApp, Discord, Telegram, or any other mobile or social messaging application), between Bitmain (including any and all of its subsidiaries) and you (including, but not limited to, Jiaming Li, Erick Rengifo, Huali Zhang, Cho Zhu, Ziyao Shao, and Haku Du) relating in any way to cryptocurrency mining at the North Range and/or Campstool sites.

**RESPONSE NO. 4:** Defendant objects to this Request on the grounds that it is vague and ambiguous insofar as "Bitmain" is not defined. Defendant further objects to this Request on the grounds that it is overly broad, not stated with reasonable particularity and unduly burdensome, to the extent that it seeks documents that are not relevant to any party's claims or defenses or proportional to the needs of the case and is not limited temporally. Defendant further objects to this Request insofar as it presumes all identified individuals are affiliated with Defendant. Subject to and without waiving any of its objections, Defendant will produce nonprivileged documents within its possession, custody or control dated between January 2022 through the commencement of this case, that are responsive to this request, to the extent any such documents exist.

Nothing about this Request For Production is vague or ambiguous. Bitmain is defined in the Plaintiff's *Amended Complaint* and Bitmain disclosed its corporate structure in its 12/13/23 Parent Corporation Disclosure (ECF 85). When we say "Bitmain," we mean all of the companies that Bitmain owns and controls, including the following companies: Defendant Bitmain Technologies Georgia Limited, Bitmain Delaware Holding Company, Inc., Bitmain Switzerland AG, Bitmain Technologies Limited (China), Defendant Bitmain Technologies Holding Company (Caymans), and Bitmain Technologies Inc.

Furthermore, in the 12/8/23 Declaration of Yiliang Guo (ECF 82-2), Mr. Guo states at para 2: "I have been employed by Bitmain Technologies Inc. since April 2018. I am responsible for Bitmain's business development relating to data center hosting services in the United States. In my role I serve as a primary point of contact for MineOne Wyoming Data Center, LLC (MineOne)."

Mr. Guo also states at para 3: "...Ms. Lianfei (Haku) Du, an operations manager of MineOne Partners LLC, an affiliate of MineOne, and my usual contact at MineOne, left me several voice messages, alerting me that Bitmain Technologies Georgia Limited (together with its affiliates "Bitmain") was named along with MineOne..."

Furthermore, Bitmain Georgia admits at paragraph 137 in Bitmain Georgia's 12/13/23 *Answer and Affirmative Defenses* (ECF 79) that "the Service Framework Agreement included a Form of Service Order for 9,8000 S19XP Bitcoin mining computers with an estimated arrival date before February 25, 2023. Bitmain further admits that the Form of Service Order designated MineOne Wyoming Data Center LLC as the 'Service Provider.' Bitmain Georgia alleges that the Service Framework Agreement and the Form of Service Order speak for themselves." *(id.)*

We know that documents highly relevant to BCB's claims exist between your clients and Bitmain in contracts, e-mails, texts, and other communications (WeChat, WhatsApp, Discord, Telegram, or any other mobile or social messaging application). And yet, your clients did not produce a single document or communication between your clients and Bitmain, including Mr Guo, who states he is the point of contact with MineOne Wyoming and Bitmain. How is this even possible? Not a single document? Not a single email? Not a single WeChat message? Not a single contract?

By way of example, and this is not comprehensive, here are documents and communications we know exist that should be immediately produced.

- All versions and drafts of the *Service Framework Agreement* and the communications and documents related to all versions of the Service Framework Agreement. We have the redacted version of the Service Framework Agreement that we know existed as of January 2023 (see attached). When was the *SF Agreement* first conceived? Where is the communication negotiating and circulating the initial *SF Agreement* between your clients and Bitmain representatives? Where is the communication relating to subsequent drafts of the *SF Agreement*? Where is the communication relating to the final and signed SF Agreement? And, further, what other contracts and agreements exist between your clients and Bitmain? They should all be provided.

- In the heavily redacted *SF Agreement* in our possession, it states at Section 6.7 "24/7 Access by BITMAIN personnel. If there is no other specific agreement, BTMAIN or the third party designated by BITMAIN (collectively, the "O&M Service Provider") shall be responsible for the operation and maintenance of the Hosted Servers..." This begs the question: who is the O&M Service provider? Where are the documents and communications showing who is responsible for the operation and maintenance of the Hosted Services as the O&M Service Provider? Where are the Agreements with the third party designated to be the O&M Service Provider? These should all be provided. Or, did Bitmain not designate an O&M Service Provider? All documents and communications relating to the O&M Service Provider (as defined in the *SF Agreement*) should be provided.

