Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
        smurray@wpdn.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company,                              . | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 23-CV-79 |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' MOTIONS TO VACATE THE ORDER ON INITIAL PRETRIAL CONFERENCE AND SET A NEW SCHEDULING CONFERENCE

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain, through its counsel,

and provides its Response to Defendants' two Motions to Vacate the Order on Initial Pretrial

Conference and Set a New Scheduling Conference [ECF 123 and 125].

## I.   <u>INTRODUCTORY STATEMENT</u>

The Court should deny the Defendants' motions to vacate the deadlines in the August 30, 2023 Order on Initial Pretrial Conference. [ECF 46].  The Court should not conduct another scheduling conference.  The Court should not vacate the January 27, 2025 trial date.  The only deadline that needs a slight adjustment is the Parties' expert witness designation deadline, which slight delay was caused by Defendants MineOne Wyoming Data Center LLC ("MineOne Wyoming"), Terra Crypto Inc. ("Terra Crypto") and Bitmain Technologies Georgia Limited ("Bitmain Georgia") stalling with providing meaningful written discovery to Plaintiff BCB. Plaintiff will file its Expert Witness Designation and damages report on March 20, 2024.

None of Defendants' conclusory statements for wanting to vacate the existing deadlines approach the "good cause" needed to support vacating the Court's already-generous deadlines and late January 2025 bench trial date.  Counsel for Plaintiff BCB has used his best efforts to quickly and timely pursue written discovery following the exchange of the Parties' Rule 26 Initial Disclosures on September 15, 2023.  But, as the Court can see from Plaintiff's *First Motion to Compel Discovery* [ECF 124] against Defendants MineOne Wyoming and Terra Crypto, Defendants have intentionally stalled providing any *meaningful* discovery to Plaintiff. Defendants' *strategy* is to stall this case for as long as they can while they generate about $250,000/day[1] mining bitcoin at the North Range site, while seeking to financially break and

---

[1] Sean Murphy's 12/21/23 *Disclosure Statement* provides a chart (*see* ECF 95-2, ¶ 75) detailing a calculated estimate for the amount of Bitcoin that Bitmain is mining at the North Range site based on the 9,800 bitcoin mining machines that Bitmain Georgia admits it shipped to the North Range site in February 2023. Plaintiff now has evidence that demonstrates Bitmain may have as many as 14,000 bitcoin mining computers at the North Range site, but with Bitmain Georgia objecting to Plaintiff's Requests for Production (requesting (1) the quantity and type of bitcoin mining computers that Bitmain has operating at North Range and (2) Bitmain's public Bitcoin wallet addresses), the total quantity and type of bitcoin mining computers that Bitmain has operating at North Range, and the amount of bitcoin being mined, remains unconfirmed. In December 2023, at the time of Sean Murphy's *Disclosure Statement*, Bitcoin was $44,000/Bitcoin. Now, at the time of this filing, it is $67,000/Bitcoin. Based on the quantity and type of Bitmain's bitcoin mining computers at the North Range site, and the current price of Bitcoin, it is reasonable to estimate Bitmain is mining close to four (4) bitcoin each day (at $67,000/Bitcoin) yielding an approximate and staggering $268,000/day ($8,040,000/month) in Bitcoin valued revenue. Bitmain, the parent

devastate the small Wyoming Plaintiff limited liability company.

## II.    FACTS AND PROCEDURAL HISTORY

1.     BCB filed this suit on May 3, 2023 [ECF 1].

2.     BCB timely achieved service of process on Defendants MineOne, Terra Crypto, MineOne Partners LLC ("MineOne Partners"), SonicHash LLC ("SonicHash") and Bit Origin Ltd ("Bit Origin") (all of these Defendants collectively known as "MOTBO") [ECF 11-15].

3.     The Court conducted its Initial Pretrial Conference on August 30, 2023 after the Parties filed their Joint Pretrial Report [ECF 46].

4.     At the Initial Pretrial Conference, the Court granted the Parties generous, even lengthy, deadlines to conduct discovery; then file their dispositive motions; and then set a two-week trial date far out on January 27, 2025.  His Honor, Judge Johnson, correctly said this about the 17-month trial date in late January, 2025: "Now, Mr. Murphy, I realize that this case is not moving fast enough for you."  [ECF No. 47 pg. 11].

