Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, <br><br> Plaintiff, <br> v. <br><br> MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, <br><br> Defendants. | Civil No. 23-CV-79 |

## PLAINTIFF'S BRIEF ON THE LIMITED SCOPE AND EXTENT OF ANY JURISDICTIONAL DISCOVERY

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB"), through its counsel, and submits its Brief on the limited scope and extent of any jurisdictional discovery concerning third person Tim Desrochers and his domicile in Colorado.

1

## I.  LIMITS OF JURISDICTIONAL DISCOVERY

As a member of a corporate member of Plaintiff BCB, Tim Desrochers is a third person to this suit. He is not a party to this suit. He has still not been served with any of the six (6) subpoenas Defendant MineOne Wyoming has issued. Chief Judge Scott Skavdahl recently articulated the trial court's discretion with determining the scope and extent of any jurisdictional discovery.

> The Tenth Circuit has indicated that a court should allow at least limited discovery if such discovery is necessary to respond to a motion to dismiss for lack of jurisdiction. *See Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.") (*quoting Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary." (citation omitted).

*Steve Sharp Transportation, Inc. v. Parfab Industries, LLC*, 2022 WL 632173 at *2 (D. Wyo. 2022) (unpublished opinion). Judge Skavdahl then observed that "the Court agrees with Plaintiff that some *limited* discovery is warranted . . . ." *Id.* at *3 (emphasis added). Judge Johnson agrees with Chief Judge Skavdahl:

> District courts have broad discretion over discovery issues, including those involving jurisdiction… The burden is on the person requesting discovery, in this case Mr. Prince. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1189 n. 11 (10th Cir. 2010). Ultimately, the Court does not believe Mr. Prince is entitled to jurisdictional discovery because the information he requests would not impact the Court's decision regarding lack of personal jurisdiction and he has not shown, beyond speculation, that the information he requests would change the Court's decision.

*Prince v. The Intercept*, 2021 WL 7209554 at *7 (decided 1/15/2021, Johnson, Alan) (D. Wyo. 2021).

We also know that "discovery need not be granted to permit a fishing expedition for jurisdictional facts." *Greer v. Carlson*, 2020 WL 6064167 at *5 (decided 10/14/2020) (S.D. N.Y. 2020), *citing RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 402 (S.D. N.Y. 2009), *aff'd* 387 F. App'x 72 (2nd Cir. 2010). And

> In determining the scope of the limited jurisdictional discovery to permit, the Court is mindful of the need for proportionality; that is, the discovery permitted must be proportional to the current needs of the case. *See Carl v. Edwards*, No. 16-CV-03863 (ADS) (AKT), 2017 WL 4271443, at *9 (E.D.N.Y. Sept. 25, 2017) (court has "duty to ensure, in accordance with Rule 26(b)(1) that the discovery sought by Plaintiff – even in the limited jurisdictional context – is both relevant and proportional in light of the particular facts and circumstances of this case").

*Id.* at *6.

In our case, the jurisdictional *facts* are not controverted, and a more satisfactory showing of the Tim

2

Desrochers domicile facts is not necessary. *Prince, supra.* While Defendants dispute the *legal conclusion* that Mr. Desrochers was domiciled in Colorado when BCB filed its Complaint on May 3, 2023, the jurisdictional *facts* are not disputed. BCB has demonstrated that Tim Desrochers left Texas in March 2020 and moved to his sister's home in Fort Collins, Colorado with the then-present and continuing intention of residing/living in Colorado. [ECF 42-1] ("Further, whenever I travel for work or pleasure, my place of return is to my sister's house in Colorado"). Everyone knows Tim Desrochers used the PostNet address of 1401 Lavaca Street, Unit 242, Austin, Texas,[1] but Mr. Desrochers could not possibly live at a PostNet address, and he never lived anywhere in Texas after leaving his Addison,[2] Texas apartment when his lease terminated in early 2020. [ECF 110] ("Tim Desrochers has never visited in person or physically 'picked up' mail from the PostNet building at 1401 Lavaca St., Austin, TX 78701"). PostNet is a printing and shipping business (similar to a UPS Store) that also offers "Virtual Mail" services.[3] With PostNet's Virtual Mail service, Mr. Desrochers' physical mail that is received at 1401 Lavaca St., Austin, Texas 78701 can be (a) digitally scanned so that Mr. Desrochers can then view the scanned images of the physical mail on his phone or computer, anytime and anywhere he has an internet connection and/or (b) forwarded to his home address in Fort Collins, Colorado. No one can possibly reside at a PostNet office. There are no beds at PostNet. There are no toothbrushes. There is no way to possibly return to a PostNet office from one's travels. It is a commercial business. It is no one's "home."

