Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
         smurray@wpdn.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company,            . | ) ) ) ) | |
|      Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, A Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
|      Defendants. | ) ) | |

## PLAINTIFF'S MOTION/REQUEST FOR RECONSIDERATION OF JUDGE RANKIN'S ORDER ON PLAINTIFF'S MOTION TO COMPEL [154] ("*ORDER*")

COMES NOW Plaintiff BCB Cheyenne LLC, d/b/a Bison Blockchain, through its counsel,

and pursuant to Judge Alan Johnson's 4/11/24 Order [ECF 156] and local rule 74.1 and 28 U.S.C. §

636 (b)(1)(A), hereby files its request for reconsideration of a portion of Judge Rankin's March 27, 2024 discovery *Order*. [Doc 154].

## I.   <u>INTRODUCTION</u>

BCB respectfully appeals two aspects of Judge Rankin's discovery *Order*. BCB does not challenge or appeal those portions of the *Order* dealing with jurisdictional discovery or service by email. Rather, BCB appeals two of Judge Rankin's rulings on Plaintiff's motion to compel discovery of Plaintiff's Request for Production No. 4 ("RFP No. 4"). Judge Rankin committed clear legal error, when, without any cited authority he erroneously limited Plaintiff's discovery of the documents and communications between Defendant MineOne Wyoming Data Center LLC ("MineOne") and Defendant Bitmain Technologies Georgia Limited ("Bitmain") under RFP No. 4. Specifically, Judge Rankin erred when he ordered MineOne to produce only its communications and documents which existed as of March 15, 2023 when BCB filed this lawsuit, but refused to order Defendant MineOne to produce *subsequent* critical financing and loan communications and documents with Bitmain, specifically, the highly relevant July 27, 2023 *Loan and Security and Agreement.* If relevant, "there is no bar against discovery of information about events occurring after the filing of a lawsuit." *McKinney v. Gannett Co.*, 1660 F. Supp. 984, 980 (D.N.M. 1981).  Judge Rankin also erred when he accepted – 'lock, stock and barrel' – MineOne's counsel's evasive strawman argument that "Chinese privacy laws" preclude MineOne from producing its WeChat communications with Bitmain and did not compel MineOne to produce all its relevant WeChat communications with Bitmain in its possession under RFP No. 4 to BCB in this civil action in Wyoming Federal District Court.

## II.   <u>STANDARD OF REVIEW</u>

A judge of the court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to

law." 28 U.S.C. § 636(b)(1)(A).  "A judge of the court may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III.    MOTIONS TO COMPEL DISCOVERY - APPLICABLE STANDARDS

Judge Rankin correctly cited the applicable standards and tenets governing motions to

compel civil discovery in its *Order.*

> Rule 26(b)(1) provides "[p]arties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information does not need
> to be admissible in order to be discoverable. *Id.* Rather, "the scope of discovery should be
> broadly and liberally construed to **achieve the full disclosure of all potentially relevant
> information**." *Landry v. Swire Oilfield Serv's*, 323 F.R.D. 360, 375 (D.N.M. 2018) (quoting
> *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004)).  (emphasis added).

*Order* at 2-3.  Moreover,

> When the discovery sought appears relevant, the burden rests with the party resisting the
> discovery to establish irrelevancy by showing the discovery (a) does not come within the
> scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (b) is of such marginal
> relevance that the potential harm occasioned by discovery would outweigh the ordinary
> presumption favor of broad discovery.

*See* 6/16/22 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL,

*Tillman v. Riverton Memorial Hospital, LLC* Civil No. 21-CV-138-F, United States District Court;

District of Wyoming (Rankin, Magistrate Judge), p. 2 (ECF 39).

### IV.    BCB'S CONTENTIONS AND FACTUAL AND LEGAL CONTEXT

Relevancy is judged by the parties' contentions and defenses.  Here, Plaintiff BCB and

Defendant MineOne entered into a valid and enforceable written contract, the DEVELOPMENT,

HOSTING & SERVICES AGREEMENT ("DHS AGREEMENT") on or about June 9, 2022.  (ECF 50, ¶¶ 198-

201). Plaintiff BCB substantially performed its obligations under the DHS AGREEMENT without

breaching the DHS AGREEMENT (*Id*. at ¶ 197). Defendant MineOne failed and/or chose not to honor

or meet its obligations in the DHS AGREEMENT, which unjustified actions constitute a material breach, or material breaches, of the DHS AGREEMENT, due, in large measure, to the intentional interference by Bitmain Georgia. (*Id.* at ¶¶ 198-199).

