Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )    Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY BRIEF FOR RECONSIDERATION OF JUDGE RANKIN'S ORDER ON PLAINTIFF'S MOTION TO COMPEL [154] ("*ORDER*")**

Respectfully, Judge Rankin committed clear legal error when he ordered MineOne to produce only its communications and documents which existed as of March 15, 2023 when BCB filed this lawsuit, and failed to order Defendant MineOne to produce the highly relevant July 27, 2023 *Loan and Security and Agreement.* If relevant, "there is no bar against discovery of information about events occurring after the filing of a lawsuit." *McKinney v. Gannett Co.*, 1660

F. Supp. 980, 984 (D.N.M. 1981). Defendants accept this law. Instead, in Defendants' *Response,* Defendants mischaracterize Plaintiff seeking this single, targeted, relevant document as an "improper fishing expedition." A fishing expedition is defined as a ***search*** or investigation undertaken with the ***hope***, though not the stated purpose, of discovering information. BCB's request for this 7/27/23 *Loan and Security Agreement* is the exact opposite of a fishing expedition: It is a targeted strike for the single most relevant and helpful liability document we know exists – it has a name and was memorialized, in writing, a few short months after the tortious misconduct.

Defendants double down on their fishing expedition hyperbole and fail to address the timing of how Defendant Bitmain was added to the lawsuit on September 30, 2023 in the *Amended Complaint* [Doc 52], well *after* the *Loan and Security Agreement* was signed on July 27, 2023. And, Defendants never concede the *Loan and Security Agreement* is the ***single targeted document*** involving an $8 million loan (to keep Defendant MineOne solvent) and allowing Defendant Bitmain to secure financial leverage and control of the North Range and Campstool bitcoin mining sites through Bitmain's owned/controlled partner company, AntAlpha. Plaintiff seeks the identified *Loan and Security Agreement see* ("**Exhibit B**") — which is the memorialization of the contract interference and breach claims. Defendants know how damaging this one loan/security agreement will be to their liability case, and how helpful it will be to Plaintiff's liability case.

Defendants' relevancy argument is specious. They say: "Plaintiff alleges that tortious interference of the DHS AGREEMENT took place on or before March 15, 2023. By definition, an agreement entered into months later and after this lawsuit started could not have been the alleged cause of any alleged interference." *Response* at 6. It twists the reality that MineOne and Bitmain had a pre-Complaint agreement or understanding for this $8M loan, and later memorialized their oral understanding in writing on July 27, 2023. This was not a situation where the $8M loan discussions/agreement first sprang into existence *after* BCB filed its Complaint. Instead, the *Loan & Security Agreement* memorializes the tortious misconduct that preceded and caused the filing of the Complaint.

2

Defendants are desperate to keep the *Loan and Security Agreement* hidden to conceal Defendants' 12/15/22 financial relationship and "comprehensive partnership" with Bitmain/AntAlpha. In their *Response*, Defendants never deny MineOne and Bitmain/AntAlpha formed a "comprehensive partnership" that was conceived and was being negotiated with Bitmain in December 2022 - *before* March 15, 2023 (*see* "**Exhibits A** and **E**"). In **Exhibits A** and **E**, Jiaming Li is communicating with Erick Rengifo (with Defendants MineOne and Terra Crypto) on December 15, 2022, March 8, 2023, and March 13, 2023 ["It will have impact to the 8m loan"... "the 8m loan is crucial"..."the 8m loan to recover the land and the equipment for MineOne"... "have the loan ASAP to have the transaction clean."] Then, on March 20 and 24, 2023, Dr. Li references the "AntAlpha loan" and "They (Bitmain) have already agreed with Lucas (Chong "Lucas" Wang) on this (the $8 million dollar loan) …. "With the liens we cannot get loan from AA (AntAlpha)." Drs. Li and Rengifo then refer to the $8 million dollar loan coming from "AntAlpha" or "AA." It is the same $8 million loan and security agreement—the loan that was first conceived in December 2022 as the foundation of the "comprehensive partnership" with Bitmain, and memorialized and executed on July 27, 2023 in the *Loan and Security Agreement.* The $8M loan was anticipated and agreed to **months before** the Complaint was filed.

