Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil No. 23-CV-79<br>) |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, A Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER WITH PREJUDGMENT WRITS OF ATTACHMENT AND GARNISHMENT**

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB"), through its counsel, and hereby submits Plaintiff's Emergency Motion for a Protective Order With Prejudgment Writs of Attachment and Garnishment.

# I.    PRELIMINARY STATEMENT

Defendants MineOne and Terra Crypto just entered into definitive agreements to sell their North Range and Campstool properties and electrical power contracts to CleanSpark, Inc. for between $18,750,000 - $32,500,000. More than $5.5M of that purchase money has already been sent to the Dallas, Texas Escrow Holder. MineOne is about to abscond from Wyoming and the United States with this $18,750,000 - $32,500,000, putting it beyond the reach of its largest creditor, Plaintiff BCB, and this Court. On May 13, 2024, President Biden issued his Order requiring MineOne to divest and remove all equipment from the North Range bitcoin mining sites, as these Defendants' equipment "threaten to impair the national security of the United States." And MineOne's Jiaming Li, a Chinese national, has fraudulently misrepresented to the Buyer, CleanSpark, Inc., that, "There is no litigation pending or threatened against [MineOne] that arises out of [MineOne's] ownership or operation of the Property." Without this Court's emergency protective order, with prejudgment writs of attachment and/or garnishment, any opportunity for BCB to ever collect *any* of the $38,983,848 primary debt MineOne and Terra Crypto owe to BCB will forever vanish. MineOne and Terra Crypto will be able to stash their huge profits—and their *only* assets—and remove them from the reach of this Court's jurisdiction. That cannot be allowed.

# II.    CONFERRAL STATEMENT

BCB counsel Patrick Murphy emailed all counsel on May 14, 2024 advising everyone BCB would be filing this *Emergency Motion* on Wednesday evening, May 15, 2024. Two attorneys, Paula Colbath and Sherin Parikh, replied, each saying they want to review and digest the *Emergency Motion*, and then confer about it. Because of the urgent circumstances and the imminent closing (and then, offshoring) of the $18,750,000 – $32,500,000 sale proceeds of these projects and highly-valuable electrical power contract, this *Emergency Motion* must be filed now.

# III.    FACTS

This *Emergency Motion* is supported by Michael Murphy's *Emergency Motion Affidavit (see*

1

*"***Exhibit A**"*), Michael Murphy's *Merits Affidavit* (*see* "**Exhibit B**"), and Stephen Randall's *Affidavit* (*see* "**Exhibit C**"). In Michael Murphy's *Merits Affidavit*, he explains in detail why BCB has a substantial likelihood of prevailing on BCB's breach of contract claims against MineOne and Terra Crypto for the principal amount of $38,983,848, and BCB's damages expert, Patrick Gahan, establishes this amount as BCB's breach of contract damages [ECF 151]. Stephen Randall's Affidavit establishes MineOne's intent to take over the North Range and Campstool sites, how MineOne wrongfully removed BCB as the contracted operations and management service provider, and dis-possessed BCB of all the value BCB created with these sites and, critically, the Black Hills Energy ("BHE") electrical power contract. In Mr. Murphy's *Emergency Motion Affidavit*, he provides all the needed sworn support for the Court to enter its protective order that secures these sales proceeds until the Court later allocates them to BCB, MineOne, Terra and any other MineOne creditor.

Knowing that CFIUS finally exposed MineOne's Chinese ownership and strong ties to the Chinese Communist Party ("CCP"), and knowing that CFIUS was going to order the forced divestment of MineOne's North Range property, MineOne and Terra Crypto entered into a PURCHASE AND SALE AGREEMENT (*see* "**Exhibit D**") on May 8, 2024 to sell their Wyoming properties and highly-valuable electrical power contract with BHE to CleanSpark, Inc. ("CleanSpark"). CleanSpark announced the sale on May 9, 2024 in a press release. BCB's counsel first heard of the PURCHASE AND SALE AGREEMENT on May 12, 2024. (see **Exhibit A** at ¶ 45). MineOne and Terra Crypto kept all of this a secret from BCB and the Court. *Id.* at ¶ 48. Then, on May 13, 2024, President Joe Biden issued his "Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P." (hereinafter "Presidential Order") (*see* "**Exhibit E**").

