# Exhibit  A

Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company,<br><br>                         Plaintiff,<br><br>v.<br><br>MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants.<br><br>                         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 23-CV-79-ABJ |

---

**EMERGENCY MOTION AFFIDAVIT OF MICHAEL MURPHY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND WRITS OF PREJUDGMENT ATTACHMENT AND GARNISHMENT**

---

*"Fraud Vitiates Everything It Touches."*

*–In Re: Estate of Hartt,* 295 P.2d 985, 996 (Wyo. 1956)

COMES NOW your affiant, on his oath, and hereby states as follows:

1. I am Michael Murphy, age 42, and I have personal knowledge of these matters and I am competent to provide this testimony. I provided an earlier Affidavit to this Court on March 20, 2024 with respect to the Campstool site and damages [ECF 151-2]. I am also submitting an additional Affidavit to the court today with respect to the merits of BCB's case and the likelihood of BCB's success at trial.

2. I was born and raised in Casper, Wyoming. I hold BBA (2004) and Masters of Accountancy (2005) degrees from the University of Notre Dame's Mendoza College of Business, where I graduated number one in each of my respective classes. I have been a Certified Public Account (with experience at the Financial Accounting Standards Board and PwC) and a licensed real estate broker since 2006.

3. I am one of three founding members of BCB Cheyenne LLC ("BCB") who won a highly-competitive Request For Proposal ("RFP") from Black Hills Energy and then signed a Cheyenne Light, Fuel and Power Company ("CLFPC") (d/b/a Black Hills Energy ("BHE")) Blockchain Interruptible Service Agreement ("Original BCIS Agreement") between BCB and BHE, effective February 22, 2022, for 75 megawatts ("MW") of power across two sites in Cheyenne, Wyoming with power expansion possibilities (45MW at North Range and 30MW at Campstool) to build bitcoin mining facilities ("the Project" or "the Sites").

4. **Matters in this Emergency Motion Affidavit involve Defendants MineOne's and Terra Crypto's fraud, threats posed to national security, and President Joe Biden issuing an executive order on May 13, 2024** which ordered that Defendant MineOne Wyoming Data Center LLC ("MineOne") and Terra Crypto Inc. ("Terra Crypto") to

divest their ownership of the North Range site and remove all of these two Defendants'
(and their Affiliates') assets and equipment from North Range site (*see* President Biden's
*Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by
MineOne Cloud Computing Investment I L.P.*) ("Presidential Order").

5. A true and correct copy of the Presidential Order (as published on
https://www.whitehouse.gov[1] on May 13, 2024*)* is attached to Plaintiff's May 15, 2024
Emergency Motion (see **"Exhibit E,")** and incorporated by reference.

6. I learned on May 9, 2024 that MineOne entered into a definitive agreement to sell the
North Range and Campstool real property parcels and valuable BHE electrical power
contract to CleanSpark, Inc. ("CleanSpark") (via CleanSpark's subsidiary, CSRE
Properties Wyoming, LLC) in a sale worth $18,750,000 - $32,500,000. The sale and
Defendants MineOne's and Terra Crypto's fraud (in connection with the *Sale and
Purchase Agreement*) is described below.

7. A true and correct copy of the 5/8/2024 *Purchase and Sale Agreement* between
Defendants MineOne Wyoming Data Center LLC and Terra Crypto, Inc. with
CleanSpark, Inc. is attached to Plaintiff's May 15, 2024 Emergency Motion (see
**"Exhibit D,")** and incorporated by reference.

8. The timing of the sale is an apparently coordinated effort by, between, and among the
Biden Administration, The Committee on Foreign Investments in the United States
("CFIUS"), CleanSpark, and Defendants MineOne and Terra Crypto to effectuate and
follow the Presidential Order. BCB supports President Biden's and our American
government's actions, but the sale/divestment have created an emergent situation for

---

[1]https://www.whitehouse.gov/briefing-room/presidential-actions/2024/05/13/order-regarding-the-acquisition-of-certain-real-property-o
f-cheyenne-leads-by-mineone-cloud-computing-investment-i-l-p/

BCB where Defendants MineOne and Terra Crypto are certain to abscond with all the proceeds from the $18,750,000 - $32,500,000 sale.

9. Defendants MineOne and Terra Crypto have been ordered to remove everything (*i.e.,* all of their assets and equipment worth millions of dollars) from the North Range site. Beyond what is being removed under the Presidential Order, it is very likely that Defendants have no other assets (beyond the proceeds from the $18,750,000 - $32,500,000 sale). Defendants MineOne and Terra Crypto (and their affiliates and alter egos) are now making a coordinated and fraudulent move to 'get away with all the money' and make it impossible for BCB to collect against any future judgment.

10. This Affidavit involves highly urgent matters concerning these two Defendants' fraud and the near certainty Defendants MineOne and Terra Crypto will abscond with all the sale proceeds from the $18,750,000 - $32,500,000 sale announced on May 9, 2024 (and being driven by the May 13, 2024 Presidential Order).

11. **The likelihood that BCB Cheyenne will suffer irreparable harm is certain if the Court does not intervene and issue an emergency Protective Order, followed by prejudgement writs of attachment and garnishment, on all of the $18,750,000 - $32,500,000 of sale proceeds.**

A.     **Plaintiff BCB Cheyenne LLC Asserts its Entitlement to a Protective Order and Prejudgment Writs of Attachment and Garnishment.**

12. Chapter 15 of the Wyoming Statutes provides for prejudgment writs of attachment and garnishment.

13. Prejudgment writs of attachment and garnishment "shall issue only upon written motion and pursuant to a written order of the court." Wyo. Stat. § 1-15-103(a)(ii).

14. The Court may issue *ex parte* prejudgment writs of attachment and garnishment where, as here, the Plaintiff "will suffer irreparable injury," and where, as here, "There is present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the Court." Wyo. Stat. § 1-15-103(a)(ii)(A). BCB is not seeking an *ex parte* writ here, but BCB asks the Court to issue it Protective Order preventing Defendants MineOne and Terra Crypto from possessing, using, transferring, or alienating any of the $18,750,000 - $32,500,000 sales proceeds except upon the further allocation and order of this Court.

