# Exhibit E

MAY 13, 2024

# Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P.

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565, it is hereby ordered as follows:

Section 1.  Findings.  I hereby make the following findings:

(a)  There is credible evidence that leads me to believe that (1) MineOne Partners Limited, a British Virgin Islands company ultimately majority owned by Chinese nationals ("MineOne Partners"); (2) MineOne Cloud Computing Investment I L.P., a British Virgin Islands limited partnership ("MineOne Cloud"); (3) MineOne Data Center LLC, a Delaware limited liability company ("MineOne Data"); and (4) MineOne Wyoming Data Center LLC, a Delaware limited liability company ("MineOne Wyoming" and together with MineOne Partners, MineOne Cloud, MineOne Data, and MineOne Wyoming, the "Purchasers"), through the acquisition of certain real estate that is located within 1 mile of Francis E. Warren Air Force Base ("Warren AFB") (specifically, the 12.06 acres described as Lot 1, Block 10 North Range Business Park 3rd Filing, located at 635 Logistics Drive, Cheyenne, Wyoming, 82009) (the "Real Estate" and such acquisition the "Transaction"), might take action that threatens to impair the national security of the United States;

(b)  MineOne acquired the Real Estate in June 2022 and then made improvements to allow for use of the Real Estate for specialized cryptocurrency mining operations in close proximity to Warren AFB, a strategic missile base and home to Minuteman III intercontinental ballistic missiles;

(c)  The Transaction was not filed with the Committee on Foreign Investment in the United States (CFIUS) until after CFIUS's non-notified transaction team investigated the Transaction as a result of a public tip;

5/13/24, 5:47 PM  Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P. | The White House

Case 1:23-cv-00079-ABJ   Document 182-5   Filed 05/15/24   Page 3 of 7

(d)  CFIUS identified national security risks arising from the Transaction relating to the proximity of the Real Estate to Warren AFB, as well as related risk associated with the presence of specialized equipment on the Real Estate used to conduct cryptocurrency mining operations, some of which is foreign-sourced and presents national security concerns;

(e)  The proximity of the foreign-owned Real Estate to a strategic missile base and key element of America's nuclear triad, and the presence of specialized and foreign-sourced equipment potentially capable of facilitating surveillance and espionage activities, presents a national security risk to the United States;

(f)  Section 721 authorizes CFIUS to negotiate and enter into an agreement or take certain other actions to mitigate the national security risk arising from a covered transaction.  Section 721 also requires that such an agreement be effective and verifiable and enable effective monitoring and enforcement to resolve the national security concerns posed by a transaction.  After consideration, CFIUS determined it would not be possible to enter into a negotiated agreement that would satisfy those requirements; and

(g)  Provisions of law, other than section 721 and the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq*.), do not, in my judgment, provide adequate and appropriate authority for me to protect the national security in this matter.

Sec. 2.  Actions Ordered and Authorized.  On the basis of the findings set forth in section 1 of this order, considering the factors described in subsection (f) of section 721, as appropriate, and pursuant to my authority under applicable law, including section 721, I hereby order that:

(a)  The Transaction is hereby prohibited, and ownership by the Purchasers of any interest in or part of the Real Estate, or maintenance of any property rights in the Real Estate (including but not limited to the rights referred to in 31 C.F.R. 802.233), whether effected directly or indirectly through the Purchasers, through the Purchasers' foreign person shareholders, partners, or beneficial owners, or through the Purchasers' subsidiaries or affiliates, including but not limited to Terra Crypto, Inc., a Wyoming corporation; Terra Global Asset Management Holdings, Inc., a Delaware corporation; Terra Global Capital, LLC, a Delaware limited liability company; Global Network of Business Consultants, Inc., a New York corporation; and International Intellectual Capital, LLC, a Delaware limited liability company (such subsidiaries and affiliates collectively "Affiliates"), are also prohibited.

