

**FILED**

*10:45 am, 5/20/24*

**Margaret Botkins
Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

BCB CHEYENNE LLC d/b/a BISON
BLOCKCHAIN, a Wyoming limited
liability company,

        Plaintiff,

  vs.

MINEONE WYOMING DATA CENTER
LLC, a Delaware limited liability
company, et al.,

        Defendants.

Case No.  23-CV-79-J

---

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFYING PRIOR ORDER

Before the Court is Plaintiff's Motion for Reconsideration. [ECF No. 158]. Plaintiff requests the Court reconsider two of its rulings in the Order on Plaintiff's Motion to Compel. [ECF No. 154]. First, Plaintiff asserts limiting Defendant MineOne's production of documents and communications that existed as of March 15, 2023, was clearly erroneous. Primarily, it seeks a July 27, 2023, financing agreement between MineOne and Bitmain. Second, Plaintiff argues it was clear error to accept MineOne's argument that Chinese Privacy laws preclude MineOne from producing WeChat communications with Bitmain and not compelling their production. Out of caution, the Court ordered MineOne to produce the financing agreement for an *in camera* review. [ECF No. 171]. After

considering Plaintiff's request and reviewing the filings, the Court denies the Motion for the reasons stated herein.

## RELEVANT LAW

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Board of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Additionally, the Local Court Rules only reference reconsideration with regard to a magistrate judge's order on non-dispositive matters. Local Rule 74.1.

When "a party files a motion for reconsideration prior to the entry of judgement, Rules 59(e) and 60(b) do not apply." *Innovatier, Inc. v. CardXX Inc.*, No. 08-cv-00273-PAB-KLM, 2011 WL 93720, at *1 (D. Colo. Jan. 11, 2011). Instead, a motion for reconsideration falls under Rule 54(b). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *SEC v. 4NExchange*, No. 03-4150, 2005 U.S. App. LEXIS 12926, at *6 (10th Cir. June 28, 2005) (quoting *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

A trial court's decision under 54(b) will only be overturned for abuse of discretion. *Ankeny v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013). However, courts within the

2

Tenth Circuit have imposed limits on the broad discretionary power Rule 54(b) provides. *Innovatier*, 2011 WL 93720, at *1. Both the Rule 60(b) and 59(e) analyses have been followed to promote efficiency. *Id.* "Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error." *Id.*

### RULING OF THE COURT

After numerous discovery conferences, formal orders, and a hearing, the issues in this case remain contested. The Court will begin by addressing Plaintiff's arguments against the discovery timeframe.[1]

### *Discovery Timframe*

First, the Court will clarify it did not impose a cutoff of March 15, 2023, for discovery requests. In the Order, the Court stated that "[t]he Court is not inclined at this time to extend the requests beyond the date suit was filed." [ECF No. 154, at 4]. Admittedly, this does not provide an exact date, but the intention was to draw a line at the filing of this suit—May 3, 2023.[2] Defendant MineOne has produced documents up to that date. [ECF No. 165, at 5 n.2]. Further, it is not a complete barrier to discovery outside of that date. Rather, it was not and is not apparent to the Court what information relevant to Plaintiff's claims could exist after this suit was filed. It is a general timeframe to promote

---

[1] The Court denies Defendant's argument that the Court should deny Plaintiff's Motion for failing to comply with Judge Johnson's Order [ECF No. 156]. [ECF No. 165, at 7]. The unusual circumstances of changing in status from a magistrate judge to a district judge has complicated the procedural posture of these issues. It is better to address the Motion's substance and put the issues to rest.

[2] Plaintiff argues it did not first sue Bitmain until it filed its Amended Complaint on September 30, 2023. The actual pleading date isn't the significant consideration in setting the discovery timeframe. It is the relevant events that give rise to the suit. While Plaintiff did not sue Bitmain until September 30, 2023, the events giving rise to its claims arose at the same time as its claims against the other Defendants.

efficient discovery in accordance with Rule 26's relevance, burden, and proportionality considerations.

