Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
        smurray@wpdn.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Islands company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## PLAINTIFF'S BCB CHEYENNE LLC'S EXPEDITED MOTION TO COMPEL DISCOVERY FROM THE MINEONE DEFENDANTS

---

COMES NOW Plaintiff BCB Cheyenne LLC, d/b/a Bison Blockchain, through its counsel, and

hereby files its Expedited Motion to Compel Discovery against Defendants MineOne Wyoming Data

Center LLC ("MineOne Wyoming"), Terra Crypto, Inc. ("Terra"), MineOne Partners LLC ("MineOne

Partners") (together with MineOne Wyoming and Terra, the "MineOne Defendants").

### A.     Preliminary Statement

At the June 6, 2024 informal discovery conference, Magistrate Judge Carman granted Plaintiff leave to file this motion to compel discovery.  [ECF 210].  Judge Carman advised counsel that he had read and considered Patrick Murphy's June 5, 2024 discovery letter, a copy of which is attached hereto, marked **"Exhibit A,"** and incorporated by reference.  All of these financial documents and contemporaneous communications are needed in advance of the future evidentiary hearing on BCB's *Emergency Motion for Prejudgment Writs of Attachment and Garnishment* ("*Emergency Motion*) [ECF 182] and *Amended Emergency Motion* [ECF 203].

### B.     Context for This Motion to Compel Discovery

Just as Judge Rankin found that MineOne Defendants' WeChat communications with Bitmain are "highly relevant" to Plaintiff's claims – "[as] these conversations will provide insight to Plaintiff's allegations that Bitmain was interfering and MineOne Wyoming acquiesced to those demands, ultimately breaching its contract with Plaintiff" [ECF 190 at pp. 15-16] – so, too, are the MineOne Defendants' financial documents highly relevant to a core issue at the future evidentiary hearing: whether MineOne Wyoming's alleged "loans" in Paragraph 64(b) and 64(c) of Erick Rengifo's 5/24/24 *Declaration* are genuine, *bona fide* loans and debt instruments of MineOne Wyoming, or whether they should be judicially "re-characterized" as camouflaged equity (for priority purposes).  *See In re Lexington Oil and Gas Ltd.,* 423 B.R. 353, 365, 371 (2010) (first observing that the "Tenth Circuit has adopted a list of factors to be considered in order to distinguish true debt from camouflaged equity" and then "conclud[ing] that the Dow Note and the Cox Note should be recharacterized as equity contributions").  This motion is filed to obtain the relevant information to substantiate the alleged loans/debts, and any security provided thereto, described in Paragraph 64(b) and 64(c) of Erick Rengifo's May 24, 2024 *Declaration* [ECF 195-1, Page 22 of 25].  Pages 22-25 of Rengifo's *Declaration* are attached as **"Exhibit B."**  This is not a prohibited fishing expedition.  Instead, this is a surgical request for the highly relevant information that may prove, or disprove, the MineOne Defendants' argument that these $7,539,761 in alleged loan (or debt)

instruments are in fact loans/debts, or whether they instead represent equity contributions to MineOne Wyoming Data Center LLC.  Whether this $7,539,761 in alleged debts/loans of MineOne is debt or equity matters:  if some of it is *bona fide* corporate loans (or debt), it may or may not have priority over BCB's likely judgment of about $38,983,000; if, instead, they are properly re-characterized by the Court as equity investments, they are junior to BCB's likely $38,983,000 judgment.

