Sean Larson, Wyo. Bar #7-5112
Kari Hartman, Wyo. Bar #8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003-1208
307-634-7723
slarson@hkwyolaw.com
khartman@hkwyolaw.com

Paula K. Colbath, Esq. (Admitted *Pro Hac Vice*)
Alex Inman, Esq. (Admitted *Pro Hac Vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
212-407-4000
pcolbath@loeb.com
ainman@loeb.com

*Attorneys for Defendants MineOne Wyoming Data Center, LLC, MineOne Partners LLC, and Terra Crypto Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants.<br>　　　　　　　Defendants. | Civil Action No. 23CV-79-ABJ |

### DEFENDANTS MINEONE WYOMING DATA CENTER LLC, MINEONE PARTNERS LLC, AND TERRA CRYPTO INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S AMENDED EMERGENCY MOTION FOR A PROTECTIVE ORDER WITH PREJUDGMENT WRITS OF ATTACHMENT AND GARNISHMENT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 5

ARGUMENT ............................................................................................................................. 5

I. Defendants Have Kept the Court Abreast of the Negotiations Regarding the CleanSpark Transaction ........................................................................................ 5

II. Plaintiff Cannot Meet the Statutory Requirements for a Prejudgment Writ of Attachment under Wyoming Law ....................................................................... 6

III. Plaintiff Breached the DHS Agreement by Walking Off the Job ......................... 7

IV. Plaintiff Is Not Entitled to Be Kept Contemporaneously Informed of the MineOne Defendants' Negotiations with CleanSpark ......................................... 8

V. Plaintiff's Inflated Damage Calculations Are Contradicted by Its Own Expert Report ....................................................................................................... 9

VI. Plaintiff Must Post a Bond of $32 Million ........................................................... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Downing v. Stiles*,
   635 P.2d 808 (Wyo. 1981) ............................................................................................... 9

**Statutes**

Wyo. Stat. Ann. § 1-15-103(a)(v) ............................................................................................ 6

Wyo. Stat. Ann. § 1-15-104 .................................................................................................. 10

Wyo. Stat. Ann. §  1-15-201 .................................................................................................. 6

Wyo. Stat. Ann. §  1-15-201(b)(iv)(D) .................................................................................. 6

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS, § 265 (1981) ..................................................... 9

COME NOW Defendants MineOne Wyoming Data Center LLC ("MineOne Data"), MineOne Partners LLC, and Terra Crypto Inc. (collectively, the "MineOne Defendants"), by and through their undersigned counsel, hereby oppose BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB")'s Amended Emergency Motion for a Protective Order with Prejudgment Writs of Attachment and Garnishment (the "Amended Motion") (ECF No. 203).

## PRELIMINARY STATEMENT

The MineOne Defendants fully incorporate by reference their opposition to Plaintiff's initial emergency motion.[1] ECF No. 195. Plaintiff, however, continues to make motion after motion, largely repeating its prior arguments and false statements. Plaintiff's "Amended" Emergency Motion is nothing more than an improper reply, which raises new arguments omitted from its initial motion.[2] The purpose of this opposition memorandum is to address the new arguments and claims raised by Plaintiff, all of which totally miss the mark. Notably, Plaintiff continues to make material misrepresentations and utterly false statements to the Court in order to prejudice the court against the MineOne Defendants. The proposed transaction between the MineOne Defendants and CleanSpark, Inc. ("CleanSpark") is in no way fraudulent, an attempt to conceal assets, or a means for the MineOne Defendants to "abscond" with sale proceeds; it is a straightforward transaction to sell property that the MineOne Defendants can no longer use for its intended purpose (i.e., cryptocurrency mining) as result of the Presidential Order to divest the

---

[1] All capitalized terms have the same meaning given to those same terms in the MineOne Defendants opposition to BCB's initial motion.

[2] Plaintiff's Amended Motion makes reference to a "future" rebuttal affidavit from Michael Murphy. ECF No. 203 at 15. The MineOne Defendants again object to Plaintiff's continued efforts to use late filings and email correspondence to serve as a second bite at the apple, and Mr. Murphy's affidavit should be immediately produced.

property. The proceeds of the transactions will be directly paid to the MineOne Defendants' creditors and lenders.

