# EXHIBIT 1




Patrick J. Murphy
Physical: 159 N. Wolcott St. Suite 400
Casper, WY 82601
Phone: 307-265-0700

Mailing: PO Box 10700
Casper, WY 82602
pmurphy@wpdn.net

June 2, 2024

**VIA E-MAIL ONLY**

Paula Colbath & Alex Inman
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com

Sean M. Larson & Kari Hartman
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82001
slarson@hkwyolaw.com

Re: Response to Defendant MineOne's 5/31/24 Meet-and-Confer Letter Concerning (i) BCB's Proposed Amended Subpoena to CleanSpark and (ii) the MineOne Fraud Assertion regarding Pending Litigation

Dear Paula and Alex:

Thank you for our hour-plus long conferral call yesterday about four planned issues (and which morphed into other issues). Our call was contested and heated at times – with sharp disagreements – but I thought, by the end of our call, it was cordial and productive. This email addresses the two issues you wanted to speak about on the call, specifically (i) BCB's [proposed] Amended Subpoena to CleanSpark and (ii) my assertion in BCB's May 15, 2024 Emergency Motion that Jiaming Li fraudulently failed to disclose this BCB lawsuit to CleanSpark at or before the time CleanSpark signed the May 8, 2024 PSA. I want to highlight what each of us agreed to do – and not do – on our Saturday afternoon conferral call regarding these two issues. I also want to present you with our position, and our request of your clients, on these two issues.

I will be sending additional communication regarding the conferral issues I wanted to speak about on the conferral call (*i.e.*, (i) the redacted Skype messages and (ii) my desire for you to correct and withdraw your mistaken statements that I made an ex parte communication to the Court with my May 17 e-mail to Judges Carman and Johnson (and all counsel) shortly before the May 17 status conference). I will also be sending additional communication regarding your clients withholding highly relevant loan documents and communications.

Please see below and note the **important response items (which are bold/underlined)** where I am asking for **your timely response (day and time)** given this Friday's scheduled evidentiary hearing.






***BCB's [proposed] Amended Subpoena to CleanSpark***

We talked long and hard about BCB's [proposed] Amended Subpoena to CleanSpark. It would take me hours to re-count everything you said about the [proposed] Subpoenas to CleanSpark (and Republic Title of Texas). I vividly recall you saying there is a "high probability" CleanSpark will call off this entire transaction if BCB serves its Amended Subpoena on CleanSpark, but you weren't able to offer any evidence of such a doomsday scenario other than this is what Jiaming Li reported to you. Your quote to me was simple: "This will end in disaster if you serve that Subpoena [to CleanSpark]!" You also said: "The feedback I am getting is that the transaction is at risk [if I serve that Subpoena on CleanSpark]." You threatened saying, "if our subpoena causes [CleanSpark] to walk away [from this deal], then we will take it up with the Court."

You also said these two subpoenas (to CleanSpark and Republic Title of Texas) were purely "harassment." And that BCB should have instead submitted a written discovery request to the MineOne Defendants for the documents BCB is requesting in the [as yet unserved] CleanSpark subpoena. You didn't feel that any of the enumerated items in BCB's subpoena to CleanSpark were at all relevant. You said they have "nothing to do" with BCB's claims against the MineOne Defendants.

I disagree. I shared with you that the information requested in these two subpoenas goes to the heart of BCB's Emergency Motion, and Amended Emergency Motion, for prejudgment writs of attachment and garnishment. I shared with you that BCB has had to resort to issuing third party subpoenas because BCB cannot get good or complete discovery from MineOne, the party who should be producing these relevant documents to BCB, and which has a continuing obligation to produce relevant documents and information without BCB having to request it every single time. And we can't get timely discovery responses from your clients, either.

While we did not agree on much with respect to these subpoenas, we did agree on this much: we would keep talking about these subpoenas. I agreed I would not "serve" either subpoena without first advising you I am going to serve it (or them). And you agreed that, "As long as we are talking and not serving, I won't write to the Court."

And this led to a side-discussion where I asked you if any money has yet changed hands. You told me, "I don't believe that any money has changed hands." You said you do not believe any monies have been paid [by CleanSpark] to the escrow agent, and no money has been paid by CleanSpark to any of the MineOne Defendants or any of their alleged creditors yet. I thanked you for that, and I told you BCB does not want any money changing hands before our June 7 motion hearing with Judge Johnson. And I would now like to add that BCB does not want any money changing hands before the Court rules on BCB's emergency motion for writ of attachment/garnishment.

