# Exhibit A

Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
        smurray@wpdn.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, A Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF BCB'S REPLY BRIEF IN SUPPORT OF ITS AMENDED EMERGENCY MOTION FOR PREJUDGMENT WRITS OF ATTACHMENT AND GARNISHMENT ON (1) $15,529,165 OF CLEANSPARK PURCHASE MONIES AND (2) $999,111 OF MINEONE'S SECURITY FUND HELD BY BLACK HILLS ENERGY

**TABLE OF CONTENTS**

**Page**

A. PRELIMINARY STATEMENT ........................................................................................ 1

B. STATEMENT OF FACTS ............................................................................................. 2

C. ARGUMENT ................................................................................................................ 3

   I.    BCB has shown a likelihood of success on the merits in this lawsuit, and as such, the
         likelihood of BCB becoming a judgment creditor after the 2025 trial ......................... 3

         A. BCB substantially performed under the contract.

         B. MineOne Defendants materially breached the contract.

         C. MineOne Defendants mistakenly blame MineOne's vendors' untimely
            performance on BCB.

         D. MineOne Defendants have failed to provide evidence of any alleged
            breaches by BCB of BCB's *actual* contractual obligations.

         E. BCB has incurred damages, as calculated by its expert, Patrick Gahan.

   II.   BCB, as a judgment creditor, would have higher priority than all of MineOne's
         creditors except AntAlpha ............................................................................................. 4

   III.  MineOne Defendants have indicated their plan to distribute their remaining assets to
         related parties and unsecured creditors (which would defraud BCB) .......................... 4

   IV.   BCB's Requested Writ of Attachment is meant to preserve the *status quo* and the
         MineOne Defendants' remaining assets until BCB becomes a judgment creditor and
         can collect upon those assets ....................................................................................... 4

   V.    BCB Meets the Statutory Requirements for Prejudgment Writs of Attachment and
         Garnishment under Wyoming Law ............................................................................... 5

   VI.   Explanation of the amount BCB requests to be attached ............................................. 5

   VII.  BCB's bond should be no more than $1,000 ................................................................ 6

D. APPLICABLE LAW – Writ of Attachment ................................................................. 6

E. APPLICABLE LAW – Bond Amount of $1,000 ....................................................... 8

F. APPLICABLE LAW Delaware Breach of Contract Law ......................................... 10

G. MineOne's Defenses and Rhetoric Are Mistaken .................................................... 10

H. CONCLUSION ........................................................................................................... 15

i

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain ("BCB"), through its counsel, and hereby submits Plaintiff's Reply Brief in support of its *Amended Emergency Motion* for Prejudgment Writs of Attachment and Garnishment (the "*Amended Emergency Motion*").

## A. <u>PRELIMINARY STATEMENT</u>

Plaintiff BCB worked for over a year (June 2021 to June 2022) to (a) win a highly competitive RFP from Black Hills Energy ("BHE"); (b) negotiate a $150,000,000+ power contract with BHE; and (c) lock up the land upon which to-be-built data centers would consume the electrical power from BHE. BCB then assigned all of its upfront work to Defendant MineOne Wyoming Data Center LLC ("MineOne") via the DHS Agreement in return for MineOne's promise to pay BCB for it over the course of Phase 2 of the project. But MineOne didn't let BCB get to Phase 2. After BCB worked nearly another year (from June 2022 to March 2023) on Phase 1, MineOne anticipatorily repudiated the DHS Agreement. BCB filed suit shortly thereafter. BCB has been tied up with litigation ever since (March 2023 to June 2024), working and spending the life savings of its principals in an effort to recoup the value BCB created when it assigned its valuable upfront work and power contract to MineOne, for which MineOne never paid BCB (*see* "**Exhibit A**"). And now, after three years of hard work and litigation, all of BCB's efforts have led to the June 26 four-hour evidentiary hearing, of which BCB gets ninety minutes to present its evidence. Ninety minutes to decide three years of work. Ninety minutes to explain thousands of Bates-stamped articles of evidence; to explain how BCB is likely to win at trial on the merits of the case; to rebut the misstatements and frivolous counterclaims of MineOne (for which MineOne doesn't provide evidence); to explain how MineOne has blamed BCB for MineOne's other vendors' untimely performance; to decide thousands of hours of work and millions of dollars of investment. Ninety minutes… for everything. BCB will put forward as much evidence as it can in its allotted ninety minutes, but it will only be a fraction of what it has documented and referenced in support of its case thus far. MineOne, on the other hand, which has yet to provide any credible evidence of BCB breaching any of BCB's ***actual*** contractual obligations, will mislead the Court as it has done throughout

