1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

BCB CHEYENNE LLC, a Wyoming            Case No. 23-CV-079-ABJ
limited liability company doing
business as Bison Blockchain,
                                       Mammoth, Wyoming
        Plaintiff,

        vs.                            August 22, 2024
                                       11:18 a.m.
MINEONE WYOMING DATA CENTER LLC,
a Delaware limited liability
company; MINEONE PARTNERS LLC, a
Delaware limited liability
company; TERRA CRYPTO INC., a
Delaware corporation; BIT ORIGIN
LTD, a Cayman Island company;
SONICHASH LLC, a Delaware
limited liability company;
BITMAIN TECHNOLOGIES HOLDING
COMPANY, a Cayman Island
Company; BITMAIN TECHNOLOGIES
GEORGIA LIMITES, a Georgia
corporation,

        Defendants.

---

TRANSCRIPT OF DISCOVERY CONFERENCE PROCEEDINGS
VIA ZOOM VIDEOCONFERENCE

BEFORE THE HONORABLE STEPHANIE A. HAMBRICK
UNITED STATES MAGISTRATE JUDGE

---

APPEARANCES (via Zoom):

For the Plaintiff:        PATRICK J. MURPHY
                          Williams, Porter, Day & Neville
                          159 N. Wolcott Street
                          Suite 400
                          Casper, Wyoming 82601

23-CV-79                                                                    2

```
For the Defendants        PAULA COLBATH
MineOne and Terra         DAVID A. FORREST
Crypto:                   Loeb & Loeb LLP
                          345 Park Avenue
                          New York, New York 10154

                          KARI HARTMAN
                          SEAN M. LARSON
                          Hathaway & Kunz
                          2515 Warren Avenue, Suite 500
                          Cheyenne, Wyoming 82001

For the Defendants
Bit Origin LTD
and SonicHash:            MARC S. GOTTLIEB, I
                          Ortoli Rosenstadt, LLP
                          355 Madison Avenue
                          New York, New York 10022

For the Defendants
Bitmain Technologies      KHALE J. LENHART
Georgia Limited:          Hirst Applegate LLP
                          1720 Carey Avenue
                          Room 400
                          Cheyenne, Wyoming 82003

                          WILLIAM PAO
                          O'Melveny & Myers
                          400 South Hope Street
                          Los Angeles, California 90071

Also Present:             Kate Stutz
```

*MEGAN E. STRAWN, RPR, CRR*
*111 S. Wolcott Street, Casper, WY 82601*
*307.232.2626 * strawnreporting@gmail.com*

*Proceedings reported with realtime stenography;*
*transcript produced with computer-aided transcription.*

1           (Proceedings commenced at 11:18 a.m., August 22, 2024.)

2           THE COURT:  All right.  Good morning, everyone.  I

3    apologize for the late start.  This is what I mean by my

4    criminal docket being extremely busy.  So we went well beyond

5    what we normally do for our 9:00 hearings.  But we're here for

6    sort of part two for our informal discovery conference in

7    BCB versus MineOne.

8           I think that when we left off, we had somewhat

9    started talking about depositions, which I really don't want

10   to micromanage, but I thought we could touch on some topics

11   that might be problematic.  I know I asked the parties to

12   exchange availability dates as well as lists of who they want

13   to depose and who they think should be responsible for

14   deposing -- for producing that witness.  So I hope that's been

15   done.

16           I think we touched on the topics that Ms. Colbath had

17   raised in her letters by either ruling on them or setting them

18   for further briefing.

19           Mr. Murphy, I've had more time to look over your

20   letter of August 16th, which I think, again, the majority of

21   that -- and you had acknowledged one of the most important

22   issues I think is what we've now set for briefing primarily,

23   which, I believe, is appropriate given the lengthy arguments

24   both sides have to make on that topic.  And it does seem to be

25   something everybody agrees is important to the case.

1          So we'll brief those issues and make sure that we

2     then consider everything everyone thinks is important.

3          So I do think that removes a few topics from your

4     letter, Mr. Murphy.  So it's my intention this morning to

5     discuss, somewhat, depositions.  I don't feel like the Court

6     should have to ride herd over all of those.  I do expect you

7     to meet and confer and agree on as much of that as you can.

8          I don't want to micromanage.  I don't want to sit

9     here and go through everybody's witness and everybody's

10    schedule and have the Court have to mess with every witness

11    that wants to be deposed.  I do expect you to meet and confer

12    and agree on as much of that as you can in a serious fashion.

13          Again, you guys are experienced litigators, and I

14    expect you to be professional with each other and to do these

15    things.  This is not personal.  Everybody can vigorously

16    represent their clients.  But this is, frankly, normal

17    litigation.  There's some quirky aspects to it:  people who

18    live in China, things like that.  And I get it.  I know China

19    has some weird things about Zoom and people.  I know there are

20    those quirky things.

21          So there are some unusual issues; but, for the most

22    part, you ought to be able to schedule some depositions

23    without the Court having to get involved in the minutia.

24          MR. GOTTLIEB:  Your Honor, can I be heard on one

25    issue?

1          THE COURT:  Sure.

2          MR. GOTTLIEB:  I don't want to interrupt the Court,

3     so I'm sensitive to that.  But you raised the issue, and I've

4     been participating in the various meets and confers.

5          And I will say this:  Counsel have been very

6     courteous with one another.  They've been very polite.

7     They've engaged in very professional, responsible ways.  I've

8     seen the correspondence between Mr. Murphy and Ms. Colbath,

9     and both have been very polite in their communications.

10         It doesn't alter the fact, though, that -- that we

11    have a limited -- and I'm not here to voice my concern about

12    something that is not before you, which is Judge Johnson's

13    purview of extending the deadline.  But I will tell you this:

14    Because right now we are operating under a deadline that has

15    September 17th, and there are -- there are seemingly immovable

16    objects such as Mr. Murphy has some family things that we've

17    all been very respectful of, and I continue to be respectful

18    of those things.  He's been respectful of our issues and

19    Ms. Colbath's personal schedules.

20         Everybody has these problems; right?  And because of

21    that, through no fault of anybody -- I'm not casting any

22    aspersions on anybody here -- we just -- we have like five

23    dates out of all the dates that are left that, really,

24    attorneys are available.  And it's through no fault and not

25    through lack of trying.

