# EXHIBIT A



WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick J. Murphy
Physical: 159 N. Wolcott St. Suite 400
Casper, WY 82601
Phone: 307-265-0700
Mailing: PO Box 10700
Casper, WY 82602
pmurphy@wpdn.net

August 16, 2024

**VIA E-MAIL ONLY**

Honorable Stephanie Hambrick
United States Magistrate Judge
Yellowstone Justice Center
105 Albright Avenue
Mammoth, WY 82190

Re:    BCB Cheyenne LLC v. MineOne et al; Civil No. 23-CV-79-ABJ; Topics
       for the 8/19/24 Informal Discovery Conference

Dear Judge Hambrick:

I write to respond to MineOne's recent letters about issues for our two-hour informal discovery conference on Monday, August 19, 2024. What follows are: (1) the most relevant and timely issues BCB wants the Court to address, including Defendants' refusal to schedule depositions with the key personnel listed below, and (2) BCB's position and rebuttal to the many issues raised by the MineOne Defendants in their multiple letters to Your Honor.

## I.    THE ISSUES BCB NEEDS THE COURT TO ADDRESS

**A.    Defendants Are Blocking and Refusing to Schedule Depositions for Their Key Personnel: Chong Wang, Jiaming Li, Huaili Zhang, Micree Zhan, Ran Chang, Nuolin Li.**

Defendants are owned and operated by Chinese nationals. This is undisputed. These individuals – Chong Wang, Jiaming Li, Huaili Zhang (MineOne and Bit Origin), and Micree Zhan, Ran Chang, and Nuolin Li (Bitmain) – are each highly relevant to BCB's claims and possess unique knowledge and information critical to this case. But, instead of making their clients and key executives and decision makers available for deposition, Defendants have given a litany of excuses to deny and block BCB from deposing these individuals over Zoom. Instead of providing these individuals' WeChat communications, they have refused to produce them (*see* BCB's 7/10/24 *First Motion for Sanctions*).

Never in my 44-year legal career, Your Honor, have I seen anything like this, where, as here, there are a group of foreign individuals critical to the facts in this case, and none of them – not one – is being made available for deposition. And, I have tried to schedule these depositions. I've written multiple conferral letters (with thoughtful deposition schedules). **"Exhibit 1"** shows the most recent deposition scheduling correspondence between the Parties. I've also tried to schedule meet and confer conference calls to schedule depositions, and all I get is excuses, delay and blocking tactics, and various objections about these individuals being "in China" and how they can't be deposed "because of Chinese laws" or how these individuals are not relevant (when we know they are).

But, this case is filed in the United States.

And now, Defendants are claiming they want to extend discovery. Extend discovery? After sixteen months of this? As you'll see below, Defendants don't want to conduct actual meaningful discovery, they want to overwhelm BCB, harass BCB, block BCB's depositions while they try to extend discovery to do more of *their own* depositions, and, ultimately, do everything they can to increase BCB's litigation costs. They know full well that by extending discovery it allows them more time to harass BCB and increase BCB's costs. The Court already extended the discovery cutoff one time, but the Defendants have not availed themselves of the opportunity to take any depositions during the extended discovery period. The Court should not further extend the September 17, 2024 discovery cutoff date. And the Court should also order that the Defendants' representatives appear, by Zoom, to give BCB their deposition testimony.

What follows are the only depositions BCB would like to take (and all easily before the September 17, 2024 discovery cutoff).

- **Chong Wang, MBA** (MineOne, Terra, Bit Origin) **August 23, 2024** via Zoom
- **Jiaming Li, PhD** (MineOne, Terra Crypto, Bit Origin) **August 30, 2024** via Zoom
- **Erick Rengifo, PhD** (MineOne, Terra, Bit Origin) **September  10, 2024** via Zoom
- **Huaili Zhang** (MineOne, Bit Origin) **September  13, 2024** via Zoom
- **Xiaping Cao, PhD** (Bit Origin, Chinese Government Advisor) **September 13, 2024** via Zoom

- **Ran Chang** (Bitmain) **August 28, 2024** via Zoom
- **Micree Zhan** (Bitmain) **August 28, 2024** via Zoom
- **Nuolin Lin** (Bitmain) **September 11, 2024** via Zoom

**B.      The MineOne Defendants Should Produce Their Documents to BCB in the Requested Relativity Format at Their Cost, Not BCB's Cost.**

Last winter, MineOne demanded that BCB produce all its documents to MineOne "in black and white, single-page TIFF or color JPEG format, as applicable, and in native format.  All corresponding metadata shall be produced in a load file compatible with Relativity."  *See* Paula Colbath's 3/20/24 letter to Patrick Murphy.  BCB did not have the capability of producing its 30,000+ pages in the Relativity format.  But Ms. Colbath kept demanding that BCB re-produce all its document production in this Relativity format.  So BCB went to the expense of licensing Relativity and then provided its documents to MineOne in the requested Relativity format, all at BCB's expense.

Then, on July 9, 2024, BCB sent MineOne Request for Production No. 40.  What follows is BCB's request and MineOne's response.  What's good for the goose is good for the gander.  BCB seeks the Court's order requiring MineOne to reproduce its documents to BCB at MineOne's cost (just as MineOne required BCB to reproduce all its thousands of pages to MineOne at BCB's cost).

**REQUEST NO. 40:**  For all production You have already produced (specifically, all items in VOL001-VOL016), please reproduce those according to the instructions in Paragraph 5 of this Second Set of Request for Production (which is how You required Plaintiff BCB to perform BCB's production).

**RESPONSE NO. 40:**  Defendant objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it seeks documents that are already in Plaintiff's possession, custody, or control, and to the extent that Defendant's prior document productions comport with the requested production format in Plaintiff's initial request.

On the basis of the foregoing, Defendants will not produce documents responsive to this Request.  Defendants are willing to confer with Plaintiff regarding a cost-sharing agreement in which the documents are ***re-produced at Plaintiff's expense***.

/s/ Alex Inman
Counsel for MineOne

WP
L&N
WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

(emphasis added).

