Sean Larson, Wyo. Bar #7-5112
Kari Hartman, Wyo. Bar # 8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
307-634-7723
307-634-0985 (Fax)

Paula K. Colbath, Esq. (Admitted *Pro Hac Vice*)
David Forrest, Esq. (Admitted *Pro Hac Vice*)
Alex Inman, Esq. (Admitted *Pro Hac Vice*)
LOEB & LOEB, LLP
345 Park Avenue
New York, NY  10154
212-407-4905
212-407-4990 (Fax)

ATTORNEYS FOR DEFENDANTS MINEONE WYOMING DATA CENTER, LLC,
MINEONE PARTNERS LLC, AND TERRA CRYPTO INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-20, related persons and companies who control or direct some or all of the named Defendants. <br><br> Defendants. | Civil Action No. 23CV-79-ABJ |

---

## OPPOSITION TO PLAINTIFF'S 8/18/24 EMERGENCY MOTION AND 8/23/24 SUPPLEMENTAL BRIEFING FOR PROTECTIVE ORDER  AND TO QUASH MINEONE'S  AUGUST 2024 SUBPOENAS

---

## TABLE OF CONTENTS

**Page**

PROCEDURAL BACKGROUND ................................................................. 1

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT BACKGROUND ................................................................. 6

ARGUMENT ................................................................. 7

I.    Pursuant to the Court's Inherent Powers, the Court Should Strike the Footnotes in BCB's Supplemental Motion or Refuse to Consider the Footnotes ............................... 7

II.   BCB Lacks Standing to Challenge the Subpoenas ........................................ 8

III.  To the Extent BCB's Counsel Will Argue that His Law Firm Also Represents Each of the Third Parties, BCB's Counsel Cannot Represent Both BCB and Simultaneously Its Investors Because It Is a Clear Conflict of Interest ........................... 9

IV.   There Is No Substantive Basis to Quash Any of the Subpoenas ...................... 10

      1.    Subpoena to Bryce Fincham ................................................ 11

      2.    Subpoenas to Barney Patsel and Todd Edwards .......................... 14

      3.    Subpoenas to James Quid, CMV Global, and Bayview Capital ............ 15

      4.    Subpoena *Duces Tecum* to Black Hills ...................................... 17

CONCLUSION ................................................................. 20

COMES NOW Defendant MineOne Wyoming Data Center LLC ("MineOne Data"), by and through counsel, Hathaway & Kunz, LLP, and Loeb & Loeb LLP, and hereby files this *opposition* in response to both Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain's ("BCB") (1) emergency motion for a protective order, quashing MineOne Data's August 2024 subpoenas (ECF No. 317), and (2) BCB's supplemental briefing ("Supp. Br.") on its motion for protective order on MineOne's August subpoenas (ECF No. 325) (collectively, the "Motion").

## PROCEDURAL BACKGROUND

On August 18, 2024, BCB filed an overlength motion, once again styled as an "emergency" motion, for a protective order as to third-party subpoenas and for sanctions. (ECF No. 317). Per Order dated August 21, 2024, the Court bifurcated BCB's Motion, with Magistrate Judge Hambrick ruling on BCB's request for a protective order, and Judge Johnson ruling on BCB's request for sanctions. (ECF No. 319 at 2-3; ECF No. 320 at 2).

On August 30, 2024, MineOne Data filed its opposition to BCB's frivolous motion for sanctions. (ECF No. 331). This combined opposition is in response to that portion of BCB's emergency motion seeking a protective order (ECF No. 317), as well as BCB's supplemental briefing on the same issue (ECF No. 325).

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 45, in early August 2024, MineOne Data, MineOne Partners, LLC and Terra Crypto Inc. (the "MineOne Defendants") served three subpoenas for depositions and documents on three of BCB's seven members; namely, Bryce Fincham ("Fincham"), CMV Global, LLC ("CMV Global") and Bayview Capital Investments, LLC ("Bayview Capital"). In addition, on August 16, 2024, the MineOne Defendants also emailed counsel as to their intention to serve three additional subpoenas for depositions and documents on

Todd Edward ("Edward"), Barney Patsel ("Patsel") and James Quid ("Quid") who are members of CMV Global and/or Bayview Capital, as well as a document subpoena to Cheyenne Light, Fuel, and Power Co. d/b/a Black Hills Energy ("Black Hills") (collectively, the "Subpoenas" and each a "Subpoena") -- the latter four have not been served and await the Court's decision on the instant Motion to quash. (*See* **Exhibit 1**).

Although BCB seeks to quash all seven Subpoenas, ***BCB lacks standing to challenge the Subpoenas*** unless BCB claims a personal right, privacy interest or privilege with respect to the documents or testimony requested by the Subpoenas – which BCB has not claimed. For this reason alone, BCB's Motion should be denied.

However, even if this Court were to determine that BCB does have standing (which it does not), set forth below is a detailed analysis of why the information sought in the Subpoenas is relevant to this suit and proportional to the case.

