# EXHIBIT 9

Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email:   pmurphy@wpdn.net
           smurray@wpdn.net

*Attorneys for Plaintiff BCB Cheyenne LLC
d/b/a Bison Blockchain*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company,<br><br>Plaintiff,<br>v.<br><br>MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO, INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 23-CV-79-ABJ |

## BCB CHEYENNE, LLC, d/b/a BISON BLOCKCHAIN'S NOTICE OF INTENT TO SERVE SUBPOENA UPON CHEYENNE LIGHT, FUEL, AND POWER COMPANY D/B/A BLACK HILLS ENERGY, A SUBSIDIARY OF BLACK HILLS CORPORATION

COMES NOW Plaintiff BCB Cheyenne, LLC d/b/a Bison Blockcahin, through its counsel, Patrick J. Murphy and Scott C. Murray of *WILLIAMS, PORTER, DAY & NEVILLE, P.C.,* and gives this *Notice of Intent to Serve Subpoen*a attached hereto as "**Exhibit A**" upon Cheyenne Power, Fuel, and Light Company ("CLFPC") (d/b/a Black Hills Energy), a subsidiary of Black Hills Corporation.

DATED this 29th day of  November, 2023.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN,

Plaintiff

By: _____
Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, PC
159 N. Wolcott, Ste. 400
Casper, WY 82601
(307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

*Attorneys for Plaintiff BCB Cheyenne LLC d/b/a
Bison Blockchain*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November 2023, a true and correct copy of the foregoing document was served as follows:

Sean M. Larson, WSB No. 7-5112
Kari Hartman, WSB No. 8-6507
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82001
slarson@hkwyolaw.com
khartman@hkwyolaw.com

☐ CM/ECF Electronic Filing
☐ U.S. Mail, Postage Prepaid
☐ Overnight Delivery
☐ Hand Delivery
☐ Facsimile
☒ E-Mail

Paula Colbath, *Pro Hac Vice*
Sarah Levitan Perry, *Pro Hac Vice*
Alex Inman, *Pro Hac Vice*
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com
sperry@loeb.com

ainman@loeb.com

☐ CM/ECF Electronic Filing
☐ U.S. Mail, Postage Prepaid
☐ Overnight Delivery
☐ Hand Delivery
☐ Facsimile
☒ E-Mail

Ailan Liu
Keesal, Young & Logan
400 Oceangate
Long Beach, CA 90802
562-436-2000 (ph)
ailan.liu@kyl.com

☐ CM/ECF Electronic Filing
☐ U.S. Mail, Postage Prepaid
☐ Overnight Delivery
☐ Hand Delivery
☐ Facsimile
☒ E-Mail

**By:** _____
Patrick J. Murphy

Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email:   pmurphy@wpdn.net
         smurray@wpdn.net

*Attorneys for Plaintiff BCB Cheyenne LLC*
*d/b/a Bison Blockchain*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MINEONE WYOMING DATA CENTER LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO, INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, a Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants.<br><br>Defendants. | Civil Action No. 23-CV-79-ABJ |

# EXHIBIT A
# BCB CHEYENNE LLC D/B/A BISON BLOCKCHAIN'S
# SUBPOENA DUCES TECUM TO CHEYENNE LIGHT, FUEL, AND
# POWER COMPANY D/B/A BLACK HILLS ENERGY, A SUBSIDIARY OF
# BLACK HILLS CORPORATION IN A CIVIL ACTION

Cheyenne Power, Fuel, and Light Company ("CLFPC") (d/b/a Black Hills Energy), a subsidiary of Black Hills Corporation, is commanded to produce copies of the following documents to Patrick J. Murphy at Williams, Porter, Day & Neville, P.C. at 159 N. Wolcott Street, Suite 400, Casper, WY 82601 (and/or by emailing it to Patrick Murphy at pmurphy@wpdn.net) by December 18, 2023 at 9:30am mt, as follows:

## DEFINITIONS

1.      "Document" shall have the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure and shall include every writing or record of every type and description, including, but not limited to, agreements, contracts, contract files, correspondence, memoranda, publications, pamphlets, promotional materials, studies, books, tables, charts, graphs, schedules, e-mails, text messages, photographs, films, voice recordings, reports, surveys, analyses, journals, ledgers, telegrams, stenographic or handwritten notes, minutes of meetings, transcripts, financial statements, purchase orders, vouchers, invoices, bills of sale, bills of lading, credit and billing statements, checks, manuals, circulars, bulletins, instructions, sketches, diagrams, computer programs, printouts, punch cards, tabulations, logs, telephone records, desk calendars, diaries, appointment books, computer data, tapes, and disks; and includes all drafts or copies of every such writing or record whenever a draft or copy of a document is not an identical copy of the original or where such draft or copy contains any commentary or notes that do not appear on the original.

2.      "Communications" shall mean all written, oral, telephonic, electronic, e-mail, text, or other transmittal of words, thoughts, ideas, and images, including, but not limited to, inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, press releases, publicity releases, trade releases, and interviews.

3.     The term "relating to" shall mean directly or indirectly mentioning or describing,

comprising, consisting of, referring to, reflecting on, or being in any way logically or factually

connected with the matter discussed.

