Patrick J. Murphy, WSB No. 7-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Email: pmurphy@wpdn.net
       smurray@wpdn.net

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 23-CV-79 |
| MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company; MINEONE PARTNERS LLC, a Delaware limited liability company; TERRA CRYPTO INC., a Delaware corporation; BIT ORIGIN, LTD, a Cayman Island Company; SONICHASH LLC, a Delaware limited liability company; BITMAIN TECHNOLOGIES HOLDING COMPANY, A Cayman Island Company; BITMAIN TECHNOLOGIES GEORGIA LIMITED, a Georgia corporation; and JOHN DOES 1-18, related persons and companies who control or direct some or all of the named Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF BCB'S THIRD MOTION FOR SANCTIONS AGAINST
DEFENDANT MINEONE WYOMING DATA CENTER, LLC**

COMES NOW Plaintiff BCB Cheyenne LLC, through its counsel, and respectfully submits this Third Motion for Sanctions against Defendant MineOne Wyoming Data Center, LLC ("MineOne").

## I. PRELIMINARY STATEMENT

On August 9, 2024, one day after the failed mediation, Magistrate Judge Mark Carman entered the Court's *Order on Plaintiff's Expedited Motion to Compel Discovery from the MineOne Defendants*. [ECF 313]. Judge Carman ordered the MineOne Defendants to produce the following documents on or before August 23, 2024:

1. All loan documents, investment documents, sales documents, lease documents, promissory notes, security documents and lien documents, including all drafts of such documents which relate to the purported loans as referenced in the declaration of Erick Rengifo paragraphs 64(b), 64(c) and 64(d); and

2. All contemporaneous communications (unredacted) including email, Skype, WeChat and written which address the above referenced documents or financial matters involving capital contributions or loans as related to the Wyoming project which is the subject to this litigation.

[ECF 313, Page 6 of 7].

Now, without any reason, rationale or explanation, MineOne has not produced *so many* of the Court-ordered documents, especially its drafts of the alleged loan documents and its contemporaneous communications (unredacted) relating to these loan documents, all as carefully described in Michael Murphy's 9/4/24 Affidavit **("Exhibit 1")**. The Court should sanction the MineOne Defendants for their violation of Judge Carman's Discovery Order.

## II. PROCEDURAL HISTORY

1. On May 24, 2024, MineOne's Erick Rengifo filed his *Declaration* in opposition to plaintiff's emergency motion for a protective order with prejudgment writs of attachment and garnishment [ECF 195-1]. Relevant to this Third Motion for Sanctions, Dr. Rengifo testified to certain alleged loans.[1] On June 10, 2024, in anticipation of the Court's evidentiary hearing on the

---

[1] In Paragraph 64 of his Declaration, Erick Rengifo says: "Finally, BCB is not MineOne Data's 'largest debtor' despite its repeated contentions to the contrary. See ECF No. 182-1, Murphy Aff.

1

prejudgment Writs of Attachment and Garnishment, Plaintiff BCB filed its *Expedited Motion to Compel Discovery from the MineOne Defendants*. [ECF 214] ("*Expedited Motion*"). In this *Expedited Motion*, BCB asked the Court to order the MineOne Defendants to produce the loan, lease and sales documents, including drafts of those documents as well as MineOne's contemporaneous communications and other corroborating information which address the referenced documents or financial matters involving capital contributions or loans related to this Wyoming project. *Id.*

2. The MineOne Defendants resisted BCB's *Expedited Motion* [ECF 222].

---

at ¶ 19. In fact, MineOne Data has approximately $21.73 million in debt owed to creditors and BCB is clearly not one of them. MineOne Data's creditors are identified as follows:

> . . . b.  Terra Bridge Loan: As detailed above, BCB's delays, improper conduct, and breaches caused MineOne Data to suffer a liquidity shortage due to the delays in getting the site operational. As a result, MineOne Data borrowed a total of $5,285.701 from Terra in September 2022. However, the continued delays (which meant that the North Range site was not generating profit for MineOne Data) inhibited MineOne Data from timely repaying the Bridge Loan, which meant that it was converted into an unattractive lease arrangement in which Terra owned the underlying land and equipment at North Range and leased it back to MineOne Data. On March 20, 2024, MineOne Data and Terra entered into a Repurchase and Debt Conversion Agreement ("DCA") which converted the prior lease agreement to a Senior Loan with an initial principal amount equal to $4,152,434. Pursuant to the DCA, Terra became MineOne Data's second priority creditor behind AntAlpha.
>
> c. Additional Third-Party Loans: In addition to the AntAlpha loan and Bridge Loan, MineOne Data was forced to borrow another $3,356,327 in additional funds from five lenders: Yu & Jing Investment LLC, Oriental Sun Enterprises LLC, Rising Sun Properties LLC, Intellectual International Capital LLC, BitGeek DT Group Limited. The interest due on the loans from Yu & Jing Investment LLC, Oriental Sun Enterprises LLC, Rising Sun Properties LLC totals $131,607. The total current balance outstanding on these loans is approximately $3,667,934.
>
> d. Bitmain:    Bitmain is owed $2,571,000. The Service Framework Agreement requires Bitmain to prepay its hosting fees to MineOne Data. Because the President's Order has shut down the MineOne Defendants' operations, they must refund this prepayment amount. *See* Ex. 4, ¶ § 3.5."

*See* Erick Rengifo's 5/24/24 Declaration of ¶ 64(b), (c) and (d). [ECF 195-1].

3. On July 11, 2024, Judge Carman heard the Parties' oral arguments on the *Expedited Motion*, taking the motion under advisement. [ECF 270].

4. Judge Carman issued his Discovery Order on August 9, 2024. [ECF 313]. The MineOne Defendants have not appealed Judge Carman's Order to the District Court. Thus, it is a final Discovery Order.

5. Judge Carman correctly observed that the MineOne Defendants "assert that the $100,000 bond is not in compliance with the requirements of the Wyoming statute which require the amount of the bond to cover 'the payment of all costs and damages which may be incurred or suffered by any party as a result of the wrongful issuance of the writ.'" *Id.*, citing WYO. STAT. § 1-15-104(a). "In doing so," Judge Carman then observed,

> Defendant MineOne reference the outstanding loans as set forth above as a portion of their basis of the potential losses. Whether the amounts are loans or capital contributions is relevant to the Court's ongoing consideration of the proper amount of the bond securing the writs as placed in issue by Defendant MineOne.

[*Id.* at Page 5 of 7].

6. After citing five examples of "purported loan agreements . . . [that] raise some questions which would call for additional discovery," Judge Carman wrote: ". . . the Court is convinced that Plaintiffs are entitled to discovery regarding the authenticity of the Loan Agreements which would include discovery of drafts and records of negotiations concerning the creation and execution of the Loan Agreements." [*Id.* at Page 6 of 7].

7. Thereafter, and purporting to comply with Judge Carman's Discovery Order:

On August 26, 2024, MineOne re-produced portions of VOL010 (with some of the earlier redactions now removed) and VOL019 (which consisted of one hundred nine (109) newly produced documents). On August 27, 2024, MineOne re-produced portions of VOL009 (with some of the earlier redactions now removed), which MineOne labeled VOL009a and which, according to MineOne, it had inadvertently omitted from the previous day's production.

3

*See* Michael Murphy's 9/4/24 Affidavit, ¶ 5 **("Exhibit 1").**

    8. In his supporting Affidavit, CPA Michael Murphy describes his close review of all the documents MineOne produced – and did ***not*** produce – pursuant to Judge Carman's Discovery Order.

Upon my close and careful review of MineOne's production of documents in response to Judge Carman's August 9, 2024 Order, it is clear MineOne materially failed to comply with Judge Carman's Order. Moreover, MineOne did not provide any reason or explanation of its failure to produce the documents Judge Carman ordered MineOne to produce.

In short, MineOne did ***not*** produce any loan documents, investment documents, sales documents, lease documents, promissory notes, security documents or lien documents which relate to the purported loans referenced in paragraphs 64(b) and 64(c) of Erick Rengifo's Declaration [Doc. 214-2]. Furthermore, MineOne did ***not*** produce a single draft of any agreement, including drafts of the alleged agreements which MineOne previously produced on June 19, 2024 in support of its opposition to Plaintiff BCB's Amended Emergency Motion for Writs of Attachment and Garnishment.