- Our review showed you produced very few documents that referenced Bitmain in your production. But, among them, was MINEONE0010529, an email from Jiaming Li on December 15, 2022, talking about a "comprehensive partnership," around 9,000 S19 XPs (bitcoin miners), and a $8 million loan from Bitmain to your client. Where are all the documents and communications involving this "comprehensive partnership?" (we know this partnership was established under the *SF Agreement*).

- Where is all of the communication and documents relating to the thousands of bitcoin mining machines? (we know these bitcoin miners were shipped and are currently mining bitcoin). In addition to the 9,800 S19 XP bitcoin miners that were shipped to the NorthRange site in February 2023, we know that more Bitmain Antminers arrived at NorthRange site in early December 2023. And yet, you produced none of these documents and communications. Why? It should all be produced.

- Where is all the communication and documents between your clients and Bitmain regarding the $8 million loan and financing referenced in MINEONE0010529? Where is the Loan Agreement? All loan and financing documents and communications between your client and Bitmain should be produced under this request for production. This includes all of the bank statements showing the financial transactions/transfers between your clients and Bitmain.

- MINEONE0010530 - MINEONE0010553 were not produced. You produced documents bates numbered consecutively *before* MINEONE0010530 and *after* MINEONE0010553. Where are these 23 missing pages? You clearly bate stamped these 23 pages but then decided to withhold them from us for some unknown reason. You did not provide any privilege log identifying the author, recipient, or the basis for any asserted privilege of these 23 pages. They should be produced.

- In MINEONE0004027, Jiaming Li references Campstool and Bitmain providing their hydro box. Jiaming talked about a "site plan" and "budget" regarding Campstool. We know there are documents and

communications about Bitmain and Campstool. And yet, you did not provide a single document about Campstool. Why? Please provide all of these documents.

- In MINEONE0003648, an email from Jiaming Li to Misty McPherson on 4/19/23, Jiaming Li says, "we'll have the ability to settle all the payments once we have the 7th DC on work in order to allow us to get fund from Bitmains. Hopefully, it'll coming soon!" Where is all the communication and documents involving these funds that Jiaming says were coming from Bitmain? What funds and how much came from Bitmain to your clients? All documents and communications involving the funds that came from Bitmain to your clients should be produced.

- In MINEONE0001852, an email from Tony Simpson to Jiaming Li on 6/19/23, Mr. Simpson states, "We did receive your text stating you are unable to pay further as its directly affecting you personally, until your deal with Bitmain Closes your deal, of which is understandable, System's is now and has been on board with assisting your companies, in finishing the work needed to be done." Where are the texts between Jiaming Li and Tony Simpson regarding your clients' being unable to pay further until your deal with Bitmain closes? What deal is this 6/19/23 email referring to? Please produce all documents and communications relating to this "deal" between your clients and Bitmain. Where are the documents and communications regarding System's now being 'on board with assisting your companies in finishing the work needed to be done?' Please produce all documents and communications relating to this work being done for your clients and the "deal" with Bitmain.

- In meetings between BCB and your clients, Jiaming Li stated that a "trusted contact at Bitmain" connected Mr. Zhang and CryptoKnight (and SystemsMEC). Who is the trusted contact at Bitmain that Jiaming Li is referring to? Where are the communications and documents between this "trusted contact at Bitmain" and your clients? We know they exist because someone introduced Mr. Zhang to CryptoKnight (and SystemsMEC). For clarity, Mr. Huaili "Wiley" Zhang continually represented that he worked for your clients and we have documents and communication from Erick Rengifo and Jiaming Li that say that Mr. Zhang (and "his team") were going to be the new Site Manager because Bitmain wanted BCB "completely out" and that "our major client [Bitmain] – our major partner here [Bitmain] is – is– he doesn't want you (Plaintiff BCB) to be the – the – the host and the manager." Please provide all of these documents and communications.

- We want all of the documents and communications relating to Bitmain's intent and/or interest to have BCB removed and replaced. In short, on the March 7, 2023 call, it was clear that Bitmain wanted BCB "out completely" (see 12/21/23 Affidavit of Patrick Murphy para 27-29, ECF 95-1 and the audio file of that recorded call on March 7, 2023). Given how clearly Dr. Rengifo told BCB that "our major client [Bitmain] – our major partner here [Bitmain] is – is– he doesn't want you [Plaintiff BCB] to be the – the – the host and the manager," we know that communication and documents relating to Bitmain's intent and interest to remove and replace BCB exist. All documents and communication relating to this intent and interest should be produced.

Patrick Murphy
Counsel for BCB Cheyenne, LLC
January 18, 2024