5.     The Court ordered the Parties to exchange their Initial Rule 26 Disclosures by September 15, 2023, and the Parties complied with that Order [ECF 46].

6.     The Court also granted the Parties until September 30, 2023 to file any amended pleadings. *Id.*  Plaintiff BCB filed its *First Amended Complaint* on September 30, 2023. Defendants MOTBO filed their *Answer and Amended Counterclaims* on September 29, 2023.

7.     In its *First Amended Complaint* [ECF 50], BCB added Bitmain Georgia as a new Defendant on a claim for Bitmain Georgia's intentional interference with BCB's written contracts with Defendants MineOne Wyoming and Terra Crypto.

---

company, was valued at $40-$50 billion dollars in 2021 and has received more than one billion dollars in capital financing, and as such, is foreseeably able to "stack" or "hold" (*i.e.*, keep in a treasury and not need to spend or liquidate its mined bitcoin) the Bitcoin that it mines as the value of its Bitcoin appreciates. As Bitmain makes millions every month, Plaintiff must fend for itself and fight Bitmain's discovery objections and ongoing litigation delay tactics as Bitmain tries to preserve its lucrative status quo and crush Plaintiff with legal costs.

8.     BCB timely and effectively served Bitmain Georgia with its *First Amended Complaint* on October 25, 2023 [ECF 50].

9.     Thereafter, Bitmain Georgia did not timely answer or respond to BCB's *First Amended Complaint*.   The Clerk of the Court entered Default against Bitmain Georgia on November 17, 2023 [ECF 69].

10.     Despite the fact that Bitmain Georgia's Ailan Liu misrepresented to BCB's counsel, Patrick Murphy, on November 22, 2023, that she did not know of BCB's *First Amended Complaint* until November 21, 2022, when, in fact, she ***downloaded*** the *First Amended Complaint* back on October 25, 2023, the Court later set aside Bitmain Georgia's default, not mentioning Ms. Liu's misrepresentation to Patrick Murphy in its January 10, 2024 *Order Setting Aside Default Against Defendant Bitmain Technologies Georgia Limited* [ECF 103].

11.     Bitmain Georgia and its counsel had full knowledge of BCB's *First Amended Complaint* on October 25, 2023.   Bitmain Georgia had 2½ months – from October 25, 2023 – January 10, 2024 – to learn about this case.   Bitmain Georgia studiously avoids mentioning what it and its many lawyers did, during that default period, to catch up to speed on this case.

12.     BCB served interrogatories and requests for production of documents on Defendant MineOne Wyoming on October 12, 2023; on Defendant Terra Crypto on October 22, 2023; and on SonicHash, LLC on October 26, 2023.   Following Judge Rankin's intervention, these Defendants served their extensive objections on November 20, 2023, and their objections, responses and documents on December 20, 2023.

13.     Defendants MOTBO served requests for production on BCB on December 13, 2023.   BCB provided all Defendants with its objections and responses on January 31, 2024, and 46,293 pages of documents on February 15, 2024.

14.     Defendant Bitmain Georgia provided its Rule 26 Initial Disclosures on February

13, 2024.  Bitmain Georgia provided *no documents* – and identified only one company witness –
with its Initial Disclosures.

15.     Bitmain Georgia provided its objections, responses and only 136 pages of
documents to BCB's First Set of Requests for Production of Documents in late February 2024.
BCB has conferred with Bitmain Georgia about its inadequate production of documents, and BCB
will soon seek an informal discovery conference with Judge Rankin to remedy Bitmain Georgia's
lack of production.

16.     BCB will also be re-approaching Judge Rankin to assist with MineOne Wyoming's
lack of production.  Judge Rankin has scheduled a Zoom conference call on March 21, 2024, to
consider BCB's *First Motion to Compel Discovery* against Defendants MineOne Wyoming and
Terra Crypto.  [ECF 134].

17.     Defendants are engaged in a joint effort and strategy to preclude Plaintiff BCB from
receiving the most meaningful documents that will further prove: (a) MineOne Wyoming's and
Terra Crypto's breach of their written contacts with BCB; and (b) Bitmain Georgia's intentional
interference with BCB's written contracts with MineOne Wyoming and Terra Crypto.