Defendants have never shown that Mr. Desrochers has lived or resided *anywhere in Texas* since leaving Texas in March 2020. Consequently, all of their six subpoenas[4] to Tim Desrochers are a prohibited fishing expedition **hoping to find** some information – **any** information – that Mr. Desrochers ever lived **anywhere** in Texas after moving to Colorado.

---

[1] https://locations.postnet.com/tx/austin/1401-lavaca-st

[2] Addison, Texas is approximately 208 miles northeast of Austin, Texas (where the PostNet office is located at which Tim Desrochers receives some of his physical mail).

[3] https://www.postnet.com/virtual-mail/

[4] Following the Court's 2/26/24 text Order [ECF 126], it seems that MineOne withdrew its first four subpoenas and replaced or superseded them with its fifth and sixth subpoenas on February 28, 2024. [ECF 127 and 128].

## II.     APPLICABLE LAW ON A PERSON'S DOMICILE.

The applicable substantive law on one's domicile informs the limited scope and extent of any jurisdictional discovery needed to judicially determine Tim Desrochers' domicile (Colorado or Texas). Tim Desrochers' domicile at the time this suit was filed (here, May 3, 2023) is all that matters.

> Domicile is established by physical presence in a place accompanied by an intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). A change of domicile is valid even if done for the purpose of creating diversity, *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir.1992) (citing 1 James W. Moore, *Moore's Federal Practice* ¶ 0.74[3.-4] (2d ed. 1996)), and no minimum period of residence is required. *Morris v. Gilmer*, 129 U.S. 315, 328, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889). . . . [T]he place where a person lives is assumed to be his domicile unless the evidence establishes the contrary. *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309-10, 86 L.Ed. 329 (1941); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994) (a person's residence is his prima facie domicile).
>
> Mr. Cressler argues that while the defendants may have demonstrated that he maintains residences in both Colorado and Kansas, he has but one domicile, which is located in Limon, Colorado. Where it appears that a party may have more than one residence, the court should use a "totality of evidence" approach to ascertain the party's intended domicile . . . . The defendants assert that the plaintiff continued to provide his Kansas address to various third parties after October 1994, thereby demonstrating that he still resided in Kansas . . . . [But] the court finds that while the defendants have shown that the plaintiff continued to maintain a Kansas residence after February 1995, the plaintiff has proven that he also established a residence in Colorado.

*Cressler v. Neuenschwander,* 930 F. Supp. 1458, 1460 (D.Kan.1996).  Wyoming law is in accord.  A "person may have a domicile in only one place at a time: however, the same person may be a 'resident' of several places at the same time."  *Matter of the Estate of Tokowitz*, 541 P.3d 446, 451 (Wyo. 2024).  And "'Domicile' is narrowly defined: the domicile of a person is the place where he has voluntarily fixed his habitation with a present intent to make it either his permanent home or his home for the indefinite future."  *Id.*  "That place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his *home* . . . ." *Id.*

Circuit Judge Greg Phillips articulated the substantive law on one's domicile, for diversity purposes, in *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

> For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state.  *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). ***And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely***. *See id.*: *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597,

4

104 L.Ed.2d.29 (1989) ("[D]omicile is established *by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there*.").

(emphasis added).

In *Middleton*, the district court found that Mr. Stephenson was domiciled *in Utah* even though Mr. Stephenson owned a home and ranch *in Wyoming*,[5] was registered to vote and voted *in Wyoming,*[6] and his federal tax returns showed a *Wyoming address*.[7] Mr. Stephenson filed no Utah state income tax returns. The Tenth Circuit affirmed the district court's domicile determination. 749 F.3d at 1202.