Wyoming substantive law governs BCB's intentional interference of contract ("IIWC") claims against Bitmain Georgia, MineOne Partners, LLC, and Bit Origin, Ltd.  The four elements of an IIWC claim in Wyoming are: (1) the existence of [BCB's] contract [with MineOne]; (2) [Bitmain's] knowledge of this contract; (3) Bitmain's intentional and improper interference inducing or causing a breach; and (4) resulting damages.  *First Wyo. Bank v. Mudge*, 748 P.2d 713, 715 (Wyo. 1988). MineOne admits the existence of BCB's DHS AGREEMENT with MineOne.  The 3/10/23 *Service Framework Agreement ("SF Agreement")* and 3/10/23 *Operations and Maintenance Service Framework Agreement* ("*O&M SF AGREEMENT*") demonstrate Bitmain's **knowledge and interference** with BCB's DHS AGREEMENT with MineOne (and that Bitmain was previously aware that BCB was the O&M Service Provider), as Bitmain used the *O&M SF AGREEMENT* to replace BCB with MineOne's own team as the facility's O&M Service Provider.

Bitmain – through its subsidiary, Bitmain Georgia – entered the fray to remove BCB and take control of the bitcoin mining projects in/near Cheyenne. MineOne's Jiaming Li identified this intent with his December 15, 2022 email to MineOne's Erick Rengifo and Haku Du. Jiaming Li stated:

> ...we're under discussion with the largest manufacturer, Bitmain, for a ***comprehensive partnership***: (a) we're going to host their miners around 9,000 to fit 6 MDCs, and they're going to ship the most advances (sic) series S19 XP.  b) Bitmain will loan us 50% LTV of what we have spent on the time our site energized, which means, **around $8,000,000 will fund us to allow us to continue phase 2**, or buy additional miners, or lower down our debt rate, etc.  **But Bitmain requires us** to energize asap, also from our best interest, we can only sign agreements and get their funds by then.

(emphasis added).

There was a multi-million-dollar loan(s) from Bitmain's financial lending company, AntAlpha,

to MineOne. This loan was specifically referenced in MINEONE0010529 (*see* "**Exhibit A"**) and identified by name and date in MINEONE0000486 (*see* "**Exhibit B**"). It is the July 27, 2023 *Loan and Security Agreement* between MineOne and Bitmain's owned and controlled lending company, AntAlpha. The *Loan and Security Agreement* is inextricably connected to the MineOne/Bitmain *SF Agreement* and *O&M SF Agreement*. These three primary documents – the 3/10/23 *SF Agreement*, the 3/10/23 *O&M SF Agreement,* and the 7/27/23 *Loan and Security Agreement* – effectuated and formalized the MineOne/Bitmain "comprehensive partnership" that was first referenced and was being negotiated in December 2022 (*see* "**Exhibit A**") and identified as being signed and in full force and effect in September 2023 (*see* "**Exhibit B**").  The "comprehensive partnership" is best understood in "**Exhibit C**," which shows a detailed diagram of the complex corporate hierarchy of Bitmain-owned and controlled companies and how the "comprehensive partnership" between Bitmain/MineOne was built on these three contracts. It is foreseeable Defendants may argue the *Loan and Security Agreement* should not be produced because it is technically a contract between Defendant MineOne and AntAlpha, but "**Exhibit C"** clearly shows how AntAlpha is owned and controlled by Bitmain. All of the companies in "**Exhibit C"** are Bitmain or controlled by Bitmain; they are all owned by Micree Zhan (aka Zhan Ketuan), the billionaire co-founder and CEO of Bitmain. Follow the money: these three contractual documents in **"Exhibit C"** – the *SF Agreement*, the *O&M SF Agreement,* and the *Loan and Security Agreement* – are the heart of the Bitmain/MineOne "comprehensive partnership" and demonstrate the tortious interference by Bitmain and breach of contract by MineOne.