Defendants all but concede Bitmain and AntAlpha share the same ownership (*see* "**Exhibit C**"), but call it "speculation" that Bitmain controls/directs AntAlpha. It is not speculation when the same billionaire (Micree Zhan) owns and directs both companies, and Bitmain's famous trademarked ant logo and typography (*see* "**Exhibit C**") is on Bitmain's <u>Ant</u>Miner, <u>Ant</u>Pool and <u>Ant</u>Alpha branding. The individuals who own and control Bitmain own and control AntPool, and AntPool undoubtedly owns and controls AntAlpha. It is not speculation when Plaintiff has provided new evidence to the Court that rely on SEC public filings showing the common ownership between Bitmain and AntAlpha, and exactly how the Bitmain conglomerate operates an incredibly complex offshore corporate structure to obfuscate how closely connected, controlled, and owned Bitmain is, while at the same time creating an elaborate legal liability shield for

instances exactly like this—when the giant conglomerate damages a small company (*see* **"Exhibit C"** and ECF 95-2).

Defendants go further to state that "Plaintiff offers no new evidence here to support its Request" (*Response* at 6). Nothing could be further from the truth. Defendants simply ignore all of the new evidence involving Bitmain, AntAlpha, and the relevancy of the *Loan and Security Agreement* that was first provided in an email attachment from Plaintiff's counsel to the Court before the 3/21/24 oral arguments on Plaintiffs' 2/23/24 *Motion to Compel*. Judge Rankin's law clerk replied via email telling Plaintiff's counsel the new evidence was late and would not be considered as part Plaintiff's 2/23/24 *Motion to Compel*. That, too, is error: discovery is ongoing and evidence is evolving. The new evidence is before the Court in Exhibits A-H in Plaintiff's 3/29/24 *Motion For Reconsideration* and this *Reply*.

The *Loan and Security Agreement* is the primary financial contract – the culminating document and agreement between Defendants — securing Defendant Bitmain's financial position and security in the North Range Bitcoin mining site and cementing Defendants' "comprehensive partnership" that led to and allowed the interference and breach of contract claims. This single, focused, and highly relevant document should be produced.

Judge Rankin also erred when he accepted MineOne's counsel's excuses for not producing highly relevant WeChat messages. MineOne told Judge Rankin during the 3/21/24 oral arguments Defendants couldn't produce WeChat messages because of "Chinese privacy laws," but then, in Defendants' *Response,* Defendants changed their story and now say they cannot produce these WeChat messages because their "e-discovery vendor" – Defendants' *counsel'*s third party vendor — does not have access to the WeChat messages. The Court first erred in accepting Defendants' "Chinese privacy law" excuse. The Court should correct its error and not make the same error again by accepting Defendant's new excuse—their e-discovery vendor not having possession/control of the WeChat messages.

Defendants admit their principals are in China with WeChat accounts, and that these

4

principals (Chong Wang and Jiaming Li) have access to their WeChat accounts and messages on their phones, but Defendants now say these messages are somehow "not properly within their possession, custody, or control" (*Response* at 1, 2, 5, and 10). Defendants double down on their rhetoric and call it "absurd" (*Response* at 8) that Plaintiff would request Defendants produce these responsive WeChat messages by taking screenshots. The Court should see Defendants' misconduct for what is—excuses and efforts to conceal highly relevant evidence that Defendants' principals want to hide.

Defendants say they will continue to "work with their vendor" and try to "resolve any outstanding issues with Plaintiff regarding WeChat messages" (*Response* at 10). This is more of the same lip service Plaintiff knows well from Defendants to rationalize not producing highly relevant documents and communications Plaintiff needs for depositions and its case.

Defendants provide only excuses and stonewalling – not evidence – that they disguise as good faith efforts to comply with Plaintiff's discovery requests. Plaintiff has reviewed WeChat's 2/20/2024 Terms of Use (*see* "**Exhibit F**") and there is nothing – not one thing – preventing Defendants, Defendants' counsel, or any vendor from accessing and producing the WeChat communications from the phones of Chong "Lucas" Wang, Jiaming Li, or Huaili "Wiley" Zhang. To the contrary, WeChat's Terms of Use actually says individuals using WeChat "continue to own and be responsible for Your Content" *(***Exhibit F** at 11), and that anyone using WeChat falls under the applicable and governing laws of their legal jurisdiction. Suffice to say, there are no Chinese privacy laws or other issues preventing the production of (unredacted) WeChat messages before *this* Court between *these* Defendants and Plaintiff. To say otherwise is clearly erroneous.