Observing that MineOne/Terra Crypto's foreign-sourced equipment is "potentially capable of facilitating surveillance and espionage actions," President Biden concludes that these majority-owned Chinese companies "present a national security risk to the United States" and ordered Defendant MineOne (and all its Affiliates) to remove all their equipment from the sites and divest in 120 days. *Id.*

2

at § 2. Given the timing of all this, it is apparent Defendants MineOne and Terra Crypto, as well as CleanSpark, had advance knowledge and notice of the President's Order and negotiated and signed the PURCHASE AND SALE AGREEMENT in advance.

According to these two Defendants' 5/8/24 PURCHASE AND SALE AGREEMENT with CleanSpark, the potential total purchase price for these two bitcoin mining sites and power contracts is between $18,750,000 - $32,500,000 (*see* "**Exhibit A**"). With Defendants under Presidential Order to remove all their assets and equipment from North Range, the North Range and Campstool real property and the power contracts with BHE constitute the entirety of all of the property owned, operated or controlled by MineOne and Terra Crypto in the State of Wyoming. *Id*. at ¶ 24. MineOne and Terra Crypto have no other property in Wyoming and, on information and belief, they have no other property or assets anywhere. *Id*. at ¶ 24. Chong "Lucas" Wang, Jiaming Li, and Erick Rengifo are the owners, directors, and decision makers for MineOne and Terra Crypto. *Id*. at ¶ 31. When Michael Murphy first met Erick Rengifo, Rengifo told Murphy that Rengifo represented a "diverse multinational group of investors." *Id.* at ¶ 32. In hindsight, Murphy now sees why Rengifo misrepresented their ownership instead of truthfully telling Murphy he represented 'entirely Chinese partners and investors with close ties to the Chinese Communist Party.' *Id.* When Murphy first met Jiaming Li, Li told Murphy that Li was living in Singapore. *Id.* at ¶ 33. Then, when this litigation began, Murphy saw where Jiaming Li was representing himself to be an American in investment documents as the President of Defendant Bit Origin (an alter ego company of Defendant MineOne and Terra Crypto). *Id*. But, Jiaming Li is neither Singaporan or American. *Id.* He is a Chinese national residing in China. *Id*. at ¶ 34. When BCB's counsel first found the MineOne/CleanSpark *Purchase and Sale Agreement* on Justia on Sunday, May 12, 2024, BCB and its counsel identified the following intentional misrepresentations (fraud) in that *Purchase and Sale Agreement* by MineOne/Terra Crypto Director Jiaming Li to CleanSpark:

Article 7.  Representations and Warranties.  Seller's Representations and Warranties.

- ***Article 7(a)(vi).*** **"There is no litigation pending or threatened against Seller that arises out of Seller's ownership or operation of the Property."**  (see **Exhibit D**, p. 29 of 55).

3

This representation and warranty is categorically false. *(see "**Exhibit A**" at ¶ 45).* This instant lawsuit – where BCB seeks a minimum of $38,983,848 in compensatory damages, and where the MineOne Defendants seek about $44,000,000 in compensatory damages – is litigation against the Seller (MineOne and Terra Crypto) that "arises out of MineOne and Terra Crypto's ownership or operation of the property." *Id.* Bitmain Georgia replaced BCB Cheyenne LLC with MineOne as the host and service provider at North Range in early March 2023. *Id.* Everyone knew this, especially Jiaming Li, Erick Rengifo, and BCB. *Id.* It is an intentional, material misrepresentation of fact for MineOne/Terra Crypto Director Jiaming Li, PhD to warrant and misrepresent to anyone, especially this new buyer, CleanSpark (and calculated to induce CleanSpark to rely on it) to write, "there is no litigation pending or threatened against Seller that arises out of Seller's ownership or operation of the Property." *Id.* This *BCB v. MineOne* lawsuit is a 12-month pending litigation against Sellers that arises out of Sellers' ownership or operation of the Property. *Id.*