15. Pursuant to Wyoming law, ". . . at any time after the filing of a Complaint in a civil action for the recovery of money, the plaintiff may have the property of the defendant not exempt from execution attached as security of any judgment that may be recovered." Wyo. Stat. § 1-15-201(a).

16. The Wyoming attachment statutes provide, in part, as follows:

> (b)   Before a writ of attachment is issued, the plaintiff shall file with the court in which the action is pending an affidavit stating:
>
> (i)   That the defendant is indebted to the plaintiff, specifying the amount of the indebtedness over and above all legal setoffs and the nature of the indebtedness;
>
> (ii)   That the attachment is not sought to hinder, delay or defraud any creditor of the defendant; and
>
> (iii) That the payment of the indebtedness has not been secured by any mortgage or lien upon real or personal property in this state, or, if originally so secured, that the security has, without any act of the plaintiff or the person to whom the security was given, become impaired.

Wyo. Stat. § 1-15-201(b)(i)-(iii).

17. The applicable writ of attachment/garnishment statute also says that, "Any one (1) or more of the following grounds for attachment must be stated" in the Plaintiff's supporting Affidavit:

   (A) That the defendant is not a resident of this state;

   (B) That the defendant is a foreign corporation, not qualified to do business in this state;

   (C) That the defendant stands in defiance of an officer, or conceals himself so that process cannot be served upon him;

   (D) That the defendant has assigned, removed, disposed of or concealed, or is about to assign, remove, dispose of or conceal, any of his property with intent to defraud his creditors;

   (E) That the defendant has departed or is about to depart from the state to the injury of his creditors;

   (F) That the defendant fraudulently or criminally contracted the debt or incurred the obligation respecting which the action is brought.

Wyo. Stat. § 1-15-201(b)(iv)(A-F).

18. Defendants MineOne and Terra Crypto are jointly and severally liable to Plaintiff BCB Cheyenne LLC in the minimum amount of $38,983,848 (as of February 28, 2024, which amount increases over time) for material breaches of MineOne's *DHS Agreement* (BCB000069-000090) and *Side-Letter Agreement* (BCB000091-000092) and Terra Crypto's *CS Agreement* (BCB000093-000099). The amount of $38,983,848 represents BCB's compensatory damages from these Defendants' breaches of their contracts in expert witness Patrick Gahan's March 20, 2024 Expert Report [ECF 151]. This amount of $38,983,848 is over and above all legal setoffs, as there are no legal setoffs to this $38,983,848.

19. Defendants MineOne and Terra Crypto are about to depart from the state of Wyoming – all as described below – to the injury of their largest creditor, Plaintiff BCB Cheyenne LLC.  This attachment is not sought to hinder, delay, or defraud any creditor of MineOne or Terra Crypto.

20. The payment of this $38,983,848 indebtedness has not been secured by any mortgage or lien upon real or personal property in the State of Wyoming.

21. Defendants MineOne and Terra Crypto are about to assign, remove, dispose, or conceal their property – all as described below – with the intent to defraud their largest creditor, Plaintiff BCB Cheyenne LLC.

22. Defendants MineOne Wyoming Data Center, LLC and Terra Crypto, Inc. entered into a May 8, 2024 *Purchase and Sale Agreement* with buyer CleanSpark, Inc. for the sale of all of these Defendants' real property located in Laramie County, Wyoming, otherwise known as the North Range and Campstool bitcoin mining sites, including all of the 75MW - 130MW of contractual electrical power for those two sites with BHE.

23. According to these two Defendants' 5/8/24 *Purchase and Sale Agreement* with CleanSpark, the potential total purchase price for these two bitcoin mining sites is between $18,750,000 - $32,500,000.  *Id.* at §2(a)-(b).  And **30%** of the $18,750,000 minimum purchase price (**$5,625,000**) is to be paid by CleanSpark to the **Escrow Agent, Republic Title of Texas, Inc**., in Houston, Texas, **NO LATER THAN than Wednesday May 15, 2024 (today)**. *Id.* at §2(e)(i). The remaining 70% of the Purchase Price is to be made by CleanSpark to the Escrow Account "upon Seller providing evidence of the Eviction Notice and the effectiveness thereof to Buyer," which could already have occurred or could occur very soon, but most likely won't occur until May 23, 2024 (at the

end of the Due Diligence Period) through June 22, 2024 (i.e. the date "that is thirty (30) days after the expiration of the Due Diligence Period" (6(b)) based on the 30-day notice of eviction).

24. These North Range and Campstool bitcoin mining sites, with all of their available (and very valuable) contractual power, constitute the entirety of all of the property owned, operated or controlled by MineOne and Terra Crypto in the State of Wyoming.  MineOne and Terra Crypto very likely have no other property in Wyoming and, on information and belief, MineOne and Terra Crypto have no other property or assets anywhere.

25. This is no surprise, as Defendant MineOne (and its Affiliates and alter ego "MineOne" named companies) were formed for the singular purpose of owning these North Range and Campstool [then-proposed] bitcoin mining sites, and not for any other purpose or venture.  MineOne Wyoming Data Center, LLC filed its Articles of Organization with the Delaware Secretary of State on or about May 23, 2022, about 17 days before Plaintiff BCB and MineOne Wyoming Data Center, LLC entered into their June 9, 2022 *DHS Agreement*.  Terra Crypto, Inc. filed its Articles of Incorporation with the Delaware Secretary of State on June 12, 2020.