5/13/24, 5:47 PM  Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P. | The White House

Case 1:23-cv-00079-ABJ   Document 182-5   Filed 05/15/24   Page 4 of 7

(b)  To effectuate this order, not later than 120 calendar days after the date of this order, unless such date is extended by CFIUS, subject to such conditions on an extension as CFIUS determines are necessary and appropriate to protect the national security of the United States, the Purchasers and their Affiliates shall sell or transfer all direct and indirect legal and beneficial ownership interests or other rights in the Real Estate, and certify in writing that such Divestment has been completed (the "Divestment").

(c)  Not later than 90 calendar days after the date of this order, unless such date is extended by CFIUS, subject to such conditions on an extension as CFIUS determines are necessary and appropriate to protect the national security of the United States, the Purchasers, whether directly or indirectly, shall:

(i)   remove from the Real Estate all items, structures, or other physical objects or installations of any kind (the "Equipment") that the Purchasers, their Affiliates, or persons acting on their behalf, have stockpiled, stored, deposited, installed, or affixed (the "Equipment Removal"), and certify in writing that such Equipment Removal has been completed; and

(ii)  remove from the Real Estate all (A) utility and other improvements on or adjacent and connected to the Real Estate; (B) excavation, repair, or new construction on the Real Estate underground; and (C) repair, improvement, or new construction on the Real Estate above ground (collectively, (A) through (C), the "Improvements") commenced, continued, or completed by the Purchasers or their Affiliates after the closing of the Transaction (the "Improvements Removal"), and certify in writing that such Improvements Removal has been completed.

CFIUS is authorized to require inspection of the Real Estate, at no expense to CFIUS, on terms it deems appropriate to ensure that each of the Equipment Removal and Improvements Removal is complete and verified.

(d)  Immediately from the date of this order until such time as the Divestment, Equipment Removal, and Improvements Removal have been completed and verified to the satisfaction of CFIUS, the Purchasers shall, and shall ensure that all of their Affiliates, refrain from physical or logical access to the Real Estate, Equipment, or Improvements, unless such access is necessary to effectuate the requirements of subsections (a) through (c) of this section as determined by CFIUS.  Not later than 7 calendar days after the date of this order and until such time as the Divestment, Equipment Removal, and Improvements Removal have been completed and verified to

5/13/24, 5:47 PM  Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P. | The White House

Case 1:23-cv-00079-ABJ   Document 182-5   Filed 05/15/24   Page 5 of 7

the satisfaction of CFIUS, the Purchasers shall, and shall ensure that their Affiliates, put in place and maintain any measures or controls necessary to ensure that the access prohibited under this subsection does not occur.

(e)  Until the Divestment, Equipment Removal, and Improvements Removal have been completed and verified to the satisfaction of CFIUS, the Purchasers shall not, and shall ensure that their Affiliates do not, dissolve, reorganize, or transfer their ownership of or any other property rights in the Real Estate, or otherwise change their legal structure or relocate or sell any physical, intangible, or financial assets in a manner that would materially impede or prevent the Purchasers or their Affiliates from complying with this order.  The Purchasers shall, and shall ensure that their Affiliates, notify CFIUS in writing within 24 hours of becoming aware of any actual or potential event of default or other similar occurrence affecting any party's rights or obligations under outstanding loans related to the Real Estate, Equipment, or Improvements that could materially impede or prevent the Purchasers or their Affiliates from complying with this order.

(f)  Immediately upon completion of the Divestment, Equipment Removal, and Improvements Removal, the Purchasers shall certify in writing to CFIUS that all steps necessary to fully and permanently effectuate the requirements of subsections (a) through (d) of this section, including any related conditions CFIUS imposes pursuant to this order, have been completed in accordance with this order.