Plaintiff states "'there is no bar against discovery of information about events occurring after the filing of a lawsuit.'" [ECF No. 158, at 2] (quoting *McKinney v. Gannett Co.*, 660 F. Supp. 984, 990 (D.N.M. 1981)). This is true, but even discovery of potentially relevant information has its limits. Fed. R. Civ. P. 26. Additionally, *McKinney* was decided in 1981; before the 2000 amendments to the Federal Rules of Civil Procedure. "The 2000 amendments effected a change in the scope of what is relevant for purposes of discovery." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). After the amendment, relevance pertains to a party's claim or defense, not the broader subject matter of a case. *Id.* In 2015 Rule 26 was further amended by taking the "considerations that bear on proportionality" in Rule 26(b)(2)(C)(iii) and moving them to 26(b)(1) to better define the scope of discovery. Fed. R. Civ. P. 26, Adv. Comm. Notes, 2015 Amendments. Additionally, the key to all discovery is that it is relevant. The full quote of the *McKinney* passage is:

> Under Rule 26, Federal Rules of Civil Procedure, there is no bar against discovery of information about events occurring after the filing of a complaint. It is my view that while events occurring after McKinney's authority was removed might not constitute separate breaches of the Employment Agreement, such events may shed light on prior events. Thus, the information is discoverable because it may be admissible at trial or lead to admissible evidence.

*McKinney*, 660 F. Supp. at 990. Thus, based on the facts of that case, Judge Campos determined certain information created after the filing of the case could be relevant. *Id.*

In addition to the requirement that discovery be relevant, it must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Those considerations are fact and case intensive, which is why "a trial court has broad discretion in fashioning the terms and conditions of discovery." *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1243 (D. Wyo. 2016); *accord Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) ("Control of discovery is entrusted to the sound discretion of the trial courts."). After a court has assessed the needs of a case, it has the same "broad discretion to control and place appropriate limits on discovery." *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (citing *Corwin v. Marney, Orton Investments*, 843 F.2d 194, 200 (5th Cir.) *cert. denied*, 488 U.S. 924 (1988)).

The Court exercised that discretion in its Order when it did not extend discovery beyond May 3, 2023. [ECF No. 154]. That date's significance is not that it was the date Plaintiff filed suit, but what it represents. Filing suit represents that the factual basis for a plaintiff's claim has occurred and it is seeking judicial intervention. Some cases may be different, but the timeframe was determined after considering the nature of Plaintiff's allegations in the Amended Complaint. Its claims are 1) breach of contract against MineOne; 2) breach of the implied covenant of good faith and fair dealing against MineOne; 3) breach of contract against Terra; 4) breach of the implied covenant of good faith and fair dealing against Terra; 5) intentional interference with contractual relations

5

against Bit Origin ltd, MineOne Partners LLC, SonicHash LLC, Bitmain Technologies Holding Company, and Bitmain Technologies Georgia Limited; and 6) alter ego and enterprise liability for the claims. [ECF No. 50]. The nature of those claims do not make it apparent why information from after suit was filed would generally be relevant to support those claims. Plaintiff's own allegations contemplate the breach, or anticipatory repudiation, occurred at some point in March 2023. Further, the claims are for a total breach of the agreement, without some partial or ongoing relationship between the parties.[3]

To prove those allegations, there are many facts leading up to that point that are relevant to the claims at issue. However, the relevance of facts or events taking place after the breach becomes more questionable. By analogy, a breach is like cutting a string. Once cut, it is severed and no longer a single strand. Threads of that string may split beforehand, but until the last thread breaks the string remains one piece. What happens after the string is separated no longer matters because it is already cut into two pieces. It could be tied back together but would then take on a different character unlike the continuous strand it was before.

Similarly, once a breach occurs, the event is completed absent some sort of cure or ongoing relations subject to further damage.[4] That is all to say, information or events

---

[3] "Defendant MineOne Wyoming anticipatorily repudiated and/or materially breached the DHS AGREEMENT with Plaintiff BCB when it chose not to honor its obligation under the DHS AGREEMENT, when, at Bit Origin's direction, it brought in its own MineOne Wyoming team and workers to perform BCB's work and contractual obligations without BCB Cheyenne's consent, and when, at Bit Origin's direction, MineOne Wyoming constructively and effectively removed BCB from the North Range facility without cause, and, at Bit Origin's direction, it would not allow BCB to perform BCB's remaining contractual obligations for both the North Range and Campstool sites and/or facilities, all to BCB's injury and loss, generally described in the Paragraph 201 below." [ECF No. 50, at 46].