### C.    Legal Standard

Rule 37(b)(3)(iii) allows a party to file a motion to compel the production of documents submitted under a Rule 34 request for production.  Trial courts "have broad discretion in fashioning the terms and conditions of discovery."  *See* 6/16/22 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL, *Tillman v. Riverton Memorial Hospital, LLC*, Civil No. 21-CV-138-F, United States District Court; District of Wyoming (Rankin, Magistrate Judge), p. 2 (ECF 39).  "The purpose of this rule is to allow broad discovery of relevant information, even if that information is not admissible at trial." *Id.*

### D.    BCB's Request for Documents with This Motion

In its *Emergency Motion*, its *Amended Emergency Motion,* and with the subsequent information we have learned, BCB asks the Court to issue prejudgment Writs of Attachment and Garnishment on: (a) $15,292,618 of CleanSpark/MineOne purchase monies less the reasonable to-be-determined actual cost to remove the buildings and infrastructure at North Range required by the Presidential Order[1] (*i.e.,* $11,250,000 Campstool Purchase Price + $11,250,000 North Range Purchase Price - $6,903,707 AntAlpha secured loan - $303,675 amount owing to Systems MEC - TBD cost to remove North Range infrastructure), and (b) the remaining amount of MineOne Wyoming's Security Fund (held by Black Hills

---

[1] Erick Rengifo stated in his May 24, 2024 *Declaration* that "the process [to remove the buildings and improvements at the North Range facility as required by President Biden's Order] is expected to take approximately 25-30 days" [ECF 195-1 page 23].  This means that MineOne Wyoming should know all of the "**actual costs**" between June 18-23, 2024.  BCB is formally requesting that MineOne produce all of the following related to this work at North Range: (a) the scope of work to be completed (b) all estimates, (c) all invoices and/or contractors' statements, and (d) all evidence of any payments to any vendor for any invoiced work, including notarized partial and/or final waivers.

Energy) after paying all remaining amounts owing to Black Hills Energy,[2] resulting in a combined Writ of Attachment and Garnishment totaling $15,292,618 less the reasonable and actual to-be-determined cost to remove infrastructure at North Range plus the to-be-ascertained remaining amount of MineOne Wyoming's Security Fund held by BHE after paying all amounts owing to Black Hills Energy ($15,292,618 - to-be-determined North Range vendor costs + to-be-ascertained remaining Security Fund). BCB asserts it will likely prevail at trial for approximately $38,983,000, and that its future judgment – and judgment lien – has priority over all the [alleged] loans and debts identified in Paragraphs 64(b), 64(c) and 64(d) of Erick Rengifo's *Declaration*. None of these asserted loans and debts will or should be paid to the alleged creditors in Paragraphs 64(b), 64(c), and 64(d) if the Court concludes, as it should, that BCB's $38,983,000 likely judgment has priority over these alleged related party loans and debts where there is now no more than $15,292,618 (CleanSpark purchase monies) and $3,200,000 (MineOne Wyoming's Security Fund held by Black Hills Energy) remaining. The MineOne Defendants have no other assets for BCB to collect upon beyond these amounts. The ***priority*** of these competing claims ***matter*** at the evidentiary hearing.[3]  Further, the requested amount of the Writs is within MineOne Wyoming's limitation of liability, as agreed to in the DHS Agreement, and later calculated by BCB's financial

---

[2]  According to the April 1, 2024 Amended and Restated BCIS Agreement, MineOne Wyoming "...shall establish, fund, and maintain the Security Fund to a level of $3,200,000."  BCB plans to issue a subpoena to Black Hills Energy this week to ascertain the remaining amount of MineOne Wyoming's Security Fund held by Black Hills Energy after accounting for any remaining amounts owing to Black Hills Energy.

[3]  The Oklahoma bankruptcy court synthesized the significance of which debts have priority where, as here, there is a limited fund of money to pay corporate debts which exceed the available monies to pay those competing claims:

> At the time of an initial investment, investors hope to make money.  Lots of it.  By the time the business has entered into a downward spiral, the parties are in survival mode.  Testimony offered in court is shaped by the passage of time and the change in expectations.  Recollection is jaundiced by a desire to minimize losses.  For this reason, courts look to the "objectively indicated intent" of the parties rather than the subjective recollections testified to at trial."  "***A court must look not simply at self-serving declarations of the parties, but instead must examine those circumstances surrounding the transaction*** . . . when viewed as a whole, the transaction is an attempt to provide Dow and Cox all the benefits of equity ownership without any of the attendant risks . . . If countenanced, the effect of this transaction will be to elevate the claim of Dow and Cox over those of all general unsecured creditors.  The concept of owning equity in jurisprudence requires the same conclusion.