First, as the Court has been made aware, this situation is fluid, as the parties continue to negotiate the terms and conditions of the transaction, as well as complete due diligence. The MineOne Defendants have kept the Court abreast of all new developments. Plaintiff claims to have "credible evidence" that the MineOne Defendants and CleanSpark are contemplating a two-part transaction that would allow CleanSpark to close on the Campstool property prior to closing on the North Range property. But these facts were directly presented to both Plaintiff and the Court: by letter (ECF No. 198) filed with the Court _prior_ to the filing of Plaintiff's Amended Motion, Defendants notified the Court and Parties of this very fact. Negotiations between CleanSpark and MineOne continue to this day, as they work to secure a deal that would allow CleanSpark to take title to the MineOne Defendants' properties and to begin building out its own crypto mining facilities, which would supply MineOne with sufficient cash to comply with the Presidential Order and begin to repay its creditors.

Second, Plaintiff's continued harassment and intimidation of the third parties involved in MineOne's contemplated transaction with CleanSpark, a publicly-traded company, is tortious interference that threatens to derail the transaction entirely. So far, BCB has issued three (3) subpoenas to CleanSpark, two (2) subpoenas to Black Hills Energy, and a subpoena to Republic Title of Texas, the anticipated escrow agent. None of these parties wants to be dragged into a lawsuit and continually harassed. They are simply counterparties to a contemplated business transaction. They do not want to hire litigation counsel to handle a routine contractual closing. But the actions of BCB and its counsel, Patrick Murphy, have caused them all to lawyer up, severely jeopardizing whether the transaction(s) will ultimately close. In addition to the

subpoenas, which are overbroad on their face and burdensome to comply with,[3] BCB's counsel has made incendiary contacts with these parties. Throughout its papers, BCB claims that it wants the transaction between CleanSpark and the MineOne Defendants to close, but its actions are clearly to the contrary.[4]

Third, BCB is not MineOne's "largest" or "highest priority" (or even "second-highest priority creditor"). BCB is not a creditor of MineOne at all – it is the plaintiff to a lawsuit without a judgment against the MineOne Defendants (or any party to this lawsuit), holding unproven, utterly speculative claims and even more speculative and supported claims for damages. MineOne has real creditors and lenders that are entitled to be paid now. Plaintiff's Amended Motion is bereft of any Wyoming or 10th Circuit authority to support its conclusory allegations regarding its standing as a "creditor."

Even more significant is the fact that the damages asserted by the MineOne Defendants as against BCB in their counterclaims greatly exceed the damages that BCB has alleged, or will ever be able to prove. And, by the admission of BCB's own expert, the maximum damages that BCB would be entitled to is far less than BCB continues to allege in its moving papers. The DHS Agreement between MineOne and BCB was indisputably frustrated after President Biden's May 13, 2024 Order, which requires MineOne to divest itself of the North Range site. In order to arrive at their inflated damages number, BCB's expert made a number of assumptions, including an assumption that mining at both the Campstool and North Range properties would be operating at

---

[3] BCB's subpoenas on the third parties in connection to the contemplated CleanSpark transaction also largely seek documents that BCB could have sought from parties to this case.

[4] In a June 1, 2024 meet and confer call regarding the issuance of BCB's first subpoena on CleanSpark, MineOne's counsel conveyed its concern that BCB's harassment of CleanSpark and related entities threatened the transaction as a whole, and yet BCB and its counsel have continued their campaign of harassment on CleanSpark, the parties' escrow agent, and Black Hills Energy.

full capacity through at least June 2027. However, the Presidential Order has rendered this impossible, and therefore there would be no payments of any kind after May 2024. Given that *neither* Wyoming site is currently operating at full capacity, BCB's alleged damages bear no resemblance to realty and are miniscule, even if BCB were to establish liability (which it cannot do).

Finally, it is important again to note that BCB did not invest a single penny of its own money into the construction of either the North Range or Campstool sites. These investments came from the MineOne Defendants and their investors, including Ant Alpha and others who provided crucial loans. It is also significant that the electrical deal that BCB negotiated with BHE was at various points unprofitable (as it set a floor for the electricity price that meant that any fluctuations in the price would render mining unprofitable and required shutting down the miners). BCB had no involvement whatsoever in negotiating the key Black Hills Energy contract that is to be transferred to CleanSpark, as that contract was negotiated and entered into well after BCB walked off the jobsite in March 2023.[5]

Ultimately, BCB's request for a writ of attachment must be denied and the MineOne Defendants should be allowed to close on the properties, delivering clean title to CleanSpark at the conclusion of the Parties' June 26, 2024 evidentiary hearing. Finding otherwise will almost certainly kill any deal for sale of the properties, resulting in the federal government seizing the property, and the MineOne Defendants unable to repay their creditors.