Related to this, I also pointed out a discrepancy in the May 29, 2024 Campstool PSA and what you wrote in your CleanSpark Transaction Update to the Court on May 31, 2024 regarding how the CleanSpark purchase monies will ultimately be transferred. The PSA indicates:






> "At the Closing, the Purchase Price shall be paid by the Escrow Holder, on behalf of Buyer, as follows: (A) such amount to lien-holders, on behalf of Seller, such as Antalpha Technology Limited, Terra Crypto Inc. and International Capital, as may be designated by Seller, by wire transfer of immediately available funds; and (B) the remainder, if any, to be paid to Seller by wire transfer of immediately available funds." [ECF 198-1 page 43].

However, in your letter to the Court you said, "As currently structured, the proceeds from the Campstool transaction will be paid by CleanSpark directly to MineOne Data's secured creditors…." Paula, please let me know if you misrepresented the PSA requirement to the Court for how this transfer of CleanSpark purchase monies is to take place, or if the Campstool PSA has been amended after May 29, 2024 (and you have yet to provide us with an updated copy).

We also had a side discussion on the alleged loan documents. You agreed that you would consult with your clients about providing BCB with the "loan documents" with MineOne's various alleged creditors early this week. You appreciated the relevancy of those loan documents by and between your clients and its/their related parties and members. BCB contends those are transactions between related entities, without proper documentation, and they do not have priority over what MineOne owes to BCB and BCB's likely judgment. You disagreed, but did not tell us "why" you disagreed. But you did commit to talking with your clients about providing us with all the loan documents for the transactions between your clients and any person or entity you claim they have a loan (of some sort) with. **BCB needs all these loan documents (and lease agreements with Terra) – specifically, all documents supporting the assertions in paragraph 64b and 64c of Erick Rengifo's Declaration, as well as the communications leading to those documents – by Wednesday, June 5, 2024 at 9am MDT to prepare for the scheduled hearing on Friday June 7th. Please let me know by 3pm on Monday, June 3, 2024 if your client will be producing in unredacted form (including the .eml files for all email communications and Docusign agreements) all of these alleged loan documents, lease agreements, and related communications (to BCB by Wednesday, June 5 at 9am).**

As you know, your client should already have produced these documents and communications under RFP #6, but they chose not to. If they had as they should have done, we would not be under these tight timelines ahead of the evidentiary hearing. And further, the fact that these have not been mentioned until now, let alone produced, and that MineOne is now relying on these documents to pay MineOne's related parties to the detriment of BCB, is very suspicious.



WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*



***The assertion in BCB's May 15, 2024 Emergency Motion that Jiaming Li fraudulently failed to disclose this BCB lawsuit to CleanSpark at or before the time CleanSpark signed the May 8, 2024 PSA***

We talked at length about BCB's assertion in BCB's May 15, 2024 Emergency Motion that Jiaming Li fraudulently failed to disclose this BCB lawsuit to CleanSpark at or before the time CleanSpark signed the May 8, 2024 PSA.

I told you — at the outset — that if I was wrong or mistaken with that fraud allegation, that I want to correct it and withdraw it in a written pleading with the Court.

I then explained to you a high-level summary of all the objective evidence I had available to me leading up to and on May 15, 2024 (when I made that assertion) was that there was no disclosure schedule (the one entitled, Section 7 — Exceptions to Representations and Warranties). Here is a detailed timeline:

- May 8, 2024 - MineOne and CleanSpark sign the PSA, but MineOne does not provide any information or documents to BCB as it is required to do (pursuant to Rule 26(e) of the Wyoming Rules of Civil Procedure, which imposes the continuing duty to supplement answers and responses to BCB's RFPs whenever such information is discovered or determined)

- May 9, 2024 - CleanSpark announces the deal. MineOne has still not provided any information to BCB regarding the PSA and any potential disclosure schedules.

- May 12, 2024 - BCB's Counsel finds the MineOne-CleanSpark PSA on Justia (but it does **<u>not</u>** include any disclosure schedules). Based on the following facts, BCB objectively believed there was no disclosure schedule for Section 7 of the PSA:
  - The PSA states, "(a)Seller's Representations and Warranties. Except as otherwise set forth in **<u>the</u>** **<u>a</u>** disclosure schedule attached hereto, Seller hereby represents and warrants to Buyer that as of the Effective Date and, subject to Section 7(b) below, as of the date of the Closing:" (emphasis added) [ECF 182-4 page 29]. As is evidenced here, there is a typo in this cited sentence. If one interprets the word "the" as a typo (and removes it), the sentence reads "Except as otherwise set forth in **<u>a</u>** disclosure schedule attached." By using only the word "**<u>a</u>**," it suggests that an *optional* disclosure schedule *might* exist, but not that one definitely exists. However, if the word "a" was a typo (and removed), then the sentence would have read "Except as otherwise set forth in **<u>the</u>** disclosure schedule attached." By using only the word "**<u>the</u>**," this would have provided clear indication there was a disclosure schedule. This is a critical distinction. The mistake in the PSA led to uncertainty as to whether a disclosure schedule existed.