this case (and which BCB has documented on numerous occasions).  If the Court does not grant BCB's

requested Writs (for whatever reason), then MineOne will have effectively won this lawsuit (as MineOne

has already said, in pleadings, it plans to distribute its remaining assets to related parties and unsecured

creditors - many of whom were responsible for MineOne's breach of its agreement with BCB - and BCB

will have nothing to collect on when it wins this lawsuit in 2025).  But if the Court grants the Writ (which

it should, based upon BCB meeting the requirements for Writs), it will provide the opportunity for **both**

**parties** to have a fair shot at winning this case on the merits with the possibility of a meaningful reward

for the victor. It will also provide the beset settlement environment. If the Court does not grant BCB's

requested Writs, two thing are nearly certain: Discovery will hyper-expand before the Discovery cutoff

deadline and this case will go to a two-week bench trial in late January 2025 as MineOne will execute

its scheme to defraud BCB and fraudulently convey over $16,000,000 to its "alleged creditors" and

service providers, including their attorneys, to keep litigating (*i.e.*, paying themselves—MineOne's

owners, operators, investors, and related parties).

But if the Court grants the Writs (which it should, based upon BCB meeting the requirements

for Writs), it will provide the opportunity for **both parties** to have a fair shot at winning this case on the

merits with the possibility of a meaningful reward for the victor. It will also provide the beset settlement

environment. Writs of Attachment are proven to lead to settlement and resolution between parties, which

will happen here only if the Court allocates this $15,529,165 of CleanSpark purchase money and

$999,111 in the BHE Security Fund.

### B.  STATEMENT OF FACTS

BCB refers the Court to the following documents, which are incorporated by reference:

- Michael Murphy's Merits Affidavit [ECF 182-2], which identifies evidence that shows (a)
  BCB's substantial likelihood of success on its breach of contract claims against MineOne and
  Terra and (b) BCB's substantial likelihood of success defending against MineOne's and Terra's
  frivolous counterclaims against BCB;

- Affidavit of Stephen Randall [ECF 182-3], which shows how (a) BCB substantially performed several of its contractual obligations for MineOne and (b) MineOne breached its contractual obligations for BCB, among other things;

- The Expert Report of Patrick Gahan [ECF 151-1], which incorporates Michael Murphy's 140-page Campstool Affidavit [ECF 151-2] and Emory Patterson's Power Expansion Affidavit [ECF 151-3], and which calculates BCB's damages caused by the Defendants;

- Michael Murphy's Amended Emergency Motion Affidavit (see "**Exhibit XX**"), which demonstrates the required elements necessary for Writs of Attachment and Garnishment, among other things;

- Michael Murphy's "Rengifo Rebuttal" Affidavit (*see* "**Exhibit XX**"), which rebuts - with evidence - so many of the sworn misstatements of Dr. Rengifo in his May 24, 2024 *Declaration*; and

- BCB's June 10, 2024 *Expedited Motion to Compel Discovery* [ECF 214], which requests highly relevant information from the MineOne Defendants to substantiate their alleged related party loans, which Defendants have refused to provide (despite BCB's requests for them as early as October 2023), which refusal provides the basis for an adverse inference, and said refusal leading to an adverse inference, specifically, that the alleged related party loans are nothing more than camouflaged equity.

## C. ARGUMENT

**I.   BCB has shown a likelihood of success on the merits in this lawsuit and, as such, the likelihood of BCB becoming a judgment creditor after the 2025 trial.**

Throughout this lawsuit, BCB has provided an overwhelming amount of evidence (with references to Bates numbers) to show that (a) BCB substantially performed its contractual obligations without breaching any of its contractual obligations and (b) the MineOne Defendants materially breached the MineOne Defendants' obligations.  BCB will not have time at the evidentiary hearing to

present and explain all of its exhibits and Bates-numbered evidence.  But this evidence exists it is of record, and it is compelling, and if reviewed in full (which would happen at trial), it leads to only one conclusion: BCB will be successful on the merits of this case and will become a judgment creditor.