1          And we are getting to a point where no depositions

2    are being scheduled.  I'm sure we can get four or five

3    depositions in before the September 17th deadline, but I don't

4    know how that's going to happen without the Court's

5    intervention on these things.  You know, there are these

6    immovable dates.

7          THE COURT:  And, Mr. Gottlieb, when you say "Court

8    intervention," I mean, are you just talking about Judge

9    Johnson possibly moving a deadline?  I don't know what else

10   the Court can do.

11          MR. GOTTLIEB:  We're going to get to that place at

12   some point.  I don't know how else we're going to avoid that,

13   but I'm not trying to do that here.  What I'm trying to do

14   here is just raise the issue of we've got to at least get --

15   we're going to probably end up needing the Court's involvement

16   on at least setting aside a certain number of dates so we can

17   get these done.

18          I don't know what to do when Mr. Murphy's going to be

19   away and Ms. Colbath's going to be away.  And they're all

20   legitimate.  They're all legitimate family things.  We all

21   have holidays.  We all have summer plans.  We have family

22   deaths and sicknesses and tragedies in our lives; right?  And

23   they're sad, but they're real, and they're impacting this

24   case.

25          THE COURT:  Thank you.

1          MR. GOTTLIEB:  I don't know what to do with that.

2          THE COURT:  Thank you, Mr. Gottlieb.  I appreciate

3    that, and I appreciate your remarks that everybody's trying to

4    work together.  Sometimes we get in here and I feel like

5    everybody is just at each other's throats.  So I'm glad to

6    hear that's not the case, and I would expect nothing less.  I

7    know you're all professionals.

8          Other than the deadlines, I mean, I don't know what

9    the Court can do in terms of depositions at this point.  And I

10   don't know -- Mr. Gottlieb, I'll let you jump in.  You've sort

11   of taken on this topic.  I mean, is there anything that I can

12   address today that doesn't have to do with deadlines that can

13   further that process?

14         MR. GOTTLIEB:  Well, one of the problems that we

15   have -- as I see it, it's a longer-term problem -- is that we

16   have all these motions for discovery; right?  And so it's sort

17   of like putting the cart before the horse because we have all

18   these documents that, at some point in time, are going to come

19   in.  And yet depositions will have been done by then.  It's

20   sort of like putting everything backwards.  Normally, you want

21   to get rid of all of these issues.

22         These are legitimate battles that everyone's had.

23   Again, I'm not claiming that anyone's tried to stretch this

24   out or draw it out.  The motions that have been made are

25   legitimate motions.  Everyone has legitimate concerns.  And

1    they're just going to take their time, you know.

2              And I understand Mr. Murphy's concern that he didn't

3    want to push the deposition deadlines back because there are

4    dispositive motion deadlines, also, which are factored in.

5    And he's right about that.

6              And so, you know, without pushing those back, as

7    well, at some point I just fear, Your Honor, that we're going

8    to be forced to come to Judge Johnson and say, Let's not move

9    the trial back.  We can still keep a January 27th trial date,

10   but we may need to push everything else back a month just to

11   get it all in and take the pressure off of everybody else.

12   Because we're going to end up back here again before you with

13   all of these problems, and I don't know how to resolve them.

14             THE COURT:  Yeah.  And I think, Mr. Gottlieb, Judge

15   Johnson is a thoughtful jurist and not known for his --

16   necessarily his speed for issuing rulings.  And so I think

17   when you're talking about needing to move dispositive motions,

18   which, you know, I don't know how you all are going to avoid

19   that.  I don't know that Judge Johnson's going to be willing

20   to keep that trial date, because I do think he -- he is not

21   known for speedy rulings.

22             So just to put that out there.  You might not be as

23   familiar with Judge Johnson, but you may find he will want to

24   move that trial date if you want to move dispositive motions.

25   But that's all in Judge Johnson's hands, and he likes to

1    control those dates and deadlines himself.

2         So, Mr. Murphy, I'm going to turn to you because you

3    were talking about the depositions in your letter.  Do you

4    think there's anything that I can help with or address today

5    in terms of those depositions?

6         MR. MURPHY:  I do, Judge Hambrick, and I appreciate

7    you letting me speak here.  Could I just bring a few things

8    off of your table first for today?

9         THE COURT:  You may.

10        MR. MURPHY:  Here's a good one.  A big part of my

11   letter to Your Honor on August 16th was my, really, discovery

12   disputes with Bitmain Georgia.  And I'm happy to tell you and

13   report to you that after our last discovery conference, I've

14   had some really good and meaningful conferrals with Will Pao

15   and Khale Lenhart with Bitmain Georgia.

16        We are further engaged in the conferral process.

17   We've made really good progress the last two days since we've

18   visited with you.  We've made enough progress that I can

19   report to you that both -- both of those sides, Bitmain and

20   BCB, agree that we should defer that and take all of that off

21   of the Court's plate today.  We want to and are scheduled to

22   keep talking, keep conferring, keep trying to reach a full and

23   comprehensive resolution of all of our Bitmain/BCB discovery

24   requests.

25        We've agreed that if we can't meet that final, you

1    know, global resolution of our discovery requests, we each

2    reserve the right to come back to Your Honor for your help

3    with it.

4           But we did reach -- one of the agreements is that I

5    will not depose the two people from Bitmain Georgia that I

6    most want to depose on either August 27 or 28.  Will and I and

7    Khale, we've deferred that.  We've taken it off the table.

8    Part of that is in deference to the shortness of the time.

9           Another part is that Paula Colbath is on vacation all

10   of next week, and Paula has shared with all of us very clearly

11   that she wants to be involved with every deposition in the

12   case and we're not to schedule anything without her.  So we're

13   taking that deposition off.

14          So that's the good news, I think, today.  Well, you

15   know, let's have some.

16          THE COURT:  The Court appreciates it.  The Court

17   appreciates it.

18          MR. MURPHY:  I thought you would.

19          THE COURT:  You all seem to be getting along, I feel

20   like, better.  And maybe not.  But I appreciate everybody's --

21   I appreciate it.

22          MR. MURPHY:  We're trying.  We are trying.  And I

23   echo Marc's comments earlier.

24          The other thing -- and I want to thank you for

25   kicking out your two orders this week, and I'm mindful of

1    that.  I will file by noon tomorrow our supplemental briefing

2    that the Court allowed and ordered, but I need to come hat in

3    hand with you and ask for a 29-hour extension on something.