BCB asks for no favor.  Instead, BCB asks for the same treatment that MineOne afforded BCB.  The Court should compel MineOne to reproduce all of its document production to BCB in the requested Relativity format <u>at MineOne's cost</u>.

**C.    The Court Should Reject the MineOne Defendants' Misguided Argument That BCB Has Deleted, or Spoliated, Any Evidence with Its Webpage.**

MineOne contends, in Ms. Colbath's August 7, 2024 conferral letter, that "it is BCB that has spoliated evidence (as detailed in [Ms. Colbath's] July 25, letter.)."  Attached as **"Exhibit 2"** is Ms. Colbath's July 25 letter.  Attached as **"Exhibit 3"** is Patrick Murphy's July 30 reply letter.  My reply letter explains how BCB did nothing wrong and spoliated no evidence.  This should be a non-issue after Mr. Murphy's July 30 conferral response, but MineOne still raises it in Ms. Colbath's August 7 letter.

In her July 25 "Spoliation of Evidence" letter, Ms. Colbath accuses BCB of the alleged "spoliation of crucial evidence, namely the deletion of its website from the internet, including all contents and webpage thereof."  *See* **"Exhibit 2,"** p. 1.  She alleges there was some "permanent alteration of this evidence," and says "the deletion of this crucial evidence is intentional, willful and in bad faith."  *Id.*  My goodness.  Then she makes unreasonable demands on BCB and its counsel, including the production of a vendor affidavit.  *Id.*  And Ms. Colbath demanded BCB comply with all her unreasonable demands just four days after her July 25 letter.

In my reply letter, I explained to Ms. Colbath as follows:

BCB's website was temporarily deactivated on July 23, 2024 (at 2:13am MDT) due to an issue with the credit card BCB had on file with its website provider (SquareSpace).  SquareSpace was unable to charge this credit card and sent several notification e-mails to Neil Phippen that BCB's website would be deactivated (*i.e.*, taken offline, but not deleted) unless the credit card on file was updated (*see* "Exhibit 1").  These e-mails sent to Mr. Phippen did not go to Mr. Phippen's e-mail inbox; they were flagged as "promotional e-mail" and placed in a separate area of Mr. Phippen's e-mail client.  As such, Mr. Phippen did not see them (and was unaware he needed to update the credit card on file), and eventually SquareSpace deactivated BCB's website.  As soon as Mr. Phippen was made aware the website



had been deactivated (at approximately 7:24pm MDT on July 25, 2024), he updated the credit card on file with SquareSpace and reactivated BCB's website (in full, without any modifications thereto).

Contrary to your accusations, BCB did not "delete" its website (let alone do so intentionally, willfully, and in bad faith). And there were no "permanent alterations" of evidence. Rather, BCB's website was taken offline by SquareSpace due to a payment issue (which BCB was not aware of), and upon knowledge of the payment issue, BCB quickly fixed the issue so as to reactivate its website. Furthermore, BCB would not want to delete its website: it contains evidence showing work BCB did on the project, and further explains how one or more Defendants breached and/or interfered with BCB's contracts.

We will not be providing you with anything you demanded in your July 25, 2024 letter regarding the website. Everything on BCB's website is available to you now just as it was before BCB's website was deactivated on July 23, 2024. If you are concerned BCB's website may go offline in the future, please proceed with making your own copies of the information.

*See* Patrick Murphy's 7/30/24 Reply Letter **("Exhibit 3")**.

We ask Your Honor to deny any discovery request or sanction MineOne may still want to pursue with its misguided and spiteful spoliation charge.

> **D.     BCB's Most Important Discovery Issues Against the MineOne Defendants are Already Before the Court with BCB's July 10, 2024 Motion for Sanctions.**

BCB's most important discovery issues against the MineOne Defendants are currently pending before the Court with BCB's July 10, 2024 *First Motion for Sanctions Against Defendant MineOne Wyoming Data Center, LLC* [ECF 269], MineOne's *Response* thereto [ECF 289], MineOne's *Motion to Strike the Affidavits of Michael Murphy and Emory Patterson* [ECF 309], and BCB's *Response* thereto [ECF 316]. The briefing is complete and the Court can – and should – rule on these two motions on the briefs. No further argument is presented here, and none should be allowed at the 8/19/24 informal discovery conference.

## II.    BITMAIN GEORGIA'S INSUFFICIENT PRODUCTION TO BCB AND CONTINUED WITHHOLDING OF RELEVANT DOCUMENTS

As I stated in my July 18, 2024 letter (see **"Exhibit 4"),** Bitmain Georgia's production of documents responsive to BCB's January 20, 2024 Discovery Request is wholly insufficient.

Defendant Bitmain has only produced a total of 408 pages to BCB with its discovery production. And of those 408 total pages, no less than 246 pages are duplicative.  That is, Bitmain Georgia reproduced multiple copies of several documents throughout its very limited productions. For example, in its most recent production on August 2, 2024, Bitmain produced 2 duplicative copies of the 37-page fully executed SF Agreement to BCB.

As shown in the Bitmain Production Summary (see **"Exhibit 5"**), Bitmain has provided only 4 pages of internal communications and 7 pages of communication between Bitmain and MineOne. Of all the documents produced by Bitmain, only 153 pages were unique pages and of those 153 unique pages, only 92 pages were pages that BCB did not previously have.

Bitmain was involved in discussions with MineOne since at least December 1, 2022 relating to the North Range and Campstool projects that led to the agreements between MineOne and Bitmain that interfered and replaced BCB as the contractual O&M Service Provider. Yet, Bitmain has only produced 7 pages of communications with MineOne and 4 pages of internal communications.

The ***MineOne Defendants***' July 5, 2024 WeChat communication production contains many messages with Bitmain personnel that reference the exchange of various term sheets, drafts of agreements, documents about BCB as the operations team, the internal approval of Bitmain executives (namely Micree Zhan), and other relevant information, but none of these email or WeChat communications have been produced ***by Bitmain***. Bitmain does not provide any of the highly relevant documents that it exchanged with their executives as part of the approval process to enter into agreements with MineOne.  BCB needs the Court to order Bitmain Georgia to produce all of the documents in Patrick Murphy's July 18, 2024 conferral letter to Khale Lenhardt (*see* **"Exhibit 4"**).