BCB incorrectly, but repeatedly, states that there are 12 subpoenas at issue. There are not. There are seven Subpoenas and BCB is attempting to prevent MineOne Data from seeking documents and testimony from **key third party witnesses** who have critical knowledge of the claims and counterclaims in this case. BCB states that MineOne Data should obtain information "***exclusively***" from BCB. *See, e.g.,* ECF 317 at ¶¶ 46-47 in which BCB argues that while MineOne Data served or intends to serve Subpoenas on third party as to financial information, that information should be sought "exclusively from the ***party***, BCB…." (emphasis in original).

MineOne Data has done just that. BCB is an unincorporated limited liability company -- not a person. And as both BCB's Corporate Disclosure Statement and its Amended and Second Supplemental Corporate Disclosure Statement disclose (ECF Nos. 38 and 42, copy attached as **Exhibit 1**), BCB is a limited liability company comprised of seven members. Unlike a corporation,

even for purposes of a subject matter jurisdiction, the citizenship of the unincorporated association is determined by looking to the citizenship of the members of the LLC as well as the members' members. *See* case law discussion in ECF No. 179 at 13. While this opposition does not pertain to subject matter jurisdiction issue, it is analogous in that when BCB argues that MineOne Data must seek the information "***exclusively***" from BCB, this is exactly what MineOne Data has sought to do: to depose certain members of BCB with critical information as to the claims and counterclaims.

Yet when BCB argues that the information should be sought "***exclusively***" from BCB, BCB's true intent becomes transparent: BCB seeks to be the ***sole gatekeeper*** of information relevant to this case and is prepared to produce a single member of BCB, Michael Murphy (who is Patrick Murphy's son) and have BCB's case narrated through the narrow lens of Michael Murphy. Even during counsel's August 29th meet-and-confer to set dates for depositions and to ascertain counsel availability Patrick Murphy included his son Michael Murphy on the call with counsel, with Michael Murphy continuously interjecting and attempting to control counsel's conversation with regard to scheduling depositions of witnesses. Even at the June 26 Evidentiary Hearing, when Patrick Murphy was questioning Michael Murphy, the question and answer between them was previously scripted and Patrick and Michael Murphy's question and answers were read from a prepared document. This is ***not*** how discovery works and Michael Murphy cannot control the discoverable information that the MineOne Defendants are entitled to seek.

In fact, BCB has gone to such extremes to block MineOne Data's discovery from key third party witnesses that BCB elevated this *routine* discovery dispute by also personally attacking MineOne Data's counsel, Paula K. Colbath, seeking revocation of her *pro hac vice* admission, and seeking drastic sanctions measures of default judgment against MineOne Data, to inflame and incite this Court. As MineOne Data stated in its opposition to BCB's sanctions motion (ECF No.

331), BCB's sanctions motion is itself sanctionable, but MineOne Data refrained from also seeking sanctions against BCB and its counsel, and expending even more party and judicial resources.

<u>One important note</u>. MineOne Data assures the Court as to the following: MineOne Data does not intend to seek duplicative testimony. Fincham is a key witness for MineOne Data and will also be named as a trial witness. To the extent Fincham's testimony becomes sufficient for MineOne Data, MineOne Data may agree to forgo some of the other third party depositions. But at this juncture, when BCB clearly seeks to control the narrative through Michael Murphy, all six deposition subpoenas should be allowed (as well as the critical document subpoena to Black Hills detailed below). In addition, MineOne Data is agreeable to take these depositions in-person at the location of each witness to make it as easy as possible for the witnesses.

There are numerous reasons this third-party discovery is necessary:

***First***, it is imperative that MineOne Data be able to understand (1) how BCB planned to comply with its financial obligations in the Blockchain Interruptible Electric Service Agreement with Black Hills (the "Power Contract") **(Exhibit 2)**, and (2) what BCB told its investors in order to induce them to invest. BCB does not deny raising capital from investors across the United States for the bitcoin mining facilities at issue. (ECF No. 42-1, copy attached as **Exhibit 3**). While BCB states that this information is not relevant (Supp. Br. n.2, 3), BCB is wrong. When raising capital from private investors in a non-registered offering, BCB was required to comply with strict offering requirements and disclose in a private placement memorandum (or similar documentation) the intended use of the funds raised by BCB as a startup. BCB has not produced a private placement memorandum or the equivalent. If BCB's capital raising efforts were improper, or it mislead investors about its plans relating to the use of funds, MineOne Data is entitled to discovery on these issues. In addition, BCB's counsel has acknowledged that BCB provided a

"**performance incentive**" to one or more of its members who invested after BCB filed this suit (*see* **Exhibit 4**, copy of BCB's counsel's email dated August 12, 2024, at last bullet point) – and MineOne Data is entitled to know the details.

**Second**, MineOne Data is entitled to discovery on what money BCB raised and what it did with the money since BCB is blaming MineOne Data for the loss of all its money. BCB and its counsel have claimed that "BCB cannot afford to post a bond of more than a few thousand dollars." ECF No. 242 at 9. At the Evidentiary Hearing, BCB's principal Michael Murphy doubled down on this claim by testifying that he was "all in financially, having invested most of [his] life savings." ECF No. 259 at 41. BCB is claiming that it lost all of its investments in the subject project and MineOne Data is entitled to discovery on this subject.