# DOCUMENTS REQUESTED

I.     All Documents and Communications regarding the CHEYENNE LIGHT, FUEL AND
POWER COMPANY BLOCKCHAIN INTERRUPTIBLE SERVICE ("BCIS")
REQUEST FOR PROPOSALS ("RFP" or "competitive bid") (*see "***Exhibit B***"*).
Specifically, please provide each BCIS competitive bid submissions and correspondence
received by CLFPC from any person or company relating to *(*a) Section 2 -
Contact/Company Information, (b) Section 3 - Projection Specifics, (c)  Section 4 -
Pricing Proposal (d) internal documents and communication between CLFPC
representatives about selecting the winning competitive bid submitted by Michael
Murphy, and (e) all external documents and communication between representatives of
CLFPC and the representatives of companies that submitted a losing competitive bid to
CLFPC (e.g.,  Bitmain, YZY Capital, Bitdeer, and Crypto Knight Hosting, and others).

II.     All Documents and Communications relating to CLFPC concerns and/or preference not
to contract with companies owned and/or controlled by foreign individuals, specifically,
Chinese nationals. This request includes all Documents and Communication expressing
any concerns, negative sentiment, and/or dissatisfaction expressed by representatives of
CLFPC and/or Black Hills Corporation about (a) working with any of the companies that
lost the BCIS competitive bid, (b) working directly with any or all of Defendants listed in
the caption on this subpoena duces tecum, and (c) with not having Michael Murphy
involved in the North Range and Campstool bitcoin mining projects.

III.     All Documents and Communications after March 1, 2023 relating to (a) Michael
Murphy; (b) BCB Cheyenne LLC (dba Bison Blockchain); (c) any and/or all of the
Defendants listed in the caption on this subpoena duces tecum; and (d)  the North Range
and Campstool bitcoin mining sites.

IV.     All Documents and Communication of all (a) electrical utility bills from CLFPC to
MineOne Wyoming Data Center LLC (and MineOne Partners LLC) and (b) receipts for

payments rendered by Mine One Wyoming Data Center LLC (and MineOne Partners LLC) to CLFPC.

V.   All Documents and Communication involving 'timelines for energizing' (*i.e.,* supplying electrical energy) to the North Range and Campstool bitcoin mining sites. This request includes all documents and communications relating to CLFPC's delays and capability to *fully* energize the North Range site. This request also seeks all documents and communications relating to energizing the Campstool site  and any expansion(s) planned at North Range and Campstool (as detailed on page 13 of Defendant BitOrigin's September 2023 *Investor Presentation* and where CLFPC stated that "remaining facilities are anticipated to be complete by mid-to-late 2023 and load will continue to grow to the contract capacity established for the North Range location" (*see* "**Exhibit C**").

VI.   All Documents and Communication relating to blocks of power and energy pricing between CLFPC and MineOne Wyoming Data Center LLC (and MineOne Partners LLC). This request includes any documents and correspondence relating to prior, current, and future availability of blocks of power, and the pricing for any blocks of power purchased by MineOne Wyoming Data Center LLC, and any blocks of power previously or currently being offered to MineOne Wyoming Data Center LLC.

VII.   All Documents and Communication from March 1, 2023 to present between representatives of Black Hills Energy and elected Wyoming state and federal representatives and officials (*e.g.,* Governor Mark Gordon and his staff, United States Senator Cynthia Lummis and her staff, and Wyoming state legislators, including but not limited to, Rep. Cyrus Western, Rep. Jared Olsen, Sen. Tara Nethercott, and Sen. Christopher Rothfuss) relating to (a) the BCIS Tariff, (b) any and/or all of the Defendants listed in the caption of this subpoena duces tecum, (c) and any proposed or draft legislation or legislative activities  and/or advocacy relating to the North Range and Campstool sites or bitcoin mining.

VIII.   All Documents and Communication relating to CLFPC's income and revenue estimates and/or projections for CLFPC from the Blockchain Interruptible Service Agreement (over the five year term of the BCIS Agreement  between CLFPC and Mine One Wyoming Data Center LLC).


RESPECTFULLY SUBMITTED this 29th day of November, 2023.

BCB CHEYENNE LLC d/b/a
BISON BLOCKCHAIN,

Plaintiff

By:  _____

Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, PC
159 N. Wolcott, Ste. 400
Casper, WY 82601
(307) 265-0700
pmurphy@wpdn.net
smurray@wpdn.net

*Attorneys for Plaintiff BCB Cheyenne LLC d/b/a
Bison Blockchain*

# Exhibit B

# CHEYENNE LIGHT, FUEL AND POWER COMPANY

# BLOCKCHAIN INTERRUPTIBLE SERVICE

# REQUEST FOR PROPOSALS

**Issue date: August 24, 2021**

**Response deadline: September 7, 2021**

## Table of Contents

The table of contents is empty because you aren't using the paragraph styles set to appear in it.

# Introduction

Black Hills Corp. (NYSE: BKH) is a customer-focused, growth-oriented utility company with a tradition of improving life with energy and a vision to be the energy partner of choice. Based in Rapid City, South Dakota, the company serves 1.3 million natural gas and electric utility customers in eight states: Arkansas, Colorado, Iowa, Kansas, Montana, Nebraska, South Dakota and Wyoming. More information is available at www.blackhillscorp.com, www.blackhillscorp.com/corporateresponsibility and www.blackhillsenergy.com.

Black Hills Corporation through its wholly owned subsidiary Cheyenne Light, Fuel and Power Company is soliciting proposals from potential Blockchain Interruptible Service ("BCIS") customers. Cheyenne Light, Fuel and Power Company dba Black Hills Energy ("Cheyenne Light") serves over 43,000 electric customers in Cheyenne, Wyoming and the surrounding vicinity.