Instead of producing the documents which Judge Carman ordered to be produced (which could help substantiate the claims in paragraphs 64(b) and 64(c) of Erick Rengifo's Declaration), MineOne primarily produced documents and communications showing MineOne's payments to vendors and distributions to investors (see "Exhibit A" for a log of VOL019). These produced documents do not provide substantiation to support Erick Rengifo's assertions that the related party transactions referenced in paragraphs 64(b) and 64(c) of his Declaration are loans. Further, as I stated in both my Writs Affidavit and Bond Amount Affidavit, "One should draw an adverse inference from MineOne not producing these highly relevant documents [which Judge Carman ordered to be produced]: either the documents don't exist and/or they don't show what MineOne has said they show (so MineOne refuses to produce them)."

*See* Michael Murphy's 9/4/24 Affidavit at ¶¶ 6-8 (emphasis in original).

    9. There's more. Much more. Michael Murphy describes each of the documents mentioned in paragraphs 64(b) and 64(c) of Erick Rengifo's Declaration and to what extent MineOne failed to produce those agreements, drafts of those agreements, and MineOne's contemporaneous communications with the related counterparties of those agreements. *Id.* at ¶¶ 9-31. Mr. Murphy explains that MineOne ***failed to produce***:

  (a) the alleged September 2022 Bridge Loan Agreement between MineOne and Terra, any drafts

4

thereof, and any contemporaneous communications indicating if/when this alleged September 2022 Bridge Loan Agreement was ever signed;

(b) a fully executed alleged 2022 Lease Arrangement (aka Purchase Agreement) between MineOne and Terra, any drafts thereof, and any contemporaneous communications indicating when Erick Rengifo and Jiaming Li signed the agreement on behalf of MineOne;

(c) drafts of the alleged 2024 Repurchase and Debt Conversion Agreement ("DCA") between MineOne and Terra, and any contemporaneous communications indicating when the DCA was signed;

(d) the alleged May 2023 Loan Agreement(s) between MineOne and its members Yu & Jing Investment LLC, Oriental Sun Enterprises LLC, and Rising Sun Properties LLC (collectively, the "MineOne Members"), drafts thereof, and contemporaneous communications between MineOne and the MineOne Members from that time regarding these alleged Loan Agreement(s);

(e) any drafts of the alleged April 23, 2024 Loan Agreement between MineOne, MineOne Cloud, and the MineOne Members and contemporaneous communications between MineOne and the MineOne Members from around the time of the alleged April 2024 loan, including any information from Docusign (the online digital signing method used by the MineOne Members to sign the alleged April 23, 2024 Loan Agreement) showing when the MineOne members signed the Loan Agreement;

(f) one or more Loan Agreements between MineOne and BitGeek DT Group Limited ("BitGeek"), drafts of those Loan Agreement(s), and contemporaneous communications between MineOne and BitGeek around the time when MineOne was requesting BitGeek (or BitGeek's affiliate) to provide funds to MineOne and/or pay MineOne's invoices;

(g) any drafts of the alleged April 30, 2024 Loan Agreement between MineOne, MineOne Cloud, and BitGeek and contemporaneous communications between MineOne and BitGeek around the time the alleged April 30, 2024 Loan Agreement was made, including those communications to indicate when the alleged April 30, 2024 Loan Agreement was signed;

(h) one or more Loan Agreements between MineOne and Intellectual International Capital LLC ("IIC") and any drafts thereof; and

(i) any drafts of the alleged April 30, 2024 Loan Agreement between MineOne, MineOne Cloud and IIC and any contemporaneous communication between MineOne and IIC around the time the alleged April 30, 2024 Loan Agreement was made, including those communications to indicate when the alleged April 30, 2024 Loan Agreement was signed.   Michael Murphy Affidavit at ¶¶ 9-31 ("**Exhibit 1**").

### III.  APPLICABLE LAW – FAILURE TO COMPLY WITH THE COURT'S DISCOVERY ORDER

5

Fed.R.Civ.P. 37(b)(2)(A) is the applicable rule. It says:

> (2) ***Sanctions Sought in the District Where the Action is Pending.***
>
> **(A)** *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;
> >
> > (iv) staying further proceedings until the order is obeyed;
> >
> > (v) dismissing the action or proceeding in whole or in part;
> >
> > (vi) rendering a default judgment against the disobedient party; or
> >
> > (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(C) says:

> (C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

## IV. ARGUMENT

Where, as here, MineOne fails to produce ***so many*** of the documents Judge Carman ordered MineOne to produce, MineOne should have provided an affidavit explaining ***why*** it did not produce any of the documents and contemporaneous communications described by Michael Murphy in his Affidavit. But MineOne chose not to provide any such explanation, reason, rationale – or even an excuse – for its failure to produce these Court-ordered documents. And after

6

making such a pitch that these are genuine, legitimate loans – and not camouflaged equity – MineOne should have been able to produce drafts of these loan documents and promissory notes, the final signed documents themselves, and all of their unredacted contemporaneous communications which "address the above referenced documents or financial matters involving capital contributions or loans as related to the Wyoming project which is the subject of this litigation." *See* Judge Carman's 8/9/24 Discovery Order [ECF 313, Page 6 of 7].

If this was the first or an isolated instance where MineOne did not comply with this Court's Order, the Court would act within its discretion in sanctioning MineOne as follows:

- Directing that the matters embraced in the order or other designated facts be as established for purposes of the action,[2] as the prevailing party claims;

- Prohibiting the disobedient party from supporting or opposing designated claims or defenses;[3] and

- Striking pleadings in whole or in part.[4]

But where, as here, this is the ***third*** motion for sanctions against MineOne, the Court should sanction MineOne more severely. "The district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular 'claim' which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (internal quotation marks and citations omitted). "Because of the harshness of dismissal,

---

[2] Such a limited sanction would be a conclusive finding that all of the alleged loans, except the AntAlpha loan, are actually camouflaged equity.

[3] Such a limited sanction would be an order precluding MineOne from arguing that any of its alleged loans should be considered as evidence to support MineOne's argument that the $100,000 surety bond is inadequate or should be increased.

[4] Again, such a limited sanction would be an order striking MineOne's Counterclaims (where MineOne seeks money damages for losses – including these alleged loans – for BCB's alleged breach of the DHS Agreement).

7

however, due process requires that the discovery violation be predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (internal quotation marks and citations omitted). Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors. Those factors include:

(1) the degree of actual prejudice to the defendant;

(2) the amount of interference with the judicial process;

(3) the culpability of the litigant;

(4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and

(5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (internal quotation marks and citations omitted)

Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction. *Ehrenhaus*, 965 F.2d at 921. Warning a litigant that dismissal may be a sanction "is not always necessary," but "it is a factor [the Tenth Circuit] consider[s] in determining whether the district court abused its discretion." *In re Hopkins*, 162 F.3d 1173 (10th Cir. 1998). When a litigant repeatedly disobeys discovery orders, dismissal may be appropriate. As then-Judge (Now Justice) Gorsuch wrote:

> the district court's considerable discretion in this arena easily embraces the right to dismiss or enter default judgment in a case under Rule 37(b) when a litigant has disobeyed two orders compelling production of the same discovery materials in its possession, custody, or control. Plaintiffs in this case were given no fewer than three chances to make good their discovery obligation: first in response to Max's document requests, then in response to the October 2009 order, and finally in response to the January 2010 order. Plaintiffs failed at all three turns. And three strikes are more than enough to allow the district court to call a litigant out.

*Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320–21 (10th Cir. 2011); *see also Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000) (affirming dismissal of counterclaims as sanction for

8

"numerous discovery violations"); *Dochterman v. Res. Realizations*, 56 F. App'x 455, 458 (10th Cir. 2003) (affirming dismissal for "repeated" discovery violations after monetary sanction and warning of possible dismissal).

Here, the cumulative effect of MineOne's disobedience of the Court's orders warrants (a) entry of default in favor of BCB on BCB's *First Amended Complaint* against MineOne, and (b) dismissal of MineOne's Counterclaims against BCB, together with an award of BCB's attorney fees incurred with the three motions for sanctions. Tellingly, in this Third Motion, MineOne does not offer any reason, rationale, explanation or excuse for not complying with Judge Carman's August 9, 2024 Discovery Order. Where, as here, MineOne willfully failed to produce so many of the Court-ordered documents, it had an affirmative duty to explain to the Court, and BCB's counsel, *why* it did not produce those documents. MineOne willfully chose not to provide any explanation. Also, in relation to BCB's Second Motion for Sanctions, MineOne now tacitly concedes it should never have said Pat Murphy's conduct – with respect to the recently-subpoenaed BCB investors – "raises serious concerns of witness tampering and interference" (a *crime*). In MineOne's 9/5/24 *Opposition*, MineOne repeats Ms. Colbath's August 12, 2024 assertion that Mr. Murphy's conduct "*raises serious issues of conflict of interest* between Williams, Porter, Day & Neville, P.C.'s representation of BCB and individual members of BCB, whose interests may become adverse to each other[5] . . . ," but MineOne does not repeat its libelous