18.     Here, Plaintiff BCB and Defendant MineOne Wyoming entered into a valid and
enforceable written contract, the DEVELOPMENT, HOSTING & SERVICES AGREEMENT ("DHS
AGREEMENT"), including a Side Letter (RE: Digital Mining Facilities – Right of First Refusal), on
or about June 9, 2022.  Plaintiff BCB substantially performed its obligations under the DHS
AGREEMENT without breaching the DHS AGREEMENT.  Defendant MineOne Wyoming failed
and/or chose not to honor or meet its obligations in the DHS AGREEMENT, which unjustified actions
constitute a material breach, or material breaches, of the DHS AGREEMENT, due to the intentional

interference by Bitmain Georgia.  Plaintiff BCB suspects[2] that Bitmain Georgia would only do its deal with MineOne Wyoming at the North Range facility – *i.e.*, provide to MineOne Wyoming (a) 9,800 bitcoin mining machines to be hosted in MineOne Wyoming's North Range bitcoin mining facility, and (b) a possible $8,000,000 loan (which is referenced in the 12/15/22 email from Jiaming Li) – if MineOne Wyoming replaced BCB as the O&M Service Provider with MineOne Wyoming's own team, even though BCB and MineOne Wyoming had previously agreed in the DHS AGREEMENT that BCB was the O&M Service Provider.

19.     Wyoming substantive law governs BCB's intentional interference with contract ("IIWC") claims against Bitmain Georgia, MineOne Partners, LLC, and Bit Origin, Ltd.  The four elements of an IIWC claim in Wyoming are: (1) the existence of [BCB's] contract [with MineOne Wyoming]; (2) [Bitmain Georgia's] knowledge of this contract; (3) Bitmain Georgia's intentional and improper interference inducing or causing a breach; and (4) resulting damages.  *First Wyo. Bank v. Mudge*, 748 P.2d 713, 715 (Wyo. 1988).  MineOne Wyoming and Terra Crypto admit the existence of BCB's DHS AGREEMENT with MineOne Wyoming and BCB's CONSULTING SERVICES AGREEMENT with Terra Crypto.  The *Operations and Maintenance Service Framework Agreement* ("O&M SF AGREEMENT") demonstrates Bitmain Georgia's *knowledge* of BCB's DHS AGREEMENT with MineOne Wyoming (and that Bitmain Georgia was previously aware that BCB was the O&M Service Provider), as Bitmain Georgia  used this O&M SF AGREEMENT to replace BCB with MineOne Wyoming's own team as the facility's O&M Service Provider (among other reasons, to impose terms and conditions on the O&M Service Provider that differed from BCB's

---

[2] These suspicions are evidenced by, among other things, (a) the multiple pre-suit representations that MineOne Wyoming's Erick Rengifo made to BCB that Bitmain did not want BCB to be the O&M Service Provider, and (b) MineOne Wyoming's proposed amendment to the DHS AGREEMENT (which would remove BCB as the O&M Service Provider). It is also supported by the *Operations and Maintenance Service Framework Agreement* between MineOne Wyoming and Bitmain Georgia, which contains numerous sections, terms, conditions, rights, obligations, and compensation in direct conflict with the DHS AGREEMENT, and in which Bitmain agrees that MineOne Wyoming (not BCB) is to be the O&M Service Provider.

DHS AGREEMENT with MineOne Wyoming). BCB's expert witness will establish BCB's damages from Bitmain Georgia's and MineOne Wyoming's breaches. And, to prove the requisite "intentional and improper interference inducing or causing the breach," BCB needs the requested documents in BCB's RFP No. 4, which documents MineOne Wyoming has refused to provide. Those documents will show Bitmain Georgia's influence and control over MineOne Wyoming, so much so that MineOne Wyoming did Bitmain Georgia's bidding and removed BCB as the facility host when Bitmain Georgia required MineOne Wyoming to do so.

20.     We know MineOne Wyoming communicated with Bitmain Georgia *before* MineOne Wyoming effectively removed BCB. In Haku Du's 2/20/23 email to BCB's Michael Murphy, there are six (6) different Bitmain representatives listed. *See* [ECF 124-4]. This email is proof that MOTBO communicated with Bitmain Georgia during the existence of the BCB DHS AGREEMENT, but MineOne Wyoming and Bitmain will not produce those relevant communications.