Importantly, in those cases "where it appears that a party may have more than one residence, the Court should use a 'totality of evidence' approach to ascertain the party's intended domicile." *Middleton v. Stephenson*, 2012 WL 2224451 at *6 (D. Utah, Central Division, decided June 14, 2012), *quoting Cressler*, 930 F. Supp. at 1460. And

> To establish a new domicile, it is enough to have a 'floating intention' to stay in the place indefinitely, even if a party also has 'the general desire to return to the former domicile at some undetermined point in time.' On the other hand if a party has, at the time of filing, an 'existing intention to return [to the original domicile] upon the happening of a reasonably foreseeable event,' a new domicile is not established.

*Middleton*, at *4.

Here, there is *no evidence* that Tim Desrochers had any residence other than Fort Collins, Colorado since March 2020 – more than three years before this case was filed on May 3, 2023. Here, all of the evidence

---

[5] Tim Desrochers never owned a home or real property in Texas.

[6] Tim Desrochers is not registered to vote in any state and does not vote in any state.

[7] Like Texas, Wyoming has no state income tax. Like Utah, Colorado has a state income tax. Even though Mr. Stephenson filed his federal income tax returns with his Wyoming address and paid no Utah state income taxes, the Tenth Circuit afforded this factor little weight when determining he was domiciled in Utah.

> We don't mean to suggest that Stephenson has nothing on his side of the ledger. To be sure, he has evidence pointing to Wyoming as his domicile. For example, he highlighted that he owned a home and ranch near Evanston, Wyoming, that he was registered to vote and did vote in Wyoming, *and that his tax returns showed a Wyoming address*. Even so, the district court weighed this evidence and wasn't persuaded. And, for our part, we aren't persuaded that the district court's scales were so poorly calibrated that its finding constituted clear error.

*Middleton*, 749 F. 3d at 1201-02 (emphasis added). The Tenth Circuit did not adopt or apply any notion of "tax estoppel," and the Tenth Circuit correctly viewed the state where Mr. Stephenson filed his taxes (Wyoming) as just one factor – but clearly not an important factor – when determining Mr. Stephenson was domiciled in a different state (Utah). This is what should happen here with Tim Desrochers: the states where Mr. Stephenson and Mr. Desrochers stated as home on their federal income tax returns are *not* the states where they were/are "domiciled."

shows that Tim Desrochers was living and residing in Fort Collins, Colorado since March 2020. He moved all of his belongings to his sister's home in Fort Collins, Colorado when he left Texas in March 2020. [ECF 42-1]. And it is in Colorado that Mr. Desrochers intends to remain. Mr. Desrochers never had a "floating intention," or any intention, of returning to Texas. To be sure, Mr. Desrochers travels extensively and works remotely while traveling, but Fort Collins, Colorado is the only place to which Mr. Desrochers has "a present intention of [returning from any travels] and making it his *home*." *Matter of Estate of Tokowitz*, 541 P.3d at 451 (emphasis added).

Tim Desrochers has spoken definitively to what matters here. In his 8/21/23 Affidavit and his 1/29/24 subpoena *Response*, Mr. Desrochers says he hasn't lived in Texas since early 2020. He has no home in Texas. He rents no home, apartment or property in Texas. He owns no real property in Texas. He leases no property in Texas. Instead, Mr. Desrochers moved *all* of his personal property to his sister's home in Fort Collins, Colorado in March 2020 [ECF 42-1]. His sister's home is Mr. Desrochers' home and residence. *Id.* And Colorado is where Mr. Desrochers *has intended* to reside – and *has resided* – since leaving Texas in early 2020. And Colorado is where he intends to continue residing. Mr. Desrochers has engaged a Colorado tax preparer, and Colorado is where Mr. Desrochers plans to file his 2023 tax returns. Nothing in Mr. Desrochers' Utah tax preparer's 2021 and 2022 tax files will shed further light on which state – Texas or Colorado – Mr. Desrochers was *residing* on May 3, 2023. *Middleton, supra.*

The *Cressler* court "compiled a list of factors courts have to consider in *choosing between two residences*."[8] *Middleton* at *4 (emphasis added). Those nine (9) factors are:

1. Whether or not an individual votes where he claims domicile;

2. The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;

3. Whether his family and dependents have moved to the new residence;

4. Whether an individual's belongings have been moved to the new residence;

---

[8] Tim Desrochers has had only one residence since March 2020: 7426 Matheson Drive in Fort Collins, Colorado. He hasn't lived in Texas since March 2020. [ECF 42-1]. While he often travels, he has lived and resided only with his sister in Colorado since March 2020. Unlike Mr. Stephenson in *Middleton*, 749 F.3d at 1202, Tim Desrochers does not have two residences. ***The predicate finding – two residences – for even traveling down this domicile inquiry road is wholly absent here***.

6

5. One's relationships with churches, clubs, and investments in the new residence;

6. Whether or not a place of abode is retained in the old state of residence;

7. Whether or not investments in local property or enterprises attach one to the former residence;

8. Whether one retains affiliations with professional religious and fraternal life of the former community; and

9. What domicile is claimed for tax purposes.

*Id.* at *4.

Here, even if Tim Desrochers had two residences in 2021, 2022 or 2023 – which he never did – these factors strongly point to Colorado as Tim Desrochers' domicile on May 3, 2023. Tim Desrochers does not vote and is not registered to vote in any state. Tim Desrochers has lived at his sister's home in Fort Collins, Colorado since March 2020 when Covid struck: he has not rented a home, apartment or *any* property in Texas (or anywhere else) since early 2020, nor has he lived or resided *anywhere in Texas* (or anywhere else) during these last four years. His *only home* is his sister's home in Fort Collins since March 2020. Mr. Desrochers has no wife or children, but he lives with his sister, and her husband, at their home in Fort Collins. He was personally served with MineOne's 'first' subpoena at his home in Fort Collins on January 15, 2024 [ECF 105]. Tim Desrochers moved *all* of his belongings to his sister's Fort Collins home in March 2020, and that is where they have remained ever since. [ECF 42-1]. Tim Desrochers has never had any relationship with a church, club or any investment in Texas. Mr. Desrochers did not retain his Texas apartment (or any place of abode) when he left Texas in March 2020: his lease terminated and he never renewed it or sought another lease. Mr. Desrochers has not had any "investments in local [Texas] property or enterprise" that attach him to his former Texas residence. And Mr. Desrochers filed his federal 2021 and 2022 income tax returns using his PostNet Virtual Mail address in Austin, Texas (which provides Tim Desrochers the ability to (a) view scanned digital images of his physical mail and/or (b) forward his physical mail to his home in Fort Collins, Colorado at 7426 Matheson Drive). Thus, even if the Court were to ever conclude, which it cannot, that Tim Desrochers had "two residences" on May 3, 2023, which he did not, the great weight of the evidence commands the judicial conclusion that Tim Desrochers was "domiciled" in Colorado – not in Texas – when the lawsuit was filed on May 3, 2023.

7

III. **THE KNOWN JURISDICTIONAL FACTS PRECLUDE ANY NEED FOR JURISDICTIONAL DISCOVERY BEYOND WHAT TIM DESROCHERS AND BCB PROPOSED IN PATRICK MURPHY'S MARCH 5, 2024 CONFERRAL PROPOSAL.**

Tim Desrochers and BCB iterate the reasonable, even generous, jurisdictional discovery they proposed in Patrick Murphy's 3/5/24 conferral proposal letter **("Exhibit A")**. And Mr. Desrochers and BCB re-assert all of their objections to MineOne's fifth and sixth subpoenas [ECF 127 and 128] in Patrick Murphy's 3/8/24 objections letter **("Exhibit B")**. As described more fully in **"Exhibit B,"** nearly all of what Defendants are now seeking with their new records subpoena to Tim Desrochers is irrelevant, excessive, and unduly burdensome on Mr. Desrochers – a third person to this suit – and disproportional to the singular domicile issue.