BCB's expert witness has already established BCB's damages from Bitmain's tortious interference and from MineOne's breach of contract (ECF 151-1).  But, to prove the "intentional and improper interference inducing or causing the breach," BCB needs the requested documents in RFP No. 4, documents that MineOne has refused to provide, and documents that Judge Rankin did not

order be produced. The *Loan and Security Agreement* is the foundational document to demonstrate Bitmain's financial influence and control over MineOne, so much so that MineOne did Bitmain's bidding and wrongfully removed BCB as the O&M Service Provider when Bitmain required MineOne to do so.

RFP No. 4 asks MineOne to produce:

> Any document, contract, email, or other communication (including text messages, WeChat, WhatsApp, Discord, Telegram, or any other mobile or social messaging application), **between Bitmain** (including any and all of its subsidiaries) **and you** (including but not limited to, Jiaming Li, Erick Rengifo, Huali Zhang, Cho Zhu, Ziyao Shao, and Haku Du) relating in any way to cryptocurrency mining at the North Range and/or Campstool sites.

*See* BCB RFP No. 4 (emphasis added).

In his *Order* at page 3-4, Judge Rankin summarized three categories of documents and communications that Plaintiff requested be produced under RFP No. 4 (*Order* at 3-4). Judge Rankin first erred when he incorrectly *assumed* that MineOne – in its "7,000 pages" of production — have produced any more than a few pages of documents responsive to RFP No. 4. Precious few, if any, of the documents and communications that Judge Rankin identified under the three categories on pages 3-4 have been produced. Judge Rankin did not look at any of MineOne's documents and had no way of knowing whether or not any of the "7,000 pages" were responsive to RFP No. 4. They were not responsive. Those 7,000 pages were duplicative in many cases, involved MineOne communication with project vendors, were irrelevant and, importantly, had *nothing* to do with RFP No. 4. Judge Rankin then failed to order the most relevant and critical documents responsive to RFP No 4 be produced. They are these: (1) the July 27, 2023 *Loan and Security Agreement,* and (2) any and all unredacted WeChat messages between MineOne's representatives (listed in RFP No. 4) and Bitmain representatives.

## IV.   <u>LEGAL ARGUMENT</u>

### 1.     *The July 27, 2023 "Loan and Security Agreement."*

Judge Rankin erroneously refused to order production of the 7/27/23 *Loan and Security Agreement* between MineOne Wyoming and Bitmain owned/controlled AntAlpha. Without citing any legal authority for the Court's refusal to order production of *Loan and Security Agreement,* this was the full extent of Judge Rankin's stated rationale and ruling.

> The Court is not inclined at this time to extend the requests beyond the [3/15/23] date suit was filed. Plaintiff asserted its claims at that time, strongly insinuating the factual bases for those claims already occurred. Thus, it is not evident why communications after the commencement of this suit are relevant.  (*Order* at 4).

The *Loan and Security Agreement* is highly relevant. It was clearly envisioned – by Bitmain and MineOne back in December of 2022 and March 2023 – that such a loan and security agreement would be executed. The *Loan and Security Agreement* is a critical ***financial and control document*** of the MineOne/Bitmain "comprehensive partnership."  It will state the financial terms of the loan(s). It will describe the security and control terms that Bitmain required and obtained on the North Range bitcoin mining site. Acting under Bitmain's financial leverage and control, and Bitmain's requirement that BCB be removed as the O&M Service Provider, MineOne then effectively removed BCB as the O&M Service Provider, replaced BCB with MineOne as the O&M Service Provider, and ultimately brought these bitcoin mining projects under full Chinese ownership, control, and operations/maintenance.

Judge Rankin's failure to recognize the relevancy and discoverability of the 7/27/23 *Loan and Security Agreement* is contrary to the established principles of allowable discovery, namely:

> "The scope of discovery should be broadly and liberally construed to achieve the ***full disclosure of all potentially relevant information***." *Landry v. Swire Oilfield Serv's*, 323 F.R.D. 360, 375 (D.N.M. 2018) (quoting *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004))."  (emphasis added). (*Order* at 2).