Plaintiff does not believe MineOne has made "extensive efforts" *(Response* at 9) to collect and produce the WeChat messages. Plaintiff believes Defendants' counsel (in New York and Wyoming) have actually made no efforts with Defendants' principals to gather the responsive WeChat messages, or, Defendants' principals are refusing to produce relevant documents and communications or deleted them knowing the evidence is damaging to their case. Plaintiff knows – and the Court should know, too — it does not take much time or effort for Defendants' e-vendor to log-in into

Defendants' principals WeChat app (like you would with WhatsApp, Facebook or Skype), *from anywhere in the world*, review the responsive WeChat messages between Defendants' principals and decision makers *(i.e.,* Chong Wang, Jiaming Li, and Huaili Zhang), export the communications or take screenshots of the responsive WeChat messages, and then produce those exported communications files or screenshots (.jpg image files) to Plaintiff.

Since Defendants have been evasive and dissembling about producing WeChat messages to date, Plaintiff put together **Exhibit G** (*see* #1) to show the Court how easy it is to access, collect, and produce WeChat messages. Further, Plaintiff is concerned Defendants have already deleted the most relevant and damaging messages. But, these messages still can be — and should be — recovered and produced (in unredacted form). In **Exhibit G** (*see* #2), Plaintiff shows the step-by-step process whereby Defendants can recover deleted WeChat messages and then produce to Plaintiff.

Defendants say in their *Response* they have produced WeChat messages, but Plaintiff has not seen a single WeChat message produced. Not one. And WeChat is the ***primary*** messaging/communication app where Defendants communicate together (not email). Certainly, no WeChat messages have been produced from Chong "Lucas" Wang (Defendant MineOne's co-founder and the "Ultimate Beneficial Owner" (UBO) of the North Range bitcoin mining site) (*see "***Exhibit H"**). Mr. Wang appears to have orchestrated, led, and managed the "comprehensive partnership" between Defendants involving the contract interference and breach of contract. Yet, not one email, WeChat message, or other communication by or to Chong "Lucas" Wang has been produced.

Defendants' *Response* is a legal puff piece heavy on excuses and light on substance. It is a document with a single purpose—to continue to conceal highly relevant and targeted discovery. Judge Rankin's discovery *Order* was both "clearly erroneous" and "contrary to law." It should have compelled production of MineOne's *Loan and Security Agreement* and WeChat communications. The Court should now correct its clear error and order that MineOne produce (1) the full and complete unredacted *Loan and Security Agreement*, and (2) all responsive and unredacted WeChat communications by and between Defendants, specifically the following three MineOne

principals/representatives: Chong "Lucas" Wang, Jiaming Li, and Huaili "Wiley" Zhang.

DATED this 2nd day of May, 2024.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN, Plaintiff

By:   /s/ Patrick J. Murphy
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 2nd day of May, 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [   ] U. S. Mail (prepaid)<br>[ x ] CM/ECF Electronic Transmission<br>[   ] Overnight Delivery<br>[   ] Hand Delivery<br>[   ] Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Sarah Levitan Perry, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New York, NY 10154<br>pcolbath@loeb.com<br>sperry@loeb.com<br>ainman@loeb.com | [   ] U. S. Mail (prepaid)<br>[ x ] CM/ECF Electronic Transmission<br>[   ] Overnight Delivery<br>[   ] Hand Delivery<br>[   ] Electronic Mail |

| | | |
|---|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>*David* Iden, *Pro Hac Vice*<br>Kaitlyn Farrell, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>kfarrell@omm.com<br>sparikh@omm.com | [  ]<br>[ x ]<br>[  ]<br>[  ]<br>[  ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [  ]<br>[ x ]<br>[  ]<br>[  ]<br>[  ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [  ]<br>[ x ]<br>[  ]<br>[  ]<br>[  ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [  ]<br>[ x ]<br>[  ]<br>[  ]<br>[  ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |

/s/Patrick J. Murphy
Patrick J. Murphy