> **Article 7(a)(xii). "For purposes of this Agreement, whenever the phrase 'to Seller's knowledge' is used, it shall refer to the actual knowledge of Jiaming Li and Seller's officers, after reasonable and diligent inquiry and investigation."** *(see Exhibit D*, p. 31 of 55).

Director Jiaming Li actually knew, at all times, of this *BCB v. MineOne* lawsuit. Jiaming Li and Erick Rengifo have known of this *BCB v. MineOne lawsuit* since it was served in mid-March 2023 in Wyoming Chancery Court, then filed in this Wyoming federal district court on May 3, 2023. *(see "Exhibit A")*. Plaintiff BCB Cheyenne LLC will suffer great and irreparable financial injury if the Court does not quickly issue a protective order, with a prejudgment writ of attachment and garnishment, on all of the $18,750,000 - $32,500,000 purchase sale monies. *Id.* at ¶ 55. There is a present danger that MineOne and Terra Crypto will immediately dispose of, conceal, and place beyond the jurisdiction of the Court *all* of these $18,750,000 - $32,500,000 of purchase sale proceeds, as soon as the Closing occurs, which is going to happen very soon, likely in the days after May 23, 2024. *Id*. at ¶ 56.

Time is truly of the essence to issue a protective order and unwind the actions committed by MineOne's fraud. Per the terms of the *Purchase and Sale Agreement,* 30% of the $18,750,000 minimum purchase price (**$5,625,000**) is to be deposited by CleanSpark with the **Escrow Holder, Republic Title of Texas, Inc**., in Houston, Texas, **NO LATER THAN than Wednesday May 15, 2024 (today)**. *Id*. (Emphasis added). The remaining 70% of the Purchase Price is to be made by CleanSpark to the Escrow Holder "upon Seller providing evidence of the Eviction Notice and the effectiveness thereof to Buyer," which may occur at any time *Id.* at 2 (d). We must again stress the urgency and time sensitive nature of this *Emergency Motion.* The Court's swift action is urgently and desperately needed.

Without a protective order and prejudgment writ of attachment and garnishment from this Court, MineOne and Terra Crypto are certain to abscond from Wyoming and the United States with all or much of the $18,750,000 - $32,500,000 in purchase monies (from the sale to CleanSpark) as soon as the Escrow Agent releases the purchase monies to MineOne and Terra Crypto with the sale Closing. *Id.* After this happens, Defendants MineOne and Terra Crypto (and their alter ego companies, Defendants MineOne Partners, BitOrigin, and SonicHash) will have no assets in Wyoming, and likely, anywhere in the United States. Their only assets are the bitcoin mining computers and the equipment (now being removed from the sites under Presidential Order) and these $18,750,000 - $32,500,000 in purchase monies, and they will be liquid/cash assets MineOne and Terra Crypto will place, hide, stash, move, and/or transfer to an offshore company beyond the legal reach of BCB Cheyenne LLC and this Court. Consequently, without a protective order and prejudgment writ of attachment/garnishment from this Court before the Closing Date, BCB Cheyenne LLC will never be able to collect anything against MineOne or Terra Crypto to satisfy whatever Judgment the Court later enters in BCB Cheyenne LLC's favor.