**B.   Owners, Directors and Decision-Makers for Defendants MineOne and Terra Crypto (and their Affiliates and Alter Ego companies)**

26. Defendant MineOne has three co-founders and primary business operators: (1) Chong Wang, (2) Jiaming Li, PhD, and (3) Erick Rengifo, PhD (BITMAIN_GEORGIA_000111). "Lucas" Chong Wang, Jiaming Li, and Erik Rengifo are financially sophisticated with advanced degrees in business and economics. Chong Wang holds an MBA degree from Hong Kong Finance and Economics College and Jiaming Li and Erik Rengifo have PhDs in Economics. Jiaming Li earned his economics PhD fellowship at the prestigious Peking

University in Beijing, China. Jiaming Li's biography[2] filed with the Securities and Exchange Commission (SEC) as the President of Defendant BitOrigin (an alter ego company of MineOne) states: "before jumping into the crypto world, he [Jiaming] was a partner at TCC Capital, and previously served as the CEO of the Asset Management Center for Sinatay Insurance Co., Ltd, there he managed USD 11.6 billion in assets." (BCB00446)

27. On January 30, 2023, MineOne held a meeting of the Managers of MineOne.  In the meeting minutes (MINEONE0032937) it reads "it is noted that: (a) the Company needs to sign financing agreement or business agreement with Chinese partners" and "the member and the manager of the Company appoint Jiaming Li as the Unique Manager, to allow him to sign any agreement he believe suit the Company's purpose to expand."

28. Shortly thereafter, Jiaming Li signed the *Service Framework Agreement* (BITMAIN_GEORGIA_0000001-00000037) and *Service Framework Operations and Management Agreement* (BITMAIN_GEORGIA_000038-000074). Both *Service Framework Agreements* were counter-signed by Ran Cheng of Defendant Bitmain. The Service Framework Agreements are central documents evidencing the tortious interference by Defendant Bitmain in Plaintiff's *Amended Complaint (see BCB's First Motion to Compel Discovery,* ECF 124).

29. Ran Chang, of Defendant Bitmain, signed the 4/8/2024 SUPPLEMENTAL AGREEMENT TO FUTURE SALES AND PURCHASE AGREEMENT ("Supplemental Purchase Agreement") (*see* "**Exhibit F**") with CleanSpark, Inc. The *Supplemental Purchase Agreement* is counter-signed by Zach Bradford, the CEO of

---

[2] https://www.sec.gov/Archives/edgar/data/1735556/000110465922067795/tm2217622d1_424b5.htm

CleanSpark. Zach Bradford also signed the 5/8/2024 *Sales and Purchase Agreement* with Defendants MineOne and Terra Crypto.

30. The *Supplemental Purchase Agreement* indicates the Original Agreement (dated 1/6/2024 was for 60,0000 Bitmain bitcoin mining computers (S21 Pro miners) for an estimated purchase price of US$276,000,000. *The Supplemental Purchase Agreement* indicates CleanSpark has the option to purchase up to an additional 100,000 Bitmain bitcoin mining computers as "forward deliverables" for a "Call Purchase Price" of US$374,400,000. Thus, if CleanSpark exercises the Call Option in full, then CleanSpark's total purchase price from Defendant Bitmain between the 1/6/24 Original Agreement and the 4/8/2024 Supplemental Purchase Agreement is: **$276,000,000** (Original Agreement) + **$374,400,000** ("Supplemental Agreement") = **$650,400,000 (total possible purchase between Original Agreement and Supplemental Agreement).**

31. Chong "Lucas" Wang, Jiaming Li, and Erick Rengifo are the owners, directors, and decision makers for MineOne and/or Terra Crypto. In the *Service Framework Agreement*, MineOne designated Chong Wang as the Ultimate Beneficial Owner (UBO) of the North Range site (MINEONE0030095).

32. When I first met Erick Rengifo he told me he represented a "diverse multinational group of investors." In hindsight, I see now why Erick Rengifo misrepresented their ownership instead of truthfully telling me he represented 'entirely Chinese partners and investors with ties to the Chinese Communist Party.'

33. When I first met Jiaming Li, he told me that he was living in Singapore. Then, when this litigation began, I saw where Jiaming Li was representing himself to be an American in

investment documents as the President of Defendant BitOrigin (an alter ego company of Defendant MineOne and Terra Crypto). But, Jiaming Li is neither Singaporan or American. He is, in fact, a Chinese national residing in China.

34. In Defendants' 8/15/23 *Amended Corporate Disclosure Statement* [ECF 41] it states: "Defendant MineOne Partners LLC is a limited liability company with Jiaming Li, an individual residing in China, as its sole member."

**C.     The May 13, 2024 Presidential Divestment Order**

35. On May 13, 2024 President Biden issued an Order under the United States Constitution and Section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565. President Biden's Order found:

(a) There is credible evidence that leads me to believe that (1) MineOne Partners Limited, a British Virgin Islands company ultimately majority owned by Chinese nationals ("MineOne Partners"); (2) MineOne Cloud Computing Investment I L.P., a British Virgin Islands limited partnership ("MineOne Cloud"); (3) MineOne Data Center LLC, a Delaware limited liability company ("MineOne Data"); and (4) MineOne Wyoming Data Center LLC, a Delaware limited liability company ("MineOne Wyoming" and together with MineOne Partners, MineOne Cloud, MineOne Data, and MineOne Wyoming, the "Purchasers"), through the acquisition of certain real estate that is located within 1 mile of Francis E. Warren Air Force Base ("Warren AFB") (specifically, the 12.06 acres described as Lot 1, Block 10 North Range Business Park 3rd Filing, located at 635 Logistics Drive, Cheyenne, Wyoming, 82009) (the "Real Estate" and such acquisition the "Transaction"), might take action that threatens to impair the national security of the United States and;

(d) CFIUS [The Committee on Foreign Investments in the United States] identified national security risks arising from the Transaction relating to the proximity of the Real Estate to Warren AFB, as well as related risk associated with the presence of specialized equipment on the Real Estate used to conduct cryptocurrency mining operations, some of which is foreign-sourced and presents national security concerns.