(g)  The Purchasers shall not, and shall ensure that their Affiliates do not, complete a sale or transfer of the Real Estate to any third party:

(i)   until the Purchasers notify CFIUS in writing of the intended buyer or transferee; and

(ii)  unless 10 business days have passed from the notification in subsection (g)(i) of this section and CFIUS has not issued to the Purchasers an objection to the intended buyer or transferee.  Among the factors CFIUS may consider in reviewing the proposed sale or transfer are whether the buyer or transferee is a United States citizen or is owned by United States citizens and has or has had a direct or indirect contractual, financial, familial, employment, or other close and continuous relationship with the Purchasers or their Affiliates, or officers or employees of the Purchasers or their Affiliates.  In addition, CFIUS may consider whether the proposed sale or transfer would threaten to impair the national security of the United States or undermine the purpose of this order, and whether the sale effectuates, to CFIUS's satisfaction and in its discretion, a Divestment consistent with

5/13/24, 5:47 PM  Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P. | The White House

Case 1:23-cv-00079-ABJ   Document 182-5   Filed 05/15/24   Page 6 of 7

subsection (b) of this section.

(h)  From the date of this order until the Purchasers provide a certification of the Divestment to CFIUS pursuant to subsection (f) of this section, each Purchaser shall certify to CFIUS on a weekly basis that it is in compliance with this order and shall include a description of efforts to effectuate the Divestment, Equipment Removal, and Improvements Removal along with a timeline for projected completion of remaining actions.

(i)  Any transaction or other instrument entered into or method employed for the purpose of, or with the effect of, evading or circumventing this order is prohibited.

(j)  Without limitation on the exercise of authority by any agency under other provisions of law, and until such time each of the Divestment, Equipment Removal, and Improvements Removal are completed and verified to the satisfaction of CFIUS, CFIUS is authorized to implement measures it deems necessary and appropriate to verify and enforce compliance with this order.  For purposes of verifying and enforcing compliance with this order, employees of the United States Government as designated by CFIUS shall be permitted access, on reasonable notice to the Purchasers or their Affiliates, as applicable, to all premises and facilities of the Purchasers or their Affiliates, including the Real Estate, located in the United States:

(i)   to inspect and copy any books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of the Purchasers that concern any matter relating to this order;

(ii)   to inspect or audit any information systems, networks, hardware, software, data, communications, or property in the possession or under the control of the Purchasers;

(iii)  to interview officers, employees, or agents of the Purchasers, or any of their respective Affiliates, concerning any matter relating to this order; and

(iv)  to inspect and verify progress or completion of the requirements of subsection (c)(i) and subsection (c)(ii) of this section regarding the Equipment Removal and Improvements Removal.

CFIUS shall conclude its verification procedures within 90 calendar days after the certification of the Divestment is provided to CFIUS pursuant to subsection (e) of this section.

(k)  Without limitation on the exercise of authority by any agency under other provisions of law, and until such time as the Divestment, Equipment Removal, and Improvements Removal are completed and verified to the satisfaction of CFIUS, CFIUS is further authorized to implement measures it

5/13/24, 5:47 PM    Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P. | The White House

Case 1:23-cv-00079-ABJ   Document 182-5   Filed 05/15/24   Page 7 of 7

deems necessary and appropriate to mitigate risk to the national security of the United States arising from the Transaction, including measures available to it under section 721 and its implementing regulations, which include the remedies available for violations of any agreement or condition entered into or imposed under subsection (l) of section 721.

  (l)  If any provision of this order, or the application of any provision to any person or circumstances, is held by a court of competent jurisdiction to be invalid, the remainder of this order and the application of its other provisions to any other persons or circumstances shall not be affected thereby.  If any provision of this order, or the application of any provision to any person or circumstances, is held by a court of competent jurisdiction to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements.

  (m)  The Attorney General is authorized to take any steps necessary to enforce this order.

  Sec. 3.  Reservation.  I hereby reserve my authority to issue further orders with respect to the Transaction or Purchasers as shall in my judgment be necessary to protect the national security of the United States.

  Sec. 4.  Publication and Transmittal.  (a)  This order shall be published in the *Federal Register*.

  (b)  I hereby direct the Secretary of the Treasury to transmit a copy of this order to the appropriate parties named in section 1 of this order.


                                    JOSEPH R. BIDEN JR.



THE WHITE HOUSE,
    May 13, 2024.