[4] This same logic would apply to the tortious interference claims because once Plaintiff was "effectively removed" from the projects, the alleged interference was complete.

6

occurring after an alleged breach are not generally relevant to the claim because that breach has already occurred. Certainly, there can be exceptions to the rule but that is an appropriate line for a court to draw when exercising its discretion to manage discovery. The Court drew that line here, even allowing for discovery after March 2023 into May 2023, to provide the parties with a reasonable period to conduct the expansive searches needed to comply with the written discovery requests. That promotes efficient discovery by alleviating an overly burdensome and nonproportional strain on Defendants to spend copious time rummaging through documents that would presumably not reveal relevant information. Any relevant information it might reveal is outweighed by the proportionality concerns.

The temporal limitation is a general rule the Court declared to promote efficiency. The Court will clarify it is not a complete blockade to relevant information existing after May 3, 2023, that is specifically requested.[5] It simply allows Defendants to use May 3, 2023, as the end date when conducting searches for Plaintiff's discovery requests. Such a decision is well within a district court's power. *Trentadue v. FBI*, 572 F.3d 794, 808 (10th Cir. 2009) ("courts must limit otherwise-permissible discovery if 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues'" (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii))). Such a decision is no different than limiting the scope of discovery requests or the search terms used to respond to discovery requests. *Taylor v.*

---

[5] The Court stated that it was "not inclined at this time to extend the requests beyond the date this suit was initiated." [ECF No. 154, at 4]. The wording "not inclined at this time" does not impose a complete barrier.

*Grisham*, No. 1:20-cv-267-JB-JHR, 2020 U.S. Dist. LEXIS 205965, *6 (D.N.M. Nov. 30, 2020) ("Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not." (quoting *Audiotext Commc'ns v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 U.S. Dist. LEXIS 545, at*4 (D. Kan. Jan. 17, 1995))); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 739, 742–44 (8th Cir. 2018) (affirming a magistrate judge's ruling limiting the plaintiff's requested search terms from 206 to 15); *Himoinsa Power Sys. v. Power Link Mach. Co.*, 2010 U.S. Dist. LEXIS 54106, *7 (D. Kan. June 2, 2010) (limiting the temporal scope of discovery to six months before and after the relevant event); *Kitchen v. Corizon Health, Inc.*, No. 20-1310, 2020 U.S. App. LEXIS 39363, at *12 (6th Cir. 2020) (affirming a district court's denial of a motion to compel which the district court did in part because of the lack of temporal limitations). Indeed, "[r]ecency is one component of relevance." *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016) (discussing temporal limitations on discovery in discrimination cases).

### *The July 27, 2023, Financing Agreement*

Plaintiff does specifically request a document after May 3, 2023, the July 27, 2023, financing agreement between MineOne and Bitmain. The Court impliedly denied that request with its Order by imposing the May 3, 2023, cut off without specifically addressing the document itself when it should have. Out of caution, the Court ordered MineOne to submit the document for *in camera* review and MineOne complied. After reviewing the document, the Court concludes that it is not relevant, and any marginal relevance is outweighed by the prejudice of MineOne disclosing a confidential agreement.

8

In its Motion for Reconsideration, Plaintiff alleges that the July 27, 2023, financing agreement:

> is a critical financial and control document of the MineOne/Bitmain "comprehensive partnership." It will state the financial terms of the loan(s). It will describe the security and control terms that Bitmain required and obtained on the North Range bitcoin mining site. Acting under Bitmain's financial leverage and control, and Bitmain's requirement that BCB be removed as the O&M Service Provider, MineOne then effectively removed BCB as the O&M Service Provider, replaced BCB with MineOne as the O&M Service Provider, and ultimately brought these bitcoin mining projects under full Chinese ownership, control, and operations/maintenance.

[ECF No. 158, at 7]. The financial, security, and control terms of the agreement are not relevant to Plaintiff's claims or defenses. Those relate to the loan and do not shed light on the validity of Plaintiff's claims. The agreement was signed well after the alleged breach and interference, so any specific control generated from it was not present when those allegations occurred.