*In Re Lexington Oil and Gas Ltd.*, 423 B.R. at 367, 371 (emphasis added).

damages expert, Patrick Gahan, in his Expert Report [ECF 151-1].

BCB asks the Court to order and compel the MineOne Defendants to produce the following documents on or by 5pm MDT on June 18, 2024 (so BCB can evaluate these documents in advance of the likely June 26, 2024 evidentiary hearing):

(1) **Loan & Financing Documents**: Any and all documents that support, or tend to support, the assertions of Erick Rengifo in Paragraphs 64(b), 64(c) and 64(d) of his *Declaration* **("Exhibit B")**, including all loan documents, investment documents, sales documents, lease documents, promissory notes, and security documents and/or lien documents (the "Documents"); and

(2) All drafts of the Documents; and

(3) All contemporaneous correspondence (the "Communications"), ***unredacted*** – (a) in native .eml form (including all attachments in native form) for email communications, and (b) in searchable .pdf form for all other communications, including but not limited to, known (and still unproduced) WeChat messages and (unredacted) Skype messages – concerning the Documents by and between all individuals and/or entities involved with negotiating and/or party to the Documents. These Communications are needed for this Expedited Motion to Compel as they will evidence Defendants' then-present intent about their various alleged loans and/or whether Defendants are in fact attempting to camouflage equity investments as loans. These then-present Communications are far more insightful than Defendants' "after the fact" explanation and characterization of these "loan" instruments; and

(4) For the time period May 1, 2022 through May 31, 2024, for MineOne Cloud Computing Investment I L.P. (*i.e.,* the parent entity for the entire Wyoming bitcoin data center project through which much of the funding for the project was sourced), MineOne Data Center LLC (a wholly owned subsidiary of MineOne Cloud Computing Investment I L.P. and majority owner of Defendant MineOne Wyoming Data Center LLC), Defendant MineOne Wyoming Data Center LLC, Defendant Terra Crypto, Inc., and Defendant MineOne Partners LLC, the following information: (a) **accounting journal entry ledgers** with information for every transaction (including the date, time and author of each entry, and if later edited, the

date, time, and author of the edit for each entry) and (b) **all bank statements**.

BCB acknowledges #1 (the Documents), #2 (the drafts of the Documents), #3(a-b) (the Communications), and #4(a-b) (the accounting journal entry ledgers and bank statements) described above are a robust request for production of documents and communication.  The scope of this request is justified by (a) the ***related nature*** of the parties mentioned as creditors in paragraphs 64(b) and 64(c) of Dr. Rengifo's *Declaration* (each of which are now claiming higher creditor priority than BCB), (b) the significant amount of monies in question about to be transacted (*i.e,* $22,500,000 in CleanSpark purchase monies plus up to $3,200,000 in the BHE Security Fund) and (c) the possibility that the economic substance of MineOne Wyoming's purported transactions may differ from their legal form[4].   The Financial Accounting Standards Board ("FASB"), which issues accounting rules that the Securities and Exchange Commission requires all public companies in the United States to follow, states the following in its Statement of Financial Accounting Standards No. 57 regarding Related Party Disclosures:

> 3.  Transactions involving related parties cannot be presumed to be carried out on an arm's-length basis, as the requisite conditions of competitive, free-market dealings may not exist. Representations about transactions with related parties, if made, shall not imply that the related party transactions were consummated on terms equivalent to those that prevail in arm's-length transactions **unless such representations can be substantiated**.
> (emphasis added).

BCB requires the requested production to "substantiate" the representations made by Dr. Rengifo in his *Declaration* about the transactions involving related parties.  Because the priority of more than $18,000,000 is at issue at the evidentiary hearing, this request for records is proportional to the amount in controversy.