---

[5] In footnote 8 of its Amended Motion, BCB acknowledges that it "left the site" (i.e., walked off the job). BCB had no right to do so under the DHS Agreement and this left the project in shambles. ECF No. 203 at 15.

**STATEMENT OF FACTS**

The MineOne Defendants respectfully refer the Court to the supporting Declaration of Dr. Erick Rengifo accompanying their initial opposition papers for a statement of the relevant facts (ECF No. 195-1), as well as the MineOne Defendants' May 31, 2024 letter updating the Court on the status of the CleanSpark transaction (ECF No. 198).

All parties to the CleanSpark transaction have agreed that no closing will occur until after the Court hears oral argument on Plaintiff's Amended Motion, although the parties are ready to close on the Campstool site as early as June 27, 2024. However, further delay will likely result in the transaction being canceled, as CleanSpark has made clear that it must close on the Campstool site soon so that the construction of its own mining facilities is complete before winter sets in.[6]

**ARGUMENT**

**I.    Defendants Have Kept the Court Abreast of the Negotiations Regarding the CleanSpark Transaction**

At various points in its Amended Motion, Plaintiff alleges that the MineOne Defendants and their counsel have not been transparent with the Court about the status of any changes to the Purchase and Sale Agreement between CleanSpark and MineOne. *See, e.g.,* Amended Motion at 13-14. This is simply not true.

Defendants' opposition brief to Plaintiff's initial "emergency" motion was filed on May 24, 2024, and at that time, every statement regarding the status of the transaction between MineOne and CleanSpark was accurate. Indeed, CleanSpark is a public company and is required to make certain filings with the Securities and Exchange Commission regarding the transaction. After the filing of the opposition papers on May 24, 2024, the MineOne Defendants and CleanSpark

---

[6] On June 12, 2024, CFIUS responded to MineOne's proposed sale of the North Range site and requested an additional ten (10) business days to review the proposed transaction.

continued to negotiate certain terms of the transaction, resulting in the filing of the MineOne Defendants' May 31, 2024 letter to the Court, which attached the revised Purchase and Sale Agreement. ECF No.198. Should there be further updates, the MineOne Defendants will continue to advise the Court.

> **II. Plaintiff Cannot Meet the Statutory Requirements for a Prejudgment Writ of Attachment under Wyoming Law**

As put forward in the MineOne Defendants' brief in opposition to Plaintiff's Motion, Wyo. Stat. Ann. § 1-15-201 sets out statutory requirements for the issuance of a prejudgment writ of attachment. Plaintiff's initial motion papers failed to satisfy the required standards, and BCB's Amended Motion fares no better. Therefore, Plaintiff's Amended Motion should be denied in its entirety.

Under Wyoming law, the plaintiff bears the burden of establishing facts sufficient to justify the issuance of a writ of attachment. *See* Wyo. Stat. Ann. § 1-15-103(a)(v). As applied here, and as was stated in the initial opposition brief, *see* ECF No. 195 at 5, Plaintiff must show that "the defendant has assigned, removed, disposed of or concealed, or is about to assign, remove, dispose of or conceal, any of his property with intent to **defraud** his creditors." Wyo. Stat. Ann. § 1-15-201(b)(iv)(D) (emphasis added). As the MineOne Defendants made clear in their earlier legal memorandum and the accompanying Declaration of Dr. Erick Rengifo, the proceeds from the CleanSpark transaction will solely be used to pay current and real creditors of the MineOne Defendants.[7] Furthermore, to the extent that any loans to be repaid were made by investors in the MineOne Defendants, those parties are obviously entitled to be repaid, as they provided liquidity

---

[7] BCB's concern that Dr. Rengifo or anyone else will be enriched due to a repayment of the loan made by Terra Crypto is unfounded, as Dr. Rengifo will testify during the evidentiary hearing.

necessary to keep the business afloat after BCB's mismanagement and incompetence led to a 50% cost overrun on construction of the North Range site and a ten month delay in getting the site fully operational.  Again, BCB did not put a single dime into this project for which it has not already been repaid.  Instead, while BCB argues in its Amended Motion that it maintains priority over MineOne's other creditors, BCB does not cite to any case law or statutory authority that would support these claims.[8]