- The PSA on Justia did ***not*** include any disclosure schedules. BCB later found the PSA on the sec.gov website as well, and that PSA did ***not*** include any disclosure schedules either.
- Further, MineOne had not yet provided any information to BCB about the PSA and any potential disclosure schedules, even though MineOne had the responsibility to provide new documents and information to BCB.

- May 15, 2024 - BCB files its Emergency Motion, which claims, among other things, that MineOne did not disclose the BCB lawsuit to CleanSpark. BCB made this claim based on the aforementioned evidence and the fact MineOne had still not provided any information to BCB about the PSA (and any potential disclosure schedules) as MineOne was obligated to do. I had a reasonable, good faith belief, that MineOne had not disclosed to CleanSpark the existence of the BCB-MineOne litigation when I made that averment.

- May 17, 2024 - The Court conducts a status hearing. Paula Colbath said there was a disclosure schedule to the PSA that disclosed the BCB lawsuit to CleanSpark, but she did not provide any details about the disclosure schedule (regarding what it said, if/when it was provided to CleanSpark, etc), nor did she provide any evidence it actually existed and was provided to CleanSpark before the signing of the PSA. Additionally, at this time, MineOne had still not provided any new information and documents to BCB pertaining to the PSA (and any potential disclosure schedules), even though MineOne had the responsibility to provide new information and documents to BCB.

- May 21, 2024 - BCB receives documents pursuant to a subpoena it served upon BHE on May 16, 2024. Two of the documents received from BHE are emails that indicate "CleanSpark's goal is to close on the EBP Campstool next week [May 20-24, 2024]…" And CleanSpark "would like to accelerate the closing of the Campstool/EBP property with M1 [MineOne] as they see this as the path of least resistance." [ECF 182-1 and 182-2]. This evidence contradicted the assertions that you made at the May 17, 2024 status hearing in which you said "There is no emergency present, no money has exchanged hands and no money will for at least 30 days, and likely longer" (which the Court relied on in its May 20 Order). It also gave BCB further reason to question the veracity of your disclosure schedule assertion at the May 17, 2024 status hearing. Additionally, at this time, MineOne had still not provided any new information and documents to BCB pertaining to the PSA (and any potential disclosure schedules), even though MineOne had the responsibility to provide new information and documents to BCB.

- May 24, 2024 - Paula Colbath files MineOne's Opposition Memorandum and Erick Rengifo's Declaration.
  - The Rengifo Declaration says: "BCB completely ignores the opening clause of the representations and warranties in Section 7 of the PSA, which expressly excepts items that are 'otherwise set forth in **<u>the</u>** **<u>a</u>** disclosure schedule attached' to the PSA." (emphasis added). Erick Rengifo correctly quotes the PSA, which includes






the aforementioned "**the a**" typo, and which creates ambiguity as to whether or not a disclosure schedule exists.

- The Rengifo Declaration further says: "If BCB had conducted even a perfunctory investigation before filing its baseless "emergency" motion, it would have readily understood that MineOne Data expressly disclosed this lawsuit in a disclosure schedule." [ECF 195-1 par 56]. However, as indicated earlier, (i) the disclosure schedule's existence was ambiguous based on the wording of the PSA, (ii) there was no disclosure schedule attached to the PSA in any location where BCB found the PSA, and (iii) the disclosure schedule had not been provided to BCB even though MineOne had the responsibility to provide it to BCB per MineOne's obligation to supplement its production with new documents and information.
- A standalone Disclosure Schedule was attached to the Rengifo Declaration as Exhibit 6. While this Disclosure Schedule does indicate the existence of the BCB lawsuit, there is no evidence that this Disclosure Schedule was sent to CleanSpark and/or acknowledged by CleanSpark prior to MineOne and CleanSpark entering into the PSA. For example, the PSA (which was provided as Exhibit 3 to the Rengifo Declaration) includes a DocuSign Envelope ID in the top left-hand corner of every page (which indicates that all of the pages of the PSA were part of the Docusign Envelope signed by MineOne and CleanSpark). However, the Disclosure Schedule provided as Exhibit 6 does not include any DocuSign Envelope ID, and as such, doesn't provide conclusive evidence that this Disclosure Schedule was sent to, or received by, CleanSpark. As far as BCB could tell at this time, the Disclosure Schedule provided as Exhibit 6 could be a standalone page later created by MineOne and possibly not sent to CleanSpark.
- Additionally, Erick Rengifo's Declaration contains so many misstatements on so many different topics (many of which will be rebutted in Michael Murphy's forthcoming rebuttal affidavit). The presence of all of these misstatements gives BCB very little confidence in believing much of what Erick Rengifo swears to, including any statements about MineOne providing the Disclosure Schedule to CleanSpark.