### II.     BCB, as a judgment creditor, would have a higher priority than all of MineOne's creditors except AntAlpha

Judgment creditors have higher priority than related party creditors and unsecured creditors. This includes MineOne's alleged creditors Terra Crypto, Inc. (related party), Oriental Sun Enterprises LLC (related party), Rising Sun Properties (related party), Yu & Jing Investment LLC (related party), BitGeek DT Group Ltd (related party), International Intellectual Capital LLC (related party), Bitmain Georgia (unsecured creditor and co-defendant), and MineOne's attorneys (unsecured creditor).

### III.    MineOne Defendants have provided their plan to the Court to distribute their remaining assets to RELATED PARTIES AND UNSECURED CREDITORS (which would defraud BCB as a likely judgment creditor).

Dr. Rengifo and Paula Colbath have both informed the Court that the MineOne Defendants plan to distribute the proceeds from the CleanSpark sale to MineOne's related parties (*see* **Exhibit XX**) and unsecured creditors (including a client/co-defendant), which would defraud eventual judgment creditor BCB.  Stated more simply, MineOne's owners and/or manager are paying themselves, (under the guise of after-the-fact "loan" documents) and their client/co-defendant Bitmain Georgia rather than BCB (a legitimate third party claimant which has not been compensated per its bona-fide arm's-length contract with MineOne).  Without the Court's requested Writs of Attachment and Garnishment, this defraudment is going to happen; the Defendants have said so, unequivocally.  When this happens, discovery in this litigation is sure to expand, and U.S. federal government institutions (*e.g.*, CFIUS, the Department of Defense, the Department of Homeland, the Biden Administration) may intervene with increased scrutiny of fraudulent transfers under the Presidential Divestment Order

### IV.     BCB's requested Writs of Attachment and Garnishment are meant to preserve the *status quo*, that is, MineOne Defendants' remaining assets until BCB becomes a judgment creditor (after the 2025 trial) and can collect upon those assets.

BCB is not asking to receive any of MineOne's assets and/or cash now.  BCB is not asking to be unfairly enriched.  BCB is not asking to hinder, delay, or defraud any MineOne creditor that would have a higher priority than a judgment creditor.  And BCB is not asking to disrupt the CleanSpark deal (which BCB wants to close as long as BCB is granted its requested Writs) or  the Presidential Order (which BCB has accounted for in its requested amount to be attached).  BCB is only asking the Court to preserve MineOne's assets - to maintain the "*status quo*" - pending the outcome of this lawsuit so when BCB (likely) wins, there will still be assets upon which it can collect.  If the Court does not preserve MineOne's assets, BCB will be left with an empty victory: eight more months of brutal litigation and expense, no assets to collect upon, and a mountain of legal bills that have drained the personal financial resources of its principals.

### V.    BCB meets the statutory requirements for a prejudgment Writs of Attachment and Garnishment under Wyoming Law.

BCB has filed with this Court an affidavit stating the required elements[1] (see Michael Murphy's Amended Emergency Motion Affidavit, **Exhibit XX**).  BCB has also shown a likelihood of success on the merits in this lawsuit, and as such, the likelihood of BCB becoming a judgment creditor after the 2025 trial.

### VI.    Explanation of the asset(s) (and amounts) BCB requests to be attached.

Based on the latest information provided by MineOne and BHE, BCB has identified the specific MineOne asset (which is solely USD) it requests be attached (see "**Exhibit XX**").  BCB does not request attachment of the Campstool and North Range lands, or on any assets or funds required to carry out the Presidential Order.   Further, should CFIUS require that MineOne remove the buildings and/or

---

[1] *(i) That the defendant is indebted to the plaintiff, specifying the amount of the indebtedness over and above all legal setoffs and the nature of the indebtedness;*

*(ii) That the attachment is not sought to hinder, delay or defraud any creditor of the defendant;*

*(iii) That the payment of the indebtedness has not been secured by any mortgage or lien upon real or personal property in this state, or, if originally so secured, that the security has, without any act of the plaintiff or the person to whom the security was given, become impaired; and*

*(iv) Any one (1) or more of the following grounds for attachment:...*

*(D) That the defendant has assigned, removed, disposed of or concealed, **or is about to assign, remove, dispose of or conceal, any of his property with intent to defraud his creditors**; (emphasis added)*

infrastructure from the North Range site (which now appears unlikely as none of the buildings and/or infrastructure appear to have been removed even though the Presidential Order required them to be removed within forty-five days from May 13, 2024), then MineOne can pay for the removal of those items with the proceeds from selling the buildings and/or infrastructure (which should more than cover the cost of removal).