4        This is on BCB's production deadline of noon

5    tomorrow.  BCB is having difficulty with our new Relativity

6    vendor.  We've also found some large video and audio files

7    that we want to load in and produce.  But all of that is

8    taking much more time, and it's just been a lot more difficult

9    the last two days than I ever imagined it would.

10       And so I'd like to ask you -- and, obviously, the

11   other side, MineOne, would get a mutual extension, too.  I'm

12   not just saying me; I'm saying both parties.  We'd like to ask

13   you if you would please give us an extension until Saturday

14   evening at 5:00 o'clock to do that production to the other

15   parties and also to produce the privilege log that the Court

16   ordered we produce by tomorrow at noon.  They really go hand

17   in hand.

18       And I'm just going to be, with BCB, jammed up from

19   now until then trying to kick all that out.  I don't believe

20   it's any prejudice to anyone, and I'd certainly give Paula --

21   you know, stipulate to the same extension.

22       Then I can talk about the depositions after we

23   resolve this little thing.

24       THE COURT:  All right.  Ms. Colbath?

25       MS. COLBATH:  I would just ask that we have until

1    10:00 a.m. Mountain Time on Monday.  I don't want to agree

2    that my team is going to work this weekend, scrambling.  And I

3    think -- I have no idea what their plans are.  And I don't

4    think, from a prejudice standpoint -- if it's 10:00 o'clock,

5    on Monday, it builds in at least some flexibility.  I don't

6    think anything major is going to happen between Saturday night

7    and Monday that would prejudice BCB in this.

8            So I would just ask, rather than midnight Saturday,

9    we just make it 10:00 a.m. Mountain Time on Monday morning.

10           MR. MURPHY:  I appreciate that, and I was -- I just

11   didn't want to overindulge the Court with your deadline.  I

12   didn't want to ask for too much.  But since Paula's doing it,

13   I would say God bless you.

14           THE COURT:  Okay.  All right.  So we'll extend that

15   deadline, and I honestly don't think we specifically talked

16   about a deadline for those.  And so I put that in, so

17   that's -- I'm perfectly fine with extending that.

18           MR. MURPHY:  You're right.  We didn't talk about it.

19   And then when I read it, I went, Oh, and then I'll leave the

20   next word blank.

21           MS. COLBATH:  But, Pat, just so we're on the same

22   page, our production is, like, the loan-related documents.  Is

23   that what you're referring to, or something different?

24           MR. MURPHY:  No.  I'm talking about the other

25   documents that -- the supplemental production that we're

1   supposed to make and, through Relativity, the text messages,

2   the WhatsApp.  That's what I'm referring to in the Court's

3   order.

4           MS. COLBATH:  Okay.  I don't think we had -- we've

5   already complied with that.  What I'm talking about is we have

6   a small document production to make tomorrow, which we would

7   appreciate having until Monday at 10:00 a.m.

8           MR. MURPHY:  I know what you're talking about -- if

9   I -- may it please the Court.  Now I know what Ms. Colbath is

10  talking about.  She's talking about the ordered production

11  that was made by Judge Carman before he left.

12          MS. COLBATH:  Correct.  Correct.

13          MR. MURPHY:  And, Paula, I would stipulate to that.

14          MS. COLBATH:  I appreciate that.

15          THE COURT:  So there was an order -- I just want to

16  make my own notes -- by Judge Carman for some production by

17  tomorrow, and that's being extended until Monday morning --

18          MS. COLBATH:  Correct.

19          THE COURT:  -- MineOne production.

20          Okay.  Great.  All right.  So now, Mr. Murphy, why

21  don't we talk about depositions and what can the -- what can

22  the Court help with today.

23          MR. MURPHY:  Okay.  The summary level is I would like

24  the Court to order four -- the four depositions that BCB wants

25  to take in this case of the MineOne and Bit Origin people on

 1   Thursday, September 5th, and Wednesday, September 11th.

 2   That's going to be the ask.

 3          As Mr. Gottlieb shared with you, we have had

 4   extensive back-and-forth emails.  If I -- just to summarize

 5   it, I would say that Ms. Colbath is not available until

 6   September the 5th with her vacation schedule.  I earlier

 7   shared with everybody the problem with my little grandson and

 8   not being able to do this on the 15th and 16th because I'm

 9   going to be gathered with family for that.

10          But -- and I shared with them that I had my own

11   vacation time on September the 9th through the 13th.  I've

12   changed that to accommodate the counsel.  I've pushed that

13   back until the week of September 16th through the 21st so that

14   we can honor the September 17th discovery cut-off date.

15          The MineOne Defendants last night sent me a list of

16   19 or 20 witnesses they want to depose, 19 or 20.  They

17   haven't taken any of those in the last 11 months.  It was

18   staggering to me.  I have narrowed BCB's list to four people:

19   the two on the 5th, two on the 11th I'll get to in a second.

20          And it -- we can get this done, but we can't be doing

21   these 20 depositions -- and they didn't provide any dates that

22   they wanted to do them.  But I'm telling everyone on this call

23   that I can get my primary client representatives -- Michael

24   Murphy, Sean Murphy, Neil Phippen, Emory Patterson --

25   available to be deposed the week of September 9 through 13.

 1   Emory Patterson is the only one that has to be done by a Zoom

 2   deposition.  He's unavailable to be in Cheyenne, but my two

 3   sons and Neil Phippen can be available then.

 4          And so I suppose we need to further meet and confer

 5   on it.  But I fear, like Mr. Gottlieb fears, that we are going

 6   to be ending up with the Court.

 7          So here's my ask of the Court, and this is really the

 8   last thing of the day that I think is really scheduled is I

 9   want the Court to order that Jaiming Li and Erick Rengifo give

10   their Zoom depositions on Thursday, September 5th, and that

11   Chong Wang way and Huaili Zhang give their Zoom depositions on

12   Wednesday, September 11th.

13          These are the four people who were either highly

14   involved in every aspect of this project or who have intimate

15   and highly relevant knowledge of the projects or were the

16   people who gave their approvals of these projects.  And I'm

17   asking that they be made available on those dates before the

18   discovery cut-off deadline.

19          I am -- and what's so simple about my request is how

20   little time I'm asking for depositions.  I'm asking for two

21   days.  I'm asking that the Court allow me to depose two of the

22   defendants on one day and two on the other day.  And all

23   counsel are available on those days, the 5th and the --

24          MR. GOTTLIEB:  That's not -- that's not true.

25          MR. MURPHY:  I think, Marc, you indicated that you

1    may have a trial on September -- the week of September the

2    9th.