### III. BCB's REBUTTAL TO THE MINEONE DEFENDANTS' DISCOVERY ISSUES WITH BCB

#### A. BCB Has Furnished the Most Proper and Complete Privilege Log of All the Parties.

In MineOne's August 14 letter to Your Honor, MineOne conclusorily says, "Plaintiff failed to furnish a proper and complete privilege log." But MineOne never says how, or in what way, BCB's April 4, 2024 Privilege Log is improper or incomplete.

Rather than characterizing BCB's Privilege Log, I attach it here for the Court's review and consideration. *See* **"Exhibit 6."** It spans the period March 4, 2023 – March 28, 2024. It took nearly a week to compile. It is 107 pages. It has all the categories and information a Privilege Log should have. By contrast, MineOne's Privilege Log is only 51 pages, and contains less detail than BCB's Privilege Log.

If MineOne is serious about its *new* (8/14/24) argument that BCB's 4/4/24 Privilege Log is inadequate in any way, BCB will be prepared to address this at the 8/19/24 informal discovery conference.

#### B. Plaintiff Has Provided MineOne with All Third-Party Documents That Were Produced to BCB's counsel As a Result of BCB's Subpoenas.

In her 8/14/24 letter to Your Honor, Ms. Colbath says, "Plaintiff failed to produce to the MineOne Defendants all third-party documents that were produced as a result of Plaintiff's subpoenas."

I remember sending subpoena-produced documents to MineOne's counsel, but I asked my legal assistant to please check to be sure our office has produced to opposing counsel all documents our office has received. Ms. Trembath did that, and she discovered our office had forgotten to forward some of the produced documents to all counsel. So, Ms. Trembath forwarded the remaining subpoena documents to all counsel earlier today. So this issue should be moot now.



**C.    The Court Should Not Require BCB to Produce Documents Between March 15, 2023 (When BCB Filed Its Chancery Court Lawsuit) and May 3, 2023 (When BCB Re-Filed this Federal Court Suit). Judge Johnson Correctly Observed, at the June 26, 2024 Evidentiary Hearing, That the Parties Were at "Swords' Point" by March 15, 2023.**

In its August 14, 2023 letter to Your Honor, MineOne correctly observes that BCB has not produced documents between March 15, 2023 and May 3, 2023.  MineOne says clear language in Judge Rankin's May 20, 2024 Order [ECF 190] requires production of documents at least through the filing of this United States District Court action on May 3, 2023.  Respectfully, it was not clear, and Judge Johnson later sustained BCB's objection to admission of Dr. Jiaming Li's March 16, 2023 e-mail as an Evidentiary Hearing exhibit because, by March 15, 2023, these parties were already at "sword's point."  *See* **("Exhibit 7")** (Excerpt of the 6/26/24 Evidentiary Hearing).  Judge Johnson further explained the reason for rejecting the March 16, 2024 Jiaming Li e-mail: "This document was produced **after** the Chancery Court lawsuit was filed."  *Id.* at p. 129. (emphasis added).

Communications ***after*** these parties were at "sword's point, after the Chancery Court lawsuit was filed" are not discoverable.  They are clearly not admissible.  And nearly all of them are communications protected by the attorney client privilege and work product doctrine. *See* Patrick Murphy's August 12 conferral email to MineOne's counsel **("Exhibit 9")**.

Judge Johnson said it was clear, following MineOne's anticipatory repudiation on March 13, 2023, that the parties were adverse by March 15, 2023 when BCB filed its Chancery Court lawsuit.  As such, they were in a litigious situation by March 16, 2023 when Dr. Li sent his self-serving e-mail to promote MineOne's litigation position, not to work toward a solution. Everything written by BCB on and after March 15, 2023 was "prepared and written in anticipation of litigation.

In Judge Rankin's May 20 Order, the Court was deciding whether to compel MineOne to produce its July 27, 2023 *Loan and Financing Agreement* with AntAlpha.  Judge Rankin denied discovery of MineOne's July 27, 2023 document, observing that the Court has "broad discovery to control and place appropriate limits on discovery" [ECF 190, Page 5 of 20].  Judge Rankin observed:

The Court exercised that discretion in its Order when it did not extend discovery beyond May 3, 2023.  [ECF No. 154].  That date's significance is not that it was

WP
D&N
WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

the date Plaintiff filed suit, but what it represents. Filing suit represents that the factual basis for a plaintiff's claim has occurred and it is seeking judicial intervention. Some cases may be different, but the timeframe was determined after considering the nature of Plaintiff's allegations in the Amended Complaint.

[ECF 190, Page 5 of 20].

Exactly: filing suit represents that the factual basis for a plaintiff's claim has occurred and it is seeking judicial intervention. That date is March 15, 2023 when BCB filed suit against MineOne in the Chancery Court in Casper.

Given the fact that these parties were, as Judge Johnson said, at "sword's point" by March 16, 2023, and given Judge Johnson's evidentiary ruling that [Jiaming Li's March 16, 2023 e-mail to Michael Murphy "was produced after the [3/15/23] Chancery Court lawsuit was filed, "it seems clear that Judge Johnson would find that the Chancery Court filing date is the correct date to measure any discovery obligation, not the subsequent federal court filing date.

Noting that MineOne had already produced documents up through May 3, 2023, Judge Rankin "did not impose a cutoff of March 15, 2023 for discovery requests." *Id.* at Page 3 of 20. "The Court," Judge Rankin said, "is not inclined to extend the requests beyond the date suit was filed." *Id.* His Honor did state his "intention was to draw a line at the filing of this suit – May 3, 2023." *Id.* But Judge Rankin never ordered BCB to produce any of its documents or communications between March 15 – May 3, 2023. Now, that is for Your Honor to decide. As Judge Johnson has more recently found, the proper cutoff date for BCB's discoverable documents should be March 15, 2023, not May 3, 2023.