**Third**, MineOne Data is entitled to discovery regarding BCB's dissipation of assets. BCB does not deny raising capital from dozens of investors across the United States. BCB apparently raised significant amounts of money (millions of dollars) from investors, despite the fact that the cryptocurrency project in Cheyenne, WY was struggling financially in February 2023 because of cost overruns and extensive construction delays caused by BCB. And, despite having raised significant amounts of money from investors, immediately prior to commencement of its lawsuit, BCB shed itself of all funds, emptied its bank accounts, making itself strategically judgment proof, as it knew counterclaims would be asserted. This is classic fraudulent conduct. Rather than use its $3 million to save the faltering project (a situation BCB was itself responsible for), BCB made itself judgment proof, as it knew lawsuits were likely on the horizon. The discovery sought by the Subpoenas is expected to show that BCB engaged in classic fraudulent conduct by transferring its assets without adequate consideration. While the MineOne Defendants invested nearly $30 million

in building out the North Range site, including paying for the real property, BCB did not invest a single penny.[1]

**Fourth**, the Subpoenas seek discovery that is necessary to investigate the veracity of Michael Murphy's testimony at the Evidentiary Hearing regarding "camouflaged equity" and irregular accounting practices. By testifying on these subjects at the Evidentiary Hearing, Michael Murphy has put the issue front and center: so much so that Magistrate Judge Carman required the MineOne Defendants to produce additional documents regarding loans and equity investments. (ECF No. 313 at 7). MineOne Data believes that BCB used the same accounting treatment. BCB must also be required to produce accounting records showing how it booked contributions, monies, loans, etc., from its investors, and how BCB emptied its bank account of all of its funds immediately before commencing suit.

BCB's Motion is the latest effort to prevent and delay the MineOne Defendants from obtaining discovery to which they are entitled.

## **RELEVANT BACKGROUND**

On August 1, 2024, the MineOne Defendants filed notice of their intent to serve, and served, deposition and document subpoenas on BCB members Fincham, CMV Global and Bayview Capital. (ECF Nos. 306-308). In addition, on August 16, counsel to the MineOne Defendants emailed the other counsel with regard to their intention to serve four additional

---

[1] "Exhibit A" to BCB's Supplemental Brief (ECF No. 325-1) should also be stricken and disregarded by the Court. This is a chart *created* by BCB with only BCB's *version* of each party's "obligations" under the parties' Development, Hosting & Services Agreement ("DHS Agreement") (ECF No. 239-2). BCB describes its "Exhibit A" as "the chart of the Parties' contractual obligations." (ECF No. 325, Supp. Brief at 3). This is not true. This chart was created by BCB with select information BCB deems helpful to its side -- it is ***not*** a chart of the parties' contractual obligations. BCB should be admonished for not disclosing to the Court that it created "Exhibit A" as a demonstrative exhibit, and this chart has no legal significance. MineOne Data respectfully requests that the Court exercise its inherent power and give no weight to BCB's "Exhibit A" and strike it from the record.

individuals/entities: a subpoena for documents to Black Hills, and a subpoena for deposition (and for documents to be brought to the deposition) to CMV Global and Bayview Capital members, Todd Edwards, Barney Patsel and James Quid. (Copy of the August 16 email and four subpoenas attached to the email are attached as **Exhibit 1**). The MineOne Defendants *ceased* all service attempts upon receipt of BCB's motion for protective order.

BCB now complains as to all seven Subpoenas, which BCB repeatedly misstates as 12 subpoenas (Supp. Br. at 8, 9) – the three that the MineOne Defendants have served and the four they are awaiting decision by this Court to serve. Notably, when BCB issued *dozens* of subpoenas in this case, the MineOne Defendants did not file a single motion for protective order against any of the dozens of subpoenas BCB has issued in this case.

## ARGUMENT

### I.    Pursuant to the Court's Inherent Powers, the Court Should Strike the Footnotes in BCB's Supplemental Motion or Refuse to Consider the Footnotes

BCB's opening brief was 18 pages long. (ECF No. 317). BCB's brief far exceeded the page limit mandated by the Wyoming District Court Local Rule 7.1(b)(1)(C), which states, in relevant part, that "[b]riefs in support of and in opposition to all non-dispositive motions are limited to a maximum of ten (10) pages." As Judge Johnson observed in the Court's Notice of Procedural Disposition Regarding Plaintiff's Emergency Motion [ECF No. 317], BCB filed its overlength brief *without* "request[ing] permission to file a brief in excess of ten pages." ECF No. 320 at 2 n.1.

BCB did not heed Judge Johnson's warning. When Judge Hambrick permitted BCB to file a supplemental brief in support of its motion for protective order (ECF No. 319 at 2), BCB filed its supplemental brief, but bypassed the 10-page requirement by moving substantial text into footnotes with excessively small font size. (ECF No. 325). BCB's conduct should not be condoned.