This document is the RFP and serves as written application to Cheyenne Light for service under its BCIS Tariff. This RFP is for respondents to propose pricing and terms related to taking service under a to be negotiated BCIS agreement. Cheyenne Light desires to enter into one or more BCIS agreement(s) as a result of this RFP. However, Cheyenne Light may require additional information, and Cheyenne Light and the applying customer may, at the sole discretion of either party, cease negotiation of rates and terms and conditions of service under the BCIS Tariff. If the parties agree through negotiations to electric service through the BCIS Tariff, an Agreement will be executed. The electric service under the BCIS Tariff is not applicable to temporary, standby, supplementary, emergency, resale, shared or incidental purposes.

The agreement for service under the BCIS tariff must include:

1. Electric service is for new interruptible load expected to be 10,000 kW or greater;
2. A term of at least two (2) years;
3. Specific pricing for all electricity purchased, with the pricing terms being subject to renegotiation at least every three (3) years;
4. Negotiated service interruption provisions (size of interruptible load, notice of planned interruption, duration of interruption, and maximum hours of interruption per year);
5. Other requirements as defined in the BCIS tariff (see appendix).

Cheyenne Light will give preference to bids with the highest price, accept high curtailment/interruptible hours and are in desirable locations. The Company will also factor in the bidder's credit quality and the ability for the bidder to transact quickly.

All system upgrade or system interconnection costs will be borne by the respondent. Cheyenne Light will endeavor to provide an estimate to the short-listed bidders of the expected costs to interconnect to its facilities during the screening process and the notice to the short-listed bidders.

All proposals received will be handled confidentially.

# Bid Submittal

**Proposal Submissions**

Proposals must be submitted in the complete name of the party expecting to execute any resulting BCIS Agreement with Cheyenne Light.  The proposal must be executed by a person who is duly authorized to bind the respondent to a contract.

Bidders can submit alternate proposals for price, location, or curtailable hours.  However, please submit a complete package for each alternative location proposed.  If alternate pricing and/or curtailable hours are proposed from the same location, please submit a new Section 3-Pricing for each proposal.

All proposals submitted in response to this RFP must be received by Cheyenne Light no later than 5:00 pm MDT on the due date at BCIS_RFP@blackhillscorp.com.  To ensure receipt, please send e-mails from a United States service provider.

**Schedule**

| | |
|---|---|
| **Issue RFP** | **August 24, 2021** |
| **RFP Responses due** | **September 7, 2021** |
| **Screening of bids complete** | **September 30, 2021** |
| **Notice to short-listed bidders** | **September 30, 2021** |
| **Execution of BCIS Agreement** | **October 15, 2021** |

**Questions**

Cheyenne Light will accept questions via email to BCIS_RFP@blackhillscorp.com.  Cheyenne Light requests that all questions concerning this RFP be submitted in writing at the above address.  Answers will be provided through email correspondence to and from this address only.   Written questions will be accepted by Cheyenne Light through September 3rd.

**Required attachments:**

All bids must include the entity's certificate of good standing and most recent financial statements.  If no financial statements exist, the bidder must detail its financial condition or show other means to fund the project. Additionally, please provide details regarding credit support and preference for form of credit support (e.g. letter of credit).  Bids without any financial detail regarding the bidder's ability to fund the project or support credit requirements will not be considered.

With each proposal Cheyenne Light will require all parties to sign the Non-disclosure Agreement, contained in Appendix - Non-disclosure Agreement to this RFP.  Cheyenne Light will sign and execute the Non-disclosure Agreement upon receipt from each Respondent.   Cheyenne Light will use commercially reasonable efforts, in a manner consistent with the Non-disclosure Agreement, to protect any claimed proprietary and confidential information contained in a proposal.

- See Bid Form - Section 1 - Bid Checklist

## <u>Bid Form - Section 1 - Bid Checklist</u>

☐   <u>Signed</u> **Bid Form - Section 2 - Contact/Company information**

☐   **Bid Form - Section 3 - Project Specifics**

☐   **Bid Form - Section 4 - Pricing Proposal**

☐   **Attached certificate of good standing**

☐   **Attached financial statements**

☐   <u>**Completed and Signed**</u> **Non-Disclosure Agreement**

## Bid Form - Section 2 - Company/Contact information

**Contact name:**

**Full legal name of bidding entity:**

**State of incorporation:**

**Address:**

**Phone:**

**Email:**

**Signature:**

## Bid Form - Section 3 - Project Specifics

**Describe the project:**

**Desired interconnection substation: (please see appendix for list)**

**Project's physical address:**

**Project's latitude and longitude:**

**Project's facility description: (containers or building, etc.)**

**Project's desired start date:**

**Project's expected megawatts of demand at start, schedule of increase over time, and final demand at project completion:**

**Project's site preparation: (permitting requirements complete (if applicable), has land been acquired, is a lease option preferred?)**

**Does the bidding entity currently have cryptocurrency mining operations? If yes, how many megawatts?**

## Bid Form - Section 4 - Pricing Proposal

Cheyenne Light will entertain proposals for fixed price supply.  In the tables below please provide the proposed total or all-in pricing the bidder is willing to pay under a BCIS Agreement. Priority will be placed on price as well as on the number of curtailment hours.

As required in the tariff, the BCIS Agreement requires a bid reopener after three years.  However, the bidder may propose pricing and terms beyond that time.

Please complete the table below with the proposed bid (add rows or columns as necessary).  It should be completed in cents per kilowatt hour.

| Term | Total Bid |
|---|---|
| Example (Jan-Dec 2022) | $.0XX/kwh |
| Example (Jan-Dec 2023) | |
| | |
| | |

Please list the maximum hours the project would be willing to be curtailed annually due to uneconomic market energy prices.  Cheyenne Light retains the right to curtail load for system safety and integrity beyond the hours indicated below as necessary.