---

[5] BCB members Michael Murphy, Emory Patterson and Neil Phippen will file a motion for partial summary judgment on MineOne's Counterclaim III for *alter ego* liability against these individuals. MineOne has nothing to support a piercing the corporate veil *alter ego* claim under WYO. STAT. ¶ 17-19-304 and Wyoming case law. *See, e.g.*, *Wallop Canyon Ranch, LLC v. Goodwin*, 351 P.3d 943, 960, 961 (Wyo. 2015) ("[W]e do not consider veil-piercing until the threshold question of whether there is liability on the underlying cause of action has been answered"); *also see Greenhunter Energy, Inc. v. Western Ecosystems Tech.*, 2014 WY 144 ¶ 3, 337 P.3d 454, 458 (Wyo. 2014) ("…In the instant case, we have affirmed the district court's decision as to underlying liability. Because there was no breach of duty or underlying liability, the question of whether to pierce the corporate veil will not be reached. The threshold

9

accusation that Mr. Murphy's conduct "raises serious concerns of witness tampering and interference." [Doc. 337, Page 12 of 25] (emphasis added).

The Court should consider all of these three sanctions motions, and MineOne's offending conduct, when it evaluates the proper sanctions to impose.

## CONCLUSION

For all of the reasons in BCB's First, Second and Third Motions for Sanctions, the Court should sanction MineOne for its willful disobedience of the Court's discovery Orders and its contumacious misconduct. The Court should enter the sanction of default on MineOne's defense to BCB's First Amended Complaint; it should dismiss with prejudice MineOne's three Counterclaims; it should award BCB its attorney fees; and it should award such other relief as the Court, in its wisdom, deems warranted.

DATED this 6th day of September, 2024.

        BCB CHEYENNE LLC d/b/a
        BISON BLOCKCHAIN, Plaintiff

By: /s/ Patrick J. Murphy
     Patrick J. Murphy (WSB No. 5-1779)
     Scott C. Murray (WSB No. 7-4896)
     WILLIAMS, PORTER, DAY & NEVILLE, PC

     159 N Wolcott St. Suite 400
     Casper, WY 82601
     Ph: (307) 265-0700
     pmurphy@wpdn.net
     smurray@wpdn.net

---

requirement for piercing – underlying liability – has not been met. Therefore, we do not address the question of whether to pierce the corporate veil here"). MineOne's speculation that BCB's interests "may become adverse to those of its own members" is meritless.

10

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served upon counsel as indicated below this 6th day of September 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [ ]  U.S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[ ]  Overnight Delivery<br>[ ]  Hand Delivery<br>[ ]  Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>msg@orllp.legal | [ ]  U.S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[ ]  Overnight Delivery<br>[ ]  Hand Delivery<br>[ ]  Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [ ]  U.S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[ ]  Overnight Delivery<br>[ ]  Hand Delivery<br>[ ]  Electronic Mail |
| Paula Colbath, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>David Forrest, *Pro Hac Vice*<br>Leily Lashkari, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New York, NY 10154<br>pcolbath@loeb.com<br>ainman@loeb.com<br>dforrest@loeb.com<br>llashkari@loeb.com | [ ]  U S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[ ]  Overnight Delivery<br>[ ]  Hand Delivery<br>[ ]  Electronic Mail |

| | |
|---|---|
| Marc Feinstein, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>David Iden, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>Kate Stutz, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>sparikh@omm.com<br>kstutz@omm.com | [  ]  U.S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| William Pao, *Pro Hac Vice*<br>COOLEY LLP<br>Wells Fargo Center, South Tower<br>355 South Grand Avenue, Suite 900<br>Los Angeles, CA 90071-1560<br>Ph.:  213-561-3249<br>Fax:  213-430-6407<br>wpao@cooley.com | [  ]  U. S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [  ]  U.S. Mail (prepaid)<br>[ x ]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |

By: _____

     Patrick J. Murphy