21.     With its deficient production, Bitmain Georgia at least provided two Agreements between Bitmain Georgia and MineOne Wyoming: the *Service Framework Agreement*, and the *Operations and Maintenance Service Framework Agreement*: those two Agreements were 65 of the total 136 pages Bitmain Georgia produced. Agreements do not exist in a vacuum: **correspondence** accompanies them. **Drafts** of those Agreements precede the final Agreements. And where, as here, it also appears there was a multi-million-dollar loan(s)[3] from Bitmain Georgia to MineOne Wyoming as part of these Agreements, the loan documents will further demonstrate

---

[3]  Jiaming Li's December 15, 2022 email to Erick Rengifo and Haku Du is so telling. *See* [ECF 124-3]. MineOne Wyoming's Jiaming Li writes: "***Also, we're under discussion with the largest manufacturer, Bitmain, for a comprehensive partnership***: (a) we're going to host their miners around 9,000 to fit 6 MDCs, and they're going to ship the most advances series S19 XP. b) ***Bitmain will loan us 50% LTV of what we have spent on the time our site energized, which means, around $8,000,000 will fund us to allow us to continue phase 2, or buy additional miners, or lower down our debt rate, etc. But Bitmain requires us to energize asap, also from our best interest, we can only sign agreements and get their funds by then***." (bold and italics emphasis added).

Bitmain Georgia's influence and control over MineOne Wyoming. All of these documents are highly relevant to BCB's claims of breach of contract and IIWC. But MineOne Wyoming and Bitmain Georgia, acting in concert, are intentionally stonewalling and refusing to provide these relevant documents (despite the existence of Judge Rankin's 12/6/23 Stipulated Protective Order).

22.     Acting under Bitmain Georgia's pressure and influence, MineOne Wyoming effectively repudiated and breached its DHS AGREEMENT with BCB. Now MineOne Wyoming has the position at North Range that BCB was contractually entitled to have. In the meantime, Bitmain's 9,800 bitcoin mining machines generate millions of dollars every month for Bitmain Georgia, and MineOne receives the financial benefit as BCB's successor as the O&M Service Provider. This should never have happened, but it did. BCB needs all of those requested documents and communications to further prove its claims.

23.     Despite Defendants' efforts to preclude Plaintiff from receiving the needed meaningful discovery to further prove its claims, Plaintiff will file its extensive Expert Designation and damages report on March 20, 2024.

24.     Having the same (and more) information that Plaintiff has, Defendants are able to designate their expert witness by April 30, 2024. The MOTBO Defendants have already retained their expert.

25.     Any depositions can (and will) be taken by the Court's August 7, 2024 discovery cutoff date. Defendants' counsel unduly frets that with all the people identified as potential witnesses in the Parties' Rule 26 Disclosures, Defendants "will be substantially prejudiced in its defense if the Court does not vacate the current scheduling order and re-set a scheduling conference." [ECF 123, p. 3]. Plaintiff BCB does not anticipate deposing more than five (5) witnesses this spring and summer.

26.     The current schedule generously affords all Parties adequate time to pursue and complete their fact and expert witness discovery by August 7, 2024.  And it also affords the Court a generous amount of time to receive the Parties' various dispositive motions by September 6, 2024, consider and rule on those motions before the January 10, 2025 Final Pretrial Conference, and then conduct the bench trial on January 27, 2025.  Importantly, while Defendants say¸ in a conclusory way, they need more time for discovery, they never demonstrate, in any concrete way, why (and for what) they need more time.  They simply say, "The volume and extent of discovery, coupled with the late addition of Bitmain Georgia to the case, constitute good cause."  *Id.* at 3.  Respectfully, it does not.  Bitmain Georgia caused its own delay with its failure to timely answer or plead.  Plaintiff BCB should not suffer because of Bitmain Georgia's self-caused delay.  MineOne Wyoming and Terra Crypto are intentionally delaying production of their most relevant and meaningful documents, all in an effort to delay – to the greatest extent they can – production to Plaintiff.

27.     In its *Motion to Vacate*, Defendants Bit Origin and SonicHash say:

> Due to unforeseen circumstances, Defendants Bit Origin and SonicHash required substitute counsel . . . .Counsel for Defendants Bit Origin and SonicHash have not had an opportunity to engage in a meaningful review of the documents that have been provided to date.

(ECF. 125, p. 2).