None of the requested documents speak to whether, or where, Tim Desrochers lived/resided in Texas after leaving his Addison, Texas apartment in early March 2020. Yet, whether and where Tim Desrochers lived and resided anywhere in Texas after March 2020 is the only relevant inquiry. Where, as here, Tim Desrochers *left Texas* in March 2020 and established his new home, residence and domicile at his sister's Fort Collins' home in March 2020 – with his present and continuing intent to remain in Fort Collins, Colorado – all of the 15 categories of documents requested of Mr. Desrochers are irrelevant, unduly burdensome, and disproportional to this narrow domicile issue. Defendants do not have a shred of evidence placing Tim Desrochers in any home, apartment, condo, or other Texas residence after March 2020 – and that is why *all* of their requested written discovery requests to Mr. Desrochers is a prohibited jurisdictional fishing expedition. *Greer, supra* at *5 ("discovery need not be granted to permit a fishing expedition for jurisdictional facts").

Defendants seek to fit a square peg in a round hole. Defendants seek a judicial determination that Tim Desrochers was domiciled in Texas in May 2023 even though Mr. Desrochers did not then live/reside in Texas (and hadn't lived in Texas since March 2020) and had no intention of residing in Texas or returning to Texas. Rare is the case where a court finds one domiciled in a state he is not residing with no intention to indefinitely live in that state. Instead, courts give predominant weight to the state where one actually resides coupled with the intent to remain there indefinitely. *Middleton*, 749 F.3d at 1200; *Matter of the Estate of Tokowitz*, 541 P.3d at 451. For Tim Desrochers, that state is Colorado after March, 2020, including May 3, 2023. Colorado is where Tim Desrochers "voluntarily fixed his habitation, not for a mere temporary or special purpose, but with

a present (and continuing) intention of **making it his home**...” *Tokowitz*, 541 P.3d at 451 (emphasis added).

Defendants know that Tim Desrochers has not lived or resided in Texas since March 2020, so they cast their vast subpoena fishing net hoping to find something – anything! – showing Tim Desrochers *actually resided* in Texas in 2021, 2022 or 2023. But Tim Desrochers did *not live or reside* in Texas after March 2020, and none of the 15 categories of subpoenaed documents are reasonably calculated to show that Tim *lived or resided* in Texas after March 2020. *See Stephenson*, 749 F.3d at 1200 ("And a person acquires domicile in a state *when the person resides there and intends to remain there indefinitely*") (all emphasis added). None of the subpoena documents show *where Tim lived or resided* after March 2020. **Request No. 1** – documents showing dates of use of the PostNet building – say nothing about where Tim lived. [ECF 110]. **Request No. 2** – his federal tax returns for 2020, 2021, 2022 and 2023 (which 2023 return hasn't been filed or even prepared yet) – say nothing about where Tim lived. They show only where he received some of his physical mail (which Mr. Desrochers could have (a) digitally scanned and made available to view on his phone and/or computer and/or (b) forwarded to his home in Fort Collins, CO). **Request No. 3** – seeking the name and address of Tim's Utah 2021 and 2022 tax preparer – says nothing about where Tim lived. **Request No. 4** – seeking all of Tim's communications with the IRS or any other taxing authority – say nothing about where Tim lived. **Request No. 5** – seeking the business cards for this remote worker – say nothing about where Tim lived. They show where his employer is physically located in Austin, Texas, but not where Tim lived. **Request No. 6** – motor vehicle policies and insurance cards for 2021-2023 – show only where those policies and cards were mailed to Tim, not where Tim lived. **Request No. 7** – loan applications and the first page of Tim's credit card statements – show only where these statements were mailed, not where Tim lived. **Request No. 8** – renters insurance applications for 2021-2023 – is inapplicable because Tim did not rent anywhere in 2021-2023. **Request No. 9** – medical claim forms and EOB's for 2021-2023, showing his address – show only where those claims forms were mailed, not where Tim lived. **Request No. 10** – statements for Tim's investment, bank or brokerage accounts for 2021-2023 – show only where those statements were mailed, not where Tim lived. **Request No. 11** – the CMV Global, LLC Operating Agreement showing an address for Tim as a member of CMV Global, LLC – is redundant to what CMV Global, LLC managing member James Quid previously disclosed to the Court as Tim Desrochers' mailing address in ECF 108-1 (showing Tim Desrochers' "mailing address at 1401