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

In a breach of contract case, the New Mexico district court said it simply and best: "Under Rule 26, Federal Rules of Civil Procedure, there is no bar against discovery of information about events occurring after the filing of a complaint…such [subsequent] events may shed light on prior events. Thus, the information is discoverable because it may be admissible at trial or lead to admissible evidence." *McKinney,* 660 F. Supp. at 990. Citing *McKinney,* the Pennsylvania federal court agreed that relevant documents generated after the filing of a lawsuit are discoverable.

> Defendants first object to the discovery of documents generated after the lawsuit was filed. Generally documents generated after the filing of a lawsuit are undiscoverable because they are irrelevant; however, to the extent that such documents are relevant, they are discoverable. *See, McKinney,* 1660 F. Supp. at 990 (D.N.M. 1981); *Carlson Companies, Inc. v. Sperry & Hutchinson Co.,* 374 F. Supp. 1080 (D. Minn. 1973); *see also* 8 C. Wright & A. Miller, Federal Practice & Procedure 2008, at 45 (1970). Thus, defendants cannot expound a blanket relevance objection to all documents generated after the filing of the lawsuit.  If a requested document is relevant to the subject matter of the lawsuit, it is discoverable.

*Leftkowitz v. Duquesne Light Co.,* 1988 WL 169273, at *1 (W.D. Pa. 1988).

And, in *Chavez v. McKinney,* 2017 WL 4534857, at *2 (D.N.M. 2017), Chief Magistrate Judge Karen Molzen quoted District Judge Campos 36 years earlier:

> The City argues that the records are not discoverable because what transpired after the underlying incident is not relevant to Plaintiffs' claims.  If relevant, however, 'there is no bar against discovery of information about events occurring after the filing of a complaint.' *McKinney, 660 F. Supp. 984,* 990 (D.N.M. 1981).  To the contrary, "such events may shed light on prior events."

Here, the fact that Bitmain's financial division gave MineOne up to $8,000,000, and maybe more – and the loan and Bitmain's required security in the site is memorialized in the 7/27/23 *Loan & Security Agreement* – sheds further light on Bitmain's "comprehensive partnership" with MineOne; it demonstrates the financial power and influence Bitmain wielded over MineOne; and proves, or tends to prove, that MineOne was willing to yield to Bitmain's demand that BCB be removed (and MineOne take BCB's place as the O&M Service Provider at North Range).  It is some of the best evidence of Bitmain's improper interference with BCB's existing contract with MineOne (and MineOne's breach

of its DHS AGREEMENT with BCB at Bitmain's demand).

Additionally, even if, somehow, Judge Rankin could lawfully cut off any liability discovery production after the date BCB filed suit against MineOne, Judge Rankin apparently failed to appreciate that BCB first sued Bitmain on September 30, 2023 with its *First Amended Complaint* (ECF 50). BCB did not sue Bitmain in March 2023 with its original *Complaint* (ECF 1). Consequently, even under Judge Rankin's unsupported and erroneous view of a discovery cutoff date, the Court should have granted production of the highly relevant and important 7/27/23 *Loan and Security Agreement* (as Bitmain was not sued until two months later on 9/30/23).

Money talks.  Money controls.  Money influences business decisions.  Money – especially millions of dollars – caused MineOne to breach its contract with BCB.  And we must follow the money. When these truisms are applied here, the money leads to Bitmain entering into multi-million-dollar financing with MineOne to secure control of the North Range bitcoin mining site and the lucrative electric utility power agreement – first won and obtained by BCB, then assigned to MineOne – with Black Hills Energy. Plaintiff believes the *Loan and Security Agreement* will contain terms showing Bitmain will take control of the North Range bitcoin mining site and the highly valued electrical energy contract with Black Hills, if MineOne defaults or is unable to meet the terms of the multi-million-dollar loan. Moreover, it is possible the *SF Agreement* and *O&M SF Agreement* were not renewed past their one-year terms, and now the *only* contract in effect between Bitmain and MineOne is the multi-million-dollar *Loan and Security Agreement* establishing Bitmain's financial control and leverage of the bitcoin mining site and operations. Judge Rankin legally erred when he did not allow BCB to receive the *Loan and Security Agreement.*

### 2. The MineOne/Bitmain WeChat Messages (*unredacted*)

Judge Rankin further erred when he did not order production of the WeChat messages between

Bitmain representatives and MineOne representatives under RFP No. 4. Judge Rankin said:

> The Court, however, cannot order disclosure of the WeChat messages because Chinese law is currently blocking their retrieval. The boundaries of discovery only extend to what is in a party's custody or control, and the Court cannot order production of information not in Defendant's control.[1] *Order* at 4.