These circumstances constitute a "present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the Court," warranting a protective order

and prejudgment writ of attachment. Wyo. Stat. § 1-15-201 § 1-15-103(a)(ii)(A).  They will also cause "irreparable injury" to BCB Cheyenne LLC, as follows:  if the Court later enters judgment in favor of BCB Cheyenne LLC and against Defendants MineOne Wyoming Data Center LLC and Terra Crypto, Inc. for a minimum amount of $38,983,848, together with interest and BCB's attorney fees, and MineOne and Terra Crypto have earlier moved all or most of the $18,750,000 - $32,500,000 purchase monies beyond the reach of this Court or BCB, which they will do, BCB Cheyenne LLC will have suffered irreparable injury. Wyo. Stat. §1-15-103(a)(ii).  MineOne and Terra Crypto would then have nothing for BCB Cheyenne LLC to levy or execute against.

      It is important for the Court to appreciate that BCB is *not asking* the Court to stop, block or prevent the sale of these North Range and Campstool Properties, or assignment of the electrical power contract, from Defendants MineOne and Terra Crypto to CleanSpark, Inc.  BCB wants the MineOne/CleanSpark deal to happen.  BCB does not want to interfere with, or thwart, the sale.  The President of the United States has ordered MineOne and Terra Crypto to divest themselves of this Property, and that Presidential Order must be honored.  The best way to effectuate that Presidential divestment Order is for this sale to go forward, but it must be done with judicial guardrails *set now* by this Court and future allocation and disbursement orders.

      What BCB urgently needs is a protective order from this Court to protect the sale proceeds. BCB needs and requests the Court to urgently order that **all** of the $18,750,000 - $32,500,000 in purchase monies be held, delivered to, and/or secured with a Court order into the Registry of this Court, or some other Court-protected interest-earning investment account, to later be allocated by the Court following (a) any future settlement BCB, MineOne, and any other stakeholder/creditor may reach, or (b) whatever final Judgment the Court may later enter in this case.

      The only source of any recovery BCB Cheyenne LLC will *ever* be able to make against MineOne/Terra Crypto is from these CleanSpark purchase monies.  If MineOne and Terra Crypto are allowed to sell all of their *only* assets, receive any or all of these $18,750,000 - $32,500,000 in

CleanSpark purchase monies – without any Order from this Court that these monies be attached, and held in trust, by the Court for the benefit of the prevailing party – BCB Cheyenne LLC will never recover anything on its future judgment against MineOne and Terra Crypto. And these Chinese-controlled companies that President Biden has ordered to leave Wyoming will abscond with most or *all* these monies to China or some other locale beyond the reach of BCB or this Court (*e.g.,* British Virgin Islands or Cayman Islands). That is irreparable injury.

### III.   APPLICABLE LAW/ARGUMENT

MineOne is seeking to take the proceeds from the sale of its assets beyond the jurisdiction of this Court. A prejudgment writ of attachment and garnishment on the proceeds from the sale of all the MineOne/Terra Crypto assets to CleanSpark is appropriate. Wyo. Stat. § 1-15-201 (a)(iv)(A). Attachment lies for the recovery of unliquidated damages. *Collins v. State*, 88 P. 620 (Wyo. 1907). Fed. R. Civ. P. 64 specifically identifies 'attachment' under state law as an available remedy. Fed. R. Civ. P. 64(b). Rule 64 codifies "long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto. Truck Drivers, Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n.10, 94 S. Ct. 1113, 39 L.Ed. 2d 435 (1974). "A prejudgment writ of attachment is intended to preserve the status quo by placing the property in the custody of the law to be so held until the court determines whether or not Plaintiffs in the action are entitled to judgment in the main case." *DiTucci v. Ashby*, No. 2:19-CV-277-TC, 2019 WL 2579268, at *4 (D. Utah June 24, 2019) (internal quotation marks and citation omitted). As the First Circuit Court of Appeals explained 20 years ago, "[e]ven though a freeze order may serve many of the same ends as an attachment, the former acts upon a party whereas the latter is directed at specific property." *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 161 (1st Cir. 2004). In *Ditucci v. Ashby,* the district court granted the request for a prejudgment attachment to the proceeds