36. President Biden's Order corroborated, at the highest level of government, that Defendants MineOne and Terra Crypto (and their Affiliates) are not only foreign entities, but also

represent foreign interests and threaten to impair the national security of the United States.

37. President Biden's Order found that the MineOne and Terra Crypto entities are "ultimately majority owned by Chinese nationals" and form a complex structure of offshore and Delaware limited liability companies, including "MineOne Cloud Computing Investment I L.P., a British Virgin Islands limited partnership ("MineOne Cloud"); (3) MineOne Data Center LLC, a Delaware limited liability company ("MineOne Data"); and (4) MineOne Wyoming Data Center LLC, a Delaware limited liability company ("MineOne Wyoming")." (*see* "**Exhibit E**")

38. All of these companies are either Defendants in this case or alter egos of MineOne and Terra Crypto. They are owned and operated by the same individuals: Chong Wang, Dr. Jiaming Li, Dr. Erick Rengifo, and the other Chinese nationals and companies identified in Defendants' *Amended Corporate Disclosure Statement* [ECF 41].

39. President Biden's Order requires MineOne and its "Affiliates" (*i.e.,* alter ego companies) to divest all legal and beneficial ownership interests in the North Range and real estate sites within 120 days. Additionally, MineOne must remove all equipment and improvements related to their operations on the property within 90 days, subject to verification by CFIUS (*see* "**Exhibit E**").

40. In response to the Presidential Order, MineOne and its Affiliates are required to cooperate fully with CFIUS, providing regular updates on compliance efforts and timelines for completing divestment and removal actions. Failure to adhere to these requirements may result in further enforcement measures and penalties. *Id.*

41. BCB is fully supportive of the President's Order, but the result of the divestment is it forced MineOne to quickly sell, and now close, on the sale of the North Range and Campstool sites and the BHE power contract. MineOne has had knowledge of this week's divestment Order for some time and acted accordingly by negotiating the *Sales and Purchase Agreemen*t with CleanSpark in advance of the Presidential Order being issued. Those companies are moving ***very quickly***, and it is certain MineOne will be removing all the bitcoin mining assets and equipment from the site – per the Presidential Order – ***and will abscond with all the sale proceeds unless this Court swiftly issues the Protective Order in the next week.***

42. It is the foreign and potentially threatening nature of these entities  – identified by President Biden and CFIUS – and the Defendants' fraud (in connection with the *Sales and Purchase Agreement)* that support BCB's petition here, and that BCB will suffer irreparable harm by Defendants' certain forthcoming action to abscond with $18,750,000 - $32,500,000 of divestment/sale proceeds.

**D.    Overview of <u>Defendants' Fraud</u> and Intent to Abscond from Wyoming Beyond BCB's Reach with <u>All of the Sale Proceeds</u>**

43. BCB Cheyenne LLC first learned on May 9, 2024 via a press release published by CleanSpark on PRNewsWire[3]  –  four days before President Biden issued his Presidential Order – that Defendants MineOne and Terra Crypto entered into a contract with a Buyer, CleanSpark, Inc., on May 8, 2024 to sell their North Range and Campstool Property (including real property, plans and surveys, permits and licenses, and contracts) for a purchase price of  $18,750,000 - $32,500,000.

---

[3]https://www.prnewswire.com/news-releases/cleanspark-to-acquire-75-mw-of-bitcoin-mining-sites-in-wyoming-for-18-75-million-302141720.html

44. MineOne and Terra Crypto and their counsel (Loeb & Loeb in New York and Hathaway and Kunz in Cheyenne) never told or disclosed to BCB Cheyenne LLC or its counsel, Patrick Murphy, that Defendants MineOne and Terra Crypto, Inc. under reasonable suspicion of an impending divestment order, were negotiating a purchase and sale of either North Range, Campstool, and the valuable electrical power contract with Black Hills Energy. They kept this a secret from BCB Cheyenne LLC and its counsel, Patrick Murphy and Scott Murray. And they kept this a secret from the Court.

45. When BCB's counsel, Scott Murray, first found the MineOne/CleanSpark *Purchase and Sale Agreement* (*see* "**Exhibit D**") on Justia on Sunday, May 12, 2024, BCB and its counsel identified the following intentional misrepresentations (fraud) in that *Purchase and Sale Agreement* by MineOne/Terra Crypto Director Jiaming Li to CleanSpark.

    a. *Article 7.   Representations and Warranties.   Seller's Representations and Warranties*.  **Article 7(a)(vi).   "There is no litigation pending or threatened against Seller that arises out of Seller's ownership or operation of the Property."** *Id.* at p. 29 of 55.

        i. The above representation and warranty is categorically false.  This instant lawsuit – where BCB seeks a minimum of $38,983,848 in compensatory damages, and where the MineOne Defendants seek over $44,000,000 in compensatory damages – is litigation against the Seller (MineOne and Terra Crypto) that "arises out of MineOne's and Terra Crypto's ownership or operation of the property."  Bitmain Georgia replaced BCB Cheyenne LLC with MineOne as the host and service provider at North Range in early March 2023.  Everyone knew this, especially Jiaming Li, Erick

Rengifo, and BCB.  It is an intentional and material misrepresentation of fact for MineOne/Terra Crypto Director Jiaming Li, PhD to warrant and misrepresent to anyone, especially this new buyer, CleanSpark (and calculated to have CleanSpark rely on it) to write, "there is no litigation pending or threatened against Seller that arises out of Seller's ownership or operation of the Property."  This *BCB v. MineOne* lawsuit is a 14-month pending litigation against Sellers that arises out of Sellers' ownership or operation of the Property.

b. ***Article 7(a)(xii).   "For purposes of this Agreement, whenever the phrase 'to Seller's knowledge' is used, it shall refer to the actual knowledge of Jiaming Li and Seller's officers, after reasonable and diligent inquiry and investigation."*** *Id.* at p. 32 of 55.