What is relevant, is the agreements existence; not its contractual terms. Taking Plaintiff's allegations as true, Defendants' relationship now is the culmination of those events. However, the existence of the agreement, the general role of Defendants, and Plaintiff's absence from that are undisputed to the Court's knowledge. Plaintiff's argument that the agreement "demonstrates the financial power and influence Bitmain wielded over MineOne; and proves, or tends to prove, that MineOne was willing to yield to Bitmain's demand that BCB be removed" is a broad leap. It is a financing agreement, not a pact targeted at taking down Plaintiff. Turning back to the string analogy, the string was cut back in March 2023. Plaintiff is one piece, with MinOne being the other. Subsequently, MineOne tied a knot with a new strand in Bitmain. Plaintiff is trying to prove that Bitmain

was the knife the cut the string, but the agreement does nothing to prove that. The agreement is the new knot, not the knife. The factual circumstances existing in March 2023 are the knife as those show what severed the relationship.

***WeChat Messages***

Unrelated to the Court imposed discovery timeframe, Plaintiff seeks reconsideration of the Court's ruling on the WeChat messages between Bitmain and MineOne representatives. In the Order, the Court determined it "cannot order disclosure of the WeChat messages because Chinese law is currently blocking their retrieval." [ECF No. 154, at 4].

Contrary to Plaintiff's assertion that it "accepted – 'lock stock and barrel' – MineOne's counsel's evasive strawman argument that 'Chinese privacy laws' preclude MineOne from producing its WeChat communications with Bitmain," Defense counsel made representations that satisfied the Court. It was not some far-fetched spontaneous conclusion the Court came to on its own. Defendants represented their e-discovery vendor was unable to transfer the files after accessing the relevant accounts. [ECF No. 145, at 8–9]. That representation was then made again in open court at the hearing. Through no fault of their own, those efforts were unsuccessful. [ECF No. 158, at 2]. Attorneys have a professional ethical obligation of candor to the court. MODEL RULES OF PROF'L RESPONSIBILITY r. 3.3; *Fish v. Kobach*, 320 F.R.D. 566, 573 (D. Kan. 2017) ("counsel have a duty of candor to the court and to opposing counsel"). "'Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions

that in the face of the record are wholly incredible.'" *Lasiter v. Thomas*, 89 F.3d 699, 702

(10th Cir. 1996) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Intentional

misrepresentations are subject to sanctions. "Where a court finds that fraud has been

practiced upon it, it may assess attorney fees against the responsible party." *Stenson v.*

*Edmonds*, 86 F.4th 870, 876 (10th Cir. 2023) (cleaned up). There is no error in the Court

accepting counsel's representations of its attempt to collect the relevant discovery simply

because "Plaintiff does not believe MineOne has made extensive efforts" without any

evidence supporting that assertation.

Upon the Court's own research, it found significant caselaw dealing with foreign

law blocking discovery. "It is well settled that [foreign blocking] statutes do not deprive an

American court of the power to order a party subject to its jurisdiction to produce evidence

even though the act of production may violate that statute." *Societe Nationale Industrielle*

*Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.29 (1987).

However, when compliance with a court order would subject a person to liability in his or

her home country a court must balance the interests of comity. *Id.* at 543–44; *see Yukos*

*Capital S.A.R.L. v. Samaraneftegaz*, 592 Fed. Appx. 28, 29 (2d Cir. 2015). "*Aerospatiale*

endorsed the balancing test contained in the Restatement (Third) of Foreign Relations Law

§ 442(1)(c)." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474-75 (9th

Cir. 1992). The restatement provides the relevant factors to consider:

> the importance to the investigation or litigation of the documents or other
> information requested; the degree of specificity of the request; whether the
> information originated in the United States; the availability of alternative
> means of securing the information; and the extent to which noncompliance
> with the request would undermine important interests of the United States,

or compliance with the request would undermine important interests of the state where the information is located.

*Id.* (quoting Restatement (Third) of Foreign Relations Law § 442(1)(c)).