---

[4] According to one authoritative source, **"[t]he potential problem with related-party transactions is that their economic substance may differ from their legal form**. . . . As a result of the potential for misrepresentation, financial statement users are particularly interested in more details about these transactions." J. David Spiceland, James F. Sepe, Mark W. Nelson Lawrence A. Tomassini, I Intermediate Accounting 124 (5th ed. 2009). According to another source, **"[a] transaction with a related party is not an arm's-length transaction**. . . . Most auditors assess inherent risk as high for related parties and related party transactions, both because of the accounting disclosure requirements and the lack of independence between the parties involved in the transaction." Alvin A. Arens, Randal J. Elder, Mark S. Beasley, Auditing and Assurance Services 216 (12th ed. 2008); *and see ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 199 n.3 (2d Cir. 2009) (emphasis added).

***Related Parties***

The entities referenced in paragraphs 64(b) and 64(c) of Dr. Rengifo's *Declaration*, and their respective owners, managers, and key decision makers, are an intertwined web of related parties, each with an interest and motive to position its/their creditor priority higher than BCB's creditor priority (in an attempt to get paid before BCB's likely judgment of $38,983,000 exhausts the remaining CleanSpark purchase monies and MineOne Wyoming Security Fund with BHE). The interconnected relationship between these related parties is most easily understood through a visual diagram (*see* **"Exhibit C"**). BCB applies the terminology and definitions in FASB's SFAS No. 57 (*see* **"Exhibit D"**). Based on the foregoing, the following is evident for each of alleged creditors in section 64(b) and 64(c) of Dr. Rengifo's *Declaration*:

- ***Terra Crypto, Inc.*** (which Dr. Rengifo asserts is owed $4,152,434 by MineOne Wyoming). Erick Rengifo and Jiaming Li are the only two beneficial owners of Terra. They control Terra. One or both of them serve as Management of Terra. Erick Rengifo signs documents on behalf of Terra. Similarly, Erick Rengifo and Jiaming Li serve as Management of MineOne Wyoming (as two of the three primary decision makers of MineOne Wyoming). They control MineOne Wyoming. Erick Rengifo and Jiaming Li are the only two individuals who have been known to sign documents for MineOne Wyoming. Further, both Erick Rengifo and Jiaming Li have held Management positions at Defendant Bit Origin, an entity which invested $3M into the project via MineOne Cloud Computing Investment I LP. Erick Rengifo served as Bit Origin's Director and Chief Strategy Officer from March 8, 2021 to December 31, 2022 and Jiaming Li served as Bit Origin's President from December 6, 2021 to November 27, 2023.

- ***Yu & Jing Investment LLC, Oriental Sun Enterprises LLC, and Rising Sun Properties LLC*** (which Dr. Rengifo asserts are "third parties" and which are allegedly owed some portion of $3,356,327 in loans and $131,067 in interest). These entities are three of the four owners of record ("members") of MineOne Wyoming. These entities' exact ownership percentage in MineOne

Wyoming is not known, but based on information disclosed by Defendants, each of these  members invested at least $1M in MineOne Wyoming.

- ***Intellectual International Capital LLC*** (which Dr. Rengifo asserts is a "third party" and which is allegedly owed some portion of $3,356,327 in loans and some other unspecified amount in interest).  This entity is solely owned and controlled by Jiaming Li.  Starting in March 2023 and for at least forty-five days thereafter, this entity made direct payments to multiple vendors of MineOne Wyoming to satisfy MineOne Wyoming invoices.  As mentioned earlier, Jiaming Li is a Management person of MineOne Wyoming and one of two persons who signs documents on behalf of MineOne Wyoming.  Jiaming Li is also the sole owner of MineOne Partners LLC, which based on information disclosed by Defendants, appears to be the General Partner of MineOne Cloud Computing Investment I LP (even though Defendants' Amended Corporate Disclosure Statement does not indicate this).