### III. Plaintiff Breached the DHS Agreement by Walking Off the Job

Plaintiff's claim in its Amended Motion that it did not walk off the job, ECF No. 203 at 15, is totally false.  Beset by Plaintiff's numerous failures in getting the North Range site operational on the agreed-upon schedule (the parties had agreed to an October 2022 date in the DHS Agreement and at the time BCB abandoned the project in March 2023, the site was still not running at full capacity) and Plaintiff's total inability to manage construction costs (construction of the North Range site exceeded the agreed-upon budget by almost 50%), the MineOne Defendants were compelled to bring additional help to the site.  As a result, the MineOne Defendants suggested to BCB an amendment to the DHS Agreement, consistent with the amendment procedures set forth in the DHS Agreement.  Plaintiff rejected this amendment and subsequently abandoned the project on the evening of March 15, 2023, and ran to the Courthouse. See **Ex. A**.  The very next day, Plaintiff filed a 45-page complaint in Wyoming Chancery Court. And while Plaintiff notified some of the vendors of this transition, it did nothing to facilitate any kind of smooth transition, as it claims in its Amended Motion, and the MineOne Defendants were

---

[8]The only case law that BCB does cite is from out of state cases that do not apply to the specific Wyoming statute that BCB attempts to invoke in its Amended Motion.  ECF No. 203 at 10.

7

left totally unaware of, for example, what payments were made to vendors, what payments were outstanding. *See, e.g.,* **Ex. B**.

At all times, the MineOne Defendants attempted to work with BCB to make the project successful. Furthermore, the MineOne Defendants never filed a notice of default or a notice of termination to BCB, as is required under Article VII of the DHS Agreement, and thus the Agreement was never terminated or repudiated by the MineOne Defendants.[9]

### IV.  Plaintiff Is Not Entitled to Be Kept Contemporaneously Informed of the MineOne Defendants' Negotiations with CleanSpark

While it should go without saying, Plaintiff is not entitled to have a seat at the table for the negotiations between the MineOne Defendants and CleanSpark. The MineOne Defendants have been engaged in negotiations with both CleanSpark and CFIUS (as well as several other potential contract parties) to try and salvage some remuneration from Plaintiff's breach of the DHS Agreement and the resulting Presidential Order.

At no point was Plaintiff legally entitled to any information regarding the negotiations between MineOne and CFIUS; regardless, Plaintiff's principals were made aware that a complaint had been lodged regarding MineOne's purchase of the North Range site in October 2022, yet Plaintiff (as project manager of the North Range site) took no action at that point in time, or any other, to secure CFIUS approval. *See* Rengifo Decl. Ex. 8 (ECF No. 195-9).

Similarly, the MineOne Defendants are not required to update Plaintiff regarding each passing decision in their negotiations with CleanSpark, which is a publicly traded company. Plaintiff's insistence on interfering with the CleanSpark transaction is now putting the deal in

---

[9] Similarly, BCB never filed any such required notice with the MineOne Defendants, opting instead to file suit.

8

serious jeopardy, and the MineOne Defendants reserve their rights to amend their counterclaims to include any damages suffered as a result of Plaintiff or its counsel's actions.[10]

### V. Plaintiff's Inflated Damage Calculations Are Contradicted by Its Own Expert Report

Plaintiff's Amended Motion continues the fiction that it is "MineOne's largest creditor." *See, e.g.,* Amended Motion at 8. However, even in the best-case scenario, this is based upon a reading of Plaintiff's expert report that, in addition to being wildly aspirational about the amount of money the MineOne Defendants would have to pay BCB under the terms of the DHS Agreement, relies on facts that are simply untrue. As stated above, the May 13, 2024 Presidential Order completely frustrated the purpose of the DHS Agreement, and now MineOne has permanently ceased bitcoin mining at both the Campstool and North Range sites. As a result, while BCB is not entitled to *any* damages due to the fact that it walked off the job, this is even more true given that BCB failed to obtain CFIUS approval from the outset.

Plaintiff's expert report assumes continual, successful, uninterrupted bitcoin mining at both sites through June 2027. *See, e.g.,* ECF No. 151-1 at 76. Even granting Plaintiff all favorable inferences that the assumptions made by its expert are accurate (and they are not), Plaintiff is obviously not entitled to any purported damages after the contract was frustrated.[11] *See, e.g., Downing v. Stiles*, 635 P.2d 808, 811 (Wyo. 1981); *see also* RESTATEMENT (SECOND) OF

---

[10] Plaintiff's argument that the MineOne Defendants' failure to raise the CFIUS negotiations in its publicly-filed answer and counterclaims is a sign of bad faith can be readily disposed of. Again, the MineOne Defendants were not under any obligation to Plaintiff to disclose the existence of its negotiations with CFIUS concerning highly confidential national security issues and proposed mitigation measures. Accordingly, the MineOne Defendants reserve their rights to amend their counterclaims to include any additional damages outside of their initial breach of contract damages that have already been alleged.