- May 31, 2024 - Paula Colbath files a Transaction Status Update letter with the Court (which contradicts her earlier statements on the May 17, 2024 status hearing about the timing for closing on the transaction, and which the Court later relied on in its May 23, 2024 Order). She also provides the Amended and Restated PSA for North Range ("North Range PSA") and the new PSA for Campstool ("Campstool PSA"). The North Range PSA has corrected the ambiguous language in Section 7(a) and now reads "Except as otherwise set forth in **the** disclosure schedule attached hereto." Section 7(a) of the Campstool PSA matches that of the North Range PSA. As such, BCB does not dispute that a Disclosure Schedule now exists (as the North Range PSA and Campstool PSA specifically reference **the** Disclosure Schedule). However, BCB still wants evidence to show when the Disclosure Schedule was sent to CleanSpark. If the Disclosure Schedule was provided to CleanSpark after MineOne and CleanSpark entered into the May 8, 2023 PSA, that may






suggest MineOne and CleanSpark entered into the May 8, 2023 without MineOne disclosing its lawsuit with BCB. If MineOne can provide evidence that the Disclosure Schedule was actually sent to CleanSpark before the PSA was signed, BCB will correct and withdraw the specific fraud allegation it made towards Jiaming Li in a written pleading with the court.

- May 31, 2024 - Paula Colbath sends a meet and confer letter to Patrick Murphy via email. In that letter:
    - Paula Colbath says, "As MineOne explained its opposition papers, Article 7 of the Purchase and Sale Agreement ("PSA") included a preamble that states that "[e]xcept as otherwise set forth in the disclosure schedule attached hereto..." Ex. 3 at Art. 7(a)." Paula Colbath does not accurately cite the May 8, 2024 PSA. She has left out the word "**a**," a word which had created ambiguity as to whether a disclosure schedule existed.
    - Paula Colbath admits that the disclosure schedules "are not publicly filed with the SEC," which contradicts the statement in Erick Rengifo's Declaration that "If BCB had conducted even a perfunctory investigation before filing its baseless "emergency" motion, it would have readily understood that MineOne Data expressly disclosed this lawsuit in a disclosure schedule."
    - Paula Colbath says that "BCB has an obligation to immediately withdraw/correct to the Court and to the public its knowingly false statement that MineOne did not inform BCB of this litigation." First, BCB never "knowingly" made a false statement (for all of the reasons documented in this letter). Second, it appears Paula has mistakenly referred to BCB rather than CleanSpark. This, along with Paula's inaccurate quotation of the PSA above, are examples of Paula Colbath's inattention to detail and/or her willingness to present information that is not accurate.

As mentioned above in the timeline, and as you said on our June 1, 2024 meet and conferral call, you have conceded that any disclosure schedules are not public documents. The only way BCB could have received the subject disclosure schedule would have been through you – and you weren't willing to volunteer it even though MineOne has the continuing obligation to supplement its production. You decided, as a matter of strategy, to not only keep the May 8, 2024 PSA (and any potential disclosure schedules) hidden until after BCB filed its Emergency Motion and drew attention to it, but you have again decided, as a matter of strategy, to keep the May 29, 2024 PSAs (and any disclosure schedules) hidden until after BCB sent you its Amended Emergency Motion for review on May 30, 2024 and then submitted it as an Exhibit to its Motion to Submit an overlength filing on May 31, 2024.

On our call, I kept asking you if you would please provide me the "proof" that MineOne provided the Section 7 Disclosure Schedule (with exception #5 about the BCB lawsuit) to CleanSpark at or before CleanSpark signed the May 8, 2024 PSA. I told you I would correct and withdraw my fraud allegation on this point if I could have some evidence that CleanSpark had this disclosure schedule at/before it signed on May 8, 2024. At first, you didn't want to provide me with any such






proof: you said this was a mess of my own making and you didn't see any reason you should help me extract myself. But we kept visiting. And I showed you where item #'s 1 and 9 to BCB's subpoena to CleanSpark were asking for this proof. You then said that if I would write a letter to you asking for the specific things BCB really needed in our two subpoenas — this proof of "if and when" CleanSpark actually had the subject disclosure schedule — then you would consider providing the requested information. This is that letter, and my specific requests for the items BCB really needs.