**VII.    BCB's bond amount should be no more than $1,000.**

BCB's proposed bond of $1,000 is reasonable and justified as the potential damages to Defendants as a result of an improper attachment are non-existent. This is because the attached funds would be held in an interest-bearing account by the Court or a Court-designated third party (said custody removes the risk of BCB accessing/diminishing the funds).

**D.  <u>APPLICABLE LAW – Writ of Attachment</u>**

In its briefing regarding discovery, MineOne argues that "BCB has not cited any case law or statutory authority to support its position that it has priority over MineOne Defendants' creditors, because there is none." [ECF 222 at 7]. This is so flawed.

Under Wyoming law, "An order of attachment binds the property attached from the time the writ is executed." Wyo. Stat. § 1-15-212. "The property attached, *or its proceeds*, shall be held subject to the judgment to be rendered…" Wyo. Stat. § 1-15-211. (Emphasis added). An attachment creates a lien under these pre-judgment attachment statutes. *Platte County State Bank v. Frantz*, 239 P. 531 (Wyo. 1925) (emphasis added). A garnishment is virtually a process of attachment, and a garnishee is bound from the time of service. *United States v. Hunt*, 373 F. Supp. 1079 (D. Wyo. 1974), *aff'd* 513 F.2d 129 (10th Cir. 1975). "Personal property capable of manual delivery shall be attached by taking it into custody." Wyo. Stat. § 1-15-203(v).

Under Wyoming law, a prejudgment writ of attachment makes MineOne's property subject to execution upon BCB obtaining a final judgment. Wyo. Stat. § 1-17-301. That means, when BCB obtains a judgment, it can satisfy that judgment from MineOne's property subject to attachment by the

6

prejudgment writ, *i.e.* the requested portion of the $22,500,000 CleanSpark sales proceeds held by this Court or designated third party receiver/custodian. *See* Wyo. Stat. § 1-15-208(a). BCB does not have to show it has priority over other MineOne creditors. Instead, the whole purpose of obtaining prejudgment writs of attachment and garnishment is to establish that BCB is entitled to its requested portion of the $22,500,000 sales proceeds upon obtaining a judgment. "A prejudgment writ of attachment is intended to preserve the *status quo* by placing the property in the custody of the law to be so held until the court determines whether or not Plaintiffs in the action are entitled to judgment in the main case." *DiTucci v. Ashby*, No. 2:19-CV-277-TC, 2019 WL 2579268, at *4 (D. Utah June 24, 2019) (internal quotation marks, citations and alterations omitted). BCB does not have to show priority over other unsecured creditors. Instead, "[b]y obtaining a writ of attachment . . . [BCB] takes priority over creditors that later levy, unsecured creditors, and claimants that join in the attachment proceeding . . . even before the party obtaining the writ has yet to obtain a judgment [.]" *B.B. v. Mell*, 465 N.J. Super. 331, 337, 243 A.3d 680, 684 (N.J. App. Div. 2020) (emphasis added). Moreover, when BCB obtains a final judgment, the judgment "lien relates back to the time when the property was attached and eliminates subsequent claims and liens from priority." *Overmyer v. Lawyers Title Ins. Corp.*, 32 Md. App. 177, 184 (1976).

Furthermore, BCB does not have to show priority over MineOne's alleged related party creditors. Shareholders and related parties who loan or invest money in an insolvent company (which MineOne is based on its liabilities exceeding its assets) have a lower priority than genuine third-party judgment creditors and other unsecured creditors. *See Cooper v. Mississippi Land Co.*, 220 So.2d 302, 304 (Miss. 1969) ("Officers, directors and shareholders of an insolvent corporation, or one rendered insolvent by conveyance to them, cannot prefer themselves in payment of pre-existing debts and thus deprive creditors of their claims against the corporation").

Here, the prejudgment writ of attachment is necessary to maintain *the status quo*. *See Lily v. Fuechtener*, No. 219CV00352RFBEJY, 2020 WL 10695385, at *1 (D. Nev. Feb. 3, 2020) (granting

prejudgment writ of attachment to prevent defendant from transferring money to Germany beyond the reach of the court).  BCB does ***not*** have to prove it has a claim superior to other unsecured creditors and MineOne related parties.  Instead, the entire purpose of obtaining the prejudgment writ is to establish BCB's right to levy on the subject property upon obtaining a judgment.  See Wyo. Stat. § 1-15-208(a). Other unsecured creditors, and related parties, do not (and will not) have the right to levy on the portion of the $22,500,000 that will be held by this Court (or its designee).