3              MR. GOTTLIEB:  Correct.

4              MR. MURPHY:  But you would be done -- you thought

5    you'd be done on September the 11th, I believe; is that right?

6              MR. GOTTLIEB:  I believe it's going to be a three-day

7    hearing.  It could go four.  But it's definitely going to be

8    9, 10, 11.  And whether it ends on the 11th, I don't know, but

9    I'm actually engaged those three days.

10             MR. MURPHY:  Well, I'm very happy to move that to the

11   12th or the 11th for the other two depositions to accommodate

12   that.

13             MR. GOTTLIEB:  Well, it may not accommodate it.

14   That's the problem.  I have no control over that.  What would

15   happen would be -- I would hate to fill you up on the 11th

16   and, say, the trial has gone over a couple days.  Because the

17   trial is actually scheduled through the 13th; right?  We gave

18   ourselves the extra couple of days because you just do those

19   things.

20             But I have no reason to believe that it's going to be

21   over on the 11th.  It could very well be over on the 11th, or

22   it could be over on the 12th.  But I don't want to disappoint

23   you, Pat, by telling you I can do something when I don't know

24   if I can.

25             MR. MURPHY:  I understand.

1      MS. COLBATH:  Well, might I propose something that

2  these are the things that meet and confers are about without

3  taking all of this with the Judge.

4      I don't know whether Marc is going to require that he

5  be present for Dr. Rengifo's deposition, but Dr. Rengifo could

6  go on the 11th.  I will address Jaiming separately, and the --

7  Jaiming Li does not possess a passport right now.  It's being

8  held at the U.S. Embassy.  He is resident on mainland China.

9  He cannot testify by Zoom or any other means.  It's a criminal

10  act.

11      If we can get his passport back -- and I had

12  suggested that we pick the latest date in the schedule, the

13  16th or the 17th.  And if he got his passport back, whenever

14  he gets it, it will likely be returned when the CFIUS

15  certification is delivered that the North Range has been

16  cleared of all property, improvements, infrastructure.  We

17  anticipate that the MineOne Defendants must deliver a

18  certification to CFIUS.

19      That is underway.  Everything is being removed.  An

20  extension of one week was recently granted because it's taking

21  longer than expected.

22      But we expect when that process is done and the

23  certification has been accepted, his passport will be returned

24  to him, and he can then go to Hong Kong or Singapore or these

25  other venues where people from China go to be deposed.

1        That is something that I've raised with Mr. Murray,

2   so I had suggested Jaiming at the end.

3        Any order to have him appear and testify today on

4   September 5th, by definition, he cannot comply with.  This is

5   not something that I've raised this week.  I have raised this

6   months ago with Mr. Murray and Mr. Murphy and encouraged him

7   to at least begin the process under the Hague Convention on

8   evidence, because that might have given him another avenue.  I

9   don't know whether he's done anything.  I certainly haven't

10  received any papers.  I am agreeable when Mr. -- Dr. Li can be

11  deposed to present him.

12       So Dr. Rengifo has been on vacation.  I offered his

13  deposition back in July.  BCB's counsel declined to take

14  Dr. Rengifo on the dates that I offered.  He is returning at

15  the end of August.  This is all stuff that was reported to

16  counsel months ago, our vacation schedules.  This is no

17  surprise to anyone.

18       When he returns, I can confirm whether he's available

19  on the 11th, and we will present him then.

20       I plan to take the three principals for BCB

21  witnesses, if possible, in person.  So that -- I wanted to

22  talk offline.  You know, I'm hearing different dates, but

23  there's travel involved.  And so on those dates, you know,

24  I've always been willing.  I have sent six letters asking for

25  an all-hands meeting amongst counsel to hammer out a logical

1   deposition schedule.  My request started way back at the

2   beginning of July.  So I've always been willing to have those

3   meet and confers.

4          The last witness that I'm going to address is someone

5   by the name of Huaili.  I do not control Huaili.  Never spoke

6   to Huaili.  He's not an employee of my clients.  Huaili is

7   with a separate company called JWJ Technology LLC and readily

8   available, I would assume, by subpoena.  I believe they are

9   either Texas or Georgia.  I don't have my paperwork with me,

10  but I did a Secretary of State-type search.  And so I cannot

11  produce him.  He's not connected with the MineOne Defendants.

12         And so an order requiring -- and I don't know

13  whether -- I'm assuming that was directed at me and

14  Mr. Gottlieb.  I cannot deliver that.  I have no control.

15  Again, I've never spoken to this individual.  He is not a

16  principal or an employee of my client and never was.

17         THE COURT:  And I believe, Ms. Colbath, you said it

18  was for Mr. Chong Wang?

19         MS. COLBATH:  I believe that's directed at

20  Mr. Gottlieb, not me.  Although -- excuse me -- I'm not sure.

21  I would ask -- Mr. Murphy, are you expecting me to produce

22  Chong Wang?  Again, that's someone who is not connected with

23  the MineOne Defendants.

24         MR. MURPHY:  May it please the Court.

25         THE COURT:  Go ahead, Mr. Murphy.

1          MR. MURPHY:  There's a whole lot of issues there to

2   unpack, so let's address the most recent ones.

3          There are two witnesses that I believe Ms. Colbath

4   and/or Mr. Gottlieb should be producing.  They are Chong Wang

5   and Huaili Zhang.  Now, Ms. Colbath says, No, I don't control

6   those.  I shouldn't.

7          But here are the reasons why they should produce

8   those:  On Chong Wang, Chong Wang is one of MineOne's three

9   cofounders along with Jaiming Li and Erick Rengifo.

10          The SF Agreement, a key agreement in this case,

11   identifies Chong Wang as the, quote, "ultimate beneficial

12   owner," unquote, of the North Range property.  Chong Wang was

13   the CEO and executive chairman of the Defendant Bit Origin

14   until he resigned in April of 2024.  And Chong Wang was the

15   person who sent Huaili Zhang to North Range in December of

16   2022.

17          I have in my notebook here the messages between

18   Jaiming Li and Eric Rengifo where Jaiming, on December 29th of

19   2022, is telling Dr. Rengifo that Huaili represents MineOne.

20   In other words, two of the cofounders are saying that Huaili

21   represents MineOne.