BCB respectfully asks that Your Honor follow Judge Johnson's guidance and find that BCB not have to provide its non-privileged documents that were generated after March 15, 2023.

**D.     The Court Should Quash the Two Subpoenas MineOne Served on Ohio Resident Dr. Bryce Fincham, and the Four Subpoenas MineOne Served, in Illinois, on CMV Global LLC, and Bayview Capital Investments LLC. These Subpoenas Seek Irrelevant Information and are Only Meant to Harass These Passive Investors and Run Up BCB's Legal Costs.**

This is *the issue* that generated the 8/19/24 informal discovery conference, Your Honor.

MineOne's counsel makes outrageous allegations against Patrick Murphy in her August 12 letter to Your Honor.  She says my conduct with respect to these subpoenas "raises serious concerns with witness tampering and interference." *Id.*  She says it "raises serious conflicts of interest between [WPDN's] representation of BCB and individual members, whose interests are clearly in conflict – given the serious allegations made against BCB." *Id.*  The gist of MineOne's new argument is that MineOne "is entitled to discovery on what money BCB raised [from its investors] and what it did with [its investment] money, since BCB is blaming the MineOne Defendants for the loss of all its money." *Id.* at p. 2.

BCB has never blamed the MineOne Defendants for the loss [or, more correctly, the return] of its $3M of investment monies to its investors.  That's a strawman argument.  Instead, BCB has sued the MineOne Defendants for loss of all of the ***profits*** BCB was contractually entitled to receive which loss was caused by MineOne's anticipatory repudiation/breach of contract.

The discovery question here is whether the Court should countenance MineOne's obtrusive subpoenas to these Ohio and Illinois investors or whether the Court should quash these six (6) subpoenas and call a halt to MineOne's harassment of these BCB investors.

Procedurally, MineOne served a document subpoena and a deposition subpoena on Dr. Bryce Fincham on August 5, 2024 [ECF 306] in Ohio.  MineOne also served document subpoenas on CMV Global LLC and Bayview Capital Investments LLC that same day.  [ECF 307, 308] in Illinois.  Dr. Fincham and CMV are investors of BCB Cheyenne LLC, but Dr. Fincham, CMV and Bayview are *passive investors only* who have (and had) ***no role*** in the management, direction or operations of BCB Cheyenne LLC.

On August 9, 2024, BCB, Dr. Fincham, CMV and Bayview provided their objections to these six subpoenas to MineOne.  *See* **"Exhibit 8**.**"**

Then, on August 12, Patrick Murphy sent the first of my two conferral letters to MineOne's counsel.  *See* **"Exhibit 9**.**"**  In my August 12 conferral letter, I provided MineOne with much of the requested investor and investment information, while asking MineOne to withdraw "MineOne's six vexatious subpoenas." *Id.* It is important that the Court read all of the information, and documents, Mr. Murphy voluntarily provided with his August 12 conferral letter. *Id.*

That same day, after BCB went to the time and expense of retaining Ohio and Illinois counsel to object to these six subpoenas, Patrick Murphy also sent MineOne's counsel a draft

Case 1:23-cv-00079-ABJ    Document 336-1    Filed 09/04/24    Page 12 of 24

WP
D&
N
WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

Motion to Quash it was preparing to file in the Southern District of Ohio.  *See* **"Exhibit 10"**).  In the CONCLUSION of that draft Motion to Quash, BCB correctly stated as follows:

> MineOne's subpoena for documents and deposition testimony from passive BCB Investor Dr. Bryce Fincham constitutes an undue burden on a non-party whose only involvement in this case was investing money.  He had no involvement in the day-to-day development or operations of BCB.  Dr. Fincham first invested only days before BCB filed its Wyoming Federal Court lawsuit against MineOne.  MineOne has served four similar subpoenas against two other passive investors (in Illinois) as part of MineOne's strategy to run up litigation costs and harass third-parties unrelated to the issues actually raised in this litigation.  For the foregoing reasons, both subpoenas directed at Dr. Fincham should be quashed.

*Id.*

Thereafter, Ms. Colbath and I stipulated that any and all issues relating to MineOne's six subpoenas to Dr. Bryce Fincham, CMV Global, LLC, and Bayview Capital Investments, LLC should be handled and resolved by our Wyoming federal court – not the Ohio and Illinois federal courts.  *See* **"Exhibit 11."**

> **(i)     *These six (6) Subpoenas Should Be Quashed Because the Information Can Be Obtained from a More Convenient, Less Expensive, and Less Burdensome Source – BCB.***

Rule 26 of the Federal Rules of Civil Procedure states that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably **cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive**."  Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

In quashing subpoenas directed at five non-parties who provided service to Granite Peak Fabrication, Judge Rankin noted that:

> It is undisputed that at least portions of the documents requested in the Rule 45 subpoenas seek the same or substantially similar information to that requested from Defendant via Plaintiff's discovery requests.  This supports the notion that the information can be obtained from a more convenient, less expensive, and less

WP
L&N

WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

burdensome source. Additionally, as stated above, Plaintiff's Rule 45 subpoenas are overbroad and unduly burdensome, and Defendant may have already produced some of the pertinent information in response to Plaintiff's discovery requests.

*McKinney v. Granite Peak Fabrication, LLC*, No. 19-CV-266-J, 2021 WL 7252981, at *5 (D. Wyo. Aug. 24, 2021).

Even if these six Ohio and Illinois deposition and records subpoenas sought relevant information, which they do not, the Court should conclude that the requested information is best obtained from Plaintiff BCB. Consequently, the Court should find that Dr. Fincham (Ohio) and James Quid (Illinois) are not required to produce any of the subpoenaed documents or give their depositions.