MineOne Data respectfully requests that the Court, in exercising its inherent powers, strike the footnotes or refuse to consider them. *See, e.g., Dubrovin v. Ball Corp. Consol. Welfare Benefit Plan*, No. 08-cv-00563-WYD-KMT, 2009 U.S. Dist. LEXIS 123844, at *3 (D. Colo. Dec. 23, 2009) ("[T]he Tenth Circuit has indicated that the court has discretion to strike materials that are in non-compliance with the Local Rules") (citing *In Re Hopkins*, No. 98-1186, 1998 U.S. App. LEXIS 24637, at *10 n. 6 (10th Cir. 1998)); *see also DePatco Inc. v. Ground Eng'g Consultants, Inc.*, No. 17-CV-082-SWS, 2018 U.S. Dist. LEXIS 234188, at *5 n.2 (D. Wyo. Dec. 3, 2018) (refusing to consider "any portion of th[e]…response that exceeds the…page limit").

## II.    BCB Lacks Standing to Challenge the Subpoenas

BCB's Motion is brought on behalf of BCB and not the individual members of BCB. The law is **_well settled_** in this Circuit, however, that a party lacks standing to challenge a subpoena to a nonparty unless there is an assertion of personal right or privilege as to the subpoena. BCB cites to none and does not even reference whether it has standing to bring its Motion.

As Judge Rankin has aptly observed: "The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought. A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable." *Black Card, LLC v. Visa U.S.A., Inc*., No. 15-CV-027-S, 2016 U.S. Dist. LEXIS 178265, at *4 (D. Wyo. May 9, 2016) (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo.1997) (internal quotation marks omitted); *see also Bindl v. Evanston Hosp. Corp*., No. 14-CV-0052-SWS, 2015 U.S. Dist. LEXIS 192769, at *2-3 (D. Wyo. Oct. 9, 2015) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought…. A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable…. Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum.") (Carman, M.J.) (internal

quotation marks and citations omitted); *Bell v. RL Signor Holdings*, No. CIV-17-765-W, 2018 U.S. Dist. LEXIS 234998, at *8 (W.D. Okla. April 16, 2018) ("a party lacks standing under Rule 45(d)(3), *supra*, to challenge a subpoena duces tecum or subpoena ad testificandum issued to a nonparty unless the party claims a personal right, privacy interest or privilege with respect to the documents or testimony requested in, or by, the subpoena; RLS has not addressed the issue of standing and has [not] made showing that any personal right, privacy interest or privilege will be jeopardized by production of the documents and the testimony requested by Bell sufficient to confer standing to challenge the subpoenas"). As such, BCB's Motion should be denied because BCB lacks standing to challenge the Subpoenas.

**III.    To the Extent BCB's Counsel Will Argue that His Law Firm Also Represents Each of the Third Parties, BCB's Counsel Cannot Represent Both BCB and Simultaneously Its Investors Because It Is a Clear Conflict of Interest**

To the extent BCB attempts to bypass its fatal lack of standing by arguing that its Motion is brought on behalf of the investors of BCB (which on its face it is not), there is a clear conflict of interest because if there is a judgment against BCB (and BCB has repeatedly announced it has no money), BCB's members/investors' interests will be adverse to BCB, since MineOne Data will pursue collection from the members/investors.

Prior to serving the three Subpoenas on Fincham, CMV Global and Bayview Capital, MineOne Data's counsel (Paula Colbath) emailed BCB's counsel (Patrick Murphy) asking whether Mr. Murphy's firm represented Fincham, but Mr. Murphy did not respond to the email. The next day, on August 1, 2024, Ms. Colbath again emailed Mr. Murphy and asked which BCB members Mr. Murphy's firm represented. Mr. Murphy once again refused to respond. *See* **Exhibit 5** (copy of Ms. Colbath's July 31 and August 1 emails to Mr. Murphy).

Yet, when BCB's counsel sent his email of August 12 to MineOne Data's counsel, he signed off his email as: "Pat Murphy Counsel for BCB, Dr. Fincham, CMV Global, LLC and

Bayview Capital Investments, LLC." (*See* **Exhibit 4 at 3**). BCB's counsel may have offered to represent Fincham, CMV Global and Bayview Capital free of charge, as BCB's counsel has done so in the past by also representing member Timothy Desrochers, another third party subpoenaed by the MineOne Defendants in connection with their motion to dismiss for lack of subject matter jurisdiction.[2] To the extent BCB's counsel's firm states that it has standing since it now also represents BCB's members who are the subject of the Subpoenas, this conduct raises ***serious issues of conflicts of interest*** between Williams, Porter, Day and Neville, P.C.'s representation of BCB and individual members of BCB, whose interests may become adverse to each other -- given the serious counterclaim asserted against BCB by the MineOne Defendants (including alter ego liability) and the financial magnitude of the counterclaims.

If there is a judgment against BCB, the individual members/investors of BCB will be liable, and this creates an impermissible conflict of interest. *See* Wy. Prof. Conduct R. 1.13, Cmt. 10 (where an organization's interest becomes adverse to one or more of its constituents, "the lawyer should advise any constituent . . . that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual"); *see also id*. at R. 1.7 ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.").