XXX hours

Is the bidder willing to pay a premium during hours in which power supply cost exceeds the bid price to avoid being curtailed?  (Yes/No)

Is the bidder interested in off-peak only energy or tiered pricing during on-peak vs off-peak hours? If so please explain further.

Please indicate any other information related to bid pricing you wish to share with Cheyenne Light for your bid:

**Project funding and credit support:**

Cheyenne Light will assess the bidders' ability to fund the project and bidders' credit quality.   At a minimum, the bidder can expect to post credit support equal to multiple months of the project's electric utility bill. Bidders with less credit history or without excellent credit can expect to provide more credit support.

Please detail proposed project funding: (Is funding secured or in process?)

Please detail your proposed credit support for this bid:

## <u>Appendix</u>

**Appendix - Cheyenne Light BCIS Tariff**

**Appendix - Cheyenne Light Substation Availability**

**Appendix - Non-Disclosure Agreement**

## Appendix - Blockchain Interruptible Service (BCIS) Tariff



| | Cheyenne Light, Fuel and Power Company<br>d/b/a Black Hills Energy | Wyo. P.S.C. Tariff No. 13 |

---

**Blockchain Interruptible Service**                     First Revised Sheet No. 26
                                                        Cancels Original Sheet No. 26

---

### ELECTRIC RATES

### BLOCKCHAIN INTERRUPTIBLE SERVICE ("BCIS")

**APPLICABILITY**

This tariff is applicable to new Customer interruptible load, interconnected with the Company's system, expected to be 10,000 kW or greater.  Interruptions will be at the Company's discretion.  Each new customer will have entered into a Blockchain Interruptible Service Agreement ("Agreement") with the Company.

**ELIGIBILITY**

Customers requesting Blockchain Interruptible Service ("BCIS") will be considered upon written application to the Company.  Upon receipt of the customer's written application and such additional information as the Company may require, the Company and the applying customer may, at the sole discretion of either party, commence negotiation of rates and terms and conditions of service under this BCIS tariff.  If the parties agree through negotiations to electric service through this BCIS tariff, an Agreement will be executed. The electric service under this tariff is not applicable to temporary, standby, supplementary, emergency, resale, shared or incidental purposes.

**CONTRACT**

As a condition to be eligible for this tariff, the customer is required to enter into an Agreement for service under this tariff.  The Agreement shall be filed, with a request for confidentiality protections, with the Public Service Commission of Wyoming ("Commission") prior to the customer being billed under the Agreement.

The Agreement shall be in accordance with the provisions of this BCIS tariff and at a minimum shall include:

1. Electric service is for new interruptible load expected to be 10,000 kW or greater;
2. A term of at least two (2) years;
3. Specific pricing for all electricity purchased, with the pricing terms being subject to renegotiation at least every three (3) years;
4. Identification of Customer and Company costs for any required new electric infrastructure;
5. Details specifying how service will be interrupted by the Company;
6. Negotiated service interruption provisions (size of interruptible load, notice of planned interruption, duration of interruption, and maximum hours of interruption per year) ;
7. BCIS customers that fail to interrupt service as required by the Agreement shall be responsible for all costs incurred by the Company due to such failure;
8. A release of liability of the Company for any losses or damages, including consequential damages, caused by or resulting from any interruption of service;

BCIS Tarriff



Cheyenne Light, Fuel and Power Company
d/b/a Black Hills Energy

Wyo. P.S.C. Tariff No. 13

---

**Blockchain Interruptible Service**

First Revised Sheet No. 27
Cancels Original Sheet No. 27

---

### BLOCKCHAIN INTERRUPTIBLE SERVICE ("BCIS") - CONTINUED

9.    Revenue expected to be received under the Agreement during its term must exceed the anticipated costs to the Company of its performance under the Agreement;

10.   Terms and conditions of service shall be those contained in the Agreement; and

11.   Customer shall not be eligible for any discounts or service conditions except as provided for in the Agreement.


**MONTHLY RATE**

All charges for service under this tariff shall be in accordance with the Agreement entered into between the Company and the Customer.

**POWER COST ADJUSTMENT**

Customers receiving service under this tariff shall not participate in the Power Cost Adjustment (PCA) to the extent of service received under this tariff schedule.

**PAYMENT**

Net monthly bills are due and payable twenty days from the date of the bill, and after that date the account becomes delinquent.  A late payment charge of 1.5% on the undisputed unpaid balance shall apply to delinquent accounts.  Discontinuance of service can occur pursuant to the Rules and Regulations, Sheet No. R16.

Date Issued: August 12, 2019
By: Jerrad Hammer

Effective Date: June 1, 2019
Title: Director – Regulatory and Finance



Cheyenne Light, Fuel and Power Company
d/b/a Black Hills Energy

Wyo. P.S.C. Tariff No. 13

---

**Blockchain Interruptible Service**

First Revised Sheet No. 28
Cancels Original Sheet No. 28

---

**BLOCKCHAIN INTERRUPTIBLE SERVICE ("BCIS") - CONTINUED**

**<u>COST AND BENEFIT ASSIGNMENT</u>**

The Company assumes all financial and operational risks associated with BCIS, and as such, the costs and benefits to the Company and its other retail customers shall be distributed as follows:

- All BCIS power supply costs and any associated revenues shall be separately identified in the books and records of the Company and shall be solely the responsibility of the Company. These costs and revenues will be removed from the Company's Power Cost Adjustment ("PCA") calculation. All directly assigned power costs and related kWh shall be excluded when determining the annual PCA rate;
- All third party transmission charges attributable to the BCIS customer's electric requirements shall be the responsibility of the Company. These costs will be recorded on the Company's books in FERC Account 565 and removed from the Company's PCA calculation;
- When the BCIS customer is served through use of the Company's local transmission system (115 kV and above) customers will receive a benefit per megawatt hour of energy served under Agreements entered into pursuant to this tariff through the BCIS Transmission Credit component of the BCIS Customer Credit Adjustment Tariff ("BCCA"). ;
- The Company shall be responsible for corporate overhead expense as is allocated to BCIS customers utilizing the then current Cost Allocation Manuals (CAM). These identified expenses will be removed from any annual earnings reports and the retail cost of service in any Company rate proceedings. A portion of these expenses will be included in the BCIS Corporate Overhead Credit component of the BCCA; and
- In addition, retail electric customers shall receive a customer benefit per megawatt hour of energy served under Agreements entered into pursuant to this tariff through the BCIS Customer Benefit Credit component of the BCCA..

The customer benefits outlined herein and in the BCCA Tariff shall be the exclusive benefits provided to other retail customers as a result of the Company providing BCIS service. Any revenues and expenses associated with BCIS service shall be removed from the Company's normalized earnings reports, rate of return calculations, and the retail cost of service in any Company rate proceedings. Any profits or losses resulting from BCIS service shall inure to and be the responsibility of the Company.



Cheyenne Light, Fuel and Power Company
d/b/a Black Hills Energy

Wyo. P.S.C. Tariff No. 13

| Blockchain Interruptible Service | First Revised Sheet No. 29 |
|---|---|
| | Cancels Original Sheet No. 29 |

### BLOCKCHAIN INTERRUPTIBLE SERVICE ("BCIS") - CONTINUED

**DEMAND SIDE MANAGEMENT**

Demand Side Management (DSM) Surcharge shall not be applicable to Blockchain Interruptible Service Customers.

**RULES AND REGULATIONS**

Service supplied under this schedule is subject to the terms and conditions set forth in the Company's Rules and Regulations on file with the Public Service Commission of Wyoming unless modified by the Agreement.

**CREDIT SUPPORT**

The Company may require from the BCIS customer a deposit or other credit support as outlined in the Agreement. The credit support shall not be considered as an advance payment of bills for service to be rendered, but shall be held as security for payment of obligations incurred on behalf of the customer.

Date Issued: August 12, 2019
By: Jerrad Hammer

Effective Date: June 1, 2019
Title: Director – Regulatory and Finance

## Appendix - Cheyenne Light Substation Availability

| Substation | Total Capacity | Reservation for Native Growth | Available BCIS Capacity | Distribution Voltage |
|---|---|---|---|---|
| Happy Jack | 28 MW | 5 MW | 10 MW | 24.9 kV |
| North Range* | 100 MW | 83 MW | 0 MW | 24.9 kV |
| Hilltop | 96 MW | 6 MW | 30 MW | 13.2 kV |
| Skyline | 96 MW | 9 MW | 35 MW | 13.2 kV |
| Crow Creek | 96 MW | 8 MW | 15 MW | 13.2 kV |
| East Business Park | 50 MW | 7 MW | 30 MW | 13.2 kV |

*BCIS capacity at North Range could be considered however would require additional analysis.

Note: Capacity listing is the result of arithmetic summation of transformer capacities and does not constitute the results of detailed system analysis. Upgrades such as feeder improvements, service line extensions, multiple metering points, or transmission improvements may be necessary before connecting some or all of this capacity. Prior to connecting any new customer, Black Hills would perform its usual due diligence to identify any system impacts associated with a new customer.

**Appendix - Non-Disclosure Agreement**

**NON-DISCLOSURE AGREEMENT**

This Non-Disclosure Agreement ("Agreement") is effective as of the            day of            , 2021 ("Effective Date"), by and between [INSERT LEGAL NAME OF ENTITY], a [INSERT ENTITY TYPE], organized

under the laws of the state of [INSERT STATE OF ORGANIZATION] having a place of business at
("          "), and Cheyenne Light, Fuel and Power Company, a company having a place of business at
7001 Mt. Rushmore Rd., Rapid City, SD 57702, and its affiliates and subsidiaries ("Black Hills").  Black Hills
and          shall collectively be referred to as the "Parties".

## RECITALS

A.      The Parties have expressed a desire to engage in discussions regarding a Blockchain Interruptible
Service Agreement  (the "Transaction").

B.      In order to explore  this relationship, it will be necessary for the Parties to disclose certain
Confidential Information (as hereinafter defined) to each other.

## AGREEMENT

NOW THEREFORE, in consideration of the recitals, the mutual promises and covenants made
herein, with the intent to be legally bound hereby, the Parties agree as follows:

1.      <u>Confidential Information</u>. As used in this Agreement, the term "Confidential Information"
includes all written information, data, correspondence or other tangible materials, and information
disclosed orally, electronically or in any other intangible form by one party to the other.  Confidential
Information shall include all information as described herein, whether or not it is marked Confidential or
Proprietary.

Each party shall have the right to determine, in its sole judgment, what information it will
provide to the other. Confidential Information shall not include the following:

(a)      information which at the time of disclosure by a Party (the "Disclosing Party") is already public or
becomes available to the public through no act or omission of the Party receiving such
information  (the "Receiving Party");

(b)      information which was in the Receiving Party's possession prior to receipt from the Disclosing
Party;

(c)      information which is lawfully received independently from a third party who, to the Receiving
Party's knowledge, is free to disclose such information to the Receiving Party; or

(d)      information which is independently developed by or on behalf of Receiving Party  without use of
any Confidential Information.