28.     Nothing further is said about these alleged "unforeseen circumstances."  Loeb & Loeb and Hathaway & Kunz represented all five MOTBO Defendants, including Bit Origin and SonicHash, LLC, for over eight (8) months, but now some alleged "unforeseen circumstances" have arisen causing some alleged need for substitute counsel for the two (2) of the five (5) MOTBO Defendants.  Is it possible the "unforeseen circumstances" are the MOTBO Defendants now attempting to appear and act separate from one another (thus retaining separate counsel) when they

were in fact alter egos of one another at all relevant times when interacting with and ultimately removing BCB from its role as the O&M Service Provider?  Without any better explanation of the "unforeseen circumstances," this does not constitute "good cause" to vacate the existing schedule. On its face, it is just more delay.

## CONCLUSION

Defendants' request to vacate the existing case deadlines and January 27, 2025 trial is intentional and financially-driven.  Their motive is to delay discovery and the trial as long as possible.  Why?  Because, as they mine nearly four (4) bitcoins per day at North Range with the current bitcoin price at approximately $67,000/bitcoin, they are generating revenues of ***over $260,000/day***.  And, with bitcoin prices expected to exceed $100,000/bitcoin by the end of the year, they can pay any litigation expenses just on the mere appreciation of the bitcoin price. Defendants will not provide BCB with how much bitcoin they are mining.  Instead, using American electrical power,[4] they mine millions of dollars of bitcoin every month in Cheyenne, likely distributing these profits to their Chinese investors.  Defendants are financially motivated to keep reaping millions of dollars from their North Range site; stretching out this litigation to reap the known and expected appreciation of the bitcoin price; and financially crushing Plaintiff's small Wyoming limited liability company (without which the North Range site, and its resulting revenues, would not have been possible for Defendants).  Defendants' motions to vacate the existing schedule and trial date have little to do with their professed need for their many attorneys to be afforded more time to review documents and take depositions:  instead, it has everything to

---

[4] On October 31, 2023, *The New York Times* reported: "Since **bitcoin mining was banned in China in May 2021** over concerns about energy usage and economic destabilization, Bitmain has shipped 15 times more equipment to the United States than it did in the previous five years combined.  The records show.  A recent presentation by the company (Bitmain) claimed it controlled 90 percent of the global market for the equipment, which is specially designed for Bitcoin mining." *Id.* at ¶ 44 (emphasis added).

do with Defendants exhausting and burying BCB's limited resources to pursue this case (while Defendants reap all the financial benefits of the fast-appreciating bitcoin price).

Bitmain is known by insiders in the cryptocurrency and investment industries for its ability to obfuscate and hide its corporate and organizational structure, hide where it owns and operates its cryptocurrency mining facilities, and minimize the perception of its global multi-billion-dollar sales and cryptocurrency mining operations.  [ECF 95-2, ¶ 32].  Such corporate secrecy and obfuscation is not possible for publicly listed companies where there are disclosure and filing requirements.  *Id.* at ¶ 33.  Those who are not involved in the cryptocurrency mining and hardware industry are unlikely to have heard of Bitmain even though it is a multi-billion-dollar global conglomerate with vast cryptocurrency mining operations and sales in the United States.  *Id.* at ¶ 34.  For the Defendants, everything about this lawsuit is an effort to not produce *meaningful* discovery; delay as much as possible; thwart the merits of the case; delay any justice and keep the status quo with them mining bitcoin in Wyoming using American electrical power.  The Court should deny Defendants' ill-supported motions to vacate the deadlines and trial date in the 8/30/23 ORDER ON INITIAL PRETRIAL CONFERENCE.

DATED this 8th day of March, 2024.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN,

Plaintiff

By:   /s/ Patrick J. Murphy
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 8th day of March 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [   ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[   ]   Overnight Delivery<br>[   ]   Hand Delivery<br>[   ]   Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Sarah Levitan Perry, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New<br>York, NY 10154<br>pcolbath@loeb.com<br>sperry@loeb.com<br>ainman@loeb.com | [   ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[   ]   Overnight Delivery<br>[   ]   Hand Delivery<br>[   ]   Electronic Mail |
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com | [   ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[   ]   Overnight Delivery<br>[   ]   Hand Delivery<br>[   ]   Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [   ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[   ]   Overnight Delivery<br>[   ]   Hand Delivery<br>[   ]   Electronic Mail |

| | |
|---|---|
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |

/s/Patrick J. Murphy
Patrick J. Murphy