Lavaca Street, Unit #242, Austin, TX, 78701 [and his] legal address as 7426 Matheson Drive, Fort Collins, CO 80525"). **Request No. 12** - any and all communications between anyone with CMV and Tim Desrochers that relate to Tim's residence or domicile in the years 2020, 2021, 2022 and 2023 – is redundant to what Tim Desrochers provided to CMV Global, LLC managing member James Quid above, to wit, that Tim Desrochers had a *mailing address* at the PostNet address on Lavaca Street in Austin, Texas, but his "legal address" was at his home, with his sister, in Fort Collins, Colorado. [ECF 108-1]. **Request No. 13** – "all" communications regarding Tim's residence or domicile with "anyone," including over 15 people and licensing and insurance companies – is the best (or worst!) example[9] of an unbridled fishing expedition, hoping to find some admission or concession of where Tim lived since January 1, 2023. They don't show where Tim lived, or his present intent to remain. **Request No. 14** – all of Tim's resumes and CV's for 2020, 2021, 2022 and 2023, which show Tim's address – do not show where Tim lived or where he intended to remain. And **Request No. 15** – seeking all documents showing how many days Tim spent in Colorado for the entire year preceding May 3, 2023 – say nothing about whether, or where, Tim may have lived in Texas.

It is axiomatic: unless one *resides* in a state *and intends to remain* in that state, he/she cannot be domiciled there. *Middleton*, 749 F.3d at 1200; *Cressler*, 930 F. Supp. at 1460; *Matter of the Estate of Tokowitz*, 541 P.3d at 446. None of the categories of subpoenaed documents speak to any residence or dwelling in Texas in 2021, 2022 or 2023. They speak only to where Tim Desrochers received his mail. The categories of subpoenaed documents are not proportional or relevant to this very narrow domicile issue.

We end where we began: because the Tim Desrochers jurisdictional *facts* are not controverted, and because a more satisfactory showing of these already-fulsome domicile facts is not necessary, the Court should correctly find that no further jurisdictional discovery is warranted. But BCB's counsel, Patrick Murphy, represented he would not withdraw his very reasonable March 5, 2024 conferral proposal, and BCB, Tim Desrochers and Mr. Murphy iterate that proposal here. It is expressed on **"Exhibit A."** pp. 2-3.

No further jurisdictional discovery should be initiated or conducted by *anyone* (beyond what is included in Mr. Murphy's 3/5/24 conferral proposal). **All** of the Defendants – not just MineOne – should be

---

[9] We ask the Court to pay special attention to BCB's and Tim Desrochers' objections – in **"Exhibit B"** – to Nos. 7, 10, 12, and 13. Jurisdictional discovery should never be allowed to any of these requested documents.

bound by the Court's forthcoming jurisdictional discovery order: none of the Defendants should have a second, third, or fourth bite of the jurisdictional discovery apple (and be allowed to continue their delays and harassment). Judicial efficiency and the Parties' resources are best preserved by all Parties completing **all** jurisdictional discovery at the same time, and then all Parties presenting any dispositive motion to the Court by a date certain. Any deposition of this non-party witness, Tim Desrochers, should be limited to two (2) hours. Defendants' counsel may take a targeted deposition of Mr. Desrochers, but not an extended deposition of Mr. Desrochers. No one else should be deposed. There must be a limit to the deadline to complete *all* jurisdictional discovery, and that deadline should be early April, 2024. The Parties and their counsel then need to focus on the merits of this case.

## CONCLUSION

Judge Johnson got it right, in *Central Wyoming Neurosurgery, LLC v. Barta-Iso Aviation*, 2013 WL 2457705, at *4 (decided June 6, 2013), where he observed:

> Whether to grant jurisdictional discovery is a matter of discretion for the district court. The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery. [citation omitted].