Judge Rankin's first clear error was erroneously thinking MineOne and Bitmain do not have control and possession of all of their WeChat communications. Judge Rankin correctly recognizes that "the boundaries of discovery only extend to what is in party's custody or control," but he erroneously takes MineOne's counsel's word that MineOne is unable to "retrieve and produce" them. All that MineOne or Bitmain need to do to "retrieve and produce" their WeChat messages is to log-in to their WeChat account – something they do every day – and ***take screenshots*** of their WeChat messages and then sending those screenshots (as .jpeg files) to BCB.

Bitmain and MineOne admit they use WeChat for communications between their company representatives but have continually made excuses and changed their rationale for not "retrieving and producing" their WeChat messages. Their excuses have involved alleged (but undisclosed) "Chinese privacy laws," while Defendants never say what Chinese privacy law precludes them from taking screenshots of WeChat messages and producing them. Judge Rankin erroneously assumed, "Chinese law is currently blocking their retrieval." Judge Rankin does not know that; it is pure speculation. Judge Rankin has no idea what, if any, Chinese law is blocking their retrieval and production (because Defendants have never informed the Court of any such Chinese privacy law). Judge Rankin clearly erred with His Honor's conclusion based, as it was, on pure speculation, and misunderstanding how

---

[1]   Judge Rankin did recognize the relevancy and importance of the WeChat communications. Judge Rankin said: "The Court will require Defendants to continue to work in good faith to a solution to collect the WeChat communications. Should Plaintiff later discover Defendants are not working in good faith to collect the messages, or intentionally withholding other relevant responsive documents or communications, and rather delaying production, Plaintiff may file a motion for sanctions." *Order* at 4-5. BCB has no confidence Defendants will produce their WeChat communications without the Court's order compelling their production.

easy it is for Defendants to take WeChat message screenshots and produce those WeChat message screenshots to BCB.

Further, BCB has some – but not many – screenshots of MineOne WeChat messages. These WeChat messages were easily obtained by logging into WeChat and taking screenshots when one of BCB's representatives was a part of a MineOne message thread on WeChat. He was removed from the WeChat message thread several months later, but the example is illustrative of how easy it is to retrieve and produce WeChat messages (*see* "**Exhibit D**"). There were no Chinese privacy laws ever blocking BCB from taking WeChat message screenshots. It took BCB only a few minutes to take screenshots (*i.e.,* retrieve) these WeChat messages and email (*i.e.,* produce) the jpeg files. That is what the Court should order here. Without an order compelling this requested production — and importantly, in unredacted form — BCB has no confidence MineOne or Bitmain representatives will ever produce their unredacted WeChat messages.

Further, the Court should compel production of all WeChat and email communications between **all** MineOne representatives and **all** Bitmain representatives. BCB is highly concerned Defendants will circumnavigate an order of the Court by only producing WeChat messages between mid-level company representatives Yiliang Guo (Bitmain) and Haku Du (MineOne), when BCB reasonably believes there was considerable and highly relevant WeChat and email communication between senior/executive representatives of Bitmain (unknown) and MineOne (*e.g.* Jiaming Li).

## V.      <u>CONCLUSION</u>

Judge Rankin's discovery *Order* was both "clearly erroneous" and "contrary to law" in those two respects.  The District Court should now order that MineOne produce its ***full and complete unredacted*** *Loan and Security Agreement* between MineOne and Bitmain-controlled AntAlpha.  It should also order MineOne to take and provide BCB with screenshots of all its WeChat

communications with anyone from Bitmain relating to cryptocurrency mining at the North Range and Campstool sites.

DATED this 11th day of April, 2024.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN, Plaintiff

By:    /s/ Patrick J. Murphy
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 11h day of April, 2024.

| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
|---|---|
| Paula Colbath, *Pro Hac Vice*<br>Sarah Levitan Perry, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New<br>York, NY 10154<br>pcolbath@loeb.com<br>sperry@loeb.com<br>ainman@loeb.com | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |

| | |
|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |

/s/Patrick J. Murphy
Patrick J. Murphy