from the sale of the defendant's home where plaintiffs alleged, among other claims, a breach of contract. *DiTucci*, 2019 WL 2579268, at *8.  In *Pineda,* the trial court attached "the physical property of Skinner Services in the amount of $1,425,000." *Pineda*, No. CV 16-12217-FDS, 2019 WL 8262655, at *3 (D. Mass. Dec. 23, 2019).  The First Circuit affirmed the district court's order restraining the corporate defendant from "selling, transferring, or otherwise conveying any assets … except in the ordinary course of business, unless the net value of the assets of [defendant] will be at least $1,425,000[.]" *Skinner Servs., Inc.*, 22 F.4th at 52; *see also Prosper, Inc. v. Innovative Software Techs*., 188 F. App'x 703, 705 (10th Cir. 2006) (Tenth Circuit recognizing right to attachment under state law); *Niemi v. Lasshofer*, 728 F.3d 1252, 1258 (10th Cir. 2013) (then-Judge Gorsuch citing approvingly to Rule 64 and Colorado law as allowing an injunction).

Chapter 15 of the Wyoming Statutes provides for prejudgment writs of attachment and garnishment. The Court may issue *ex parte* prejudgment writs of attachment and garnishment where, as here, the Plaintiff "will suffer irreparable injury," and where, as here, "There is present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the Court." Wyo. Stat. § 1-15-103(a)(ii)(A). BCB is not seeking an *ex parte* writ here, but BCB asks the Court now to issue its protective order preventing Defendants MineOne and Terra Crypto from possessing, using, transferring, assigning, or alienating any of the $18,750,000 - $32,500,000 sales proceeds except upon the further allocation and order of this Court.

Pursuant to the Wyoming law, ". . . at any time after the filing of a Complaint in a civil action for the recovery of money, the plaintiff may have the property of the defendant not exempt from execution attached as security of any judgment that may be recovered." Wyo. Stat. § 1-15-201(a). Defendants MineOne and Terra Crypto are jointly and severally liable to Plaintiff BCB Cheyenne LLC in the minimum amount of $38,983,848 (as of February 28, 2024, which amount increases over time) for material breaches of MineOne's *DHS Agreement* and *Side-Letter Agreement* and Terra Crypto's *CS Agreement*.  The amount of $38,983,848 represents BCB's compensatory damages from

8

these Defendants' breaches of their contracts in expert witness Patrick Gahan's March 20, 2024 Expert Report [ECF 151]. This amount of $38,983,848 is over and above all legal setoffs, as there are no legal setoffs to this $38,983,848. Wyo. Stat. § 1-15-201(b)(i); *and see* **Exhibit A** at ¶ 18.

Defendant MineOne and Terra Crypto are about to depart from the state of Wyoming to the injury of their largest creditor, Plaintiff BCB Cheyenne LLC. This attachment is not sought to hinder, delay or defraud any creditor of MineOne or Terra Crypto. Wyo. Stat. § 1-15-201(b)(ii) ; *and see* **Exhibit A** at ¶ 19. The payment of this $38,983,848 indebtedness has not been secured by any mortgage or lien upon real or personal property in the State of Wyoming. Wyo. Stat. § 1-15-201(b)(iii); *and see* **Exhibit A** at ¶ 20. Defendants MineOne and Terra Crypto are about to assign, remove, dispose, or conceal their property with the intent to defraud their largest creditor, Plaintiff BCB Cheyenne LLC. Wyo. Stat. § 1-15-201(b)(iii)(D); *and see* **Exhibit A** at ¶ 21.