    i. Co-Founder, Officer, and Director Jiaming Li actually knew, at all times, of this *BCB v. MineOne* lawsuit. Jiaming Li and Erick Rengifo have known of this *BCB v. MineOne lawsuit* since it was served in mid-March 2023 in Wyoming Chancery Court, then filed in this Wyoming federal district court on May 3, 2023.

c. ***Article 7(a)(i).   "No other person or entity has a contract or option to purchase, letter of intent, right of first refusal or first offer, or similar rights with respect to the Property that is now outstanding."*** *Id.* at p. 28 of 55.

    i. This is fraud.  This is an intentional misrepresentation of fact calculated to induce the buyer, CleanSpark, Inc., to purchase these North Range and Campstool bitcoin mining sites and valuable BHE electrical power contract for $18,750,000 (and up to $32,500,000 with the Contingent Payment).

ii.   At all times, BCB had a contractual right of first refusal to purchase these facilities.  The DHS Agreement states: "In the event that MineOne desires to sell any one or more of the Facilities, MineOne shall give written notice (a "Sale Notice") of its intention to do so to BCBC. Such Sale Notice shall set forth the Facility(ies) which MineOne wishes to sell, the price at which MineOne is prepared to sell and any other terms and conditions, including the proposed date of sale (the "Sale Date"), which shall not be less than two (2) months nor more than three (3) months after the date on which the Sale Notice is given to BCBC." (DHS Agreement, Article IX, Section 1). MineOne did not give written notice to BCB of its intention to sell any one or more of the Facilities.

iii.   At the same time BCB and MineOne entered into the DHS Agreement, they also executed the Side Letter Re: Digital Mining Facilities – Right of First Refusal (the "Side Letter").  The Side Letter states: "Article IX of the [DHS] Agreement confers on you a right of first refusal in the event that we exercise a right to sell our interests in one or more of the Facilities. In consideration for your agreement to enter into the Agreement, and for other good and valuable consideration, we hereby mutually agree that: (i) should you elect not to issue an Acceptance Notice; and (ii) the purchaser completes the purchase agreement in relation to the sale, but no longer requires services of BCBC [BCB] in relation to the Facilities, we shall pay you [BCB] an amount equal to the net present value of the budgeted amount of Hosting Fees (net of costs and consulting fees therein) for the

remaining Term, assuming a continuous utilization of 45MW, and following delivery into Budget and CCO of the Campstool Facility, 75MW." The Side Letter is meant to protect BCB in the event a scenario plays out exactly like the one that is playing out with MineOne and CleanSpark right now, specifically, if a purchaser (CleanSpark) completes a purchase agreement (Purchase and Sale Agreement), but no longer requires services of BCB in relation to the Facilities (they don't require BCB because it is likely they don't even know about BCB due to MineOne's misrepresentations, or lack of any representations as it relates to BCB), then MineOne was to pay BCB an amount equal to the net present value of the budgeted amount of Hosting Fees (net of costs and consulting fees therein) for the remaining Term, which BCB's Expert Witness (Patrick Gahan) calculated to be $19,435,667 in his March 20, 2023 Expert Report ($12,473,213 (NR45MW Phase 2 ) + $6,962,454 (CS30 Phase 2)).

iv.     In the MineOne-CleanSpark Purchase and Sale Agreement, one of the Buyer's conditions precedent to closing is that the "Seller shall get a waiver from Cheyenne LEADS in regard to the right of first refusal related to the acquisition of the land at North Range" (Purchase and Sale Agreement, Section 5(a)(xiv)). But there is no condition precedent for the Seller to get a waiver from BCB for BCB's right of first refusal related to the acquisition of the Facilities (per the terms of the DHS Agreement).

d. ***Article 7(a)(xi).*** ***"Seller is a limited liability company organized, validly existing and in good standing under the laws of Delaware with full power to enter into this Agreement, and Seller is duly qualified to transact business in Wyoming. This Agreement and all other documents executed by Seller and delivered to Buyer prior to or at the Closing (i) have been, or will be when delivered, duly authorized, executed and delivered by Seller; (ii) are binding obligations of Seller; (iii) do not violate the provisions of any agreement to which Seller is party or which affects the Property."*** *Id.* at p. 31 of 55.

    i. The MineOne/CleanSpark Purchase and Sale Agreement absolutely violates the provisions of the DHS Agreement and Side-Letter Agreement (see above).

    ii. It is not honestly or ethically possible for MineOne or Terra Crypto to perform its *Purchase and Sale Agreement* with CleanSpark, Inc.  MineOne and Terra Crypto cannot ethically, honestly, or accurately comply with its contractual obligation to CleanSpark in Article 6 below.

e. *Article 6.  Closing and Escrow.* ***Article 6(d)(ix).*** ***"At or before the Closing, Seller shall deliver to Buyer the following: 'a certificate of Seller, duly executed by Seller, confirming that all of the representations and warranties of Seller contained in Section 7(a) hereof are true and correct in all material respects as of the Closing Date, subject to modification for matters disclosed pursuant to Section 7(b) hereof;'"*** *Id.* at p. 25 of 55.

    i. For all the reasons expressed above, MineOne and Terra Crypto cannot truthfully confirm all the representations and warranties contained in

Section 7(a) hereof are true and correct in all material respects.  Several of them are flat out false.

f. ***Article 13(a) Notices. ("For purposes of notice, the addresses of the parties shall be as follows.  If to Seller [redacted] with a copy to Loeb & Loeb LLP, 6345 Park Avenue, New York, NY 10154 Attention: Stephen Cohen; Ronelle Porter; scohen@loeb.com; rporter@loeb.com"). Id.*** at pp. 43-44 of 55.

    i. Loeb & Loeb have represented Dr. Erick Rengifo for years. It seems highly likely that Loeb & Loeb was closely involved with writing, reviewing and/or editing the MineOne/CleanSpark *Purchase and Sale Agreement.* Discovery, and depositions, of Loeb & Loeb and its New York partners, Steven Cohen and Paula Colbath, will reveal what role, and what knowledge, each of them had with respect to each of Jiaming Li's warranties and representations above. *See Murphy v. Housel & Housel*, 955 P.2d 880, 884 (Wyo. 1988) ("The attorney's knowledge is deemed to be the clients' knowledge when the attorney acts on his behalf").