To the Court's knowledge, the Tenth Circuit has not directly spoken on this issue, but the Second and Ninth Circuits have extensively dealt with this subject. In doing so, they adhere to the comity factors provided in § 442(1)(c) through their own factor tests when there is a conflict between compliance with a discovery order and foreign law. *Richmark Corp.,* 959 F.2d at 1474–75; *Owen v. Elastos Found.*, 343 F.R.D. 268, 281–83 (S.D.N.Y 2023). However, the Court does not believe the comity test is applicable in these circumstances.[6]

The above cases contemplate situations where a party refuses to comply with a discovery request or order when it would subject them to liability in their home country. That is distinguishable from what is occurring here. "Defendants are not hiding their WeChat Messages" and are working in good faith to produce those messages. [ECF No. 165, at 9–10]. The Court ordered MineOne to do so, and added teeth to that directive when it allowed Plaintiff to pursue sanctions if MineOne acted in bad faith. [ECF No. 154, at 4–5]. Based on counsel's representations, Defendants did attempt to collect the messages, but were unsuccessful. That is not a refusal to comply with discovery, but an incapability. Better put, MineOne is facing a brick wall rather than spikes in the government's hands. The inability to collect the messages as opposed to outright refusing to do so is a concept Plaintiff fails to appreciate. On that basis, the Court found that it could not order MineOne

---

[6] Even if the test did apply here, it would be inappropriate for the Court to conduct the analysis without further briefing.

to produce documents at that time. Instead, in accordance with Fed. R. Civ. P. 26 and 37, the Court ordered Defendant to proceed in good faith to produce the messages.

Plaintiff also argues the Court's decision was in error because MineOne did not provide the Court with any specific foreign law blocking retrieval of the WeChat messages. As explained above, other Courts do have such a requirement. *Owen*, 343 F.R.D. at 281 ("the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." (citation omitted)); *Cadence Design Sys. v. Syntronic AB*, No. 21-cv-03610-SI, 2022 U.S. Dist. LEXIS 112275, *3 (N.D. Cal. June 24, 2022) (denying a motion for reconsideration and pointing out the defendant had not "identified any particular provision of Chinese law affecting its ability to meet its discovery obligations" in its objections to the original motion to compel).

The Court will not impose that requirement at this time because Defendant has not asserted it faces penalties for complying with a discovery order. Rather, it asserts it cannot strip the data despite its attempts. The refusal to comply because of penalties, as explained above, is what implicates the comity test. In any event, it is no secret that China operates differently than the United States. To that end, an unknown informant recently tipped the U.S. Committee of Foreign Investment "that a Chinese-owned cryptocurrency mining operation had set up near F. E. Warren" Air Force Base in Cheyenne, Wyoming. Renee Jean, Biden Orders Chinese-Owned Cryptocurrency Mine Near F.E. Warren To Shut Down, WYOMING TRIBUNE EAGLE (May 14, 2024), https://cowboystatedaily.com/2024/0

5/14/biden-orders-chinese-owned-cryptocurrency-mine-near-f-e-warren-to-shut-down/.

That Chinese owned cryptocurrency company is MineOne. After investigating the tip, "President Joe Biden … issued an executive order that require[d] … MineOne Partners Limited, as well as any related MineOne entities, to immediately cease operation, remove all equipment and improvements, and transfer ownership of their facility to an approved buyer." *Id.* The order was based on "'credible evidence' that suggests MineOne Partners Limited and its associated subsidiaries could 'take action that threatens to impair the national security of the United States.'" *Id.*

Another Chinese owned company, TikTok, has "prompted a wave of putative class action lawsuits" alleging various privacy violations. I*n re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 914 (N.D. Ill. 2022) (a consolidated multidistrict litigation case of nineteen related actions against TikTok). "[P]olitical tensions" surrounding TikTok parallel those lawsuits. *Id.* "The Department of Defense expressed concerns that its employees' use of the App raised security issues because of the App's ability to convey location, image and biometric data to its Chinese parent company." *Id.* at 913–14 (quotations omitted). Further, "several United States Senators called on the intelligence community to investigate TikTok's alleged ties to the Chinese government and its potential as a target of foreign influence campaigns like those carried out during the 2016 election on United States-based social media platforms." *Id.* at 914 (quotations omitted). "Florida and Texas [passed] laws regulating how social media companies, like TikTok, control content posted by users on their sites." *Alario v. Knudsen*, No. CV 23-56-M-DWM, 2023 U.S. Dist. LEXIS 213547, *4 (D. Mont. Nov. 30, 2023). Needless to say "The extent to