- ***BitGeek DT Group Limited*** (which Dr. Rengifo asserts is a "third party" and which is allegedly owed some portion of $3,356,327 in loans and some other unspecified amount in interest).  BitGeek was founded by Chong "Lucas" Wang in/around 2019.  Chong "Lucas" Wang is likely a Principal owner and Management Person of BitGeek.   Based on information disclosed by Defendants (even though Defendants' Amended Corporate Disclosure Statement does not indicate this), BitGeek appears to have invested at least $4.99M into MineOne Cloud Computing Investment I LP.  Mr. Wang was also the CEO of Defendant Bit Origin (from April 27, 2022 to April 9, 2024), an entity which invested $3M into the project via MineOne Cloud Computing Investment I LP).  According to MineOne Wyoming (in a disclosure to Bitmain), Mr. Wang is the Ultimate Beneficial Owner of the project (*see* **"Exhibit E"**).  Although the Defendants will not admit to it, nor provide any documents and/or communication involving Mr. Wang, the little (but extremely significant) evidence BCB has shows that Mr. Wang is one of the three founders and

primary decision makers for MineOne Wyoming (along with Erick Rengifo and Jiaming Li).[5]

***Additional Factors Requiring Further Substantiation of Related Parties***

While the related nature of the parties warrants substantiation as to the economic substance of the alleged transactions, additional factors heighten the need for this substantiation and further justifies the scope of production requested by BCB. Those include:

- **No Mortgages Recorded (other than AntAlpha's).** Dr. Rengifo asserts in Paragraph 36 of his Declaration that Terra's September 2022 Bridge Loan was secured by the land and equipment at North Range. However, Terra did not record any mortgage at North Range to secure the land (like AntAlpha later did). Further, Dr. Rengifo asserts in Paragraph 64(b) of his *Declaration* that Terra's March 20, 2024 Repurchase and Debt Conversion Agreement (which was allegedly signed after Defendants initiated efforts to sell the facilities) "converted the prior lease agreement to a Senior Loan" and that Terra was now the "second priority creditor behind AntAlpha." But here, as before, Terra has not recorded any mortgage with the Laramie County Clerk on either North Range or Campstool (as of May 23, 2024) to evidence its alleged senior position.

- **Dr. Rengifo's Assertions Inconsistent with Previously Disclosed Accounting Information.** Accounting is the language of business. Accounting information should reflect the economic substance of a transaction such that users of financial statements can discern what events actually occurred. The Defendants' previously disclosed accounting information does not show, as it should, any of the transactions Dr. Rengifo references in Paragraph 64(b) of his *Declaration*. Why? Further, the previously disclosed accounting information shows investments being made into one or more of the MineOne entities by entities not disclosed in MineOne Wyoming's Amended Corporate Disclosures [ECF 41]. Setting aside the implications of an incomplete Corporate Disclosure, the inconsistency between Dr. Rengifo's new assertions and the

---

[5] *See* "**Exhibit E**" for additional evidence showing Mr. Wang as a founder and primary decision maker for MineOne Wyoming.

Defendants' earlier accounting information raises additional questions and necessitates a greater scope of production to get to the bottom of what is going on.

Ultimately, BCB and the Court must learn and identify now, before the Evidentiary Hearing, the true economic substance of the alleged transactions, not just the legal form based on the documents Defendants will produce in an attempt to prove their alleged "loans" after the fact. *See In re Lexington Oil and Gas Ltd.,* 423 B.R. at 365 (analyzing the factors to "distinguish true debt from camouflaged equity"). The related nature of the parties, and the additional factors listed above, justify BCB's requested scope of production to accurately "distinguish true debt from camouflaged equity" and "recharacterize" accordingly. *Id.* Under the model Uniform Fraudulent Transfer Act ("UFTA"), adopted in Wyoming at Wyo. Stat. § 24-14-201 *et seq.*, whether a transfer or obligation is to "an insider" is a "factor to be considered in determining whether actual fraudulent intent is present." *In Re Lexington Oil and Gas Ltd.*, 423 B.R. at 372.

### E.   BCB Earlier Requested These MineOne and Terra Crypto Documents, But the MineOne Defendants Have Refused to Produce Them.