[11] In the alternative, the MineOne Defendants would have invoked the DHS Agreement's *force majeure* provision and terminated the agreement without need for future performance.

CONTRACTS, § 265 (1981). Accordingly, even assuming that Plaintiff's wildly speculative breach of contract damages are accurate (and they are not), Plaintiff would only be entitled to minimal damages, due to the fact that there was no bitcoin mining performed by the MineOne Defendants after May 13, 2024.

### VI.     Plaintiff Must Post a Bond of $32 Million

As noted in the MineOne Defendants' initial opposition brief, Wyo. Stat. Ann. § 1-15-104 requires Plaintiff to post a surety bond "in an amount fixed by the court for the payment of all costs and damages which may be incurred or suffered by any party as a result of the wrongful issuance of the writ, not exceeding the sum specified in the bond." ECF No. 195 at 19. Again, Plaintiff's proposed order sets an unjustifiable nominal bond of $1000. ECF No. 182-7 at 5. This is plainly insufficient to compensate the MineOne Defendants for any costs or damages that will result from the granting of an erroneous writ of attachment, including the potential damage that would result if the writ causes CleanSpark to walk away from the deal.

Accordingly, the Court should set a bond in an amount not less than $32.5 million.

### CONCLUSION

For each of the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

DATED this 17th day of June, 2024.

                          HATHAWAY & KUNZ, LLP

                          By: */s/ Sean Larson*
                               Sean Larson, Esq.
                               Kari Hartman, Esq.
                               2515 Warren Ave, Suite 500
                               Cheyenne, WY 82003
                               Telephone: (307) 634-7723
                               Fax: (307) 634-0985
                               slarson@hkwyolaw.com
                               khartman@hkwyolaw.com

        LOEB & LOEB LLP

By: <u>*/s/ Paula K. Colbath*</u>
    Paula K. Colbath, Esq. (*Pro Hac Vice*)
    Alex Inman, Esq. (*Pro Hac Vice*)
    345 Park Avenue
    New York, NY 10154
    Telephone: (212) 407-4000
    pcolbath@loeb.com
    ainman@loeb.com

*Attorneys for Defendants MineOne Wyoming Data Center LLC, MineOne Partners LLC, and Terra Crypto Inc.*

**CERTIFICATE OF SERVICE**

    This is to certify that on the 17th day of June, 2024, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Patrick J. Murphy<br>Scott C. Murray<br>Williams, Porter, Day & Neville, P.C.<br>159 N. Wolcott., Suite 400<br>P.O. Box 10700 (82602)<br>Casper, WY 82601<br>*Attorneys for Plaintiff* | [✓] CM/ECF<br>[ ] Fax:<br>[ ] E-mail:<br>pmurphy@wpdn.net<br>smurray@wpdn.net |
| Khale J. Lenhart<br>Tyson R. Woodford<br>Hirst Applegate, LLP<br>P. O. Box 1083<br>Cheyenne, WY 82003-1083 | [✓] CM/ECF<br>[ ] Fax:<br>[ ] E-mail:<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com |
| Marc Feinstein, *pro hac vice*<br>William K. Pao, *pro hac vice*<br>David Iden, *pro hac vice*<br>Kaitlyn Farrell, *pro hac vice*<br>Daniel Hirsch, *pro hac vice*<br>Sherin Parikh, *pro hac vice*<br>O'Melveny & Myers, LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>*Attorneys for Bitmain Technologies Georgia Limited* | [✓] CM/ECF<br>[ ] Fax:<br>[ ] E-mail:<br>mfeinstein@omm.com<br>wpao@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>kfarrell@omm.com<br>sparikh@omm.com |
| Meggan J. Hathaway<br>Jane M. France<br>Sundahl, Powers, Kapp & Martin, L.L.C.<br>500 W. 18th Street, Suite 200<br>Cheyenne, WY 82003-0328 | [✓] CM/ECF<br>[ ] Fax:<br>[ ] E-mail:<br>mhathaway@spkm.org<br>jfrance@spkm.org |
| Marc S. Gottlieb<br>Ortoli Rosenstadt, LLP<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>*Attorneys for Bit Origin and SonicHash* | [✓] CM/ECF<br>[ ] Fax:<br>[ ] E-mail:<br>msg@orllp.legal |

                                               */s/ Candice Hough*
                                               Hathaway & Kunz, LLP