I also asked you, in our conferral call, if you had any evidence to support your May 31, 2024 conferral statement that, "BCB's false statement is now being repeated by the press, and BCB has an obligation to immediately withdraw/correct that to the Court and to the public its knowingly false statement that MineOne did not inform BCB (sic) of this litigation." On our June 1, 2024 conferral call, I asked if you knew of, or had, any such press releases, articles or statements. You thought maybe there was something reported in a "Financial Press" news release, but you weren't sure about that. You then said you received the information for the statement in your letter in an e-mail to you where Jiaming was relating what he saw reported in some [unidentified] press article. Would you now please send me any press article you and/or Erick or Jiaming are aware of where the press is quoting or citing this particular fraud allegation? I ask this, in part, because our search for any press articles has not revealed any press article that mentions this particular fraud allegation.

***CONCLUSION AND IMPORTANT REQUESTS (WITH DATES AND TIMES)***

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, the duty to supplement shall be continuing and supplementary answers and responses are hereby requested to be served whenever such information is discovered or determined. But MineOne is not forthcoming in providing documents it is required to do so. Mineone's disclosure of PSA related documents has only happened because of BCB's proactiveness in (i) filing an Emergency Motion and (ii) sending you Amended Emergency Motion and later attaching this as an exhibit to BCB's Motion to Submit an Overlength Filing. This is why BCB has been forced to resort to issuing subpoenas to third parties. However, BCB is reasonable, and BCB supports the CleanSpark deal (and very much wants it to close so long as there are proper judicial guardrails to protect BCB's interests). BCB wants the MineOne-CleanSpark deal to close. We have been clear about this.

Given your threats and Jiaming's doomsday scenario detailed above about the subpoenas and closing with CleanSpark, we don't anticipate your clients having any problem providing these requested documents and confirmations directly to BCB, thus eliminating any need for BCB to subpoena CleanSpark and/or Republic Title of Texas. In other words, **BCB is willing to refrain (for now) from issuing its proposed subpoenas to CleanSpark and Republic Title of Texas so long as MineOne provides the following information requested below (which BCB would have otherwise received from CleanSpark and/or Republic Title of Texas pursuant to the proposed subpoenas) by 3pm MDT on Monday, June 3, 2024**:





1. A confirmation on whether CleanSpark and MineOne will follow the requirements of Section 2(c) of the Campstool PSA for the distribution of proceeds (i.e., CleanSpark sending the funds to the Escrow Holder, and then the Escrow Holder distributing the funds to the alleged creditors) or if CleanSpark is planning to bypass the Escrow Holder and directly pay MineOne's alleged creditors and/or MineOne (as you said in your status letter filed with the Court on May 31, 2024).

2. A confirmation of what you represented to me on our June 1, 2024 call, specifically, that no purchase monies have been sent by CleanSpark to Republic Title of Texas (or any other escrow agent), MineOne, and/or any of MineOne's alleged creditors. Please note that if any funds are transferred to any of the aforementioned parties before the June 7, 2024 evidentiary hearing, I absolutely expect you to notify me immediately of that happening.

3. Verifiable documentary evidence that MineOne provided the PSA Section 7a disclosure schedule to CleanSpark at or before the signing of the May 8, 2024 PSA. This should be as simple as providing the .eml file(s) that MineOne sent to CleanSpark with the subject disclosure schedule (which discloses the BCB lawsuit). If MineOne provides this evidence – that it communicated the subject disclosure schedule (which discloses the BCB lawsuit) to CleanSpark before the signing of the May 8, 2024 PSA – then I will correct and withdraw my mistaken statement about Jiaming Li making that fraudulent statement in a written pleading with the Court.

Paula, we all know Loeb and Loeb is the transaction counsel for MineOne on its deal with CleanSpark, and how apprised you and Alex are with all the details of the Campstool and North Range transactions. Very simply, and importantly, we need to know where the money is and how it is going to move. BCB is not going to tolerate a scenario where your clients and co-counsel play "hide-the-ball" from both BCB and the Court with the $11.25M in Campstool purchase monies this week (and the $11.25M in North Range purchase monies over the weeks to come). Will you be providing BCB the requested information above so BCB can refrain (for now) from issuing the subpoenas?

Thank you, Paula and Alex.

Very truly yours,

[signature]

Patrick J. Murphy