### E.  APPLICABLE LAW – Bond Amount of $1,000

In their *Response*, the MineOne Defendants say the Court should "set a bond in an amount not less than $32.5 million," even though BCB is asking that $16,528,276 be attached, and that there is no possibility MineOne will suffer **any damage** if the writ is issued and the monies are held by the Court (not by BCB). The Wyoming attachment statute, like other states' pre-judgment attachment statutes, leave the amount of the bond to the Court's discretion:

> No prejudgment writ of attachment, replevin or garnishment shall issue unless the plaintiff files with the clerk a surety bond in an amount fixed by the court for the payment of all costs and damages which may be incurred or suffered by any party as a result of the wrongful issuance of the writ, not exceeding the sum specified in the bond.

Wyo. Stat. § 1-15-104(a).

Recently, the Minnesota federal court identified the factors the Court considered in establishing a pre-judgment attachment bond:

> In establishing the amount of the bond, the court shall consider the value and nature of the property attached, the method of retention or storage of the property, the potential harm to the respondent or any party, and other factors that the court deems appropriate.

*JA-Father Doe 1 v. Lazzaro*, No. 21-CV-1985 (JWB/DJF), 2023 WL 9284429, at *3 (D. Minn. Dec. 19, 2023), report and recommendation adopted sub nom. Doe 1 v. Lazzaro, No. CV 21-1985 (JWB/DJF), 2024 WL 169099 (D. Minn. Jan. 16, 2024). The Court then observed as follows in setting a $3,000 bond on a $100,000 Ferrari automobile:

> The Court looks to other cases in determining the amount of Plaintiffs' bond and notes that Minnesota courts have imposed only a $500 bond in cases involving real properties

valued at more than the Ferrari's estimated worth of $100,000. *E.g.*, Marriage of Janssen v. Janssen, No. A17-1042, 2018 WL 1570105, at *5 (Minn. Ct. App. Apr. 2, 2018) (finding court did not abuse its discretion in authorizing the attachment of $112,000 in property with a $500 bond); *Dehn*, 2004 WL 5322255 (Minn. Dist. Ct. July 07, 2004) (finding no error in assessment of $500 bond for the attachment of four properties).

*Id.* at *7.

Several reasons support a $1,000 bond in our case. First, with the Court or its designee financial institution holding all $15,529,165 of the attached CleanSpark purchase monies, there is **no damage or loss** "which may incurred or supported by [MineOne] as a result of the wrongful issuance of the writ." Wyo. Stat. § 1-15-104(a). All of the money will stay in the Court's control until a final judgment is entered or execution issued. The only way MineOne can lose any of the money is for the Court to later enter judgment against MineOne (and BCB then executes on it). The money is protected, and earning interest at/near 5%, between now and final judgment. BCB, MineOne, and MineOne's other creditors all potentially gain from this 5% interest on the invested/attached CleanSpark funds. MineOne reserves **all** of the attached proceeds (and the 5% interest these $16,528,276 funds generate) if it prevails against BCB at trial. Even if, somehow, MineOne would later argue that the Court erred with its "wrongful issuance of the writ," (*see id.*), Mineone suffers no damage or loss from any "wrongful issuance of the writ." The **only potential** damage MineOne posits is the "potential damage that would result if the writ causes CleanSpar to walk away from the deal." *Response* at 10. There is **no evidence** that CleanSpark will walk away from its $22,500,000 purchase if the Court enters an attachment. This deal is happening; CleanSpark is closing and paying its $22,500,000 to the escrow agent, Republic Title of Texas, Inc., as quickly as possible; and MineOne will quickly receive and distribute the entire $22,500,000 with the "actual intent to hinder, delay or defraud a creditor [BCB] of the debtor" if the Court does not attach/garnish the money. MineOne has told the Court it will never pay BCB. We believe them. With MineOne telegraphing its actual intent to "hinder, delay or defraud" BCB's likely judgment debtor, the Court should exercise its discretion and properly set the bond at $1,000. BCB cannot afford to post a

bond of more than a few thousand dollars, nor is an expensive bond needed under our case circumstances.