22          Another one says right below it, on December 22nd, it

23   says, "I told Huaili not to push BCB so hard and we should

24   work together as a team.  He is truly angry with BCB, but he

25   said he will do his job and the benefit of MineOne and

1  Mr. Wang."

2        Chong Wang is known as the big boss in China, and he

3  is critical.  And I don't think it's accurate for Ms. Colbath

4  to say that she cannot produce one of the three cofounders of

5  her defendant client.

6        Huaili Zhang, he -- and to be candid, Ms. -- ever

7  since February 7th when Ms. Colbath told me for the first time

8  that Huaili Zhang is not an employee of MineOne, she and I

9  have gone back and forth arguing this issue.  She says, I

10  can't produce him.  I don't know him.  I haven't talked to

11  him.

12        However, MineOne, her client, in writing, says Huaili

13  Zhang is a MineOne employee.  At MineOne's direction, Huaili

14  Zhang replaced my client, BCB, as the host and operator of the

15  North Range site.  Bit Origin, Mr. Gottlieb's client, admits

16  that Huaili Zhang is one of Bit Origin's largest shareholders.

17        Eric Rengifo wrote to Jaiming Li on Sept- -- on

18  December 29th of 2022, saying Huaili represents MineOne.  And

19  Huaili Zhang is the one who literally took over for BCB as the

20  host and operator of the site.

21        These are the reasons why the Court should find that

22  MineOne and/or Bit Origin have the obligation to produce those

23  two men for their depositions.  It's no answer for me to say

24  that I've got to go through the Hague Convention and try to

25  find -- and find them.  That would never happen.  If you've

1    ever done a Hague Convention kind of thing, Your Honor, it

2    takes months and months.  It's never going to happen.

3            Ms. Colbath offers that to me knowing that I could

4    never get that done before the trial.  So that -- that's the

5    most recent thing.

6            The other thing is that this -- the idea that last

7    night MineOne puts out its list to me of 20 people that it

8    wants to depose and does not suggest even a date for any of

9    those people is over the top.

10           And I don't think Ms. Colbath and I and Mr. Gottlieb

11   will ever agree on the notion that they can take all of those

12   19 or 20 depositions before the discovery cut-off.  We will

13   just -- we just will respectfully disagree.

14           And I don't know if that's an issue for Your Honor to

15   later decide, but it's big.  It's out there.  It's on the

16   table.  It's the elephant in the living room, and it's not

17   going to be resolved through the agreement of counsel, I'm

18   afraid.

19           THE COURT:  All right.  Thank you, Mr. Murphy.

20           Mr. Gottlieb, I'm going to let you --

21           MS. COLBATH:  May I be heard?

22           THE COURT:  Hang on.  Hang on, Ms. Colbath.

23           I'm going to let Mr. Gottlieb address the Huaili and

24   Wang individuals and whether or not Bit Origin can produce

25   those people.

 1          MR. GOTTLIEB:  I'm under the impression that we

 2    cannot.  That's what I've been told, that we have no

 3    connection with these people anymore.

 4          The fact that -- I know Mr. Wang for certain we have

 5    no control over.  We've tried.  We couldn't get any access to

 6    his, you know, phone records or to get his communications.

 7    He -- he left the company, I think, a while back and -- in

 8    April or something like that before -- right before I got

 9    involved in the litigation.

10          With respect to Mr. Huaili being a shareholder, that

11    may be true.  Being a shareholder doesn't mean we have control

12    over him.

13          It's in our best interest to produce these people.  I

14    think that, you know, we want to produce them if we have the

15    ability to do it.  Otherwise, it could prejudice our cases.

16    So I don't know why we wouldn't want to produce them if we

17    can.

18          I don't think we're trying to -- we're not trying to

19    make things more difficult for Mr. Murphy.  I know he thinks

20    that we are.  We're really not.

21          By the way, to come back to what Ms. Colbath said, I

22    am willing to allow depositions to go forward without me being

23    there on -- the depositions that she wants to conduct on the

24    11th -- or the 9th, 10th, the 11th of September.  So I don't

25    have to hold up those dates.  If Ms. Colbath wants to use

1    those to depose plaintiff's witnesses, I have no problem with

2    that, just to come back to that.

3            But I don't know what to do with Mr. Huaili or

4    Mr. Wang.  I really don't, Pat.  I mean, with all due respect,

5    it's not as easy as you think it is because you claim it is.

6            THE COURT:  Okay.  Ms. Colbath, I'll let you be

7    heard, as well.

8            MS. COLBATH:  So on Huaili, I have furnished BCB's

9    counsel with a copy of the contract between MineOne and JWJ.

10   BCB's counsel has copies of the invoices that were paid by

11   various vendors.  JWJ is just like all of the other vendors

12   that were on the site.  Shermco, CEGEN, Black Hills, these

13   were all vendors that participated in the construction.

14   Because my client contracted and had dealings with these

15   individuals doesn't mean I can produce witnesses from all of

16   them.  And he has the contract with JWJ.

17           Again, I had proposed 9/11 for Dr. Rengifo.  I will

18   talk offline with all counsel about appropriate dates for BCB

19   witnesses because I believe other counsel will want to attend

20   those.  And, again, I would like to try to schedule those for

21   in-person.

22           My list of 20 witnesses was provided back in July.  I

23   sent a letter to all counsel listing the witnesses.  This

24   is -- again, I started this process a long time ago and tried

25   to engage all counsel.  It didn't happen, and then there was,

1   you know, a couple of weeks where we did devote time to

2   preparing for a mediation, and then some of us spent a good

3   portion of a week out in Cheyenne trying to resolve things.

4        But my list did not arrive last night.  That was a

5   list with maybe some minor changes that was provided back in

6   the beginning of July, imploring all counsel to get together

7   on a Zoom to hammer out something logical.

8        I have local counsel.  I have colleagues.  We

9   anticipate -- not all -- not all these depositions -- and I

10  forget if our communication last night estimated, but some of

11  the witnesses are an hour or so.  Some of them could be

12  obviated if Mr. -- BCB's counsel will authenticate all

13  documents provided by third parties.

14       That, you know, is one of the issues.  I don't want

15  to show up in January and suddenly have to issue a number of

16  trial subpoenas to folks just to come in and authenticate a

17  document.  If there could be some initial agreements on kind

18  of global issues like that, depositions would go much quicker.