> *(ii)    These Six (6) Subpoenas Should Also Be Quashed Because They Seek Facially Irrelevant Information That Does Not Prove, or Tend to Prove, MineOne's Counterclaim for Alter Ego Liability Against BCB's Three Managing Members, Michael Murphy, Neil Phippen and Emory Patterson.*

Without citing any authority, MineOne argues that these passive investors' correspondence and 2022 financial investment in BCB Cheyenne LLC is somehow relevant to MineOne's Counterclaim for *alter ego* liability against BCB's three managing members – Michael Murphy, Neil Phippen and Emory Patterson – on a piercing the corporate veil, or *alter ego* liability, theory. Respectfully, it is not.

MineOne filed a meritless and ill-supported Counterclaim for *alter ego* liability against these three BCB members [ECF 49, Page 42 of 45]. Without any supporting facts, MineOne conclusorily alleges that:

> Upon information and belief, the individual members of Plaintiff BCB influenced and governed Plaintiff BCB in such a manner that there is a unity of interest and ownership in Plaintiff BCB, and the separateness of each member has ceased to exist.

*Id.*



Nothing could be further from the truth.  At all times, BCB and its managing members were extremely careful to preserve the corporate separateness of BCB Cheyenne LLC.

Yet MineOne embarks on a discovery fishing expedition seeking:

- All documents concerning any monies, investments, contributions, transfers, loans, payments, or other consideration given by you (or by any of your agents, affiliates and/or members) to (a) Plaintiff BCB Cheyenne LLC doing business as Bison Blockchain ("BCB"), or any of BCB's affiliates or members, (b) Michael Murphy, (c) Emory Patterson, (d) Neil Phippen, € Bryce Fincham, (f) BCB Ventures LLC, (g) CMV Global, LLC, (h) James Quid, and/or (i) Bayview Capital Investments, LLC.

- Documents showing the use of the monies, investments, contributions, transfers, payments, or other consideration by the individuals and/or entities referred to in (a)-(i) above, or any of them, and how you and the individuals and/or entities referred to in (a)-(i) above recorded such monies on your such monies on your and/or their books and records, including tax returns and accounting records.

- All documents showing the use and current location of any monies, investments, contributions, transfers, loans, payments, or other consideration given to you (or to any of your agents, affiliates, and/or members) by the individuals and/or entities referred to in (a)-(i) above.

- All documents relating to the operations and business activities of BCB, Defendants MineOne Wyoming Data Center LLC, MineOne Partners LLC, and Terra Crypto Inc.

- All documents relating in any way to the North Range and/or Campstool sites in Cheyenne, Wyoming; and

- All documents relating to or mentioning any of the Defendants or this action.

[ECF 306, 307 and 308].

This is facially overbroad, irrelevant, unduly burdensome, and oppressive.  These three passive investors are analogous to shareholders in a corporation.  In litigation against the corporation, plaintiffs are not allowed to subpoena the shareholders for documents or depositions. And these Ohio and Illinois investors should not be subjected to these obtrusive subpoenas.

WP
D&N
WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

MineOne argues that it is entitled to discovery of all these investment documents because "BCB emptied its bank accounts – making itself suddenly and strategically judgment proof . . . BCB knew lawsuits were likely on the horizon . . . the MineOne Defendants are entitled to discovery regarding BCB's dissipation of assets."

No, they are not. And there was never any "dissipation of assets." As Mr. Murphy volunteered to MineOne's counsel on August 12, this is the information regarding the investments and return thereof:

- CMV Global raised $2.65M in early January 2022 (including $1M from Dr. Bryce Fincham), executed a Unit Purchase Agreement with BCB on January 16, 2022 for 2,650 Class C units, and then sent the $2.65M to BCB on January 18, 2022 (see attached PDF) in return for 2,650 Class C membership units.

- After this, CMV Global raised another $350k for investing into BCB. CMV executed a Unit Purchase Agreement with BCB on January 17, 2022 for 200 additional Class C units, and CMV executed a Unit Purchase Agreement with BCB on June 30, 2022 for an additional 150 Class C units. CMV sent the $350k for these additional 350 Class C units to BCB on July 18, 2022 (see attached PDF).

- BCB and CMV signed a Membership Interest Redemption Agreement on August 8, 2022 in which CMV redeemed 350 Class C membership units (which had originally been bought for $350k). BCB returned $350k to CMV on August 10, 2022 to redeem and assume these 350 Class C membership units.

- BCB passed a Corporate Resolution on February 7, 2023 to return the remaining $2.65M of CMV's initial capital contributions to CMV (while CMV would continue to hold its remaining 2,650 Class C membership units). BCB sent the $2.65M to CMV on February 10, 2023 (see attached PDF).

- BCB and Bryce Fincham executed a Unit Purchase Agreement for 100 Class D membership units on May 13, 2023 (with an effective date of May 1, 2023). Bryce Fincham deposited $10 to purchase these units on May 15, 2023. These units were provided to Dr. Fincham as a bonus for him investing $1M into CMV in January 2022.

- BCB and Bayview Capital Investments executed a Unit Purchase Agreement for 150 Class D membership units on May 24, 2023 (with an effective date of May 6, 2023). These units

WP
D&N
WILLIAMS, PORTER, DAY & NEVILLE P.C.
*Wyoming's Law Firm*

Patrick Murphy's Letter re: the
8/19/24 Informal Discovery Conference
Civil No. 23-CV-79

were provided to Bayview Capital Investments as a performance incentive for Bayview Capital raising $3M through CMV Global to invest in BCB.

Dr. Fincham's 100 Class D units and Bayview Capital's 150 Class D units currently represent 0.167% and 0.250% ownership interests in BCB, respectively. Neither Dr. Fincham nor Bayview Capital had (or currently have) anything to do with BCB's management or operations. Dr. Fincham and Bayview Capital are passive investors with very minimal direct ownership in BCB. Further, given that Dr. Fincham and Bayview Capital executed their respective Unit Purchase Agreements after May 3, 2023, neither Dr. Fincham nor Bayview Capital were BCB members as of the May 3, 2023 filing of BCB's Federal Court lawsuit, and as such, are outside the scope of allowable discovery.