## IV.    There Is No Substantive Basis to Quash Any of the Subpoenas

The information sought in the Subpoenas is highly relevant to the claims and counterclaims in this case, and proportional to the needs of the case. "[T]he relevancy standards set forth in Rule

---

[2] By letter dated February 15, 2024, BCB's counsel (Patrick Murphy) also informed MineOne Data's counsel (Paula Colbath) that he has a separate attorney client engagement agreement with Quid.

26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any party's claim or defense." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785- DDC-TJJ, 2018 U.S. Dist. LEXIS 196655, at *51 (D. Kan. Nov. 19, 2018) (internal quotation marks omitted); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (recognizing that "the scope of discovery under the federal rules is broad and…'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'") (citation omitted); *Wells Fargo Bank, N.A. v. Mesh Suture*, No. 19-CV-03218-PAB-GPG, 2020 U.S. Dist. LEXIS 169274, at *4-5 (D. Col. May 12, 2020) (denying motion to quash, stating: "Under Federal Rule of Civil Procedure 26(b), parties are permitted to obtain discovery regarding, among other things, 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to relevant information.' Fed. R. Civ. P. 26(b)(1)…[and that] [u]nder Federal Rule of Civil Procedure 45, '[a] subpoena served on a third party pursuant to Rule 45 is subject to the same standards that govern discovery between the parties and, therefore, must seek information that is relevant and proportional to the needs of the case.") (citation omitted).

As Judge Rankin noted when he allowed BCB to exceed the limit on interrogatories imposed by Fed. R. Civ. P. 33, "[t]he amount in controversy and issues at stake warrant exceeding the limit…." (ECF No. 154 at 5). As detailed below, the issues at stake here warrant that the Motion be denied and MineOne Data be permitted to seek documents and testimony from key third parties.

### 1. <u>Subpoena to Bryce Fincham</u>

BCB's argument that MineOne Data's Subpoena to Fincham should be quashed because Fincham is a "passive investor" and "the requested information is best obtained from BCB," is

baseless. (Supp. Br. at 9). Contrary to BCB's argument, Fincham is **_not_** a passive investor. Fincham is a **key witness** and will also be included as a trial witness for the MineOne Defendants.

BCB's initial Corporate Disclosure Statement (ECF No. 38), BCB's Amended and Second Supplemental Corporate Disclosure Statement (ECF No. 42) and BCB Amended Complaint (ECF No. 50 at 8 ¶ 2) name Fincham as _**one of BCB's seven members**_. (ECF Nos. 38 and 42, attached as **Exhibit 3**). BCB is an LLC made up of its members, and MineOne Data is doing exactly what BCB has asked: seeking information from BCB through its members.

Even though BCB's Corporate Disclosures and Amended Complaint name Fincham as one of its seven members, BCB has gone to great lengths to quash Fincham's deposition. _For the first time now_, in his August 12, 2024 email to counsel for MineOne Data, Paula Colbath, BCB's counsel stated that Fincham was _not_ a BCB member at the time BCB commenced its suit on May 3, 2023 (even though BCB has not repeated this in its Motion papers). More specifically, the email states that: (1) "Fincham executed a Unit Purchase Agreement for 100 Class D membership units on May 13, 2023 (with an effective date of May 1, 2023)" (_see_ **Exhibit 4** fourth bullet point page 2), but that (2) MineOne Data cannot depose Fincham because Fincham was not a BCB member as of the May 3, 2023 filing date of this suit (_see id_. at page 2, paragraph following the bullet points). But Fincham is one of BCB's seven members as identified in BCB's Corporate Disclosures and Amended Complaint, and a critical witness to the MineOne Defendants' counterclaims and defense. This about face alone compels Fincham's deposition.

But this is not all. BCB walked off the job and filed this suit on May 3, 2023.[3] Yet, Fincham was given a "_**bonus**_" 12 days later on May 15, 2023, on the heels of BCB filing this suit, for investing one million dollars in BCB. Why was Fincham given a bonus after BCB filed this suit?

---

[3] BCB previously filed suit on March 15, 2023 in Wyoming Chancery Court, which was dismissed.

These are relevant lines of inquiry that MineOne Data has the right to ask Fincham. Why did Fincham sign the Unit Purchase Agreement two days **before** BCB filed suit? What was Fincham told as to the circumstances?

Fincham invested **one million dollars** in CMV Global (another BCB member) in January 2022 (Supp. Br. at 5, first bullet point) – approximately two months *after* BCB was formed on November 1, 2021 (**Exhibit 6**), and a month before BCB entered into the February 2022 Power Contract (**Exhibit 2**). As BCB has admitted, CMV Global then sent Fincham's $1 million investment, as well as other monies totaling $2.65 million to BCB on January 18, 2022. *See* Supp. Brief at 5.

No one invests **one million dollars** into an enterprise with blinders on. MineOne Data has the right to ask Fincham about his investment in BCB and what BCB represented to Fincham as to BCB's intent to build a digital mining facility and the use of funds, as well as BCB's performance under the Power Contract. Under the Power Contract, BCB was required to maintain an escrow of $11 million. **Exhibit 2** at Section 15.1 ("Customer [defined as BCB] shall establish, fund, and maintain during the Term a Security Fund pursuant to the provisions of this Article 15, as follows: No later than forty five (45) days following the Effective Date, Customer shall establish the Security Fund at a level of $11,000,000, which shall be comprised of one or more of the permitted forms of Article 15.3.").