Without the other party's prior written consent, the Parties and their directors, officers, employees, consultants and advisors shall not disclose to any person or entity either the fact that discussions or negotiations are taking place concerning the Transaction between the Parties or any of the terms, conditions or other facts with respect to any such Transaction, including the status thereof.

2.      <u>Disclosure and Use of Confidential Information</u>. For a period of three (3) years from the Effective Date of this Agreement, the Parties agree:

(a)      to hold in confidence and not to disclose to any third party the Confidential Information, employing the same degree of care to keep such Confidential Information confidential as it employs with respect to its own information of like importance, but in no event less than reasonable care.

(b)      not to use the Confidential Information for any purpose other than in connection with the Transaction.  The Parties may disclose Confidential Information on a need to know basis to their consultants and advisors and employees who have a need to know such information for purposes of such evaluation, provided that such disclosures are made under confidentiality requirements consistent with those set forth in this Agreement.

(c)      With respect to Confidential Information jointly generated by the Parties, each Party shall be deemed to be the Receiving Party for purposes of this Section 2.

3.      <u>Required Disclosure</u>. If compelled by a requirement of a government agency, a court, or by law or discovery to disclose any of the Confidential Information, the party ordered to disclose the information shall make reasonable efforts to resist disclosure and shall notify the other party in writing prior to making any disclosure in order to provide the party whose information may be disclosed a reasonable opportunity to either waive any objection to such disclosure or request a remedy from the appropriate authority.  The Parties will reasonably cooperate with each other in efforts to obtain such a remedy.  If the party whose information may be disclosed waives its objections or is unsuccessful in its request for a remedy or fails to make such a request, the party compelled to disclose information will furnish only that portion of the Confidential Information that is legally required.

4.      <u>Return of Documents</u>. The Parties may elect at any time to terminate further access to Confidential Information.  The party in possession of Confidential information agrees to return, or destroy if so requested, any and all Confidential Information as well as any other information disclosed upon request, including all originals, copies or any other form of said material, without retaining any copy or duplicate thereof, and shall promptly destroy any and all translations, notes and other written, printed, computer based or readable or other material or information derived from the Confidential Information, without retaining any copy or duplicate thereof. Notwithstanding the foregoing, the party in possession of Confidential Information will not have an obligation to return or destroy Confidential Information stored in electronic backup systems, provided that such systems are not used to access such Confidential Information and the terms of this Agreement will continue to apply to such Confidential Information stored in electronic backup systems.

5.     <u>No Further Obligations</u>. Nothing herein shall obligate either party to disclose to or receive from the other party any particular information.  Neither of the Parties has an obligation under this Agreement to purchase any service or item from the other party.  The Parties shall not be obligated to compensate each other for the use of any information disclosed under this Agreement. acknowledges that Black Hills may explore opportunities similar to the

Transaction with other companies that may be competitors of                .

6.     <u>Remedies</u>. The Parties acknowledge that remedies at law may be inadequate to protect against any actual or threatened breach of this Agreement, and, without prejudice to any other rights and remedies otherwise available, the Parties agree to the granting of injunctive relief without proof of actual damages.  In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that this Agreement has been breached, then the party at fault will reimburse the other party for its costs and expenses (including, without limitation, attorneys' fees and expenses) incurred in connection with all such litigation.

7.     <u>No Other Rights or License.</u> Disclosure of any information under this Agreement shall not be construed as granting, directly or by implication, any license under any United States or foreign patent, patent application or copyright, or any other intellectual proprietary rights; nor shall this Agreement be construed as creating any agency or partnership relationship between the Parties.

8.     <u>LIMITATION OF LIABILITY</u>. NEITHER PARTY NOR ANY OF ITS RESPECTIVE AFFILIATES AND SUBSIDIARIES SHALL BE LIABLE TO THE OTHER OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES RELATED TO OR ARISING OUT OF THIS AGREEMENT EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF WHAT LEGAL OR EQUITABLE THEORY MAY BE ASSERTED, INCLUDING, WITHOUT LIMITATION, ANY CONTRACT, NEGLIGENCE, BREACH OF WARRANTY OR ANY OTHER LEGAL OR EQUITABLE THEORY.

9.     <u>Termination</u>. This Agreement may be terminated by either party upon three days prior written notice to the other party; provided, however, that notwithstanding any termination hereof, the Parties obligations under this Agreement shall remain in full force and effect with respect to Confidential Information disclosed prior to such termination for three (3) years after the effective date of such termination.

10.     <u>Non-Solicitation</u>. During the term of the Agreement, and for a period of two (2) years after the active business relationship ends or is terminated for any reason, each party agrees that it will not directly or indirectly, solicit, hire, or retain for employment or contract services, any current employee of the other party or any employee who has been employed by the other party at any time during the term of the Agreement, and who became known to the hiring party in connection with its consideration of the Transaction.  Notwithstanding the foregoing, the hiring party shall not be precluded from hiring any such employee who: (a) initiates discussions regarding such employment without any direct or indirect solicitation by the hiring party; (b) is referred to the hiring party by search firms, employment agencies or other similar entities provided that such entities have not been specifically instructed by the hiring

party to solicit the employees of the other party or its affiliates or (c) has been terminated by the other party prior to commencement of employment discussions between the hiring party and such employee.