Where, as here, there is no evidence that Tim Desrochers (1) lived in Texas after March 2020, or (2) intended to remain in Texas indefinitely, or even had a 'floating intention' of returning to Texas upon the occurrence of some foreseeable event, Defendants have not demonstrated a legal entitlement to their requested jurisdictional discovery, or how they would be harmed by a denial of their jurisdictional discovery. Colorado is Tim Desrochers' only home. Tim Desrochers never had any "present intention of [returning from any travels] and making the PostNet office in Austin, TX his home." *Matter of Estate of Tokowitz*, 541 P.3d at 451. It is impossible to make a PostNet office one's "home." No jurisdictional discovery will ever change the fact it is impossible to make a PostNet office one's "home." Jurisdictional discovery should be reasonably limited to what Patrick Murphy presented in his March 5, 2024 Conferral Proposal (*see* "**Exhibit A**").

11

DATED this 18th day of March, 2024.

        BCB CHEYENNE LLC d/b/a
        BISON BLOCKCHAIN,

        Plaintiff

        and

        TIM DESROCHERS, A NON-PARTY MEMBER OF
        CMV GLOBAL, LLC

By: /s/ Patrick J. Murphy
     Patrick J. Murphy (WSB No. 5-1779)
     Scott C. Murray (WSB No. 7-4896)
     Williams, Porter, Day & Neville, PC
     159 N Wolcott St. Suite 400
     Casper, WY 82601
     Ph: (307) 265-0700
     pmurphy@wpdn.net
     smurray@wpdn.net

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 18th day of March 2024.

| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [   ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[   ]   Overnight Delivery<br>[   ]   Hand Delivery<br>[   ]   Electronic Mail |
|---|---|

| | |
|---|---|
| Paula Colbath, *Pro Hac Vice* <br> Sarah Levitan Perry, *Pro Hac Vice* <br> Alex Inman, *Pro Hac Vice* <br> LOEB & LOEB LLP <br> 345 Park Avenue New York, NY 10154 <br> pcolbath@loeb.com <br> sperry@loeb.com <br> ainman@loeb.com | [ ]   U. S. Mail (prepaid) <br> [ x ]   CM/ECF Electronic Transmission <br> [ ]   Overnight Delivery <br> [ ]   Hand Delivery <br> [ ]   Electronic Mail |
| Marc Feinstein, *Pro Hac Vice* <br> William Pao, *Pro Hac Vice* <br> O'MELVENY & MYERS <br> 400 South Hope Street <br> Los Angeles, CA 90071-2899 <br> mfeinstein@omm.com <br> wpao@omm.com | [ ]   U. S. Mail (prepaid) <br> [ x ]   CM/ECF Electronic Transmission <br> [ ]   Overnight Delivery <br> [ ]   Hand Delivery <br> [ ]   Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581 <br> Tyson R. Woodford, WSB No. 8-6650 <br> HIRST APPLEGATE LLP <br> 1720 Carey Ave. Room 400 <br> P.O. BOX 1083 <br> Cheyenne, WY 82003 <br> klenhart@hirstapplegate.com <br> twoodford@hirstapplegate.com | [ ]   U. S. Mail (prepaid) <br> [ x ]   CM/ECF Electronic Transmission <br> [ ]   Overnight Delivery <br> [ ]   Hand Delivery <br> [ ]   Electronic Mail |
| Meggan J. Hathaway <br> Jane M. France <br> SUNDAHL, POWERS, KAPP & MARTIN, LLC <br> 500 W. 18th Street, Ste. 200 <br> Cheyenne, WY 82003 <br> mhathaway@spkm.org <br> jfrance@spkm.org | [ ]   U. S. Mail (prepaid) <br> [ x ]   CM/ECF Electronic Transmission <br> [ ]   Overnight Delivery <br> [ ]   Hand Delivery <br> [ ]   Electronic Mail |
| Marc S. Gottlieb <br> ORTOLI ROSENSTADT, LLP. <br> 366 Madison Avenue, 3rd Floor <br> New York, NY 10017 <br> Telephone: (212) 588-0022 <br> Facsimile: (866) 294-0074 <br> Email: msg@orllp.legal | [ ]   U. S. Mail (prepaid) <br> [ x ]   CM/ECF Electronic Transmission <br> [ ]   Overnight Delivery <br> [ ]   Hand Delivery <br> [ ]   Electronic Mail |

/s/Patrick J. Murphy
Patrick J. Murphy