### III.   CONCLUSION

Fed. R. Civ. P. 64 plainly allows this Court to attach Wyoming real property (North Range and Campstool sites) and the BHE power contract (located in Wyoming). This Court has jurisdiction over these assets and should place a judicial lien on them in the form of a prejudgment writ of attachment. However, attachment alone will not preserve the *status quo*. MineOne is in the process of converting assets this Court has jurisdiction to attach (the real property and power contracts) into assets outside the reach of this Court (money in the hands of the Texas Escrow Holder). If the Texas Escrow Holder is permitted to disburse the sale proceeds to MineOne, up to $32.5 million will fall off the grid, never to be seen again. Instead, this Court should quickly enter a protective order requiring the Escrow Holder to deposit all the sale proceeds (which really just represent the real property and power contract in another form, cash) into the registry of this Court.

Wyoming statutory law allows this Court to "order. . .the proceeds deposited in the court to be disbursed pursuant to the judgment in the action*."* Wyo. Stat. Ann. § 1-15-207(b). This Court also has authority under Wyoming law to issue an injunction to ensure that the Court can make a

meaningful decision on the merits.  *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc*., 805 F.2d 351, 355 (10th Cir. 1986).

This Court has the inherent authority to enter an order ensuring enforcement of its writ of attachment.  Wyoming law expressly allows this Court to order the sales proceeds be distributed to this Court.  To preserve the *status quo* and prevent these Chinese-owned companies that have been determined to be a threat to national security from absconding with up to $32,500,000 is a combination of: (1) issuing a writ of attachment, and (2) then issuing an order pursuant to Wyoming statutory law (or an injunction under the Court's inherent authority) requiring CleanSpark, Inc., Republic Title of Texas, Inc., or any other third person or authorized agent to pay *all* sales proceeds from the sale of this Wyoming real property (and the valuable BHE power contract) to the registry of this Court, which all sales proceeds then be placed into an interest bearing account under this Court's control to later be apportioned and distributed on further order of this Court.

Time is of the utmost essence.  Everything BCB has worked for over the preceding three years, and all of the value it created, is on the verge of becoming forever out of its reach (even if this Court later finds in BCB's favor, which it is likely it will based on the merits of the case as detailed in Michael Murphy's *Merits Affidavit*).  This Court, and this Court alone, has the ability to take immediate action to preserve the opportunity for both Plaintiff and Defendants to get a fair shake at arguing their respective merits.  If this Court fails to take immediate action to protect the CleanSpark purchase monies, then Defendants MineOne and Terra will have already won this year-long legal suit, as they will end up with all of the sale proceeds (likely removed to China, and certainly outside the reach of this Court) while BCB will be left with nothing (even if BCB were to later win on the merits and earn a then-hollow and meaningless victory).  What an injustice it would be to allow the foreign defrauder to get away scot-free with all of BCB's hard earned and well deserved money.

DATED this 15th day of May, 2024.

                                                BCB CHEYENNE LLC d/b/a
                                                BISON BLOCKCHAIN, Plaintiff

By:    */s/ Patrick J. Murphy*
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 15th day of May, 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Sarah Levitan Perry, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New York, NY 10154<br>pcolbath@loeb.com<br>sperry@loeb.com<br>ainman@loeb.com | [ ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[ ]   Overnight Delivery<br>[ ]   Hand Delivery<br>[ ]   Electronic Mail |

| | | |
|---|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>*David* Iden, *Pro Hac Vice*<br>Kaitlyn Farrell, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>kfarrell@omm.com<br>sparikh@omm.com | [ ]<br>[ x ]<br>[ ]<br>[ ]<br>[ ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [ ]<br>[ x ]<br>[ ]<br>[ ]<br>[ ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [ ]<br>[ x ]<br>[ ]<br>[ ]<br>[ ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [ ]<br>[ x ]<br>[ ]<br>[ ]<br>[ ] | U. S. Mail (prepaid)<br>CM/ECF Electronic Transmission<br>Overnight Delivery<br>Hand Delivery<br>Electronic Mail |

                                         */s/Patrick J. Murphy*
                                               Patrick J. Murphy