46. Jiaming Li has demonstrated his disdain for contractual agreements, their efficacy, importance, and enforceability at different times with what he has told Dr. Erick Rengifo. Jiaming Li's Skype messages with Erick Rengifo reveal his disdain of contracts.  The following Skype messages – recently produced in discovery – show as follows:

- **MINEONE0031181 – 0031184.** Erick Rengifo: "Dear Jiaming, the Antalpha loan is very restrictive and does not give us a lot of flexibility in what we need to do" (3/20/2023, 2:53 PM). Jiaming Li: *"No need to follow exactly the agreement"* (3/20/2023, 4:08 PM) (emphasis added).
- **MINEONE0030781 - 0030789.** Jiaming Li and Erick Rengifo are having a discussion about BCB's compensation. Dr. Li shows his disregard for MineOne's Agreements

with BCB and believes the compensation should be variable based on electricity price (12/15/2022, 1:29 PM). Erick Rengifo: "this is not what has been agreed. the 1 cent is a must by agreement" (12/15/2022, 1:38 PM). Jiaming Li: "And if they [BCB] insist the 1 cent, I'm 100% sure we're going to fire them because they can't meet 98% given what Neil proposed right now" (12/15/2022, 2:16 PM). Erick Rengifo: "Jiaming, we cannot fire them. This is not a simple hosting agreement" (12/15/2022, 3:12 PM). Jiaming Li: "They agreement is based on 98% operation. ***We can't pay them no matter how they perform***" (12/15/2022, 3:13 PM).  (emphasis added).

- **MINEONE0031051 – 0031059.** Jiaming Li to Erick Rengifo: "If we proceed phase 2 [Campstool] without Bcb, you and me can still have 0.1 cent at least" (3/1/2023, 4:39 PM). Jiaming Li: ***"So we won't pay 1 cent to them [BCB] to save us profit"*** (3/1/2023, 4:41 PM).

- **MINEONE0031070 – 0031075.** Erick Rengifo to Jiaming Li: "I was reading the agreement [DHS Agreement] and it explicitly talks about the 75 MWs and the two parcels."(3/2/2023, 2:01 PM). Jiaming Li: ***"We don't need to follow exactly with agreement*** [DHS Agreement]**…Otherwise we should sue bcb**" (3/2/2023, 2:01 PM). emphasis added. Erick Rengifo: "they also have a first option to move if we decide to sell to a third party. At this point I am almost sure they will not exercise" (3/2/2023, 2:01 PM). Erick Rengifo: "if we decide to move on Campstool, most likely Bitmain will take over and they do not want them" (3/2/2023, 2:03 PM). Jiaming Li: ***"Actually if we can just get rid of Bcb, we still can proceed the campstool"*** (3/2/2023, 2:03 PM).

- **MINEONE0031092 – 0031095.** Erick Rengifo: "BCB will have no option [but] to accept the proposal for the 45MWs" (3/3/2023, 4:02 PM). Jiaming Li: "Yes. They have no option." (3/3/2023, 4:06 PM).

- **MINEONE0031101-0031105.** Erick Rengifo to Jiaming Li: "careful with the sue…your idea is good!!!" (3/7/2023, 4:43 PM). Jiaming Li: "Haha yes. ***We need to get them on board and not share more fees to them from operation"*** (3/7/2023, 4:43 PM).

- **MINEONE0031135 – 0031142.** Jiaming Li and Erick Rengifo discuss BCB's $90k payment that was due for BCB's earlier work and they decide they will not pay it

unless BCB signed the new proposed "Amendment" to the DHS Agreement. Jiaming Li: "and we have regular meeting with bcb in the morning too, they'll ask again the $90k situation" (3/13/2023, 12:36 AM)…"they [BCB] asked twice if you see email" (3/13/2023, 12:38 AM)... "They're [BCB] keep asking for the $90k" (3/13/2023, 3:53 PM)... "They [BCB] want we pay at least $45k today" (3/13/2023, 4:08 PM). Erick Rengifo: "We can do 45-45-60k" (3/13/2023, 4:11 PM)..."But not today…After they [BCB] sign the agreement" (3/13/2023, 4:11 PM). Jiaming Li: "That's totally true… If they [BCB] can sign today, we'll make that part" (3/13/2023, 4:13 PM)... ***"I just want to get rid of Bcb and move to the business***…"(3/13/2023, 6:18 PM). Erick Rengifo: ***"I agree, hopefully with the agreement we will have them just marginally and we can do the business"*** (3/13/2023, 6:21 PM).

47. Jiaming Li and Erick Rengifo are also willing to back-date documents to serve their purposes.  They employ deceptive practices.  When communicating with CFIUS, and deciding how MineOne would handle CFIUS's 2023 inquiry about the North Range bitcoin mining site, this is what Drs. Li and Rengifo said to each other:

> Jiaming Li: "dear Erick. Just received the letter from CFIUS", I will call Jonathan our morning to see if we can *backdate the filing* from Nov 30 to Nov 21. CFIUS reverted back to BTOG on Nov29 3PM Beijing time so we better date the restructuring before this date." (1/3/2023, 4:31 PM - 4:40 PM). Erick Rengifo: "please run with the resignation letter from BTOG. This must be dated 12/30/2022 please" (1/3/2023, 4:44 PM). Jiaming Li, *"I have asked the lawyer to prepare the resignation letter **and will date at what we want.**"*(1/3/2023, 4:47 PM) (emphasis added) (MINEONE0030905 – 0030910).