14

which China controls TikTok, and has access to its users' data, forms the heart of this controversy." *Id.* at *8. Montana's Attorney General went so far to say "'TikTok is spying on Americans, period. TikTok is a tool of the Chinese Communist Party. It is owned by a Chinese company, and under China law, if you are based in China, you will cooperate with the Chinese Communist Party, period.'" *Id.* at *41 (this statement was made to the Montana House of Representatives as they considered, then later passed, a bill that banned TikTok in Montana).

All that is to say, it is not mere speculation that the Chinese government governs differently than the United States when it comes to privacy. On that basis, and counsel's representations, the Court properly considered that Chinese law was preventing the collection of Defendant's WeChat Messages. Plaintiff argues in their Reply that in reviewing "WeChat's 2/20/2024 Terms of Use … there is nothing – not one thing – preventing Defendants, Defendants' counsel, or any vendor from accessing and producing the WeChat communications from the phones of Chong "Lucas" Wong, Jiaming Li, or Huaili "Wiley" Zhang." [ECF No. 168, at 5]. Rather, counsel argues, anyone using WeChat is responsible for their own content and falls under the governing law of their legal jurisdiction. *Id.* None of that addresses the geographic location of the requested individuals and WeChat's servers. The servers are in China where law overrides a company's terms of use and exporting data. Counsel has represented their attempts to obtain the messages and its inability to do so is reasonable to the Court based upon the circumstances.

Notwithstanding the above discussion, the Court agrees that these messages are highly relevant to Plaintiff's claims. These conversations will provide insight to Plaintiff's

allegations that Bitmain was interfering and MineOne acquiesced to those demands, ultimately breaching its contract with Plaintiff. Those internal discussions are likely to either support or refute Plaintiff's allegations. It was the Court's hope that the prior order would incentivize MineOne to come to a solution on obtaining the WeChat messages. It was not intended to be a shield MineOne could use to not produce the information.

Plaintiff brings this Motion quickly after the Court entered its Order, without much time for MineOne to come to come to a solution. The Court will allow MineOne more time to figure out a method that effectuates production of the messages. However, the Court will provide the following guidance going forward. If Defendant is unable to access the messages remotely while the representatives are in China, it shall bring those representatives to the United States, with the relevant devices, to obtain the information.

Rule 34 allows a party to inspect or request production of any tangible thing or electronically stored information that is within the scope of Rule 26(b). As explained above, this information is relevant and within that scope. Any burden for bringing the representatives to the United States is heavily outweighed by Plaintiff's need for the information and the exhaustion of any less burdensome method Defendant may attempt. Rule 37 allows the Court to enforce a Rule 34 request when a party has not complied.

"There is no requirement that the requested materials be within the territorial jurisdiction of the court, because a court having jurisdiction over the parties can enforce an order regardless of the location of the documents or things." 7 Moore's Federal Practice - Civil § 34.14 (citing *Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 539–540). "It is clear that a foreign corporation, subject to the in personam jurisdiction of a federal court,

can be ordered under Federal Rule of Civil Procedure 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony." *Pinnacle Packaging Co. v. Constantia Flexibles*, No. 12-CV-537-JED-TLW, 2015 U.S. Dist. LEXIS 168700, *11 (N.D. Okla. Dec. 17, 2015) (citing *Work v. Bier*, 106 F.R.D. 45, 52 (D.D.C. 1985)). While this is not a deposition of a corporate representative, the circumstances here require similar considerations. *See In re Anscheutz & Co., GmbH*, 754 F.2d 602, 615 ("court can order the production of documents and the examination of witnesses to occur in the United States to avoid any infringement upon German sovereignty."), *vacated* in light of, *Societe Nationale Industrielle Aerospatiale*, 482 U.S. 522.