At the June 6 informal discovery conference, MineOne's lead counsel told Judge Carman, "until two days ago, Mr. Murphy never asked for these documents.  [Mr. Murphy] could have asked for them at the outset of the case.  It is not practical or feasible for [MineOne/Terra] to get these documents for Mr. Murphy today." But BCB *did request* these financial documents from both MineOne Wyoming and Terra back in October 2023 with its First Set of Requests for Production to both MineOne and Terra, but these MineOne Defendants objected[6] to producing *any* of these requested financial documents to BCB.

---

[6] Here is RFP No. 25 that BCB sent to these MineOne Defendants in October 2023, and the objections they asserted on December 20, 2023:

> **REQUEST NO. 25:**  Please produce all documentation and agreements involving debts, Notes payable, or other financial instruments showing any debt owed by your company or encumbrances on your company's assets, due in any measure, to any business activity at North Range and/or Campstool.

> **RESPONSE NO. 25:**  Defendant objects to this Request on the grounds that it is overly broad, not stated within reasonable particularity and unduly burdensome, to the extent that it seeks documents that are not relevant to any party's claims or defenses or proportional to the needs of the case.

Thereafter, BCB, the MineOne Defendants, and Judge Rankin had multiple conferences, one motion to compel, and Judge Rankin's text order ruling on BCB's RFP No. 6 [ECF 113].  In RFP No. 6, BCB requested the following documents and communications:

> **REQUEST NO. 6:**  Please Produce each and every document, contract, e-mail, or other communication (including text messages, WeChat, WhatsApp, Discord, Telegram, or any other mobile or social messaging applications), between Jiaming Li, Erick Rengifo, Huali Zhang, Lucas Wang, Ziyao Shao, Cho Zhu, Iris Li and Haku Du involving the North Range project, the Campstool project, and the planned expansions at both sites.

At the 2/8/24 informal discovery conference, MineOne's counsel told Judge Rankin "it had fully responded to Request for Production No. 6." [ECF 113].  We know that's not true:  MineOne Wyoming still hasn't produced all of its unredacted Skype messages[7] and WeChat messages,[8] and we know they have produced few, if any, of the Documents and other relevant information requested in this Motion. MineOne Wyoming and Terra Crypto cannot honestly tell this Court, "BCB never asked for these documents."

<u>**CONCLUSION**</u>

Defendants have and will continue withholding these highly relevant and responsive Documents, Communications, and related accounting information if the Court does not issue an Order to Compel production of these Documents and Communications BCB has requested since October 2023, and now urgently *needs* before the Evidentiary Hearing. BCB asks that the Court give the MineOne Defendants until June 13, 2024 to file their Response to this Expedited Motion, and the Court thereafter order all production by June 18, 2024.

---

On the basis of the foregoing objections, Defendant will not produce documents in response to this Request.

[7]  BCB has sent two conferral letters to MineOne's counsel about their heavily-redacted Skype messages, and tomorrow BCB will ask Judge Carman to hold an informal discovery call about these redacted Skype messages.

[8]  Judge Rankin's 5/20/24 20-page Discovery Order comprehensively and cogently resolves the WeChat messages issue [ECF 190 at Pages 10-20], requiring the MineOne Defendants to provide all of their WeChat messages by July 5, 2024.

DATED this 10th day of June 2024.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN,

Plaintiff

By:    /s/ Patrick J. Murphy
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
WILLIAMS, PORTER, DAY & NEVILLE, PC
159 N Wolcott St., Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 10th day of June 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [　]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[　]   Overnight Delivery<br>[　]   Hand Delivery<br>[　]   Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New<br>York, NY 10154<br>pcolbath@loeb.com<br>ainman@loeb.com | [　]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[　]   Overnight Delivery<br>[　]   Hand Delivery<br>[　]   Electronic Mail |

| | |
|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>David Iden, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>sparikh@omm.com | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |

By:       /s/ Patrick J. Murphy