## F.  APPLICABLE LAW – Delaware Breach of Contract Law

BCB and MineOne agreed, in their DHS Agreement that, "This Agreement will be construed in accordance with the laws of the State of Delaware as applied to contracts made and performed entirely therein…" *See* Article 6.2. Delaware contract law largely mirrors Wyoming contract law. *See I/Mx Info. Mgt. Sols., Inc. v. MultiPlan, Inc.*, No. CV 7786-VCP, 2013 WL 3322293, at *6 (Del. Ch. June 28, 2013) (defining material breach as "a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract and makes it impossible for the other party to perform under the contract"); *eCommerce Industries, Inc. v. MWA Intelligence, Inc.*, No. CV 7471-VCP, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013) (holding that, "A party is excused from performance under a contract if the other party is in material breach thereof"); *HIFN, Inc. v. Intel Corp.*, No. CIV.A. 1835-VCS, 2007 WL 1309376, at *16 (Del. Ch. May 2, 2007) (recognizing that "The traditional rule with respect to repudiation is that when one party repudiates a contract, the non-repudiating party is discharged from its obligation to perform, and can immediately seek damages for the repudiatory breach" consistent with the rule for material breach); *and see West Willow-Bay Court, LLC v. Robino-Bay Court Plaza*, 2009 WL 458779 at *5 (decided Feb. 23, 2009) (stating the Delaware principles of anticipatory repudiation, e.g., "a repudiation of a contract is an outright refusal by a party to perform a contract or its conditions… a party confronted with repudiation may respond by electing to treat the contract as terminated by breach"); *Leary v. Oswald*, No. CIV.A. 06C-02-030WLW, 2006 WL 3587249, at *1 (Del. Super. Oct. 25, 2006) (recognizing that "The standard remedy for breach of contract is based upon the reasonable expectations of the parties which are "measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract.")

## G.  MineOne's Defenses and Rhetoric Are Mistaken

MineOne projects its own fear to scare the Court into not issuing this pre-judgment writ on the CleanSpark purchase monies. MineOne cries wolf, saying: "BCB's request for a writ of attachment must be denied and the MineOne Defendants should be allowed to close on the properties, delivering clear title to CleanSpark at the conclusion of the Parties' evidentiary hearing. ***Finding otherwise will almost certainly kill any deal for sale of the properties***, resulting in the federal government seizing the property, and the MineOne Defendants unable to pay their creditors." *Response* at 4. (emphasis added).  This is wholly untrue. First, these same MineOne Defendants also say, "...the parties are ready to close on the Campstool site as early as June 27, 2024." This sale is happening and it's happening fast and certain. CleanSpark wills it.   MineOne wills it.  So does BCB.  So does Black Hills Energy.  So does Cheyenne LEADS.  So does the Wyoming Legislative Select Blockchain Committee.   Everyone wills it.   And CFIUS hasn't given any indication it will pull the plug on MineOne's $11,250,000 sale of North Range if the Court issues a writ of attachment on any portion of the $22,500,000 CleanSpark purchase monies. Second, MineOne will be able to deliver clear title to CleanSpark on both Campstool and North Range because (a) BCB consents to $6,977,000 being paid from the $11,250,000 Campstool purchase monies to release and clear out AntAlpha's secured mortgage on the North Range property, thus delivering clear title to North Range; (b) no one besides AntAlpha has filed a mortgage or security interest on North Range or Campstool; and (c)  BCB is not seeking a writ against the Campstool or North Range lands or real property — BCB seeks a writ ***only*** on the remaining  $15,529,165 of CleanSpark purchase monies and the $999,111 of MineOne's remaining security deposit with Black Hills Energy. CleanSpark and MineOne were hours away from closing on Campstool on June 5, 2024.   MineOne delivered the Warranty Deed to CleanSpark for Campstool June 5 ("**Exhibit ____**").  Indeed, this is what should happen.  Campstool should close on June 27.   North Range should close shortly after June 27.   BCB does not ask for a writ of attachment on *either property*: instead, BCB asks Court to attach the CleanSpark purchase monies.  Attaching the purchase monies does nothing to impair or impede the sale of either property. And attaching the purchase monies does nothing to impair or delay the divestment

under the Presidential Order. In fact, attaching the purchase monies facilitates the President's Divestment Order happening sooner, not later