19       But, again, a lot of them are -- and there was a

20  version of what we sent last night.  I just -- it got sent so

21  late I don't recall.  We had said something like don't

22  anticipate it to exceed two hours.

23       So while there are numerous people, if you add up,

24  there's plenty of time between September 5th and the 17th to

25  complete everything.

1          THE COURT:  And, Ms. Colbath, I'm assuming your list

2   is your, like, ultimate list.  So some of that could be

3   affected by the ruling on some of the motions that are going

4   to be heard?

5          MS. COLBATH:  Correct.

6          THE COURT:  Okay.

7          MS. COLBATH:  Correct.  And there's -- one

8   individual, for instance, James Quid, who is the managing

9   agent of, you know, CMV Global and then Bayview.  So that's

10  one deposition that's -- it looks like it's three, but it's

11  really one, and it's not going to exceed two hours.

12          So, again, that's a prime example of something that

13  is not a seven-hour, full day, you know, all hands on deck.  I

14  think some counsel probably won't even attend that deposition.

15          THE COURT:  And so I know Mr. Murphy had asked about

16  doing Dr. Rengifo on the 5th.  Do you know, is that doable for

17  you and Dr. Rengifo?

18          MS. COLBATH:  So he is away.  And he has spent an

19  enormous amount of time on this case, so I really have tried

20  not to contact him while he's away.  Again, I had offered

21  dates for Mr. Rengifo's deposition that went by the wayside.

22  Certainly, my preference is -- I come back on the 4th.  I much

23  prefer to have a key witness, my client, on the 11th, and it

24  seems like everyone's available on the 11th.

25          That, I know, would work much better for him and

1    certainly with my schedule.  I'm coming back from being off

2    grid.

3              THE COURT:  And then Dr. Li, we just don't -- you're

4    not opposed to producing him --

5              MS. COLBATH:  Absolutely not.

6              THE COURT:  -- we just don't know when?

7              All right.  So here's what I'm going to do today just

8    in terms of these.  It sounds like there's still room for you

9    all to meet and hopefully confer on a lot of these things.  In

10   terms of Mr. Wang and Huaili, I am going to order that MineOne

11   and Bit Origin provide to the plaintiff their last-known

12   contact information for each of these individuals and, for

13   Mr. Wang, the -- I'm trying to figure out how to word this.

14   The general circumstances -- if he's no longer affiliated with

15   MineOne or Bit Origin, the general circumstances of when the

16   relationship ended and under what circumstances.

17             And if there's any kind of continuing relationship,

18   whether it be officially employed or board member or things

19   like that, provide that to plaintiff.  And that way --

20   Mr. Murphy, I won't preclude you from coming to the Court

21   again with an argument of why the defendants should produce

22   those individuals, but perhaps if you have some more

23   information, that will be useful to you in figuring that out.

24             Can we -- what's today?  I don't know.  Mr. Gottlieb,

25   how much time do you think you would need to provide that

1  information?

2       MR. GOTTLIEB:  I think we can probably get that

3  information relatively quickly.  I have to just speak with my

4  client.  Probably by Monday.

5       THE COURT:  And, Ms. Colbath, can you provide that by

6  Monday on behalf of your client?

7       MS. COLBATH:  Yes.

8       THE COURT:  All right.  Provide that to Mr. Murphy.

9  And then, Mr. Murphy, like I said, you're not precluded from

10 bringing that issue back to the Court.

11      I know, Mr. Murphy, you want me to order those

12 depositions on those days.  I'm not going to.  But it sounds

13 like there's still room for you all to meet and confer and try

14 to agree on some dates for them, as well.

15      So I don't know that I helped out a lot with depos

16 today, but I feel like you guys are talking, and there's still

17 room to agree.  I don't know how you're going to avoid asking

18 to change some deadlines, but I'll leave that to y'all.  I

19 don't have to decide that.

20      MR. GOTTLIEB:  Your Honor, while we're on that topic,

21 do you have any -- any advice for us on whether -- on when we

22 should do this?  You know, because it seems like it's going to

23 happen at some point in time.

24      THE COURT:  I would -- sooner the better, I would

25 think.  And particularly if you want to try to not move the

1    trial date, I would say bringing that up with Judge Johnson as

2    soon as possible.  Maybe he'll be more able to move some

3    things around for you all if you do it sooner rather than

4    later.

5              MR. GOTTLIEB:  Okay.

6              MR. MURPHY:  Just so we all know, the plaintiff is

7    totally opposed to that.  So it should probably be in the form

8    of some motion, I think, Marc.

9              THE COURT:  Yes.

10             MR. MURPHY:  I think you understood that.

11             MR. GOTTLIEB:  Oh, I would certainly represent to the

12   Court in anything I did that you were opposed to it, Pat.  I

13   wouldn't put you in a weird position.  I don't know why you're

14   so opposed to it, but I'll leave that to you.

15             MR. MURPHY:  I can tell you all the reasons, but I

16   don't know that the Judge wants to hear them today.

17             THE COURT:  I don't.  It's not my problem, which I'm

18   glad about.  So we'll let you take up all that with Judge

19   Johnson, and I know he'll carefully consider everybody's

20   positions on that.

21             I don't know -- Pat, you had a few more things in

22   your letter.  I don't know if you still feel like you want to

23   address some of these.  I'm not sure if we're still having an

24   issue with the spoliation-of-evidence issue.

25             MR. MURPHY:  I'm not having any issue with it.  Let's

1    ask Ms. Colbath if she has any problem with it.

2          MS. COLBATH:  Yeah.  I would say that the website

3    that was reconstituted does not contain everything that was on

4    there before.  There are a lot of very, very provocative

5    entries on the website.  I'll just give one example, and that

6    is, at the outset when BCB was formed, it put biographies of

7    some of its members on the website touting extensively their

8    blockchain and Bitcoin and cryptocurrency experience, which,

9    obviously, we believe went way, way overboard.  That has now

10   been deleted from the website.

11         So I -- I would ask -- I mean, look, we're analyzing,

12   we're trying to avoid making motions, especially this far away

13   from trial.  I'm really not someone who every week files a new

14   motion.  I think you can see from the docket.

15         However, we would -- I had sent a very detailed

16   letter to BCB's counsel about what I needed in order to

17   satisfy -- I mean, I can see that it's not the same, that they

18   have manipulated and not put everything back up.