Bryce Fincham, Bayview Capital Investments, and/or CMV Global did not provide any monies, investments, contributions, transfers, loans, payments, or other consideration to Michael Murphy, Emory Patterson, Neil Phippen, and/or BCB Ventures LLC. *See* Patrick Murphy's 8/12/24 Conferral Letter to Paula Colbath, **"Exhibit 9."**

Patrick Murphy told MineOne's counsel that she "can certainly examine BCB's Michael Murphy about any or all of the above information when you depose him – to confirm its truth." *Id.*

Factually and way of context, Bayview Capital Investment LLC ("Bayview"):
- is a private equity firm owned and operated by James Quid and Jess Quid;
- formed CMV Global, LLC ("CMV") and raised funds from accredited investors into CMV for investing into BCB Cheyenne LLC ("BCB");
- is the managing member of CMV;
- received 150 Class D units in BCB as a performance bonus for raising $3M in CMV and CMV investing that $3M into BCB; and
- is a passive member/investor in BCB, has no role or involvement in the management or operations of BCB, and its 150 Class D units in BCB currently represent a 0.25% membership interest in BCB.

Additionally, CMV Global, LLC ("CMV"):
- was formed by Bayview Capital Investments LLC ("Bayview") for the sole purpose of investing funds into BCB Cheyenne LLC ("BCB");
- is managed by Bayview;
- had $3M invested into it, which CMV then invested into BCB in return for 3,000 Class C units of BCB; and


- is a passive member/investor in BCB, has no role or involvement in the management or operations of BCB, and currently holds 2,650 Class C units of BCB, which represent a 4.417% membership interest in BCB.

These six subpoenas to passive investors Bryce Fincham, CMV Global, LLC and Bayview Capital Investments, LLC are another one of MineOne's discovery fishing expeditions meant to harass and intimidate BCB's passive investors (like MineOne earlier did with Tim Desrochers for jurisdictional purposes). BCB has not sent subpoenas to the passive investors/members of MineOne Wyoming Data Center, LLC, and MineOne should not be doing that to BCB's passive investors and/or members. Just as we would not be allowed to serve discovery subpoenas on the shareholders of a corporation in a case where the corporation is the party Plaintiff or Defendant, MineOne is not allowed to serve discovery subpoenas on the investors of BCB, a limited liability company. To do otherwise is simply lawfare and inconsistent with Rule 1 of Federal Rules of Civil Procedure ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Finally, MineOne makes the feigned argument that the six (6) subpoenas are "necessary to investigate the veracity of Michael Murphy's testimony at the Evidentiary Hearing regarding the camouflaged equity and irregular accounting practices [of MineOne]. By testifying on these subjects at the evidentiary hearing, he has put the issue front and center." *See* Paula Colbath's August 12 letter to Judge Hambrick and Carman. While MineOne's counsel can examine BCB's managing member, Michael Murphy, on relevant topics in his deposition, this is no reason to compel BCB or its investors to produce its "accounting records showing how BCB booked contributions, monies, and loans, etc. from their investors, and how they emptied their bank account of all funds." *Id.* This is the proverbial discovery fishing expedition, Your Honor, a fishing expedition the Court decries. *See Doe v. Board of Trustees of Teton County School Dist. No. 1,* 2021 WL 7209990 at *2 (deciding 9/2/21, Rankin, J) ("Although the scope of discovery is broad, parties are not allowed to engage in exploratory discovery or a 'fishing expedition' in an attempt to obtain evidence to support their claims or defenses").

Defendants have no evidence to support a piercing the corporate veil claim, and this request is a fishing expedition to search for any such evidence. In Wyoming, "it bears repeating that limited liability [against the individual members of an LLC] is the rule, and piercing is the *rare exception* to be applied *only* in cases involving *exceptional* circumstances." *Greenhunter Energy, Inc. v. Western Ecosystems Technology, Inc.*, 337 P.3d 454, 465 (Wyo. 2014) (emphasis added). Where, as here, BCB was capitalized in the amount of $3,000,000 at the time it entered into its



June 9, 2022 *DHS Agreement* with MineOne Wyoming, BCB was not under-capitalized as a matter of law.  And nowhere in their Answer or Counterclaim do Defendants allege any fraud by the BCB members with any particularity.  Piercing does not exist here.  Even if Defendants could pierce the LLC veil to impose personal liability on BCB's members, which they cannot, any discovery on any of the four piercing factors in Wyo. Stat. § 17-19-304 is premature in the underlying suit against the limited liability company, BCB, where judgment has not been entered against BCB on Defendants' Counterclaims.  The entry of judgment against the limited liability company is a predicate requirement before Defendants may later pursue any discovery, or judgment, against the LLC members on a piercing the corporate veil theory.  *See e.g., Mandeville v. Quinstar Corp.*, 109 Fed. Appx. 191, 194 (10th Cir. 2004) ("In the instant case, a trial on the issue of piercing the corporate veil would have been unnecessary absent a ruling in Mandeville's favor on the breach of contract or Title VII claim.  Thus, the decision to bifurcate advanced judicial economy.  Moreover, the issues were clearly separable.  The ability to collect a judgment by piercing the corporate veil became relevant only when Mandeville was successful on one of the underlying claims.  Because the issues before the district court were logically separable, and because bifurcation promoted judicial economy, we conclude that the district court did not abuse its discretion in bifurcating the trial"); *and see Wallop Canyon Ranch, LLC v. Goodwin*, 351 P3d 943, 960, 961 (Wyo. 2015) ("[W]e do not consider veil-piercing until the "threshold question of whether there is liability for an underlying cause of action" has been answered. *GreenHunter Energy, Inc. v. Western Ecosystems Tech., Inc.,* 2014 WY 144, ¶ 3, 337 P.3d 454, 458 (Wyo. 2014) (action to pierce LLC veil brought after judgment had been obtained and could not be satisfied because LLC had no assets . . . . In the instant case, we have affirmed the district court's decision as to underlying liability.  Because there was no breach of duty or underlying liability, the question of whether to pierce the corporate veil will not be reached.  The threshold requirement for piercing – underlying liability – has not been met.  Therefore, we do not address the question of whether to pierce the corporate veil here").