What did BCB tell Fincham about the Power Contract? What did BCB promise Fincham as to the return on his money? What did BCB disclose to Fincham were the risks of the project and with investing $1 million of his money into this project? What documents was Fincham shown before he invested one million dollars? What was Fincham told as to why he was asked to make an investment? What was Fincham told BCB's role would be in connection with the Power

Contract? What was Fincham told about the project and likelihood of its success? What was Fincham told about how BCB was going to comply with its obligations under the Power Contract?

BCB has not produced a *single piece of paper* from Fincham, even though Fincham is a BCB member. In fact, there is a dearth of written investor communications, making Fincham's testimony essential. Indeed, Fincham's testimony is highly relevant because MineOne Data has the right to know from CMV Global's largest investor what the expectations were as to BCB's performance, what was the anticipated budget with the Power Contract and how was BCB going to accomplish it. It is the MineOne Defendants' position that BCB had no ability to comply with its obligations in the Power Contract, which required BCB to build the Facility at North Range, without MineOne Data or another entity similarly situated to MineOne Data.

BCB's citation to *Meide v. Pulse Evolutions* for its argument that passive investors are analogous to shareholders in a corporation and should not be deposed (Supp. Br. at 8), is unavailing. BCB is not a corporation, it is a limited liability company, and its citizenship is derived from the citizenship of each of its members. And Fincham is not just a passive investor. A passive investor does not invest a million dollars without asking questions and reviewing documentation as to what he is investing in. Fincham's testimony is relevant on these issues and proportional to the needs of the case.

## 2.    Subpoenas to Barney Patsel and Todd Edwards

Patsel and Edwards are members of CMV Global, which, in turn, is a member of BCB. MineOne Data wants to explore Patsel's and Edwards' investment in BCB. What were the risks disclosed to Edwards and Patsel before they made their respective investments? What documents were Patsel and Edwards shown before they invested? What did CMV Global tell Patsel and Edwards about BCB, their investment, the strategy and timeline for their investment? What were Patsel and Edwards told about the return of the funding, and the expected return on their

investment? What were they told about the time to complete the project and what it was intended to cost?[4]

### 3.   Subpoenas to James Quid, CMV Global, and Bayview Capital

There are two separate lines of questioning that MineOne Data seeks to explore with Quid, Bayview Capital and CMV Global at their respective depositions.

*First,* Quid testified in an affidavit he filed with this Court on August 21, 2023 that he and his wife are the only two members, and managing members, of Bayview Capital and, in turn, Bayview Capital is the sole managing member of CMV Global—one of the seven members of BCB. (**Exhibit 7**). What did Quid know about CMV's investment in BCB? What communications did he have with Fincham? What did he understand about the Power Contract? What conversations did Quid have with the dozens of other CMV Global investors about their investments and the project at issue.

In addition, BCB has made the following representations to the Court in its supplemental brief and in its counsel's August 12 email (**Exhibit 4**):

(1) CMV Global raised $2.65M in early January 2022, which included that $1 million from Fincham;

(2) CMV Global then raised another $350,000 for investing into BCB;

(3) BCB passed a Corporate Resolution on February 7, 2023 to return the remaining $2.65M of CMV's initial capital contributions to CMV and sent the $2.65M to CMV on February 10, 2023; and

---

[4] MineOne Data plans to *sequence* the depositions with Fincham's deposition first and if Edwards' and Patsel's deposition testimony would seem duplicative of Fincham's deposition, MineOne Data will withdraw its Subpoenas to Edwards and Patsel.

(4) BCB and Bayview Capital then executed a Unit Purchase Agreement for 150 Class D membership units on May 24, 2023 (with an effective date of May 6, 2023) –three days after BCB filed this suit—which were given to Bayview Capital as a "*performance incentive*" for Bayview Capital raising $3M through CMV Global to invest in BCB. *See* Supp. Brief at 5.

MineOne Data seeks to depose Quid and CMV as to monies raised by BCB and the promises made in exchange for the money. Critically, why was Bayview Capital given a "*performance incentive*" three days *after* BCB filed this suit?

In addition, less than a month before BCB walked off the job, which left the MineOne Defendants in a serious predicament, BCB passed a corporate resolution on February 7, 2023 to return the $2.65 million to CMV Global and did so on three days later on February 10, 2023. (Supp. Br. at 5). Why was this corporate resolution passed? What was discussed at the meeting? Why was this done on the eve of walking off the job and running to Chancery Court in March 2023?