11.  <u>Miscellaneous</u>. The Parties represent and warrant that they have the right to disclose the information disclosed under this Agreement for the purpose set forth herein.  The Parties shall not disclose any information that is confidential or otherwise restricted by reason of any oral, written or implied agreement or other understanding they have with any third party.  This Agreement supersedes all prior agreements, understandings, representations and statements, whether oral or written, between the Parties relating to the subject matter of this Agreement.  The terms of this Agreement may not be changed except by subsequent written agreement duly executed by an authorized representative of each of the Parties.  This Agreement may not be assigned by either party without the prior written consent of the other party, shall be binding upon the Parties and their successors and permitted assigns, and shall inure to the benefit of and shall be enforceable by the Parties and their successors and permitted assigns. The invalidity in whole or in any part of this Agreement does not affect the validity of the remainder of the Agreement. Notices given under this Agreement shall be in writing and delivered by first class, certified mail to each signatory at the addresses identified herein, unless changed by written notice, with a copy to Black Hills' General Counsel.  This Agreement shall be interpreted in accordance with the laws of the state of Wyoming without regard to its conflicts of laws principles.  The venue for any dispute arising hereunder shall be in state or federal courts located within the state of Wyoming. This Agreement may be executed by facsimile and in one or more counterparts, each of which will be deemed to be an original, and all of which when taken together, shall be deemed to constitute one and the same agreement.

The undersigned have caused this Agreement to be duly effective as of the date first set forth above.

Cheyenne Light, Fuel and Power Company

_____        _____
(signature)                                                        (signature)

_____        _____
(name printed)                                                  (name printed)

_____        _____
(title)                                                              (title)

_____        _____
(date)                                                              (date)

# Exhibit C

BEFORE THE PUBLIC SERVICE COMMISSION
OF THE STATE OF WYOMING

IN THE MATTER OF THE APPLICATION OF    )
CHEYENNE LIGHT, FUEL AND POWER     )
COMPANY d/b/a BLACK HILLS ENERGY FOR  )
AUTHORITY TO PASS ON A BLOCKCHAIN    )    Docket No.  20003-___-EM-23
INTERRUPTIBLE SERVICE CUSTOMER CREDIT )    (Record No. _____)
ADJUSTMENT RATE OF $0.00 PER KILOWATT )
HOUR                            )

## **APPLICATION**

Cheyenne Light, Fuel and Power Company d/b/a Black Hills Energy ("Cheyenne Light"),

a Wyoming corporation, submits this Application and respectfully requests an order from the

Public Service Commission of the State of Wyoming ("Commission") authorizing Cheyenne

Light to implement a Blockchain Interruptible Service Customer Credit Adjustment ("BCCA")

to its electric rates of $0.00.   Cheyenne Light did not serve any customers under its Blockchain

Interruptible Service Tariff ("BCIS") in 2022.  Therefore, the BCCA has no associated value for

the current rate period.[1]  The first BCIS customer began taking service from Cheyenne Light in

March of 2023.

In support of this Application, Cheyenne Light states as follows:

1.       Cheyenne Light's legal name is Cheyenne Light, Fuel and Power Company, and

its principal place of business is located at 1301 W. 24th Street, Cheyenne, Wyoming, 82001.

Cheyenne Light is a wholly owned subsidiary of Black Hills Corporation, which operates as a

holding company under the Public Utility Holding Company Act of 2005.  Cheyenne Light

conducts business within its service area in and around the city of Cheyenne under the trade

name of Black Hills Energy.  Cheyenne Light is a public utility as described in Wyo. Stat. § 37-

---

[1] Tariff Sheet No. 35.

1-101, and is engaged in the generation, transmission, and distribution of electricity.  Cheyenne Light is subject to the Commission's jurisdiction pursuant to Wyo. Stat. § 37-2-112 and other applicable statutes.

2.      The BCCA has been a three-part rate that included the BCIS Customer Benefit Credit, the BCIS Transmission Credit, and the Corporate Overhead Credit.  All three components of the BCCA were in effect for the calendar year of 2022.

3.      The BCCA rate calculation will change in 2023 due to recent changes approved in the Cheyenne Light general rate case, resulting in the elimination of the Corporate Overhead Credit and the BCIS Transmission Credit will now be reflected as a reduction to the transmission revenue requirement.

      a.      The BCIS Customer Benefit Credit is $1.00 per MWh of energy served to BCIS customers.

      b.      The BCIS Transmission Credit is equal to the non-firm transmission rate of $1.00 per MWh plus a blend of the ancillary service charge rate under the Open Access Transmission Tariff for non-firm use of the Cheyenne Light system in effect on the date of execution of each BCIS customer agreement.  As of March 1, 2023, the BCIS Transmission Credit will no longer be a part of the BCCA rate calculation.  The non-firm transmission revenues received from BCIS customers will be included as a revenue credit as part of the transmission revenue requirement calculation and reduce the overall transmission cost of service to be recovered from base

retail (through the TCAM) and Large Power Contract Service ("LPCS") customers.[2]

c.    The Corporate Overhead Credit was designed to provide non-BCIS customers an immediate benefit for a portion of overhead costs assigned to the BCIS customer segment, but not reflected in Cheyenne Light's non-BCIS base rates.  The Corporate Overhead Credit was to be in effect until Cheyenne Light designed new base rates due to a general rate case.[3]  The Corporate Overhead Credit was effective for calendar year 2022, however, no customers were taking service under the BCIS tariff during this time, so there is no associated value.  The Corporate Overhead Credit will be removed from future BCCA rate calculations.

4.    The BCCA returns to customers, over a twelve-month period, the BCCA credit amounts collected from BCIS customers over the prior calendar year.  The BCCA is updated annually with a filing no later than May 1.  The purpose of this filing is to establish the 2023 BCCA rate of $0.00, effective July 1, 2023.