48. Jiaming Li and Erick Rengifo are willing to obfuscate the truth with CFIUS to serve their interests.  And MineOne and Terra Crypto have kept secret – from BCB and this Court – **all** of MineOne's involvement and communications with CFIUS.  MineOne didn't want BCB or the Court to know of MineOne's involvement and communications with CFIUS

about these North Range and Campstool sites.   But MineOne's gig is up now with President Biden's 5/13/24 executive divestment order.

49. On information and belief, Defendants MineOne and Terra Crypto were in communication the last two months with U.S. government employees from CFIUS and the Department of the Treasury regarding the Presidential Order. Defendants never disclosed to BCB or its counsel, Patrick Murphy, Defendants were under investigation. Defendants never disclosed to BCB and its counsel they were in communication with CFIUS. And Defendants never disclosed to BCB or its counsel they were in communication with a Buyer for the North Range and Campstool sites and the valuable and highly sought after Black Hills Energy industrial electrical power. They kept everything secret as they moved in the shadows to sell everything (and now, try to get away with all the sales money, leaving BCB with nothing to collect on in the likely event BCB wins its lawsuit against them).

**E.    Defendants' Breach and Fraud Extracting All the Value Created By BCB**

50. The most valuable property being transacted in the *Sales and Purchase Agreement* is (a) the real property (i.e., the North Range parcel and the Campstool parcel, which MineOne purchased for $2,364,001.20 on June 13, 2022 and $1,100,000.00 on/around March 2023, respectively) and more importantly, (b) the power purchase agreement(s) with BHE.

51. In the beginning, BCB developed, and ultimately (effectively) assigned all of its right, title, and interest in the real property and power purchase agreement to MineOne on June 9, 2022 in return for MineOne's promise in the DHS Agreement to pay BCB during Phase 2 (note: BCB did not own the land, but it had identified the land and negotiated contracts for the parcels). Patrick Gahan, BCB's expert witness, believes the contractual

value of BCB's Phase 2 compensation to be $19,985,667.00 - $38,983,848.00 (which is relatively comparable to, and validated by, the $18,750,000 - $32,500,000 deal value between MineOne and CleanSpark).   But BCB has received none of this compensation because MineOne anticipatorily repudiated the DHS Agreement just before Phase 2 was to begin, thus denying BCB from any of its compensation for the valuable work it did to develop the opportunity and secure the real property and power purchase agreement. Now MineOne is trying to convert the real property and valuable power contracts with BHE to $18,750,000 - $32,500,000 in the all cash deal with CleanSpark so Defendants can 'get away with all the money' and leave BCB with nothing for all its hard – and valuable – work.

52. The Contingent Payment section of the *Sale and Purchase Agreement* clearly states that the value of the deal of the 25MW and 30MW power expansions is worth $250,000/MW. Further, one can deduce that the value for the 75MW initial power (45MW + 30MW) is worth $250,000/MW (based on the allocation of the amounts between North Range and Campstool under Purchase Price, and given that that the Purchase Price Reduction clause indicates that the Purchase Price is to be reduced for every MW by $250,000).  (*see* **Exhibit E** at 2(a) - 2(c))

53. Thus, one can conclude the *Sales and Purchase Agreement*'s primary value is based upon available power and power contracts with BHE.

- 75MW x $250,000 = $18,750,000
- 55M x $250,000 = $13,750,000
- 75MW ($18,750,000) + 55MW ($13,750,000) = 130MW ($32,500,000)

54. With Defendants now being ordered by President Biden to remove all of the equipment and material from the site (worth millions of dollars), what matters, and is ultimately

valuable (i.e., what CleanSpark is paying for in the *Sales and Purchase Agreement*) is "access to power" from BHE. And from the beginning, the company that secured the "access to power" for 75MWs and possible power expansions was BCB. All of the value that BCB created securing the North Range and Campstool properties and the power contract — both in Wyoming — will be entirely lost if Defendants are able to abscond with all the sales proceeds from converting the Wyoming real property and power contract into cash.

**F.     Plaintiff BCB will Suffer Irreparable Harm if Defendants MineOne and Terra Crypto Sell the North Range and Campstool Sites and the BHE Electrical Power Contract to CleanSpark without the Court entering a Protective Order and Prejudgement Writs of Attachment and Garnishment**

55. Plaintiff BCB Cheyenne LLC will suffer great and irreparable financial injury if the Court does not emergently issue a Protective Order, followed by a Prejudgement Writ of Attachment/Garnishment, on all of the $18,750,000 - $32,500,000 purchase sale monies from MineOne/Terra Crypto's *Sales and Purchase Agreement* with CleanSpark.

56. There is a present danger that MineOne and Terra Crypto will immediately dispose of, conceal, and place beyond the jurisdiction of the Court all of these $18,750,000 - $32,500,000 purchase sale proceeds, as soon as the Closing occurs, which may occur at any time. *See* paragraph 6(b), Closing: "the Closing of the purchase and sale of the Property pursuant to the Agreement (the "***Closing***") shall be held and delivery of all items to be made at the Closing under the terms of this Agreement shall be made at the offices of Escrow Holder on the earlier date of… (iii) such other date prior thereto as Buyer and Seller may mutually agree in writing (the "***Closing Date***")."

57. Further, pursuant to Paragraph 2(e) of the *Purchase and Sales Agreemen*t, CleanSpark is required to deposit "30% of the Purchase Price into an escrow account [w]ithin five (5) Business Days after the Effective Date [of this Agreement]," which "**Effective Date**" is agreed to be May 8, 2024. This means that CleanSpark has likely already made its 30% payment ($5,625,000.00) to the Escrow Agent (Republic Title of Texas, Inc.).  The remaining 70% of the Purchase Price is to be made by CleanSpark to the Escrow Account "upon Seller providing evidence of the Eviction Notice and the effectiveness thereof to Buyer," which could already have occurred or could occur very soon, but most likely won't occur until May 23, 2024 (at the end of the Due Diligence Period) through June 22, 2024 (i.e. the date "that is thirty (30) days after the expiration of the Due Diligence Period" (6(b)) based on the 30-day notice of eviction).