*Societe Nationale Industrielle Aerospatiale*'s importance has already been addressed by the court. But the factors have not been directly considered to this point. The factors and relevant facts are:

> The importance to the investigation or litigation of the documents or other information requested: This information is highly important because it is the conversations during the time of Plaintiff's allegations. That will show the true inner workings of what occurred.
>
> The degree of specificity of the request: Plaintiff's requests is sufficiently tailored to conversations between Bitmain and MineOne that reference its involvement at the mining sites and conversations of their partnership.
>
> Whether the information originated in the United States: The information likely originates both in the United States and other foreign countries.
>
> The availability of alternative means of securing the information: The Court has provided ample opportunity for MineOne to come to another method to secure the information.
>
> The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is

located: This may tangentially undermine China's privacy interests, but there is no penalty for Defendant's compliance. Upon their own representations, there is merely a geographic barrier to obtaining information pertaining to United States based activities that Defendants willingly availed themselves to.

Accordingly, those factors weigh in favor of requiring MineOne representatives to come to the United States, with the relevant devices, to obtain the WeChat messages. The Court has personal jurisdiction over all Defendants and it is appropriate to require their representatives to come to the United States so Plaintiff may obtain its necessary discovery. Further, it is likely that the relevant representatives already do travel to the United States for business and that may provide a convenient opportunity to obtain the messages. In any event, the representatives shall come to the United States for the messages retrieval no later than June 21, 2024. After that time, Defense counsel has until July 5, 2024 to produce the messages to Plaintiff.

The timeframe for the messages is not limited to May 3, 2023. Unlike the tangible agreement, the surrounding conversations could reasonably shed light on Plaintiff's claims because of its prior involvement with the sites, Bitmain, and MineOne. Therefore, Plaintiff may obtain messages between Bitmain and MineOne, including their representatives, up to July 27, 2023. It may obtain conversations pertaining to BCB, BCB's role and involvement at the North Range and Campstool mining sites, and those pertaining to a partnership or financing between Bitmain and MineOne.

If, after the representatives travel to the United States, counsel is still unable to obtain the messages, Plaintiff's request for Defendant to screenshot the messages may be the only option. Defendant may not wish to collect the messages that way, but the high

18

importance of the evidence requires that or potentially spoliation or some other sanction. "[S]poliation is both the destruction of evidence and/or the failure to preserve evidence." *Phillips Electronics North America Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011). This triggers a litigant's duty to preserve documents and materials, electronic or tangible. *Id.* "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party prejudiced by the destruction of the evidence." *Turner v. Public Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (internal citations and quotations omitted). Additionally, there must also be bad faith for an adverse inference of the requested information. *Id.* Negligence is not enough, there needs to be some sort of conduct that supports an inference of a weak case. *Id.*

While Plaintiff may have insinuated Defendants may have destroyed some messages, there is no proof of that or genuine controversy they have been destroyed at the moment. Rather, the situation is similar in that information is unavailable. The reason for the unavailability of the information may be different, but the effect and consequences of the inability to respond remains the same.

Adapting the spoliation requirements to the present issue, the requirements are: 1) a party has a duty to disclose relevant information to an opposing party; 2) it is unable to obtain the information; 3) the adverse party is prejudiced by the failure to do so; and 4) there must be bad faith to obtain an adverse inference. *See id.* The bad faith requirement further aligns with the directives in *Societe Nationale Industrielle Aerospatiale*. 482 U.S. 522; *accord Societe Internationale Pour Participations v. Rogers*, 357 U.S. 197, 208

(1958) ("So construed [Rule 37] allows a court all the flexibility it might need in framing an order appropriate to a particular situation. Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply.").

CONCLUSION

For the forgoing reasons, Plaintiff's Motion for Reconsideration is denied. Notwithstanding the denial, the Court's clarification of its prior Order, and full directives, is in full force.

NOW, THEREFORE, IT IS ORDERED, Plaintiff's motion for reconsideration is DENIED.

IT IS FURTHER ORDERED MineOne's representatives shall travel to the United States if retrieval of the WeChat messages continues to be unsuccessful.

Dated this 20th day of May, 2024.

Kelly H. Rankin
United States District Judge