Seeking to shrink the amount of BCB's likely judgment damages of $38,983,000, and in an effort to minimize the amount of CleanSpark purchase monies the Court should attach, MineOne mistakenly argues that, "BCB's expert made a number of assumptions, including the assumption that mining at both the Campstool and North Range properties would be operating at full capacity through at least June 2027. However, the Presidential Order has rendered this impossible, and therefore there would be no payments of any kind after May 2024." *Response* at 4. This is factually and legally flawed. First, the Presidential Order doesn't touch or affect Campstool; it affects only North Range. Consequently, the $7,362,154 of compensatory damages Patrick Gahan attributes to Campstool is unaffected and undiminished by the Presidential Order. [ECF 151-1]. Second, MineOne's "impossibility of performance" argument is legally inapplicable here. In its effort to incorrectly minimize the amount of BCB's past and future damages for hosting and operating the Campstool and North Range properties through June 2027 (the five-year contract term), and trying to avoid liability for BCB's contract damages, MineOne cites to Restatement Second of Contracts § 265 which applies to a change in circumstance that makes a party's performance worthless to the other party. This is inapplicable here. The facts in our case are best analyzed through Restatement Second of Contracts § 261, which states:

> Where, after a contract is made, a party's performance is made impracticable ***without his fault***[2] by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary. (emphasis added).

*Comment a* of section 261 states that the rule in § 261 "applies only to discharge a duty to render performance and ***does not affect a claim for breach that has already arisen***." *Id*. (emphasis added). Here, MineOne's breach occurred ***fourteen (14) months before*** the Presidential Divestment Order.

---

[2] d. *Impracticability*. Events that come within the rule stated in this Section are generally due either to "acts of God" or to acts of third parties. If the event that prevents the obligor's [MineOne] performance is caused by the obligee [BCB], it will ordinarily amount to a breach by the latter and the situation will be governed by the rules stated in Chapter 10, without regard to this Section. If the event is due to the fault of the obligor [MineOne] himself, this Section does not apply. As used here "fault" may include not only "willful" wrongs, but such other types of conduct as that amounting to breach of contract or to negligence. Restatement (Second) of Contracts § 261 (1981).

Moreover, the entire reason and cause for the Divestment Order is because of something MineOne did or presented: MineOne is a national security risk. The Divestment Order was not caused by an outside event or circumstance: it was caused by MineOne itself. Likewise, the Presidential Divestment Order is not a *force majeure*. According to the DHS Agreement, a *force majeure* event is one that is not within the reasonable control of the party affected ("'***Force Majeure Event***' means any event which is not within the reasonable control of the Party affected, and with the exercise of due diligence, could not reasonably be prevented, avoided or removed by such Party, and does not result from such Party's negligence or the negligence of its agents, employees or Subcontractors which causes the Party affected to be delayed, in whole or in part, or unable to partially or wholly perform its obligations under this Agreement…."). Events caused by MineOne's own actions, such as being a [Chinese foreign adversary risk], and then replacing these BCB American bitcoin hosts/miners with MineOne's Chinese national employees, were within the reasonable control of MineOne; consequently, the Presidential Divestment Order [precluding MineOne from mining at North Range] does not reduce BCB's awardable damages. Any alleged "impossibility" of performance of this contract was caused by MineOne, not by events and circumstances beyond its control in the Restatement or the force majeure provision of the DHS Agreement.

The MineOne Defendants have telegraphed their intent to defraud their largest [judgment] creditor, BCB, to the benefit of themselves and their equity investors under the guise of re-paying these alleged "loans" to related parties. BCB is entitled to a writ on the CleanSpark purchase monies because MineOne "is about to assign, remove or dispose of….its [CleanSpark sales money] property to defraud its creditors." Wyo. Stat. 1-15–201(b)(iv)(D). In this context, "defrauding one's creditor" simply means MineOne pays its other related parties and unsecured creditors "with actual intent to ***hinder, delay*** or defraud any creditor of the debtor." Wyo. Stat. § 34-14-205(a)(i). (Emphasis added). "In determining actual intent under paragraph (a)(i) of this section, consideration may be given, among other factors, to whether: (i) The transfer or obligation was to an insider; (ii) the debtor retained possession or control of

the property transferred after the transfer…; (iv) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (v) the transfer was of substantially all the debtor's assets…; and (vii) The debtor removed or concealed assets…" All of these factors demonstrate MineOne's intent to defraud BCB.