19         And so I'm happy to have, offline, when I discuss

20   depositions with BCB's counsel, but I would like an order that

21   they put their complete website back up or explain why they

22   are not doing so and when they -- when they plan to.

23         That was a treasure trove, and I could -- I could

24   have -- this is a hotly contested case.  I think you can see,

25   every other week, there's some type of sanctions motion or

```
 1   something against me.  For me to have copied the website would
 2   have been a copyright infringement, and so I did not do that.
 3   But I -- you know, we checked, and -- and I had printed a few
 4   things.
 5         The website was an obligation of BCB to maintain,
 6   especially since, if you ever looked at it, it's just -- it's
 7   basically an anti-MineOne Defendant's website.  And so there
 8   should be a direction that they explain why the website has
 9   been manipulated and altered.  They should furnish us with a
10   copy of the website as it stood before it was taken down.
11         THE COURT:  All right.  I'm going to -- I think
12   that's appropriate deposition topics for the BCB witnesses.
13   If you wish to go into that with them, Ms. Colbath, I think
14   that's appropriate.  And along with that, if you -- if there
15   are documents they can produce relating to the former website,
16   they should produce those, and that's a legitimate topic.
17         In terms of --
18         MS. COLBATH:  I would like to have --
19         THE COURT:  I was going to say in terms of whether or
20   not there's been intentional spoliation, I think if you gain
21   more information on the topic, that's not precluded at this
22   point.
23         MS. COLBATH:  Okay.  I mean, I prefer to have
24   documents before I take depositions, and that should have
25   never been removed to begin with.  And so --
```

1              THE COURT:  Have you done --

2              MS. COLBATH:  -- I would ask --

3              THE COURT:  -- a request for production of documents

4    related to that?

5              MS. COLBATH:  Correct.

6              THE COURT:  You have done a request for that?

7              MS. COLBATH:  They -- I have -- I have -- yes.  We

8    asked for documents relating to all the negative, defamatory,

9    disparaging statements.  The website was filled with all of

10   that material.  And it wasn't incumbent -- again, you know,

11   that was out there, and it doesn't -- it doesn't get the

12   benefit of the litigation privilege.  When BCB puts false

13   statements into its pleadings, I'm kind of, like, handcuffed.

14             But the longer -- and we were monitoring.  The longer

15   that that website was out there with all of the defamatory and

16   disparaging comments, the increased damage to my client.

17             Now that website has been kind of cherry-picked.  And

18   Mr. Murphy represented that, no, it was identical.  I've given

19   a prime example of how it's not.  And I think it's incumbent

20   upon him to either give us a copy of the website as it stood

21   before they removed it or to recreate it.

22             MR. MURPHY:  This is unbelievable.  It went down for

23   three days because it -- the credit card wasn't paid, and it

24   was put back up.  All of these things that Ms. Colbath are

25   saying are just unsubstantiated, and yet she touts them as

1    being the truth.

2         There's -- there should be no order.  I explained

3    everything in my letter to Your Honor on August the 16th.

4    It's that innocent of a thing, and she's trying to make it

5    some kind of a federal crime.

6         I'm happy to have it addressed in the depositions,

7    but there should not be -- and there is no request for

8    production of all these things she says she's requested.  She

9    just did that in her July 25th conferral letter.  That's all

10   it was.  It's not in any kind of formal request.

11        So if the Court was even entertaining any -- any

12   order on this, I would definitely want to brief this ahead of

13   time.  But if the Court is not thinking of issuing an order,

14   then let her talk about it with Neil Phippen and my son,

15   Michael Murphy, in their depositions.

16        THE COURT:  All right.  At this point I'm not going

17   to order any production of those documents.  But, as I said, I

18   think it's an appropriate topic for a discussion at

19   depositions, and you're not precluded from raising the issue

20   in the future.

21        MR. MURPHY:  I think the very last thing I had, Judge

22   Hambrick, was this -- really, I wanted to offer you the last

23   follow-up item on the Chong Wang and Huaili Zhang depositions.

24   I want to offer you that I can send the Court the documentary

25   evidence that they -- that they -- Huaili Zhang was an

1    employee of MineOne Wyoming.  I have the evidence, but I don't

2    know -- maybe you've already kind of ruled on that and are not

3    ready to look at that at this point.

4            THE COURT:  I think that -- that's correct,

5    Mr. Murphy.

6            MR. MURPHY:  I got Your Honor's drift on that.

7            The last thing that I really got for us today is

8    the -- the request in my letter that I wrote to you that

9    BCB -- strike that -- that MineOne Wyoming Data Center be

10   ordered to reproduce the documents it earlier produced in the

11   Relativity format at their cost just like BCB had to go to the

12   expense and cost of hiring a Relativity vendor to then go and

13   put all of its documents into Relativity like Ms. Colbath was

14   adamant that we do.

15           I don't think that MineOne is opposed to doing it,

16   but Mr. Inman wants us to share the cost or at least talk

17   about sharing the cost.  I don't feel that's appropriate.  I

18   think this is a situation where BCB had to, at its expense,

19   put -- go hire a Relativity vendor and do that for MineOne.

20   And MineOne so easily has the capacity to do it.  They should

21   have to do it at their cost and provide BCB with their

22   documents via Relativity.

23           That's the last issue.

24           THE COURT:  Ms. Colbath, do you want to address that

25   issue?

1          MS. COLBATH:  Yes, Your Honor.

2          Okay.  So -- so when MineOne served its initial

3     document request, it set forth in the document request how it

4     wanted the documents produced.  Mr. Murphy did not object to

5     that.  And what he did was he produced PDFs rather than in the

6     format that we requested, and he never objected.

7          So we pressed him and said, You didn't object.  We

8     would like the documents produced in the format that we

9     requested.

10         Okay.  Now, back in October of 2023 when my client

11    did its first document production, our initial disclosures to

12    Mr. Murphy, Mr. Murphy wrote me an October 18, 2023, letter,

13    and I just want to read a paragraph from it, the very first

14    substantive paragraph of the letter.

15         It's in a paragraph entitled "Please submit documents

16    in PDF format, not image files."

17              "In your September 15th initial disclosures, you

18              produced a folder of 130 image files which are

19              individual pages of contracts, agreements, and other

20              documents in JPEG and TIFF formats.  This is

21              unacceptable.  You should have produced your

22              documents as PDF files like the litigation world

23              does.

24              "And, going forward, we request that you submit

25              documents to us in PDF format and submit emails where

1          plaintiff is not a party to the email in EML format.