The Court should deny MineOne's misguided effort to seek any additional financial or accounting records and information from BCB (beyond the information and documents BCB voluntarily produced to MineOne in Patrick Murphy's August 12 conferral letter **("Exhibit 9")**.



E.    **BCB Has Produced the Responsive Documents Dated March 7, 2023 to March 15, 2023.**

As BCB earlier promised, it has produced the responsive documents dated March 7, 2023 to March 15, 2023.  This is no longer an issue.

F.    **MineOne's Request for BCB's Text Messages and WeChat Messages is Not Ripe for an Informal Discovery Conference; BCB Does Not Have Any Responsive WeChat Messages (whereas MineOne continues to withhold responsive WeChat messages from its key employees); BCB Will Be Producing Responsive Text Messages Before the August 19, 2024 Informal Discovery Conference.**

MineOne's demand for an informal discovery conference to discuss BCB's production of its WeChat messages and text messages is not ripe or mature.  BCB and MineOne have not yet met and conferred about this production.

MineOne states that BCB failed to produce any WeChat messages.  BCB did not produce any WeChat messages because BCB did not use WeChat to communicate about the project.  As such, BCB does not have any WeChat messages to produce.  In contrast, MineOne continues to withhold responsive WeChat messages that this Court compelled MineOne to produce by July 5, 2024 (and which are the subject of BCB's *Motion for Sanctions* against the MineOne Defendants [ECF 269]).

Regarding BCB's text messages, BCB has been diligently pulling responsive and relevant (and non-privileged) text messages and working with its Relativity vendor to load them into Relativity and prepare them for production.  This process has taken significant time and effort. *See* Patrick Murphy's July 1, 2024 conferral email to Paula Colbath (**"Exhibit 12"**).  BCB will produce any responsive, non-privileged text messages before the August 19, 2024 informal discovery conference.  Again, in contrast, MineOne has refused to provide text messages from several of its key personnel, including Co-founder and site beneficial owner Chong "Lucas" Wang and employee Huaili "Wiley" Zhang (both of whom were key figures in breaching the DHS Agreement and replacing BCB as the Phase 2 O&M Service Provider).



G.    **BCB Has Produced Documents Regarding BCB's Capitalization and Funding; MineOne's Spurious and Inflammatory Allegations Regarding BCB's Return of Capital to BCB's Investor CMV Global LLC.**

In Ms. Colbath's August 14th Letter to Your Honor, Ms. Colbath states, "Plaintiff has refused to produce any documents regarding BCB's capitalization and funding." However, BCB has produced documents regarding its capitalization and funding. BCB provided several recent bank statements as Exhibit 1 and Exhibit 2 of Michael Murphy's Bond Amount Affidavit, which showed (1) BCB's return of $3,000,000 to BCB's investor CMV Global LLC, and (2) BCB's bank account balances of $6,654.53 and $304.19. And then, on August 12, 2024, BCB again provided Ms. Colbath with Exhibit 1 of Michael Murphy's Bond Amount Affidavit, along with providing her additional bank statements showing CMV Global's $3,000,000 investment into BCB. Additionally, on August 12, 2024, BCB provided a detailed explanation of all of its financial transactions with Bryce Fincham, CMV Global, and Bayview Capital Investments. (*See* **"Exhibit 9"**, Patrick Murphy's August 12, 2024 email to Paula Colbath).

Ms. Colbath goes on to state "These documents are highly relevant to BCB's standing to maintain their suit, its representation concerning intended uses of funding, and BCB's eleventh hour effort (in February 2023) to make itself judgment-proof by returning the vast majority of its funding to investors for no discernable reason other than concern about impending litigation." Nothing is further from the truth. First, these documents are not relevant to BCB's standing to maintain its suit; and BCB's standing to maintain this suit is none of MineOne's concern. Second, regarding the alleged representations concerning the intended uses of funds, BCB does not even know what representations MineOne is referring to (as MineOne fails to provide any specific representation that BCB allegedly made). That being said, this point is irrelevant because the DHS Agreement did not require BCB to fund the project with any of BCB's investors' cash. The DHS Agreement required BCB to fund the project with its valuable Power Contract (which MineOne never paid BCB for). And third, MineOne's spurious and baseless allegation that BCB returned its funding at the eleventh hour "to make itself judgment-proof" is without any merit and is made solely to inflame the situation. BCB did not return its funding to BCB investor CMV to make BCB judgment-proof. Rather, BCB returned the funding to CMV because BCB's Operating Agreement ultimately <u>required</u> BCB to return the funding to CMV. BCB followed its corporate procedures and ensured a corporate resolution was passed to approve the return of capital pursuant to BCB's Operating Agreement. Furthermore, from a common-sense perspective, it is illogical that a party would return funds to its investors if it perceived there was upcoming litigation, as that party would want to use those funds to cover the costs of litigation.


BCB objects to providing any additional documents concerning its capitalization and funding because those documents are irrelevant to the underlying claims in the case. As indicated above, BCB was not required to provide any investor funding for the project. In contrast, MineOne's capitalization and funding is relevant because the DHS Agreement specifically required that MineOne fund the project[1]. As detailed in Michael Murphy's Amended Emergency Motion Affidavit and in Michael Murphy's Bond Amount Affidavit, "MineOne provided proof of funds before signing the DHS Agreement of just under $21.5M, however, according to MineOne's own accounting records, MineOne had only received $8,149,975 in investment capital through the end of September 2022, and MineOne had spent approximately $7.7M by that time." MineOne provided this $21.5M proof of funds to BCB and BHE to induce those parties into Agreements with MineOne, but then it turned out MineOne did not actually have those funds (as indicated in its accounting records). MineOne was underfunded, and it misrepresented this to BCB on several occasions. MineOne's underfunding contributed to several of the delays on the project. Further, MineOne's underfunding resulted in BCB having to defer BCB's payments from MineOne on several occasions so that MineOne could make payments to other vendors to keep the project moving forward. Ultimately, Ms. Colbath is projecting her clients' capital and funding issues onto BCB.