It is the MineOne Defendants' position that BCB was trying to make itself judgment proof because it knew it was going to walk off the job and file a suit. This is tantamount to a fraudulent conveyance and the MineOne Defendants have the right to explore this topic in discovery. BCB claims it was capitalized with $3 million although the Black Hills Power Contract required BCB to have $11 million in escrow. This is relevant to the MineOne Defendants alter ego claims in its counterclaims. Despite having significant cost overruns of nearly $10 million, BCB never put a penny into the project. MineOne Data is entitled to know what investors were told about the use of their funds. Did BCB use the money to pay itself, rather than invest in the project? Did BCB's use of the funds comply with BCB's organizational documents? Was the money raised legally? BCB's Motion should be denied because the MineOne Defendants are entitled to depose the

investors as to all these issues, including the MineOne Defendants' alter ego defense that BCB is a shell organization and the alter ego of its members. (*See, e.g.*, ECF No. 62, at 30 ¶ 20).

**Second**, MineOne Data also seeks to depose Quid as to the August 21, 2023 affidavit Quid submitted regarding CMV Global member, Tim Desrochers, whose citizenship was the subject of the MineOne Defendants' motion to dismiss based on subject matter jurisdiction. (**Exhibit 7**). In denying the motion, Judge Johnson stated: "Should additional information come to light more definitively establishing that Mr. Desrochers was not domiciled in Colorado at the time this lawsuit was filed, the Court would be required to consider supplemental evidence in light of its obligation to determine proper subject matter jurisdiction over this action." (ECF No. 324 at 19).

Quid's affidavit states that he "learned that Tim Desrochers has not lived or resided in Texas since before the Covid-19 pandemic began in March 2020, and that he has been living in Colorado since that time." (**Exhibit 7** at ¶ 8). MineOne Data seeks to understand how Quid learned this information and supplement to the Court any evidence uncovered that shows that Mr. Desrochers was a Texas domiciliary during the relevant time.

### 4. Subpoena *Duces Tecum* to Black Hills

The Subpoena *Duces Tecum* to Black Hills is absolutely critical here. MineOne Data seeks BCB's Request for Proposal (the "RFP") to Black Hills and its communications with BCB. The Power Contract is highly relevant to this litigation and is the centerpiece of this case. BCB submitted a proposal and MineOne Data is entitled to know if BCB was truthful in the proposal. MineOne Data believes that BCB represented in the RFP that it had sufficient assets to build a 45MW and then a 30MW. It is critical that Black Hills produce a copy of BCB's RFP because otherwise the MineOne Defendants do not have another means of showing that BCB secured its Power Contract with Black Hills by making representations that it had no ability to honor.

BCB's RFP that was submitted to Black Hills is also a very important document in this case because it will likely show that BCB was the winning bidder because BCB overstated its credentials and financial wherewithal to build the Facility at North Range, and offered to pay the highest price for electricity, and this is how BCB won the Power Contract.

Indeed, BCB has acknowledged the relevance of the MineOne Defendants Subpoena to Black Hills because BCB itself not only served another competitive bidder with a similar subpoena, but also **served Black Hills with similar subpoena requests**. More specifically, BCB served a subpoena on another third party, YZY Capital Holdings, LLC ("YZY) and sought the **near-identical document requests** from YZY that the MineOne Defendants have sought from Black Hills. *See* **Exhibit 8** at Document Requests 1-3 (in which BCB seeks the YZY's RFPs to Black Hills as well as all communications between YZY and Black Hills regarding the RFP and regarding Campstool). In addition, **BCB also served two subpoenas on Black Hills**, dated November 29, 2023 and May 14, 2024, seeking copies of the RFP's and communications between Black Hills and BCB, *and attaching a blank RFP to its first subpoena to Black Hills*. (*See* **Exhibit 9**, attaching copy of a blank RFP, **and Exhibit 10**).

The MineOne Defendants are entitled to seek the same documents that BCB itself has sought from Black Hills. The fact that BCB thought this was relevant to the litigation is, and of itself, sufficient for the Court to deny BCB's Motion as to this Subpoena. The Power Contract required an escrow by BCB of $11 million. Based on the RFP that BCB submitted, Black Hills must have thought that BCB had the capitalization for the $11 million escrow requirement (**Exhibit 2** at Section 15.1), and MineOne Data is entitled to conduct discovery with regard to it. This is precisely why the RFP that BCB submitted to Black Hills and the communications between BCB and Black Hills are essential.

But this is not all. At the June 26, 2024 Evidentiary Hearing in connection with the prejudgment writ of attachment, Judge Johnson focused on BCB's Power Contract with Black Hills. For example, Judge Johnson stated: "Of course, BCB was eager and would have done anything -- even stupidly giving up their one asset in this matter, their winnings of the Black Hills lottery that they had -- for the opportunity to put together a blockchain program, mining program, that could bring great -- great wealth with the electricity that would be provided for it." (**Exhibit 11** at 204:19-24). The MineOne Defendants are entitled to conduct discovery as to how BCB secured the Power Contract with Black Hills.

BCB's Motion should also be denied because BCB's Amended Complaint (ECF No. 50) makes ***numerous allegations*** regarding Black Hills' RFP process and BCB's reputation standing, which the MineOne Defendants are entitled to discover, including:

--Paragraph 29 of the Amended Complaint states that BCB won a "highly competitive bidding process" with Black Hills "against some of the largest transnational Bitcoin mining companies in the world (including YZY…)," and that as a result BCB signed the Power Contract with Black Hills effective February 22, 2022. *See also* additional allegations as to the RFP process in RFP process in Paragraphs 134 and 142 of the Amended Complaint.