5.    Cheyenne Light provides the following as its annual update:[4]

a.    There are currently no customer benefits associated with service under the BCIS Tariff for the current rate period as there were no BCIS customers taking service in calendar year 2022.

---

[2] Tariff Sheet No. 55
[3] *Memorandum Opinion, Findings, and Order Approving Stipulation*, para. 18(iii), Docket No. 20003-173-ET-18 (Record No. 15104
[4] *Memorandum Opinion, Findings, and Order Approving Stipulation*, para. 21, Docket No. 20003-173-ET-18 (Record No. 15104) .

b.      Cheyenne Light has updated substation reservations that are reflected in Exhibit 2 to the Application.  Exhibit 2 includes the capacity reservation for native load growth and an exclusion for feeders with less than 5 MW of capacity.

        i.     BCIS customers are required to take a minimum of 10 MW of service, which can be served by multiple substations or feeders with an available capacity of 5 MW or greater.  Substation capacity available to service BCIS customers are updated to exclude feeders that have a capacity of 5 MW or less or when the transformer capacity is less than 10 MW.

c.      Cheyenne Light follows the following guiding principles when negotiating service with potential BCIS customers:

        i.     Capacity:

            1.    Cheyenne Light will ensure capacity is available for native load growth;

            2.    BCIS customers must take a minimum of 10 MW of service.  This requirement can be met through multiple service points on  the Cheyenne Light system with a minimum of 5 MW per service point; and

            3.    BCIS customer load can be interrupted for economic and system reliability concerns.

ii.   Other Principles:

1.  Infrastructure investments required to serve BCIS

    customers, that provide no benefit to other customers, will

    be paid in full by the BCIS customers as a deposit prior to

    work commencement;

2.  Non-BCIS customers will not be harmed by service

    provided to BCIS customers; and

3.  Special consideration is made to locate BCIS customers in

    technology, industrial, and commercial business parks

    zoned appropriately for operations.

d.   Cheyenne Light is currently serving one customer under the BCIS tariff.

The service agreement includes the effective date, termination date, and

estimated annual loads filed with the Commission in Docket No. 20003-

216-EK-22 (Record No. 17147).  Actual annual loads will be provided in

the 2024 BCCA filing.

i.   Customer began construction of facilities in the North Range

    Business Park in September 2022.  Planned facilities include the

    construction of 10 individual data centers;

ii.  Customer began receiving service under the BCIS tariff on March

    30, 2023; and

iii. Remaining facilities are anticipated to be complete by mid-to-late

    2023 and load will continue to grow to the contract capacity

    established for the North Range location.

**Exhibits**

6.      The following Exhibits are provided in support of this Application:

Exhibit 1                BCCA Model

Exhibit 2                Substation Reservation

**Notifications**

7.      The name, title, and address of the individuals to receive notice and

correspondence regarding this Application are as follows:

Kyra Coyle
Director, Regulatory and Finance
Black Hills Service Company, LLC
1301 West 24th Street
Cheyenne, WY 82001
Tel: (307) 778-2173
Kyra.Coyle@blackhillscorp.com

Kaeci Daniels
Manager, Regulatory and Finance
Black Hills Service Company, LLC
1301 West 24th Street
Cheyenne, WY 82001
Tel: (307) 778-2141
Kaeci.Daniels@blackhills corp.com

Jana Smoot White
Associate General Counsel
Black Hills Service Company, LLC
P.O. Box 1400
Rapid City, SD 57709
Tel: (605) 399-5059
Jana.White@blackhillscorp.com
Wyo. Bar #7-6044

Becky Purington
Senior Paralegal
Black Hills Service Company, LLC
PO Box 1400
Rapid City, SD 57709
Tel: (605) 721-2506
Becky.Purington@blackhillscorp.com

**Conclusion**

WHEREFORE, Cheyenne Light, Fuel & Power Company respectfully requests the Public

Service Commission of the State of Wyoming:

1.      Approve this Application and the implementation of a $0.00 per kWh BCCA Rate

without need for formal hearing.

6

Dated this 20 day of April 2023.

CHEYENNE LIGHT, FUEL AND POWER
COMPANY d/b/a BLACK HILLS ENERGY

By: _____

Kaeci Daniels
Manager, Regulatory and Finance

**Address of Applicant:**

Cheyenne Light, Fuel & Power Company
1301 W. 24th Street
Cheyenne, WY  82001

**Counsel for Applicant:**

Jana Smoot White
Associate General Counsel
Black Hills Corporation
PO Box 1400
Rapid City, SD 57709
Tel: (605) 399-5059
Jana.White@blackhillscorp.com
Wyo. Bar #7-6044

7

STATE OF WYOMING    )
                              ) SS.
COUNTY OF LARAMIE    )

       Kaeci Daniels, being duly sworn, do hereby depose and state that I am Senior Manager,

Regulatory and Finance for Cheyenne Light, Fuel and Power Company d/b/a Black Hills Energy,

Applicant in the foregoing Application; that I have read such Application; and that the facts set

forth therein are true and correct to the best of my knowledge, information, and belief.

       Dated this _20_ day of April, 2023.

                                              Kaeci Daniels

       Subscribed and sworn before me this _20th_ day of April, 2023.

(SEAL)

> JAMES WASSON   NOTARY PUBLIC
> COUNTY OF        STATE OF
> LARAMIE         WYOMING
> MY COMMISSION EXPIRES MARCH 9, 2024

                                            James Wasson
                                          Notary Public

My Commission Expires: _3 - 9 - 2024_