58. Without a Protective Order and prejudgment Writs of Attachment and Garnishment from this Court, MineOne and Terra Crypto will abscond from Wyoming and the United States with all or much of the $18,750,000 - $32,500,000 in purchase monies (from the sale to CleanSpark) as soon as the Escrow Agent releases the purchase monies to MineOne and Terra Crypto at the Closing of the transaction. After this happens, Defendants MineOne and Terra Crypto (and their alter ego companies Defendants MineOne Partners, Bit Origin, and Sonic Hash) will very likely have no assets in Wyoming, and likely, anywhere in the United States. Their only assets are the bitcoin mining computers and the equipment (now being removed from the sites under Presidential Order) and these purchase monies, and they will be liquid/cash assets MineOne and Terra Crypto will place, hide, stash, move, and/or transfer to an offshore company beyond the legal reach of BCB Cheyenne LLC and this Court. Consequently, without a Protective Order and

prejudgment Writ of Attachment/Garnishment from this Court before the **Closing Date**, BCB Cheyenne LLC will never be able to collect anything against MineOne or Terra Crypto to satisfy whatever Judgment the Court later enters in BCB Cheyenne LLC's favor.

59.  These circumstances constitute a "present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the Court "warranting a Protective Order and prejudgment Writ of Attachment." Wyo. 1-15-201 § 1-15-103(a)(ii)(A).  They will also cause "irreparable injury" to BCB Cheyenne LLC, as follows:  if the Court later enters judgment in favor of BCB Cheyenne LLC and against Defendants MineOne Wyoming Data Center LLC and Terra Crypto, Inc. for a minimum amount of $38,983,848, together with interest and BCB's attorney fees, and MineOne and Terra Crypto have earlier moved all or most of the $18,750,000 - $32,500,000 in purchase monies beyond the reach of this Court or BCB, which they will do, BCB Wyoming LLC will have suffered irreparable injury. Wyo. Stat. §1-15-103(a)(ii). MineOne and Terra Crypto would then have nothing for BCB Cheyenne LLC to levy or execute against.

60. It is important for the Court to appreciate that BCB is *not asking* the Court to stop, block or prevent the sale of North Range and Campstool Properties real property, or the electrical power contract, from MineOne and Terra Crypto to CleanSpark, Inc.  BCB wants the MineOne/CleanSpark sale to happen.  BCB does not want to interfere with, or thwart, the sale.  The President of the United States has ordered MineOne and Terra Crypto to divest themselves of this Property, and that Presidential Order must be honored.

The best way to effectuate that Presidential divestment Order is for this sale to go forward.

61. What BCB emergently needs and requests is a Protective Order from this Court to protect the sale proceeds so that the sale proceeds can later be allocated by the Court following (a) any future settlement BCB, MineOne, and any other stakeholder/creditor may reach, or (b) whatever final Judgment the Court may later enter in this case. The only source of any recovery BCB Cheyenne LLC will *ever* be able to make against MineOne/Terra Crypto is from these CleanSpark purchase monies. If MineOne and Terra Crypto are allowed to sell all of their *only* assets and receive any or all of this $18,750,000 - $32,500,000 in CleanSpark purchase monies – without any Order from this Court that these monies be attached, and held in trust, by the Court for the benefit of the prevailing party – BCB Cheyenne LLC will never recover anything on its future judgment against MineOne and Terra Crypto. And these Chinese-controlled companies that President Biden has ordered to leave Wyoming will abscond with *all* these monies to China or some other locale beyond the reach of BCB or this Court (*e.g.,* British Virgin Islands or Cayman Islands). That is irreparable injury.

## G.   Merits and Likelihood of Success

62. Before and after the Primary Agreements were signed, and through the middle of March 2023, I worked diligently for BCB to ensure BCB substantially fulfilled its contractual obligations under the Primary Agreements (*see* Michael Murphy's "Merits Affidavit"). My 5/15/24 Merits Affidavit demonstrates and explains how MineOne failed and/or chose not to honor or meet their obligations to BCB under the Primary Agreements, which unjustified actions constitute a material breach, or material breaches, of the

Primary Agreements. My Merits Affidavit identifies evidence which shows (a) BCB's substantial likelihood of success on its breach of contract claims against MineOne and Terra and (b) BCB's substantial likelihood of success on defeating MineOne's and Terra Crypto's frivolous counterclaims against BCB.

**H.    URGENCY: The Emergent and Desperate Nature of This Request to the Court**

63. Time is of the utmost essence.  Everything that BCB has worked for over the preceding three years, and all of the value it has created, is on the verge of becoming forever out of its reach (even if this court later finds in BCB's favor, which it is likely it will based on the merits of the case as detailed in my Merits Affidavit).  This Court, and this Court alone, has the ability to take immediate action to preserve the opportunity for both Plaintiff and Defendants to get a fair shake at arguing their respective merits.  If this Court fails to take immediate action to protect the CleanSpark purchase monies, then Defendants MineOne and Terra will have already won this year-long legal suit, as they will end up with all of the sale proceeds (likely removed to China, and certainly outside the reach of this court) while BCB will be left with nothing (even if BCB were to later win on the merits and earn a then hollow and meaningless victory).  What an injustice it would be to allow the defrauder to get away scot-free with all of BCB's hard earned and well deserved money.

FURTHER AFFIANT SAYETH NOT.

DATED this 15th day of May, 2024.

_____
(SIGNATURE)

STATE OF ARIZONA          )
                         )
COUNTY OF PIMA           )

Before me, a Notary Public in and for the County of Pima, State of Arizona, personally appeared Michael Murphy, this 15th day of May, 2024, and he being duly sworn by me upon his oath, says that the facts alleged in the foregoing instrument are true and correct.

Witness my hand and official seal: _____
                                              Notary Public

S
E
A
L

My Commission Expires: April 10, 2025

Sandra Reyes
Notary Public
Pima County, Arizona
My Comm. Expires 04-10-25
Commission No. 607161