Mineone says, "the [$22,500,000] proceeds from the CleanSpark transaction will solely be used to pay current and real creditors of the MineOne Defendants," intimating that likely judgment creditor BCB is not a "current and real creditor" and/or that MineOne's other debtors somehow have a 'higher priority of debt' that BCB has. They do not have a higher priority of debt. All of them - except AntAlpha - are related party and/or unsecured creditors without a mortgage, lien, or security interest. Much of their debt is correctly "re-characterized as equity." *See In re Lexington Oil and Gas Ltd.,* 423 B.R. 353, 365, 371 (2010) (first observing that the "Tenth Circuit has adopted a list of factors to be considered in order to distinguish true debt from camouflaged equity" and then "conclud[ing] that the Dow Note and the Cox Note should be recharacterized as equity contributions"). AntAlpha is MineOne's only creditor with a higher or better priority than future judgment creditor BCB. There is nothing extraordinary about BCB's writ application. The Wyoming pre-judgment attachment statutes have been a part of Wyoming public policy and statutes since 1876. Here is what BCB proposes, and it achieves what all the participants want except that MineOne would have to await the February 2025 outcome of this civil suit to determine if MineOne receives any money to pay its related parties:  1) MineOne and CleanSpark close on Campstool on June 27, and close on North Range within days, or weeks, thereafter; 2) AntAlpha is paid off when Campstool closes on June 27; 3) Systems Mechanical is paid off when Casmptool closes;  4) CleanSpark receives free and clear title (warranty title) to Campstool and North Range; 5) the remaining MineOne/CleanSpark sales proceeds of $15,529,165 from Campstool and North Range are attached by the Court and held (and invested in a high-paying interest-bearing account) by whomever the Court designates, all to await the Court's future entry of judgment and subsequent declaration of the legal entitlement to these attached purchase monies.

## H.  CONCLUSION

BCB has proven a likelihood of success at trial in this lawsuit and it has met the statutory requirements for writs of attachment and garnishment.  The writs will preserve the *status quo*.

With years of work and expense riding on the upcoming four-hour evidentiary hearing, one can not help but to look at the downside risk to both parties in the event of an incorrect ruling.  That downside risk is unfairly asymmetric.  Granting a mistaken writ (*i.e.*, a writ that should not have been granted) has no long-term impact on MineOne (as the attached funds are preserved with interest).  MineOne and CleanSpark can still close their transactions, and the Presidential Order is still effectuated.  However, not granting a valid writ (*i.e.*, a writ that should have been granted) has a catastrophic long-term impact to BCB (as there will be nothing for BCB to collect in the event it later wins at trial in 2025).  BCB will then be faced with the frustrating and potentially impossible prospect of chasing down the alleged related-party lenders (some of whom are already Defendants in this case) and unsecured creditors (one of which is already a Defendant in this case) in an attempt to force them to disgorge the ill-gotten funds as fraudulent transfers, which efforts will lead to additional time spent by the parties and the Court, many more legal fees incurred, and all of which may never lead to recovery of any funds by BCB from Defendants and their related parties.

Lastly, an intangible benefit of this Court granting BCB's requested writs, although not a legal basis for doing so, is that writs have a track record of leading to settlement in lawsuits.  Thus far, MineOne has been unwilling to engage in settlement discussions with BCB providing only lip-service to engaging in mediation. But if MineOne's assets are attached, it is highly likely MineOne will finally come to the settlement table for meaningful discussions with BCB, and it is then likely the parties will find a way to settle this lawsuit and avoid the many painful and expensive months of upcoming discovery, fraudulent transfer claims, and ultimately, a two-week bench trial in January-February 2025, and subsequent appeal.

RESPECTFULLY SUBMITTED this 24th day of June, 2024.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN, Plaintiff

By:    */s/ Patrick J. Murphy*
Patrick J. Murphy (WSB No. 5-1779)
Scott C. Murray (WSB No. 7-4896)
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 24th day of June, 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Sarah Levitan Perry, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New<br>York, NY 10154<br>pcolbath@loeb.com<br>sperry@loeb.com<br>ainman@loeb.com | [  ]   U. S. Mail (prepaid)<br>[ x ]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |

| | |
|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>William Pao, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>*David* Iden, *Pro Hac Vice*<br>Kaitlyn Farrell, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>wpao@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>kfarrell@omm.com<br>sparikh@omm.com | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP.<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 588-0022<br>Facsimile: (866) 294-0074<br>Email: msg@orllp.legal | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |

   */s/ Patrick J. Murphy*
Patrick J. Murphy