2          Rule 34(d) of the Federal Rules of Civil Procedure

3          allow a party such as BCB to 'specify the form or

4          forms in which electronically stored information is

5          to be produced,' and we are doing that here."

6      Then he goes on.  So Mr. Murphy asked my firm -- we

7  initially did a production in TIFF format.  He rejected it,

8  said, Going forward, you are to produce in PDF format

9  explicitly.  We have complied with Mr. Murphy's request to

10 produce in PDF format, and we did that for over 40,000 records

11 just as he demanded.

12     Now he wants another format.  And we have said we'll

13 undertake it, but we did exactly what you demanded.  And it's

14 not incumbent upon us to submit 40,000, 50,000 pages in

15 multiple formats as he decides he wants it in something

16 different.  We did exactly what he wanted.

17     And so I have said to him, again, let's meet and

18 confer.  Let's figure out if this can be done, what -- the

19 cost associated with it.  But my team, we're preparing for

20 depositions, and we complied with his request.  And so now

21 that he wants it a totally different way, you know, there's a

22 burden to us.  And I'm just asking him to share in that.

23     THE COURT:  Ms. Colbath, do you have an estimate of

24 time or dollars that that would require?

25     MS. COLBATH:  I don't because -- because my

1   technology person who does this has been on vacation.  I don't

2   think we're talking that it would exceed like $10,000.  I

3   think that the gentleman who would be doing this, I think we

4   probably bill out at like -- I don't know -- 3- or $400.

5           And so, I mean, it's time that he has to spend in

6   order to do this when we've produced the documents in the

7   exact format that the plaintiff requested.

8           THE COURT:  Thank you.

9           MS. COLBATH:  I'm happy -- I wrote to Mr. Murphy,

10  said, Let's talk about it.  I'm happy to get the time involved

11  to undertake this and meet and confer with him on it.

12          THE COURT:  All right.  Mr. Murphy, is there anything

13  else you wanted to say on that topic?

14          MR. MURPHY:  No, other than the fact they're willing

15  to do it.  They just want my client to pay for it.  And it's

16  not and it should never be anywhere near $10,000 to do it.

17  They just want BCB to bear that cost.  That's all.

18          THE COURT:  Had you asked for the PDF format

19  previously?

20          MR. MURPHY:  I did previously as Paula correctly

21  wrote to you back in October of last year, Your Honor.  And

22  then in this July, I think it was around July 10th, I sent

23  Request for Production No. 40 to the MineOne Defendants,

24  asking that they reproduce all of those documents in the

25  Relativity format, the one that they have demanded that we do.

1         And they say -- this is their response from Alex

2    Inman.  He says, "On the basis of the foregoing, defendants

3              will not produce documents responsive to this

4              request.  Defendants are willing to confer with

5              plaintiff regarding a cost-sharing agreement in which

6              the documents are reproduced at plaintiff's expense."

7         When they say that they're willing to talk about a

8    cost-sharing agreement, what they're really saying is they

9    won't give it to us until BCB pays for it.  That's my problem.

10        I've already paid for it once with my own client

11   having to do it for Ms. Colbath, and I just think they should

12   have to do it for us.

13        MR. GOTTLIEB:  But, Patrick, can I just weigh in on

14   it?  I mean, is it really fair for you to have asked for it

15   and demanded it to be a certain way, and then 40,000 pages of

16   materials are produced, when it would have been a lot cheaper

17   and a lot more efficient if you would have asked for it in the

18   original way you wanted it instead of then coming back months

19   and months later and asking for another 40,000 pages just to

20   get even with Paula for making you do it in one way when

21   there's really no benefit to it.

22        MR. MURPHY:  Marc, I'm not getting even.  If I would

23   have appreciated that a year ago, I would have done it.

24        THE COURT:  All right.  Here's what I'm going to do:

25   I don't believe under the rules that the defendants are

1   required to produce documents in multiple formats, so I'm not

2   going to order they produce it in Relativity.  I don't believe

3   the rule requires them to do it in more than one format.

4          And, Mr. Murphy, you got your original format.  I get

5   now why you think a different one would be -- may be easier or

6   better, but I'm not going to require them to produce it all

7   again.

8          I will encourage you to discuss with Ms. Colbath if

9   there is some sort of agreement that can be reached to do

10  that, but I'm not -- I'm going to not order them.  I don't

11  think that's required under the rules.

12         So I think that covers the topics that were left.

13         Let me see what time it is.

14         Mr. Murphy, is there anything else you think we need

15  to address today?

16         MR. MURPHY:  I don't think so, Judge Hambrick.

17         THE COURT:  Ms. Colbath?

18         MS. COLBATH:  No, Your Honor.  Thank you.

19         THE COURT:  Mr. Gottlieb?

20         MR. GOTTLIEB:  No, Your Honor.

21         THE COURT:  Anybody else?  I don't want to ignore

22  anybody.  Anybody else want to weigh in on any topics?

23         All right.  Well, this was not that long and not that

24  painful.  I appreciate, I really do, all the efforts

25  everybody's made in this case and your ability to still work

1   together even though you're fighting hard.  I know everybody's

2   making an effort, and the Court does appreciate it.

3           I guess that will take care of it.  We'll try to -- I

4   don't know if there's a whole lot of substance for orders

5   today, but we'll produce an order on today's discovery

6   conference.  And I hope you can all work out some of these

7   deposition issues, and we'll leave the deadline issue to Judge

8   Johnson.

9           So -- all right.  Thanks, everybody.  Have a good

10  afternoon, and have a good weekend.

11          (Proceedings concluded at 12:17 p.m., August 22, 2024.)

12                          * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

23-CV-79

41

1                          C E R T I F I C A T E

2

3          I, MEGAN E. STRAWN, Federal Official Court Reporter

4    for the United States District Court for the District of

5    Wyoming, a Registered Professional Reporter and Certified

6    Realtime Reporter, do hereby certify that I reported by

7    machine shorthand the proceedings contained herein on the

8    aforementioned subject on the date herein set forth, and that

9    the foregoing 40 pages constitute a full, true, and correct

10   transcript.

11          Dated this 26th day of August 2024.

12

13

14

15          _____/s/ Megan E. Strawn_____

16                   MEGAN E. STRAWN
                Registered Professional Reporter
17                 Certified Realtime Reporter

18

19

20

21

22

23

24

25