Further, Ms. Colbath's assertion that "BCB claims it is penniless and incapable of posting a real bond" is inaccurate and insulting. BCB never claimed it is penniless. BCB claimed that it could not "... afford to post a bond of more than a few thousand dollars" [ECF 242 p. 11], and BCB later provided bank statements as evidence of this (as exhibits to Michael Murphy's Bond Amount Affidavit. Having several thousand dollars is not "penniless." BCB's current financial situation is a direct result of MineOne's breaches of the DHS Agreement. Furthermore, BCB never claimed it was incapable of posting a "real bond" as Ms. Colbath erroneously asserts. As just mentioned, BCB claimed it could not "... afford to post a bond of more than a few thousand dollars" *Id*. This is another example of Ms. Colbath misrepresenting what actually occurred.

---

[1] The DHS Agreement (Section 6.1) required that MineOne provide funding for the project, including but not limited to: (a) land acquisition of the sites for the Facilities, (b) environmental and construction permits and licenses, (c) buildings, (d) interconnection for electric infrastructure and services, (e) surveying, environmental and other required testing or studies, (f) architectural and engineering design and drawings, (g) construction of the Facility or Facilities and other required infrastructure to achieve CFCO, (h) credit facilities to support the Power Supply, and (i) all required equipment to properly operate the Miners, including sufficient inventory of spare parts.



**H.    BCB Has Identified Custodians for its Document Productions; MineOne Has NOT Identified Custodians for its Document Productions. BCB Has Produced Communications Between BCB and Defendants. BCB Has Produced All of Its WhatsApp Messages.**

This is MineOne's projection on display at its finest. MineOne accuses BCB of failing to identify custodians in BCB's productions (even though BCB has identified the custodians), when MineOne is the party that has failed to identify custodians in its productions. As mentioned earlier, MineOne required that BCB spend additional time and incur additional expense to reproduce all of its documents in a way in which MineOne could ingest them into Relativity. As part of the requested Relativity .dat load file, MineOne asked BCB to identify the custodian of each document. BCB did this. In contrast, not only has MineOne refused to re-produce its documents so that BCB can ingest them into Relativity (even though MineOne required BCB to do so at significant expense), but MineOne has also not identified any custodians on thousands of documents it has provided to BCB.

For any specific communications between BCB and the MineOne Defendants that the MineOne Defendants have noted is missing from BCB's production, BCB has quickly followed up and provided those to the MineOne Defendants. Additionally, BCB has recently produced additional responsive documents and communications between BCB and the MineOne Defendants. The MineOne Defendants should now have the responsive communications and documents.

MineOne's assertion that BCB only produced 57 WhatsApp messages is another misrepresentation. In BCB's WhatsApp production, there are over 3,000 individual WhatsApp messages and at least 40 attachments. BCB has produced all of its WhatsApp messages.

**I.    MineOne's Unripe, Irrelevant and Unreasonable Request for Documents Concerning the Request for Proposal Submitted by BCB to Black Hills Energy.**

In December 2023, MineOne's RFP No. 14 sought "All documents and communications concerning the Request for Proposal submitted by BCB to Black Hills Energy." In BCB's January 31, 2024 Responses and Objections, BCB objected to this request "on the grounds that it is vague, ambiguous, overly broad, not stated with reasonable particularity, unduly burdensome, it seeks documents that are not relevant to any party's claims or defenses, is not limited temporally, and/or is not proportional to the needs of the case. Plaintiff further objects to this Request to the extent it



seeks commercially sensitive and/or confidential information." BCB did not hear from MineOne regarding BCB's objection until August 12, 2024, when Alex Inman asserted that these documents are "undeniably relevant to both the claims and counterclaims in this action" because "BCB has at various points noted the perceived 'value' of the initial agreement between BHE and BCB."

First and foremost, BCB has not had an opportunity to meet and confer on this issue with the MineOne Defendants, and as such, this issue is not ripe and should not yet be considered at an informal discovery conference. However, given that Defendants have (prematurely) raised this issue before the Court, BCB is forced to respond.

Throughout this litigation, BCB has indeed noted the value of the BCB-BHE BCIS Agreement ("Power Contract"), and BCB has rightfully done so because it was the most important and most valuable asset it provided to MineOne (which it assigned to MineOne for MineOne's promise to pay BCB for it in Phase 2 of the project – a promise which MineOne did not honor). The value of the Power Contract is based on the Power Contract itself; it is not based on the "documents and communications concerning the Request for Proposal submitted by BCB to Black Hills Energy." Those documents and communications led to months of meetings, emails, and negotiations between BCB and BHE (over which time many of the proposed ideas and terms evolved), which first culminated in the February 22, 2022 Power Contract, and later culminated in the June 9, 2022 Power Contract (which was the document that was ultimately assigned to MineOne Wyoming Data Center). Furthermore, the RFP submission, which was made in September 2021, took place six months before anyone with BCB had ever heard of MineOne, and as such, it is outside the scope of allowable discovery in this case.

MineOne's request for these documents and communications follows the pattern of many of MineOne's other requests, which is to burden BCB with having to respond to irrelevant issues and incur unnecessary costs related to matters not relevant to the claims and counterclaims in this lawsuit. It is another one of MineOne's unlawful discovery "fishing expeditions."

MineOne already has the most important and relevant documents required to show the value of what BCB provided to MineOne (and which MineOne failed to provide any consideration to BCB for), specifically, the June 9, 2022 Amended and Restated BCIS Agreement. For this reason, and the reasons above, the documents and communications concerning the Request for Proposal should not be required to be produced to MineOne.



Thank you, Judge Hambrick.

Very truly yours,



Patrick J. Murphy

cc via email:
Khale Lenhardt, Esq.
Marc Feinstein, Esq.
Meggan Hathway, Esq.
Marc Gottlieb, Esq.
Sean Larson, Esq.
Alex Inman, Esq.
Paula Colbath, Esq.
William Pao, Esq.
David Forrest, Esq.
David Iden, Esq.
Scott Murray, Esq.