--Paragraph 35 of the Amended Complaint touts BCB's reputational standing. BCB's RFP submission to Black Hills will describe BCB's financial situation/prospects, reputational standing, and digital mining and business experience. The MineOne Defendants are entitled to discover the information BCB produced to Black Hills to secure the contract and to determine whether BCB overstated its credentials in order to secure the Power Contract. As such, BCB's RFP response to Black Hills is critical to his case (as are the other RFP responses). (*See also* Amended Complaint

at ¶¶ 39-40 with regard to an "economic development proposal" and updated proposal submitted by BCB to Cheyenne LEADS, which is also discoverable).

--Paragraph 31 of the Amended Complaint makes allegations regarding Black Hills' RFP process and BCB's future plans.

--Paragraph 45 of the Amended Complaint describes discussions between BCB and the MineOne Defendants and BCB's purported buyout to pay "BCB for all of BCB's hard work to date to win the RFP." This is the gist of BCB's claim for compensation and the MineOne Defendants are entitled to seek BCB's RFP response and determine the promises made by BCB.

--In Paragraph 40 and 41 of the Amended Complaint, BCB also touts its ability to bring jobs to the local community, and its RFP to Black Hills will likely also address this subject.

--In Paragraphs 49 and 50 of the Amended Complaint, BCB alleges that Black Hills wanted BCB to be continually involved and, as such, BCB's communications with Black Hills are an important topic because it is the MineOne Defendants' position that BCB could not secure the appropriate manpower to independently build the North Range facility.

Accordingly, the documents sought in the Subpoena to Black Hills are central to this litigation and BCB itself sought similar information from Black Hills and other competitive bidders, and the Court should deny BCB's Motion to quash this Subpoena.

## **CONCLUSION**

BCB's motion for a protective order and to quash the Subpoenas should be denied in its entirety.

DATED this 4th day of  September, 2024

DEFENDANT MINEONE WYOMING DATA
CENTER, LLC

By: */s/ Paula K. Colbath*
　　 Paula K. Colbath, Esq. (Admitted *Pro Hac Vice*)
　　 David Forrest, Esq. (Admitted *Pro Hac Vice*)
　　 Alex Inman, Esq. (Admitted *Pro Hac Vice*)
　　 345 Park Avenue
　　 New York, NY 10154
　　 Telephone: (212) 407-4905
　　 Fax: (212) 407-4990

　　 HATHAWAY & KUNTZ, LLP
　　 Sean Larson Wyo. Bar #7-5112
　　 Kari Hartman, Wyo. Bar #8-6507
　　 P. O. Box 1208
　　 Cheyenne, WY 82003
　　 Phone: (307) 634-7723
　　 Fax: (307) 634-0985
　　 slarson@hkwyolaw.com
　　 khartman@hkwyolaw.com

239629632

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 4th day of September, 2024, a true and correct copy of the foregoing was served upon counsel as follows:

Patrick J. Murphy
Scott C. Murray
Williams, Porter, Day & Neville, P.C.
159 N. Wolcott., Suite 400
P.O. Box 10700 (82602)
Casper, WY 82601
*Attorneys for Plaintiff*

[✓] CM/ECF
[ ] Fax:
[ ] E-mail:
pmurphy@wpdn.net smurray@wpdn.net

Khale J. Lenhart
Tyson R. Woodford
Hirst Applegate, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083

[✓] CM/ECF
[ ] Fax:
[ ] E-mail:
klenhart@hirstapplegate.com;
twoodford@hirstapplegate.com

William K. Pao, *pro hac vice*
Cooley LLP
Wells Fargo Center, South Tower
365 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560

[✓] CM/ECF
[ ] Fax:
[ ] E-mail: wpao@cooley.com

Marc Feinstein, pro hac vice
David Iden, pro hac vice
Kate Stutz, pro hac vice
Daniel Hirsch, pro hac vice
Sherin Parikh, pro hac vice O'Melveny &
Myers, LLP 400 South Hope Street, 18th
Floor Los Angeles, CA 90071

[✓] CM/ECF
[ ] Fax:
[ ] E-mail:
mfeinstein@omm.com; dhirsch@omm.com;
diden@omm.com; kstutz@omm.com;
sparikh@omm.com

*Attorneys for Bitmain Technologies Georgia
Limited*

Meggan J. Hathaway
Jane M. France
Sundahl, Powers, Kapp & Martin, L.L.C.
500 W. 18th Street, Suite 200
Cheyenne, WY 82003-0328

[✓] CM/ECF
[ ] Fax:
[ ] E-mail:
mhathaway@spkm.org; jfrance@spkm.org

Marc S. Gottlieb
Ortoli Rosenstadt, LLP
366 Madison Avenue, 3rd Floor
New York, NY 10017

[✓] CM/ECF
[ ] Fax:
[ ] E-mail:
msg@orllp.legal

*Attorneys for Bit Origin and SonicHash*

*/s/Paula K. Colbath*_____
 Loeb & Loeb, LLP